

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
10/07/2020

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| EAGLE PIPE, LLC,[1] | § | |
| | § | Case No. 20-34879 (MI) |
| Debtor. | § | |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL;
(II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING;
AND (IV) GRANTING RELATED RELIEF**

This matter came before the Court for consideration on the *Emergency Motion for Interim and Final Orders (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (the "**Motion**")[2] filed by Eagle Pipe, LLC ("**Eagle Pipe**" or the "**Debtor**") in the above-captioned chapter 11 case, seeking, among other things:

A.        authorization for the Debtor to use Cash Collateral (as defined below) and all other Collateral (as defined below), and any proceeds thereof;

B.        the granting of adequate protection to the Secured Parties (as defined below);

C.        approval of certain stipulations by the Debtor with respect to the Loan Documents (as defined in the Loan Agreement defined below) and the obligations, liens and security interests arising therefrom;

D.        subject only to and effective upon entry of the Final Order (as defined below), the waiver of (i) the Debtor's right to surcharge the Collateral pursuant to section 506(c) of the

---

[1] The last four digits of Debtor's federal tax identification number are (1119).
[2] Capitalized terms used but not defined herein have the meanings assigned to them in the Motion.

Bankruptcy Code; and (ii) any rights of the Debtor under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

E.      modification of the automatic stay to the extent set forth herein;

F.      pursuant to Bankruptcy Rule 4001, scheduling an interim hearing (the "***Interim Hearing***") on the Motion to be held before the Court to consider entry of an order granting the Motion on an interim basis (this "***Interim Order***"); and

G.      scheduling of a final hearing (the "***Final Hearing***"), to be held within twenty-one (21) days of the entry of the Interim Order to consider entry of a final order (the "***Final Order***") approving the relief granted herein on a final basis;

and due and appropriate notice of the Motion and the Interim Hearing having been provided by the Debtor to the Office of the United States Trustee for Region 7 (the "***U.S. Trustee***"), the holders of the 30 largest unsecured claims against the Debtor, counsel to the Administrative Agent (as defined below), any other entity asserting a lien in the Debtor's assets, the Internal Revenue Service, the United States Attorney's Office for the Southern District of Texas, the office of the attorney general for the states in which the Debtor operates, and any party that has requested notice pursuant to Bankruptcy Rule 2002; and it appearing that no other or further notice is necessary; and the Court having reviewed the Motion; and the Interim Hearing having been held before the Court on October 7, 2020, at 3:00P..M.; and upon the record made by the Debtor in the Motion, in the *Declaration of Jared Light in Support of Chapter 11 Petition and First Day Motions* (the "***First Day Declaration***"), and at the Interim Hearing; and the relief requested in the Motion being reasonable, appropriate and in the best interests of the Debtor, its creditors, its estate and all other parties-in-interest in the Debtor's chapter 11 case (the "***Chapter 11 Case***"); and the Court having determined that good cause is

2

shown for the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED[3], that:

1.     _Disposition_. The relief requested in the Motion is hereby granted on an interim basis, on the terms set forth below. Any objections to the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits. The Interim Order shall become effective immediately upon its entry.

2.     _Jurisdiction and Venue_. The Court has jurisdiction over this Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     _Debtor's Stipulations_. Subject to the limitations contained in Paragraph 21 below, the Court hereby finds that the Debtor has admitted, stipulated and agreed, for itself, and its estate, as follows:

(a)     *Obligations*.

(i)     As of the Petition Date, Eagle Pipe was justly and lawfully indebted and liable under that certain Loan and Security Agreement, dated as of April 6, 2018 (as amended, modified or supplemented prior to the date hereof, and including all exhibits and schedules thereto, the "***Loan Agreement***"), among Eagle Pipe, as borrower, U.S. Bank National

---

[3] In accordance with Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

Association, a national banking association, as administrative agent (the "***Administrative Agent***")
and LC Issuer (as defined therein, the "***LC Issuer***"), the banks and other financial institutions
party thereto from time to time as lenders (collectively, the "***Lenders***," and together with the
Administrative Agent, the LC Issuer and any affiliate of a Lender to which Obligations (as
defined in the Loan Agreement) are owed, collectively, the "***Secured Parties***," and each, a
"***Secured Party***") and the other Loan Documents (as defined in the Loan Agreement, the "***Loan
Documents***"), without defense, challenge, objection, claim, counterclaim or offset of any kind,
which obligations and indebtedness consist of (i) Revolving Loans in the aggregate principal
amount of $20,790,621.32, and (ii) accrued and unpaid interest and fees, expenses (including any
attorneys', accountants', appraisers' and financial advisors' fees and expenses, in each case, that
are chargeable or reimbursable under the Loan Documents), charges, indemnities and other
obligations incurred in connection with the foregoing (including any "Banking Services
Obligations" and "Swap Obligations" (each as defined in the Loan Agreement),[4] in each case to
the extent constituting Obligations under and as defined in the Loan Agreement, collectively, the
"***Obligations***").

(ii)     No portion of the amounts outstanding under the Loan Documents
or any payments made to the Secured Parties or applied to or paid on account of the Obligations
prior to the Petition Date are subject to avoidance, recharacterization, subordination (whether
equitable, contractual or otherwise), recovery, attack, effect, recoupment, rejection, reduction,

---

[4] In order to include this amount in the Debtor's stipulations for the Final Order, the Administrative Agent shall
provide written notice to the Debtor, through its professionals, no later than three (3) business days before the date
set for Final Hearing, which notice shall include the amounts and accounting of any such accrued and unpaid interest
and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses, in
each case, that are chargeable or reimbursable under the Loan Documents), charges, indemnities and other
obligations incurred in connection with the foregoing (including any "Banking Services Obligations" and "Swap
Obligations" (each as defined in the Loan Agreement).

setoff, disallowance, impairment, counterclaim, cross-claim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law.

(iii)     The liens and security interests granted to the Secured Parties (the "*Liens*") pursuant to and in connection with the Loan Documents are: (A) valid, binding, perfected, enforceable, first-priority liens and security interests in the "Collateral" (as defined in the Loan Agreement, the "*Collateral*"), including, without limitation, in all Inventory (as defined in the Loan Agreement) and other assets (1) purported to have been returned, transferred or otherwise disposed of to Boomerang Tube, LLC and (2) purported to have been returned, transferred, or otherwise disposed of to Centric Pipe, LLC or any Person (as defined in the Loan Agreement) related thereto, in each case regardless of how such purported return, transfer or other disposition may be characterized; (B) not subject to avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), recovery, attack, effect, recoupment, rejection, reduction, set-off, disallowance, impairment, counterclaim, cross-claim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (C) subject and subordinate only to (1) unavoidable, valid, enforceable and perfected liens and security interests in the assets of the Debtor, as prepetition debtor, that existed on the Petition Date, or that are properly perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code, that were "Permitted Liens" (as defined in the Loan Agreement), and that are not subject to avoidance, subordination, recharacterization or other challenge pursuant to the Bankruptcy Code and that are superior in priority, after giving effect to any existing subordination or intercreditor agreements (the "*Permitted Prior Liens*") and (2) the Carve-Out (as defined below).

013017.4847-3009-3005.12

(iv)     The Revolving Commitments (as defined in the Loan Agreement) and the LC Issuer's obligation to issue Letters of Credit (as defined in the Loan Agreement) under the Loan Documents were permanently terminated as of the Petition Date.

(b)     *No Control of Debtor*. None of the Secured Parties control the Debtor or its properties or operations, have authority to determine the manner in which the Debtor's operations are conducted or are control persons or insiders of the Debtor by virtue of any of the actions taken with respect to, in connection with, relating to or arising from the Loan Documents.

(c)     *Cash Collateral*. All cash and securities of the Debtor (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities (and the proceeds therefrom) and other amounts on deposit or maintained by the Debtor in any account or accounts with any depository institution (collectively, the "***Depository Institutions***") are subject to valid, perfected, enforceable, first-priority liens under the Loan Documents and applicable law, for the benefit of the Secured Parties. All (i) existing cash of the Debtor, (ii) all cash proceeds of the Collateral, (iii) all postpetition cash of the Debtor and (iv) all cash proceeds of the Property (defined below) are, in each case, "cash collateral" of the Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (collectively, the "***Cash Collateral***");

(d)     *No Claims Against the Secured Parties*. No claims or causes of action exist against, or with respect to, the Secured Parties under the Loan Documents.

(e)     *Release.* The Debtor hereby forever, unconditionally and irrevocably releases, discharges, and acquits each of the Secured Parties, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, agents, financial advisors and consultants, and professionals, past, present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "***Releasees***") of

6

and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the Loan Documents and/or the transactions contemplated thereunder including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the extent, validity, priority, perfection, or avoidability of the Liens and the Obligations. The Debtor further waives and releases any defense, right of counterclaim, right of set-off, or deduction to the payment of the Obligations that the Debtor now has or may claim to have against the Releasees, arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Court entering the Interim Order.

4. <u>Findings Regarding the Use of Cash Collateral.</u>

(a) *Good and Sufficient Cause*. Good and sufficient cause has been shown for the entry of the Interim Order.

(b) *Immediate Need for Use of Collateral*. The Debtor has an immediate and critical need to use funds, including Cash Collateral, to continue the operation of its business. Without use of such funds, the Debtor will not be able to pay its direct operating expenses and obtain goods and services needed to carry on its business during this sensitive period. At this time, the Debtor's ability to use Cash Collateral is vital to the confidence of the Debtor's vendors, suppliers, customers, employees, and other parties in interest, and to the preservation and maintenance of the going concern value of the Debtor's estate, which the Debtor intends to provide for a sale, recapitalization or refinancing through this bankruptcy case.

(c)     *Consent of the Secured Parties*. To the extent such consent is required, the Secured Parties, by and through the Administrative Agent, have consented to or are deemed to have consented to the Debtor's use of Collateral (including Cash Collateral), subject to the terms of the Interim Order.

(d)     *Entitlement to Adequate Protection*. The Secured Parties are entitled to the adequate protection provided in the Interim Order as and to the extent set forth herein pursuant to sections 361, 362 and 363 of the Bankruptcy Code. The terms of the proposed adequate protection package for the use of the Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtor's prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Collateral (including Cash Collateral); *provided*, that nothing in the Interim Order shall (x) be construed as the affirmative consent by any of the Secured Parties to the use of Collateral (including Cash Collateral) other than on the terms set forth in the Interim Order; (y) be construed as a consent by any of the Secured Parties to the terms of any financing or any other lien encumbering the Collateral (whether senior, *pari passu* or junior, not specifically permitted under the Interim Order); or (z) prejudice, limit or otherwise impair the rights of any of the Secured Parties to seek new, different or additional adequate protection.

(e)     *Good Cause*. Good cause has been shown for immediate entry of the Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules. The Court concludes that entry of the Interim Order is in the best interests of the Debtor, its estate and creditors as its implementation will, among other things, allow for access to the liquidity necessary for the going concern sale of the Debtor's existing business. The terms of the Interim

Order are fair and reasonable under the circumstances and reflect the Debtor's reasonable exercise of their business judgment.

(f)     *Use of PPP Funds.*  The Debtor is authorized to use funds held in the account ending "7166" (the "***PPP Account***"), which holds loan proceeds from PNC Bank, National Association under the Paycheck Protection Program (the "***Program***") established pursuant to the Coronavirus Aid, Relief, and Economic Security Act, as well as disbursements allowable under the Program (the "***PPP Funds***"), to pay such costs and expenses eligible to be forgiven under section 1106 of the CARES Act (the "***Forgivable Expenses***").  The Debtor agrees to use the PPP Funds only to pay the Forgivable Expenses in the "covered period," as that term is defined by section 1106(a)(3) of the CARES Act.

5.     <u>Payment from Restricted Sources</u>. Notwithstanding anything else in the Interim Order, the Carve-Out, the Collateral (including Cash Collateral), and the proceeds of the Collateral (collectively, the "***Restricted Sources***") shall not be available for payment of any fees or expenses incurred by any party in connection with (a) the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings suits, arbitrations, proceedings, applications, motions or other litigation of any type (i) adverse to any of the Secured Parties (or any of the affiliates, agents or representatives of the foregoing (each solely in such capacity), or their respective rights and remedies under or in respect of the Loan Documents or any interim or final order), with respect to adequate protection granted to the Secured Parties; or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the Loan Documents, including, in each case, without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the

013017.4847-3009-3005.12

Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) any purpose that is prohibited under the Bankruptcy Code or the Interim Order; (c) paying any amount on account of any claims of the Debtor arising before the commencement of this Chapter 11 Case unless such payments are approved by an order of the Court; (d) objecting to, contesting, or interfering with, in any way, the Secured Parties' enforcement or realization upon any of the Collateral once an Event of Default or Termination Event (each as defined below) has occurred; or (e) obtaining debtor-in-possession financing secured by liens having a priority superior to or pari passu with the Liens or the Replacement Liens; *provided*, that, notwithstanding anything to the contrary herein, the committee of unsecured creditors (if formed) (the "***Committee***") may use the Restricted Sources to investigate (i) the claims and liens of the Secured Parties, and (ii) potential claims, counterclaims, causes of action or defenses against the Secured Parties as long as no more than an aggregate of $10,000 of the proceeds of the Restricted Sources (the "***Review Budget***") may be used for the purposes set forth in the preceding proviso; *provided*, *further*, that nothing in this Interim Order shall preclude, limit or impair (i) the Debtor's right to (A) seek non-consensual use of Cash Collateral during the Remedies Notice Period (as defined below) or following any termination of the authorization to use Cash Collateral pursuant to the Interim Order, (B) seek to recharacterize any cash payments made hereunder to the Secured Parties on account of the Adequate Protection Obligations as principal payments, or (C) contest whether an Event of Default or Termination Event has occurred or (ii) the Secured Parties' right to object to any such non-consensual use of Cash Collateral or recharacterization.

6. <u>Limitation on Charging Expenses Against Collateral</u>. Subject only to, and effective upon, entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Case or any future proceeding that may result

therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the Administrative Agent (acting at the direction of the Lenders), and no such consent shall be implied from any other action, inaction, or acquiescence by the Secured Parties, and nothing contained in the Interim Order shall be deemed to be a consent by the Secured Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

7.    <u>Use of Cash Collateral</u>.  (a) The Debtor is hereby authorized, subject to the terms and conditions of the Interim Order (including, without limitation, the Budget, subject to the Permitted Variances (defined below)), to use Cash Collateral until the earliest to occur of (i) a Termination Event (defined below), (ii) October 26, 2020, and (iii) entry of a Final Order (the "***Interim Period***"), only in the amounts and for the purposes specified in the Budget (defined below), and (b) except on the terms and conditions of the Interim Order, the Debtor shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.

8.    <u>Compliance with Budget</u>.  The Debtor is hereby authorized to use Cash Collateral pursuant to the Budget, subject to the Permitted Variances.

(a)    For purposes hereof:

(A)    "***Budget***," which is annexed hereto as **Exhibit A** and incorporated herein by reference, means a five (5) week forecasted operating budget, which forecast shall be in form and substance reasonably satisfactory to the Administrative Agent (acting at the direction of the Lenders), as the same may be amended, modified, or supplemented from time to time with the

express prior written consent of the Administrative Agent (acting at the direction of the Lenders). For the avoidance of doubt, the Budget shall be deemed to be in form and substance reasonably satisfactory to the Administrative Agent (acting at the direction of the Lenders).  Starting on the first Friday that is two (2) weeks following the entry of this Interim Order and continuing every fourth calendar week until the Termination Date (defined below), the Debtor shall deliver to counsel to the Administrative Agent an updated Budget (each a "***Proposed Budget***") with respect to the Debtor for the current calendar week then ended and the immediately following twelve (12) consecutive weeks (yielding a combined 13-week period), set forth on a weekly basis.  Each Proposed Budget provided to the Administrative Agent shall be of no force and effect unless and until it is approved by the Administrative Agent, as described further below, and filed with the Court.  Until such approval is given and such filing is made, the prior Budget shall remain in effect. Each Proposed Budget shall, upon and at such time as such Proposed Budget is filed by the Debtor and approved in writing by the Administrative Agent, prospectively replace any prior Budget.  In the event the Administrative Agent and the Debtor are unable to agree on any Proposed Budget, (i) the Debtor reserves the right to seek an expedited hearing with the Court to resolve any disagreement between the Debtor and the Administrative Agent with respect to such Proposed Budget and (ii) the Debtor and the Administrative Agent reserve all rights each may have under the Bankruptcy Code or applicable law.  In any such event, the Administrative Agent shall not oppose any such request by the Debtor for expedited consideration by the Court; provided that any expedited hearing thereon is held on not less than forty-eight (48) hours' prior written notice to the Administrative Agent.  In

(B)     "***First Test Period***" means the cumulative two-week period commencing on the Petition Date and ending on Sunday, October 18, 2020;

(C)    "***Second Test Period***" means the cumulative three-week period commencing on the Petition Date and ending on Sunday, October 25, 2020;

(D)    "***Other Test Periods***" means the cumulative, rolling four-week periods, first commencing on the Petition Date, and ending on, and including, the fourth succeeding Sunday thereafter, with the first such period commencing on the Petition Date and ending on Sunday, November 1, 2020; the First Test Period, Second Test Period and all Other Test Periods are, collectively, the "***Test Periods***";

(E)    "***Permitted Variances***" means for each Test Period: (1) all variances from the Budget that are favorable to the interests of the Debtor, and (2) any variance from the Budget that is unfavorable to the interests of the Debtor other than (x) a negative variance of (I) for the First Test Period, 15% or more, (II) for the Second Test Period, 12.5% or more, and (III) for all Other Test Periods, 10% or more, from the designated "Customer Payments" line item in the Budget, to be tested on a total basis over the applicable Test Period, or (y) a negative variance of, (I) for the First Test Period, 15% or more, (II) for the Second Test Period, 12.5% or more, and (III) for all Other Test Periods, 10% or more, between the "Total Operating Cash Disbursements" line item in the Budget, to be tested on a total basis over the applicable Test Period. The results of the Budget variance test for each Test Period shall be delivered to counsel to the Administrative Agent on the first Wednesday immediately following such Test Period, commencing on Wednesday, October 21, 2020 (each, a "***Budget Variance Report***").  Without limiting the foregoing, the Debtor shall, on or before Wednesday, October 14, 2020, deliver to the Administrative Agent a report setting forth the Debtor's actual "Customer Payments" and "Total Operating Cash Disbursements" opposite the Debtor's "Customer Payments" and "Total

13

Operating Cash Disbursements" provided in the Budget for the period commencing on the Petition Date and ending on Sunday, October 11, 2020;

(F) "***Maximum Postpetition A/P Balance Covenant***" means a covenant to prohibit the Debtor from having outstanding accounts payable, excluding payroll and professional fees, incurred on or after the Petition Date in excess of $500,000 in the aggregate, which covenant shall be tested every business day as of the close of business on such business day, with the first test commencing on the first business day following entry of the Interim Order, and with the Maximum Postpetition A/P Balance Covenant test results provided as part of the Budget Variance Report;

(G) "***Minimum Liquidity Covenant***" means a covenant to maintain the Debtor's total amount of cash in the Debtor's accounts ending "4149" and "4081" held at U.S. Bank (the "***Operating Accounts***") at or above $150,000, in the aggregate, tested every business day as of the close of business on such business day, with the first test commencing on the first business day following entry of the Interim Order, and with the Minimum Liquidity Covenant test results provided as part of the Budget Variance Report;

(H) "***Minimum Prepetition Inventory Sale Price Covenant***" means a covenant which prohibits, for any Test Period, the average cash consideration received by the Debtor in respect of Inventory (as defined in the Loan Agreement) acquired prior to the Petition Date and sold during such Test Period to be less than 60% of the cost of all such Inventory sold during the applicable Test Period, with Debtor's compliance with the Minimum Prepetition Inventory Sale Price Covenant to be reported as part of the Budget Variance Report; *provided, however*, that the Debtor may sell Inventory below 60% of the cost of such Inventory upon written consent of the

14

Agent, which consent shall not be unreasonably withheld, and which sales shall not be counted against the average cash consideration during the Test Period for purposes of this covenant.

(I)     "***Maximum Total Cash Disbursements Covenant***" means a covenant to prohibit the Debtor's total cash disbursements, excluding payments made pursuant to Paragraph 12(c) below and any other professional fee disbursements authorized by the Court, during the period commencing on the Petition Date and ending on November 8, 2020, from exceeding $2,200,000 in the aggregate;

(b)     Notwithstanding anything to the contrary in Paragraph 8(a), the Budget shall not restrict the Debtor's payments on account of (i) all postpetition professional fees and expenses of the Administrative Agent and the other Secured Parties as provided pursuant to Paragraph 12(c) below, (ii) all reasonable prepetition professional fees and expenses (including legal, financial advisor, appraisal and valuation-related fees and expenses) incurred by the Administrative Agent and the other Secured Parties, including, without limitation, those incurred in connection with the preparation, negotiation, documentation and court approval of the Motion; and (iii) adequate protection provided to the Secured Parties, and the Debtor shall use Cash Collateral to pay all amounts pursuant to clauses (i) through (iii) of this Paragraph 8(b).

9.     Carve-Out.  The Liens, the Replacement Lien, and the Superpriority Claim (each defined herein) granted herein are subject and subordinate in all respects to a carve-out (the "***Carve-Out***") in an amount equal to the sum of: (a) the budgeted fees and expenses of any professional retained by the Debtor and any statutory committee, (i) in amounts not to exceed the accrued amounts set forth in the Budget for such professionals through the occurrence of any Termination Event, plus the aggregate allowed fees and expenses for all estate professionals incurred following the occurrence of any Termination Event in an aggregate amount not to

exceed $250,000, inclusive of any amounts held on retainer by any such estate professional, and (ii) which fees and expenses shall not include any success fee, transaction fee or other performance or result-based compensation or consideration; (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); (c) any fees payable to the Clerk of the Bankruptcy Court and any agent thereof; and (d) fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code, not to exceed any unused portion of the Review Budget. Nothing herein shall prevent a party in interest from objecting to the allowance and payment of any such fees.

10. <u>Waiver of Marshaling Doctrine and Equities of Case Exception</u>. Subject only to, and effective upon, entry of the Final Order, (i) in no event shall the Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral; and (ii) in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Secured Parties.

11. <u>No Modification of Rights</u>. No rights, protections or remedies of the Secured Parties granted by the Interim Order shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Debtor's authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtor's authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtor's continued use of Cash Collateral or the provision of adequate protection to any party.

12. <u>Adequate Protection of Secured Parties</u>. Until indefeasible discharge or release of the Obligations, the Secured Parties are entitled to, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, adequate protection of their interests in the Collateral (including Cash Collateral), in an amount equal to the aggregate diminution in the value of the Secured Parties' valid, perfected and unavoidable prepetition security interests in the Collateral (including

16

Cash Collateral) from and after the Petition Date, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtor of the Collateral, payment of any amounts under the Carve-Out, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "***Diminution in Value***"). To protect the Secured Parties to the extent of any Diminution in Value, the Secured Parties are hereby granted the following (the "***Adequate Protection Obligations***"):

(a)     *Replacement Lien*.   To the extent of any Diminution in Value from and after the Petition Date resulting from, among other things, the use, sale or lease of the Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Administrative Agent (for itself and for the benefit of the Secured Parties) is hereby granted, solely to the extent of any Diminution in Value (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), subject only to the Carve-Out and the Permitted Prior Liens (all such liens and security interests, the "***Replacement Liens***"):

(i) valid, binding, continuing, enforceable, unavoidable and fully perfected, first-priority, postpetition security interests in and liens on all of the Debtor's rights in tangible and intangible assets, including, without limitation, (A) the Collateral and (B) all other prepetition and postpetition property of the Debtor's estate, and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (y) valid, perfected, unavoidable and enforceable liens in existence on or as of the Petition Date or (z) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "***Unencumbered Property,***" and together with the Collateral, the "***Property***"), including, without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, securities and other investment property, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, all commercial tort claims and other claims and causes of action, including, without limitation, all commercial tort claims and other claims and causes of action against XTO Energy Inc. or any Person (as defined in the Loan Agreement) related thereto (in each case whether sounding in contract, tort or otherwise), and the proceeds of

17

all of the foregoing; all causes of action under sections 544, 545, 547, 548 or 550 of the Bankruptcy Code against Boomerang Tube, LLC, Centric Pipe, LLC or any Person (as defined in the Loan Agreement) related to either of them (collectively, the "*Specified Avoidance Actions*") and (ii) all proceeds or property recovered in respect of all causes of action under sections 544, 545, 547, 548 or 550 of the Bankruptcy Code (collectively, the "*Avoidance Proceeds*"), including, without limitation, all Avoidance Proceeds in respect of the Specified Avoidance Actions; *provided*, that such security interests and liens shall not prime Permitted Prior Liens and, *provided further*, that as to a lien on all fee, leasehold, and other real property interests and the proceeds thereof: (x) with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended to such leases under the Interim Order, except as permitted by the applicable lease or pursuant to applicable law, but if any such restriction applies, liens shall then be deemed to extend only to the economic value of proceeds of any sale or other disposition of, and any other proceeds or products of, such leasehold interests; and (y) should any Lender's internal regulatory or compliance requirements require the completion of either or both flood due diligence and obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then until completion of such flood due diligence, the Administrative Agent shall be deemed to have obtained a lien only on the economic value of, proceeds of any sale or other disposition of such real property interests ; and

(ii) valid, binding, continuing, enforceable, unavoidable and fully perfected, junior priority security interests in and postpetition liens on all tangible and intangible assets, including, without limitation, all prepetition and postpetition property of the Debtor's estate, and all products and proceeds thereof, whether now existing or hereafter acquired that is subject to Permitted Prior Liens;

The Replacement Lien shall be in addition to all other rights of the Secured Parties, including the Secured Parties' liens on and security interests in the Collateral.

(b) *Superpriority Claim*. As further adequate protection, the Secured Parties are hereby granted, solely to the extent of any Diminution in Value, pursuant to § 507(b) a superpriority claim against the Debtor in such amount (the "*Superpriority Claim*"), subject and subordinate only to the Carve-Out. The Superpriority Claim shall have recourse to and be payable from all of the Debtor's available assets, including, without limitation, subject to entry of the Final Order, all Specified Avoidance Actions and all Avoidance Proceeds;

(c) *Periodic Payments*. As further adequate protection, the Debtor shall pay in cash, to the extent permitted under the Budget and sufficient cash is available to the Debtor,

18

the reasonable and documented fees and expenses (whether such amounts were incurred before or after the Petition Date) of (A) counsel and the financial advisor to the Administrative Agent, and (B) counsel for PNC Bank, National Association ("***Lender Counsel***," and together with counsel and the financial advisor to the Administrative Agent, the "***Secured Party Professionals***"), in each case subject to the Review Period (as defined below) set forth in this Paragraph 12(c), and without the necessity of filing formal fee applications, which payment obligations shall, for the avoidance of doubt, be deemed an Adequate Protection Obligation hereunder. All payments of professional fees, expenses and disbursements authorized under this Paragraph 12(c) shall be made within fourteen (14) days (which time period may be extended by the applicable professional) (the "***Review Period***") after the receipt by counsel for the Debtor, counsel for the Committee (if any) and the U.S. Trustee of invoices therefor (the "***Invoiced Fees***") and without the necessity of filing formal fee applications, but only if such Invoiced Fees are equal to or less than the amounts set forth in the Budget for Secured Party Professionals and the Debtor has sufficient cash on hand. The invoices for such Invoiced Fees shall include the total aggregate number of hours billed and a summary description of services provided and the expenses incurred by the applicable professional; *provided*, *however*, that any such invoice may be redacted to protect privileged, confidential or proprietary information. The Debtor, the Committee (if any) and the U.S. Trustee may object to any portion of the Invoiced Fees (the "***Disputed Invoiced Fees***") within the Review Period by delivering to counsel for the Administrative Agent a written objection, setting forth the specific objections to the Disputed Invoiced Fees. If no written objection is received by the expiration of the Review Period, the Debtor shall pay the Invoiced Fees in full within five (5) business days after expiration of the Review Period, but only if such Invoiced Fees are equal to or less than the amounts set forth in

19

the Budget for Secured Party Professionals and the Debtor has sufficient cash on hand.  If an objection to any Invoiced Fees is timely received, the Debtor shall pay the undisputed amount of the Invoiced Fees within five (5) business days after expiration of the Review Period, but only if such undisputed amounts are equal to or less than the amounts set forth in the Budget for Secured Party Professionals and the Debtor has sufficient cash on hand, and this Court shall have jurisdiction to determine the disputed portion of such Invoiced Fees if the parties are unable to resolve the dispute consensually.  The Debtor shall pay any Disputed Invoiced Fees within five (5) business days after approval by the Court by a final order requiring payment of any previously Disputed Invoiced Fees, but only if such portion of the Disputed Invoiced Fees are equal to or less than the amounts set forth in the Budget for Secured Party Professionals and the Debtor has sufficient cash on hand.  The Debtor's inability to pay any Invoiced Fees pursuant to this <u>Paragraph 12(c)</u> during the Interim Period shall not be construed as a modification, adjudication or abridgement of the Secured Parties' rights under the Loan Documents, section 506(b) of the Bankruptcy Code or any other applicable laws entitling the Secured Parties to reimbursement of reasonable and documented fees and expenses.

13. <u>Reservation of Rights Regarding Adequate Protection</u>. Under the circumstances and given that the above-described adequate protections are consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Secured Parties; provided, that the Secured Parties may request further or different adequate protection, and the Debtor or any other party in interest may contest any such request.

14. <u>Perfection of Replacement Liens</u>.

(a) *Authority to Perfect Liens*. The Administrative Agent (with respect to the Adequate Protection Obligations) is hereby authorized, but not required, to file or record (and to execute in the name of the Debtor, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.

(b) *Deemed Perfection Without Further Action*. Whether or not the Administrative Agent (with respect to the Adequate Protection Obligations) shall choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order. Upon the request of the Administrative Agent and the Debtor, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the Administrative Agent to further validate, perfect, preserve and enforce the Adequate Protection Obligations. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c) *Perfection by Certified Copy of Order*. A certified copy of the Interim Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all applicable filing and recording offices are hereby authorized and directed to accept such certified copy of the

21

Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Administrative Agent to take all actions, as applicable, referenced in this Paragraph 14.

15.     Preservation of Rights Granted Under the Interim Order.

(a)     *No Superior or Pari Passu Liens.* Other than the Carve-Out, no claim or lien having a priority superior to or pari passu with the Adequate Protection Obligations shall be granted or allowed while any of the Adequate Protection Obligations remain outstanding, and the Adequate Protection Obligations shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code; or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     *Survival Upon Reversal.* If any or all of the provisions of the Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the Replacement Liens and the Superpriority Claims. Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any Adequate Protection Obligations incurred by the Debtor prior to the actual receipt of written notice by the Administrative Agent, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of the Interim Order, and the Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted herein.

(c)     *Survival in Successor Cases*. Except as expressly provided in the Interim Order, the Replacement Liens, the Superpriority Claims and all other rights and remedies of the Secured Parties granted by the provisions of the Interim Order (including the Adequate Protection Obligations) shall survive, and shall not be modified, impaired or discharged in any superseding chapter 7 case under the Bankruptcy Code, and shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash, as set forth herein.

16.     <u>Financial Reports</u>.    As further adequate protection for the Secured Parties' interests in the Cash Collateral and other Collateral, the Debtor shall allow the Administrative Agent and its professionals reasonable access during normal business hours, and with adequate notice under the circumstances and in the interest of public health and safety, to the Debtor's premises in order to conduct appraisals, analyses and/or audits of the Collateral, in each case at the Debtor's expense, and shall otherwise reasonably cooperate in providing any other financial information requested by the Administrative Agent for this purpose.  The Debtor shall provide to Administrative Agent, through its professionals, and to the Committee, such other reports and information as such parties may reasonably request from time to time.   For the avoidance of any doubt, nothing in the Interim Order shall modify or stay the Debtor's reporting and notice obligations under the Loan Documents (other than as specifically modified in the Interim Order or by another order of the Court), which obligations remain extant in all respects during the Chapter 11 Case.

17.     <u>Termination</u>. The Debtor's authority to use Cash Collateral pursuant to this Interim Order shall terminate without any further order of this Court or any further action by the Administrative Agent or any other Secured Party three (3) business days following the delivery of a written notice (a "***Default Notice***") by the Administrative Agent to Gray Reed, counsel for

the Debtor, the U.S. Trustee and any statutory committee appointed in this chapter 11 case (any such three (3) business-day period of time, the "**Default Notice Period**") of the occurrence of any of the events set forth in clauses (a) through, and including, (h) below) further notice or court proceeding upon the earliest to occur of any of the following (each, a "**Termination Event**"):

(a)     either (i) the Chapter 11 Case is dismissed or (ii) the Court enters an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(b)     either (i) the Court enters an order appointing a trustee or an examiner with enlarged powers (beyond those set forth in §§ 1104(c) and 1106(a)(3) and (4) for the Debtor; or (ii) the Debtor files a motion, application or other pleading consenting to or acquiescing in any such appointment;

(c)     the Court suspends the Chapter 11 Case under § 305;

(d)     the a filing by the Debtor of any motion, pleading, application or adversary proceeding challenging the (i) validity, extent, enforceability, perfection or priority of the Liens or asserting any other cause of action against and/or with respect to the Loan Documents or any of the Liens; or (ii) the validity or enforceability of any of the Obligations (or if the Debtor supports any such motion, pleading, application or adversary proceeding commenced by any third party);

(e)     the consummation of any transaction resulting in the sale or disposition of all or substantially all of the assets of the Debtor and its estate which does not provide for the repayment in full in cash of all Obligations upon the consummation thereof (unless approved by the prior written consent of the Administrative Agent);

(f)     the Debtor's filing of a motion seeking any financing under section 364(d) of the Bankruptcy Code secured by the Collateral that does not require the payment in full of all Obligations;

(g)     this Interim Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Administrative Agent;

(h)     the occurrence of any Event of Default (defined below) under the terms of this Interim Order which remains uncured for three (3) business days after the Debtor's receipt of written notice from the Administrative Agent through the parties' respective professionals of record.

18. <u>Default</u>.   The occurrence of any one or more of the following events shall constitute an "***Event of Default***" under the Interim Order (unless waived, amended or extended, as applicable, in writing by the Administrative Agent):

(a)     the Debtor fails to perform any of its material obligations in accordance with the terms hereof or otherwise defaults hereunder or breaches any provision hereof, including (a) the use of Cash Collateral other than as permitted herein and in the Budget; and (b) the failure to provide any report, document, or information to the Administrative Agent as required herein;

(b)     any representation or warranty made in any certificate, report, expense statement, other financial statement, or other document delivered to the Administrative Agent after the Petition Date proves to have been false in any material respect as of the time when made or given;

(c)     any other person or entity obtains an order permitting the use of Cash Collateral without the written consent of the Administrative Agent;

(d)     a Budget Variance Report provided to counsel to the Administrative Agent shows any of the following: (i) a breach of the Minimum Liquidity Covenant; (ii) a breach of the Maximum Postpetition A/P Balance Covenant during the Interim Period; (iii) a breach of the Minimum Prepetition Inventory Sale Price Covenant; (iv) a breach of the Maximum Total Cash Disbursements Covenant during the Interim Period; or (v) a variance that is not a Permitted Variance;

(e)     the Court shall not have entered the Final Order within twenty-one (21) days of the Petition Date, which order shall be in form and substance reasonably acceptable to the Administrative Agent (acting at the direction of the Lenders);

(f)     the Debtor shall have failed to file a sale and bidding procedures motion in form and substance acceptable to the Administrative Agent (acting at the direction of the Lenders) on or before October 9, 2020;

(g)     the Debtor shall have failed to identify and designate a stalking horse bidder, with a bid and executed asset purchase agreement in form and substance acceptable to the Administrative Agent (acting at the direction of the Lenders) (the "***Stalking Horse APA***"), on or before October 19, 2020;

(h)     the Debtor shall have failed to file a true, correct and complete copy of the executed Stalking Horse APA with the Court on or before October 19, 2020;

(i)     the Court shall not have entered an order approving the Debtor's proposed bidding procedures and auction schedule in form and substance acceptable to the Administrative Agent (acting at the direction of the Lenders) on or before October 30, 2020;

(j)     the Debtor shall have failed to hold an auction for the sale of substantially all of their assets on or before November 20, 2020;

(k)     the Debtor shall have failed to have obtained a hearing for approval of the sale of substantially all of their assets on or before November 30, 2020;

(l)     the Court shall not have entered a final order approving the sale of substantially all of the Debtor's assets, in form and substance acceptable to the Administrative Agent (acting at the direction of the Lenders), on or before December 4, 2020;

(m)    The sale of substantially all of the assets of the Debtor shall not have closed by December 11, 2020;

(n)     the Interim Order ceases to be in full force and effect for any reason other than as a result of entry of the Final Order superseding the Interim Order;

(o)     the Court enters a final order (i) reversing, amending, supplementing, staying, vacating or otherwise modifying the Interim Order without the consent of the Administrative Agent (acting at the direction of the Lenders) or (ii) avoiding or requiring repayment of any material portion of the payments made to the Secured Parties pursuant to the terms hereof;

(p)     the Court enters an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Administrative Agent with respect to any liens securing the Obligations or the Property (including Cash Collateral) granted under the Interim Order or pursuant to the Loan Documents with respect to any assets of the Debtor without the written consent of the Administrative Agent (acting at the direction of the Lenders), which consent may be withheld in their sole discretion;

(q)     the Debtor (i) creates any postpetition lien or security interests or (ii) incurs or suffer to exist any material postpetition liens or security interests, in each case other than in the ordinary course of business or in accordance with the terms of the Interim Order;

(r)     the Interim Order or any other pleading filed in the Chapter 11 Case by the Debtor provides for the nonconsensual priming of the Liens without the written consent of the Administrative Agent (acting at the direction of the Lenders), which consent may be withheld in its sole discretion;

013017.4847-3009-3005.12

(s)     the Debtor shall create, incur or suffer to exist any other claim which is *pari passu* with or senior to the Superpriority Claims;

(t)     the Court enters the Final Order without (i) providing for any of the specific waivers with respect to "marshaling," "equities of the case," and "surcharge" under section 506(c) of the Bankruptcy Code, or (ii) granting the Secured Parties Replacement Liens in, and the Superpriority Claims with respect to, the Avoidance Proceeds; and

(u)     the cessation of all or any material part of the Debtor's business operations.

19.     <u>Remedies Upon a Termination Event</u>.

(a)     Prior to exercising the remedies set forth in this paragraph below, the Administrative Agent shall be required to file a motion with the Court seeking emergency relief (the "***Stay Relief Motion***") on no less than three (3) business days' written notice, which notice period may be concurrent with the Default Notice Period, to (i) the Court, (ii) counsel for the Debtor, (iii) counsel for any statutory committee, and (iv) the U.S. Trustee, for a further order of the Court modifying the automatic stay, dismissing or converting this Case.

(b)     In any hearing on the Stay Relief Motion, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, the applicable Termination Date shall have occurred and whether there has been any Diminution in Value, and the Debtor hereby waives any right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Secured Parties set forth in the Interim Order or the Loan Documents. The delay or failure of the Administrative Agent or other Secured Parties, as applicable, to exercise rights and remedies under the Loan Documents or the Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Subject to the Carve-Out, the Administrative Agent shall be entitled to apply the payments or proceeds of the Property in accordance with the provisions of the Loan Documents, and, upon entry of the Final Order, in no

event shall the Administrative Agent and the other Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Property or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, (x) the Superpriority Claims and the Replacement Liens shall continue in full force and effect and shall maintain their priorities as provided in the Interim Order until all Adequate Protection Obligations shall have been indefeasibly paid in full in cash; (y) all of the rights, remedies, benefits, and protections provided to the Secured Parties under the Interim Order shall survive the applicable Termination Date; and (z) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in the Interim Order.

(c)     Upon the Court's ruling on the Stay Relief Motion, the Court may fashion an appropriate remedy upon a determination that a Termination Event occurred, including, without limitation, that the Administrative Agent shall be entitled to exercise all rights and remedies with respect to the Collateral provided for in this Interim Order, the Loan Agreement and the other Loan Documents, including, without limitation, the right to foreclose on or otherwise exercise its rights with respect to all or any portion of the Collateral, as permitted by the Court. Upon the occurrence of the delivery of a Default Notice, the Debtor and the Administrative Agent consent to a hearing on an expedited basis to consider whether (x) a Termination Event has occurred and (y) any other appropriate relief (including, without limitation, the Debtor's non-consensual use of Cash Collateral).   During the Default Notice Period, the Debtor shall be entitled to continue to use the Cash Collateral in accordance with the terms of the Budget and this Interim Order. Notwithstanding anything to the contrary herein, upon a Termination Event, the delivery of a Default Notice, the expiration of the Default Notice

28

Period, or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to the Secured Parties (or any one or more of them) under this Interim Order shall survive. Except as otherwise provided herein or ordered by the Court, neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any rights, benefits, privileges and remedies set forth in this paragraph.

20. <u>Post-Termination Rights</u>. Upon the occurrence of a Termination Event, the Debtor's authority to use Cash Collateral hereunder shall terminate; *provided*, *however*, that the Debtor or a trustee appointed for the Debtor's estate may use Cash Collateral to pay payroll and payroll-related expenses such as taxes accrued through and including the Termination Date, up to the amounts set forth in the Budget. The Debtor may seek, and the Administrative Agent may oppose, the continued use of Cash Collateral on any terms that the Debtor wish to propose, and any such request shall be heard on shortened notice such that relief can be entered not later than the occurrence of a Termination Event, *provided*, *however*, that the Debtor and the Administrative Agent may stipulate, without the need for a further order of this Court, for this Order to remain in effect temporarily through the date of a hearing on such relief.

21. <u>Effect of Stipulations on Third Parties</u>.

(a) *Binding on the Debtor.* The Debtor's stipulations, admissions, agreements and releases contained in the Interim Order, including, without limitation, in Paragraph 3 of the Interim Order, shall be binding upon the Debtor in all circumstances and for all purposes.

(b) *Binding on Third Parties*. Subject to entry of a Final Order, the Debtor's stipulations, admissions, agreements and releases contained in the Interim Order, including, without limitation, in Paragraph 3 of the Interim Order, shall be binding upon the Debtor's estate

29

and all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in this Chapter 11 Case (including the Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtor's estate, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtor, in all circumstances and for all purposes unless the following three criteria are satisfied:

(i)     Challenge Period. Such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with requisite standing granted by the Court, has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, inter alia, in Paragraph 21(c)) by no later than the date that is 60 days after the Petition Date, or if a Committee is appointed prior to expiration of such period, 60 days after the formation of the Committee, or any such later date as has been ordered by the Court for cause upon a motion filed and served prior to the expiration of the deadline to commence a Challenge or as agreed by the Secured Parties (the "**Challenge Period**"), provided, however, that if, prior to the end of the Challenge Period, (a) the case converts to chapter 7, or (b) a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended for a period of sixty (60) days solely with respect to any such trustee.

(ii)     Challenge Proceeding. Such adversary proceeding or contested matter (A) objects to or challenges the amount, validity, perfection, enforceability, priority or extent of the Obligations or the Liens, or any portion thereof, or (B) otherwise asserts or prosecutes any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, a "**Challenge Proceeding**") against the Secured Parties or their respective

subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**," and, collectively, the "**Representatives**") in connection with matters related to the Loan Documents, the Obligations, the Liens and the Collateral.

        (iii)    <u>Final Non-Appealable Order</u>. There is a final non-appealable order in favor of the plaintiff in any such Challenge Proceeding; *provided*, that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred; and *provided*, *further*, that nothing contained herein shall preclude or otherwise limit the rights of the Committee or any party to seek to intervene, or to appear and be heard under section 1109(b) of the Bankruptcy Code.

        (c)    <u>Failure to File Challenge Proceeding</u>. If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (i) the Debtor's stipulations, admissions, agreements and releases contained in the Interim Order, including, without limitation, those contained in Paragraph 3 of the Interim Order shall be binding on all parties in interest, including, without limitation, any chapter 11 or chapter 7 trustee that is appointed or elected in this Chapter 11 Case or any successor case, and any Committee; (ii) the obligations of the Debtor under the Loan Documents, including the Obligations, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in this Chapter 11 Case, and any subsequent chapter 7 case(s); (iii) the Liens shall be deemed to

have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; (iv) the Obligations and the Liens shall not be subject to any other or further claim or challenge by the Committee, any non-statutory committees appointed or formed in this Chapter 11 Case or any other party in interest acting or seeking to act on behalf of the Debtor's estate; and (v) any defenses, claims, causes of action, counterclaims and offsets by the Committee, any non-statutory committees appointed or formed in this Chapter 11 Case, or any other party acting or seeking to act on behalf of the Debtor's estate, whether arising under the Bankruptcy Code or otherwise, against any of the Secured Parties arising out of or relating to the Loan Documents shall be deemed forever waived, released and barred. If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in the Interim Order, including, without limitation, those contained in Paragraph 3 of the Interim Order, shall nonetheless remain binding and preclusive (as provided in Paragraph 21(b)) on the Committee and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in the Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any non-statutory committees appointed or formed in this Chapter 11 Case, standing or authority to pursue any claim or cause of action belonging to the Debtor or its estate, including, without limitation, Challenge Proceedings with respect to the Loan Documents, the Obligations or the Liens. Any motion seeking standing shall attach a draft complaint or other pleading that sets forth such claim or cause of action or other Challenge Proceedings, and any

claim or cause of action or other Challenge Proceeding not included therein shall be deemed forever waived, released and barred.

22.     Amendment or Extension of this Order.  Neither the Interim Order nor the Budget shall be amended without the express written consent of the Administrative Agent.  Notice of any such amendment to this Interim Order shall be filed with the Court and served on all parties entitled to notice in accordance with Bankruptcy Rule 4001(b) and this Court's Complex Case Procedures.  Any party may object to such amendment and request a hearing before the Court.  If no such objection is made within five days of such notice, such amendment shall become final.

23.     Preservation of Rights.  If any or all of the provisions of this Interim Order, at any time, are modified, vacated or stayed, such stay, modification or vacation shall not affect the validity, extent, priority and enforceability of any lien, priority or other benefit conferred under this Interim Order prior to such stay, modification or vacation.

24.     Binding Effect.  This Interim Order shall be binding on all creditors and parties in interest in this Chapter 11 Case, including the Debtor and any successors thereto, any chapter 11 or chapter 7 trustee that is appointed or elected in this Chapter 11 Case or any successor case, and any Committee; *provided*, *however*, that this Interim Order is without prejudice to the rights of any party in interest, on behalf of the Debtor and its estate or otherwise, to challenge the validity, amount, perfection, priority, extent, or enforceability of the Secured Parties' claims, liens or security interests as provided herein.

25.     Limitation of Liability.  In determining to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, the Secured Parties shall not (i) be deemed to be in "control" of the operations of the Debtor; (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate; and (iii) be deemed to

be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtor (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

26. <u>Proof of Claim.</u> In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtor's estate, neither the Administrative Agent nor the other Secured Parties will be required to file proofs of claim in the Chapter 11 Case or successor case, and the Debtor's stipulations in Paragraph 3 herein shall be deemed to constitute a timely filed proof of claim. Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Chapter 11 Case or successor case shall not apply to the Secured Parties with respect to the Obligations and Adequate Protection Obligations. Notwithstanding the foregoing, the Administrative Agent, on behalf of itself and the Secured Parties, is hereby authorized and entitled, at the direction of the Administrative Agent (acting at the direction of the Lenders), to file (and amend and/or supplement, as it sees fit) in the Chapter 11 Case a single master proof of claim for any claims arising under the Loan Documents and hereunder (the "***Master Proof of Claim***"). Upon the filing of the Master Proof of Claim (if any), which shall be deemed asserted against the Debtor, the Secured Parties and each of their respective successors and assigns shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims (which names may be redacted in the publicly filed version of the Master Proof of Claim) against the Debtor of any type or nature whatsoever with respect to the Loan Documents, and the claim of each Secured Party (and each of its respective successors and assigns), named in the Master Proof of Claim shall be treated as if such entity had filed a

34

separate proof of claim in the Chapter 11 Case. The Master Proof of Claim, if filed, shall not be required to identify whether any Secured Party acquired its claim from another party and the identity of any such party or be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this Paragraph and the Master Proof of Claim are intended solely for the purpose of administrative convenience. The Master Proof of Claim, if filed, shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by the Debtor to the applicable Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Administrative Agent.

27.    <u>Reservation of Rights</u>.  Except as provided in this Interim Order, none of the Debtor, the Administrative Agent or any other Secured Party waives any of its respective rights under the Loan Documents, the Bankruptcy Code, or any applicable law, including the right of the Debtor, the Administrative Agent or the other Secured Parties at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, or the right of the Debtor, the Administrative Agent or any other Secured Party to exercise any of their respective rights and remedies under the Bankruptcy Code at any time. In particular, each of the Debtor, the Administrative Agent and the other Secured Parties reserves its respective rights to seek modification of this Interim Order.

28.    <u>Further Relief</u>. Nothing herein shall (a) preclude the Secured Parties or the Debtor from seeking any other relief that it may deem appropriate, including relief from the automatic stay, or (b) prevent the Secured Parties from asserting at some later time that any of their respective prepetition interests are not being adequately protected, or the Debtor from opposing

such assertion.  The Debtor is authorized to take all such actions as are necessary or appropriate to implement the terms of the Interim Order.

29.     <u>Effectiveness</u>.  The rights and obligations of the parties under this Interim Order shall be effective and enforceable as of the Petition Date.  This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto.

30.     <u>Payments Free and Clear</u>. Any and all payments or proceeds remitted to the Administrative Agent or the other Secured Parties pursuant to the provisions of the Interim Order or any subsequent order of this Court, subject to (i) any recharacterization of such proceeds or payments as described in <u>Paragraph 12(c)</u> and (ii) <u>Paragraph 21(b)</u> of the Interim Order, shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including, subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) and 552(b) of the Bankruptcy Code (whether asserted or assessed by, through or on behalf of the Debtor).

31.     <u>Final Hearing; Objections</u>.  A Final Hearing to consider the Motion and the proposed Final Order on the Motion will be held on October 22, 2020, at 3:30 p.m.  Any party in interest objecting to entry of a final order granting the relief requested in the Motion on a final basis shall file and serve a written objection thereto on or before 5:00 p.m. Central Time, October 19, 2020, with a copy to: (i) counsel for the Debtor: Paul D. Moak (pmoak@grayreed.com), Aaron M. Kaufman (akaufman@grayreed.com), and Lydia R. Webb (lwebb@grayreed.com), 1300 Post Oak Blvd., Suite 2000, Houston, Texas 77056; (ii) the Office of the United States Trustee; (iii) counsel for the Administrative Agent: Steven R. Rech (SRRech@vorys.com);  Kari  Balog  Coniglio  (KBConiglio@vorys.com)  and  Jeffrey  W.

36

Bieszczak (JWBieszczak@vorys.com); 909 Fannin Street, Suite 2700, Houston, Texas 77010, and (iv) counsel for PNC Bank, National Association: Regina Stango Kelbon (Kelbon@BlankRome.com); 1201 Market Street, Suite 800, Wilmington, Delaware 19801.

32. <u>Notice of Final Hearing</u>.  The Debtor shall, within two business days after entry of this Interim Order, mail copies of this Order and a notice of the Final Hearing to: (i) the Office of the United States Trustee; (ii) counsel for the Administrative Agent; (iii) the Debtor's 30 largest unsecured creditors as set forth in the list filed by the Debtor in this Chapter 11 Case; (iv) all known holders of liens on the Debtor's assets, if any; (v) all applicable government agencies to the extent required by the Bankruptcy Rules or local rules of this Court; and (vi) all parties requesting notice in this Chapter 11 Case.

33. <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to interpret, implement and enforce this Order.

Signed: October 07, 2020

---

Marvin Isgur
United States Bankruptcy Judge

013017.4847-3009-3005.12

# Eagle Pipe

## Interim Cash Collateral Budget

| | Cash Flow Forecast (000's) | | | | | TOTAL |
|---|---|---|---|---|---|---|
| Week -----> | *1* | *2* | *3* | *4* | *5* | |
| Week Ending -----> | 11-Oct | 18-Oct | 25-Oct | 1-Nov | 8-Nov | FORECAST |
| **Customer Payments** | $ 1,049.3 | $ 70.2 | $ 520.3 | $ 3,163.2 | $ 398.6 | $ 5,201.7 |
| **Operating Cash Disbursements** | | | | | | |
| Critical Vendors | (139.1) | (139.1) | (139.1) | (139.1) | (274.0) | (830.2) |
| Legal & Professional | - | - | - | - | (25.0) | (25.0) |
| Inventory Purchases | - | - | - | - | (144.0) | (144.0) |
| Rent/Utilities | - | - | - | (20.0) | - | (20.0) |
| Insurance | (5.4) | - | (2.0) | - | (6.0) | (13.4) |
| IT | (4.6) | (5.0) | - | (5.0) | - | (14.6) |
| Payroll & Payroll Taxes | (123.0) | - | (120.0) | - | (123.0) | (366.0) |
| Sales Taxes | - | - | (50.0) | - | - | (50.0) |
| State Income Tax | (0.1) | - | - | - | - | (0.1) |
| Property Taxes | - | - | - | - | - | - |
| Selling & Marketing Expense | (25.0) | - | - | (25.0) | - | (50.0) |
| Other | - | (2.5) | - | - | - | (2.5) |
| *Total Operating Cash Disbursements* | $ (297.1) | $ (146.6) | $ (311.1) | $ (189.1) | $ (572.0) | $ (1,515.8) |
| **Operating Cash Flow** | $ 752.2 | $ (76.4) | $ 209.3 | $ 2,974.2 | $ (173.4) | $ 3,685.9 |
| *Accumulated* | *752.2* | *675.8* | *885.1* | *3,859.3* | *3,685.9* | |
| **Other Sources/ (Uses)** | | | | | | |
| *Restructuring Professionals and Costs:* | | | | | | |
| Debtor | (140.0) | (60.0) | (60.0) | (60.0) | (60.0) | (380.0) |
| Committee | (20.0) | (20.0) | (20.0) | (20.0) | (20.0) | (100.0) |
| Lenders | (140.0) | (50.0) | (75.0) | (75.0) | (75.0) | (415.0) |
| **Subtotal** | **(300.0)** | **(130.0)** | **(155.0)** | **(155.0)** | **(155.0)** | **(895.0)** |
| **Net Other Sources/ (Uses)** | $ (300.0) | $ (130.0) | $ (155.0) | $ (155.0) | $ (155.0) | $ (895.0) |
| **Net Cash Flow** | $ 452.2 | $ (206.4) | $ 54.3 | $ 2,819.2 | $ (328.4) | $ 2,790.9 |
| **Beginning Cash Balance** | $ 10.1 | $ 462.3 | $ 255.9 | $ 310.2 | $ 3,129.3 | |
| **Ending Cash Balance** | $ 462.3 | $ 255.9 | $ 310.2 | $ 3,129.3 | $ 2,801.0 | |



EXHIBIT

A