# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| EAGLE PIPE, LLC,[1] | § § | Case No. 20-34879 (MI) |
| Debtor. | § § | |

## DEBTOR'S MOTION FOR (I) AN ORDER (A) APPROVING BIDDING PROCEDURES AND CERTAIN BID PROTECTIONS, (B) SCHEDULING BID DEADLINE, AUCTION DATE, AND SALE HEARING AND APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (C) APPROVING CURE PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS

EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 22, 2020, AT 3:30 PM (CENTRAL TIME). IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.

IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1 (832)-917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.

YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR. UNDER "ELECTRONIC APPEARANCE," SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS, AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE. SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING.

---

[1] The last four digits of Debtor's federal tax identification number are (1119).

> **THE EARLIEST RELIEF SOUGHT IN THIS MOTION IS OCTOBER 22, 2020.**

Eagle Pipe, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), files this Motion (the "Motion"), for (i) entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"), (a) approving bidding procedures (the "Bidding Procedures"), in substantially the same form as those attached to the Bidding Procedures Order as **Appendix 1**, and certain bidding protections set forth therein to be used for the proposed sale (the "Proposed Sale") of substantially all of the Debtor's assets (the "Assets"), (b) scheduling the bid deadline, auction date and sale hearing and approving the form and manner of notice thereof; and (c) approving procedures for the potential assumption and assignment of executory contracts and unexpired leases to cure any default pursuant to section 365(b)(1) of the Bankruptcy Code and the form and manner of notice thereof; and (ii) following a subsequent hearing (the "Sale Hearing"),[2] the entry of an order (the "Sale Order"), substantially in the form attached hereto as **Exhibit B**, (a) approving the sale of the Assets  to the successful purchaser (the "Successful Bidder") to be determined at auction (the "Auction"), free and clear of liens, claims and interests, (b) approving the APA and the obligations incurred by the Successful Bidder thereunder, and (c) granting related relief.  In support of the Motion, the Debtor respectfully represents:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] As set forth below and in the Bidding Procedures, the Debtor reserves the right to cancel the Sale Hearing if at, or prior to, the Auction, a Plan Transaction (as defined in the Bidding Procedures) is accepted and will be pursued.

3.      The bases for the relief requested herein are sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL HISTORY AND BACKGROUND

4.      On October 5, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains in possession of its property and is managing its business as a debtor in possession. No trustee, examiner or official committee has been appointed.

6.      Formed in 2013, the Debtor is a full-service distributor and supply-chain logistics provider for oil country tubular goods ("OCTG"), as well as a wide variety of associated products and services to the upstream, midstream, and municipal & industrial industries.  Combining unmatched proprietary analytics, coupled with enhanced supply models, the Debtor is recognized as the market-leader for providing forward-thinking supply chain capabilities.

7.      The Debtor is an authorized distributor for tier-1 domestics pipe mills and product manufacturers.  The Debtor maintains strategically located turnkey stocking yards with service and freight infrastructure throughout the United States, which provides its customers with a "one stop shop" for all their OCTG needs.

8.      A more detailed description of the Debtor's business and the facts and circumstances supporting the Debtor's chapter 11 case is set forth in the *Declaration of Jared Light in Support of Eagle Pipe, LLC's Chapter 11 Petition and First Day Relief* [Docket No. 17].

9.      The Court's *Interim Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 32] (the "Cash Collateral Order") sets forth certain sale milestones (the "Milestones")

to which the Debtor agreed in conjunction with reaching an agreement for the consensual interim and final use of cash collateral with its prepetition secured lenders.  *See* Cash Collateral Order ¶ 18.

10.     As set forth in the Cash Collateral Order, the Secured Parties (as defined in the Cash Collateral Order) hold perfected first-priority security interests in substantially all of the Debtor's Assets, including inventory, accounts, cash and certain causes of action described in the Cash Collateral Order.  The Debtor has stipulated to the amount of the Secured Parties' pre-petition claim.  While the Debtor is optimistic that the sale process described herein will generate a purchase price in excess of the secured debt owed to the Secured Parties, the Debtor believes the Secured Parties will ultimately consent to a free and clear sale under section 363(f) of the Bankruptcy Code, even if the sale is insufficient to pay the Secured Parties in full.  As of the filing of this Motion, the Secured Parties have not consented to such a sale.

## RELIEF REQUESTED

11.     This Motion seeks relief in two stages.  First, the Debtor seeks an order, substantially in the form attached hereto as **Exhibit A**, approving the Bidding Procedures, authorizing the Auction, and scheduling the Sale Hearing.  Second, the Debtor seeks an order, substantially in the form attached hereto as **Exhibit B**, approving the Proposed Sale and related transactions at the Sale Hearing.

**A.**     **Proposed Sale Timeline**

12.     The Debtor proposes to solicit bids, conduct the Auction, and have a Proposed Sale approved on the following timeline:

| | |
|---|---|
| Hearing to Approve Bidding Procedures | October 22, 2020 at 3:30 p.m. (CT) |
| Deadline to file initial Cure Notice: | November 4, 2020 |
| Deadline for Notice of Stalking Horse: | November 9, 2020 |
| Deadline to submit bids (the "Bid Deadline"): | November 16, 2020 at 4:00 p.m. (CT) |
| Deadline for objections to Sale, including Cure Amounts:[3] | November 18, 2020 at 4:00 p.m. (CT) |
| Notifications to Qualified Bidders: | November 19, 2020 |
| Auction: | November 20, 2020 at 10:00 a.m. (CT) |
| Return of Deposit to non-Qualified Bidders: | By November 23, 2020 |
| Deadline to file notice of Auction results: | November 24, 2020 |
| Deadline to object to Auction results: | November 27, 2020  at 4:00 p.m. (CT) |
| Sale Hearing: | November 30, 2020 at 9:00 a.m. (CT) |
| Deadline to consummate Sale: | December 11, 2020 |

13.     The Debtor believes that the above timeline is reasonable under the circumstances, and otherwise complies with the Milestones and requirements for the sale process set forth in the Cash Collateral Order.[4]  The Debtor has begun an expedited marketing process to provide parties in the industry an opportunity to file bids.  These deadlines are consistent with deadlines often established for asset sales in other chapter 11 cases.

**B.    <u>Bidding Procedures</u>**

14.     The Debtor requests that the Court approve the Bidding Procedures, attached to the Bidding Procedures Order as **<u>Exhibit 1</u>**.  The Bidding Procedures are designed to maximize value for the Debtor's estate while ensuring an orderly process.  The Bidding Procedures describe, among other things, the manner in which bidders and bids become "qualified," the receipt and negotiation of bids received, the conduct of any Auction, the ultimate selection of the Successful

---

[3] The Debtor has advised counsel for the Administrative Agent that it is willing to extend such deadline by stipulation of the parties, without prejudice to further extensions.

[4] By e-mail from counsel to the Administrative Agent on October 9, 2020, the original deadline of October 9, 2020, for the filing of this Motion, was extended to October 12, 2020, with the consent of the Secured Parties.

4822-7919-9436.7

Bidder, and the Court's approval thereof. The Bidding Procedures also address the various combinations and permutations that may occur during the process, *to wit*, an all-asset, going concern sale or a sale or sales of a smaller portion of the Debtor's assets.

15.     The proposed Bidding Procedures provide, in summary fashion, as follows:[5]

(a)     <u>Sale of Assets or Going Concern Transaction</u>: The Debtor is entertaining bids for a proposed (i) sale of all of its assets or (ii) going concern sale.

Any Successful Bidder(s) will be obligated to assume the assumed liabilities as may be set forth in any purchase agreement and the Debtor will assume and assign the assumed contracts to the Successful Bidder(s), as may be set forth in any purchase agreement(s) accepted by the Debtor.

(b)     <u>"As Is, Where Is"</u>: Any Proposed Sale(s) entered into with the Debtor will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or estate, except as may be set forth in a purchase agreement(s) with a Successful Bidder(s).

(c)     <u>Free of Any and All Claims and Interests</u>: Any Proposed Sale entered into with the Debtor will be free and clear of all liens, claims, interests, and encumbrances (collectively, the "<u>Claims and Interests</u>"), with such Claims and Interests attaching to the net proceeds of the sale.

(d)     <u>Participation and Bid Requirements</u>: Any person or entity who wishes to participate in the Bidding Process (a "<u>Potential Bidder</u>") must become a Qualified Bidder as indicated within the Bidding Procedures.

(e)     <u>Due Diligence</u>: Following execution of a Confidentiality Agreement, the Debtor will afford each Potential Bidder an opportunity to perform due diligence with respect to its businesses and assets. The Debtor has designated B. Riley Advisory Services ("<u>B. Riley</u>") to coordinate all reasonable requests for additional information and due diligence access from Potential Bidders about the businesses or the Assets. After the Bid Deadline, the Debtor and B. Riley are not required to furnish any information of any kind related to the businesses or the Assets to any person that is not a Qualified Bidder.

(f)     <u>Bid Deadline</u>: A Qualified Bidder (other than a potential Stalking Horse Bidder and the Secured Parties) who desires to make a bid must deliver written copies of its bid, along with the Required Bid Documents (as defined within the Bidding Procedures) to the Debtor, B. Riley, any statutory committee (the "<u>Committee</u>"), and counsel to the

---

[5] This summary is qualified in its entirety by reference to the provisions of the Bidding Procedures themselves. In the event of any inconsistencies between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern. Unless otherwise defined, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures.

Administrative Agent (and together with the Committee, the "<u>Consulting Parties</u>") at the addresses contained within the Bidding Procedures no later than 4:00 p.m. Central Time on November 16, 2020 (the "<u>Bid Deadline</u>").

(g)  <u>Qualified Bids</u>: Administrative Agent, on behalf of the Secured Parties is deemed to be a Qualified Bidder.  A bid (other than any bid proposed by a potential Stalking Horse Bidder or the Agent) will be deemed a "Qualified Bid", as determined by the Debtor after consultation with the Consulting Parties, and considered by the Debtor only if the bid:

 i. is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Debtor than, those contained in the APA;

 ii. contains no contingencies of any type, other than Bankruptcy Court approval of the Proposed Sale and any applicable regulatory conditions;

 iii. other than any Stalking Horse Bid(s) that may be designated by the Debtor, is not conditioned upon any bid protections (such as a topping fee, termination fee, expense reimbursement, or similar type of payment);

 iv. contains the acknowledgements and representations as listed in the Bidding Procedures;

 v. includes a list of assumed contracts and assumed liabilities (if any), and a commitment to consummate the Proposed Sale and the assumption of the assumed liabilities (if any) within not more than seven (7) days after entry of an order by the Bankruptcy Court approving such Proposed Sale;

 vi. identifies each regulatory and third-party approval required for the bidder to consummate the Proposed Sale, if any, and the time period within which the bidder expects to receive such regulatory and third-party approvals;

 vii. discloses (i) the identity of the Potential Bidder (including the identification of any authorized officers, directors, shareholders and/or the ultimate beneficial owners of the Potential Bidder) and the terms of such participation, and (ii) any other term sheets and other written or oral understandings between the Potential Bidder and its affiliates on one hand, and any insider (as defined in section 101(31) of the Bankruptcy Code) of the Debtor, on the other;

 viii. is received by the Bid Deadline;

 ix. is accompanied by a cash deposit by wire transfer in an amount equal to 10% of the aggregate value of the cash and non-cash consideration of the bid to be held in an escrow account to be identified and established by the Debtor (the "<u>Deposit</u>"); provided that neither of the Secured Parties shall be required to provide a deposit with respect to the portion of any bid that is a Credit Bid; and

x.     contemplates payment in cash, in full, upon the closing of the Proposed Sale (other than a Credit Bid (as defined below)), unless the Debtor agrees otherwise, after consultation with the Consulting Parties.

(h)     <u>Auction</u>: If the Debtor receives more than one Qualified Bid, an auction (the "<u>Auction</u>") will be conducted, upon notice to all Qualified Bidders who have submitted Qualified Bids, at 10:00 a.m. Central Time on November 20, 2020, virtually and/or at the offices of Gray Reed, 1300 Post Oak Boulevard, Suite 2000, Houston, Texas 77056, in accordance with the terms of the Bidding Procedures.

(i)     <u>Closing of Auction Selection of Successful Bid</u>:  The Auction will continue until there is only one bid that the Debtor determine, in its business judgment, after consultation with the Consulting Parties, is the highest or otherwise best Qualified Bid for each asset or group of assets (such bid being the "<u>Successful Bid</u>" and the bidder making such bid, the "<u>Successful Bidder</u>").

(j)     <u>Back-Up Bidder</u>.  If there is an Auction, the Qualified Bidder that submits the second highest Bid at the Auction shall be required to serve as the back-up bidder (the "<u>Back-Up Bidder</u>") and keep such Back-Up Bidder's last Bid (the "<u>Back-Up Bid</u>") open and irrevocable until the earlier of (A) if a Proposed Sale, 5:00 p.m. Central Time on the date which is five days after the sale to the Successful Bidder becomes final and non-appealable; and (B) the closing of the Proposed Sale with the Successful Bidder (the "<u>Outside Back-Up Date</u>"); <u>provided</u>, that the Administrative Agent shall not be required to serve as a Back-Up Bidder.  If after the Sale Hearing but prior to the Outside Back-Up Date for a Proposed Sale, the Successful Bidder fails to consummate or proceed with the relevant Proposed Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to have the new Successful Bid, and the Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the Proposed Sale with the Back-Up Bidder.  The Debtor will provide notice to the Consulting Parties of any failure by the Successful Bidder to close the Proposed Sale and the election to proceed to close a Proposed Sale with the Back-Up Bidder.

(k)     <u>Right to Credit Bid</u>.  Any creditor that has a valid, perfected, unavoidable, and enforceable security interest (a "<u>Security Interest</u>") in the Debtor's assets (any such creditor, a "<u>Secured Creditor</u>"), which Security Interest is not subject to any contest or dispute in this chapter 11 case or otherwise, may make one or more credit bids for all or any portion of the secured claim(s) held by such Secured Creditor at the Auction, subject to the requirements of section 363(k) of the Bankruptcy Code (a "<u>Credit Bid</u>").  In order to qualify to Credit Bid, a Secured Creditor, other than the Administrative Agent on behalf of the Secured Parties, (i) must be a Qualified Bidder and a Credit Bid must qualify as a Qualified Bid, and (ii) that has a Security Interest in the assets being sold that is disputed, must have its Security Interests allowed prior to being able to submit a Credit Bid.  The Administrative Agent, on behalf of the Secured Parties, shall be deemed a Qualified Bidder to the extent of their allowed secured claims described in Paragraph 3 of the Cash Collateral Order, and shall be permitted, but not have the obligation, to submit a Credit Bid on behalf of the Secured Parties.  The Credit Bid may be submitted as a Back-Up Bid in the event that the sale to the Successful Bidder either does not close or the net proceeds from such sale are insufficient to

8

indefeasibly satisfy the Obligations in full in cash, and such Credit Bid expressly states that it is being submitted solely for such purposes (an "Agent Backup Credit Bid"). If Administrative Agent submits a Credit Bid or an Agent Backup Credit Bid, it will promptly submit a form of agreement after the Auction to reflect the terms of the transaction compromising the Credit Bid or Agent Backup Credit Bid, as applicable. Unless otherwise provided herein, all Qualified Bids shall be cash bids. For the avoidance of all doubt, the failure of the Administrative Agent to make a Credit Bid shall in no way be deemed acceptance to the Proposed Sale or any Proposed Sales or otherwise impair the Administrative Agent's rights to object to the Proposed Sale or Proposed Sales, or otherwise impair the Administrative Agent's rights under Bankruptcy Code section 363(f) to withhold consent from any Proposed Sale or Proposed Sales that is/are not acceptable to it.

(l)     Jurisdiction:  All bidders will be deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court, consented to the Bankruptcy Court entering final orders and judgments, and waived any right to a jury trial in connection with any and all disputes relating to, arising from, or connected with the Auction, the marketing process, the Proposed Sale, and the construction and enforcement of any purchase agreement.

(m)     Reservation of Rights:  Notwithstanding any term to the contrary in the Bidding Procedures, the Debtor, in consultation with the Consulting Parties, reserves the right to: (i) modify the Bidding Procedures at any time; (ii) determine which Qualified Bid, if any, is the highest or otherwise best offer; (iii) reject at any time, any bid that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the APA; or (c) contrary to the best interests of the Debtor, its estate, and creditors as determined by the Debtor after consultation with the Consulting Parties; and (iv) pursue a sale or other transaction through a chapter 11 plan.

## C.     Stalking Horse and Bid Protections

16.     In exercising of its business judgment, after consultation with the Consulting Parties,

the Debtor may, without any obligation to do so, select one or more bidders to act as a stalking horse

(each being a "Stalking Horse Bidder" with the relevant bid being a "Stalking Horse Bid"). Further, as

contemplated by the bidding Procedures Order, the Debtor will be permitted, but not directed, to incur

and pay a break-up fee in an amount not to exceed 4% of the cash component of a Stalking Horse Bid

and, in the Debtor's discretion, an expense reimbursement of no more than $200,000.00  (together, the "Break-Up Fee").[6]

17.     If the Debtor declares one or more Stalking Horse Bidders, it will promptly file a notice of the same with the Court, along with a copy of the Stalking Horse Bid(s) and the operative asset purchase agreement (the "APA") at least seven (7) days prior to the Bid Deadline.  Parties in interest will have five (5) days to object to the designation of the Stalking Horse Bid and any proposed Break-Up Fee.  Thereafter, if no objection is received or if the Court approves the designation of a Stalking Horse Bidder after considering any objections, the related Break-Up Fee will be paid upon out of the sale proceeds from the applicable sale or sales to a bidder or bidders who are not the Stalking Horse Bidder(s).

**D.     The Sale Notice, Auction, and APA**

18.     Within three (3) business days after entry of the Bidding Procedures Order, the Debtor will serve copies of the Motion and Bidding Procedures Order, including (i) a copy of the Bidding Procedures attached thereto as **Appendix 1**, and (ii) the notice of Bid Deadline, Auction, and Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Appendix 2** (the "Sale Notice") (collectively the "Bid Package").  The Debtor will serve the Bid Package by first class U.S.  mail, postage prepaid, upon the following (collectively, the "Bid Notice Parties"): (a) all potential buyers previously identified or solicited by the Debtor or B. Riley and any additional parties who have previously expressed an interest to the Debtor or B. Riley in

---

[6] As of the filing of this Motion, the Administrative Agent, through its counsel, has indicated that the Secured Parties will consent to a Break-Up Fee of up to 3% of the purchase price, inclusive of any fees and expenses incurred by the stalking horse bidder.  As of the filing of this Motion, the Administrative Agent has not consented to the incurrence or payment of any Break-Up Fee that (i) exceeds 3% in total of the cash consideration paid in any proposed sale, (ii) is to be paid in the event that the Administrative Agent's Credit Bid or Agent Backup Credit Bid is designated as the highest and best bid, or (iii) is to be paid to any "insider" as defined in Section 101 of the Bankruptcy Code or any other party with a relationship such that the Break-Up Fee is not actually necessary to induce the Stalking Horse Bidder to serve in such capacity.  The Administrative Agent reserves all rights to object to any proposed Break-Up Fee on any basis in response to the Debtor's designation of a Stalking Horse Bidder.

potentially acquiring the Assets, (b) other potentially interested parties identified by the Debtor or its advisors; (c) the U.S. Trustee; (d) counsel to any statutory committee; (e) counterparties to the Debtor's executory contracts and unexpired leases; (f) any parties that have asserted a lien or security interest against or any other interest in, including, without limitation, preferential purchase rights or rights of first refusal on, any of the Debtor's assets; (g) any taxing authorities related to the Debtor's assets; and (h) all parties who have requested notice in this case.[7]

19.     At the Auction, to the extent a Stalking Horse Bidder has been named, the initial overbid must exceed such Stalking Horse Bid by the amount of the Break-Up Fee plus an additional $100,000.  Thereafter, or in the event no Stalking Horse Bidder has been named, the minimum bidding increment (the "Subsequent Bids" and each a "Subsequent Bid") shall be $100,000.  The amount of the Subsequent Bids may be increased or decreased by the Debtor, in its discretion, in consultation with the Consulting Parties.  The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids.

**E.     Potential Assumed Contracts and Cure Notice**

20.     The Debtor may seek to assume and assign to the Successful Bidder certain executory contracts and unexpired leases to be designated by the Successful Bidder.  On or before November 4, 2020, the Debtor proposes to file with the Court an initial schedule of executory contracts and unexpired leases that may be assumed and assigned as part of the Proposed Sale (the "Potential Assumed Contracts").  Concurrently therewith, the Debtor will serve a cure notice

---

[7] All such entities will also be served by electronic mail to the extent the Debtor and B. Riley have electronic mail addresses for such parties.

4822-7919-9436.7

substantially in the form attached to the Bidding Procedures Order as **Appendix 3** (the "Cure Notice") upon each counterparty to the Potential Assumed Contracts (each, a "Counterparty"). The Cure Notice shall identify the amounts, if any, that the Debtor believes are owed to each Counterparty to a Potential Assumed Contract in order to cure any defaults that may exist under such contract (the "Cure Amount"). Pursuant to the Bidding Procedures Order, the Cure Notice shall also state the applicable date, time, and place of the Auction and Sale Hearing, and provide the date and time by which any objection (the "Cure Objection") to (i) the assumption and assignment of the applicable Potential Assumed Contract on the basis of lack of adequate assurance of future performance under section 365(b)(1) or (ii) the Cure Amount must be filed and served by the Counterparty. If a contract or lease is assumed and assigned under the Proposed Sale, then unless a Counterparty properly and timely files and serves a Cure Objection pursuant to the Cure Notice, the Counterparty will receive payment from the Successful Bidder of the Cure Amount (if any) as set forth in the Cure Notice consistent with the terms and procedures set forth in the APA approved by the Court.

21.     Prior to the commencement of the Sale Hearing, the Debtor shall file with the Court a final schedule (the "Assumed Contract Schedule") of executory contracts and unexpired leases elected to be assumed by the Successful Bidder (the "Assumed Contracts"). At the Sale Hearing, the Debtor shall seek authority to assume and assign the Assumed Contracts to the Successful Bidder effective as of the closing of the Proposed Sale; *provided, however*, that the Successful Bidder may remove or add any executory contract or unexpired lease to or from the Assumed Contract Schedule at any time up to the closing of the Proposed Sale. The Counterparty to any such addition or removal will be notified by written notice via first class U.S. mail by no later than two (2) business days from such determination.

22.     If at any time after service of the Cure Notice and before closing of the proposed Sale the Debtor identify additional Potential Assumed Contracts not included in the initial Cure Notice, the Debtor will serve a supplemental Cure Notice on the counterparties to the additional Potential Assumed Contracts and such counterparties will have until the later of (i) 4:00 p.m. Central Time on November 18, 2020; or (ii) ten (10) days from service of the supplemental Cure Notice to object inclusion of the additional contract or lease.

## ARGUMENT AND AUTHORITIES

**A.     The Bidding Procedures are appropriate and ensure that the bidding process is fair, reasonable, and will yield the maximum value to the Debtor and its estate, creditors, stakeholders, and other parties in interest.**

23.     The Debtor respectfully submits that the Bidding Procedures meet the standard set forth in section 363(b) for sales outside of the ordinary course of a debtor's business.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

24.     This Court's power under Bankruptcy Code section 363 is supplemented by section 105(a), which provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  As set forth below, the Debtor submits that it has satisfied the requirements of sections 105 and 363 as those sections have been construed by courts in the Fifth Circuit.

25.     To approve a sale under section 363(b)(1) of the Bankruptcy Code, the Fifth Circuit requires a debtor to show that the decision to sell the property outside of the ordinary course of business was based on the debtor's business judgment.  *See Inst'l Creditors of Cont'l Airlines, Inc. v Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986); *In re San Jacinto Glass Indus., Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988).  A bankruptcy court is to

13

give deference to the business judgment of the trustee or debtor in possession when it deems the sale to be appropriate. *See Esposito v. Title Ins. Co. of Pa.* (*In re Fernwood*), 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987); *see also In re Rodriguez*, 353 B.R. 144, 149 (Bankr. N.D. Tex. 2006).

26.     Once the Debtor articulates a valid business justification, its decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Therefore, any party objecting to the Debtor's proposed asset sale must make a showing of "bad faith, self-interest, or gross negligence." *See id.* at 656; *see also In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) ("In the absence of a showing of bad faith or an abuse of business discretion," a court will not alter a debtor's business judgment while analyzing a debtor's decision to assume/reject contracts).

27.     The paramount goal in any proposed sale of property of a debtor's estate is to maximize the proceeds received by the estate. *See Cadle Co. v. Moore (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010) (debtor in possession "has the duty to maximize the value of the estate"); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985) (same). Thus, it is appropriate to approve bidding procedures that benefit a debtor's estate by maximizing the value of the debtor's assets. *See In re TM Vill., Ltd.*, No. 18-32770, 2019 WL 1004571, at *10 (Bankr. N.D. Tex. Feb. 28, 2019) ("As long as the sale appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to sell should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code") (quoting

4822-7919-9436.7

*Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)); *In re Edwards*, 228 B.R. 552, 561 (Bankr. N.D. Pa. 1998); *In re Tex. Rangers Baseball Partners*, 431 B.R. 706, 711 (Bankr. N.D. Tex. 2010); *Integrated Res. Inc.*, 147 B.R. at 659.

28.     The Debtor has sound business justifications for pursuing a Transaction and seeking approval of the Bidding Procedures at this time.  The Debtor believes that the Bidding Procedures will set the parameters by which the value of the Debtor's assets and the overall transaction value may be established and tested.  The Bidding Procedures will thus create a competitive and fair bidding process and increase the likelihood that the value of the Assets are maximized.

29.     The Debtor also believes that the Bidding Procedures will promote active bidding from seriously interested parties, and will dispel any doubt as to the highest and best offer reasonably available for the Debtor's assets (or the businesses, to the extent there is a going concern transaction).  The Bidding Procedures will allow the Debtor to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate an ability to close the Proposed Sale.  The Debtor believes that the Bidding Procedures will encourage bidding, are consistent with other procedures previously approved by courts in this and other districts, and are appropriate under the relevant legal standards.  *See generally, e.g.*, *In re GGI Holdings, LLC,* Case No. 20-31318 (Bankr. N.D. Tex. June 11, 2020); *In re Walker County Hospital Corp.*, Case No. 19-36300 (Bankr. S.D. Tex. Nov. 14, 2019) [Docket No. 67]; *In re Epic Companies, LLC*, Case No. 19-34752 (Bankr. S.D. Tex. Oct. 3, 2019) [Docket No. 227]; *In re Lockwood Holdings, Inc.*, Case No. 18-30197 (Bankr. S.D. Tex. Jul. 17, 2018) [Docket No. 513].

**B.      The form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing are reasonable, adequate, and appropriate.**

30.      The Debtor requests that the Court schedule two hearings in connection with this Motion: first, a hearing to consider and approve the Bidding Procedures and schedule the Auction, Sale Hearing, and related deadlines; and second, the Sale Hearing itself.

31.      As set forth above, the Debtor will serve the Bid Package and Sale Notice on the Bid Notice Parties within three (3) days of entry of the Bidding Procedures Order.  The date for the Sale Hearing —November 30, 2020—complies with Bankruptcy Rules 2002(a)(2), 6004, and 6006(c), as such date will be more than twenty one (21) days after service of the Bid Package. Further, the materials in the Bid Package will comply with Bankruptcy Rules 2002(c)(1) and 6004(f)(1), as the same will contain the information required by such Bankruptcy Rules.  As a result, the Debtor respectfully submits that the Bid Package and the Sale Notice satisfy the notice and information requirements of Bankruptcy Rules 2002, 6004, and 6006(c), and section 363 of the Bankruptcy Code, and that such notice is good and sufficient in that no other or further notice is required.

**C.      The Break-Up Fee is reasonable and necessary to ensure maximum value for the Debtor's assets.**

32.      As has been demonstrated over the years, obtaining a stalking horse bidder is often key to a successful, efficient, and value-maximizing sale process.  The presence of a stalking horse sets a floor for the auction and encourages bidding, thereby maximizing the seller's return.  To receive this benefit, however, the Debtor needs to be able to compensate a Stalking Horse Bidder for the risk it takes by (i) entering into an agreement that is subject to higher and better offers without any assurances that its transaction will ultimately be consummated, (ii) exposing its bid to the market, and (iii) standing by its bid commitment while the marketing and sale process plays itself out.  The Debtor, therefore, requests that the Court approve the Break-Up Fee.

33.     Break-up fees and other bid protections are a normal and customary—and sometimes necessary—component of sales outside the ordinary course. *Integrated Res.*, 147 B.R. at 659-60 ("[B]ecause the directors of a corporation have a duty to encourage bidding, break-up fees can be *necessary* to discharge the directors' duties to maximize value") (emphasis in original); *See, e.g., In re GGI Holdings, LLC,* Case No. 20-31318 (HDH) (Bankr. N.D. Tex. June 11, 2020) (approving break-up fee of 3% for an insider purchaser under similarly short timelines); *In re Lockwood Holdings, Inc.*, Case No. 18-30197 (DRJ) (Bankr. S.D. Tex. July 17, 2018) (approving break-up fee of 3% for potential stalking horse(s) to be named later); *In re Stone Energy Corp.*, Case No 16-26390 (MI) (Bankr. S.D. Tex. Jan. 18, 2017) [Docket No. 316] (approving a break-up fee in the amount of $10,800,00, or 3% of the purchase price); *In re CXM, Inc.,* 307 B.R. 94, 104 (Bankr. N.D. Ill. 2004) (approving a $200,000 break-up fee protecting stalking horse bidder); *In re Outboard Marine Corp.*, Case No. 00-37405-EIK-11 (Bankr. N.D. Ill. Jan. 10, 2001) [Docket No. 217] (authorizing payment of a 3% break-up fee to potential bidders); *In re 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28-29 (Bankr. S.D.N.Y. 1989) (finding that $500,000 break-up fee was not unreasonable absent evidence that it chilled the bidding).

34.     To warrant approval of break-up fees and expenses, the Fifth Circuit in *Asarco* required a showing that the requested fees and expenses are supported by a sound business justification. *Asarco, Inc., v. Elliot Mgmt. (In re Asarco, LLC)*, 650 F.3d 593, 597-98, 602-03 n. 9 (5th Cir. 2011) (favoring business judgment standard governing use of assets outside of ordinary course of business, rather than the standard for administrative expenses, in assessing propriety of fees and expenses incurred by bidders).

35.     Here, the Debtor asserts that the proposed Break-Up Fee, of up to 4% of the purchase price and $200,000 in out-of-pocket expenses, will be within the range of reasonableness

and supported by a sound business justification.  Generally speaking, courts have found break-up fees to be reasonable, and approved the same, ranging up to approximately five percent (5%) of the consideration to be received.  *See Integrated Res.*, 147 B.R. at 662 (noting expert testimony that 3.3% is industry average for break-up fees); *see also, e.g.*, *In re GGI Holdings, LLC,* Case No. 20-31318 (HDH) (Bankr. N.D. Tex. June 11, 2020) (approving 3% break-up fee); *In re Stone Energy Corp.*, No. 16-36390 (MI) (Bankr. S.D. Tex. Jan. 18, 2017) (approving 3% break-up fee); *In re UGHS Senior Living, Inc.*, No. 15-80399 (DRJ) (Bankr. S.D. Tex. Nov. 24, 2015) (approving 3% break-up fee and 1% expense reimbursement); *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y., Apr. 8, 2004) (approving break-up fee equal to 5% of the purchase price); *In re TransCom USA Mgmt Co., L.P.*, No. 01-35158 (KKB) (Bankr. S.D. Tex., Feb. 12, 2002).

36.     The Debtor, in its business judgment, believes it is reasonable and appropriate to provide the requested Break-Up Fee, which is consistent with other break-up fees approved in this District, as set forth above.  As explained above, the Administrative Agent disputes the Debtor's assertions regarding the reasonableness of the proposed Break-Up Fee and reserves all rights to challenge the same if and when the Debtor designates a Stalking Horse Bidder.

**D.     Any Proposed Sale Should be Approved Free and Clear of Liens, Claims, Interests, and Encumbrances.**

37.     Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim, interest, or encumbrance in such property if, among other things:

> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4)      such interest is in bona fide dispute; or

(5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

38.      Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice for approval of the proposed sale. *See, e.g., In re Partners Oil Co.*, 216 B.R. 399, 401 (Bankr. S.D. Tex. 1998) (allowing a sale free and clear of liens when just one of the subsections of 363(f) were met); *In re Collins*, 180 B.R. 447, 449-50 (Bankr. E.D. Va. 1995) ("Section 363(f) is phrased in the disjunctive, such that only one of the enumerated conditions must be met in order for the Court to approve the proposed sale"); *Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apts., Ltd.)*, 159 B.R. 821, 827 (N.D. Ill. 1993) (sale extinguishes liens under section 363(f) as long as one of the five specified exceptions applies).

39.      Section 363(f) permits the Proposed Sale to proceed free and clear of all liens, claims, interests, and encumbrances, except for any liabilities specifically assumed by the Successful Bidder.  Each lien, claim, interest, or encumbrance that is not the result of an assumed liability satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code. Indeed, the Debtor believes that none of the Secured Parties will oppose the underlying Sale at the Sale Hearing, because they will either be paid in full in cash from the sale proceeds (or will be paid an agreed upon amount), or the ultimate sale price will be sufficient to gain the Secured Parties' consent.  11 U.S.C. § 363(f)(2).  To the extent the Debtor seeks to sell any Assets on which an entity other than one of the Secured Parties has a lien, such party will receive the Sale Notice and will have an opportunity to object.  Further, to the extent one of the Secured Parties or any other entity with a lien on any assets to be sold has an objection to the Sale, but the Debtor nonetheless decides to proceed with the Proposed Sale over such objection, the Debtor will present

appropriate evidence and lay the necessary foundation at the Sale Hearing to support approval of the Proposed Sale.

40.     The Debtor further submits that any lien, claim, interest, or encumbrance will be adequately protected by attachment to the net proceeds of the Sale, in the same order of priority as existed prior to the Petition Date, and all parties' rights to object to such Sale are preserved. Accordingly, the Debtor requests that the Proposed Sale to the Successful Bidder be free and clear of all liens, claims, interests, and encumbrances, with such liens, claims, and encumbrances to attach to the proceeds of the Proposed Sale to the extent such proceeds are not otherwise paid to the Administrative Agent for the benefit of the Secured Parties.

**E.     The Stalking Horse, or the Successful Bidder, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code, and the Proposed Sale should be deemed not avoidable pursuant to section 363(n) of the Bankruptcy Code.**

41.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

42.     While the Bankruptcy Code does not define "good faith," the Fifth Circuit has held that a good faith purchaser is one who "purchases the assets for value, in good faith, and without notice of adverse claims." *Hardage v. Herring Nat'l Bank,* 837 F.2d 1319, 1323 (5th Cir. 1988) (quoting *Willemain v. Kivitz (In re Willemain),* 764 F.2d 1019, 1023 (4th Cir. 1985)). Furthermore, the good faith status of a purchaser can be destroyed with evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *TMT Procurement Corp. v. Vantage Drilling Co.* (*In re TMT Procurement Corp.*), 764 F.3d 512, 521 (5th Cir. 2014).

43.     The Debtor submits, and will present evidence at the Sale Hearing that, the Proposed Sale is an arms' length transaction, in which the Successful Bidder and the Debtor at all times acted in good faith.  In connection with approval of the proposed Sale, the Debtor requests that the Court make a finding that the Successful Bidder is a good faith purchaser and entitled to the protections of section 363(m) of the Bankruptcy Code.

F.     **The assumption, assignment, and cure procedures relating to the Assumed Contracts are appropriate and should be approved.**

44.     In connection with the Proposed Sale, the Debtor seeks authority to assume and assign the Assumed Contracts (if any) to the Successful Bidder.  In the event the Debtor seeks to assume and assign any contracts or leases, the Debtor will file and serve the Cure Notice no later than November 4, 2020, subject to amendment and supplementation prior to the Sale Hearing.  The Debtor requests that objections, if any, to the Cure Amount be filed by no later than November 18, 2020, and objections, if any, to the assumption and assignment of the Assumed Contracts on any other grounds be filed by no later than November 27, 2020.  If an objection to the assumption and assignment of the Assumed Contracts or to the Cure Notice and any Cure Amount cannot be resolved consensually among the parties, then the Debtor requests that the Court set a hearing to determine such matters as soon thereafter as is practicable, with notice only to the objecting party and those parties who have filed a notice of appearance.  The Cure Amounts set forth in the Cure Notice shall be binding on all parties unless an objection thereto is timely filed and served.  The failure to timely file and serve an objection shall be deemed consent to the assumption and assignment of the Assumed Contracts and to the Cure Amount, and any and all objections thereto shall be deemed forever released and waived as of the date of the Sale Hearing.

45.     Section 365(f)(2) of the Bankruptcy Code provides that:

> [t]he trustee may assign an executory contract or unexpired lease of the debtors only if –

(A)      the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)      adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

46.      Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The standard governing bankruptcy court approval of a debtor's decision to assume or reject executory contracts or unexpired leases of nonresidential real property is whether the debtor's reasonable business judgment supports assumption or rejection. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *see also Tex. Health Enters. Inc. v. Lytle Nursing Home (In re Tex. Health Enters. Inc.)*, 72 F. App'x 122, 127 (5th Cir. 2003) ("[T]he bankruptcy code makes it clear that it is the choice of the debtor-in-possession, and not the bankruptcy court, to assume or reject an executory contract"); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (Bankr D. Del. 2006).

47.      Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor:

(b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

(A)      cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;

(B)      compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)      provides adequate assurance of future performance under such contract or lease.

48.      Courts give the phrase "adequate assurance of future performance" in section 365(b)(1) a "practical, pragmatic construction."  *See, e.g., Appeal of Ill. Inv. Tr. v. Allied Waste*

*Indus., Inc. (In re Res. Tech. Corp.)*, 624 F.3d 376, 383-84 (7th Cir. 2010) (adequate assurance required showing that performance was more likely to occur than not); *EBG Midtown S. Corp. v. McLaren/Hart Envtl Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992) (the presence of adequate assurance should be "determined under the facts of each particular case"); *In re Fifth Ave. Originals*, 32 B.R. 648, 652 (Bankr. S.D.N.Y. 1983) (holding that adequate assurance was furnished on two separate grounds).   The phrase "adequate" assurance is not synonymous with "total" assurances.  *See, e.g., In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance"); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J. 1988) ("the required assurance will fall considerably short of an absolute guarantee of performance"); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) ("[I]t does not mean absolute insurance that the debtor will thrive and make a profit").

49.     To the extent the Successful Bidder desires the Debtor to assume and assign some or all of the Debtor's executory contracts or unexpired leases, the Debtor has determined that such assumption and assignment is an exercise of sound business judgment and is in the best interests of the Debtor, its estate, and creditors.  To the extent that any defaults exist under any Assumed Contract, the Debtor will cure, or make provisions for the cure of, any such default, as set forth in the Cure Notice.

## NOTICE

50.     The Debtor will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel for the Secured Parties; (c) counsel for the Stalking Horse Bidder; (d) the holders of the 30 largest unsecured claims against the Debtor; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## WAIVER OF BANKRUPTCY RULE 6004(h)

51.     In light of the Milestones and the need to comply therewith, as well as the need and desire to move swiftly towards closing of the sale, the Debtor requests that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

## NO PRIOR REQUEST

52.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court: (A) enter an Order (i) approving the Bidding Procedures and the Break-Up Fee; (ii) scheduling the Auction Hearing and associated deadlines; and (iii) approving the form and manner of notice of the Auction and the Sale Hearing and certain bidding protections as described herein; (B) enter a second Order, at the Sale Hearing (to the extent a Sale Hearing occurs), (x) authorizing and approving the Proposed Sale free and clear of liens, claims, interests, and encumbrances to the Successful Bidder, (y) approving the assumption and assignment of the Assumed Contracts, and (z) approving the assumption of the assumed liabilities by the Successful Bidder; and (C) grant such other and further relief as may be just and proper.

*[Remainder of this page intentionally left blank]*

4822-7919-9436.7

Respectfully submitted this 12th day of October, 2020.

**GRAY REED**

By: _/s/ Paul D. Moak_____

    Paul D. Moak
    Texas Bar No. 00794316
    Aaron M. Kaufman
    Texas Bar No. 24060067
    Lydia R. Webb
    Texas Bar No. 24083758
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:    (713) 986-7000
Facsimile:    (713) 986-7100
Email:    pmoak@grayreed.com
    akaufman@grayreed.com
    lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTOR**

**CERTIFICATE OF SERVICE**

I do hereby certify that on October 12, 2020 a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in this case and on the parties appearing on the attached service list via first class U.S. mail, postage prepaid.

_/s/ Paul D. Moak_____
Paul D. Moak