# EXHIBIT H



**PURCHASE ORDER TERMS AND CONDITIONS**

1. **APPLICABILITY / MODIFICATION** - These terms and conditions ("**Terms**") together with the terms and conditions on the face of the purchase order submitted by Buyer to Supplier (the "**Order**"), govern the purchase of the goods described on the face of the Order (the "**Goods**") and are an integral part of the offer by Eagle Pipe, LLC ("**Buyer**") to the party to whom the Order is addressed ("**Supplier**").  The Order is an offer to purchase material.  In the event the Order is determined to be an acceptance of an offer by Supplier to sell material, Buyer's acceptance of Supplier's offer is expressly conditioned upon Supplier's acceptance of these Terms and any additional or different terms proposed by Supplier are rejected.  The Order and these Terms constitute the entire agreement of the parties with respect to the Goods, and supersede all prior or contemporaneous understandings, agreements, negotiations, representations, and communications, both written and oral, with respect to the Goods.  The Order and these Terms expressly limit Supplier's acceptance to the terms of the Order and these Terms.  The Terms prevail over any terms or conditions contained in any other document and expressly exclude any of Supplier's terms and conditions of sale or any other document issued by Supplier in connection with the Order.  These Terms apply to any repaired or replacement Goods provided by Supplier hereunder.  Except where specifically provided herein, in the event of a conflict between these Terms and the terms on the face of the Order, the terms on the face of the Order shall prevail and control.  No change to the Order or these Terms is binding upon Buyer unless it is in writing and is signed by an authorized representative of Buyer.

2. **THE ORDER**.  If Supplier does not accept the Order in writing within 30 days of Supplier's receipt of the Order, the Order will be deemed cancelled regardless of the terms of the Order, unless Buyer explicitly states otherwise in writing. If the Order is not cancelled and the Goods are shipped within 30 days of the Order, then Supplier will be deemed to have accepted and agreed to these Terms and any other terms contained in the Order.

3. **SHIPPING TERMS**.  Delivery shall be made DDP (Incoterms 2010) to the address specified in the Order (the "Delivery Location").  Supplier will give written notice of shipment to Buyer when the Goods are delivered to a carrier for transportation and, upon request, provide shipping documentation. The Order number must appear on all shipping documents, invoices, and any other documents pertaining to the Order.  All goods will be packed for shipment in a manner sufficient to ensure the Goods are delivered without damage.   Supplier will ensure that all Bills of Lading for Goods delivered to Buyer shall be marked "pre-paid."  Supplier shall ensure that any freight forwarders, carriers, shipping and delivery companies or any other person or entity used to deliver Goods to or on behalf of Buyer or Buyer's customers have waived, in writing, any and all right to payment from Buyer and Buyer's customers, it being agreed that Supplier shall be responsible for all shipping costs for Goods delivered to Buyer.  **SUPPLIER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS BUYER GROUP (DEFINED INFRA) FROM ALL FINES, COSTS, PENALTIES, LIABILITIES AND CLAIMS OF EVERY KIND, INCLUDING ATTORNEYS' FEES, COSTS OF SUIT, SETTLEMENTS, JUDGMENTS, AND OTHER EXPENSES TO WHICH BUYER MAY BE SUBJECT ARISING OUT OF THE SHIPMENT OF GOODS TO BUYER REGARDLESS OF CAUSE, EVEN IF CAUSED BY THE SOLE, JOINT, OR CONCURRENT NEGLIGENCE OR FAULT OF BUYER GROUP.  SUPPLIER'S OBLIGATION TO DEFEND, INDEMNIFY AND HOLD BUYER HARMLESS UNDER THIS SECTION 3 SHALL NOT IN ANY MANNER BE LIMITED BY ANY LIMITATION ON THE AMOUNT OR TYPES OF DAMAGES, COMPENSATION OR BENEFITS PAYABLE BY BUYER, ITS AGENTS OR SUBCONTRACTORS UNDER APPLICABLE WORKER'S COMPENSATION ACTS, DISABILITY BENEFIT ACTS OR OTHER EMPLOYEE BENEFIT ACTS, AND SUPPLIER SPECIFICALLY WAIVES ANY IMMUNITY IT MAY HAVE UNDER SUCH ACTS.**

4. **CANCELLATION**.  Buyer may cancel the Order and return the Goods at any time prior to Buyer's actual inspection and acceptance of the Goods.  In addition to any remedies that may be provided under these Terms, and notwithstanding any Term or term on the face of the Order, Buyer may cancel the Order with immediate effect either before or after the acceptance of the Goods, if: (i) Supplier has not performed or complied with any of these Terms or the terms on the face of the Order, in whole or in part; (ii) Supplier becomes insolvent, files a petition for bankruptcy, or commences, or has commenced against it proceedings relating to bankruptcy, receivership, reorganization or assignment for the benefit of creditors, or (iii) the customer for whom Buyer purchased the Goods cancels its orders for the Goods or otherwise fails or refuses to pay for the Goods for any reason.

5. **DELIVERY DATE**.  Supplier shall deliver the Goods in the quantities and on the date(s) specified in the Order or as otherwise agreed in writing by the parties (the "Delivery Date").  Timely delivery of the Goods is of the essence.  In the event of delay or anticipated delay, from any cause, Supplier will immediately notify Buyer.  If Supplier fails to deliver the Goods in full by the Delivery Date, Buyer may, notwithstanding any term in the Order, terminate the Order immediately by providing written notice to Supplier **AND SUPPLIER SHALL DEFEND AND INDEMNIFY BUYER AGAINST ANY LOSSES, CLAIMS, DAMAGES, AND REASONABLE COSTS AND EXPENSES ATTRIBUTABLE TO SUPPLIER'S FAILURE TO DELIVER THE GOODS BY THE DELIVERY DATE**.

6. **INDUSTRY TERMS**.  Notwithstanding any Term, each of the terms below, to the extent used on the face of the Order, shall have the following meanings and shall control:

"Loaded Trucks" – Buyer's acceptance of the Goods and the transfer of title to the Goods to Buyer will not occur until: (i) the Goods are loaded on to Buyer's truck at the Delivery Location; and (ii) Buyer inspects the Goods and finds that the Goods conform to the Order.  Until such time, Supplier will bear the risk of loss of the Goods, and Supplier will pay for any and all storage and load out fees at the delivery site, and any fees associated with the return of the Goods to Supplier.

"Cancellable" - Until Buyer inspects and accepts the Goods, Buyer may cancel the Order, and Buyer will not be responsible for paying for the Goods, related storage, shipment, and return fees, or any other related costs.

"Returnable" – Buyer may return all or some of the Goods to Supplier, at Supplier's expense and risk, at any time for any reason, including after acceptance of the Goods by Buyer.  If and only if Buyer returns conforming Goods timely delivered in accordance with the Order, Buyer will incur the costs to transport the Goods back to the Delivery Site, costs to unload the returned Goods at the Delivery Site, fees reasonably necessary to inspect the returned Goods, and costs to repair the returned Goods to the extent they were damaged by Buyer.

"Cancellable / Non-returnable" – Buyer may cancel the Order and return the Goods at any time before Buyer ships the Goods to Buyer's customer.  If, and only if, Buyer returns conforming Goods timely delivered in accordance with the Order, Buyer will incur the costs to transport the Goods back to the Delivery Location, to unload the returned Goods at the Delivery Location, fees reasonably necessary to inspect the returned Goods, and costs to repair the returned Goods to the extent they were damaged by Buyer.

"Non-Cancellable / Non-Returnable" – Buyer, subject to the other cancellation and return rights provided by the Terms, may not cancel the Order or return the Goods.

"Bills as ships" – Buyer shall have no obligation to pay for any Goods until: (i) Buyer inspects the Goods; (ii) Buyer accepts the Goods; and (iii) Buyer ships the Goods to Buyer's customers.

"Closed end consignment until XX/XX/XXXX date" – Buyer's acceptance of the Goods, and transfer of title thereto to Buyer will not occur until the earlier of: (i) the end of the consignment period set forth in the Order; or (ii) the date on which: (a) the Goods are loaded on to Buyer's truck at the Delivery Site; and (b) Buyer inspects the Goods

and finds that the Goods conform to the Order.  Until such date, Buyer may cancel all or part of the Order for any reason, and Supplier shall bear the risk of loss of the Goods.

**7.    QUANTITY**. Notwithstanding any terms contained in the Order, Buyer reserves the right to reject a delivery of Goods if the quantity of Goods delivered is less than the quantity ordered or if the quantity of Goods delivered exceeds the ordered quantity by 5%. Any such rejected Goods shall be returned to Supplier at Supplier's risk and expense. If Buyer does not reject the Goods and instead accepts the delivery of Goods at the increased or reduced quantity, the Price for the Goods shall be adjusted on a pro-rata basis to account for the excess or insufficient quantity of Goods.

**8.    TITLE AND RISK OF LOSS**. Title passes to Buyer upon: (i) delivery of the Goods to the Delivery Location; and (ii) Buyer's inspection and acceptance of the Goods. Supplier bears all risk of loss or damage to the Goods until delivery of the Goods to the Delivery Location and Buyer's acceptance of the Goods.

**9.    INSPECTION AND REJECTION OF NONCONFORMING GOODS**. Notwithstanding any Terms or term on the face of the Order, Buyer, at its sole option, may inspect all or a portion of the Goods at any time on or after the Delivery Date and may reject all or any portion of the Goods if Buyer determines, in Buyer's sole discretion, that the Goods are nonconforming or defective. If Buyer rejects any portion of the Goods, Buyer has the right, effective upon written notice to Supplier, to: (a) rescind the Order in its entirety; (b) accept the Goods or any portion thereof at a reasonably reduced price; or (c) reject the Goods and require replacement of the rejected Goods. If Buyer requires replacement of the Goods, Supplier shall, at its expense, promptly replace the nonconforming Goods and pay for all related expenses, including, but not limited to, transportation charges for the return of the defective goods and the delivery of replacement Goods. If Supplier fails to timely deliver replacement Goods, Buyer may replace them with goods from a third party and charge Supplier the cost thereof and terminate the Order for cause.

**10.    PRICE**. The price of the Goods is the price stated in the Order (the "**Price**"). Unless otherwise specified in the Order, the Price includes all packaging, transportation costs to the Delivery Location, insurance, customs duties and fees, and applicable taxes and tariffs, including, but not limited to, all sales, use or excise taxes and import tariffs and taxes. Supplier is responsible for the collection and reporting of all applicable tariffs and taxes taxes such as sales, use, withholding, value added, import or similar tariffs and taxes.

**11.    PAYMENT TERMS**. Supplier will issue an invoice to Buyer on or after the Buyer's acceptance of the Goods. Buyer will pay all properly invoiced amounts due to Supplier within thirty (30) days after Buyer's receipt of such invoice, except for any amounts disputed by Buyer in good faith. In the event of a payment dispute, Supplier will continue performing its obligations under the Order notwithstanding the dispute. Buyer reserves the right to set off at any time any amount owing to it by Supplier against any amount payable by Buyer to Supplier.

**12.    SUB-PROVIDERS**. Supplier unconditionally hereby warrants, represents and covenants to Buyer that all subcontractors, suppliers, laborers, shippers, carriers, and other persons or entities ("**Supplier's Vendors**") that have supplied services, labor, materials and/or equipment to Supplier in connection with the Order either have been paid, or will be timely paid, in full for such labor, materials and/or equipment.  **Supplier will indemnify, hold harmless, and defend Buyer and Buyer's customers for any and all claims for payment including, without limitation, lien claims from Supplier's Vendors.**

**13.    WARRANTIES**. Supplier warrants to Buyer that for a period of two years from the Delivery Date, all Goods will: (a) be free from any defects in workmanship, material and design; (b) conform to the applicable specifications, drawings, designs, samples and other requirements specified by Buyer; (c) be fit for their intended purpose and operate as intended; (d) be merchantable; (e) be free and clear of all liens, security interests or other encumbrances; and (f) not infringe or misappropriate any third party's patent or other intellectual property rights. In addition, Supplier will also provide assignable warranties for the Goods from Supplier's Vendors so that such warranties may be passed-through or assigned to Buyer and by Buyer and such warranties shall survive any delivery, inspection, acceptance or payment for the Goods by Buyer. These warranties are cumulative and in addition to any other warranty provided by law or equity. If Buyer gives Supplier notice of noncompliance with this Section, Supplier shall, at its own cost and expense, within 30 days, replace or repair the defective or nonconforming Goods and pay for all related expenses, including, but not limited to, transportation charges for the return of the defective or nonconforming goods to Supplier, and the delivery of repaired or replacement Goods to Buyer.

**14.    INDEMNIFICATION AND INSURANCE.**

**14.1    SUPPLIER'S PEOPLE AND PROPERTY** - SUPPLIER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS BUYER AND BUYER'S PARENT COMPANY, SUBSIDIARIES, AFFILIATES, CONTRACTORS (OF ANY TIER), CUSTOMERS, SUCCESSORS OR ASSIGNS, AND SUCH PARTIES' RESPECTIVE DIRECTORS, OFFICERS, MEMBERS, SHAREHOLDERS, AND EMPLOYEES (COLLECTIVELY, THE "BUYER GROUP") AGAINST ANY AND ALL LOSS, INJURY, DEATH, DAMAGE, LIABILITY, CLAIM, DEFICIENCY, ACTION, JUDGMENT, INTEREST, AWARD, PENALTY, FINE, COST OR EXPENSE, INCLUDING REASONABLE ATTORNEY AND PROFESSIONAL FEES (COLLECTIVELY, "LOSSES") RELATED TO THE GOODS AND ARISING OUT OF OR RELATED TO ANY ILLNESS, BODILY INJURY OR DEATH OR ANY PROPERTY LOSS OR DAMAGE (INCLUDING PROPERTY OWNED, LEASED, HIRED OR CHARTERED) SUFFERED BY SUPPLIER, SUPPLIER'S PARENT COMPANY, SUBSIDIARIES, AFFILIATES, CONTRACTORS (OF ANY TIER), SUCCESSORS OR ASSIGNS, AND SUCH PARTIES' RESPECTIVE DIRECTORS, OFFICERS, MEMBERS, SHAREHOLDERS, AND EMPLOYEES (COLLECTIVELY, THE "SUPPLIER GROUP") EVEN IF CAUSED BY THE SOLE, JOINT, OR CONCURRENT NEGLIGENCE OR FAULT OF THE BUYER GROUP.

**14.2    BUYER'S PEOPLE AND PROPERTY** - TO THE EXTENT THE INDEMNITY OBLIGATIONS CONTAINED IN THIS AGREEMENT ARE GOVERNED BY CHAPTER 127, TEXAS CIVIL PRACTICE & REMEDIES CODE, KNOWN AS THE TEXAS OILFIELD ANTI-INDEMNITY ACT, BUYER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS THE SUPPLIER GROUP AGAINST ANY AND ALL LOSSES RELATING TO THE GOODS AND ARISING OUT OF OR RELATED TO ANY ILLNESS, BODILY INJURY OR DEATH OR ANY PROPERTY LOSS OR DAMAGE (INCLUDING PROPERTY OWNED, LEASED, HIRED OR CHARTERED) SUFFERED BY ANY MEMBER OF THE BUYER GROUP EVEN IF CAUSED BY THE SOLE, JOINT, OR CONCURRENT NEGLIGENCE OR FAULT OF THE SUPPLIER GROUP.

**14.3    INSURANCE** - TO THE EXTENT THE INDEMNITY OBLIGATIONS CONTAINED IN THIS AGREEMENT ARE GOVERNED BY CHAPTER 127, TEXAS CIVIL PRACTICE & REMEDIES CODE, KNOWN AS THE TEXAS OILFIELD ANTI-INDEMNITY ACT, THE PARTIES SHALL EACH SUPPORT THEIR RESPECTIVE MUTUAL INDEMNITY OBLIGATIONS IN SECTIONS 14.1 AND 14.2 BY FURNISHING LIABILITY INSURANCE COVERAGE, OF LIKE KIND AND IN EQUAL AMOUNTS OBTAINED BY EACH PARTY FOR THE BENEFIT OF THE OTHER PARTY AND ITS GROUP, RESPECTIVELY, AS INDEMNITEES.  SUPPLIER SHALL OBTAIN COMMERCIAL GENERAL LIABILITY INSURANCE WITH A LIMIT OF $1,000,000 PER OCCURRENCE INCLUDING, BUT NOT LIMITED TO, COVERAGE FOR PUBLIC LIABILITY INCLUDING BODILY INJURY AND PROPERTY DAMAGE LIABILITY, PERSONAL/ADVERTISING INJURY, CONTRACTUAL LIABILITY FOR THOSE LIABILITIES ASSUMED BY SUPPLIER HEREIN (INCLUDING THE INDEMNITY OBLIGATIONS CONTAINED HEREIN), CROSS LIABILITY AND SEVERABILITY OF INTEREST, POLLUTION, PRODUCTS AND COMPLETED OPERATIONS.  BUYER SHALL BE NAMED AS AN ADDITIONAL INSURED UNDER SUCH INSURANCE POLICY.

**14.4    THIRD PARTIES** - TO THE EXTENT ALLOWED BY APPLICABLE LAW, SUPPLIER SHALL RELEASE, DEFEND, INDEMNIFY, AND HOLD HARMLESS THE BUYER GROUP AGAINST ALL CLAIMS ARISING OUT OF OR RELATED TO THE GOODS BROUGHT AGAINST BUYER GROUP BY THIRD PARTIES (INCLUDING BUYER'S CUSTOMERS) EVEN IF CAUSED BY THE SOLE, JOINT, OR CONCURRENT NEGLIGENCE OR FAULT OF THE BUYER GROUP.

**14.5** **INTELLECTUAL PROPERTY** - SUPPLIER SHALL, AT ITS EXPENSE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE BUYER GROUP AGAINST ANY AND ALL LOSSES ARISING OUT OF, OR IN CONNECTION WITH, ANY CLAIM THAT ANY MEMBER OF THE BUYER GROUP'S OR BUYER'S CUSTOMER'S USE OR POSSESSION OF THE GOODS INFRINGES OR MISAPPROPRIATES THE PATENT, COPYRIGHT, TRADE SECRET OR OTHER INTELLECTUAL PROPERTY RIGHT OF ANY THIRD PARTY.  ADDITIONALLY, SUPPLIER SHALL PROVIDE (WITHOUT ANY FURTHER COST TO BUYER) ALL LICENSES RELATED TO INTELLECTUAL PROPERTY RIGHTS AND PAY ALL ROYALTIES NECESSARY FOR BUYER'S PURCHASE, RESALE AND/OR USE OF THE GOODS.

**15.** **COMPLIANCE WITH LAW**. Supplier represents and warrants it is in compliance with and shall comply with all applicable laws, regulations and ordinances. In furtherance of the foregoing (and not in limitation), Supplier shall comply with Section 1502 of the Dodd-Frank Act and all other laws, regulations and/or ordinances related to conflict minerals, and shall promptly provide appropriate disclosures (including as requested by Buyer) in respect of such law. Supplier has and shall maintain in effect all the licenses, permissions, authorizations, consents and permits that it needs to carry out its obligations under the Order. Supplier shall comply with all export and import laws of all countries involved in the sale and transportation of Goods under the Order. Supplier assumes all responsibility for shipments requiring any government import clearance.

**16.** **REMEDIES.** Buyer's remedies shall be cumulative and shall include any remedies allowed by law. No waiver of any breach of any term, covenant or condition of the Order by Buyer shall constitute Buyer's waiver of any other or subsequent breach of any term, covenant or condition under the Order. No forbearance or indulgence shall constitute a waiver or change of any term, covenant or condition. Acceptance of any Good(s) or payment for any Good(s) shall not waive any breach and will comply with all such laws and regulations.

**17.** **WAIVER**. No waiver by any party of any of the provisions of the Order or Terms will be effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, partial exercise of, or delay in exercising, any rights, remedy, power or privilege arising from the Order or Terms shall operate or be construed as a waiver thereof of any other right, remedy, power, or privilege.

**18.** **ASSIGNMENT**. Supplier shall not assign, transfer, delegate or subcontract any of its rights or obligations under the Order without the prior written consent of Buyer. Any purported assignment or delegation in violation of this Section shall be null and void, and will not relieve Supplier of any of its obligations hereunder.

**19.** **GOVERNING LAW / JURISDICTION / JURY WAIVER**. The Order, these Terms, the relations between the parties, and any dispute arising therefrom shall be governed by the procedural and substantive laws of the state of Texas, exclusive of conflict of laws principles which would direct the application of the substantive or procedural law of another jurisdiction.

**20.** **FORCE MAJEURE**. If performance by Buyer is prevented, delayed or made more difficult or less profitable or desirable to Buyer due to circumstances arising out of earthquakes, floods, hurricanes, named tropical storms, lightning strikes, ice storms, blizzards, icebergs, air and sea disasters, piracy, theft, explosions, fire, epidemics, pandemics, public health emergencies, acts of God or public enemy, war, terrorism, national emergency, invasions, insurrections, riots, strikes, lockouts, blockades, any laws, rules, regulations, orders, directives of, or interference by any government, government agency, failure of Buyer's suppliers to ship or deliver on time, or any other circumstance beyond Buyer's reasonable control, Buyer shall be relieved of its obligations under any agreement between Buyer and Supplier.

If Supplier's principal place of business is located in any state, territory, or district of the United States of America, each Party: (a) irrevocably submits to the jurisdiction and venue of the courts located in Harris County, Texas for the resolution of any and all disputes arising from or relating to the Order, these Terms, or the relations between the parties, **and (B) KNOWINGLY AND VOLUNTARILY WAIVES ALL RIGHTS TO A JURY TRIAL IN ANY LEGAL PROCEEDING RELATING TO THE ORDER, THESE TERMS, OR THE RELATIONS BETWEEN THE PARTIES.** If Supplier's principal place of business is not located in any state, territory, or district of the United States of America, each Party agrees all disputes arising out of or relating to the Order, Terms or the relations between the parties shall be finally settled, subject to the defenses allowed by applicable law, under the Rules of Arbitration of the International Chamber of Commerce by a single arbitrator appointed in accordance with the said Rules. The arbitration shall be conducted in English within the limits of the city of Houston, Texas. The arbitrator must meet each of the following qualifications: (1) be a graduate of a law school located in the United States; (2) have more than twenty years of experience in litigating and/or arbitrating complex commercial disputes; (3) be licensed to practice law in the state of Texas; and (4) be impartial.  The arbitrator will have the authority to determine the validity and existence of the Order and Terms as an agreement between the parties and apportion liability between the parties, but will not have the authority to award any damages or remedies not available under, or in excess of, the express terms of the Order and Terms.  The arbitration award will be presented to the parties in writing, and will, upon written request, include findings of fact and conclusions of law, and may be confirmed, reviewed and enforced, in any local, state or federal court located within Houston, Texas. The parties expressly reserve all rights to seek injunctive relief in a court located in Houston, Texas.  The parties acknowledge and agree that the Order includes activities in interstate commerce, and, accordingly, the Federal Arbitration Act of the United States shall control and apply to all arbitrations conducted hereunder, notwithstanding any state law provisions to the contrary.

**21.** **CUMULATIVE REMEDIES**. The rights and remedies under the Order and/or these Terms are cumulative and, in addition to, not in substitution for, any other rights and remedies.

**22.** **DISCLAIMER OF RELIANCE -** Supplier acknowledges that it agrees to these Terms by its own free choice, without any inducement offered in any way other than the express Terms contained herein.  Supplier warrants and represents that no promise, agreement, representation, inducement or condition not set forth in these Terms has been made or relied upon by Supplier in agreeing to these Terms.  Supplier is relying solely upon its own judgment in agreeing to these Terms.

**23.** **SEVERABILITY**.  If any provision herein is partially or completely void or unenforceable pursuant to applicable law, then such provision shall be deemed amended to the extent necessary to make it enforceable.  If such an amendment is not possible, then such provision shall be deemed deleted.  If any provision is so deleted, the remaining terms and conditions will remain in full force and effect.

**24.** **ATTORNEYS' FEES.**  In the event that Supplier breaches the Order or these Terms, Supplier shall pay all reasonable costs, including, without limitation, attorneys' fees and court costs incurred by Buyer in connection with such action.

**25.** **CONSEQUENTIAL DAMAGES.  SUPPLIER SHALL BE LIABLE TO THE BUYER GROUP FOR CONSEQUENTIAL DAMAGES ARISING IN CONNECTION WITH THE ORDER, TERMS, AND/OR GOODS.  THE BUYER GROUP SHALL NOT BE LIABLE TO THE SUPPLIER GROUP FOR CONSEQUENTIAL DAMAGES, INCIDENTAL DAMAGES, OR ANY PUNITIVE DAMAGES ARISING IN CONNECTION WITH THIS AGREEMENT.  SUPPLIER SHALL RELEASE, DEFEND, INDEMNIFY, AND HOLD HARMLESS THE BUYER GROUP AGAINST ALL PUNITIVE DAMAGES AND/OR LOSSES FOR CONSEQUENTIAL DAMAGES SUFFERED BY ANY MEMBER OF THE SUPPLIER GROUP.   THE FOREGOING SHALL APPLY EVEN IF CAUSED BY THE SOLE, JOINT, OR CONCURRENT NEGLIGENCE OR FAULT OF THE BUYER GROUP.**

**26.** **COMPLIANCE WITH TRADE EXPANSION ACT OF 1962.**  Notwithstanding anything to the contrary, the Order is subject to immediate cancellation at Buyer's sole discretion in the event of any finding or recommendation by the U.S. Department of Commerce pursuant to Section 232(B) of the Trade Expansion Act of 1962 that the country of origin of or the import of the Goods threatens to impair U.S. national security, whether such finding is issued prior to or after Buyer's acceptance of the Goods or upon the imposition of any additional tariffs, quotas or duties upon the Goods not in effect at the time the applicable Order is placed.  This includes, but is not limited to, any report, agreement or action by the U.S. Government including, but not limited to, the imposition of any tariff(s) and/or quotas and any action taken by the U.S. Government against fairly traded products that are in addition to, or supplemental to, the usual and customary remedies for unfairly dumped or subsidized products, regardless of whether

such agreement or action is proactively or retroactively enforced. In the event the U.S. Government takes any action described in this section, in addition to Buyer's option to cancel the Order, Buyer may instead demand specific performance of the parties' contract be entitled to set-off any amounts charged to Buyer as a result of any action by the U.S. Government including, but not limited to, tariff charges against the original purchase price of the Goods set forth in the Order.

Revised 03.20.20

4840-0622-0727.1

BOOMERANG_10/30/20 HRG. EX._000056