**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| EAGLE PIPE, LLC,[1] | § § | Case No. 20-34879 (MI) |
| Debtor. | § § | |

**ORDER (A) APPROVING BIDDING PROCEDURES AND CERTAIN BID**
**PROTECTIONS, (B) SCHEDULING BID DEADLINE, AUCTION DATE,**
**AND SALE HEARING AND APPROVING FORM AND MANNER OF NOTICE**
**THEREOF, AND (C) APPROVING CURE PROCEDURES AND THE FORM AND**
**MANNER OF NOTICE THEREOF**
**[Relates to Docket No. 55]**

Upon the motion (the "Motion"),[2] filed by Eagle Pipe, LLC, the above-captioned debtor

and debtor in possession (the "Debtor"), for entry of an order pursuant to 11 U.S.C. §§ 363

and 365 and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (a) approving

the bidding procedures attached hereto as **Appendix 1** (the "Bidding Procedures") and certain

bidding protections, (b) scheduling the bid deadline, auction date, and sale hearing (the "Sale

Hearing") and approving the form and manner of notice thereof; and (c) approving procedures to

cure any default pursuant to section 365(b)(1) of the Bankruptcy Code and the form and manner

of notice thereof; and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C.

§ 1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O); and

it appearing that notice of the Motion and the Bidding Procedures Hearing was sufficient under

the circumstances, and that no other or further notice is required; and the Court having determined

---

[1] The last four digits of Debtor's federal tax identification number are (1119).

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion.

that the relief requested in the Motion is in the best interests of the Debtor and its estate, and good and sufficient cause having been shown, the Court hereby further finds as follows:

A.     The Debtor has articulated good and sufficient reasons for (i) approving the Bidding Procedures, (ii) the grant of certain bid protections in favor of one or more potential Stalking Horse Bidders, the amount, reasonableness, and payment of which is to be later determined if any objections are timely asserted to the Debtor's filed designation of a Stalking Horse Bidder(s), (iii) approving the manner of notice of the Motion, and establishing the Bid Deadline, the Auction, the Sale Hearing, and the assumption and assignment of the Assumed Contracts and proposed cure relating thereto, and (iv) scheduling the Sale Hearing.

B.     If the Debtor enters into a stalking horse purchase agreement with a Stalking Horse Bidder and grants to such Stalking Horse Bidder the protections (including the Break-Up Fee) within the ranges set forth in this Order, and no party objects prior to the expiration of the Break-Up Fee Objection Period (defined herein), or such timely objection is overruled by the Court after a hearing thereon, then the Debtor's payment to the Stalking Horse Bidder of the Break-Up Fee on the terms set forth in this Order shall be determined to be (i) an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of section 503(b) of the Bankruptcy Code, (ii) of substantial benefit to the Debtor's estate, (iii) reasonable and appropriate, in light of the size and nature of the Proposed Sale and the efforts that have been and will be expended by a potential Stalking Horse Bidder notwithstanding that the Proposed Sale is subject to higher or better offers, (iv) negotiated by the parties at arms' length and in good faith, and (v) necessary to ensure that a potential Stalking Horse Bidder will continue to pursue its proposed acquisition of the Debtor's assets.  For the avoidance of all doubt, the failure of the Administrative Agent to

object to the Motion shall in no way be deemed to be consent to the allowance or payment of the Break-Up Fee or the designation of the yet-unnamed Stalking Horse Bidder.

C.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Debtor's assets in part, in total, or as a going concern transaction.

**IT IS HEREBY ORDERED THAT**:

1.      The Motion (as it pertains to approval of the matters set forth herein) is **GRANTED** as set forth herein, except that the Motion is modified by this Order to provide clarity around the Debtor's ability to market and sell its disputed interest in certain pipe that is claimed to be owned or previously sold by Boomerang Tube LLC and/or Centric Pipe, LLC, and in which the Administrative Agent (as defined below) claims a security interest (collectively, the "Disputed Assets") as set forth herein.  Any objections that have not been previously resolved or withdrawn are overruled.

**Notice Procedures**

2.      Within three (3) business days after entry of this Order, the Debtor shall serve copies of the Motion and this Order, including (i) a copy of the Bidding Procedures attached hereto as **Appendix 1**, and (ii) the notice of Bid Deadline, Auction, and Sale Hearing substantially in the form attached hereto as Appendix 2 (the "Sale Notice") (collectively, the "Bid Package"), via first class U.S. mail, postage prepaid, upon the following (collectively, the "Bid Notice Parties") (a) all potential buyers previously identified or solicited by the Debtor or B. Riley Advisory Services ("B. Riley") and any additional parties who have previously expressed an interest to the Debtor or B. Riley in potentially acquiring the Assets, (b) other potentially interested parties identified by the Debtor or its advisors; (c) the U.S. Trustee; (d) counsel to any statutory committee; (e) counsel to

U.S. Bank National Association, as administrative agent (in such capacity, "Administrative Agent") under that certain Loan and Security Agreement, dated April 6, 2018 (including all amendments, the "Loan Agreement"), among Debtor, Administrative Agent, the LC Issuer (as defined in the Loan Agreement, the "LC Issuer"), the banks and other financial institutions party thereto from time to time as lenders (collectively, the "Lenders" and, together with the Administrative Agent, the LC Issuer and any affiliate of a Lender to which Obligations (as defined in the Loan Agreement) are owed, collectively, the "Secured Parties" and each, a "Secured Party") (f) counterparties to the Debtor's executory contracts and unexpired leases; (g) any parties that have asserted a lien or security interest against or any other interest in, including, without limitation, preferential purchase rights or rights of first refusal on, any of the Debtor's assets; (h) any taxing authorities related to the Debtor's assets; and (g) all parties who have requested notice in this case.[3] The Sale Notice shall include and prominently display the following notice (the "Disputed Asset Notice"):

> Buyer is hereby informed that certain pipes, defined in the Bidding Procedures as Disputed Assets, are being offered for sale. Boomerang Tube LLC ("Boomerang") claims to be the owner of the certain Disputed Assets, and Centric Pipe, LLC ("Centric") claims to have sold certain of the Disputed Assets to recover amounts owed by the Debtor before the Petition Date.  Certain of the Disputed Assets are the subject an action in Texas State Court commenced by Boomerang that has been stayed by the commencement of the Debtor's chapter 11 case. To date, the Debtor has not established its ownership interest in the Disputed Assets pursuant to an adversary proceeding commenced under Federal Rule of Bankruptcy Procedure 7001(2) or (9), nor have Boomerang and Centric proved their ownership interest in or rights to sell the Disputed Assets. Absent further order of the Court, any Buyer may be acquiring only a right to establish that it acquired ownership of the Disputed Assets. Upon the selection of the Successful Bidder of the Disputed Assets as determined after the Auction, and the closing of a related sale, the

---

[3] All such entities will also be served by email to the extent the Debtor and B Riley have email addresses for such parties.

Successful Bidder shall not have the right to move, modify, alter or exercise any other ownership rights to the Disputed Assets without either (i) further order of the Bankruptcy Court adjudicating the Debtor to be the owner the Disputed Assets immediately prior to the sale of the Disputed Assets to the Successful Bidder; or (ii) the consent and agreement of Boomerang or Centric, as applicable.

3.      On or before **November 4, 2020**, the Debtor shall file with the Court an initial schedule of executory contracts and unexpired leases that may be assumed and assigned as part of the Proposed Sale (the "Potential Assumed Contracts"). Concurrently therewith, the Debtor shall serve a cure notice substantially in the form attached to the Bidding Procedures Order as Appendix 3 (the "Cure Notice") upon each counterparty to the Potential Assumed Contracts (each, a "Counterparty"). The Cure Notice shall identify the amounts, if any, that the Debtor believes are owed to each Counterparty to a Potential Assumed Contract in order to cure any defaults that may exist under such contract (the "Cure Amount"). Pursuant to the Bidding Procedures Order, the Cure Notice shall also state the applicable date, time, and place of the Auction and Sale Hearing, and provide the date and time by which any objection (the "Cure Objection") to (i) the assumption and assignment of the applicable Potential Assumed Contract on the basis of lack of adequate assurance of future performance under section 365(b) (1) or (ii) the Cure Amount must be filed and served by the Counterparty.

4.      Prior to the commencement of the Sale Hearing and no later than **November 24, 2020**, the Debtor shall file with the Court a schedule (the "Assumed Contract Schedule") of executory contracts and unexpired leases elected to be assumed by the Successful Bidder (the "Assumed Contracts"). At the Sale Hearing, the Debtor shall seek authority to assume and assign the Assumed Contracts to the Successful Bidder effective as of the closing of the Proposed Sale; *provided, however*, that the Successful Bidder may add or remove any Potential Assumed Contracts from the Assumed Contract Schedule at any time up to the closing of the Proposed Sale.

The counterparty to any Potential Assumed Contract that is added or removed from the Assumed Contract Schedule shall be notified of such change by written notice via first class U.S. mail by no later than two (2) business days from such determination.

5.      Any objections to a proposed Cure Amount set forth in the Cure Notice must be (a) in writing, (b) state the basis for such objection with specificity, (c) conform to the Bankruptcy Rules and Local Rules of the Southern District of Texas, and (d) be filed no later than **4:00 p.m. Central Time on November 18, 2020** (the "Cure Amount Objection Deadline").  Any other objections to the Cure Notice or proposed assumption and assignment of Potential Assumed Contract shall be filed no later than **4:00 p.m. Central Time on November 27, 2020**.

6.      If, at any time after service of the Cure Notice and before closing of the proposed Sale, the Debtor identifies additional Potential Assumed Contracts not included in the initial Cure Notice, the Debtor shall serve a supplemental Cure Notice on the counterparties to the additional Potential Assumed Contracts and such counterparties shall have until the later of (i) **4:00 p.m. Central Time on November 18, 2020**; or (ii) ten (10) days from service of the supplemental Cure Notice to object inclusion of the additional Potential Assumed Contract on the Assumed Contract Schedule.

### Bidding Procedures and Auction

7.      The Bidding Procedures attached hereto as Appendix 1 and incorporated herein by reference as if fully set forth herein, are hereby approved and shall govern the bidding and Auction proceedings.

8.      The Bid Deadline shall be **November 16, 2020 at 4:00 p.m. Central Time**, Qualified Bidders will be notified by **November 19, 2020**, and deposits will be returned to non-Qualified Bidders by **November 23, 2020**.

9.      An Auction is scheduled to take place on **November 20, 2020** commencing at **10:00 a.m**. **Central Time,** virtually and/or at the offices of Gray Reed, 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056.  As soon as practicable following the conclusion of the Auction (if any), and no later than **November 24, 2020**, the Debtor shall file with the Court a notice setting forth the results of the Auction, including the operative purchase agreement (the "<u>APA</u>") to be approved, with the Assumed Contract Schedule and any other necessary exhibits and schedules, to the extent available.

10.     The Debtor is authorized to terminate the bidding process or the Auction at any time if they determine, in its business judgment, that the bidding process will not maximize value for the Debtor's estate, with notice of such termination to be filed of record with the Court.

## Sale Hearing and Objections to the Proposed Sale

11.     The Court shall commence the Sale Hearing on **November 30, 2020 at 9:00 a.m.** Central Time in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, 515 Rusk Street, Courtroom 400, Houston, Texas 77002, at which time the Court shall consider the Motion, the proposed Sale, and confirm the results of the Auction, if any.

12.     Except as provided in Paragraph 5 above, objections, if any,  to the Motion and the Proposed Sale (a "<u>Sale Objection</u>") shall be filed with the Bankruptcy Court and served on the following parties so as to be actually received no later than **4:00 p.m. Central Time on November 18, 2020** (each such deadline being a "<u>Sale Objection Deadline</u>"): (i) counsel to the Debtor, Gray Reed, 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056, Attn: Paul Moak, Aaron Kaufman, and Lydia Webb; (ii) counsel to any statutory committee, (iii) counsel to Administrative Agent, Vorys, Sater, Seymour and Pease LLP, 909 Fannin Street, Suite 2700, Houston, Texas 77010, Attn: Steven  R.  Rech,  Kari  B.  Coniglio,  and  Jeffrey  W.  Bieszczak  (srech@vorys.com,

kbconiglio@vorys.com, and jwbieszczak@vorys.com); and (iv) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Hector Duran, Jr. and Jayson B. Ruff (hector.duran.jr@usdoj.gov and jayson.b.ruff@usdoj.gov).

13.     The failure to timely file and serve a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion prior to, at the Sale Hearing, or thereafter, of any such objection to the Motion, the Sale, the Debtor's consummation of the Proposed Sale, or the proposed assumption and assignment of any executory contracts or unexpired leases.  Failure to file and serve a Sale Objection by the Sale Objection Deadline shall be deemed to be consent to the Sale for purposes of Bankruptcy Code section 363(f) and a waiver of any preferential purchase rights or other similar rights to acquire any of the Debtor's assets.

14.     The Sale Hearing may be adjourned by the Debtor, in consultation with the Administrative Agent, from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment made in open court.

**Bid Protections**

15.     The Debtor is authorized, but is not directed, to select one or more bidders to act as a Stalking Horse Bidder, and may offer bid protections including a break-up fee in an amount not to exceed 4% of the cash component of a Stalking Horse Bid and an expense reimbursement of no more than $200,000 (together the "Break-Up Fee") for expenses actually incurred by such Stalking Horse Bidder.  If the Debtor enters into a stalking horse purchase agreement with a Stalking Horse Bidder and proposes to grant to such Stalking Horse Bidder the protections (including the Break-Up Fee) set forth herein, the Debtor shall file a Notice of such designation, including the details of the proposed Break-Up Fee, with the Court at least seven (7) days prior to the Bid Deadline, and all parties in interest (except the Administrative Agent, as provided in Paragraph 17 below) shall

have five (5) days from the filing of such Notice (the "Break-Up Fee Objection Period") to object

to the designation of the Stalking Horse Bid and the allowance and/or payment of any proposed

Break-Up Fee.  If no party in interest timely objects to the Debtor's designation of the Stalking

Horse Bidder and/or the Break-Up Fee during the Break-Up Fee Objection Period, or if such timely

objection(s) is overruled by the Court after hearing thereon), then the Break-Up Fee to be paid to

a Stalking Horse Bidder, as more fully described in the Motion and the Bidding Procedures, is

hereby approved pursuant to the terms and conditions set forth in the Motion and Bidding

Procedures, and shall be paid pursuant to the terms of an order approving a Proposed Sale.

16.     For the avoidance of doubt, no Break-Up Fee shall be payable to any Stalking Horse

Bidder in the event that the Administrative Agent is deemed the Successful Bidder as a result of a

Credit Bid.

17.     Notwithstanding the foregoing, in the event that the Debtor files a Notice of

designation of Marco International Corporation or its designee ("Marco") as a Stalking Horse

Bidder (to which Administrative Agent has not consented), or any other notice of designation to

which the Administrative Agent has not consented, such Notice shall prominently indicate that the

Administrative Agent has not consented to the form and substance of such Stalking Horse Bid, and

the Break-Up Fee Objection Period, during which the Administrative Agent may object to the

designation of the Stalking Horse Bid, the form of the Stalking Horse APA, and the allowance

and/or payment of any proposed Break-Up Fee (and to the use of the Secured Parties' Collateral

or Cash Collateral (each as defined in the Cash Collateral Order), shall be extended for the

Administrative Agent until the later of: (i) November 13, 2020, or (ii) one business day after the

conclusion of any mediation among the Debtor, the Secured Parties, the Committee, Boomerang

and Centric (the "Mediation").

**Additional Provisions**

18.     The Court hereby orders mediation among the Debtor, the Secured Parties, the Committee, Boomerang and Centric (the "Mediation Parties") pursuant to Section R of the Procedures for Complex Cases in the Southern District of Texas ("Complex Case Procedures") regarding the nature and ownership of the Disputed Assets as well as any claims or causes of action arising out of such disputes.  The Mediation Parties shall appear in good faith efforts to mediate on or before November 13, 2020, subject to availability of the Mediation Parties and the mediator. Prior to the mediation, the Debtor, the Secured Parties and Boomerang will endeavor in good faith to enter into a settlement concerning the ownership of the Disputed Assets within five (5) business days after entry of this order, which settlement will be subject to a Bankruptcy Rule 9019 Motion. If such a settlement is reached within this period of time (with a Rule 9019 motion to be filed and approval sought thereafter), the Debtor, the Secured Parties and Boomerang contemplate that, subject to the Boomerang Asset Determination in the Rule 9019 settlement order, the Boomerang Disputed Assets shall be removed from the Bidding Procedures process and not offered for sale under the Bidding Procedures.  If such settlement is reached among the Debtor, Boomerang and the Secured Parties, Boomerang will be excused from mediation under this Paragraph.

**Additional Provisions**

19.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise or any Local Rules of this Court, the terms and conditions of this Order are immediately effective and enforceable upon their entry.

20.     Except as set forth in Paragraph 17 above, nothing in this Order or the Bidding Procedures shall modify or alter the Milestones and Sale Process requirements set forth in

paragraph 18 of the Cash Collateral Order and the rights of the Secured Parties set forth in paragraph 18 of the Cash Collateral Order are expressly reserved and preserved.

21.     Nothing in this Order or the Bidding Procedures waives any rights the Administrative Agent and/or the Secured Parties may have to object to the allowance and payment of the Break-Up Fee, the designation of any Stalking Horse Bidder, and to the proposed sale(s) within the time periods established herein or any arguments that may be asserted by any of them in any such objection.

22.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

23.     The Order shall be binding and inure to the benefit of the Debtor, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estate of the Debtor.

24.     All time periods set forth in this Order or the Bid Procedures shall be calculated in accordance with Bankruptcy Rule 9006(a).

25.     To the extent that this Order is inconsistent with the Sale Motion or Bid Procedures, the terms of this Order shall control.

26.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed _____, 2020.**

_____
                                            **Marvin Isgur**
                              **United States Bankruptcy Judge**

**<u>Appendix 1</u>**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | § |
| | § |
| | § Chapter 11 |
| EAGLE PIPE, LLC,[1] | § |
| | § Case No. 20-34879 (MI) |
| Debtor. | § |
| | § |

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "<u>Bidding Procedures</u>") to be used with respect to: (A) a sale of all or a portion of the assets of Eagle Pipe, LLC, the above-captioned debtor and debtor in possession (the "<u>Debtor</u>"), (B) a going concern sale (each, a "<u>Proposed Sale</u>") in either case which includes the Disputed Assets that Boomerang claims to own or Centric claims to have disposed of prior to the Petition Date, *provided that* each Bidder for the Disputed Assets shall be deemed to have received the Disputed Asset Notice in the Bid Package. The Proposed Sale contemplated by these Bidding Procedures is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to either (x) Sections 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") or (y) a confirmed chapter 11 plan of reorganization.

On October 9, 2020, the Debtor filed its *Motion for (I) an Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof; and (II) an Order Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims and Interests* [Docket No. 55] (the "<u>Sale Motion</u>"). On October 30, 2020, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "<u>Bankruptcy Court</u>") entered its *Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof* [Docket No. __] (the "<u>Bidding Procedures Order</u>") approving these Bidding Procedures.

The Bidding Procedures set forth herein describe, among other things, the manner in which bidders and bids become "Qualified Bidders" and "Qualified Bids," respectively, the receipt and negotiation of bids received, the conduct of any Auction (as defined herein), the ultimate selection of the Successful Bidder (as defined herein) and the Bankruptcy Court's approval thereof (collectively, the "<u>Bidding Process</u>").

Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Sale Motion.

---

[1] The last four digits of Debtor's federal tax identification number are (1119).

**I.**
**Key Dates**

The Debtor and B. Riley (defined below), have already begun the marketing process. Before being provided with any diligence materials, interested parties must sign and return a confidentiality agreement, in a form acceptable to the Debtor in its sole discretion (a "Confidentiality Agreement"). **Requests for a Confidentiality Agreement should be made to Scott Van Meter and Mark Shapiro, B. Riley Advisory Services, 4400 Post Oak Parkway, Suite 1400, Houston, TX 77027, svanmeter@brileyfin.com and mshapiro@brileyfin.com.** Once an interested party signs and returns a Confidentiality Agreement, it will receive access to an electronic data room. Further diligence information is set forth in Section VIII, below.

The deadlines and target dates are as follows:

| | |
|---|---|
| Hearing to Approve Bidding Procedures | October 30, 2020 at 3:30 p.m. (CT) |
| Deadline to file initial Cure Notice: | November 4, 2020 |
| Deadline for Notice of Stalking Horse: | November 9, 2020 |
| Deadline to submit bids (the "Bid Deadline"): | November 16, 2020 at 4:00 p.m. (CT) |
| Deadline for objections to Sale, including Cure Amounts: | November 18, 2020 at 4:00 p.m. (CT) |
| Notifications to Qualified Bidders: | November 19, 2020 |
| Auction: | November 20, 2020 at 10:00 a.m. (CT) |
| Return of Deposit to non-Qualified Bidders: | By November 23, 2020 |
| Deadline to file notice of Auction results: | November 24, 2020 |
| Deadline to object to Auction results: | November 27, 2020  at 4:00 p.m. (CT) |

**II.**
**Sale of Assets or Going Concern Transaction**

The Debtor is entertaining bids for (A) a going concern transaction, (B) a sale of all or substantially all of its assets, and (C) a sale of such smaller portion of the Debtor's assets as may be subject to a purchase agreement and as may be bid upon at Auction. The Debtor may enter into one Proposed Sale or several Proposed Sales with multiple parties, depending upon the bids received. Any bid, including without limitation any Stalking Horse Bid(s), that proposes to purchase any portion of the Disputed Assets must have a separate and distinct allocation of the purchase price for the Disputed Assets ("Disputed Assets Bid Requirements").

In addition, (i) the Successful Bidder(s) in any Proposed Sale shall assume the assumed liabilities as may be set forth in any purchase agreement and (ii) the Debtor shall assume and assign the assumed contracts to such Successful Bidder(s), as may be set forth in any purchase agreement(s) accepted by the Debtor.

4830-3251-5278.11

## III.
## "As Is, Where Is"

Any Proposed Sale(s) entered into by the Debtor shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor or its estate, including ownership over the Disputed Assets which Boomerang claims to own and/or Centric claims to have sold prior to the Petition Date, except as may be set forth in a purchase agreement(s) with a Successful Bidder(s) or chapter 11 plan, approved by the Bankruptcy Court.

## IV.
## Free of Any and All Claims and Interests

Subject to approval by the Bankruptcy Court, any Proposed Sale(s) entered into by the Debtor shall be free and clear of all liens, claims, interests, and encumbrances (collectively, the "Claims and Interests"), with such Claims and Interests to attach to the net proceeds of the sale to the extent such proceeds are not otherwise paid to the Administrative Agent for the benefit of the Secured Parties.  The Disputed Assets will not be sold free and clear of ownership claims and interests of Boomerang or Centric, unless agreed to by Boomerang or Centric (as applicable), and is being offered for sale subject to the ownership interest of Boomerang or Centric, as applicable, unless agreed to by Boomerang or Centric (as applicable). Net proceeds of the sale of the Disputed Assets shall be calculated based on separate costs associated with the sale maintained by the Debtor and its agents.

## V.
## Participation and Bid Requirements

Any person or entity who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder.  As a prerequisite to becoming a Qualified Bidder, a Potential Bidder must deliver the following documents to the B. Riley and Gray Reed, as professionals for the Debtor; U.S. Bank National Association (the "Administrative Agent"), as administrative agent for the prepetition secured lenders (the prepetition secured lenders together with the Administrative Agent are referred to herein as the "Secured Parties"); and counsel to any statutory committee (the "Committee") and together with the Secured Parties, the "Consultation Parties"), at the addresses set forth below, no later than the Bid Deadline (as defined below), in a form and substance acceptable to the Debtor and its advisors (the "Required Bid Documents"):

(a) Evidence of the Potential Bidder's financial ability to close a Transaction, in a form and substance acceptable to the Debtor in its discretion in consultation with the Consultation Parties.  Such evidence may take the form of, among other things, current audited financial statements, bank statements, evidence of a non-contingent financing commitment, or such other documentation as the Debtor may accept in its discretion, after consultation with any statutory committee and the Administrative Agent, provided that Boomerang and Centric are each a Qualified Bidder for the Disputed Assets (as applicable) without the need to fulfill the requirements of this subsection;

(b) A letter stating that the Potential Bidder's offer is irrevocable until immediately following the closing of the Sale and setting forth (i) the nature of the Proposed Sale, whether such is a going concern or asset sale, which specifically identifies the assets or groups of assets to be purchased, and specify whether the bid includes a bid on the Disputed Assets, and if so that it meets the Disputed Assets Bid Requirements, and which includes the proposed consideration and the liabilities (if any) to be assumed, (ii) any assets expected to be excluded from the Sale, and (iii) the structure and financing of the Proposed Sale (including, but not limited to, the sources of financing);

(c)      A binding, executed, and definitive copy of the form Purchase and Sale Agreement included in Debtor's virtual data room (the "APA"), which shall be in form and substance acceptable to the Administrative Agent, together with all schedules thereto marked to show changes to the APA and schedules that the Potential Bidder proposes (a "Marked APA"), including the purchase price in U.S. dollars for each asset or group of assets subject to the applicable bid, and a specific allocation of consideration among the groups of assets being bid upon (all asset bids must also contain an allocation), and if it includes a bid on the Disputed Assets, meets the Disputed Assets Bid Requirements;

(d) A good faith earnest money cash deposit (the "Deposit") in an amount equal to 10% of the total cash and non-cash consideration of the of the Proposed Sale to be held in an escrow account to be identified and established by the Debtor; provided that none of the Secured Parties shall be required to provide a Deposit with respect to the portion of any bid that is a Credit Bid, and Boomerang shall not be required to provide a Deposit on any non-cash consideration offered for the Disputed Assets, including the release of its claim of ownership to the Disputed Asset;

(e) Evidence of corporate authority to enter into the Proposed Sale;

(f) An executed Confidentiality Agreement; and

(g) Any additional information reasonably requested by the Debtor.

## VI.
## Qualified Bidders and Qualified Bids

A Potential Bidder (i) who delivers the documents described in Section V above, (ii) whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Proposed Sale if selected as the Successful Bidder, (iii) who the Debtor determines is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Proposed Sale within the time frame provided by the APA or otherwise applicable in the above-captioned chapter 11 case (the "Case"), and (iv) whose bid constitutes a "**Qualified Bid**" pursuant to these Bidding Procedures, shall be deemed a "**Qualified Bidder**." The Debtor will determine whether a Potential Bidder is a Qualified Bidder after such consultation with the Consulting Parties. By November 19, 2020, the Debtor will notify Potential Bidders if they are Qualified Bidders, and will provide copies of all Qualified Bids to the Consulting Parties. Notwithstanding the requirements of Section VI, the Secured Parties are deemed to be Qualified Bidders to Credit Bid on their Collateral (as defined

under the Cash Collateral Order, which Collateral shall not include the Disputed Assets absent an Asset Determination).

A bid will be deemed a "Qualified Bid" and considered by the Debtor only if the bid:

(a)      is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Debtor than, those contained in the APA;

(b)      contains no contingencies of any type, other than Bankruptcy Court approval of the Proposed Sale and any applicable regulatory conditions;

(c)      other than any Stalking Horse Bid(s) that may be designated by the Debtor, is not conditioned upon any bid protections (such as a topping fee, termination fee, expense reimbursement, or similar type of payment);

(d)      contains an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Debtor and its assets and businesses prior to making its offer, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the businesses and assets of the Debtor in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtor's businesses or assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the APA, the Marked APA or the Term Sheet;

(e)      includes a list of assumed contracts and assumed liabilities (if any), and a commitment to consummate the Proposed Sale and the assumption of the assumed liabilities (if any) on or before December 11, 2020;

(f)      identifies each regulatory and third-party approval required for the bidder to consummate the Proposed Sale, if any, and the time period within which the bidder expects to receive such regulatory and third-party approvals;

(g)      discloses (i) the identity of the Potential Bidder and each entity participating in connection with the Potential Bidder (including the identification of any authorized officers, directors, shareholders and/or the ultimate beneficial owners of the Potential Bidder) and the terms of such participation, and (ii) any other term sheets and other written or oral understandings between the Potential Bidder and its affiliates on one hand, and any insider (as defined in section 101(31) of the Bankruptcy Code) of the Debtor, on the other; and

(h)      is received by the Bid Deadline.

***All bids for a Proposed Sale must contemplate payment in cash, in full, upon the closing of the Proposed Sale (other than a Credit Bid), unless the Debtor agrees otherwise, after consultation with the Consulting Parties.***  Any bid that is not for cash, and does not otherwise comply with the above requirements, shall not be deemed to be a Qualified Bid.

4830-3251-5278.11

Notwithstanding the foregoing, the Debtor shall have the right, in its discretion, after consultation with the Consulting Parties, to entertain bids that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids, provided that a bid on the Disputed Assets must fulfill the Disputed Assets Bid Requirements. A Qualified Bid will be valued, among other things, based upon factors such as the net value provided by such bid, the likelihood and timing of consummating the Proposed Sale in question, and any other factors that the Debtor may deem relevant to the Proposed Sale, including in the case of the Disputed Assets, value attributed to Boomerang's relinquishment of its claim of ownership.

The Secured Parties shall be deemed Qualified Bidders and only the Administrative Agent (or its designee) shall be permitted to submit a Credit Bid on behalf of the Secured Parties as further set forth below.

Between the time the Debtor notifies a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtor, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid until the conclusion of the Auction, except for proposed amendments to increase the consideration contemplated by the Qualified Bid, or otherwise enhance the terms of the Qualified Bid.

The Debtor reserves the right to cancel, and not conduct, the Auction (as defined below) if the Debtor does not receive any Qualified Bids by the Bid Deadline. In such event, the Debtor will file a Notice of No Auction with the Bankruptcy Court.

By submitting a bid, a Potential Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder, or agent acting on another's behalf. Such Potential Bidder acknowledges that it will not look to the Debtor or B. Riley for the payment of any fee or commission. In addition, the Potential Bidder agrees to be responsible for the payment of any fee, commission, or other compensation payable to any broker, finder, or agent who alleges it has dealt with or through the Potential Bidder.

## VII.
## Bid Deadline and Bid Recipients

A Qualified Bidder (other than a potential Stalking Horse and the Secured Parties) who desires to make a bid shall deliver written copies of their bid to each of the following, **no later than 4:00 p.m. Central Time on November 16, 2020** (the "Bid Deadline"):

1.  **Debtor's Counsel:**

Gray Reed
1300 Post Oak Blvd.
Suite 2000
Houston, TX 77056
Attn.: Paul D. Moak, Aaron M. Kaufman and
    Lydia R. Webb

Email:
    pmoak@grayreed.com
    akaufman@grayreed.com
    lwebb@grayreed.com

2.  **Debtor's Financial and Marketing Advisor:**

B. Riley Advisory Services
4400 Post Oak Parkway,
Suite 1400
Houston, TX 77027
Attn: Scott Van Meter, Mark Shapiro

Email:
    mshapiro@brileyfin.com
    svanmeter@brileyfin.com

3.  **Counsel to Statutory Committee, if any:**

Weycer, Kaplan, Pulaski & Zuber, P.C.
24 Greenway Plaza, Suite 2050
Houston TX 77046
Attn: Jeff Carruth

Email: jcarruth@wkpz.com

4.  **Counsel to the Administrative Agent:**

Vorys, Sater, Seymour and Pease LLP
909 Fannin Street, Suite 2700
700-41-07
Houston TX 77010
Attn: Steven Rech, Kari Coniglio, and
Jeffrey Bieszczak

Email:
    srech@vorys.com;
    kbconiglio@vorys.com;
    jwbieszczak@vorys.com

## VIII.
## Due Diligence

Following execution of a Confidentiality Agreement, the Debtor shall afford each interested party an opportunity to perform due diligence with respect to its businesses and assets. Due diligence access may include management presentations as may be scheduled by the Debtor, on-site inspections, and such other matters which an interested party may reasonably request and as to which the Debtor, in its sole discretion, may agree. The Debtor shall designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from interested parties. No due diligence shall continue after the Bid Deadline. The Debtor may, in its discretion, coordinate diligence efforts such that multiple interested parties have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.

**All diligence requests should be made to Mark Shapiro and Scott Van Meter of B. Riley Advisory Services, mshapiro@brileyfin, svanmeter@brileyfin.com.**

Each Qualified Bidder shall be deemed to acknowledge and represent that (i) it has had an opportunity to conduct any and all due diligence regarding the Debtor's businesses and assets prior to making its offer, (ii) it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the businesses and assets in making its bid, (iii) it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or assets, or the completeness of any information provided in connection therewith, the Bidding Process or the Auction (as defined herein), except, as to any Stalking Horse, as expressly stated in the APA, and as to a Successful Bidder other than a potential Stalking Horse, as expressly stated in the definitive agreement with such Successful Bidder approved by the Bankruptcy Court, and (iv) that it has not engaged and will not engage in collusion in connection with the bidding process at any time.

## IX.
## Stalking Horse Declaration and Break-Up Fee

In the exercise of its business judgment, the Debtor may, without any obligation to do so, select one or more bidders to act as a stalking horse (each being a "Stalking Horse Bidder" with the relevant bid being a "Stalking Horse Bid"), after consultation with the Consulting Parties. Further, as contemplated by the Bidding Procedures Order, the Debtor will be permitted, but not directed, to incur and pay a break-up fee in an amount not to exceed 4% of the cash component of a Stalking Horse Bid and, in the Debtor's discretion, an expense reimbursement of no more than $200,000 (together, the "Break-Up Fee"). Administrative Agent, on behalf of the Secured Parties, do not consent to the payment of the Break-Up Fee prior to the payment in full in cash of the Obligations (defined below). Administrative Agent, on behalf of the Secured Parties, reserve all of their rights to object to the Sale and the allowance and payment of any Break-Up Fee to the extent it constitutes a surcharge of its collateral.

If the Debtor declares one or more Stalking Horse Bidders other than as designated in the Motion, it will promptly file a notice of the same with the Court, along with a copy of the Stalking Horse Bid(s) and the APA(s) at least 7 days prior to the Bid Deadline. Parties in interest (except Administrative Agent which shall have the extended objection period described below) will have five (5) days to object to the designation of the Stalking Horse Bid and any proposed Break-Up Fee. Thereafter, if no objection is received or if the Court approves the designation of a Stalking Horse Bidder after considering any objections, the related Break-Up Fee will be paid upon closing of a sale or sales to a bidder or bidders who are not the Stalking Horse Bidder(s).

Notwithstanding the foregoing, in the event that the Debtor files a Notice of designation of Marco International Corporation or its designee ("Marco") as a Stalking Horse Bidder (to which Administrative Agent has not consented), or any other notice of designation to which the Administrative Agent has not consented, such Notice shall prominently indicate that the Administrative Agent has not consented to the form and substance of such Stalking Horse Bid, and the Break-Up Fee Objection Period, during which the Administrative Agent may object to the designation of the Stalking Horse Bid, the form of the Stalking Horse APA, and the allowance and/or payment of any proposed Break-Up Fee (and to the use of the Secured Parties' Collateral and Cash Collateral (each as defined in the Cash Collateral Order)), shall be extended for the Administrative Agent until the later of: (i) November 13, 2020, or (ii) one business day after the

conclusion of any mediation among the Debtor, the Secured Parties, the Committee, Boomerang and Centric (the "Mediation").

## X.
## Auction

If the Debtor receives more than one Qualified Bid, an auction (the "Auction") will be conducted, upon notice to all Qualified Bidders who have submitted Qualified Bids, at **10:00 a.m. Central Time on November 20, 2020,** at the offices of Gray Reed, 1300 Post Oak Boulevard, Suite 2000, Houston, Texas 77056, in accordance with the following procedures:

(a)     Only the following persons shall be entitled to attend the Auction: (i) professionals and principals or members of the Debtor, (ii) B. Riley, (iii) counsel to, and business persons from, each of the Secured Parties, (iv) counsel to, and business persons from each of Boomerang and Centric; (v) counsel to the Committee and a Committee representative, (vi) the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), and (vii) professionals and principals or members of any Qualified Bidder who has timely submitted a Qualified Bid (collectively, the "Participating Parties"). Only Qualified Bidders will be entitled to make any Subsequent Bids (as defined below) at the Auction.

(b)     At the commencement of the Auction, Qualified Bidders in attendance will be informed of which Qualified Bid or combination of Qualified Bids the Debtor believes is the highest or otherwise best offer(s), and from which bidding will begin.

(c)     All Participating Parties shall be entitled to be present for all Subsequent Bids (as defined below) with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bid shall be fully disclosed to all Participating Parties throughout the entire Auction.

(d)     The Debtor may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids) for conducting the Auction, *provided that* such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith, and after consulting with the Consulting Parties regarding the same.

(e)     Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids as identified by the Debtor at the onset of the Auction (the "Baseline Bid"). To the extent a Stalking Horse Bidder has been named, the initial overbid must exceed the Baseline Bid by the amount of the Break-Up Fee plus an additional $100,000. Thereafter, or in the event no Stalking Horse Bidder has been named, the minimum bidding increment (the "Subsequent Bids" and each a "Subsequent Bid") shall be $100,000 (which increments may be increased or decreased by the Debtor, in its discretion, in consultation with the Consulting Parties). The Auction shall continue in one or more rounds of bidding, and each Qualified Bidder must present a Subsequent Bid during such round. The Auction shall conclude after each Participating Party has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and

written confirmation of the then-existing highest bid or bids. If a Qualified Bidder, having the opportunity to do so, declines to make a Subsequent Bid during a round, such Qualified Bidder will be deemed to have withdrawn from the Auction.

The Debtor reserves the right, in the exercise of its business judgment in consultation with the Consulting Parties, to adjourn the Auction at one or more times to, among other things (i) facilitate discussions among the Debtor and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) allow Qualified Bidders the opportunity to provide the Debtor with such additional information or evidence, as the Debtor may require in the exercise of its business judgment, that the Qualified Bidder has sufficient resources and sufficient non-contingent debt and/or equity funding commitments to consummate the Proposed Sale at the then-prevailing Subsequent Bid amount.

The Debtor shall maintain a transcript of the proceedings at the Auction, including the Baseline Bid, all Subsequent Bids, and the Successful Bid (as defined below).

## XI.
## Closing of Auction and Selection of Successful Bid

The Auction shall continue until there is only one bid that the Debtor determines, in its business judgment, after consultation with the Consulting Parties, is the highest or otherwise best Qualified Bid for a Proposed Sale or multiple Proposed Sale(s), after taking into account factors such as the speed and certainty of consummating the transaction (such bid being the "Successful Bid" and the bidder making such bid, the "Successful Bidder"). Upon the selection of the Successful Bidder of the Disputed Assets as determined after the Auction (and after the closing of a related sale), the Successful Bidder shall not have the right to move, modify, alter or exercise any other ownership rights to the Disputed Assets without either (i) further order of the Bankruptcy Court adjudicating the Debtor to be the owner of the Disputed Assets, or finding that the Disputed Assets were subject to the Administrative Agent's lien under the Loan Agreement immediately prior to the sale of the Disputed Assets to the Successful Bidder; or (ii) the consent and agreement of Boomerang. The Debtor shall file a notice of Successful Bid identifying the Successful Bidder and including a copy of the Successful Bid as soon as practicable after conclusion of the Auction. Such notice will include a copy of the final APA, with any non-confidential schedules, including the Assumed Contract Schedule.

All bidders will be deemed to have consented to the core and exclusive jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any and all disputes relating to, arising from, or connected with the Auction, the marketing process, the Proposed Sale, and the construction and enforcement of any purchase agreement.

## XII.
## Back-Up Bidder

If there is an Auction, the Qualified Bidder that submits the second highest Bid at the Auction shall be required to serve as the back-up bidder (the "Back-Up Bidder") and keep such Back-Up Bidder's last Bid (the "Back-Up Bid") open and irrevocable until the earlier of (i) 5:00 p.m. Central Time on the date which is five days after the sale to the Successful Bidder becomes

final and non-appealable, and (ii) the closing of the Transaction with the Successful Bidder (the "Outside Back-Up Date"); provided, that the Administrative Agent shall not be required to serve as a Back-Up Bidder.  If, after the Sale Hearing but prior to the Outside Back-Up Date for a Proposed Sale, the Successful Bidder fails to consummate or proceed with the relevant Proposed Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to have the next Successful Bid, and the Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the Proposed Sale with the Back-Up Bidder. The Debtor will provide notice to the Consulting Parties of any failure by the Successful Bidder to close the Proposed Sale and the election to proceed to close a Proposed Sale with the Back-Up Bidder.

## XIII.
## Right to Credit Bid

Any creditor that has a valid, perfected, unavoidable, and enforceable security interest (a "Security Interest") in the Debtor's Assets (any such creditor, a "Secured Creditor"), which Security Interest is not subject to any contest or dispute in this chapter 11 case or otherwise, may make one or more credit bids for all or any portion of the secured claim(s) held by such Secured Creditor at the Auction, subject to the requirements of section 363(k) of the Bankruptcy Code (a "Credit Bid").  In order to qualify to Credit Bid, a Secured Creditor, other than the Administrative Agent on behalf of the Secured Parties, (i) must be a Qualified Bidder and a Credit Bid must qualify as a Qualified Bid, and (ii) that has a Security Interest in the assets being sold that is disputed, must have its Security Interest allowed prior to being able to submit a Credit Bid.  No Secured Interest or claim which purports to be secured by a lien on the Disputed Assets shall be permitted to Credit Bid against the Disputed Assets; provided, however, that the Administrative Agent shall have the right to Credit Bid on the Specified Avoidance Actions (as defined in the Cash Collateral Order) to the extent of any Diminution in Value (as defined in the Cash Collateral Order).

As of the entry of the Bidding Procedures Order on October [30], 2020, Administrative Agent, on behalf of the Secured Parties, has not consented to any Proposed Sale, and has notified the Debtor that it reserves all rights with respect to any Proposed Sale unless and until all of the Obligations, as stipulated in Paragraph 3 of the Cash Collateral Order and the Adequate Protection Obligations (as defined in the Cash Collateral Order) (collectively, the "Obligations") are indefeasibly paid to Administrative Agent in full in cash at closing.  Administrative Agent, on behalf of the Secured Parties, shall have the right, but not the obligation, to submit a Credit Bid with respect to some or all of their Obligations for their Collateral (as defined in the Cash Collateral Order, which Collateral shall not include the Disputed Assets absent an Asset Determination (as defined in the Cash Collateral Order), but shall include the Specified Avoidance Actions (as defined in the Cash Collateral Order) to the extent of any Diminution in Value (as defined in the Cash Collateral Order)) during the Auction, upon such terms and conditions consistent with these Bidding Procedures.  Any failure of a Secured Creditor to submit a Credit Bid does not impair the Secured Creditor's rights under Bankruptcy Code section 363(f) to not consent to a Sale that is unacceptable to it.

The Administrative Agent, on behalf of the Secured Parties, has been deemed Qualified Bidders to the extent of their Obligations, and shall be permitted to submit a Credit Bid on behalf

of the Secured Parties. The Credit Bid may be submitted as a Back-Up Bid in the event that the sale to the Successful Bidder either does not close or the net proceeds from such sale are insufficient to indefeasibly satisfy the Obligations in full in cash, and such Credit Bid expressly states that it is being submitted solely for such purposes (an "Agent Backup Credit Bid"). If Administrative Agent submits a Credit Bid or an Agent Backup Credit Bid, it will promptly submit a form of agreement after the Auction to reflect the terms of the transaction compromising the Credit Bid or Agent Backup Credit Bid, as applicable. No Break-Up Fee shall be payable from any Credit Bid or Agent Backup Credit Bid. Unless otherwise provided herein, all Qualified Bids shall be cash bids. Any cash received from the sale of the Disputed Asset shall be deposited by the Debtor in a separate account and not comingled with the Debtor's other funds, unless otherwise agreed to by Boomerang or Centric (as applicable) or as determined by further order of the Bankruptcy Court. For the avoidance of all doubt, the failure of the Administrative Agent to make a Credit Bid shall in no way be deemed acceptance to the Proposed Sale or any Proposed Sales or otherwise impair the Administrative Agent's rights to object to the Proposed Sale or Proposed Sales.

For the avoidance of doubt, no Break-Up Fee shall be payable to the Stalking Horse Bidder in the event that the Administrative Agent is deemed the Successful Bidder as a result of a Credit Bid.

## XIV.
## The Sale Hearing and Return of Deposits

In the event one or more Proposed Sales are accepted by the Debtor, a hearing to approve the Sale(s) will take place before the Honorable HON. MARVIN ISGUR, United States Bankruptcy Judge, **on November 30, 2020 at 9:00 a.m. Central Time**, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, 515 Rusk Street, Courtroom 400, Houston, Texas 77002. The Sale Hearing may be adjourned or rescheduled by the Debtor without notice other than by an announcement made at the Sale Hearing.

The Debtor will not be bound by a Successful Bid for a Proposed Sale or a Back-Up Bid for a Proposed Sale unless and until the Bankruptcy Court has approved the same. Following Bankruptcy Court approval of a Proposed Sale with the Successful Bidder, if the Successful Bidder fails to consummate the Proposed Sale for any reason, the Back-Up Bidder will be deemed to be the Successful Bidder and the Debtor will enter into a Sale with the Back-Up Bidder on the terms of the Back-Up Bid without any further order of the Bankruptcy Court, and the Debtor may pursue any and all available remedies against the Successful Bidder in connection with its failure to consummate the Sale.

The Deposit (together with interest, if any, thereon) of the Back-Up Bidder for a Proposed Sale will not be returned until two (2) business days following the closing of the Sale to the Successful Bidder. The Deposit (together with interest, if any, thereon) of all other Qualified Bidders will be returned within 48 hours of the Auction concluding. The Deposit of the Successful Bidder (together with interest, if any, thereon) shall be applied against the payment of the Proposed Sale consideration upon the closing of the Sale. In the event a Bidder fails to close as a result of its own default, its Deposit shall be released to, and retained by, the Debtor.

Deposits made by Potential Bidders who are not determined to be Qualified Bidders will be returned within five (5) business days after the Bid Deadline.

## XV.
## Reservation of Rights and Fiduciary Obligation

Notwithstanding any term to the contrary herein, the Debtor, in consultation with the Consulting Parties, reserves the right to: (i) modify the Bidding Procedures at any time, except with respect to procedures pertaining to the Disputed Assets which may only be modified with written consent of both Centric and Boomerang or by order of the Court; (ii) determine which Qualified Bid, if any, is the highest or otherwise best offer, provided that in determining the highest and best price for the Disputed Assets, the Debtor shall not attribute any value to the Disputed Assets Bid arising from bids on other assets of the Debtor; (iii) reject at any time, any bid that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the APA; or (c) contrary to the best interests of the Debtor, its estate, and creditors as determined by the Debtor in its sole discretion; and (iv) pursue a sale or other transaction through a chapter 11 plan.

Notwithstanding any term to the contrary herein, Boomerang, Centric and the Administrative Agent each reserves its respective rights to (a) contest the sale of the Disputed Assets if any of their ownership rights or security interests are impeded, infringed upon, modified or in any way affected by such sale; (b) contest the sale for any other reason provided by the Bankruptcy Code and applicable law.

Nothing in these Bidding Procedures shall require the Debtor, the board of directors or similar governing body of the Debtor, or any individual board member or officer of the Debtor to take any action, or to refrain from taking any action, with respect to these Bidding Procedures or the Auction, to the extent such persons or entities determine, on the advice of counsel, that taking or refraining from taking such action, is required to comply with applicable law or its fiduciary obligations.

[*Remainder of this page intentionally left blank*]

**<u>Appendix 2</u>**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 (MI) |
| EAGLE PIPE, LLC,[1] | § § | Case No. 20-34879-11 |
| Debtor. | § § | |

## NOTICE OF BID DEADLINE, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that on October 9, 2020, the Debtor filed its *Motion for (I) an Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof; and (II) an Order Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims and Interests* [Docket No. 55] (the "Sale Motion").

**PLEASE TAKE FURTHER NOTICE** that on October 30, 2020, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") entered its *Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof* [Docket No. __] (the "Bidding Procedures Order") approving certain bidding procedures attached thereto as Appendix 1.

**PLEASE TAKE FURTHER NOTICE** that Buyer is hereby informed that certain pipes, defined in the Bidding Procedures as Disputed Assets, are being offered for sale. Boomerang Tube LLC ("Boomerang") claims to be the owner of the certain Disputed Assets, and Centric Pipe, LLC ("Centric") claims to have sold certain of the Disputed Assets to recover amounts owed by the Debtor before the Petition Date. Certain of the Disputed Assets are the subject an action in Texas State Court commenced by Boomerang that has been stayed by the commencement of the Debtor's chapter 11 case. To date, the Debtor has not established its ownership interest in the Disputed Assets pursuant to an adversary proceeding commenced under Federal Rule of Bankruptcy Procedure 7001(2) or (9), nor have Boomerang and Centric proved their ownership interest in or rights to sell the Disputed Assets. Absent further order of the Court, any Buyer may be acquiring only a right to establish that it acquired ownership of the Disputed Assets. Upon the selection of the Successful Bidder of the Disputed Assets as determined after the Auction, and the closing of a related sale, the Successful Bidder shall not have the right to move, modify, alter or exercise any other ownership rights to the Disputed Assets without either (i) further order of the Bankruptcy Court adjudicating the Debtor to be the owner the Disputed Assets immediately prior to the sale of the Disputed Assets to the Successful Bidder; or (ii) the consent and agreement of Boomerang or Centric, as applicable..

---

[1] The last four digits of Debtor's federal tax identification number are (1119).

**PLEASE TAKE FURTHER NOTICE** that all interested parties are invited to seek to become a Qualified Bidder and submit a Qualified Bid to purchase all or a portion of the Debtor's businesses and assets in accordance with the terms of the Bidding Procedures Order and the bidding procedures.  The deadline for Potential Bidders to submit Qualified Bids is **November 16, 2020 at 4:00 p.m.**

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures Order, unless cancelled, an Auction will take place on **November 20, 2020** commencing at **10:00 a.m**. **Central Time** at the offices of Gray Reed, 1300 Post Oak Blvd., Suite 2000, Houston, Texas 77056.  The Auction will proceed, and be conducted, pursuant to the terms of the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the sale of the Debtor's assets, including the assumption and assignment of any executory contracts (the "Sale Hearing"), will take place on **November 30, 2020 at 9:00 a.m. Central Time** in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, 515 Rusk Street, Courtroom 400, Houston, Texas 77002.  As set forth in the Bidding Procedures, the Auction and the Sale Hearing may be cancelled, with a notice of cancellation to be filed by the Debtor with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion and the Proposed Sale (a "Sale Objection") shall be filed with the Bankruptcy Court and served on the following parties so as to be actually received no later than **4:00 p.m. Central Time on November 18, 2020** (the "Sale Objection Deadline"): (i) counsel to the Debtor, Gray Reed, 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056, Attn: Paul D. Moak, Aaron M. Kaufman and Lydia R. Webb (pmoak@grayreed.com, akaufman@grayreed.com and lwebb@grayreed.com); (ii) counsel to the Committee, Jeff Carruth (jcarruth@wkpz.com); (iii) counsel to the Administrative Agent, Vorys, Sater, Seymour and Pease LLP, 909 Fannin Street, Suite 2700, Houston, Texas 77010, Attn: Steven R. Rech, Kari B. Coniglio, and Jeffrey W. Bieszczak (srech@vorys.com, kbconiglio@vorys.com, and jwbieszczak@vorys.com); and (iv) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Hector Duran, Jr. and Jayson B. Ruff (hector.duran.jr@usdoj.gov and jayson.b.ruff@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that the failure to timely file and serve a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion prior to, at the Sale Hearing, or thereafter, of any such objection to the Motion, the Sale, the Debtor's consummation of the Proposed Sale, or the proposed assumption and assignment of any executory contracts or unexpired leases.  Failure to file and serve a Sale Objection by the Sale Objection Deadline shall be deemed to be consent to the Sale for purposes of Bankruptcy Code section 363(f) and a waiver of any preferential purchase rights or other similar rights to acquire any of the Debtor's assets.

**PLEASE TAKE FURTHER NOTICE** that copies of pleadings related to the proposed sale(s), including the Bidding Procedures Order (and attached Bidding Procedures) approved by the Bankruptcy Court, are available on the Bankruptcy Court's website at http://ecf.txs.uscourts.gov/ or by contacting Debtor's counsel via email at the addresses listed above.

Respectfully submitted this __th day of October, 2020.

**GRAY REED**
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100

By: _/s/ draft_
    Paul D. Moak
    Texas Bar No. 00794316
    Aaron M. Kaufman
    Texas Bar No. 24060067
    Lydia R. Webb
    Texas Bar No. 24083758

Email:  pmoak@grayreed.com
          akaufman@grayree.com
          lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTOR**

**CERTIFICATE OF SERVICE**

I hereby certify that on October __, 2020, a true and correct copy of this *Notice of Bid Deadline, Auction, and Sale Hearing* has been served (i) electronically via CM/ECF on all parties who have subscribed for electronic notice in this case, (ii) via first class U.S. mail on all parties listed on the Debtor's Official Service List and (iii) via first class U.S. mail or email if available to (a) all potential buyers previously identified or solicited by the Debtor or its advisors and any additional parties who have previously expressed an interest to the Debtor or B. Riley in potentially acquiring the Assets; and (b) counterparties to the Debtor's executory contracts and unexpired leases.

_/s/ Paul Moak_
Paul D. Moak

**Appendix 3**

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| EAGLE PIPE, LLC,[1] | § | |
| | § | Case No. 20-34879 (MI) |
| Debtor. | § | |
| | § | |

**NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES SUBJECT TO
POSSIBLE ASSUMPTION AND ASSIGNMENT AND PROPOSED CURE AMOUNTS**

      **PLEASE TAKE NOTICE** that pursuant to the terms of that certain *Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof* [Docket No. ___] (the "Bidding Procedures Order"), Eagle Pipe, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), may hold an Auction for the sale of substantially all of its assets on November 20, 2020 at the Houston office of Gray Reed.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, the Debtor hereby provide its notice (the "Cure Notice") of proposed cure amounts (each a "Cure Amount" and collectively, the "Cure Amounts") for all contracts and leases subject to potential assumption and assignment to the successful bidder(s) at Auction.

      **PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** are schedules of the executory contracts and unexpired leases (collectively, the "Potential Assumed Contracts and Leases") that may be included as part of the sale of the Debtor's assets and the proposed Cure Amount for each such lease or contract.

      **PLEASE TAKE FURTHER NOTICE** that any objection to any proposed Cure Amount for any Potential Assumed Contract and Lease must be (a) in writing, (b) state the basis for such objection with specificity, (c) conform to the Bankruptcy Rules and Local Rules of the Southern District of Texas, and (d) be filed so as to be actually on or before **4:00 p.m. Central Time on November 18, 2020.**  Any other objection to the proposed assumption and assignment of the Potential Assumed Contracts and Leases, including, without limitation, on adequate assurance grounds, must be (a) in writing, (b) state the basis for such objection with specificity, (c) conform to the Bankruptcy Rules and Local Rules of the Southern District of Texas, and (d) be filed so as to be actually on or before **4:00 p.m. Central Time on November 27, 2020.**

      **PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, the Cure Amounts set forth in the Cure Notice shall be binding on all parties unless an objection thereto is timely filed and served.  If an objection to the assumption and assignment of the Potential

---

[1] The last four digits of Debtor's federal tax identification number are (1119).

Assumed Contracts and Leases or to the Cure Notice and any Cure Amount cannot be resolved consensually among the parties, the Court will set a hearing to determine such matters as soon thereafter as is practicable, and the Debtor is permitted to give notice only to the objecting party and those parties who have filed a notice of appearance.  The failure to timely file and serve an objection shall be deemed consent to the assumption and assignment of the Potential Assumed Contracts and Leases and to the Cure Amounts, and any and all objections thereto shall be deemed forever released and waived.

**PLEASE TAKE FURTHER NOTICE** that the inclusion of any contracts or leases on **Exhibit A** hereto shall not constitute or be deemed to be a determination or admission by the Debtor that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Respectfully submitted this _____ day of November, 2020.

**GRAY REED**

1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100

By: _/s/_____
    Paul D. Moak
    Texas Bar No. 00794316
    Aaron M. Kaufman
    Texas Bar No. 24060067
    Lydia R. Webb
    Texas Bar No. 24083758
    pmoak@grayreed.com
    akaufman@grayreed.com
    lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTOR**

**CERTIFICATE OF SERVICE**

I do hereby certify that on November _____, 2020 a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in this case and on the parties appearing on the attached service list via first class U.S. mail, postage prepaid.

_/s/_____
Paul D. Moak

**<u>Exhibit A</u>**

**Schedule of Executory Contracts and Unexpired Lease**

4830-3251-5278.11