**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| EAGLE PIPE, LLC,[1] | § § | |
| Debtor. | § § § | Case No. 20-34879 (MI) |

**NOTICE OF STALKING HORSE BIDDER**

     **PLEASE TAKE NOTICE** that on October 30, 2020, the Court entered its *Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof; and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof* [Docket No. 97] (the "Bidding Procedures Order").  The Bidding Procedures Order approved, among other things, the bidding procedures attached thereto as Exhibit A (the "Bidding Procedures").[2]

     **PLEASE TAKE FURTHER NOTICE** that, pursuant to Paragraphs 15-17 of the Bidding Procedures Order and Section IX of the Bidding Procedures, the Debtor reserved the right to select one or more bidders to act as a stalking horse for the Debtor's assets.

     **PLEASE TAKE FURTHER NOTICE** that pursuant to Paragraphs 15-17 of the Bidding Procedures Order and Section IX of the Bidding Procedures, the Debtor hereby designates Marco International Corporation as the stalking horse bidder on the terms set forth in the Asset Purchase Agreement dated October 30, 2020, attached hereto as **Exhibit A** (the "Stalking Horse Bid").

---

[1] The last four digits of Debtor's federal tax identification number are (1119).

[2] All capitalized terms used herein shall have the meaning ascribed to them in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that the Stalking Horse Bid offers to purchase the "Acquired Assets" (as such term is defined therein[3]) from the Debtor for a Purchase Price of up to $13,841,812 (the "Baseline Bid"), which is comprised of an payment of $8,758,179 in upfront cash payments payable at Closing, up to $100,000 in Purchaser funded Cure Amounts, and up to $4,983,633 in payments due following the Closing upon the occurrence of certain post-Closing events.

**PLEASE TAKE FURTHER NOTICE** that the Stalking Horse Bid contemplates the allowance of an administrative expense for actual out-of-pocket expenses not to exceed $380,650, or 2.75% of the purchase price (collectively, the "Break-Up Fee"), on the terms set forth under the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that U.S. Bank National Association, administrative agent under the Debtor's prepetition loan security agreement (in such capacity, the "Administrative Agent"), has not consented to the form and substance of the Stalking Horse Bid and reserves all rights set forth in Paragraph 17 of the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that all parties in interest other than the Administrative Agent shall have until 5:00 pm Central Time on Friday, November 6, 2020 (the "Stalking Horse Objection Period") to file an objection with the Court to the designation of the Stalking Horse Bid and the allowance and/or payment of any proposed Break-Up Fee.  The Administrative Agent shall have until the later of: (i) November 13, 2020, or (ii) one business day after the conclusion of any mediation among the Debtor, the Secured Parties, the Committee,

---

[3] The Stalking Horse Bid expressly excludes the Disputed Assets from the Acquired Assets, but provides that such assets of the Debtor may later be included, if the Disputed Assets may be sold by the Debtor free and clear of all liens and encumbrances as of the closing of the proposed transaction.

Boomerang and Centric, to file an objection on the grounds set forth in Paragraph 17 of the Bidding Procedures Order.  If no party in interest timely objects to the Debtor's designation of the Stalking Horse Bidder and/or the Break-Up Fee during the applicable Stalking Horse Objection Period, or if such timely objection(s) is overruled by the Court after hearing thereon, then the Break-Up Fee to be paid to a Stalking Horse Bidder, as more fully described in the Motion and the Bidding Procedures, shall be deemed approved pursuant to the terms and conditions set forth in the Bidding Procedures Order and Bidding Procedures, and shall be paid pursuant to the terms of an order approving a Proposed Sale.

Respectfully submitted this 1st day of November, 2020.

**GRAY REED & McGRAW LLP**

By:  _/s/ Aaron M. Kaufman_
        Paul D. Moak
        Texas Bar No. 00794316
        Aaron M. Kaufman
        Texas Bar No. 24060067
        Lydia R. Webb
        Texas Bar No. 24083758
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:      pmoak@grayreed.com
                 akaufman@grayreed.com
                 lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTOR**

**CERTIFICATE OF SERVICE**

I do hereby certify that on the 1st day of November, 2020, a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in this case.

_/s/ Aaron M. Kaufman_
Aaron M. Kaufman

3

## Exhibit A

**Stalking Horse APA**

**Execution Draft**

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**MARCO INTERNATIONAL CORPORATION,**

**AND**

**EAGLE PIPE, LLC**

**Dated as of November 1, 2020**

# TABLE OF CONTENTS

**Page**

ARTICLE I  CERTAIN DEFINITIONS ................................................................1

 1.1 Specific Definitions ..........................................................................1
 1.2 Other Terms .......................................................................................9
 1.3 Other Definitional Provisions ...........................................................9

ARTICLE II  PURCHASE AND SALE; ASSUMPTION OF CERTAIN
      LIABILITIES ....................................................................................9

 2.1 Acquired Assets .................................................................................9
 2.2 Assignment of Leases, Licenses, Contracts, and Purchase Orders ..................11
 2.3 Excluded Assets ...............................................................................12
 2.4 Assumed Obligations .......................................................................13
 2.5 No Other Liabilities Assumed ..........................................................13
 2.6 Right to Change Designations ..........................................................14

ARTICLE III  PURCHASE PRICE AND PAYMENT ............................................14

 3.1 Purchase Price ..................................................................................14
 3.2 Payment of Purchase Price; Deposit; Escrow ..................................15
 3.3 Adjustment Fund ..............................................................................16
 3.4 Adjustments to Purchase Price .........................................................16
 3.5 Prorations..........................................................................................17
 3.6 Procedure for Purchase Price Calculation and Payment ..................18
 3.7 Further Assurances ...........................................................................18

ARTICLE IV  REPRESENTATIONS AND WARRANTIES OF SELLER .........................19

 4.1 Due Incorporation; Good Standing ..................................................19
 4.2 Authority; No Violation ...................................................................19
 4.3 Consents ...........................................................................................20
 4.4 Title to and Condition of Properties .................................................20
 4.5 Contracts ..........................................................................................20
 4.6 Brokers .............................................................................................20
 4.7 Operational Matters .........................................................................20
 4.8 Inventory ..........................................................................................21
 4.9 Accounts ...........................................................................................21
 4.10 Employees ........................................................................................22
 4.11 Intellectual Property ........................................................................22
 4.12 Compliance with Laws ....................................................................22
 4.13 Taxes ................................................................................................23
 4.14 Employee Benefit Plans ...................................................................23
 4.15 Customers and Suppliers ..................................................................24
 4.16 Environmental Matters ....................................................................24
 4.17 Litigation ..........................................................................................25

# TABLE OF CONTENTS
(continued)

**Page**

ARTICLE V    REPRESENTATIONS AND WARRANTIES OF PURCHASER ...............25

| | | |
|---|---|---|
| 5.1 | Purchaser's Organization; Good Standing | 25 |
| 5.2 | Purchaser's Authority; No Violation | 25 |
| 5.3 | Consents, Approvals or Authorizations | 25 |
| 5.4 | Brokers | 25 |
| 5.5 | Litigation | 26 |

ARTICLE VI    COVENANTS OF SELLER AND/OR PURCHASER ..................26

| | | |
|---|---|---|
| 6.1 | Consents and Approvals | 26 |
| 6.2 | Confidentiality; Non-Solicitation and Use of Trade Names | 26 |
| 6.3 | Referral of Business Opportunities | 28 |
| 6.4 | Seller's Employees | 28 |
| 6.5 | Purchaser's Access To Seller's Records | 28 |
| 6.6 | Seller's Maintenance of Leases and Contracts | 29 |
| 6.7 | COBRA and WARN Act Obligations | 29 |
| 6.8 | Payment of Cure Amounts | 29 |
| 6.9 | Termination of Hired Employees | 29 |
| 6.10 | Receipt of Purchaser's Assets | 29 |
| 6.11 | Reporting Obligations | 29 |
| 6.12 | Public Statements | 30 |
| 6.13 | Bankruptcy Court Approval | 30 |
| 6.14 | Expense Reimbursement | 31 |

ARTICLE VII    COVENANTS OF PURCHASER ..................31

| | | |
|---|---|---|
| 7.1 | Assumed Obligations | 31 |
| 7.2 | Employees | 31 |
| 7.3 | Reasonable Access to Records and Certain Personnel | 32 |
| 7.4 | Receipt of Seller's Assets | 32 |

ARTICLE VIII  CONDITIONS PRECEDENT TO OBLIGATIONS OF PURCHASER..........33

| | | |
|---|---|---|
| 8.1 | Representations and Warranties True as of the Effective Date and Closing Date | 33 |
| 8.2 | No Material Adverse Change | 33 |
| 8.3 | Ordinary Course Operations | 33 |
| 8.4 | Delivery of Acquired Assets | 33 |
| 8.5 | Subject to Competitive Bidding Process | 33 |
| 8.6 | Lease/Contract Assumption and Assignment | 34 |
| 8.7 | Entry of the Stalking Horse Order | 34 |
| 8.8 | Consents; Permits | 34 |
| 8.9 | Company Documents | 34 |
| 8.10 | Release of Liens | 35 |
| 8.11 | Sale Order | 35 |

-ii-

# TABLE OF CONTENTS
(continued)

Page

| | | | |
|---|---|---|---|
| | 8.12 | Closing | 35 |
| ARTICLE IX | | CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER | 35 |
| | 9.1 | Representations and Warranties True as of the Effective Date and Closing Date | 35 |
| | 9.2 | Bankruptcy Condition | 35 |
| | 9.3 | Entry of the Stalking Horse Order | 35 |
| | 9.4 | Consents; Permits | 35 |
| | 9.5 | Company Documents | 36 |
| | 9.6 | Closing Deadline | 36 |
| ARTICLE X | | CLOSING | 36 |
| | 10.1 | Closing | 36 |
| | 10.2 | Deliveries by Seller | 36 |
| | 10.3 | Deliveries by Purchaser | 36 |
| ARTICLE XI | | TERMINATION | 36 |
| | 11.1 | Termination of Agreement | 36 |
| | 11.2 | Procedure and Effect of Termination and Right to Proceed | 38 |
| | 11.3 | Breach by Seller | 38 |
| | 11.4 | Breach by Purchaser | 38 |
| | 11.5 | Alternative Purchaser | 38 |
| | 11.6 | Exclusive Remedies | 38 |
| ARTICLE XII | | MISCELLANEOUS | 39 |
| | 12.1 | Expenses | 39 |
| | 12.2 | Amendment | 39 |
| | 12.3 | Notices | 39 |
| | 12.4 | Effect of Investigations | 40 |
| | 12.5 | Interim Management | 40 |
| | 12.6 | Waivers | 40 |
| | 12.7 | Counterparts | 40 |
| | 12.8 | Headings | 41 |
| | 12.9 | Applicable Law and Jurisdiction | 41 |
| | 12.10 | Binding Nature; Assignment | 41 |
| | 12.11 | No Third Party Beneficiaries | 41 |
| | 12.12 | Non-Recourse | 41 |
| | 12.13 | Tax Matters | 42 |
| | 12.14 | Construction | 42 |
| | 12.15 | Entire Understanding | 42 |
| | 12.16 | Broker Commission | 42 |

AFDOCS/22996992.14

LIST OF SCHEDULES AND EXHIBITS

SCHEDULE 2.1(a) - Inventory
SCHEDULE 2.1(b) – Intellectual Property
SCHEDULE 2.1(e) - Permits
SCHEDULE 2.1(i) - Accounts
SCHEDULE 2.2 – Material Contracts, Leases, Cure Amounts
SCHEDULE 2.3(i) – Excluded Assets
SCHEDULE 4.2 – Authority; No Violation
SCHEDULE 4.6 – Brokers
SCHEDULE 4.8 - Transactions Outside of the Ordinary Course
SCHEDULE 4.14(a) –Employee Benefit Plans
SCHEDULE 4.14(c) –Employee Benefit Plan Compliance
SCHEDULE 4.14(d) –Employee Benefit Plan Proceedings
SCHEDULE 4.16 – Environmental Matters
SCHEDULE 4.17 – Litigation
SCHEDULE 5.2 – Purchaser's Authority; No Violation
EXHIBIT A – Escrow Agreement
EXHIBIT B – Form of Proposed Sale Order

AFDOCS/22996992.12
4847-8608-8912.1

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT is dated as of November 1, 2020 (the "Effective Date"), by and among Marco International Corporation, a corporation organized and existing under the laws of the State of New York ("Marco", or whether Marco or its Permitted Designee, "Purchaser"), Eagle Pipe, LLC, a Texas limited liability company and the debtor and debtor-in-possession under Chapter 11 Case No. 20-34879, in the United States Bankruptcy Court for the Southern District of Texas ("Eagle Pipe" or the "Seller").  In consideration of the mutual covenants, agreements and warranties herein contained, the parties hereto agree as follows:

## ARTICLE I
## CERTAIN DEFINITIONS

1.1    Specific Definitions.  Unless otherwise defined herein, terms used herein shall have the meanings set forth below:

"Accounts" shall have the meaning ascribed thereto in Section 2.1(i) hereof.

"Acquired Assets" shall have the meaning ascribed thereto in Section 2.1 hereof.

"Acquired Locations" means the warehouse and property locations of Seller identified on **Schedule 2.2** hereto, including the Warehouses and the Offices, subject to Section 2.2(a) hereof.

"Adjustment Fund" shall have the meaning ascribed thereto in Section 3.2(b) hereof.

"Affiliate Obligations" means Seller's debt and other obligations and liabilities to affiliates and stockholders of Seller, and includes all interest, fees, costs and similar amounts payable by Seller in respect thereof.

"Agreement" means this Asset Purchase Agreement, including all Exhibits and Schedules hereto, as it may be amended from time to time in accordance with its terms.

"Ancillary Documents" shall have the meaning ascribed thereto in Section 12.8 hereof.

"Assignment and Assumption" shall mean an Assignment and Assumption of Leases, Contracts and other Assumed Obligations, as provided for in Section 10.2 hereof, executed and delivered by Purchaser and Seller in accordance with Sections 10.2 and 10.3 hereof.

"Assumed Contracts" shall mean those Contracts assigned by Seller and assumed by Purchaser by operation of Section 2.2(b) hereof.

"Assumed Leases" shall have the meaning ascribed thereto in Section 2.2(a) hereof.

"Assumed Obligations" shall have the meaning ascribed thereto in Section 2.4 hereof.

-1-

"*Bankruptcy Code*" means Title 11, United States Code, sections 101-1330, as same shall be amended from time to time.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, having jurisdiction over Eagle Pipe and its assets in the Chapter 11 Case.

"*Bankruptcy Rules*" shall mean the Federal Rules of Bankruptcy Procedure as shall be promulgated by the Supreme Court of the United States, as same shall be applicable in the Chapter 11 Cases.

"*Bid Procedures Order*" shall that certain *Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, and (C) Approving Cure Procedures and* the *Form and Manner of Notice Thereof,* entered by the Bankruptcy Court as Docket No. 97 in the Chapter 11 Case, as well as any subsequent modification or amendment thereto.

"*Bill of Sale*" shall have the meaning ascribed thereto in Section 10.2 hereof.

"*Boomerang Claims*" means any Avoidance Actions and alternative other legal theories and defenses with respect to the Boomerang Inventory either determining the Boomerang Inventory is property of the Seller or may be recovered by Seller or its bankruptcy estate for the benefit of its creditors.

"*Boomerang Inventory*" means that certain Inventory listed in Schedule 1 to that certain *Cancellation of Sale Agreement*, dated July 8, 2020, by and between the Seller and Boomerang Tube, LLC.

"*Business*" means the business of Seller involving the sale, distribution, and performance of supply-chain logistics services for oil country tubular goods (OCTG), line pipe, and HDPE (poly pipe), as well as a wide variety of associated products and services to the upstream, midstream, and municipal & industrial industries, together with the office operations operated by Seller.

"*Business Day*" shall mean any day other than a Saturday, a Sunday, or a day on which banks in New York, NY are authorized or obligated by law or executive order to close.

"*Centric Claims*" means any Avoidance Actions and alternative other legal theories and defenses with respect to the Centric Inventory either determining the Centric Inventory is property of Seller or may be recovered by the Seller or its bankruptcy estate for the benefit of its creditors.

"*Centric Inventory*" means that certain Inventory listed in Exhibit A to the letter from Centric to the Seller, dated July 1, 2020, or to which ownership is otherwise disputed by Centric.

"*Chapter 11 Case*" means the pending case commenced by Eagle Pipe on October 5, 2020 under Chapter 11 of the Bankruptcy Code, pending in the Bankruptcy Court under docket no. 20-34879.

"*Claim*" means all claims, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of

-2-

any nature, civil, criminal, administrative, regulatory or otherwise, rights to payment and remedies whether at law or in equity, of any nature whatsoever, asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured or otherwise, and shall include affirmative and defensive legal rights, as well as any other such legal assertions as fall within the definition of Claim as set forth in Section 101(5) of the Bankruptcy Code having the broadest possible meaning permitted thereunder,

"*Closing*" means the consummation of the transactions contemplated herein in accordance with Article X hereof.

"*Closing Date*" means the date on which the Closing shall occur, as more extensively discussed in Section 10.1 hereof.

"*COBRA*" means the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.

"*Code*" means the United States Internal Revenue Code of 1986, as amended.

"*Competitive Business*" shall have the meaning ascribed thereto in Section 6.2(a) hereof.

"*Confidential Information*" shall have the meaning ascribed thereto in Section 6.2(a) hereof.

"*Contaminant*" means any substances regulated under any Environmental Law as a pollutant, Hazardous Substances, hazardous or toxic wastes, hazardous materials, or toxic substances under any Environmental Law.

"*Contracts*" means all contracts, leases, deeds, mortgages, licenses, Purchase Orders, instruments, notes, commitments, undertakings, indentures, joint ventures and all other agreements, commitments and legally binding arrangements, whether written or oral.

"*Contract Rejection Option*" shall have the meaning ascribed thereto in Section 2.2(b)(ii) hereof.

"*Cure Amount*" shall mean the amounts, if any, necessary to cure all defaults, if any, and to pay all actual pecuniary losses, if any, that have resulted from defaults under the Assumed Contracts and the Assumed Leases.

"*Deposit*" shall have the meaning ascribed thereto in Section 3.2(a) hereof.

"*DJR Contract*" means that certain inventory offer dated August 3, 2020 and related invoice with stated purchase and return terms between Seller and DJR Energy, LLC dated September 23, 2020 for the supply of certain Inventory.

"*Disclosure Schedule*" means, collectively, the various disclosure schedules hereto.

"*Eagle Pipe*" shall have the meaning ascribed thereto in the Preamble of this Agreement.

-3-

"*Effective Date*" means the date of this Agreement as stated in the first paragraph hereof.

"*Employees*" shall have the meaning ascribed thereto in Section 7.2 hereof.

"*Employee Benefit Plan*" shall have the meaning ascribed thereto in Section 4.14 hereof.

"*Enduring Contract*" means those certain invoices with stated purchase and return terms between Seller and Enduring Resources, LLC dated July 24, 2020 and July 31, 2020 for the supply of certain Inventory.

"*Environmental Costs and Liabilities*" means all Losses from any Claim, by any Person, whether based on contract, tort, or arising under or pursuant to any Environmental Law or a Release of a Contaminant into the environment, including any Remedial Action, any Lien in favor of any authority pursuant to any Environmental Law or any Order or agreement with any authority.

"*Environmental Law*" means any Regulation which is related to or otherwise imposes liability or standards of conduct concerning (a) relating to pollution (or the cleanup thereof) or the protection of natural resources, endangered or threatened species, human health or safety, or the environment (including ambient air, soil, surface water or groundwater, or subsurface strata); or (b) concerning the presence of, exposure to, or the management, manufacture, use, containment, storage, recycling, reclamation, reuse, treatment, generation, discharge, transportation, processing, production, disposal or remediation of any Hazardous Substances. The term "Environmental Law" includes, without limitation, the following (including their implementing regulations and any state analogs): the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601 et seq.; the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended by the Hazardous and Solid Waste Amendments of 1984, 42 U.S.C. §§ 6901 et seq.; the Federal Water Pollution Control Act of 1972, as amended by the Clean Water Act of 1977, 33 U.S.C. §§ 1251 et seq.; the Toxic Substances Control Act of 1976, as amended, 15 U.S.C. §§ 2601 et seq.; the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. §§ 11001 et seq.; the Clean Air Act of 1966, as amended by the Clean Air Act Amendments of 1990, 42 U.S.C. §§ 7401 et seq.; and the Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. §§ 651 et seq.

"*ERISA*" shall have the meaning ascribed thereto in Section 4.14(c) hereof.

"*Escrow*" shall have the meaning ascribed thereto in Section 3.2(b) hereof.

"*Escrow Agent*" shall have the meaning ascribed thereto in Section 3.2(a) hereof.

"*Escrow Agreement*" shall have the meaning ascribed thereto in Section 3.2(a) hereof.

"*Executory Contracts*" shall have the meaning ascribed thereto in Section 2.2(b) hereof.

"*Excluded Assets*" shall have the meaning ascribed thereto in Section 2.3 hereof.

"*Excluded Contracts*" shall mean any Contracts or obligations of Seller other than the Assumed Contracts.

AFDOCS/22996992.14

"*Expense Reimbursement*" means an amount equal to the reasonable out-of-pocket costs, fees and expenses of Purchaser (including reasonable expenses of legal, financial advisory, accounting and other similar costs, fees and expenses, including, but not limited to, the fees and expenses of Arent Fox LLP as Purchaser's legal counsel, and all filing fees) related to the transactions contemplated by this Agreement; provided that the Expense Reimbursement shall not exceed two and three-quarter percent (2.75%) of the proposed gross Purchase Price as of the Effective Date, as reflected on Schedule 3.1.

"*Final Order*" means an order of the Bankruptcy Court, in a form reasonably acceptable to Purchaser: (a) as to which the parties hereto have waived all rights of appeal and have agreed, in writing, to the finality thereof; or (b) as to which the time to appeal shall have expired and as to which no appeal shall then be pending, or (c) if an appeal shall have been filed or sought, either (i) no stay of the order shall be in effect or (ii) if such a stay shall have been granted by the Bankruptcy Court, then (A) the stay shall have been dissolved or (B) a final order of the district court having jurisdiction to hear such appeal shall have affirmed the order and the time allowed to appeal or to seek review or rehearing thereof shall have expired and the taking or granting of any further hearing, appeal or petition for certiorari shall not be permissible, and if a timely appeal of such district court order or timely motion to seek review or rehearing of such order shall have been made, any court of appeals having jurisdiction to hear such appeal or motion shall have affirmed the lower court's order upholding the order of the Bankruptcy Court and the time allowed to appeal or to seek review or rehearing thereof shall have expired and the taking or granting of any further hearing, appeal or petition for certiorari shall not be permissible.

"*Fixtures and Equipment*" shall have the meaning ascribed thereto in Section 2.1(d) hereof.

"*Guarantee*" means any guarantee or other contingent liability (other than any endorsement for collection or deposit in the ordinary course of business), direct or indirect, with respect to any Indebtedness or obligations of another Person, through a Contract or otherwise.

"*Hazardous Substances*" includes oil and petroleum products, asbestos, polychlorinated biphenyls and urea formaldehyde, and any other material classified as hazardous substances under Environmental Laws.

"*Hired Employees*" shall have the meaning ascribed thereto in Section 7.2 hereof.

"*Indebtedness*" with respect to any Person means any obligation of such Person for borrowed money, and in any event shall include (i) any obligation incurred for all or any part of the purchase price of property or other assets or for the cost of property or other assets constructed or of improvements thereto, (ii) accounts payable included in current liabilities and incurred in respect of property purchased in the Ordinary Course of Business, (iii) the face amount of all letters of credit issued for the account of such Person, (iv) obligations (whether or not such Person has assumed or become liable for the payment of such obligation) secured by Liens, (v) capitalized lease obligations, (vi) all Guarantees of such Person, (vii) all accrued interest, fees and charges in respect of any Indebtedness, and (viii) all prepayment premiums and penalties, and any other fees, expenses, indemnities and other amounts payable as a result of the prepayment and/or discharge of any Indebtedness.

"*Intellectual Property*" shall have the meaning ascribed thereto in Section 2.1(b)

"*In Transit Inventory*" shall have the meaning ascribed thereto in Section 2.1(a) hereof.

"*Inventory*" shall have the meaning ascribed thereto in Section 2.1(a) hereto.

"*Inventory Valuation*" shall have the meaning ascribed thereto in Section 3.4(a) hereof.

"*Lease Deposits*" means any security deposits held or required under any Assumed Leases.

"*Leases*" means all leases, subleases, licenses, concessions and other Contracts, including all amendments, extensions, renewals, guaranties and other agreements with respect thereto.

"*Lien*" means any security interest, lien, charge, mortgage, deed, assignment, pledge, hypothecation, encumbrance, easement, restriction or interest of another Person of any kind or nature.

"*Losses*" mean all liabilities of every kind, losses, costs, claims, judgments, awards, damages (including punitive, consequential and treble damages), penalties or expenses (including, without limitation, reasonable attorneys' fees and expenses and costs of investigation and litigation), and also including any expenditures or expenses incurred to cover, remedy or rectify any such Losses.

"*Material Adverse Effect*" means a material adverse change or effect upon any of the Acquired Assets, the Acquired Locations, the Assumed Contracts, or the operations, prospects, condition (financial or otherwise) of the Business which shall have occurred and which (a) has or will materially impaired the ability of Purchaser to carry on the Business after the Closing substantially as such Business was conducted on the Effective Date, or (b) the ability of Seller to perform its obligations under this Agreement or any of the Ancillary Documents; in each case, other than to the extent that such materially adverse impact, change, or effect directly results from (i) any change in general economic conditions in the industries or markets in which the Company operates, (ii) national or international political conditions, including any engagement in hostilities, whether or not pursuant to the declaration of a national emergency or war or the occurrence of any military or terrorist attack, or (iii) the effect of any epidemic, pandemic or disease outbreak (including Covid-19) except, in the case of clauses (i), (ii) or (iii) foregoing, to the extent such event, circumstance, change, occurrence, development, fact or effect has a disproportionate impact on Seller or the Business as compared to other participants in any of the industries or markets in which the Company conducts its business.

"*Necessary Permits*" shall have the meaning ascribed thereto in Section 4.12(a) hereof.

"*Offices*" means Seller's company Offices identified on **Schedule 2.2** hereto.

"*Order*" means any decree, order, injunction, rule, judgment, or consent of or by any court or governmental authority.

"*Ordinary Course of Business*" means from and after the Effective Date, and unless provided otherwise herein, Seller shall have continued to operate the Business in the same manner

-6-

as conducted on the Effective Date, and (i) without any liquidation, close out, going-out-of-business or other deep discount sales at any of the Acquired Locations, (ii) in a manner consistent with preserving the goodwill of the Business as a going concern for the benefit of Purchaser, and (iii) otherwise in the ordinary course with respect to markdown and promotional activities in the Business consistent with past practices in effect prior to filing of the Chapter 11 Case.

"*PBGC*" shall have the meaning ascribed thereto in Section 4.14(d) hereof.

"*Permits*" shall have the meaning ascribed thereto in Section 2.1(e) hereof.

"*Permitted Designee*" shall have the meaning ascribed thereto in Section 12.10 hereof.

"*Person*" means any corporation, partnership, joint venture, limited liability company, organization, entity, authority or natural person.

"*Petition Date*" means October 5, 2020.

"*Premises*" shall have the meaning ascribed thereto in Section 4.15 hereof.

"*Proprietary Information*" shall have the meaning ascribed thereto in Section 2.1(c) hereof.

"*Public Statement*" means a communication in either oral or written form, such as a statement or an announcement, made to the public at large either through a press release or other similar communication, and does not include (i) communications between parties that are intended to be private and not for public consumption, (ii) statements made in open court, (iii) statements made in pleadings filed with a court, (iv) statements made during a deposition or court ordered examination, and (v) statements made in responses to written discovery requests such as interrogatories or admissions.

"*Purchase Orders*" means those agreements by Seller to purchase merchandise that, if owned by Seller on the Closing Date would constitute Inventory, in each case to the extent that such agreements are included in Assumed Contracts under this Agreement.

"*Purchase Price*" shall have the meaning ascribed thereto in Section 3.1 hereof.

"*Purchaser*" shall have the meaning ascribed thereto in the Preamble of this Agreement.

"*Regulation*" means any law, statute, regulation, ruling, rule or Order of, administered or enforced by or on behalf of any governmental authority.

"*Rejected Leases*" shall have the meaning ascribed thereto in Section 2.3(d) hereof.

"*Release*" means any release, spill, emission, leaking, pumping, disposal, discharge, dispersal or migration into the indoor or outdoor environment or into or out of any property or assets (including the Acquired Assets) owned or leased by Seller as at the Closing Date, including the movement of Contaminants through or in the air, soil, surface water, groundwater or property.

-7-

"*Remedial Action*" means all actions required under any applicable Environmental Law to (1) clean up, remove, treat or in any other way address Contaminants in the environment; (2) prevent the Release or threat of Release or minimize the further Release of Contaminants so they do not migrate or endanger or threaten to endanger public health or welfare or the indoor or outdoor environment; or (3) perform pre-remedial studies and investigations and post-remedial monitoring and care.

"*Sale Order*" means that certain order(s) in substantially the form to be attached hereto as **Exhibit B**, to be entered by the Bankruptcy Court in the Chapter 11 Case, as described in Section 8.11 of this Agreement, *inter alia*, approving the transactions contemplated by this Agreement.

"*Seller*" shall have the meaning ascribed thereto in the Preamble of this Agreement.

"*Seller's Knowledge*" or words of similar meaning shall mean the knowledge of Jared Light, Brandon Dewan, Adam Tesanovich, and Brian Garrett after reasonable inquiry of the relevant employee or consultant reasonably expected by the foregoing Persons to be knowledgeable regarding the subject matter of such inquiry.

"*Settlement Date*" shall have the meaning ascribed thereto in Section 3.3(a).

"*Stalking Horse Notice*" means the notice filed in the Chapter 11 Case pursuant to the Bid Procedures Order designating Purchaser as the stalking horse bidder and seeking protections to the extent permitted under the Bid Procedures Order.

"*Stalking Horse Order*" means an order that is in form and substance acceptable to Purchaser that identifies Purchaser as the stalking horse bidder with respect to the sale of the Acquired Assets by Seller pursuant to the terms of this Agreement entered by the Bankruptcy Court, which (i) in the event that no timely objections are filed with respect to the Stalking Horse Notice and each of Seller and Purchaser determines that no supplements or amendments to the terms of the Bid Procedures Order are required, such order shall be the Bid Procedures Order; or (ii) in the event of a timely filed objection to the Stalking Horse Notice or that Purchaser and/or Seller determines that a further amending or supplementing Order is required, such Order shall be in the form of a separate Order to that effect entered by the Court.

"*Successful Bidder*" shall have the meaning ascribed thereto in Section 11.1(f) hereof.

"*Taxes*" means all taxes, charges, fees, duties, levies or other assessments, including, without limitation, income, gross receipts, net proceeds, ad valorem, turnover, real and personal property (tangible and intangible), sales, use, franchise, excise, value added, capital, license, payroll, unemployment, environmental, customs duties, capital stock, disability, stamp, leasing, lease, user, transfer, fuel, excess profits, occupational and interest equalization, windfall profits, severance and employees' income withholding and Social Security taxes imposed by the United States or any other country or by any state, municipality, subdivision or instrumentality of the United States or of any other country or by any other tax authority, and unemployment insurance contributions, including all applicable penalties and interest, and such term shall include any interest, penalties or additions to tax attributable to such Taxes.

-8-

"*Tax Return*" means any report, return or other information required to be supplied to a taxing authority in connection with Taxes.

A "*third party*" means any Person other than Seller, Purchaser, or any of their respective affiliates.

"*Unassumed Liabilities*" shall have the meaning ascribed thereto in Section 2.5 hereof.

"*Warehouses*" means Seller's warehouses identified on **Schedule 2.2** hereto.

"*WARN Act*" shall have the meaning ascribed thereto in Section 2.5 hereof.

"*XTO Claims*" shall mean all Claims held by Seller adverse to XTO Energy Inc.

1.2    Other Terms.  Other terms may be defined elsewhere in the text of this Agreement and, unless otherwise indicated, shall have such meaning through this Agreement.

1.3    Other Definitional Provisions.

(a)    The words "hereof," "herein," and "hereunder" and words of similar import, when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.

(b)    The terms defined in the singular shall have a comparable meaning when used in the plural, and vice versa.

(c)    References herein to a specific Section, Subsection, Exhibit or Schedule shall refer, respectively, to Sections, Subsections, Exhibit or Schedules of this Agreement, unless the express context otherwise requires.

(d)    Wherever the word "include," or "includes," or "including" is used in this Agreement, it shall be deemed to be followed by the words "without limitation."

## ARTICLE II
## PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES

2.1    Acquired Assets.  Subject to the terms and conditions set forth in this Agreement, at the Closing, Seller shall sell, assign, transfer and deliver to Purchaser or cause to be sold, assigned, transferred and delivered to Purchaser's designee, and Purchaser shall purchase, acquire and take assignment and delivery of, the following assets owned by Seller or to which Seller has an interest in on the Closing Date (wherever located) which relate to, and are necessary or useful to the continuing operation of the Business, and all of Seller's right, title and interest therein and thereto on the Closing Date, free and clear of all Liens, Claims and encumbrances of whatever kind or nature, but not including those assets specifically excluded in Section 2.3 hereof (all of the assets to be sold, assigned, transferred and delivered to Purchaser hereunder shall be deemed included in the term "Acquired Assets" as used herein):

(a)     All inventories, finished goods, raw materials, work in progress, parts, and accessories of the Business (the "Inventory") wherever located, regardless of whether located at any Offices or Warehouses, and including merchandise which either has been delivered to a customer location or Warehouse prior to the Closing, or is in transit to a Warehouse or customer location prior to the Closing ("In Transit Inventory").  As of the Effective Date, all of the Inventory, including at the Offices or Warehouses, and any In Transit Inventory, but excluding the Boomerang Inventory and Centric Inventory, is identified in **Schedule 2.1(a)** hereto and the value assigned to such Inventory that is to be paid by Purchaser hereunder is stated as the "Inventory Valuation" on such **Schedule 2.1(a)**;

(b)     All right, title and interest in and to any and all intellectual property or other general intangibles owned and utilized by Seller, including, without limitation, all proprietary and licensed software and all contract rights relating thereto, Seller's e-commerce tools (if any), all trademarks and trade names, including "Eagle Pipe" and all goodwill associated therewith, all copyrights, all telephone numbers of Seller, including all local telephone numbers and any "800" or other toll free telephone numbers, all domain rights and internet website(s), including "eaglepipe.net," and names and marks, and the goodwill associated therewith, including without limitation the registered trademarks and applications therefor set forth in **Schedule 2.1(b)** hereto (collectively, the "Intellectual Property");

(c)     All proprietary information ("Proprietary Information") in the possession, custody and/or control of Seller, including, but not limited to, any and all customer, supplier, and/or mailing and email lists, databases, know how, trade secrets, research, specifications, designs, drawings, plans, processes, quality control protocols, specifications, technical information, diagrams, and schedules as well as all other proprietary information in the possession, custody and/or control of Seller affiliates associated with the Business.  All Proprietary Information shall be delivered to Purchaser in its present form;

(d)     All (1) furniture, fixtures, furnishings, signage, computer equipment, leasehold improvements, machinery, equipment, tools, owned vehicles, goods, and other tangible personal property owned by Seller which is used or useful in the day-to-day operation or maintenance of the Business at (i) the Warehouses (if any), and (ii) Seller's Offices, including in each case, but not limited to, any owned computer hardware and software and any furniture, fixtures and/or equipment which are used or useful in the day-to-day operation or maintenance of the Business (collectively, the "Fixtures and Equipment"), and (2) material and supplies (including packaging, shipping, and storage tools and materials) located at any such locations;

(e)     All licenses, permits, approvals, certificates of occupancy, authorizations, operating permits, registrations, plans and the like applicable in any way to the Business at the Acquired Locations and Offices to the extent the same are transferable by Seller to Purchaser set forth in **Schedule 2.1(e)** hereto ("Permits");

(f)     Any and all rights of return, offsets, counterclaims (other than claims described in Section 2.3(h) below), deductions and unpaid allowances with respect to those vendors (1) from which the Inventory was acquired and (2) under Purchase Orders which are included in Assumed Contracts;

-10-

(g)      All of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Acquired Assets; and

(h)      Except as described in Section 2.3(h) or Section 2.3(i) below, all rights to or interests in any Claims of any nature available to or being pursued by Seller, whether arising by way of counterclaim or otherwise whether known or unknown, contingent or non-contingent, which shall expressly include (i) the XTO Claims, and (ii) the Claims arising exclusively under Section 544-550 of the Bankruptcy Code ("Avoidance Actions") out of any Assumed Contracts, Inventory, Accounts, or continuing business relationship of the Seller's Business or related to the Acquired Assets, and in each case such assignment shall include the right and authority to settle, resolve, and/or waive any such Claims in the Purchaser's sole discretion;

(i)      All accounts and accounts receivable, net of any and all returns, credits for damaged and/or defective items, and disputed amounts, in each case in existence on the Closing Date (collectively, "Accounts"). **Schedule 2.1(i)** hereto sets forth the obligor and the gross amount collectible under each of the Accounts (the "Accounts Amount") existing as of the Effective Date, and Seller shall update such schedule immediately prior to the Closing Date to reflect the Accounts existing as of such date;

(j)      All prepaid assets, prepaid expenses, credits, refunds, rights of set-off or recoupment, all customer deposits relating to customer orders, the Assumed Contracts, and the Lease Deposits (collectively, the "Transferred Credits") that exist as of the Effective Date or are created for the benefit of Seller after the Effective Date;

(k)      To the extent relating to the Business, all books, records, manuals, information, computer files and similar materials, except for those records identified in Section 2.3(c) hereof;

(l)      All rights and claims arising from the Enduring Contract and the DJR Contract to collect any outstanding Accounts due thereunder, or, in the alternative to receive, collect, reclaim, and hold any returned or unpaid Inventory that is subject to the Enduring Contract or DJR Contract; and

(m)      Such assets of the Seller not otherwise provided for in this Agreement designated by Purchaser as Acquired Assets prior to or within thirty (30) days after Closing (which may then include the Centric Inventory or the Boomerang Inventory if it is determined to be available free and clear of liens and encumbrances) in each case at the value of such additional assets of the Seller that is reasonably determined among the parties using the same or similar valuation methodologies as employed under this Agreement or as otherwise agreed among the parties and paid by Purchaser to Seller as an additional Purchase Price with respect to any such additional designated assets.

2.2      Assignment of Leases, Licenses, Contracts, and Purchase Orders.  **Schedule 2.2** sets forth a list of all material Contracts and all Leases to which Seller is a party, together with estimated the Seller's good faith estimate (on a vendor-by-vendor basis) as of the Effective Date of the estimated Cure Amounts with respect to each counterparty to any of the Contracts and Leases. Subject to the terms and conditions set forth in this Agreement, including, but not limited

to this Section 2.2, Seller will assign and transfer to Purchaser, effective as of the Closing Date, all of Seller's (a) right, title and interest in and to, and Purchaser will take assignment of, the following rights and interests that are used in connection with, or relate primarily to the Business, and (b) Seller's obligations to pay to each counterparty of each Assumed Lease and the Cure Amount for such Lease or Contract subject to the limits prescribed herein with such assignment and transfer to thereafter be free and clear of any and all Liens, Claims and encumbrances of whatever kind or nature (and the right, title and interest of Seller under all of the following shall be deemed included in the term "Acquired Assets" as used herein):

(a)     All Leases for the real property locations which constitute the Acquired Locations, including the Warehouses and the Offices (the "Assumed Leases"), excluding those leases which are not acquired by Purchaser as provided for in this Agreement or which are a Rejected Lease; and

(b)     Any and all Contracts and other contractual rights of Seller that are executory in nature, concerning and/or necessary to the continued day-to-day operations or maintenance of the Acquired Locations, the Warehouses, the Offices or the Business (the "Executory Contracts") that are designated to be acquired by Purchaser (the "Assumed Executory Contracts"), together with those other Contracts that Purchaser designates to be assumed and assigned to it, in each case (the "Assumed Contracts"), which shall expressly exclude those Contracts, unexpired leases and other contractual rights (1) identified as Excluded Assets in Section 2.3 hereof and (2) any Lease which is a vehicle lease; as each of same shall be designated by Purchaser in the manner and at such times as are provided for herein; provided, however:

(i)     prior to the Effective Date, Seller has not rejected any Executory Contracts, and shall not have rejected any Executory Contracts pending the exercise or non-exercise by Purchaser of the Contract Rejection Option in accordance with the terms hereof; and

(ii)     Purchaser shall have the right by providing written notice to Seller and the counter-party to an Executory Contract through and including the date that is three (3) days prior to the final hearing to approve the Sale Order to determine whether or not to acquire any Executory Contract by way of assumption and assignment from Seller pursuant to this Agreement and consistent with the terms set forth in the Cure Notice provided to such counter-party (the "Contract Rejection Option").

2.3     Excluded Assets.  Notwithstanding anything to the contrary in this Agreement, the following assets of Seller, as well as any other assets not defined as Acquired Assets, shall be retained by Seller and are not being sold or assigned to Purchaser hereunder (all of the following are referred to collectively as the "Excluded Assets"):

(a)     Any capital stock held by Seller or any other affiliates of Seller;

(b)     Subject to Section 2.1(i), Section 6.10, and Section 7.4, cash and cash equivalents;

(c)     Any and all company records related to this transaction;

-12-

(d)     Any Contracts and/or Purchase Orders that do not constitute Assumed Contracts pursuant to Section 2.2(b) hereof, including, without limitation, (i) leases for one or more Acquired Locations but which are not assigned by Seller and assumed by Purchaser due to failure to obtain approval in the Sale Order ("Rejected Leases"), (ii) Contracts relating to the Rejected Lease locations, (iii) Leases for vehicles, and (iv) any other Contracts or Purchase Orders not purchased and assumed by Purchaser under any provision of this Agreement, including, without limitation, under Sections 2.2(b), 8.6, and 8.7;

(e)     Any refunds or claims for refunds of income or company taxes;

(f)     Any life insurance policies and proceeds thereof owned by Seller;

(g)     Any governmental rebates or refunds due or which may become due to Seller pursuant to any federal or state sales, customs or excise tax laws;

(h)     All Claims (i) that constitute Avoidance Actions with respect to any Excluded Contracts or business relationships not assumed by the Purchaser, and (ii) arising solely under or related to any of the Excluded Assets;

(i)     Such other items mutually agreed upon by Seller and Purchaser and specified on **Schedule 2.3(i)** hereto;

(j)     The Centric Claims, the Centric Inventory, the Boomerang Claims, and the Boomerang Inventory; and

(k)     The rights which accrue or will accrue to Seller under this Agreement and the Ancillary Documents.

2.4     Assumed Obligations.  At the Closing, except as provided in Section 2.3 and/or in Section 2.5 hereof, Purchaser shall assume, and agree to pay, perform, fulfill and discharge the following additional obligations of Seller:

(a)     Those obligations which are required to be performed after the Closing Date under the Assumed Contracts and Assumed Leases from and after the date of the Closing; provided, however, Seller shall pay the Cure Amounts due to any and all third parties to any Assumed Executory Contracts and Assumed Leases, which Cure Amount, together with all deficiencies in Lease Deposits under the Assumed Leases, shall be itemized by Seller prior to Closing on **Schedule 2.2** hereto, subject to the limitations contained in Section 3.4(b) hereof.

(b)     Those obligations relating to accrued but unused vacation and sick leave (but not any other compensation or benefits except as specified in Section 7.2) of Hired Employees of Seller hired by Purchaser at Closing; provided, however, following the Closing, subject to Section 7.2 hereof, Purchaser may establish such policies and procedures in respect of Hired Employees as Purchaser shall deem appropriate, in its discretion.

(c)     The obligations arising from the return of the DJR Inventory and the Enduring Inventory, if such inventory is returned at the option of such counterparty pursuant to the DJR Contract and the Enduring Contract, respectively.

-13-

The obligations and liabilities set forth in this Section 2.4(a) - (c) are collectively defined herein as the "Assumed Obligations."

2.5     No Other Liabilities Assumed.  Other than the Assumed Obligations, Purchaser is not assuming nor agreeing to manage, discharge, or otherwise be liable for, and shall be deemed not to have assumed any liabilities or obligations of Seller.  Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement and under any Contracts, unexpired leases, and other contractual rights of Seller, Purchaser will not assume any obligation of Seller, other than the Assumed Obligations.  In furtherance and not in limitation of the foregoing, neither Purchaser nor any of its affiliates shall assume, and shall not be deemed to have assumed, other than as specifically set forth in Article II hereof, any debt, Claim, obligation or other liability of Seller or any of its affiliates whatsoever, including, but not limited to, (i) any Environmental Costs and Liabilities for any act, omission, condition or event caused by or attributable to Seller to the extent occurring or existing prior to the Closing Date, including without limitation all Environmental Costs and Liabilities relating in any manner to Seller's direct or indirect handling, transportation or disposal of any Contaminants, (ii) any of Seller's liabilities in respect of Taxes accruing prior to or otherwise attributable to periods prior the Closing, which shall not be subject to any proration under Section 3.5 hereof, (iii) any investment banking, financial advisory, brokers or finders fees arising by reason of Seller's dealings with brokers or other third parties, or other liability of Seller for costs and expenses (including legal fees and expenses) incurred in connection with this Agreement, (iv) any Indebtedness, including any insurance payables and trade payables and expenses arising prior to the Closing Date, (v) any obligations, liabilities, or Losses for Seller's Employees, officers, directors, managers, advisors, or consultants including severance, termination pay, pension, profit sharing or any other Employee Benefit Plans, compensation or retiree medical and other benefits and obligations, except to the extent otherwise provided in Sections 2.4(b) and 7.2 hereof, or any obligation, Claim or amount under the Workers Adjustment and Retraining Notification Act or similar state statutes or regulations ("WARN Act"), (vi) any obligation or liability arising as a result of or whose existence is a breach of Seller's representations, warranties, agreements or covenants contained in this Agreement or otherwise, (vii) any Excluded Assets, (viii) any Affiliate Obligations, (ix) any liability subject to compromise, except to the extent same constitutes an Assumed Obligation, (x) any product liability or similar Claim for injury to any person or property arising out of or based on a breach of the Seller's representations, warranties, or agreements, express or implied, failure to warn, label, or advise customers of such risks, (xi) any recall, design defect or related Claims with respect to any products manufactured or sold or any service performed by the Seller, (xii) rebates, allowances, deductions and/or price discrepancies relating in any manner to products sold in pursuit of the Business prior to the Closing Date and (xiii) any obligations or liabilities with regard to any unpaid Inventory (whether such payments came due prior to, on or following the Petition Date) for which the Purchaser is unable to reach a consensual resolution with the counterparty of such Inventory, including any liabilities relating to any Inventory for which Seller has not fully paid all amounts due with respect such Inventory that is presently held by Seller (collectively, "Unassumed Liabilities").  Disclosure of any obligation or liability on any schedule to this Agreement shall not create an Assumed Obligation or other liability of Purchaser, except where such disclosed obligation has been expressly assumed by Purchaser as an Assumed Obligation in accordance with the provisions of Article II hereof.

-14-

2.6     <u>Right to Change Designations</u>. Notwithstanding anything in this Agreement to the contrary, Purchaser reserves the right to designate in one or more written notices to Seller (i) at any time within sixty (60) days following the Closing Date, any Acquired Asset as an Excluded Asset and (ii) at any time prior to the commencement of any auction carried out pursuant to the Bid Procedures, any Excluded Contract as an Assumed Contract (it being understood and agreed that such written notices shall be deemed to have automatically updated and revised the applicable schedules hereto for all purposes of this Agreement); provided, however, that from and after the Effective Date, any designation by Purchaser of any Acquired Assets as Excluded Assets or Excluded Contracts shall not reduce the Purchase Price payable for the Acquired Assets.

## ARTICLE III
## PURCHASE PRICE AND PAYMENT

3.1     <u>Purchase Price</u>.   Subject to the terms and conditions of this Agreement, the aggregate consideration to be paid by Purchaser (the "<u>Purchase Price</u>") in respect of, *inter alia*, the Acquired Assets, the Assumed Leases and Assumed Contracts in cash paid pursuant to Section 3.2, and shall be comprised of the items set forth in the subsections below and the amounts allocable to each such item as of the Effective Date is summarized on Schedule 3.1 hereto, subject to adjustment as provided in this Agreement:

(a)     The Inventory Valuation based on the payment of three hundred dollars per ton as adjusted ($300/ton) and as such tonnage is reflected on Schedule 2.1(a) as of the Closing Date, which expressly excludes the Boomerang Inventory, the Centric Inventory, DJR Inventory, and the Enduring Inventory; plus

(b)     The Accounts Amount as reflected on Schedule 2.1(i) as of the Closing Date; plus

(c)     The Cure Amounts to be paid by Purchaser pursuant to Section 6.8; plus

(d)     With respect to each of the Enduring Contract and the DJR Contract, (i) the assumption of the obligations resulting from the reversion of the DJR Inventory and/or the Enduring Inventory and (ii) eighty-five percent (85%) of all payments made on account of the balance of the Accounts during the stated payment period for each of the Enduring Contract and DJR Contract (this item (e)(ii), the "<u>AR Residual</u>"); plus

(e)     An earn-out payment, equal to fifty (50%) of all pre-tax, net profit in excess of an initial $2,000,000 that is earned by Purchaser from the sale of the Inventory during the twelve (12) month period following the Closing, which shall not exceed $1,500,000 (the "<u>Earn-Out</u>"); plus

(f)     Purchaser's assumption of the Assumed Obligations.

3.2     <u>Payment of Purchase Price; Deposit; Escrow</u>.

(a)     Within three (3) Business Days following entry of the filing of the Stalking Horse Notice, Purchaser shall deliver by wire transfer of immediately available funds, the sum of Four Hundred Thousand Dollars ($400,000) (the "<u>Deposit</u>") to a third party financial institution

-15-

escrow agent (the "Escrow Agent"), which shall be held in escrow and deposited in a segregated, interest-bearing account pursuant to the terms and provisions hereof and in accordance with the terms and conditions of an escrow agreement by and among Seller, Purchaser, and the Escrow Agent in the form to be attached as Exhibit A hereto (the "Escrow Agreement"). Subject to the terms and conditions of Section 3.3 and Article XI, the Deposit and all interest accruing thereon shall either be administered as the Adjustment Fund following the Closing, or, in the event that this Agreement is terminated prior to a Closing, paid to Purchaser or Seller in accordance with Article XI hereof. The Escrow Agent shall retain possession of the Deposit until delivery thereof is permitted or required under the terms of the Escrow Agreement and this Agreement.

(b)     Upon the Closing, Escrow Agent shall retain the Deposit and such funds together with any interest accrued thereon shall be held as an adjustment fund (the "Adjustment Fund") to be utilized for post-Closing adjustments and prorations, as provided in the balance of this Article III. Pursuant to the terms of the Escrow Agreement, the Escrow Agent shall continue to hold the Adjustment Fund in escrow pending disbursement as provided for herein and in any Sale Order. Any funds deposited with the Escrow Agent hereunder shall be referred to as the "Adjustment Fund."

(c)     At Closing, Purchaser shall pay to Seller by wire transfer of immediately available funds the balance of the cash portion of the Purchase Price, less the Deposit already delivered to the Escrow Agent, the AR Residual, and the Earn-Out.

(d)     The AR Residual shall be paid by Purchaser to Seller within three (3) business days following Purchaser's receipt thereof. (For the avoidance of doubt, the AR Residual shall not constitute a cash portion of the Purchase Price payable at Closing.)

(e)     The Earn-Out shall be paid by Purchaser to Seller within thirty (30) Business Days following the conclusion of the 12-month post-Closing earn-out period. (For the avoidance of doubt, the Earn-Out shall not constitute a cash portion of the Purchase Price payable at Closing.)

3.3     Adjustment Fund.

(a)     The Escrow Agent shall hold for the Adjustment Fund, until any adjustments to the Purchase Price provided for in Section 3.4 and prorations provided for in Section 3.5 have been made. The remainder of the Adjustment Fund, if any, shall be paid to Seller on the Business Day that is one hundred (100) days after the Closing Date (the "Settlement Date"); provided, however, that, if final determinations under Sections 3.4 or 3.5 have not been made, or if final bills (for any items, charges or payments which are subject to adjustment out of the Adjustment Fund) have not been received from the counterparties under the Assumed Leases and Assumed Contracts prior to the Settlement Date, the parties shall make a good faith estimate of any additional amounts to be deducted from the final payment due Seller and such estimated amount shall be paid and remitted to Purchaser on the Settlement Date.

(b)     From time to time following Closing, Purchaser may notify the Escrow Agent (with a copy to Seller) that, pursuant to the adjustment and proration provisions of Section 3.4 or 3.5 of this Agreement, all or a portion of the Adjustment Fund is payable to Purchaser.

-16-

Purchaser may provide such notice to Escrow Agent with respect to an item to be paid by Purchaser directly, which is partially attributable to Purchaser and partially attributable to Seller. Within ten (10) days of receipt of such notice, if Escrow Agent has received no objection from Seller, it shall distribute to Purchaser from the Escrow the amount specified in such notice.

(c)     Any offsetting amounts resulting from the adjustments set forth in Section 3.4 or the prorations set forth in Section 3.5 shall be netted, to the extent feasible. Any disputes between Purchaser and Seller regarding calculation of adjustments under this Agreement and payments to be made from the Adjustment Fund shall be resolved by the mechanism provided for in Section 3.5 hereof.

3.4     <u>Adjustments to Purchase Price</u>. The Purchase Price is subject to adjustment as follows:

(a)     The Inventory Valuation set forth on **Schedule 2.1(a)** directly reflects the total Inventory purported to be held free and clear of all Liens and encumbrances by Seller as of the Effective Date. The Inventory and Inventory Valuation will be reviewed and adjusted immediately prior to the Closing to account for any Inventory that have been sold, transferred, or that cannot be sold free and clear of Liens on the Closing Date. During the period between the Effective Date and the Closing Date, either Seller or Purchaser may initiate an audit of the Inventory Valuation (an "<u>Inventory Audit</u>") to determine the precise amount of the Inventory identified on **Schedule 2.1(a)** and to update that schedule, as needed, prior to the Closing Date. Upon the conclusion of the Inventory Audit, if the Inventory (measured in tons) as determined by the Inventory Audit differs from the Inventory, as adjusted for recorded sales or transfers that have otherwise been credited against Inventory Valuation and the Purchase Price, by two percent (2%) or more (the "<u>Audit Threshold</u>"), then the parties agree to adjust the Inventory and the corresponding Inventory Valuation by an amount equal to the change in value of the Inventory. The party initiating the Inventory Audit shall pay the full cost of the Inventory Audit if the Audit Threshold is not met; the parties shall equally share the cost of the Inventory Audit if the Audit Threshold is met, and Purchaser share thereof may be deducted from the Purchase Price.

(b)     At any time prior to the Closing Date, Purchaser may designate a list of Assumed Executory Contracts pursuant to the terms of the Sale Order and the Cure Amounts associated with each such Assumed Executory Contract. The Cure Amounts and any amounts paid to restore any deficiencies in Lease Deposits under Assumed Leases up to a maximum amount equal to the Cure Cap shall be paid by Purchaser to the counter-party to the Assumed Executory Contracts prior to the Closing from its own funds. The balance of any Cure Amounts to be paid to counter-parties to any Assumed Executor Contracts shall be paid from the portion of the Purchase Price deliverable by Purchaser at the Closing, and any Claims arising under the Assumed Executory Contracts prior to the Closing Date shall be paid to the counter-party to such Assumed Executory Contract and thereafter be deemed to be fully satisfied.

(c)     At any time following the Closing, but prior to the Settlement Date, to the extent Purchaser is required to as a condition of the full and prompt assignment of any rights under an Assumed Contract and actually pays any additional amounts constituting Cure Amounts or to restore any deficiencies in Lease Deposits under Assumed Leases in excess of the Cure Cap, Purchaser shall be entitled to notify the Escrow Agent as provided in Section 3.3(b) above to obtain

-17-

reimbursement from the Adjustment Fund for such additional amounts expended by it as Cure Amounts or Lease Deposits.

(d)     An amount equal to up to eighty-five percent (85%) of the value of any Accounts that are not collected within ninety (90) days following the Closing shall be reimbursed to Purchaser from the Adjustment Fund upon Purchaser's written request to Escrow Agent (with a copy to Seller) prior to the Settlement Date.

(e)     An amount equal to the value of any Losses incurred by Purchaser or its affiliates arising from (1) any inaccuracy in or breach of any of the representations or warranties of the Seller contained in this Agreement or in any documents delivered by Seller herewith; or (2) any breach or non-fulfillment of any covenant of Seller.

3.5     <u>Prorations.</u>  Except as otherwise provided in this Agreement with respect to items allocable exclusively to Seller or Purchaser, to the extent that any of the items listed below in this Section 3.5 are paid by Seller prior to the Closing or are payable by Purchaser or Seller after the Closing Date, such items shall be apportioned as of the Closing Date such that (a) Seller shall be liable for that portion of such of the allocable costs relating or attributable to periods prior to the Closing Date; and (b) Purchaser shall be liable for that portion of the allocable costs relating or attributable to periods on or after the Closing Date.  Prior to the Closing, the parties shall schedule and pro-rate the expenses and costs outlined in this Section 3.5, and such prorations of expenses shall be adjustments to the cash portion of the Purchase Price paid at the Closing.  Should any amounts to be prorated not have been finally determined on the Closing Date, a mutually satisfactory estimate of such amounts made on the basis of Seller's records shall be used as a basis for settlement at Closing, and the amount finally determined will be prorated as of the Closing Date and appropriate settlement made as soon as practicable after such final determination, with final settlement to be made no later than the Settlement Date.  If as a result of any such settlement in accordance with the preceding sentence Purchaser is owed an amount from Seller, Purchaser shall have the right in its sole discretion to be reimbursed for such amount from the Adjustment Fund.  The items to be prorated in accordance with this Section 3.5 shall include, without limitation:  (x) lease payments under Assumed Leases for the month in which the Closing occurs; (y) insurance premiums of any policies acquired by Purchaser at Closing; and (z) any and all other expenses customarily subject to proration in connection with the sale and purchase of assets and not otherwise provided for herein.  Seller and Purchaser agree to furnish each other with such documents and other records as each party reasonably requests in order to confirm all adjustment and proration calculations made pursuant to this Section 3.5.  The proration and adjustment process provided in this Section 3.5 shall also include an adjustment of cash received by Purchaser or Seller (as the case may be) to which the other is entitled pursuant to the provisions of Sections 2.1(i) and 2.3(b) above.

3.6     <u>Procedure for Purchase Price Calculation and Payment</u>. Purchaser shall prepare a written schedule as soon as practicable after the Closing setting forth the calculation of the Purchase Price as provided for in this Article III.  Seller and Purchaser hereby agree to use their diligent, good faith efforts to effectuate and finalize the calculation of the adjustments contemplated by this Article III within thirty (30) days following the Closing Date, to the extent information is available as of such date, and in no event later than the Settlement Date. In the event that the calculation of all such adjustments have not been finalized and effectuated within fifteen

-18-

(15) days after the expiration of the relevant calculation period, either party may submit the matter to the Bankruptcy Court for resolution.

3.7     Further Assurances.   From time to time after the Closing and without further consideration, (a) Seller, upon the request of Purchaser and at Seller's expense, shall execute and deliver such documents and instruments of conveyance and transfer as Purchaser may reasonably request in order to consummate more effectively the purchase and sale of the Acquired Assets as contemplated hereby and to vest in Purchaser title to the Acquired Assets transferred hereunder, provided that (i) Seller shall not be required to execute or deliver any document or instrument pursuant to this Section 3.7 which includes any provision(s) which impose obligations upon Seller which are greater than those imposed upon Seller under the other provisions of this Agreement, the Ancillary Documents, the Sale Order, or the documents executed pursuant hereto, and (ii) in no event shall Seller be required to incur any material cost or expense in the performance of its obligations under this Section 3.7 (it being understood that Purchaser shall in any event be entitled to require Seller to take such action as Seller would otherwise be required to take pursuant to this Section 3.7 but for the cost thereof by providing to Seller the amount Seller reasonably anticipate incurring in excess of immaterial costs and expenses of taking such action), and (b) Purchaser, upon the request of Seller and at Purchaser's expense, shall execute and deliver such documents and instruments of assumption as Seller may reasonably request in order to confirm Purchaser's liability for the obligations under the Assumed Obligations or otherwise more fully consummate the transactions contemplated by this Agreement; provided that (i) Purchaser shall not be required to execute or deliver any document or instrument pursuant to this Section 3.7 which includes any provision(s) which impose obligations upon Purchaser which are greater than those imposed upon Purchaser under the other provisions of this Agreement or the documents executed pursuant hereto, and (ii) in no event shall Purchaser be required to incur any material cost or expense in the performance of its obligations under this Section 3.7 (it being understood that notwithstanding the foregoing, Seller shall in any event be entitled to require Purchaser to take such action as Purchaser would otherwise be required to take pursuant to this Section 3.7 but for the cost thereof by providing to Purchaser the amounts Purchaser reasonably anticipates incurring in excess of immaterial costs and expenses in taking the action).

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser as of Effective Date and the Closing Date, as follows:

4.1     Due Incorporation; Good Standing.   Eagle Pipe is a limited liability company duly formed under the laws of the State of Texas, and is in good standing thereunder as of the Effective Date and as of the Closing Date. Subject to the Bankruptcy Code, Eagle Pipe has full power and authority to own, use and lease its properties and to conduct its Business as such properties are owned, used or leased and as such Business is currently conducted.  Eagle Pipe is qualified to do business as a foreign corporation and is in good standing in each jurisdiction in which such qualification is required except where the failure to so qualify would have a Material Adverse Effect.

AFDOCS/22996992.14

4.2     Authority; No Violation.  Subject to the Sale Order and the Bankruptcy Code, Seller has all requisite company power and authority to enter into this Agreement and to carry out the transactions contemplated hereby, and the execution, delivery and performance of this Agreement by Seller shall be duly and validly authorized and approved by all necessary company action. Subject to the approval and entry of the Sale Order by the Bankruptcy Court, this Agreement shall constitute the legal and binding obligation of Seller, enforceable against Seller in accordance with its terms.  Subject to the approval and entry of the Sale Order by the Bankruptcy Court, the entering into of this Agreement, and the consummation by Seller of the transactions contemplated hereby, will not (a) violate the provisions of any applicable federal, state or local laws, (b) violate any provision of Seller's Certificate of Formation or its governing documents and agreements, or (c) except as set forth in **Schedule 4.2** attached hereto, violate any provision of, or result in a default or acceleration of any obligation under, or result in any change in the rights or obligations of Seller under, any Lien, Contract, agreement, license, lease, instrument, indenture, order, arbitration award, judgment, or decree to which Seller is a party or by which it is bound, or to which any property of Seller is subject that will not otherwise be stayed or discharged upon entry of the Sale Order by the Bankruptcy Court or otherwise pursuant to the Chapter 11 Case.

4.3     Consents.  To Seller's Knowledge, formed after reasonable inquiry, except for consents, approvals or authorizations of, or filings with the Bankruptcy Court, no notice to, filing with, authorization of, exemption by, or consent of any governmental authority is required in order for Seller to consummate the transactions contemplated hereby.

4.4     Title to and Condition of Properties.  At and as of the Closing Date, Seller will have good and marketable title to, or a valid leasehold or license interest in, and will have, subject to the entry of the Sale Order for which no stay has been obtained, the right to sell, convey, transfer, assign and deliver to Purchaser, free and clear of all Liens, Claims, interests and encumbrances of whatever kind or nature, the Acquired Assets, including, but are not limited to, the Assumed Leases the Assumed Contracts.  At and as of the Closing Date, the Bill of Sale and the Assignment and Assumption will be effective to vest in Purchaser good and valid record and marketable title to the Acquired Assets, including, but not limited to, the Assumed Leases, the Assumed Contracts and all of Seller's Inventory.  As of the Closing Date, Seller will have good and marketable title to, and will have the right to sell, convey, transfer, assign and deliver to Purchaser its interest in the Proprietary Information. Following the Closing, Seller shall advise any warehouseman, bailee, or agent with possession of any Acquired Assets of the transaction contemplated hereby and of the Sale Order effectuating it, and, upon request of Purchaser, cause such persons to transfer possession of such Acquired Assets to Purchaser.  The Acquired Assets represent all the assets of Seller and its affiliates used or useful in the Business, and no affiliate of Seller presently possesses or controls holds any such assets.

4.5     Contracts. To Seller's Knowledge, formed after reasonable inquiry, incorporated into **Schedule 2.2** hereof is a true and complete list of all Contracts and Leases that are material to the Business (*i.e.*, Contracts under which Seller would be required to pay or be paid $10,000 or more annually to or from another party) as of the Effective Date to which a Seller is party and which relates primarily to the Business, or to which any of the Acquired Assets or Assumed Obligations are subject.  Except as may have occurred solely as a result of the commencement of the Chapter 11 Cases, each of the Assumed Contracts is in full force and effect and there are no material defaults thereunder on the part of any other party thereto which are not subject to an

-20-

automatic stay, and the Seller is not in default in any material respect in the performance, observance or fulfillment of any of its obligations, covenants or conditions contained in any Assumed Contract to which it is a party or by which it or its property is bound which are not subject to an automatic stay. Each Assumed Contract was entered into at arm's length and in the Ordinary Course of Business and, subject to the Sale Order and the assignment of each Assumed Contract by the applicable Seller in accordance with applicable Law, is a valid and binding obligation of the Seller and the other parties thereto and is in full force and effect in accordance with its terms.

4.6     <u>Brokers</u>.  Except as set forth on Schedule 4.6, Seller has incurred no liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby.

4.7     <u>Operational Matters</u>.

(a)     Seller has maintained its pricing files relating to the Business in the Ordinary Course of Business, and prices charged to its customers for goods are the same in all material respects as set forth in such pricing files for the periods indicated therein. All pricing files and records requested by Purchaser relative to the Inventory have been and will continue to be made available to Purchaser. All such pricing files and records requested by Purchaser and agreed to be supplied by Seller are and shall continue to be true and accurate in all material respects as to the actual cost to Seller for purchasing the goods referred to therein and as to the selling price to the public for such goods as of the dates and for the periods indicated therein.

(b)     Seller shall ticket or mark all items of Inventory received at the Acquired Locations and any Warehouse or distribution center after the Effective Date but prior to the Closing Date in a manner consistent with similar inventory located thereat and in accordance with Seller's historic practices and policies relative to pricing and marking of Inventory.

(c)     Seller shall not have intentionally taken, and shall not intentionally take through and including the Closing Date, any actions to increase the cost of operating the Business, including, without limitation, increasing salaries or other amounts payable to Employees.

(d)     Seller shall not have intentionally taken, and shall not intentionally take through and including the Closing Date, any actions to decrease the value of the Acquired Assets prior to the Closing Date.

(e)     Seller shall be current on all obligations incurred by it following the Petition Date;

(f)     Seller has and shall continue through and including the Closing Date to operate the Business in the Ordinary Course of Business.

(g)     To Seller's Knowledge the amounts reflected on **Schedule 2.2** reflect the aggregate amount of Cure Amounts and any deficiencies in Lease Deposits under the Assumed Leases that Seller would be obligated to pay for its pre-assumption arrears under the Contracts.

4.8     <u>Inventory</u>.  As of the Effective Date and as at the Closing, (i) Seller's books and records fairly and accurately reflect and represent the Inventory in the possession of Seller, and

-21-

the sales of Inventory, (ii) Seller has not taken any actions outside of the Ordinary Course of Business (including, without limitation, pursuant to any sale, promotion, discount or any other offer outside the Ordinary Course of Business) to reduce in any way the aggregate value of the Inventory, (iii) the Inventory is in warrantable and saleable condition, (iv) there have not been any atypically large purchases, sales, or transfers of Inventory Outside the Ordinary Course of Business, except those identified on **Schedule 4.8** hereto, and (v) there has not otherwise been any depletion of or damage to the Inventory due to any event or occurrence not within the Ordinary Course of Business of Seller.  To Seller's Knowledge, all Inventory and all merchandise that is the subject of Seller's Purchase Orders is in compliance in all material respects with all applicable U.S. federal, state, or local product safety laws, rules and standards, and customs regulations where applicable, and has or will be manufactured and produced in conformity with all applicable U.S. federal, state, or local child labor and other similar laws, rules and standards.

4.9     <u>Accounts</u>.  The Accounts reflected on **Schedule 2.1(i)** hereto as of the Effective Date and the accounts receivable of Seller arising prior to the Closing Date and reflect on such **Schedule 2.1(i)** as updated immediately prior to the Closing (a) have arisen from bona fide transactions entered into by Seller involving the sale of goods or the rendering of services in the Ordinary Course of Business, (b) constitute only valid, undisputed Accounts of Seller, (c) are not subject to claims of set-off or other defenses or counterclaims asserted by any obligor, and (d) have not been accelerated, discounted, deferred, or adjusted by Seller outside the Ordinary Course of Business.

4.10     <u>Employees</u>.  The information regarding the employees currently employed at the Acquired Locations and the Offices, including compensation, bonus, benefit, length of service and other terms of employment for such employees, provided by Seller to Purchaser prior to the Effective Date, is true and complete as of the Effective Date.  Seller is not a party to any collective bargaining agreement covering any of the Employees of the Business and no labor union represents any such Employees.

4.11     <u>Intellectual Property</u>.  The trade names, servicemarks, assumed names, trademarks and trademark applications set forth in Section 2.1(b) are the only trade names, servicemarks, assumed names, trademarks and trademark applications that are currently used in the Business by Seller.  To Seller's Knowledge, the use of the Intellectual Property by Seller in the manner currently used by Seller does not require the consent of any other Person.  The Intellectual Property is either owned by Seller or is licensed to Seller and Seller has a legal right to use it in the manner used by Seller, and, upon approval and entry of the Sale Order by the Bankruptcy Court, the Intellectual Property owned by Seller may be transferred by Seller to Purchaser, free and clear of any Liens.  Seller has not granted any third party any license or right to use the Intellectual Property and, to the Seller's Knowledge, no other Person has an interest in or a right or license to use, or the right to license any other Person to use any of the Intellectual Property owned by Seller. There are no Claims of any other Person pertaining thereto which have been received by Seller and no proceedings have been instituted, are pending or, to the Seller's Knowledge, threatened, which challenge Seller's rights in respect thereof.  To Seller's Knowledge, none of the Intellectual Property owned by Seller is being infringed by another Person or is subject to any outstanding order, decree, ruling, charge, injunction, judgment or stipulation.  No Claim is pending or, to the Seller's Knowledge, threatened charging Seller with infringement of any adversely held proprietary or intellectual property right.

-22-

4.12    Compliance with Laws.

(a)    Seller has all licenses, permits, franchises, orders, approvals, accreditations, written waivers and other authorizations as are reasonably necessary in order to enable it to own and conduct the Business as currently conducted and to occupy and use its real and personal properties ("Necessary Permits").  To Seller's Knowledge, no registration, filing, application, notice, transfer, consent, approval, order, qualification, waiver or other action of any kind is required by virtue of the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby to effect the transfer to Purchaser of such Necessary Permits. Seller is in compliance with the terms and conditions of all Necessary Permits.

(b)    Seller has conducted and is conducting the Business in material compliance with applicable federal, state, local and foreign laws, statutes, ordinances, regulations, rules or orders or other requirements of any governmental, regulatory or administrative agency or authority or court or other tribunal relating to it to which Seller may be subject.  Seller is not now charged with, and, to the Seller's Knowledge, is not now under investigation with respect to, any possible material violation of any applicable law, statute, ordinance, regulation, rule, order or requirement relating to any of the foregoing, and Seller is current in the filing of all material reports required to be filed with any governmental, regulatory or administrative agency or authority.

4.13    Taxes.  Seller has filed all Tax Returns that it was required to file.  All such Tax Returns were, when filed, correct and complete in all material respects.  All Taxes due and payable by Seller currently have been paid (whether or not shown on any Tax Return).  Seller currently is not the beneficiary of any extension of time within which to file any such Tax Return.  No Claim has been made by an authority in a jurisdiction where Seller does not file Tax Returns that it is or may be subject to the imposition of any Tax by that jurisdiction.  Seller has withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, consultant, independent contractor, creditor, shareholder, or other third party.  Seller is not aware of any dispute or Claim concerning any liability for Taxes. Seller has not waived any statute of limitations in respect of Taxes or agreed to any extension of time with respect to a tax assessment or deficiency.

4.14    Employee Benefit Plans.

(a)    Except for the arrangements set forth on **Schedule 4.14(a)** attached hereto, Seller does not now maintain or contribute to, nor has in the current or preceding six (6) calendar years maintained or contributed to, any pension, profit-sharing, deferred compensation, bonus, stock option, share appreciation right, employee stock ownership, severance, group or individual health, dental, medical, life insurance, survivor benefit, or similar plan, policy or arrangement, whether formal or informal, for the benefit of any director, officer, consultant or employee, whether active or terminated, of Seller.  Each of the arrangements set forth on **Schedule 4.14(a)** attached hereto is hereinafter referred to as an "Employee Benefit Plan".

(b)    Seller has heretofore delivered to Purchaser true, correct and complete copies of each Employee Benefit Plan of Seller and, and with respect to each such Employee Benefit Plan (i) any associated trust, custodial, insurance or service agreements, (ii) any annual report, actuarial report, or disclosure materials (including specifically any summary plan

-23-

descriptions) submitted to any governmental agency or distributed to participants or beneficiaries thereunder in the current or any of the three (3) preceding calendar years and (iii) the most recently received IRS determination letters and any governmental advisory opinions or rulings.

(c)     Except as set forth on **Schedule 4.14(c)**, each Employee Benefit Plan is and has heretofore been maintained and operated in compliance in all material respects with the terms of such Employee Benefit Plan and with the requirements prescribed (whether as a matter of substantive law or as necessary to secure favorable tax treatment) by any and all laws statutes, governmental or court orders, or governmental rules or regulations in effect from time to time, including, but not limited to, the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Code and applicable to such Employee Benefit Plan.  Each Employee Benefit Plan which is intended to qualify under Section 401(a) of the Code has been determined to be so qualified by the IRS and nothing has occurred since the date of the last such determination which has resulted or is likely to result in the revocation of such determination.

(d)     Except as set forth on **Schedule 4.14(d)** hereto: (i) there is no pending or threatened legal action, proceeding or investigation, other than routine claims for benefits, concerning any Employee Benefit Plan or, to the Seller's Knowledge, any fiduciary or service provider thereof and, to the Seller's Knowledge, there is no basis for any such legal action or proceeding; (ii) no liability (contingent or otherwise) to the Pension Benefit Guaranty Corporation ("PBGC") or otherwise under Title IV of ERISA has been or could reasonably be expected to be incurred by either Seller (other than insurance premiums satisfied in due course); and (iii) no reportable event, or event or condition which presents a material risk of termination by the PBGC, has occurred with respect to any Employee Benefit Plan, or any retirement plan of an affiliate (as defined in Section 4.14(a)) of Seller, which is subject to Title IV of ERISA.

(e)     No Employee Benefit Plan is a multiemployer plan.  For purposes of this Section 4.14, "multiemployer plan" is defined in Section 4001(a)(3) of ERISA, and "affiliate" means any entity which under Section 414 of the Code is treated as a single employer with Seller.

(f)     Seller has paid and will continue to pay subject to any applicable Orders of the Bankruptcy Court, through the Closing Date, (i) all self-insured or self-funded employee benefit programs for Employees of the Business, including health and medical benefits and insurance and all proper claims made in accordance with such programs, (ii) all casualty, liability, workers' compensation and other insurance premiums, and (iii) all applicable employment Taxes.

4.15    Customers and Suppliers. The Seller has not received any notice, and has no reason to believe, that any material customer, vendor or suppliers has or intends to cease, reduce, materially alter its relationship with Seller.

4.16    Environmental Matters.  Except as described in **Schedule 4.16**, (a) Seller has not generated, used, stored, treated or disposed of any Hazardous Substances (as defined below), other than cleaning and/or office supplies used in the Ordinary Course of Business, except in material compliance with all applicable Environmental Laws; (b) Seller has not transported nor has it arranged or contracted with any party for the transportation, storage, treatment or disposal of any Hazardous Substances, except in material compliance with all applicable Environmental Laws; (c) Seller, the operation of the Business, and any real property that Seller owns, leases or otherwise

occupies and uses in connection with the operation of the Business (the "Premises") are in material compliance with all applicable Environmental Laws; and orders or directives of any governmental authorities having jurisdiction under such Environmental Laws, including, without limitation, any Environmental Laws or orders or directives with respect to any cleanup or remediation of any release or threat of release of Hazardous Substances; and (d) Seller has not received any citation, directive, letter or other written communication or any written notice of any proceedings or Claims, from any Person, entity or governmental authority arising under Environmental Laws with respect to the Premises, or the conduct of its operation of the Business, nor is it aware of any basis therefor. Seller has obtained and is maintaining in full force and effect all permits, licenses and approvals required by any Environmental Laws applicable to the Premises and Seller's business operations conducted thereon, and is in material compliance with all such permits, licenses and approvals, except for such permits, licenses and approvals, the absence of which would not, or such noncompliance with which would not, either individually or in the aggregate, have a Material Adverse Effect.  Except as described in **Schedule 4.16**, to Seller's Knowledge, Seller has not caused or allowed a release, or a threat of release, of any Hazardous Substances on the Premises.

4.17    Litigation.  Except as disclosed on **Schedule 4.17** attached hereto, (a) there is no Claim pending or, to the Seller's Knowledge, threatened by, against, affecting or regarding the Acquired Assets or Seller at law or in equity before any federal, state, local or foreign court or any other governmental or administrative agency or tribunal or any arbitrator or arbitration panel which would reasonably be expected to have a Material Adverse Effect thereon, and (b) there are no judgments, orders, rulings, charges, decrees, injunctions, notices of violation or other mandates against or affecting the Acquired Assets which would have a Material Adverse Effect thereon.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represent and warrant to Seller as of the Effective Date as follows:

5.1    Purchaser's Organization; Good Standing.  Purchaser is a New York corporation duly incorporated, validly existing and in good standing under the laws of the State of New York, with full power and authority to own, use or lease its properties and to conduct its business as such properties are owned, used or leased and as such business is currently conducted.

5.2    Purchaser's Authority; No Violation. Purchaser has all requisite corporate power and authority to enter into this Agreement and to carry out the transactions contemplated hereby, and the execution, delivery and performance of this Agreement by Purchaser shall be duly and validly authorized and approved by all necessary limited liability company action. This Agreement shall constitute the legal and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, except that the enforceability hereof may be subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and that the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding may be brought.  Subject to the approval and entry of the Sale Order by the Bankruptcy Court, the entering into of this Agreement, and the consummation by Purchaser of the transactions contemplated hereby, will not (a) violate the provisions of any applicable federal, state or local laws, (b) violate any provision of Purchaser's certificate of organization or

operating agreement, or (c) except as set forth in **Schedule 5.2** attached hereto, violate any provision of, or result in a default or acceleration of any obligation under, or result in any change in the rights or obligations of Purchaser under, any Lien, Contract,  instrument, indenture, order, arbitration award, judgment, or decree to which Purchaser is a party or by which it is bound, or to which any property of Purchaser is subject that will not otherwise be stayed or discharged upon entry of the Sale Order by the Bankruptcy Court or otherwise pursuant to the Chapter 11 Case.

5.3     <u>Consents, Approvals or Authorizations</u>.  To the best of Purchaser's knowledge, formed after reasonable inquiry, except for consents, approvals or authorizations of, or filings with the Bankruptcy Court, no notice to, filing with, authorization of, exemption by, or consent of any governmental authority is required in order for Purchaser to consummate the transactions contemplated hereby.

5.4     <u>Brokers</u>.  Purchaser has incurred no liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby.

5.5     <u>Litigation</u>.   There are no actions pending or, to the knowledge of Purchaser, threatened that question the validity of this Agreement or that could reasonably be expected to have a Material Adverse Effect on Purchaser or on the consummation of the transactions contemplated by this Agreement.

## ARTICLE VI
## COVENANTS OF SELLER AND/OR PURCHASER

6.1     <u>Consents and Approvals</u>.  Subject to the provisions of Section 3.7 above, Seller and Purchaser shall each use their commercially reasonable best efforts (a) to obtain all consents and approvals, as reasonably requested by Purchaser and Seller, to more effectively consummate the purchase and sale of the Acquired Assets and the assumption and assignment of the Assumed Contracts, Assumed Leases, and Assumed Obligations, as applicable, together with any other necessary consents and approvals to consummate the transactions contemplated hereby, (b) to make, as reasonably requested by Purchaser and Seller, all filings, applications, statements and reports to all authorities which are required to be made prior to the Closing Date by or on behalf of Purchaser and/or Seller or any of their respective affiliates pursuant to any applicable Regulation in connection with this Agreement and the transactions contemplated hereby, and (c) to obtain, as reasonably requested by Purchaser and Seller, all required consents and approvals (if any) to assign and transfer the Permits to Purchaser at Closing and, to the extent that one or more of the Permits are not transferable, to obtain replacements therefor; provided that Seller shall not be required to make any filing in connection with the transfer of a Permit or take any other action required by this sentence unless Purchaser advances any and all fees and other charges imposed by any applicable authority or other Person in connection with such filing, transfer or other requested action. Subject to the provisions of Section 3.7 and this Section 6.1, in the event that certain Permits are not transferable or replacements therefor are not obtainable on or before the Closing, but such Permits are transferable or replacements therefor are obtainable after the Closing, Purchaser and Seller shall continue to use such reasonable efforts in cooperation with the other after the Closing as may be required to obtain all required consents and approvals to transfer, or obtain replacements

-26-

for, such Permits after Closing and shall do all things reasonably necessary to give Purchaser the benefits which would be obtained under such Permits.

        6.2     <u>Confidentiality; Non-Solicitation and Use of Trade Names</u>.

        (a)     Seller acknowledges that it has a special knowledge of the Business and the proprietary and confidential information included in the Acquired Assets, and that Purchaser is making a considerable investment in the Acquired Assets from which investment Seller has benefited.  In consideration of this Agreement and such investment and benefit, and as an inducement to Purchaser to enter into this Agreement and consummate the transactions contemplated herein, Seller agrees that, for a period of three (3) years after the Closing Date, it will not, directly or indirectly in one or a series of transactions, disclose in violation of this Agreement to any person (other than any of Seller's officers, directors, employees, advisors or affiliates), or use or otherwise exploit for their own benefit or for the benefit of anyone other than Purchaser, Confidential Information (as defined below) and Seller shall use its reasonable efforts to direct all persons or entities to whom any Confidential Information has been disclosed without violation hereunder to observe the terms and conditions set forth herein as though each such person or entity was bound hereby. "<u>Confidential Information</u>" means the Proprietary Information, together with any trade secret, confidential study, data, calculations, software storage media or other compilation of information, patent, patent application, copyright, trademark, trade name, service mark, service name, know-how, trade secrets, customer lists, details of client or consultant Contracts, pricing policies, sales techniques, confidential information relating to suppliers, marketing plans or strategies, products and formulae, product development techniques or plans, business acquisition plans or any portion or phrase of any scientific or technical information, ideas, discoveries, designs, computer programs (including source or object codes), processes, procedures, research or technical data, improvements or other proprietary or intellectual property of Seller specifically relating to the Business, whether or not in written or tangible form, and whether or not registered, and including all files, records, manuals, books, catalogues, memoranda, notes, summaries, plans, reports, records, documents and other evidence thereof.  The term "<u>Confidential Information</u>" does not include, and there shall be no obligation hereunder with respect to, information that is or becomes generally available to the public other than as a result of a disclosure by Seller in breach of this Section 6.2.  Seller shall have no obligation hereunder to keep confidential any Confidential Information if and to the extent disclosure of any therefor is specifically required by law; <u>provided</u>, <u>however</u>, that in the event disclosure is required by applicable law, Seller shall provide Purchaser with prompt notice of such requirement, prior to making any disclosure, so that Purchaser may seek an appropriate protective order, and shall cooperate with Purchaser, at Purchaser's expense, in connection therewith.  Notwithstanding anything to the contrary in this Agreement, Seller shall not be deemed to be in default under this Section 6.2 or any other provision of this Agreement by reason of any information which Seller may reasonably deem appropriate to disclose in the continuing administration of the Chapter 11 Case.

        (b)     For a period of two (2) years following the Closing Date, Seller agrees that it will not, without the express prior written approval of Purchaser (i) directly or indirectly recruit, solicit or otherwise induce or influence any Hired Employee, sales agent, joint venturer, lessor, supplier, agent, representative or any other person that has or had during the one (1) year period immediately preceding the Closing Date a business relationship with Seller relating to the

-27-

Business, to discontinue, reduce or adversely modify such employment, agency or business relationship with Purchaser as it relates solely to the Business, or (ii) only to the extent competitive with the Business as conducted on the Closing Date, employ or seek to employ or cause any Competitive Business to employ or seek to employ any person or agent who is employed or retained by Purchaser.  Notwithstanding the foregoing, nothing herein shall prevent an officer of Seller from providing a letter of recommendation to an employee with respect to a future employment opportunity.

(c)       For a period of three (3) years following the Closing Date, Seller agrees that it will not without the express prior written approval of Purchaser, directly or indirectly, recruit, solicit or otherwise induce or influence any customer, supplier, or business affiliate of Purchaser to discontinue, reduce or modify such business relationship with Purchaser to the extent such business relationship pertains to the Business.

(d)       Seller agrees that the violation or threatened violation of any of the provisions of this Section 6.2 by it shall cause immediate and irreparable harm to Purchaser and that the damage to Purchaser will be difficult or impossible to calculate with precision.  Therefore, in the event that Seller violates this Section 6.2, an injunction restraining Seller from such violation may be entered (upon proper proof) against Seller, in addition to any other relief available to Purchaser.

(e)       If, at the time of enforcement of any provision of this Section 6.2, a court shall hold that the duration, scope or other restrictions stated herein are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope or other restrictions reasonable under such circumstances shall be substituted for the stated duration, scope or other restrictions and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and other restrictions permitted by law.

(f)       Immediately following Closing, Seller shall change its name to a name that does not include the words "Eagle Pipe" or any derivation of any such name, shall discontinue use of any and all such names in connection with any future operations and activities, and shall modify the names of the debtor in the Chapter 11 Case.

6.3     Referral of Business Opportunities.  From and after the Closing Date, Seller shall use reasonable efforts to refer to Purchaser all incoming business inquiries, customer orders and other matters related to the Business, the Acquired Assets and the Assumed Obligations including, without limitation, all customer orders received by Seller via telephone, website, computer or other automated systems.  To the extent customer orders are delivered to third party electronic data interchange providers, such providers will be instructed to transmit such orders to Purchaser or Purchaser's providers.  Electronic delivery, if used, shall be by such method as shall be mutually agreed.

6.4     Seller's Employees. Seller will provide reasonable assistance to facilitate Purchaser's hire of such of Seller's Employees as shall be designated by Purchaser at or prior to the Closing, consistent with Section 7.2 hereof. Notwithstanding the foregoing, Seller shall not (a) increase the annualized level of compensation of Seller's Employees, (b) grant any extraordinary bonuses, benefits or other forms of directors' or consultants' compensation, or (c) increase,

-28-

terminate, amend or otherwise modify such compensation except in the Ordinary Course of Business and consistent with historical adjustment to such compensation and benefits, or as required by prior agreement, law, rule or regulation.

6.5     Purchaser's Access To Seller's Records.

(a)     From and after Seller's execution and delivery of this Agreement, Seller, its affiliates, successors to Seller (including, without limitation, any liquidating trustee or chapter 7 trustee subsequently appointed to administer Seller's bankruptcy estate or any assets that comprised such bankruptcy estate), or Seller's prepetition lenders and designated agents and representatives thereof, shall continue to provide Purchaser (or its designated representatives) access, upon reasonable advance notice to Seller, to Seller's employees, books and records, company offices and other facilities for the purpose of conducting such additional due diligence as Purchaser deems appropriate or necessary, in its discretion, in order to facilitate Purchaser's efforts to consummate the transaction provided for herein and to operate the Business.  Seller hereby covenants and agrees to reasonably cooperate with Purchaser in this regard.

(b)     Without limiting the generality of the foregoing Section 6.5(a), from the date of this Agreement through the Closing Date, Seller shall provide Purchaser, not less than every five (5) Business Days, with (i) a complete Inventory report in the form that Seller utilizes for its own internal reporting, (ii) update reports regarding the status of the Boomerang Claims and the Centric Claims, and (iii) any other developing or developed matters identified in the context of Purchaser's due diligence review.

6.6     Seller's Maintenance of Leases and Contracts.  Through the Closing Date, subject to the terms of the any applicable Order of the Bankruptcy Court and Section 6.8 hereof, Seller shall take such actions as are commercially reasonable and within its control in order to prevent all Leases and Contracts deemed a part of the Business from being terminated prior to Purchaser's taking action under the Contract Rejection Option, so as to ensure that Purchaser may acquire such assets (or otherwise use same under Section 2.2(b) hereof) at Closing free and clear of any and all pre-Closing Claims.

6.7     COBRA and WARN Act Obligations.  Through and after the Closing Date, Seller shall comply with its COBRA and WARN ACT obligations, if any.

6.8     Payment of Cure Amounts.  Purchaser shall timely, in the manner provided in the Sale Order in amount not to exceed One Hundred Thousand Dollars ($100,000) (the "Cure Cap"), (a) pay the Cure Amounts due under the Assumed Executory Contracts directly to the counter party of each Assumed Lease and each Assumed Contract the Cure Amount related to such Assumed Lease or Assumed Contract, including, without limitation, any amounts assessed by any landlord under any Assumed Lease following Closing with respect to Seller's occupancy and rental of the Acquired Locations prior to Closing, (b) any amounts required to restore any deficiencies in Lease Deposits under Assumed Leases, and (c) any amounts necessary to reimburse Seller for all amounts paid under this Section 6.8.  Seller shall be liable for the prompt payment of any Cure Amounts to be paid hereunder that are not payable by Purchaser or that are in excess of the Cure Cap.

-29-

6.9     <u>Termination of Hired Employees</u>.  Contemporaneously with the Closing, Seller shall terminate all Employees whom Purchaser has designated as Hired Employees.  Except for the obligations with respect to the Hired Employees expressly assumed by Purchaser under Section 2.4(b), Seller shall be solely liable for all termination payments and obligations to such Hired Employees, including, without limitation, any severance and other costs and expenses incurred or to be incurred in connection with such termination, and any accrued or contingent salary, bonus, benefits, phantom stock payments or other amounts.

6.10    <u>Receipt of Purchaser's Assets</u>.  Seller agrees that in the event it receives any cash or cash equivalents that properly constitute the property of Purchaser in accordance with the terms of this Agreement, such cash or cash equivalents shall be held by Seller in trust for Purchaser, and further shall be accounted for and paid over to Purchaser promptly after its receipt.

6.11    <u>Reporting Obligations</u>.  Following the Closing, Seller shall provide to Purchaser any information regarding sales at the Acquired Locations and other matters relevant to Purchaser's fulfillment of its obligations under the Assumed Leases.

6.12    <u>Public Statements</u>. Prior to the Closing, the parties shall consult with each other prior to issuing any Public Statement with respect to this Agreement or the transactions contemplated hereby and shall not issue any such Public Statement without the prior written consent of the other party, which approval shall not be unreasonably withheld, conditioned or delayed; provided, that, nothing herein shall prohibit a party from making public disclosures or Public Statements required by applicable law, in connection with any hearing or filing with the Bankruptcy Court or pursuant to any listing or similar agreement with or rules of any securities exchange or similar regulatory body, provided that in such event the party intending to make such release with the securities exchange or similar regulatory body shall use its commercially reasonable efforts to provide the other party with a copy of such public disclosure contemporaneously with the making of such public disclosure.

6.13    <u>Bankruptcy Court Approval</u>.

(a)     Within seven days following the entry of the Bid Procedures Order, the Seller shall file with the Bankruptcy Court a Stalking Horse Notice, which shall among other things seek (a) approval of this Agreement as the Stalking Horse Agreement and the Purchaser as the Stalking Horse Bidder, each as defined in the Bid Procedures Order, and (b) authorization of the Expense Reimbursement as a "**Bid Protection**," with respect to any cash, credit, or in-kind bidder, as contemplated under the Bid Procedures Order.

(b)     Promptly upon the designation of the Purchaser as the "Successful Bidder," as defined in and contemplated under the Bid Procedures Order, the Seller shall file with the Bankruptcy Court the proposed Sale Order. The Seller and Purchaser shall consult with one another and provide any draft revisions of the proposed Sale Order with sufficient advance notice regarding pleadings which any of them intend to file, or positions any of them intend to take, with the Bankruptcy Court in connection with or which might reasonably affect, the Bankruptcy Court's entry of the Sale Order.

(c)      Seller and Purchaser agree that, in the event that Purchaser is not the Successful Bidder at the auction undertaken pursuant to the Bid Procedures Order, but (i) is determined to have submitted the second highest or second best bid at the auction and is named the "Back-up Bidder", and (ii) Seller gives appropriate notice to Purchaser on or before the Outside Date indicating that the Successful Bidder has failed to consummate a purchase of the Acquired Assets, then Purchaser shall promptly consummate the transaction proposed in this Agreement upon the terms and conditions as set forth herein, including the Purchase Price, as Purchaser may have increased by Purchaser such Purchase Price at the Auction, as reflected in the Back-up Bidder bid.

(d)      Purchaser agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order and the Stalking Horse Order and a finding of adequate assurance of future performance by Purchaser, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code.  Purchaser shall not, without the prior written consent of Seller, file, join in, or otherwise support in any manner whatsoever any motion or other pleading relating to the sale of the Acquired Assets through any other mechanism other than as proposed herein.

(e)      If the Stalking Horse Order or Sale Order or any other orders of the Bankruptcy Court relating to this Agreement or the transactions contemplated hereby shall be appealed by any Person (or if any petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to the Sale Order or other such Order), Seller and Purchaser will cooperate in taking such steps to reasonably diligently defend such appeal, petition or motion; and Seller and Purchaser shall use their reasonable best efforts to obtain an expedited resolution of any such appeal, petition or motion.

6.14    Expense Reimbursement.  In recognition of and consideration for Purchaser having expended considerable time and expense in connection with the drafting, negotiation, and furnishing of this Agreement and in the identification, valuation, and review of the Acquired Assets, Seller agrees that it is fair and reasonable for it to pay and it shall, pursuant to the terms of the Escrow Agreement, pay to Purchaser the Expense Reimbursement, as provided in Section 11.3 hereof and the Stalking Horse Order upon the termination of this Agreement.  Notwithstanding anything in this Agreement to the contrary, the Parties agrees that the Expense Reimbursement shall be paid to Purchaser if any party other than Purchaser is ultimately determined to be the Successful Bidder, and the payment of the Expense Reimbursement shall, subject to Bankruptcy Court approval, constitute an administrative expense of Seller pursuant to Sections 503(b) or 507(b).  If Purchaser terminates this Agreement due to a material breach by the Seller and no other party purchases the Acquired Assets, Purchaser shall still be entitled to the Expense Reimbursement, in which case the Purchaser may seek Court approval of an Expense Reimbursement due to Purchaser as an administrative expense of the Seller that constitutes a necessary expense resulting in a substantial contribution to the Seller's Bankruptcy Case that is payable pari passu with other claims afforded similar priority pursuant to Section 503(b)(3) of the Bankruptcy Code.  Each of the parties hereto acknowledges and agrees that agreements and acknowledgments in this Section 6.14 are an integral part of this Agreement, and is not a penalty

-31-

and that it has been reasonably designed to compensate Purchaser for the efforts and resources expended by Purchaser prior to the occurrence of any termination event in connection with this Agreement and the transaction contemplated hereby.  The parties acknowledge and agree that the terms and conditions set forth in this Section 6.14 with respect to the payment of the Expense Reimbursement shall become operative upon entry by the Bankruptcy Court of an order, including the Stalking Horse Order.

## ARTICLE VII
## COVENANTS OF PURCHASER

7.1     <u>Assumed Obligations</u>. Subsequent to the Closing, Purchaser agrees to assume and perform the Assumed Obligations.

7.2     <u>Employees</u>.  Information regarding the employees with respect to the Business ("<u>Employees</u>") has been provided by Seller to Purchaser.  Upon the Closing, Purchaser shall offer to substantially all of the Employees continued at will employment by Purchaser in accordance with the standard personnel policies of Purchaser. Employees who accept offers of employment made by Purchaser pursuant to this Section 7.2 shall be referred to hereinafter as the "<u>Hired Employees</u>."  In addition to its obligations under Section 6.9 hereof, Seller shall assist Purchaser in effecting the change of employment of the Hired Employees as of the Closing in an orderly fashion.  Nothing herein expressed or implied shall confer upon any Employee of Seller, any Hired Employee, any other employee or any legal representative thereof any additional rights or remedies, including any additional right to employment or continued employment for any specified period, of any nature or kind whatsoever, under or by reason of this Agreement.  Seller shall be solely responsible for compliance with its WARN Act or COBRA obligations, as and to the extent applicable.  Purchaser may elect to assume the Seller's Employee Benefit Plan, but is under no obligation do so or to provide to the Hired Employees those benefits previously offered to the Employees.

7.3     <u>Reasonable Access to Records and Certain Personnel</u>.  Following consummation of the Closing, so long as such access does not unreasonably interfere with Purchaser's business operations, Purchaser shall permit Seller's employees, agents, counsel and other professionals employed in the Chapter 11 Case, or otherwise retained by Seller, reasonable access to the financial and other books and records relating to the Acquired Assets or the Business (whether in documentary or data form) for the purposes of facilitating the continuing administration of the Chapter 11 Case, preparing Tax Returns or responding to Tax related inquiries, and other such administrative activities, which access shall include the right of such professionals to copy, at Seller's expense, such documents and records as it may request in furtherance of the purposes described above, subject in all respects to the provisions of Section 6.2 hereof.  Purchaser may, in its discretion, move any or all of the books and records relating to the Acquired Assets and/or the Business to a location of its designation; <u>provided</u>, <u>however</u>, if Purchaser moves any such documents or records from their present location, Seller has the right to require Purchaser to copy and deliver to Seller or its professionals such documents and records as they may request, but only to the extent Seller or any such professional (i) furnishes Purchaser with reasonably detailed written descriptions of the materials to be so copied and (ii) Seller advances to Purchaser the costs and expenses thereof.  The parties acknowledge that Seller shall have the right to retain any documents and records provided to it by Purchaser, subject in all respects to the provisions of

Section 6.2 hereof.  Following the Closing, Purchaser shall provide Seller and such of Seller's professionals as Seller shall have from time-to-time designated, with reasonable access to former management of the Business during regular business hours to assist Seller as set forth in this Section 7.3, provided again that such access does not unreasonably interfere with Purchaser's business operations. Purchaser shall not dispose of any such documents and records except as shall be consistent with applicable law; provided, further, Purchaser shall provide Seller with reasonable advance written notice prior to the disposal of any such documents or records, together with the opportunity for Seller to preserve such documents or records at Seller's cost.

7.4     Receipt of Seller's Assets.  Purchaser agrees that in the event it receives any cash or cash equivalents that properly constitute the property of Seller in accordance with the terms of this Agreement, such cash or cash equivalents shall be held by Purchaser in trust for Seller, and further shall be accounted for and paid over to Seller promptly after its receipt.

Except for the covenant set forth in Section 7.2 above (to the extent that it is fully performed by Purchaser concurrently with or prior to the Closing), all of Purchaser's covenants set forth in this Article VII shall survive the Closing.

### ARTICLE VIII
### CONDITIONS PRECEDENT TO OBLIGATIONS OF PURCHASER

The obligations of Purchaser under this Agreement are, at the option of Purchaser, subject to satisfaction of the following conditions precedent on or before the Closing Date (unless an earlier date shall be specified below).

8.1     Representations and Warranties True as of the Effective Date and Closing Date. Each of the representations and warranties of Seller contained herein shall be true and correct in all material respects on and as of the Effective Date (except for such changes as are contemplated by the terms of this Agreement and except for representations and warranties which specifically relate to an earlier date) on and as of the Closing Date with the same force and effect as though made on and as of the Closing Date.  Seller shall also have complied in all material respects with all of its covenants and obligations hereunder which are to be completed or complied with at or prior to Closing.

8.2     No Material Adverse Change.  Between the Effective Date and Closing Date no Material Adverse Effect has effected the Business or the Seller.

8.3     Ordinary Course Operations.  From and after the Petition Date, Seller shall have continued to operate the Business in the Ordinary Course of Business to the extent feasible after filing bankruptcy.  During such interim period, Purchaser shall be entitled to receive from Seller regular updates regarding Seller's cash collateral positions and the availability of funds and resources to maintain its operations in the Ordinary Course of Business.  Seller shall provide Purchaser with copies of Monthly Operating Reports furnished to the United States Trustee, and additional current and historical financial information furnished to its lenders and business partners concurrently with the delivery of such information to those parties.

8.4     Delivery of Acquired Assets.  At Closing, Seller shall be poised to deliver possession of all Acquired Assets to Purchaser, in good operating order and condition and in all

events in compliance with the provisions of the Assumed Leases, reasonable wear and tear excepted.

8.5     Subject to Competitive Bidding Process.  This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or better competing bids in respect of all or any part of the Acquired Assets and the Excluded Assets (each a "Competing Bid"). From the Effective Date (and any prior time) and until the conclusion of the auction to be held pursuant to the Bid Procedures Order, Seller is permitted to and to cause its representatives to, initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Purchaser and its Affiliates) in connection with a Competing Bid. In addition, at all times, Seller shall retain the responsibility and obligation to respond to any inquiries or offers for a Competing Bid and perform any and all other acts related thereto which are required under the Bankruptcy Code, the Bid Procedures Order or other applicable Law, including supplying information relating to the Business, the Seller, the Acquired Assets, the Excluded Assets to prospective purchasers.

8.6     Lease/Contract Assumption and Assignment.

The Sale Order shall approve and authorize the assumption and assignment of the Assumed Leases and Assumed Executory Contracts over which the Bankruptcy Court has jurisdiction.  The Sale Order shall also provide that, and if and to the extent necessary the Assumed Leases and Assumed Executory Contracts shall be deemed modified to provide that: (i) all of the Assumed Leases and Assumed Executory Contracts are in full force and effect, (ii) the assumption and assignment shall be free and clear of any Claims of defaults, (iii) Seller shall be responsible for curing any and all non-monetary defaults which may exist at the time of assignment, (iv) the Assumed Leases shall be transferred free and clear of all Liens, Claims and encumbrances, (v) Purchaser shall have full authority to conduct the Business under the "Eagle Pipe," and/or other tradenames utilized by Seller, or under Purchaser's own tradenames, (vi) all references in the Assumed Leases to such tradenames or "Tenant" or "Lessee"  shall thereafter mean and refer to Purchaser, (vii) Seller and Purchaser shall jointly direct all customers, vendors, suppliers, and business relationships to communicate and correspond directly with Purchaser and to make all payments due on any Accounts directly to Purchaser following the Closing, and (viii) the assumption and assignment contemplated hereunder are otherwise permitted.

8.7     Entry of the Stalking Horse Order.  The Stalking Horse Order (i) shall have been entered, in form and substance satisfactory to Purchaser, (ii) on or before November 13, 2020 (the ("Stalking Horse Order Deadline"), (iii) shall require that any competing bids to purchase the Acquired Assets be at least $100,000 greater than the Purchase Price, (iv) shall approve and provide for the inclusion of the Reimbursement Expense, (v) shall require an established process by which Seller and its advisors qualify bids and bidders as Qualified Bids and Qualified Bidders (as defined therein), which includes the deposit of at least 10% of the cash and non-cash consideration to be deposited with the Seller (or an escrow agent) at the time of the bid's submission and a reasonable showing of the bidder's ability to deliver in cash the proposed purchase price at a closing without financing contingencies, (vi) shall provide that in the event that no additional Qualified Bids are received by the Bid Deadline (as established therein), then Seller shall identify Purchaser as the Successful Bidder and recommend to the Bankruptcy Court and other interested parties, and use all reasonable efforts to support the prompt consummation of the

-34-

sale of its Business to Purchaser pursuant to the terms of this Agreement, and (vii) shall have become a Final Order.

8.8     Consents; Permits.  To the extent not otherwise deemed consented to, approved, licensed, permitted, ordered or authorized by entry of the Sale Order or otherwise as a result of the Chapter 11 Case, Seller shall have received (and there shall be in full force and effect) the material consents, approvals, licenses, permits, orders and other authorizations of and shall have made (and there shall be in full force and effect) to the extent required by law the filings, registrations, qualifications and declarations with any Person pursuant to any applicable law, statute, ordinance regulation or rule or pursuant to any agreement, order or decree to which Seller is a party or to which it is subject, in connection with the transactions contemplated by this Agreement and the sale of the Acquired Assets, including without limitation, assignment of the Assumed Leases.

8.9     Company Documents. Seller shall have delivered to Purchaser copies of the resolutions of the Eagle Pipe's members and managers evidencing the approval of this Agreement, the Chapter 11 Case and the transactions contemplated hereby.

8.10     Release of Liens.  Purchaser shall have received such documents or instruments as may be required, in Purchaser's reasonable discretion, to demonstrate that, effective as of the Closing Date, the Acquired Assets are released from any and all Liens.

8.11     Sale Order.  Except as otherwise provided in Section 10.1 hereof, the Sale Order shall be entered in form and substance satisfactory to Purchaser and shall have become a Final Order on or before December 4, 2020 (the "Sale Order Deadline").

8.12     Closing.  The Closing shall have occurred on or prior to the Outside Date, time being of the essence.

## ARTICLE IX
## CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER

The obligations of Seller under this Agreement are, at the option of Seller, subject to the satisfaction of the following conditions precedent on or before the Closing Date:

9.1     Representations and Warranties True as of the Effective Date and Closing Date. The representations and warranties of Purchaser contained herein shall be true and correct in all material respects on and as of the Effective Date, and shall also be true in all material respects (except for such changes as are contemplated by the terms of this Agreement, and except for representations and warranties which specifically relate to an earlier date) on and as of the Closing Date with the same force and effect as though made by Purchaser on and as of the Closing Date. Purchaser shall also have complied with all of its covenants and obligations hereunder which are to be completed or complied with at or prior to Closing.

9.2     Bankruptcy Condition.  The Sale Order (i) shall have been entered by the Bankruptcy Court on or before the Sale Order Deadline, and (ii) shall not have been appealed or be subject to any pending appeal as of the Closing Date, and no stay with respect thereto (including any stay under Bankruptcy Rule 6004(h)) shall be in effect as of the Closing Date.

-35-

9.3     Consents; Permits.  To the extent not otherwise deemed consented to, approved, licensed, permitted, ordered or authorized by entry of the Sale Order or otherwise as a result of the Chapter 11 Case, Seller shall have received (and there shall be in full force and effect) the material consents, approvals, licenses, permits, orders and other authorizations of and shall have made (and there shall be in full force and effect) to the extent required by law the filings, registrations, qualifications and declarations with any Person pursuant to any applicable law, statute, ordinance regulation or rule or pursuant to any agreement, order or decree to which Seller is a party or to which it is subject, in connection with the transactions contemplated by this Agreement and the sale of the Acquired Assets, provided that Seller shall have timely filed for and diligently pursued the same.

9.4     Company Documents.  Purchaser shall have delivered to Seller copies of the resolutions of Purchaser's managers or members (as appropriate) evidencing the approval of this Agreement and the transactions contemplated hereby.

9.5     Closing Deadline.  The Closing shall have occurred on or prior to the Outside Date, time being of the essence.

## ARTICLE X
## CLOSING

10.1     Closing. Unless otherwise mutually agreed by Purchaser and Seller, the Closing shall take place no later than December 28, 2020 (the "Outside Date") on a date mutually agreed upon by the parties, provided that the parties shall use their commercially reasonable efforts to effect the Closing on December 11, 2020.

10.2     Deliveries by Seller.  At the Closing, Seller will deliver, in addition to the other documents contemplated by this Agreement, the following to Purchaser:  (a) a Bill of Sale ("Bill of Sale") in form and content mutually satisfactory to Purchaser and Seller; (b) an Assignment and Assumption ("Assignment and Assumption") in form and content mutually satisfactory to Purchaser and Seller; (c) domain name assignments of domain names acquired in form and content mutually satisfactory to Purchaser and Seller; (d) with respect to each vehicle comprising part of the Acquired Assets, an original Certificate of Title (or, if unavailable, a mutually satisfactory substitution therefor), with the assignment portion completed and signed by Seller or a separate bill of sale applicable to such vehicle; (e) an escrow agreement in form and content mutually satisfactory to Purchaser and Seller; and (f) such other and additional documents of transfer that may be reasonably requested by Purchaser (and/or any Permitted Designee thereof).

10.3     Deliveries by Purchaser.  At the Closing, Purchaser will deliver the following:  (a) the Purchase Price payable pursuant to and in accordance with Section 3.1 and Section 3.2; and (b) duly-executed originals of the Assignment and Assumption; and (c) such other additional documents as are required to consummate the transactions contemplated herein.

**ARTICLE XI**
**TERMINATION**

11.1    <u>Termination of Agreement</u>.  This Agreement and the transactions contemplated hereby may (at the option of the party having the right to do so or by operation of this Agreement) be terminated at any time on or prior to the Closing Date:

(a)    <u>Mutual Consent</u>.  By mutual written consent of Purchaser and Seller;

(b)    <u>Court Order</u>.  By Purchaser or Seller if a court of competent jurisdiction or a governmental, quasi-governmental, regulatory or administrative department, agency, commission or authority shall have issued an order, decree or ruling or taken any other action (which order, decree, ruling or action the parties hereto shall use their best efforts to lift or dissolve), in each case restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement or attempting to do the same, or by the Court having not entered as a Final Order either of the Stalking Horse Order or the Sale Order prior to the Sale Order Deadline;

(c)    <u>Failure to Close</u>.  By Purchaser or Seller if the transactions contemplated hereby shall not have been consummated on or before the Outside Date, <u>provided</u>, <u>however</u>, that such right to terminate this Agreement shall not be available to any party whose failure to fulfill any of its covenants or obligations under this Agreement has been the sole or substantial cause of, and resulted in, the failure of the transactions contemplated hereby to be consummated on or before such date;

(d)    <u>Termination by Purchaser</u>.  By Purchaser, if (i) a material breach of any representation, warranty, covenant or agreement on the part of Seller set forth in this Agreement shall have occurred, and such breach is incapable of being cured or, if capable of being cured, Seller, within seven (7) days of receipt of written notification thereof and prior to the Outside Date (and, if applicable, prior to the Stalking Horse Order Deadline or Sale Order Deadline), has failed to cure such breach; (ii) a Material Adverse Effect shall have occurred; (iii) the failure to occur of any of the conditions set forth Article VIII, and such condition is either incapable of being cured, or if capable of being cured, Seller has not so cured such failure within seven (7) days of receipt of written notification thereof and prior to the Outside Date (and, if applicable, prior to the Stalking Horse Order Deadline or Sale Order Deadline); (iv) Seller is in breach of any of its obligations and or the requirements of operating as a debtor-in-possession under the Bankruptcy Rules, including, but not limited to, all obligations due to its lenders, creditors, the Bankruptcy Court, and other interested parties, or (v) a trustee or examiner has been appointed to oversee Seller's operations or its assets.

(e)    <u>Termination by Seller</u>.  By Seller upon (i) a material breach of any representation, warranty, covenant or agreement on the part of Purchaser set forth in this Agreement shall have occurred, and such breach is incapable of being cured or, if capable of being cured, Purchaser, within seven (7) days of receipt of written notification thereof and prior to the Outside Date, has failed to cure such breach; or (ii) the failure to occur of any of the conditions set forth Article IX and such condition is either incapable of being cured, or if capable of being cured,

-37-

Purchaser has not so cured such failure within seven (7) days of receipt of written notification thereof and prior to the Outside Date.

(f)     Successful Bidder.  By Purchaser or Seller in the event Purchaser, having timely complied with all requirements of the Bankruptcy Court as well as the Bid Procedures Order and, if applicable, the Stalking Horse Order, and not otherwise being in default hereunder, is not the successful bidder at auction (the "Successful Bidder"), subject to Purchaser's Bid Protection set forth in the Stalking Horse Order; provided, however, that in the event that a bona fide third-party purchaser for cash is designated as the Successful Bidder, Purchaser may be designated as the "Back-up Bidder" pursuant to the Bid Procedures Order, in which event this Agreement shall terminate pursuant to this Section 11.1(f) upon the earlier of (i) the closing of a sale of any of the Acquired Assets to a Successful Bidder who is not the Purchaser, or (ii) following the Outside Date.  For the avoidance of doubt, the Purchaser shall not be designated as the "Back-up Bidder" if a bidder proposing a credit or in-kind bid is designated as the Successful Bidder.

11.2     Procedure and Effect of Termination and Right to Proceed.

(a)     If this Agreement is terminated pursuant to Section 11.1, written notice thereof shall forthwith be given to the other parties to this Agreement and all further obligations of the parties under this Agreement shall terminate; provided, however, that: the parties shall, in all events, remain bound by and continue to be subject to the provisions set forth in this Article XI.  In addition, anything in this Agreement to the contrary notwithstanding, if any of conditions to obligations specified in Article VIII hereof have not been satisfied, Purchaser, in addition to any other rights which it may have, shall have the right to waive its rights to have such conditions satisfied and elect to proceed with the transactions contemplated hereby and, if any of the conditions to the obligations of Seller specified in Article IX hereof have not been satisfied, Seller, in addition to any other rights which may be available to it shall, have the right to waive its right to have such conditions satisfied and elect to proceed with the transactions contemplated hereby.

(b)     In the event of the termination of this Agreement pursuant to Section 11.1(a), (b), (c) (unless termination is due to Purchaser's breach or failure), (d), or (f), the Deposit, together with any accrued interest, shall be returned to Purchaser and this Agreement shall forthwith become void and have no effect and there shall be no liability on the part of any party hereto or their subsidiaries, affiliates, directors, officers, shareholders, or agents except to the extent any provisions of this Agreement specifically survive its termination.

11.3     Breach by Seller.  If termination of this Agreement is due solely to a breach by Seller pursuant to Section 11.1(b), (c) (unless termination is due to Purchaser's breach or failure), (d), or (f) hereof, the Deposit, together with any accrued interest, shall be returned and the Expense Reimbursement paid to Purchaser, and this Agreement shall forthwith become void and have no effect and there shall be no liability on the part of any party hereto or their subsidiaries, affiliates, directors, officers, shareholders, or agents except to the extent any provisions of this Agreement specifically survive its termination.

11.4     Breach by Purchaser.  If termination of this Agreement is due solely to a breach by Purchaser pursuant to Section 11.1(c) (where it has been determined that such termination is solely due to Purchaser's breach or failure to close) or (e) hereof, Seller, as its sole remedy, shall be

-38-

entitled to retain the Deposit, with interest, promptly paid to Seller as liquidated damages. The parties hereby agree that the amount of the Deposit and all interest thereon is a fair and reasonable estimate of the total detriment that Seller would suffer in the event of Purchaser's default and failure to complete the transaction hereunder.

11.5    <u>Alternative Purchaser</u>.  If this Agreement is terminated pursuant to Section 11.1(f) hereof, in addition to the return of the Deposit to Purchaser together with accrued interest thereon, Purchaser shall be entitled to receive the Expense Reimbursement.  Payment of the Expense Reimbursement shall be immediately due and payable to Purchaser as a condition of the consummation and closing of the sale to the Successful Bidder or Back-up Bidder (in both cases, where such purchaser is any party other than Purchaser).

11.6    <u>Exclusive Remedies</u>.  Except as specifically set forth in this Agreement, effective as of Closing, Purchaser and Seller waive any rights and Claims, whether in law or in equity, relating to (i) any breach of representation, warranty, pre-Closing covenant or agreement contained herein occurring on or prior to the Closing or (ii) the Acquired Assets or Assumed Obligations. Purchaser and the Seller acknowledge and agree that if this Agreement is terminated for any reason, the provisions of Sections 3.4, 11.3, 11.4, and 11.5 shall be the sole and exclusive remedies of the parties for any breach of the representations, warranties, covenants or agreements contained herein.

## ARTICLE XII
## <u>MISCELLANEOUS</u>

12.1    <u>Expenses</u>.  Except as otherwise provided herein, each party hereto shall bear its own expenses with respect to the transactions contemplated hereby.

12.2    <u>Amendment</u>.  This Agreement may be amended, modified or supplemented but only in a writing signed by all of the parties hereto. For clarity, Bankruptcy Court approval shall not be required for any amendment to this Agreement.

12.3    <u>Notices</u>.  Any notice, request, instruction or other document to be given hereunder by a party hereto shall be in writing and shall be deemed to have been given, (i) when received if given in person or sent by email, (ii) on the date of transmission if sent by email or manner of electronic transmission upon the confirmation or acknowledgement of delivery of same (provided that a copy of such transmission is simultaneously deposited in the manner provided in <u>clause (iv)</u> below), (iii) one Business Day after being delivered to a nationally known commercial courier service providing next day delivery service (such as Fed Ex), or (iv) three Business Days after being deposited in the U.S. mail, certified or registered mail, postage prepaid:

(A)    If to Seller, addressed as follows:

Eagle Pipe, LLC
925 Katy Freeway, Suite 306
Houston TX 77002
Attn:   Jared Light, President
Email: jlight@eaglepipe.net

-39-

With copies to:

Gray Reed
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Attn: Aaron M. Kaufman, Esq.
Email: AKaufman@GrayReed.com

(B)    If to Purchaser, addressed as follows:

Marco International Corporation
1 Pennsylvania Plaza # 2514
New York, NY 10119
Attn:   Jordan Kestenbaum
Email: jkestenbaum@marcointernational.com

With copies to:

Arent Fox LLP
Prudential Tower
800 Boylston Street
Boston, MA  02199
Attn:   Andrew I. Silfen, Esq.
        Beth Brownstein, Esq.
        Tal Unrad, Esq.
Email: andrew.silfen@arentfox.com
        beth.brownstein@arentfox.com
        tal.unrad@arentfox.com

or to such other individual or address as a party hereto may designate for itself by notice given as herein provided.

12.4    Effect of Investigations.  Any due diligence review, audit or other investigation or inquiry undertaken or performed by or on behalf of Purchaser shall not limit, qualify, modify or amend the representations, warranties and covenants of, and indemnities by, Seller made or undertaken pursuant to this Agreement, irrespective of the knowledge and information received (or which should have been received) therefrom by Purchaser.

12.5    Interim Management.  Notwithstanding anything at law or equity to the contrary, each party understands and agrees that Seller is solely responsible for operating its Business prior to the Closing and in no event will Purchaser or any of its affiliates or subsidiaries, or any of their respective equityholders, directors, officers, managers, employees, agents or representatives have any authority to conduct Seller's Business with respect to any matter, obligation or decision prior to the Closing.  Furthermore, each party agrees that neither Purchaser nor any of its affiliates or subsidiaries, nor any of their respective equityholders, directors, officers, managers, employees agents or representatives, shall be liable to the Seller or any of its affiliates or subsidiaries or any of the respective equityholders, directors, officers, managers, creditors, bankruptcy estate,

-40-

employees, agents or representatives for any Losses arising out of, relating to, or in connection with any assistance, advice and suggestions that Purchaser or any of its affiliates or subsidiaries, or any of their respective equityholders, directors, officers, managers, employees, agents of representatives may offer to Seller at any time prior to the Closing.

12.6    Waivers.  The failure of a party hereto at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same.  No waiver by a party of any condition or of any breach of any term, covenant, representation or warranty contained in this Agreement shall be effective unless in writing, and no waiver in any one or more instances shall be deemed to be a further or continuing waiver of any such condition or breach in other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty.

12.7    Counterparts.  This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12.8    Headings.  The headings preceding the text of Articles and Sections of this Agreement and the Schedules thereto are for convenience only and shall not be deemed part of this Agreement.

12.9    Applicable Law and Jurisdiction.  SUBJECT TO ANY PROVISION IN THIS AGREEMENT AND ANY ANCILLARY DOCUMENT, TO THE CONTRARY, THIS AGREEMENT (AND ALL DOCUMENTS, INSTRUMENTS, AND AGREEMENTS EXECUTED AND DELIVERED PURSUANT TO THE TERMS AND PROVISIONS HEREOF (COLLECTIVELY, "ANCILLARY DOCUMENTS")) SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED WHOLLY WITHIN SUCH JURISDICTION. PURCHASER AND SELLER FURTHER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT; AND/OR (ii) THE ACQUIRED ASSETS AND/OR ASSUMED OBLIGATIONS AND PURCHASER EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH JURISDICTION.

12.10    Binding Nature; Assignment.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interest or obligations hereunder shall be assigned by any of the parties hereto without prior written consent of the other parties; except, that (i) Marco may assign any of its rights hereunder to any affiliates or wholly-owned subsidiaries (a "Permitted Designee"), and upon such designation as a Permitted Designee hereunder, such Permitted Designee shall become obligated to perform any and all obligations arising hereunder in respect of that portion of the Acquired Assets and Assumed Obligations allocable thereto; provided, however, that Marco shall remain obligated to perform the obligations of "Purchaser" hereunder, in the event any Permitted Designee thereof fails to perform any obligation arising under this Agreement required of it as a "Purchaser" hereunder, and (ii) Purchaser may grant a security interest in its rights and interests hereunder to its third-party lender(s).  Nothing contained herein,

-41-

express or implied, is intended to confer on any Person other than the parties hereto or their successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

12.11   No Third Party Beneficiaries.  This Agreement is solely for the benefit of the parties hereto and their respective affiliates and no provision of this Agreement shall be deemed to confer upon third parties any Losses sustained by such party.

12.12   Non-Recourse.  No past, present or future director, manager, officer, employee, incorporator, member, unitholder, partner or equityholder of any Party hereto shall have any liability for any obligations or liabilities of the Parties under this Agreement or any other Ancillary Documents, for any Claim based on, in respect of, or by reason of the transactions contemplated hereby and thereby, and each Party on behalf of itself, its successors, and assigns hereby covenants not to sue any past, present or future director, manager, officer, employee, incorporator, member, unitholder, partner or equityholder of any other Party for any such Claim.

12.13   Tax Matters.

(a)   Purchaser shall make available to Seller, and Seller shall make available to Purchaser, (i) such records as any such party may require for the preparation of any Tax Returns required to be filed by Seller or Purchaser, as the case may be, and (ii) such records as Seller or Purchaser may require for the defense of any audit, examination, administrative appeal, or litigation of any Tax Return in which Seller or Purchaser are included.

(b)   Purchaser shall be responsible for the timely payment of all sales, use, transfer (including, without limitation, documentary transfer, stamp and like taxes) and similar taxes payable in connection with the consummation of the transactions contemplated by this Agreement.

(c)   Notwithstanding anything herein to the contrary, as soon as practicable following the Closing but in any event within thirty (30) days after Closing, Purchaser shall, for United States income tax purposes, determine (subject to the approval of Seller which will not be unreasonably withheld) an allocation of the Purchase Price (and other capitalized costs) among the Acquired Assets, subject to the provisions of Section 1060 of the Code, and both Purchaser and Seller shall report such allocation consistently on their respective income tax returns.

12.14   Construction.  The language used in this Agreement will be deemed to be the language chosen by the parties to this Agreement to express their mutual intent, and no rule of strict construction shall be applied against any party.  Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise.  Nothing in the Disclosure Schedule will be deemed adequate to disclose an exception to a representation or warranty made herein unless the substance and applicability of such exception is reasonably apparent from the disclosure contained in the Disclosure Schedule.  Without limiting the generality of the foregoing, the mere listing (or inclusion of a copy) of a document or other item shall not be deemed adequate to disclose an exception to a representation or warranty made herein (unless the representation or warranty has to do with the existence of the document or other items itself).  The parties hereto intend that each

-42-

representation, warranty, and covenant contained herein shall have independent significance.  If any party hereto has breached any representation, warranty, or covenant contained herein in any respect, the fact that there exists another representation, warranty, or covenant relating to the same subject matter (regardless of the relative levels of specificity) which such party has not breached shall not detract from or mitigate the fact that the party is in breach of the first representation, warranty, or covenant.

12.15   <u>Entire Understanding</u>.  This Agreement, together with the Ancillary Documents set forth the entire agreement and understanding of the parties hereto in respect to the transactions contemplated hereby, and this Agreement and the Ancillary Documents hereto supersede all prior agreements, arrangements and understandings relating to the subject matter hereof. There have been no representations or statements, oral or written, that have been relied on by any party hereto, except those expressly set forth in this Agreement or in any Ancillary Document hereto.

12.16   <u>Broker Commission</u>.   Purchaser and Seller agree that if any Claims for commissions, fees, or other compensation, including, without limitation, brokerage fees, finders fees, or commissions are ever asserted against Purchaser or Seller in connection with the transaction, all such Claims shall be handled and paid by the party whose actions form the basis of such claim and such party shall indemnify, defend (with counsel reasonably satisfactory to the party(ies) entitled to indemnification), protect and save and hold the other harmless from and against any and all such Claims asserted by any person, firm or corporation in connection with the transaction contemplated hereby.

[SIGNATURE PAGES FOLLOW.]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered on the date first above written.

**PURCHASER**:

MARCO INTERNATIONAL CORPORATION

By: _____

     Name:   Michael Barenholtz

     Its:      President

**SELLER**:

EAGLE PIPE, LLC

By: _____

     Name:   Jared Light

     Title:   _____

**SCHEDULE 2.1(a)**
**Inventory**

See attached (updated as of October 20, 2020).



Schedule 2.1a -
Inventory.pdf

| Location Code | Item Category | Item Number | Description | L/a/ft | Description 2 | Mill | Condition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEEMAC MID | CASING | 1034 405 J BC E | 10-3/4" 40.50# (0.350wl) J55 R3 BTC ERW | 40.5 | | CORINTH | INSPECTED | EPS-21108-RTN | 3 | 128.15 | 2.60 | 298 |
| BEEMAC MID | CASING | 1034 405 J BC E | 10-3/4" 40.50# (0.350wl) J55 R3 BTC ERW | 40.5 | | CORINTH | INSPECTED | EPS-21774-RTN | 3 | 124.42 | 2.52 | 298 |
| PRECISION | CASING | 1034 405 J BC E | 10-3/4" 40.50# (0.350wl) J55 R3 BTC ERW | 40.5 | | CORINTH | INSPECTED | EPS-21108-RTN | 6 | 261.8 | 5.30 | 294 |
| PRECISION | CASING | 1034 405 J BC E | 10-3/4" 40.50# (0.350wl) J55 R3 BTC ERW | 40.5 | | CORINTH | INSPECTED | EPS-21774-RTN | 3 | 118.4 | 2.40 | 295 |
| NOV WELLB | CASING | 1034 405 J SC E | 10-3/4" 40.50# (0.350wl) J55 R3 BTC ERW | 40.5 | | CORINTH | PRIME | PO-11122 | -1 | | - | |
| PRECISION | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SHIN YANG | REPAIRABLE | EPS-21918-RTN | 1 | 20 | 0.46 | 265 |
| PRECISION | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SHIN YANG | REJECT | EPS-22009-RTN | 1 | 27 | 0.61 | 263 |
| PRECISION | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SHIN YANG | REJECT | EPS-22128-RTN | 1 | 28.9 | 0.66 | |
| PRECISION | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SHIN YANG | REPAIRABLE | EPS-22270-RTN | 1 | 40.83 | 0.93 | 239 |
| PRECISION | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SHIN YANG | RETURN | EPS-22270-RTN | 1 | 27.3 | 0.62 | |
| PRECISION | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SAL,ZÜTTER MANNESMAN | RETURN | EPS-22423-RTN | 1 | 31 | 0.71 | 187 |
| PRECISION | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SHIN YANG | INSPECTED | EPS-22423-RTN | 5 | 212.5 | 4.83 | 187 |
| PRECISION | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SHIN YANG | INSPECTED | EPS-22681-RTN | 5 | 211.7 | 4.82 | 173 |
| PRECISION | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SHIN YANG | REJECT | EPS-22681-RTN | 1 | 31 | 0.71 | |
| PRECISION | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SHIN YANG | REPAIRABLE | EPS-22681-RTN | 2 | 81.4 | 1.85 | 173 |
| REPUBLIC | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | VYKSA | RETURN | EPS-20822-RTN | 2 | 79.73 | 1.81 | 272 |
| REPUBLIC | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | VYKSA | REJECT | EPS-20660-RTN | 6 | 172 | 3.91 | |
| REPUBLIC | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | VYKSA | REPAIRABLE | EPS-20859-RTN | 2 | 86 | 1.96 | |
| REPUBLIC | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | SHIN YANG | RETURN | EPS-22244-RTN | 6 | 252 | 5.73 | |
| REPUBLIC | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | VYKSA | REPAIRABLE | PO2341 | 5 | 230.5 | 5.24 | 659 |
| REPUBLIC | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | VYKSA | REPAIRABLE | PO3600 | | | - | 659 |
| REPUBLIC | CASING | 1034 455 J BC E | 10-3/4" 45.50# (0.400wl) J55 R3 BTC ERW | 45.5 | | VYKSA | PRIME | PO-3792 | | | - | 628 |
| UNITED MID | CASING | 1034 455 KHC BC E | 10-3/4" 45.50# (0.400wl) K55+HC R3 BTC ERW | 45.5 | | NEXTEEL | PRIME | EPS-17841-RTN | 1 | 37.3 | 0.85 | 119 |
| DROP SHIP | LINE PIPE | 10S20 52D BR E | 10-3/4" 28.00# (0.250wl) X52 PSL 2 DRL PEB BARE | 28.00 | ERW | AXIS | PRIME | PO-7196 | | | - | 467 |
| LUNDVALL | LINE PIPE | 10S20 65T FB E | 10-3/4" 28.00# (0.250wl) X65 PSL-2 TRL PEB BARE | 28.00 | 14-16 MILS FBE | DURA BOND | PRIME | 9494/10054 | | | - | 267 |
| WOMBLE | LINE PIPE | 10S30 52D FA E | 10-3/4" 34.27# (0.307wl) X52 PSL-2 DRL PEB 14-16 | 34.27 | MILS FBE + 30 MILS ARO ERW | BORUSAN | PRIME | 9252/9253 | 43 | 1976.7 | 33.67 | 368 |
| LUNDVALL | LINE PIPE | 10S40 52D FA E | 10-3/4" 40.52# (0.365wl) X52 PSL-2 DRL PEB 14-16 | 40.5 | MILS FBE + 30 MILS ARO ERW | AXIS | PRIME | 11618/11655 | 14 | 628.3 | 12.72 | 239 |
| MM WELDING | TUBING | 112 276 J EU10 E | 1-1/2" 2.76# (0.145wl) J55 R2 EUE 10RD ERW | 2.76 | | SEAH | RETURN | PO3203 | 15 | 477 | 0.66 | 659 |
| MM WELDING | TUBING | 112 276 J EU10 E | 1-1/2" 2.76# (0.145wl) J55 R2 EUE 10RD ERW | 2.76 | | HYUNDAI | PRIME | PO3775 | | -2103.5 | -2.90 | 659 |
| MM WELDING | TUBING | 112 276 J EU10 E | 1-1/2" 2.76# (0.145wl) J55 R2 EUE 10RD ERW | 2.76 | | TMK | PRIME | PO3775 | 16 | 2815.3 | 3.61 | 659 |
| MM WELDING | TUBING | 112 276 J EU10 E | 1-1/2" 2.76# (0.145wl) J55 R2 EUE 10RD ERW | 2.76 | | TMK | PRIME | PO3775 | 5 | 157.3 | 0.22 | |
| MM WELDING | TUBING | 112 276 J EU10 E | 1-1/2" 2.76# (0.145wl) J55 R2 EUE 10RD ERW | 2.76 | | TEJAS TUBULAR | SCRAP | PO-5363+1 | 3 | 98.2 | 0.14 | 263 |
| MM WELDING | TUBING | 112 276 J EU10 E | 1-1/2" 2.76# (0.145wl) J55 R2 EUE 10RD ERW | 2.76 | | TEJAS TUBULAR | RETURN | PO-5363+3 | 10 | 304.5 | 0.42 | 263 |
| MM WELDING | TUBING | 112 276 J EU10 E | 1-1/2" 2.76# (0.145wl) J55 R2 EUE 10RD ERW | 2.76 | | TEJAS TUBULAR | PRIME | PO-5363+4 | 151 | 4940.7 | 6.82 | 263 |
| TEJAS HOU | CASING | 112 276 J U10 E | 1-1/2" 2.76# (0.145wl) J55 R2 U 10RD ERW | 2.76 | | TEJAS TUBULAR | PRIME | PO-5363 | 345 | 11165.16 | 15.41 | 83 |
| BEEMAC MID | CASING | 1134 42 J BC E | 11-3/4" 42.00# (0.333wl) J55 R3 BTC ERW | 42 | | NEXTEEL | SCRAP | EPS-19240-RTN | 1 | 28.36 | 0.60 | |
| BEEMAC MID | CASING | 1134 42 J BC E | 11-3/4" 42.00# (0.333wl) J55 R3 BTC ERW | 42 | | NEXTEEL | SCRAP | EPS-19325-RTN | 1 | 30.24 | 0.64 | 540 |
| BEEMAC MID | CASING | 1134 42 J BC E | 11-3/4" 42.00# (0.333wl) J55 R3 BTC ERW | 42 | | NEXTEEL | SCRAP | EPS-19387-RTN | 1 | 28.38 | 0.60 | |
| BEEMAC MID | CASING | 1134 42 J BC E | 11-3/4" 42.00# (0.333wl) J55 R3 BTC ERW | 42 | | NEXTEEL | SCRAP | EPS-19461-RTN | 1 | 28.28 | 0.59 | |
| BEEMAC MID | CASING | 1134 42 J BC E | 11-3/4" 42.00# (0.333wl) J55 R3 BTC ERW | 42 | | NEXTEEL | SCRAP | EPS-19495-RTN | 1 | 28.38 | 0.60 | |
| BEEMAC MID | CASING | 1134 42 J BC E | 11-3/4" 42.00# (0.333wl) J55 R3 BTC ERW | 42 | | NEXTEEL | INSPECTED | EPS-21523-RTN | 8 | 300.91 | 6.32 | 314 |
| BEEMAC MID | CASING | 1134 42 J BC E | 11-3/4" 42.00# (0.333wl) J55 R3 BTC ERW | 42 | | NEXTEEL | INSPECTED | QB UNK | 9 | 385.92 | 8.10 | 631 |
| BEEMAC MID | CASING | 1134 42 J SC E | 11-3/4" 42.00# (0.333wl) J55 R3 STC ERW | 42 | | NEXTEEL | RETURN | QB UNK | 1 | 21 | 0.44 | |
| BEEMAC MID | CASING | 1134 42 J SC E | 11-3/4" 42.00# (0.333wl) J55 R3 STC ERW | 42 | | NEXTEEL | SCRAP | QB UNK | 4 | 84 | 1.76 | |
| ELFARM MID | CASING | 1134 42 J SC E | 11-3/4" 42.00# (0.333wl) J55 R3 STC ERW | 42 | | HLD CLARK | SCRAP | PO2458 | 2 | 83.38 | 1.75 | |
| ELFARM MID | CASING | 1134 42 J SC E | 11-3/4" 42.00# (0.333wl) J55 R3 STC ERW | 42 | | BORUSAN | SCRAP | PO3213 | 3 | 136.37 | 2.86 | |
| ELFARM MID | CASING | 1134 42 J SC E | 11-3/4" 42.00# (0.333wl) J55 R3 STC ERW | 42 | | NEXTEEL | SCRAP | QB UNK | 4 | 181.96 | 3.82 | |
| ATLAS TUB | CASING | 1134 42 K SC S | 11-3/4" 42.00# (0.333wl) K55 R3 STC SMLS | 42 | | RUSTAVI | PRIME | PO-10192 | 474 | 18082.63 | 379.74 | 235 |
| ATLAS TUB | CASING | 1134 42 K SC S | 11-3/4" 42.00# (0.333wl) K55 R3 STC SMLS | 42 | | RUSTAVI | PRIME | PO-5507 | 125 | 4740.58 | 99.55 | 245 |
| RENTERS MH | CASING | 1134 42 K SC S | 11-3/4" 42.00# (0.333wl) K55 R3 STC SMLS | 42 | | RUSTAVI | PRIME | PO-10192 | 80 | 2696.75 | 56.63 | 236 |
| MCIP CORP | LINE PIPE | 12N281 52D BR E | 12-3/4" 37.46# (0.281wl) X52 PSL-2 DRL PEB BARE | 37.46 | BARE | TEX TUBE | PRIME | PO-11643 | | | 0.02 | 243 |
| COM RES NE | LINE PIPE | 12S20 52D FB E | 12-3/4" 33.41# (0.250wl) X52 PSL-2 DRL PEB 14-16 | 33.41 | MILS FBE ERW | TEX TUBE | PRIME | 10542/10591 | 7 | 295.3 | 4.93 | 217 |
| MCIP CORP | LINE PIPE | 12S20 52D FB E | 12-3/4" 33.41# (0.250wl) X52 PSL-2 DRL PEB 14-16 | 33.41 | MILS FBE ERW | FORZA | PRIME | 3689/13254 | 823 | 33500.6 | 559.63 | 119 |
| MCIP CORP | LINE PIPE | 12S20 52D FB E | 12-3/4" 33.41# (0.250wl) X52 PSL-2 DRL PEB 14-16 | 33.41 | MILS FBE ERW | AXIS | PRIME | PO3274/PO-10306 | 167 | 8350 | 139.49 | 263 |
| COM RES NE | LINE PIPE | 12S20 66T BR E | 12-3/4" 33.41# (0.250wl) X60 PSL-2 TRL PEB | 33.41 | ERW | TEX TUBE | PRIME | 3569/3678 | 49 | 2931.62 | 48.97 | 546 |
| COM RES NE | LINE PIPE | 12S20 66T BR E | 12-3/4" 33.41# (0.250wl) X60 PSL-2 TRL PEB | 33.41 | ERW | TENARIS | PRIME | PO-5206 | 97 | 5163.59 | 86.26 | 554 |
| COM RES NE | LINE PIPE | 12S20 60T F3 E | 12-3/4" 33.41# (0.250wl) X60 PSL-2 TRL PEB | 33.41 | 14-18 MILS, 16 MILS AVG ERW | TENARIS | PRIME | 2506/5237 | 21 | 1249.5 | 20.87 | 368 |
| COM RES NE | LINE PIPE | 12S20 60T F3 E | 12-3/4" 33.41# (0.250wl) X60 PSL-2 TRL PEB | 33.41 | 14-18 MILS, 16 MILS AVG ERW | TENARIS | PRIME | 5206/13819 | 36 | 2015.6 | 33.67 | 81 |
| MCIP CORP | LINE PIPE | 12SD 52D FB E | 12-3/4" 49.61# (0.375wl) X52 PSL-2 DRL PEB 14-16 | 49.61 | MILS FBE ERW | FORZA | PRIME | 10344/10358 | 1 | 44.5 | 1.10 | 299 |
| WOMBLE | LINE PIPE | 12SD 52D FB E | 12-3/4" 49.61# (0.375wl) X52 PSL-2 DRL PEB 14-16 | 49.61 | MILS FBE ERW | TENARIS | PRIME | 14055/14056 | 2 | 2.4 | 0.06 | 50 |
| COM RES NE | LINE PIPE | 12SD 52T BR E | 12-3/4" 49.61# (0.375wl) X52 PSL-2 TRL PEB | 49.61 | ERW | TENARIS | PRIME | PO-6543 | 32 | 1744.468 | 43.27 | 466 |
| MCIP CORP | LINE PIPE | 12SD 52T BR E | 12-3/4" 49.61# (0.375wl) X52 PSL-2 TRL PEB BARE | 49.61 | ERW | AXIS | PRIME | PO-8856 | 4 | 241.379 | 5.99 | 390 |
| ATLAS TUB | CASING | 1338 48 J LC E | 13-3/8" 48.00# (0.330wl) J55 R3 LTC ERW | 48 | | QB UNK | SCRAP | QB UNK | | | - | |
| FW PIPE TX | CASING | 1338 48 J SC E | 13-3/8" 48.00# (0.330wl) J55 R3 STC ERW | 48 | | SHIN YANG | PRIME | PO-10964 | 41 | 1703.17 | 40.88 | 263 |
| FW PIPE TX | CASING | 1338 48 J SC E | 13-3/8" 48.00# (0.330wl) J55 R3 STC ERW | 48 | | HLD CLARK | INSPECTED | PO2555 | 5 | 216 | 5.18 | 196 |
| UNITED MID | CASING | 1338 48 J SC E | 13-3/8" 48.00# (0.330wl) J55 R3 STC ERW | 48 | | SHIN YANG | RETURN | EPS-22530-RTN | 1 | 42 | 1.01 | |
| UNITED MID | CASING | 1338 48 J SC E | 13-3/8" 48.00# (0.330wl) J55 R3 STC ERW | 48 | | SHIN YANG | SCRAP | EPS-22530-RTN | 1 | 38 | 0.91 | |
| WASHITA | CASING | 1338 48 J SC E | 13-3/8" 48.00# (0.330wl) J55 R3 STC ERW | 48 | | SHIN YANG | INSPECTED | EPS-20360-RTN | 3 | 120.55 | 2.89 | 411 |
| WASHITA | CASING | 1338 48 J SC E | 13-3/8" 48.00# (0.330wl) J55 R3 STC ERW | 48 | | SHIN YANG | SCRAP | EPS-20360-RTN | 2 | 76.6 | 1.84 | |
| WASHITA | CASING | 1338 48 J SC E | 13-3/8" 48.00# (0.330wl) J55 R3 STC ERW | 48 | | SHIN YANG | INSPECTED | EPS-20365-RTN | 4 | 169 | 4.06 | |
| WASHITA | CASING | 1338 48 J SC E | 13-3/8" 48.00# (0.330wl) J55 R3 STC ERW | 48 | | SHIN YANG | SCRAP | EPS-20365-RTN | 1 | 38 | 0.91 | |
| WASHITA | CASING | 1338 48 J SC E | 13-3/8" 48.00# (0.330wl) J55 R3 STC ERW | 48 | | SHIN YANG | INSPECTED | EPS-20525-RTN | 1 | 41.85 | 1.00 | 432 |
| WASHITA | CASING | 1338 48 J SC E | 13-3/8" 48.00# (0.330wl) J55 R3 STC ERW | 48 | | SHIN YANG | INSPECTED | EPS-5483 | 2 | 85.67 | 2.06 | 580 |
| UNITED HOU | CASING | 1338 52T9 J PE E | 13-3/8" 52.79# (0.380wl) J55 R3 PE ERW | 52.79 | | SEAH | PRIME | PO-11998 | 2 | 80.62 | 2.13 | 221 |
| ATLAS TUB | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SEAH | PRIME | PO-10929 | | | - | 267 |
| ATLAS TUB | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | PARAGON | PRIME | PO-3632 | | 28.41 | 0.77 | 386 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SEAH | RETURN | EPS-18742-RTN | 7 | 287.9 | 7.82 | |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-19364-RTN | 3 | 127.69 | 3.48 | 525 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-19385-RTN | 1 | 42.51 | 1.16 | 525 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | REPAIRABLE | EPS-19456-RTN | 4 | 169.8 | 4.62 | 525 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-19547-RTN | 1 | 42.43 | 1.16 | 525 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-19616-RTN | 1 | 42.5 | 1.16 | 525 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | REPAIRABLE | EPS-19679-RTN | 3 | 127.61 | 3.48 | 525 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-19687-RTN | 1 | 42.51 | 1.16 | 525 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | REPAIRABLE | EPS-19680-RTN | | | - | 525 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20168-RTN | 1 | 42.51 | 1.16 | 495 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SEAH | RETURN | EPS-20237-RTN | | | - | 600 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SEAH | RETURN | EPS-20237-RTN | | | - | 588 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SEAH | RETURN | EPS-20237-RTN | | | - | 579 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | SCRAP | EPS-20302-RTN | 1 | 27.7 | 0.75 | |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20316-RTN | 1 | 42.55 | 1.16 | 447 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | REPAIRABLE | EPS-20316-RTN | 2 | 87.33 | 2.38 | 447 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20316-RTN | | | - | 581 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | RETURN | EPS-20316-RTN | | | - | 581 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20460-RTN | 6 | 252.53 | 6.88 | 426 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | SCRAP | EPS-20460-RTN | 1 | 31.5 | 0.86 | |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20475-RTN | 3 | 125.59 | 3.42 | 426 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | SCRAP | EPS-20464-RTN | 1 | 34.1 | 0.93 | |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20476-RTN | 2 | 91.09 | 2.48 | 447 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20477-RTN | 1 | 42.12 | 1.15 | 427 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | REPAIRABLE | EPS-20477-RTN | 1 | 31.2 | 0.85 | 427 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SEAH | RETURN | EPS-20668-RTN | 1 | 0.56 | 0.02 | 426 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SEAH | RETURN | EPS-20668-RTN | | | - | 584 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20818-RTN | 3 | 22.11 | 3.19 | 426 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SEAH | RETURN | EPS-20818-RTN | | | 0.05 | |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20860-RTN | 8 | 345.31 | 9.40 | |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20860-RTN | 4 | 188.17 | 5.13 | |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | HLD CLARK | INSPECTED | EPS-20927-RTN | 9 | 384.24 | 10.47 | 347 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | EPS-20927-RTN | 1 | 24.3 | 0.66 | |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20927-RTN | 1 | 35.5 | 0.97 | |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-20994-RTN | 4 | 170.18 | 4.64 | 354 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | REPAIRABLE | EPS-20994-RTN | 1 | 22.18 | 0.60 | 354 |
| BEEMAC MID | CASING | 1338 54S J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | SHIN YANG | SCRAP | EPS-20994-RTN | 1 | 27.71 | 0.76 | |
| BEEMAC MID | CASING | 1338 545 J BC E | 13-3/8" 54.50# (0.380wl) J55 R3 BTC ERW | 54.5 | | PARAGON | INSPECTED | EPS-21007-RTN | 3 | 130.61 | 3.56 | 386 |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | iMill | iCondition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | INSPECTED | EPS-21057-RTN | 3 | 129.53 | 3.53 | 386 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | PRIME | EPS-21057-RTN | 1 | 29.15 | 0.79 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | CH STEEL | SCRAP | EPS-21090-RTN | 2 | 30.16 | 0.82 | 355 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-21121-RTN | 3 | 123.42 | 3.36 | 355 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | SCRAP | EPS-21121-RTN | 1 | 15.24 | 0.42 | 355 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | EPS-21223-RTN | 7 | 288.36 | 7.86 | 281 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | EPS-21223-RTN | 1 | 30.7 | 0.84 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | INSPECTED | EPS-21232-RTN | 8 | 331.82 | 9.04 | 347 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | PRIME | EPS-21232-RTN | 1 | 33.82 | 0.92 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | INSPECTED | EPS-21300-RTN | 5 | 208.81 | 5.69 | 294 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | REPAIRABLE | EPS-21300-RTN | 2 | 86.68 | 2.36 | 294 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | INSPECTED | EPS-21435-RTN | 6 | 254.34 | 6.93 | 302 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | EPS-21435-RTN | 1 | 31.5 | 0.86 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | EPS-21450-RTN | 1 | 24.4 | 0.66 | 294 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | EPS-21450-RTN | 1 | 34.4 | 0.94 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | CH STEEL | SCRAP | EPS-21461-RTN | 3 | 17.47 | 0.48 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | INSPECTED | EPS-21490-RTN | 5 | 210.78 | 5.74 | 279 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | EPS-21490-RTN | 1 | 31.93 | 0.87 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | REPAIRABLE | EPS-21687-RTN | 4 | 166.54 | 4.54 | 294 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | SCRAP | EPS-21687-RTN | 1 | 35.74 | 0.97 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | EPS-21689-RTN | 4 | 167.15 | 4.55 | 279 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | PRIME | EPS-21689-RTN | 7 | 282.68 | 7.70 | 279 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | REPAIRABLE | EPS-21689-RTN | 3 | 122.9 | 3.35 | 279 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | SCRAP | EPS-21696-RTN | 1 | 25.86 | 0.70 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | CH STEEL | PRIME | QB UNK | 1 | 37.77 | 1.03 | 659 |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | CH STEEL | RETURN | RTN-1 | 15 | 664.37 | 18.10 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | REPAIRABLE | RTN-2 | 1 | 36.32 | 0.99 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | RETURN | RTN-3 | 14 | 564.5 | 15.38 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | RTN-4 | 3 | 108.26 | 2.95 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SEAH | SCRAP | RTN-5 | 5 | 168.6 | 4.59 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | RETURN | RTN-6 | 21 | 789.04 | 21.50 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | RTN-7 | 8 | 132.86 | 3.62 | |
| BEEMAC MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | NA | RETURN | RTN-8 | 2 | 82 | 2.23 | |
| ELFARM MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | HLD CLARK | SCRAP | EPS-18602-RTN | 2 | 85.6 | 2.33 | |
| ELFARM MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | CH STEEL | SCRAP | EPS-19194-RTN | | | - | 659 |
| ELFARM MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | HALL LONGMORE | SCRAP | EPS-19194-RTN | 3 | 127.68 | 3.48 | |
| ELFARM MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | SCRAP | EPS-19219-RTN | 2 | 83.4 | 2.27 | 628 |
| ELFARM MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | SCRAP | EPS-19219-RTN | 1 | 48.95 | 1.33 | 628 |
| ELFARM MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | HLD CLARK | SCRAP | PO2577 | 1 | 42.7 | 1.16 | |
| ELFARM MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | SCRAP | PO2992 | 4 | 181.99 | 4.96 | 659 |
| ELFARM RET | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | CH STEEL | SCRAP | PO3224 | 1 | 42.45 | 1.16 | |
| ELFARM RET | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | NA | REPAIRABLE | QB UNK | 24 | 1115.57 | 30.40 | |
| NOV WELLB | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | TMK | INSPECTED | EPS-19381-RTN | | | - | 631 |
| NOV WELLB | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | NA | INSPECTED | EPS-19771-RTN | | | - | 631 |
| NOV WELLB | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | PRIME | EPS-20195-RTN | 1 | 22.84 | 0.62 | |
| NOV WELLB | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | TMK | RETURN | PO3343 | | | - | 651 |
| NOV WELLB | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | PRIME | PO3632 | | | - | 659 |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | INSPECTED | 1011423 | 8 | 336 | 9.16 | 386 |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | TENARIS | INSPECTED | 1011423 | 3 | 126 | 3.43 | 386 |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | HLD CLARK | INSPECTED | EPS-21378-RTN | | | - | 328 |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | INSPECTED | EPS-21378-RTN | 1 | 3.4 | 0.09 | 328 |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | INSPECTED | EPS-21442-RTN | 4 | 167.64 | 4.57 | 316 |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | EPS-21442-RTN | 1 | 29.2 | 0.80 | |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | CH STEEL | INSPECTED | RTN-10 | 5 | 223.25 | 6.08 | |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | CH STEEL | RETURN | RTN-11 | 6 | 264 | 7.19 | |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | INSPECTED | RTN-13 | 1 | 7.43 | 0.20 | |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SEAH | SCRAP | RTN-14 | 1 | 42 | 1.14 | |
| PRECISION | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SEAH | INSPECTED | RTN-15 | 96 | 3754.36 | 102.31 | |
| REPUBLIC | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | ARCELOR MITTAL | SCRAP | RTN-9 | 2 | 57 | 1.55 | |
| REPUBLIC | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | PRIME | PO-59148563 | 1 | 33.3 | 0.91 | 362 |
| UNITED MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SHIN YANG | PRIME | EPS-19712-RTN | 8 | 340.24 | 9.27 | 112 |
| UNITED MID | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | SEAH | SCRAP | QB UNK | -4 | | - | |
| WASHITA | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | RETURN | PO3632 | 2 | 87.65 | 2.39 | 449 |
| WASHITA | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | SCRAP | PO3632 | 1 | 35.01 | 0.95 | 449 |
| NOV WELLB | CASING | 1338 54.5 J BC E | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | 54.5 | | PARAGON | RETURN | EPS-20537-RTN | 2 | 88 | 2.40 | |
| REPUBLIC | CASING | 1338 66/17 J PE E | 13-3/8" 66.17# (0.480wt) J55 R3 PE ERW | 66.17 | | SHIN YANG | SCRAP | PO2042 | 17 | 714.99 | 23.66 | |
| ELFARM MID | CASING | 1338 J BC E | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | 68 | | SHIN YANG | SCRAP | EPS-18558-RTN | 4 | 170.77 | 5.81 | |
| ELFARM RET | CASING | 1338 68 J BC E | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | 68 | | NA | SCRAP | QB UNK | 2 | 76.45 | 2.60 | |
| REPUBLIC | CASING | 1338 68 J BC E | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | 68 | | SHIN YANG | REPAIRABLE | PO2042 | 9 | 397.90932 | 13.53 | 659 |
| TSI JPORT | CASING | 1338 68 J BC E | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | 68 | | HYUNDAI | PRIME | PO-10418 | 3 | 41.1 | 1.40 | |
| UNITED MID | CASING | 1338 68 J BC E | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | 68 | | SEAH | SCRAP | QB UNK | 2 | 83.3 | 2.83 | |
| ELFARM MID | CASING | 1338 68 J BC E | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | 68 | | SHIN YANG | SCRAP | QB UNK | 2 | 84.4 | 2.87 | |
| REPUBLIC | CASING | 1338 N B CE | 13-3/8" 68.00# (0.480wt) N80 R3 BTC ERW | | | US STEEL | REPAIRABLE | QB UNK | | 40.77 | 1.39 | |
| ARCTIC | CASING | 14 11553 QHP PE S | 14" 115.53# (0.820wt) Q125-HP R3 PE SMLS | 115.53 | | US STEEL | PRIME | 66647035 | | | - | 484 |
| ARCTIC | CASING | 14 11553 QHP PE S | 14" 115.53# (0.820wt) Q125-HP R3 PE SMLS | 115.53 | | US STEEL | PRIME | EPS-20786-001 | | | - | 460 |
| AXIS PIPE | LINE PIPE | 16510 52D BR E | 16" 42.09# (0.250wt) X52 PSL-2 DRL PE BARE ERW | 42.09 | | AXIS | PRIME | EPS-21356-001 | | | - | 403 |
| MCIP CORP | LINE PIPE | 16510 52D BR E | 16" 42.09# (0.250wt) X52 PSL-2 DRL PE R3 16 MLS | 42.09 | FBE ERW | AXIS | PRIME | 327510308 | 472 | 23597.7 | 496.61 | 294 |
| MCIP CORP | LINE PIPE | 165D 52D BR E | 16" 62.64# (0.375wt) X52 PSL-2 DRL PEB BARE ERW | 62.64 | | TEX TUBE | PRIME | PO-5121 | | | - | 628 |
| MCIP CORP | LINE PIPE | 165D 52D BR E | 16" 62.64# (0.375wt) X52 PSL-2 DRL PEB BARE ERW | 62.64 | | AXIS | PRIME | PO-5228 | | | - | 600 |
| MCIP CORP | LINE PIPE | 165D 65D BR E | 16" 62.64# (0.375wt) X52 PSL-2 DRL PEB BARE ERW | 62.64 | | AXIS | PRIME | PO-5212 | | | - | 593 |
| MCIP CORP | LINE PIPE | 165D 65D BR E | 16" 62.64# (0.375wt) X65 PSL-2 DRL PEB BARE ERW | 62.64 | | TENARIS | PRIME | PO-5226 | | | - | 595 |
| WOMBLE | LINE PIPE | 20N308 65T BR E | 20" 64.84# (0.300wt) X65 PSL-2 TRL PEB ERW | 64.84 | BARE | PROCARSA | PRIME | PO-11634 | 1 | 53.8 | 1.74 | 237 |
| WOMBLE | LINE PIPE | 20N308 65T FB E | 20" 64.84# (0.300wt) X65 PSL-2 TRL PEB ERW 14-16 | 64.84 | MILS FBE | PROCARSA | PRIME | 94071260 | 7 | 368.9 | 11.96 | 209 |
| TSI MCCART | TUBING | 238 444 JUP PE E | 2-3/8" 4.44# (0.190wt) J55 UPGRADEABLE R2 PE ERW | 4.44 | | HUSTEEL | SCRAP | PO2963 | 2 | 65 | 0.14 | |
| PETROSMITH | TUBING | 238 47 J EU8 700 E | 2-3/8" 4.70# (0.190wt) J55 R2 EUE 8RD ERW | 4.7 | IPC P700 | ROBOR | PRIME | PO2593 | 13 | 343.04 | 0.81 | 607 |
| PETROSMITH | TUBING | 238 47 J EU8 700 E | 2-3/8" 4.70# (0.190wt) J55 R2 EUE 8RD ERW | 4.7 | IPC P700 | HYUNDAI | PRIME | PO4006 | 58 | 1882.08 | 4.42 | 607 |
| PETROSMITH | TUBING | 238 47 J EU8 700 E | 2-3/8" 4.70# (0.190wt) J55 R2 EUE 8RD ERW | 4.7 | IPC P700 | HUSTEEL | PRIME | PO-6381 | 194 | 6329.92 | 14.88 | 249 |
| LUNDVALL | TUBING | 238 47 J EU8 E | 2-3/8" 4.70# (0.190wt) J55 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | SCRAP | EPS-22603-RTN | 1 | 32.6 | 0.08 | 203 |
| LUNDVALL | TUBING | 238 47 J EU8 E | 2-3/8" 4.70# (0.190wt) J55 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | RETURN | EPS-23010-RTN | 30 | 998.92 | 2.35 | 203 |
| LUNDVALL | TUBING | 238 47 J EU8 E | 2-3/8" 4.70# (0.190wt) J55 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | SCRAP | EPS-23010-RTN | 1 | 32.6 | 0.08 | 195 |
| LUNDVALL | TUBING | 238 47 J EU8 E | 2-3/8" 4.70# (0.190wt) J55 R2 EUE 8RD ERW | 4.7 | | NEXTEEL | RETURN | EPS-23029-RTN | -1 | | - | |
| LUNDVALL | TUBING | 238 47 J EU8 E | 2-3/8" 4.70# (0.190wt) J55 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | RETURN | EPS-23041-RTN | 13 | | - | |
| LUNDVALL | TUBING | 238 47 J EU8 E | 2-3/8" 4.70# (0.190wt) J55 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | RETURN | EPS-23043-RTN | 10 | 315.2 | 0.74 | 140 |
| LUNDVALL | TUBING | 238 47 J EU8 E | 2-3/8" 4.70# (0.190wt) J55 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | PRIME | PO-10402 | | | - | 296 |
| TSI MCCART | TUBING | 238 47 JFBN EU8 E | 2-3/8" 4.70# (0.190wt) J55 FBN/AJ R2 EUE 8RD ERW | 4.7 | | HUSTEEL | PRIME | PO3005 | 16 | 524.55 | 1.23 | |
| TSI MCCART | TUBING | 238 47 JFBN EU8 E | 2-3/8" 4.70# (0.190wt) J55 FBN/AJ R2 EUE 8RD ERW | 4.7 | | HUSTEEL | PRIME | PO3005 | 553 | 18347.45 | 43.12 | 659 |
| DUFFY | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | NA | SCRAP | YLW BAND | 38 | 1218.81 | 2.86 | 659 |
| IOS KIM | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | SEAH | PRIME | PO-5247 | 6 | | - | |
| LUNDVALL | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | NA | USED | EPS-23327-001 | 40 | 1338.2 | 3.14 | 70 |
| LUNDVALL | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | PRIME | PO-10376 | -43 | | - | |
| LUNDVALL | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | RETURN | PO-10516 | 14 | 456 | 1.07 | 75 |
| MM WELDING | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | BOOMERANG | PRIME | PO-5003 | -4 | | - | 657 |
| MM WELDING | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | SEAH | PRIME | PO-5247 | -75 | | - | 588 |
| MM WELDING | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | BOOMERANG | SCRAP | QB UNK | -31 | -627.8 | (1.48) | 659 |
| MM WELDING | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | BOOMERANG | SCRAP | QB UNK | 3 | 228.26 | 0.54 | 659 |
| MM WELDING | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | HLD CLARK | SCRAP | QB UNK | 1 | 32.4 | 0.08 | 659 |
| NOV WELLB | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | SEAH | PRIME | QB UNK | 9 | 294.6 | 0.69 | |
| NOV WELLB | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | HYUNDAI | SCRAP | QB UNK | 9 | 72.54 | 0.17 | 659 |
| NOV WELLB | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | BOOMERANG | PRIME | PO-6003 | 16 | 506.6 | 1.19 | 81 |
| SPLENDORA | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | TUPER | SCRAP | PO-10454 | 2 | 65.2 | 0.15 | 81 |
| SPLENDORA | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | ROBOR | PRIME | PO3188 | | | - | 659 |
| SPLENDORA | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | PRIME | PO3568 | | | - | |
| TSI BEAR | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | PRIME | PO2076 | 11 | 319.6 | 0.75 | |
| TSI MCCART | TUBING | 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | HUSTEEL | PRIME | PO-9293 | 9 | 283.46 | 0.67 | 356 |
| DUFFY | TUBING | 238 47 L EU8 S | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD SMLS | 4.7 | | TENARIS | INSPECTED | 19804-RTN/BLUE-YLW | 32 | 1017.978 | 2.39 | 50 |
| DROP SHIP | TUBING | 278 65 J EU8 E | 2-7/8" 6.50# (0.217wt) J55 R2 EUE 8RD ERW | 6.5 | | SEAH | PRIME | PO-5069 | | | - | 636 |
| DROP SHIP | TUBING | 278 65 J EU8 E | 2-7/8" 6.50# (0.217wt) J55 R2 EUE 8RD ERW | 6.5 | | HUSTEEL | PRIME | PO-637 | | | - | 628 |
| KJ CONSTR | TUBING | 278 65 J EU8 E | 2-7/8" 6.50# (0.217wt) J55 R2 EUE 8RD ERW | 6.5 | | HUSTEEL | PRIME | PO-10772 | 2 | 32.12 | 0.10 | 263 |
| KJ CONSTR | TUBING | 278 65 J EU8 E | 2-7/8" 6.50# (0.217wt) J55 R2 EUE 8RD ERW | 6.5 | | SEAH VINA | PRIME | PO-11764 | 29 | 975.61 | 3.17 | 239 |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | iMill | iCondition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PETROSMITH | TUBING | 278 65 L EU8 700 S | 2-7/8" 6.50# (0.190w) L80 R2 EU8 8RD SMLS | 6.5 | IPC P700 | PERVOURALSK | PRIME | PO-7622 | 127 | 4132.19 | 13.43 | 203 |
| ATLAS TUB | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | HUSTEEL | PRIME | PO-10587 | 1 | | - | 638 |
| ATLAS TUB | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | HUSTEEL | PRIME | PO-11602 | 4 | 14.09 | 0.05 | 211 |
| BEEMAC MID | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | BOOMERANG | SCRAP | EPS-20203-RTN | | | - | 638 |
| BEEMAC MID | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | BOOMERANG | PRIME | PO3566 | | | - | 648 |
| NOV WELLB | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | BOOMERANG | PRIME | EPS-20097-RTN | | | - | 631 |
| NOV WELLB | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | TENARIS | PRIME | PO3312 | | | - | 659 |
| NOV WELLB | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | BOOMERANG | PRIME | PO3566 | | | - | 659 |
| NOV WELLB | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | BOOMERANG | PRIME | PO-3782 | -40 | | - | 659 |
| SPLENDORA | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | BOOMERANG | PRIME | PO3566 | | | - | 659 |
| SPLENDORA | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | BOOMERANG | PRIME | PO-4036 | | | - | 659 |
| TSI BEAR | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | CENTRIC | PRIME | PO-3782 | | 99.414 | 0.32 | 447 |
| TSI MCCART | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | HUSTEEL | SCRAP | QB UNK | 8 | 264 | 0.86 | |
| TUBO COESS | TUBING | 278 65 L EU8 E | 2-7/8" 6.50# (0.217w) L80 R2 EU8 8RD ERW | 6.5 | | NEXTEEL | SCRAP | QB UNK | 2 | 60 | 0.20 | |
| SAVAGE | LINE PIPE | 2S80 52D FB E | 2-3/8" 5.03# (0.218w) X52 PSL-1 DRL PEB 14-16 | 5.03 | MILS FBE ERW | WHEATLAND | SCRAP | PO3386 | 2 | 80 | 0.20 | |
| STALLION | LINE PIPE | 2S80 52D FB E | 2-3/8" 5.03# (0.218w) X52 PSL-1 DRL PEB 14-16 | 5.03 | MILS FBE ERW | HUSTEEL | PRIME | 12114/12127 | | 396 | 1.00 | 215 |
| KJ CONSTR | TUBING | 35 93 J EU8 E | 3-1/2" 9.30# (0.254w) J55 R2 EU8 8RD SMLS | 9.3 | | SEAH VINA | PRIME | PO-10025 | 1 | 33.21 | 0.15 | 328 |
| KJ CONSTR | TUBING | 35 93 J EU8 S | 3-1/2" 9.30# (0.254w) J55 R2 EU8 8RD SMLS | 9.3 | | NKO TUBE | PRIME | PO-10773 | 2 | 79.72 | 0.37 | 264 |
| KJ CONSTR | TUBING | 35 93 J EU8 E | 3-1/2" 9.30# (0.254w) J55 R2 EU8 8RD SMLS | 9.3 | | PERVOURALSK | PRIME | PO-1665 | 12 | 390.25 | 1.81 | 236 |
| TSI MCCART | TUBING | 35 93 J EU8 S | 3-1/2" 9.30# (0.254w) J55 R2 EU8 8RD SMLS | 9.3 | | INTERPIPE | PRIME | PO-5492 | 62 | 1996 | 9.28 | 517 |
| WASHITA | TUBING | 35 93 J EU8 S | 3-1/2" 9.30# (0.254w) J55 R2 EU8 8RD SMLS | 9.3 | | INTERPIPE | PRIME | PO-5492 | 1 | 32.32 | 0.15 | 78 |
| NOV EDMOND | TUBING | 35 93 J EU8 TK7 S | 3-1/2" 9.30# (0.254w) J55 R2 EU8 8RD 7K-70 SMLS | 9.3 | | INTERPIPE | PRIME | 5492/5495 | -159 | | - | |
| WASHITA | TUBING | 35 93 J EU8 TK7 S | 3-1/2" 9.30# (0.254w) J55 R2 EU8 8RD 7K-70 SMLS | 9.3 | | INTERPIPE | PRIME | 5492/5495 | 51 | 1672 | 7.77 | 78 |
| MCIP CORP | LINE PIPE | 3S160 52D BR S | 3-1/2" 14.34# (0.438w) X52 PSL-2 DRL PEB BARE | 14.34 | SMLS | ARCELOR MITTAL | PRIME | PO-3743 | | 0.242 | 0.00 | 569 |
| COM RES CO | LINE PIPE | 3S80 52D BR E | 3-1/2" 10.26# (0.300w) X52 PSL-2 DRL PEB BARE ERW | 10.26 | | WHEATLAND | PRIME | PO-12117 | 299 | 13455 | 69.02 | 218 |
| MCIP CORP | LINE PIPE | 3S80 52D BR E | 3-1/2" 10.26# (0.300w) X52 PSL-2 DRL PEB BARE ERW | 10.26 | | TEX TUBE | PRIME | PO-12118 | 175 | 7817.3 | 40.10 | 222 |
| COM RES CO | LINE PIPE | 3S80 52D FA E | 3-1/2" 10.26# (0.300w) X52 PSL-2 DRL PEB 14-16 | 10.26 | MILS + 30 MILS ARO ERW | TEX TUBE | PRIME | PO-12118/12130 | 44 | 1984.4 | 10.18 | 215 |
| COM RES CO | LINE PIPE | 3S80 52D FB E | 3-1/2" 10.26# (0.304w) X52 PSL-2 DRL PEB 14-16 | 10.26 | MILS FBE ERW | WHEATLAND | PRIME | 10419/11672 | 65 | 2927.6 | 15.02 | 234 |
| COM RES CO | LINE PIPE | 3S80 52D FB E | 3-1/2" 10.26# (0.304w) X52 PSL-2 DRL PEB 14-16 | 10.26 | MILS FBE ERW | WHEATLAND | PRIME | PO-10419/11672 | 364 | 16380 | 84.03 | 174 |
| COM RES CO | LINE PIPE | 3S80 52D FB E | 3-1/2" 10.26# (0.304w) X52 PSL-2 DRL PEB 14-16 | 10.26 | MILS FBE ERW | WHEATLAND | PRIME | PO3351 | 37 | 1665.2 | 8.54 | 659 |
| SAVAGE | LINE PIPE | 3S80 52D FB E | 3-1/2" 10.26# (0.304w) X52 PSL-2 DRL PEB 14-16 | 10.26 | MILS FBE ERW | WHEATLAND | PRIME | PO2881/3350 | 29 | 1150.01 | 5.90 | 234 |
| COM RES CO | LINE PIPE | 3S80 52D FB E | 3-1/2" 10.26# (0.304w) X52 PSL-2 DRL PEB 14-16 | 10.26 | MILS FBE ERW | WHEATLAND | REPAIRABLE | PO2881/3350-1 | 34 | 1567.32 | 8.04 | 294 |
| STALLION | LINE PIPE | 3S80 52D FB E | 3-1/2" 10.26# (0.304w) X52 PSL-2 DRL PEB 14-16 | 10.26 | MILS FBE ERW | WHEATLAND | PRIME | PO3643 | | | - | 441 |
| NOV EDMOND | CASING | 45 1136 J PE E | 4-1/2" 11.36# (0.250w) J55 R3 PE ERW | 11.36 | | SEAH VINA | PRIME | PO-8237 | -3 | | - | |
| TSI JPORT | CASING | 45 1136 J PE E | 4-1/2" 11.36# (0.250w) J55 R3 PE ERW | 11.36 | | SEAH VINA | PRIME | PO-8237 | 1 | 38.6 | 0.22 | 416 |
| WASHITA | CASING | 45 1136 J PE E | 4-1/2" 11.36# (0.250w) J55 R3 PE ERW | 11.36 | | SEAH VINA | SCRAP | PO-8237 | 3 | 119.13 | 0.68 | 78 |
| NOV WELLB | CASING | 45 116 J LC E | 4-1/2" 11.60# (0.250w) J55 R3 LTC ERW | 11.6 | | HLD CLARK | PRIME | PO-5004 | 21 | 924 | 5.36 | 607 |
| NOV WELLB | CASING | 45 116 J LC KC TK7 E | 4-1/2" 11.60# (0.250w) J55 R3 LTC WITH KC RING | 11.6 | ERW TK-70 | TENARIS | PRIME | 5882/8233-1 | 1 | 92.6 | 0.32 | 78 |
| NOV WELLB | CASING | 45 116 J LC 700 S | 4-1/2" 11.60# (0.250w) L80 R3 LTC SMLS | 11.6 | IPC P700 | TENARIS | PRIME | EPS-22243-RTN | 1 | 40.17 | 0.23 | 173 |
| PETROSMITH | CASING | 45 116 L LC 700 S | 4-1/2" 11.60# (0.250w) L80 R3 LTC SMLS | 11.6 | IPC P700 | TENARIS | PRIME | PO-5185 | 28 | 1237.24 | 7.18 | 249 |
| MM WELDING | CASING | 45 116 L LC E | 4-1/2" 11.60# (0.250w) L80 R3 LTC ERW | 11.6 | | EVRAZ | INSPECTED | PO-2079 | 1 | 45.15 | 0.26 | 173 |
| MM WELDING | CASING | 45 116 L LC S | 4-1/2" 11.60# (0.250w) L80 R3 LTC SMLS | 11.6 | | BOLY | SCRAP | QB UNK | 1 | 25.61 | 0.15 | 659 |
| NOV WELLB | CASING | 45 116 L LC S | 4-1/2" 11.60# (0.250w) L80 R3 LTC SMLS | 11.6 | | BOLY | INSPECTED | EPT-2780.TTL | 1 | 16.95 | 0.10 | 81 |
| MM WELDING | CASING | 45 116 NX8 LC E | 4-1/2" 11.60# (0.250w) NEXT-80 R3 LTC ERW | 11.6 | | NEXTEEL | SCRAP | QB UNK | 1 | 45 | 0.26 | |
| NOV WELLB | CASING | 45 116 NX8 LC E | 4-1/2" 11.60# (0.250w) NEXT-80 R3 LTC ERW | 11.6 | | NEXTEEL | INSPECTED | PO-8249 | 2 | 81.35 | 0.47 | 173 |
| DJR RIG | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | PRIME | PO-11128 | -6 | | - | 203 |
| DJR RIG | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | PRIME | PO-6221 | 7 | | - | |
| NOV WELLB | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | USED | 22517-22737-TIE BACK | 5 | 220 | 1.28 | 147 |
| NOV WELLB | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | USED | EPS-21561-TIE BACK | 12 | 510.92 | 2.96 | 173 |
| NOV WELLB | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | SCRAP | EPS-22467-TIE BACK | 1 | 43.52 | 0.25 | 173 |
| NOV WELLB | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | USED | EPS-22467-TIE BACK | 128 | 5507.28 | 31.94 | 173 |
| NOV WELLB | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | USED | EPS-22472-RTN | 123 | 5287.45 | 30.67 | 189 |
| NOV WELLB | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | SCRAP | EPS-22472--RTN | 1 | 44.8 | 0.26 | 188 |
| NOV WELLB | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | SCRAP | EPS-22517--RTN | 2 | 89.64 | 0.52 | |
| NOV WELLB | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | USED | EPS-22517-TIE BACK | 52 | 2330.33 | 13.52 | |
| NOV WELLB | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | TMK | SCRAP | EPS-22518--RTN | 2 | 89.42 | 0.52 | |
| STHN TUBE | CASING | 45 116 PHC BC E | 4-1/2" 11.60# (0.250w) P110-HC R3 BTC ERW | 11.6 | | CENTRIC | PRIME | PO-6406 | 19 | 828.4 | 4.80 | 386 |
| NOV WELLB | CASING | 45 116 PHC LC S | 4-1/2" 11.60# (0.250w) P110-HC R3 LTC SMLS | 11.6 | | BOLY | SCRAP | QB UNK | -5 | | - | |
| DJR RIG | CASING | 45 116 PIC BC E | 4-1/2" 11.60# (0.250w) P110-IC R3 BTC ERW | 11.6 | | TENARIS | RETURN | PO-2084 | -1 | | - | |
| DJR RIG | CASING | 45 116 PIC BC E | 4-1/2" 11.60# (0.250w) P110-IC R3 BTC ERW | 11.6 | | TENARIS | RETURN | PO-5396 | -2 | | - | |
| DJR RIG | CASING | 45 116 PIC BC E | 4-1/2" 11.60# (0.250w) P110-IC R3 BTC ERW | 11.6 | | TENARIS | PRIME | PO-6211 | 2 | | - | |
| IN TRANSIT | CASING | 45 116 PIC BC E | 4-1/2" 11.60# (0.250w) P110-IC R3 BTC ERW | 11.6 | | TENARIS | PRIME | PO-5396 | 1 | | - | 659 |
| LARAMIE | CASING | 45 116 PIC BC E | 4-1/2" 11.60# (0.250w) P110-IC R3 BTC ERW | 11.6 | | TENARIS | PRIME | PO-2084 | | | - | 659 |
| LARAMIE | CASING | 45 116 PIC BC E | 4-1/2" 11.60# (0.250w) P110-IC R3 BTC ERW | 11.6 | | TENARIS | PRIME | QB UNK | | | - | 658 |
| MM WELDING | CASING | 45 116 PIC BC E | 4-1/2" 11.60# (0.250w) P110-IC R3 BTC ERW | 11.6 | | TENARIS | PRIME | PO-5076 | 5 | 213 | 1.24 | 524 |
| NOV WELLB | CASING | 45 116 PIC BC E | 4-1/2" 11.60# (0.250w) P110-IC R3 BTC ERW | 11.6 | | TENARIS | PRIME | QB UNK | -19 | | - | 173 |
| TSI BEAR | CASING | 45 1305 UP P S | 4-1/2" 13.05# (0.290w) UPGRD R3 PE SMLS | 13.05 | | ARCELOR MITTAL | PRIME | PO-15619 | 7 | 304.37 | 1.99 | 242 |
| UNITED MID | CASING | 45 135 P BC E | 4-1/2" 13.50# (0.290w) P110 R3 BTC ERW | 13.5 | | TENARIS | INSPECTED | EPS-21207-RTN | -1 | | - | |
| PRECISION | CASING | 45 135 PCY GBCD S | 4-1/2" 13.50# (0.290w) P110-CY R3 GBCD SMLS | 13.5 | | TENARIS | INSPECTED | EPS-20063-RTN | 1 | 47.1 | 0.32 | |
| PRECISION | CASING | 45 135 PCY GBCD S | 4-1/2" 13.50# (0.290w) P110-CY R3 GBCD SMLS | 13.5 | | TENARIS | INSPECTED | EPS-22209-RTN | 2 | 80.24 | 0.54 | 234 |
| PRECISION | CASING | 45 135 PCY GBCD S | 4-1/2" 13.50# (0.290w) P110-CY R3 GBCD SMLS | 13.5 | | TENARIS | INSPECTED | EPS-22212-RTN | 7 | 263.6 | 1.78 | 225 |
| ATLAS TUB | CASING | 45 135 PCY TCBHT S | 4-1/2" 13.50# (0.290w) P110-CY R3 TCBC-HT SMLS | 13.5 | | TENARIS | INSPECTED | PO-16/18/11698 | 736 | 31797.42 | 214.63 | 216 |
| PRECISION | CASING | 45 135 PCY TCBHT S | 4-1/2" 13.50# (0.290w) P110-CY R3 TCBC-HT SMLS | 13.5 | | VOEST ALPINE | REPAIRABLE | EPS-22780-RTN | 3 | 122 | 0.82 | 234 |
| PRECISION | CASING | 45 135 PHC BC E | 4-1/2" 13.50# (0.290w) P110-HC R3 BTC ERW | 13.5 | | TEJAS TUBULAR | INSPECTED | EPS-22617-RTN | 1 | 43.2 | 0.29 | 179 |
| REPUBLIC | CASING | 45 135 PHC BC E | 4-1/2" 13.50# (0.290w) P110-HC R3 BTC ERW | 13.5 | | TENARIS | PRIME | EPS-22200-RTN | 4 | 180 | 1.22 | |
| REPUBLIC | CASING | 45 135 PHC BC E | 4-1/2" 13.50# (0.290w) P110-HC R3 BTC ERW | 13.5 | | NEXTEEL | REPAIRABLE | EPS-22200-RTN | 2 | 90 | 0.61 | |
| WASHITA | CASING | 45 135 PHC BK S | 4-1/2" 13.50# (0.290w) P110-HC R3 BTC ERW | 13.5 | | TENARIS | PRIME | EPS-20567-RTN | 31 | 1268.65 | 8.56 | 449 |
| WASHITA | CASING | 45 135 PHC BK S | 4-1/2" 13.50# (0.290w) P110-HC R3 BK SMLS | 13.5 | | BOLY | INSPECTED | PO-5462 | 5 | 205 | 1.38 | 449 |
| WASHITA | CASING | 45 135 PHC BK S | 4-1/2" 13.50# (0.290w) P110-HC R3 BK SMLS | 13.5 | | BOLY | PRIME | PO-5462 | 178 | 7183.94 | 48.49 | 575 |
| BEEMAC MID | CASING | 45 135 PHC GB E | 4-1/2" 13.50# (0.290w) P110-HC R3 GBCD ERW | 13.5 | | AXIS | RETURN | EPS-20098-RTN | -5 | | - | 600 |
| BEEMAC MID | CASING | 45 135 PHC GB E | 4-1/2" 13.50# (0.290w) P110-HC R3 GBCD ERW | 13.5 | | AXIS | RETURN | EPS-20098-RTN | 5 | 205 | 1.38 | 600 |
| BEEMAC MID | CASING | 45 135 PHC GB E | 4-1/2" 13.50# (0.290w) P110-HC R3 GBCD ERW | 13.5 | | CENTRIC | REPAIRABLE | EPS-20467-RTN | 1 | 44.63 | 0.30 | 320 |
| BEEMAC MID | CASING | 45 135 PHC GB E | 4-1/2" 13.50# (0.290w) P110-HC R3 GBCD ERW | 13.5 | | CENTRIC | INSPECTED | EPS-20467-RTN | 9 | 375.5 | 2.53 | 329 |
| BEEMAC MID | CASING | 45 135 PHC GB E | 4-1/2" 13.50# (0.290w) P110-HC R3 GBCD ERW | 13.5 | | CENTRIC | PRIME | EPS-5028 | 11 | 11.74 | 0.08 | 195 |
| BEEMAC MID | CASING | 45 135 PHC GB E | 4-1/2" 13.50# (0.290w) P110-HC R3 GBCD ERW | 13.5 | | CENTRIC | PRIME | PO-6022 | 2 | | - | |
| PRECISION | CASING | 45 135 PHC GB E | 4-1/2" 13.50# (0.290w) P110-HC R3 GBCD ERW | 13.5 | | AXIS | REPAIRABLE | EPS-22200-RTN | | 56.77 | 0.38 | 264 |
| REPUBLIC | CASING | 45 135 PHC GB E | 4-1/2" 13.50# (0.290w) P110-HC R3 GBCD ERW | 13.5 | | NEXTEEL | REPAIRABLE | EPS-22200-RTN | 14 | 630 | 4.25 | |
| REPUBLIC | CASING | 45 135 PHC GB E | 4-1/2" 13.50# (0.290w) P110-HC R3 GBCD ERW | 13.5 | | US STEEL | REPAIRABLE | EPS-22200-RTN | 5 | 225 | 1.52 | |
| UNITED MID | CASING | 45 135 PIC BC E | 4-1/2" 13.50# (0.290w) P110-IC R3 BTC ERW | 13.5 | | OMK | SCRAP | EPS-21207-RTN | 4 | 170.6 | 1.15 | |
| KB HOU | CASING | 45 135 PICY MIP S | 4-1/2" 13.50# (0.290w) P110-ICY R3 MI PANTHER | 13.5 | SMLS | TENARIS | PRIME | 3130/10315 | -1 | 12.9 | 0.09 | 313 |
| CPS BAYTWN | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | RETURN | PO-4779 | 0 | 190.787 | 1.29 | 400 |
| KB HOU | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | REPAIRABLE | PO-11040 | -1 | 40.1 | 0.27 | 305 |
| STEWART | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | RETURN | EPS-19631-RTN | 9 | 378 | 2.55 | |
| STEWART | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | RETURN | EPS-19671-RTN | 12 | 536 | 3.62 | |
| STEWART | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | RETURN | EPS-20573-RTN | 27 | 1235.94 | 8.34 | 294 |
| STEWART | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | RETURN | EPS-20573-RTN | 9 | 387 | 2.61 | 204 |
| STEWART | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | RETURN | EPS-20953-RTN | 2 | 88.78 | 0.60 | 294 |
| STEWART | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | RETURN | EPS-21242-RTN | 5 | 227.5 | 1.54 | 294 |
| STEWART | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | RETURN | EPS-21344-RTN | 6 | 270 | 1.82 | 294 |
| STEWART | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | RETURN | EPS-21375-RTN | 11 | 499.19 | 3.37 | 294 |
| STEWART | CASING | 45 135 PCY TXBC S | 4-1/2" 13.50# (0.290w) P110-CY R3 TXP BTC SMLS | 13.5 | | TENARIS | RETURN | EPS-22590-RTN | 15 | 669.51 | 4.52 | 234 |
| PRECISION | CASING | 45 135 PRY BC E | 4-1/2" 13.50# (0.290w) P110-RY R3 BTC ERW | 13.5 | | OMK | INSPECTED | EPS-20694-RTN | 1 | 4.54 | 0.03 | |
| UNITED MID | CASING | 45 135 PRY BC E | 4-1/2" 13.50# (0.290w) P110-RY R3 BTC ERW | 13.5 | | OMK | INSPECTED | EPS-20694-RTN | 4 | 181 | 1.22 | |
| WASHITA | CASING | 45 135 PRY BC E | 4-1/2" 13.50# (0.290w) P110-RY R3 BTC ERW | 13.5 | | CENTRIC | PRIME | EPS-20694-RTN | 4 | 175.7 | 1.19 | 432 |
| COM RES CO | LINE PIPE | 4S188 52D FB E | 4-1/2" 8.67# (0.188w) X52 PSL-2 DRL PEB 14-16 | 8.67 | MILS FBE ERW | WHEATLAND | PRIME | 6546/12123 | 82 | 3568.2 | 19.06 | 210 |
| MCIP CORP | LINE PIPE | 4540 52D FA E | 4-1/2" 10.80# (0.237w) X52 PSL-2 DRL PEB BARE ERW | 10.8 | | TTI | SCRAP | PO-8768-REJ | -1 | -0.3 | 0.00 | 210 |
| SAVAGE | LINE PIPE | 4540 52D FA E | 4-1/2" 10.80# (0.237w) X52 PSL-2 DRL PEB 14-16 | 10.8 | MILS FBE + 30 MILS ARO ERW | TEX TUBE | PRIME | 11510/11650 | 59 | 2685.6 | 14.50 | 205 |
| SAVAGE | LINE PIPE | 4540 52D FA E | 4-1/2" 10.80# (0.237w) X52 PSL-2 DRL PEB 14-16 | 10.8 | MILS FBE + 30 MILS ARO ERW | TEX TUBE | PRIME | 12062/12060 | 13 | 593.4 | 3.20 | 205 |
| SAVAGE | LINE PIPE | 4540 52D FA5 E | 4-1/2" 10.80# (0.237w) X52 PSL-2 DRL PEB 14-16 | 10.8 | MILS FBE + 20.3 MILS ARO ER | TEX TUBE | PRIME | PO3477 | 12 | 538 | 2.91 | 659 |
| SAVAGE | LINE PIPE | 4540 52D FB E | 4-1/2" 10.80# (0.237w) X52 PSL-2 DRL PEB 14-16 | 10.8 | MILS FBE ERW | WHEATLAND | PRIME | PO2809 | | | - | 659 |
| IOS HOU | CASING | 5 1795 PCYHP SFW S | 5" 17.95# (0.362w) P110-CY HP R3 TORQ SFW | 17.95 | SMLS | TMK | INSPECTED | EPS-21335-RTN/10771 | 15 | 666.6 | 5.98 | 270 |
| REPUBLIC | CASING | 5 1795 PCYHP SFW S | 5" 17.95# (0.362w) P110-CY HP R3 TORQ SFW | 17.95 | SMLS | TMK | INSPECTED | EPS-21335-RTN | 1 | 40 | 0.36 | 355 |
| OFSI HOU | CASING | 5 1795 PHC UTSF S | 5" 17.95# (0.362w) P110-HC R3 ULTRA SF SMLS | 17.95 | | ILJIN | PRIME | PO2774 | 6 | 250 | 2.24 | 659 |
| STEWART | CASING | 5 18 PICY 625 S | 5" 18.00# (0.362w) P110-ICY R3 TSH 625 SMLS | 18 | | TENARIS | REPAIRABLE | PO-11040 | 2 | 81.5 | 0.73 | 222 |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | iMill | iCondition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEEMAC MID | CASING | 55 20 PCY LC S - EA | 5-1/2" 20.00# (0.361id) P110-CY R3 LTC SMLS | 20 | | TMK | PRIME | PO-6743/8000 | | 3 | 0.03 | 420 |
| PRECISION | CASING | 55 20 PCY MIP S | 5-1/2" 20.00# (0.361id) P110-CY R3 MI PANTHER MS | 20 | SMLS | KOPPEL | INSPECTED | EPS-21353-RTN | 41 | 1789 | 17.89 | 235 |
| PRECISION | CASING | 55 20 PCY MIP S | 5-1/2" 20.00# (0.361id) P110-CY R3 MI PANTHER MS | 20 | SMLS | BENTELER | INSPECTED | EPS-22006-RTN | 13 | 546 | 5.46 | 235 |
| UNITED MID | CASING | 55 20 PCY PE S | 5-1/2" 20.00# (0.361id) P110-CY R3 PE SMLS | 20 | | TMK | PRIME | PO69/126913 | 6 | 243.4 | 2.43 | 236 |
| BEEMAC MID | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | PRIME | EPS-21004-RTN | | | - | |
| IOS MID | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | INSPECTED | EPS-21081-RTN | 28 | 1240.58 | 12.41 | 364 |
| PATRIOT | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | INSPECTED | EPS-21111-RTN | 16 | 782.28 | 7.82 | 386 |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | INSPECTED | EPS-21256-RTN | 13 | 563.69 | 5.64 | 299 |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-21256-RTN | 1 | 31.38 | 0.31 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-21398-RTN | 1 | 29.5 | 0.30 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-21493-RTN | 1 | 32.5 | 0.33 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-21615-RTN | 1 | 34 | 0.34 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-21789-RTN | 1 | 29 | 0.29 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-21803-RTN | 2 | 63.2 | 0.63 | 203 |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-21911-RTN | 1 | 29.6 | 0.30 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-22106-RTN | 1 | 39.7 | 0.40 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-22201-RTN | 1 | 31.06 | 0.31 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-22202-RTN | 1 | 34.6 | 0.35 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | HYUNDAI | SCRAP | | | | - | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-22333-RTN | 1 | 46.8 | 0.47 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-22537-RTN | 1 | 31.8 | 0.32 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-22645-RTN | 10 | 446.5 | 4.47 | 125 |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-22645-RTN | 2 | 77.6 | 0.78 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-22726-RTN | 3 | 53.2 | 0.53 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-22746-RTN | 4 | 88.8 | 0.89 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-22764-RTN | 1 | 32.5 | 0.33 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | PRIME | PO-11217 | 2 | 1880.74 | 18.81 | 81 |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | PRIME | PO-7658 | -15 | 1106.97 | 11.07 | 81 |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | INSPECTED | RTN-17 | 139 | 2309.59 | 23.10 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | RETURN | RTN-18 | 561 | 23577.5 | 235.78 | |
| PRECISION | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | RTN-20 | 3 | 429.66 | 4.30 | |
| UNITED MID | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | PRIME | 20054-21196-RTN | 11 | 474.4 | 4.74 | 117 |
| UNITED MID | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | REPAIRABLE | EPS-21434-RTN | 1 | 43.92 | 0.44 | 325 |
| UNITED MID | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | HYUNDAI | INSPECTED | EPS-22208-RTN | 13 | 585.53 | 5.86 | 96 |
| UNITED MID | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | PRIME | M-14395 | 22 | 951.92 | 9.52 | 117 |
| UNITED MID | CASING | 55 20 PCY TCBHT E | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT ERW | 20 | | BOOMERANG | PRIME | M-14396 | 5 | 217 | 2.17 | 117 |
| PRECISION | CASING | 55 20 PCY TCBHT S | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT SMLS | 20 | | BOOMERANG | INSPECTED | EPS-21521-RTN | 9 | 390.4 | 3.90 | 294 |
| PRECISION | CASING | 55 20 PCY TCBHT S | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT SMLS | 20 | | BOOMERANG | REPAIRABLE | EPS-21521-RTN | 1 | 44.4 | 0.44 | 294 |
| PRECISION | CASING | 55 20 PCY TCBHT S | 5-1/2" 20.00# (0.361id) P110-CY R3 TCBC-HT SMLS | 20 | | BOOMERANG | SCRAP | EPS-21521-RTN | 1 | 17 | 0.17 | |
| DUFFY | CASING | 55 20 PHC BK S | 5-1/2" 20.00# (0.361id) P110-HC R3 BK SMLS | 20 | | BOLY | PRIME | PO-5463 | 3 | 20 | 0.20 | 572 |
| BEEMAC MID | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | BOOMERANG | PRIME | PO-3614 | 1180 | 52263.66 | 522.64 | 256 |
| CAST | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | CENTRIC | PRIME | PO2940 | | | - | 659 |
| CAST | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | CENTRIC | RETURN | PO2940 | | | - | 656 |
| DUFFY | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | BOOMERANG | RETURN | EPS-23319-RTN | 2 | 84 | 0.84 | |
| DUFFY | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | CENTRIC | PRIME | PO-7665 | | | - | 399 |
| DUFFY | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | CENTRIC | PRIME | PO-8028 | | | - | 355 |
| DUFFY | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | CENTRIC | PRIME | PO-8029 | | | - | 314 |
| DUFFY | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | CENTRIC | PRIME | PO-8032 | | 5.9 | 0.06 | 228 |
| LUNDVALL | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | CENTRIC | PRIME | 8825/13975 | 4 | 5 | 0.05 | |
| LUNDVALL | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | BOOMERANG | PRIME | PO-3614 | 44 | 1656.07 | 16.56 | 116 |
| UNITED MID | CASING | 55 20 PHC GB E | 5-1/2" 20.00# (0.361id) P110-HC R3 GBCD ERW | 20 | | BOOMERANG | PRIME | PO-3614 | 7 | 155.35 | 1.55 | 57 |
| BEEMAC MID | CASING | 55 20 PHC MIP S | 5-1/2" 20.00# (0.361id) P110-HC R3 MI PANTHER | 20 | | BENTELER | INSPECTED | EPS-21331-RTN | 4 | 163.79 | 1.64 | 315 |
| ATLAS TUB | CASING | 55 20 PHC MIPM E | 5-1/2" 20.00# (0.361id) P110-HC R3 MI PANTHER MS | 20 | ERW | HYUNDAI | PRIME | 10/09/10953-01 | 2 | 84 | 0.84 | 190 |
| PRECISION | CASING | 55 20 PHC MIPM E | 5-1/2" 20.00# (0.361id) P110-HC R3 MI PANTHER MS | 20 | ERW | HYUNDAI | INSPECTED | EPS-22167-RTN | 16 | 704.12 | 7.04 | 235 |
| PRECISION | CASING | 55 20 PHC MIPM S | 5-1/2" 20.00# (0.361id) P110-HC R3 MI PANTHER MS | 20 | SMLS | BENTELER | INSPECTED | EPS-21331-RTN | 8 | 355.1 | 3.55 | 235 |
| PRECISION | CASING | 55 20 PHC MIPM S | 5-1/2" 20.00# (0.361id) P110-HC R3 MI PANTHER MS | 20 | SMLS | BENTELER | INSPECTED | EPS-21331-RTN | 12 | 531.4 | 5.31 | 235 |
| PRECISION | CASING | 55 20 PHC MIPM S | 5-1/2" 20.00# (0.361id) P110-HC R3 MI PANTHER MS | 20 | SMLS | KOPPEL | INSPECTED | EPS-22006-RTN | 4 | 168 | 1.68 | 235 |
| BEEMAC MID | CASING | 55 20 PHC TCBHT E | 5-1/2" 20.00# (0.361id) P110-HC R3 TCBC-HT ERW | 20 | | BOOMERANG | SCRAP | EPS-20628-RTN | | | - | 393 |
| BOOMERANG | CASING | 55 20 PHC TCBHT E | 5-1/2" 20.00# (0.361id) P110-HC R3 TCBC-HT ERW | 20 | | BOOMERANG | PRIME | PO-4025 | | | - | 602 |
| IOS MID | CASING | 55 20 PHC TCBHT E | 5-1/2" 20.00# (0.361id) P110-HC R3 TCBC-HT ERW | 20 | | BOOMERANG | INSPECTED | EPS-20028-RTN | 1 | 35.39 | 0.35 | 517 |
| IOS MID | CASING | 55 20 PHC TCBHT E | 5-1/2" 20.00# (0.361id) P110-HC R3 TCBC-HT ERW | 20 | | BOOMERANG | PRIME | EPS-20028-RTN | | | - | 638 |
| PRECISION | CASING | 55 20 PHC TCBHT E | 5-1/2" 20.00# (0.361id) P110-HC R3 TCBC-HT ERW | 20 | | HYUNDAI | RETURN | EPS-22208-RTN | 1 | 44.47 | 0.44 | |
| UNITED MID | CASING | 55 20 PHC TCBHT E | 5-1/2" 20.00# (0.361id) P110-HC R3 TCBC-HT ERW | 20 | | BOOMERANG | INSPECTED | EPS-23141-RTN | 13 | 574.7 | 5.75 | 112 |
| PRECISION | CASING | 55 20 PHC UTSF S | 5-1/2" 20.00# (0.361id) P110-HC R3 TCBC-HT SMLS | 20 | | JESCO | RETURN | EPS-23002-RTN | 21 | 879.53 | 8.80 | |
| WASHITA | CASING | 55 20 PHC UTSF S | 5-1/2" 20.00# (0.361id) P110-HC R3 ULTRA SF SMLS | 20 | | US STEEL | SCRAP | QB UNKNOWN | | 44 | 0.44 | |
| BEEMAC MID | CASING | 55 20 TNCY TCBHT E | 5-1/2" 20.00# (0.361id) TN110-CY R3 TCBC-HT ERW | 20 | | TENARIS | INSPECTED | EPS-21192-RTN | 4 | 160.9 | 1.61 | 314 |
| REPUBLIC | CASING | 55 2256 PCYHP SFW S | 5-1/2" 22.56# (0.415id) P110-CY HP R3 TORQ SFW | 22.56 | SMLS | TMK | INSPECTED | EPS-21335-RTN | 8 | 342.38 | 3.96 | 355 |
| REPUBLIC | CASING | 55 2256 PCYHP SFW S | 5-1/2" 22.56# (0.415id) P110-CY HP R3 TORQ SFW | 22.56 | SMLS | TMK | INSPECTED | EPS-21629-RTN | 1 | 32.6 | 0.37 | 355 |
| REPUBLIC | CASING | 55 2256 PCYHP SFW S | 5-1/2" 22.56# (0.415id) P110-CY HP R3 TORQ SFW | 22.56 | SMLS | TMK | INSPECTED | EPS-21629-RTN | 2 | 85.8 | 0.97 | 234 |
| SUPERIOR | CASING | 55 2256 PCYHP SFW S | 5-1/2" 22.56# (0.415id) P110-CY HP R3 TORQ SFW | 22.56 | SMLS | TMK | INSPECTED | EPS-21535-RTN | 1 | 23.02 | 0.26 | 294 |
| TSI JPORT | CASING | 55 23 L GEO S | 5-1/2" 23.00# (0.415id) L80 R3 GEOCONN SMLS | 23 | | VOEST ALPINE | SCRAP | PO3436 | 24 | 942.3 | 10.84 | |
| IOS HOU | CASING | 55 23 PCY BK S | 5-1/2" 23.00# (0.415id) P110-CY R3 BK SMLS | 23 | | REPUBLIC TUBE | RETURN | EPS-19864-RTN | 3 | 124.5 | 1.43 | |
| IOS HOU | CASING | 55 23 PCY BK S | 5-1/2" 23.00# (0.415id) P110-CY R3 BK SMLS | 23 | | REPUBLIC TUBE | PRIME | PO4490 | | 45 | 0.52 | 659 |
| PRECISION | CASING | 55 23 PCY TCBHT S | 5-1/2" 23.00# (0.415id) P110-CY R3 TCBC-HT SMLS | 23 | | TUBOS REUNIDOS | INSPECTED | EPS-23141-RTN | 3 | 132.7 | 1.53 | 124 |
| PRECISION | CASING | 55 23 PCY TCBHT S | 5-1/2" 23.00# (0.415id) P110-CY R3 TCBC-HT SMLS | 23 | | TUBOS REUNIDOS | INSPECTED | EPS-23141-RTN | 1 | 44.3 | 0.51 | 124 |
| PRECISION | CASING | 55 23 PCY TCBHT S | 5-1/2" 23.00# (0.415id) P110-CY R3 TCBC-HT SMLS | 23 | | TUBOS REUNIDOS | INSPECTED | RTN-26 | 1 | | - | |
| HUNTING LA | CASING | 55 23 PCY TLW S | 5-1/2" 23.00# (0.415id) P110-CY R3 TLW SMLS | 23 | | TPCO | INSPECTED | EPS-20012-RTN | | | - | 452 |
| HUNTING LA | CASING | 55 23 PCY TLW S | 5-1/2" 23.00# (0.415id) P110-CY R3 TLW SMLS | 23 | | TPCO | PRIME | EPS-20012-RTN | | | - | 452 |
| REPUBLIC | CASING | 55 23 PCYHP BPN S | 5-1/2" 23.00# (0.415id) P110-CY HP R3 BPN SMLS | 23 | | TMK | PRIME | PO-8584 | 245 | 10960.38 | 126.04 | 195 |
| REPUBLIC | CASING | 55 23 PCYHP BPN S | 5-1/2" 23.00# (0.415id) P110-CY HP R3 BPN SMLS | 23 | | TMK | PRIME | PO-8587 | 245 | 10916.48 | 125.54 | 195 |
| IOS HOU | CASING | 55 23 PEC TCBHT S | 5-1/2" 23.00# (0.415id) P110-EC R3 TCBC-HT SMLS | 23 | | NA | NA | QB UNKNOWN | 1 | 33 | 0.38 | |
| SUPERIOR | CASING | 55 23 PEY TCP S | 5-1/2" 23.00# (0.415id) P110-EY R3 TCPC SMLS | 23 | | TUBOS REUNIDOS | PRIME | EPS UNKNOWN | | | - | 447 |
| SUPERIOR | CASING | 55 23 PEY TCP S | 5-1/2" 23.00# (0.415id) P110-EY R3 TCPC SMLS | 23 | | TUBOS REUNIDOS | PRIME | EPS-20890-RTN | 1 | 42 | 0.48 | 447 |
| WASHITA | CASING | 55 23 PHC CDQ E | 5-1/2" 23.00# (0.415id) P110-HC R3 CDC-HTQ ERW | 23 | | US STEEL | SCRAP | QB UNKNOWN | 6 | 194.45 | 2.24 | |
| BEEMAC MID | CASING | 55 23 PHC TCBHT E | 5-1/2" 23.00# (0.415id) P110-HC R3 TCBC-HT ERW | 23 | | TUBOS REUNIDOS | PRIME | PO-4027 | 52 | 2360.03 | 27.14 | 650 |
| PRECISION | CASING | 55 23 PHC TCBHT E | 5-1/2" 23.00# (0.415id) P110-HC R3 TCBC-HT ERW | 23 | | BOOMERANG | PRIME | PO-5294 | 16 | 691.33 | 7.95 | 561 |
| PRECISION | CASING | 55 23 PHC TCBHT E | 5-1/2" 23.00# (0.415id) P110-HC R3 TCBC-HT ERW | 23 | | BOOMERANG | SCRAP | PO-5720 | 45 | 2019.05 | 23.22 | 598 |
| KB HOU | CASING | 55 23 PHC TCBHT E | 5-1/2" 23.00# (0.415id) P110-HC R3 TCBC-HT ERW | 23 | | TUBOS REUNIDOS | SCRAP | PO-3511 | 1 | 41.79 | 0.48 | |
| PRECISION | CASING | 55 23 PHC TCBHT S | 5-1/2" 23.00# (0.415id) P110-HC R3 TCBC-HT SMLS | 23 | | TUBOS REUNIDOS | INSPECTED | EPS-20657-RTN | 13 | 528.95 | 6.08 | 81 |
| PRECISION | CASING | 55 23 PHC TCBHT S | 5-1/2" 23.00# (0.415id) P110-HC R3 TCBC-HT SMLS | 23 | | TUBOS REUNIDOS | SCRAP | PO-5102 | 1 | 110 | 1.27 | 81 |
| UNITED MID | CASING | 55 23 PHC TCBHT S | 5-1/2" 23.00# (0.415id) P110-HC R3 TCBC-HT SMLS | 23 | | KOPPEL | INSPECTED | EPS-20657-RTN | 3 | 131.1 | 1.51 | 112 |
| IOS HOU | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | PO-8920 | 102 | 4297.538 | 49.42 | 323 |
| CPS BAYTWN | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | PO-9007 | 262 | 12402.14 | 142.62 | 258 |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | REPAIRABLE | EPS-19815-RTN | 38 | 1634 | 18.79 | |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | EPS-19847-RTN | 2 | 86 | 0.99 | |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | EPS-19849-RTN | 9 | 645 | 7.42 | 294 |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | EPS-20218-RTN | 1 | 90.23 | 1.04 | 294 |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | RETURN | EPS-20788-RTN | 7 | 325.35 | 3.74 | 203 |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | EPS-21521-RTN | 1 | 47.8 | 0.55 | |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | RETURN | EPS-22139-RTN | 7 | 301 | 3.46 | |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | EPS-22151-RTN | 3 | 135 | 1.55 | |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | EPS-22348-RTN | 31 | 31.94 | 0.37 | |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | PO3101 | | | - | 659 |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | PO3318 | -19 | | - | 659 |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | PO3319 | | | - | 659 |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | PO3744 | | | - | 649 |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | PO-5034 | | | - | 602 |
| REPUBLIC | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | PO-5049 | | | - | 602 |
| STEWART | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | REPAIRABLE | QB UNKN | | | - | |
| STEWART | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | PRIME | EPS-19814-RTN | | | - | |
| STEWART | CASING | 55 23 PICY BLU S | 5-1/2" 23.00# (0.415id) P110-ICY R3 TSH BLUE SMLS | 23 | | TENARIS | INSPECTED | EPS-22139-RTN | 5 | 225 | 2.59 | 362 |
| IOS HOU | CASING | 55 23 PIY T563 S | 5-1/2" 23.00# (0.415id) P110-IY R3 TSH SMLS | 23 | | TENARIS | PRIME | EPS-19368-RTN | 3 | 47 | 0.54 | |
| IOS HOU | CASING | 55 23 PRY CDQ S | 5-1/2" 23.00# (0.415id) P110-RY R3 CDC-HTQ SMLS | 23 | | US STEEL | SCRAP | QB UNKNOWN | 3 | 33.5 | 0.39 | |
| TUBO SOUTH | CASING | 55 23 PRY CDQ S | 5-1/2" 23.00# (0.415id) P110-RY R3 CDC-HTQ SMLS | 23 | | US STEEL | RETURN | PO-3373 | 2 | 93.5 | 1.08 | 669 |
| COM RES NE | LINE PIPE | 6N188 52D BR E | 6-5/8" 12.94# (0.188wl) X52 PSL-2 DRL PE8 BARE ERW | 12.94 | | WHEATLAND | PRIME | PO-5118 | 40 | 1800 | 11.65 | 628 |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | Mill | Condition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COM RES CO | LINE PIPE | 6N188 S2D FB E | 6-5/8" 12.94# (0.188w) X52 PSL-2 DRL PEB 14-16 | 12.94 | MLS FBE ERW | WHEATLAND | PRIME | 10543/10589 | 28 | 1199 | 7.76 | 252 |
| COM RES CO | LINE PIPE | 6N188 S2D FB E | 6-5/8" 12.94# (0.188w) X52 PSL-2 DRL PEB 14-16 | 12.94 | MLS FBE ERW | WHEATLAND | PRIME | 6124/6293 | 37 | 1665 | 10.77 | 480 |
| COM RES CO | LINE PIPE | 6N188 S2D FB E | 6-5/8" 12.94# (0.188w) X52 PSL-2 DRL PEB 14-16 | 12.94 | MLS FBE ERW | WHEATLAND | PRIME | 6329/6330 | 56 | 2522.6 | 16.32 | 483 |
| COM RES NE | LINE PIPE | 6N188 S2D FB E | 6-5/8" 12.94# (0.188w) X52 PSL-2 DRL PEB 14-16 | 12.94 | MLS FBE ERW | WHEATLAND | PRIME | PO-5118 | 20 | 903 | 5.84 | 568 |
| MCIP CORP | LINE PIPE | 6N250 S2D BR E | 6-5/8" 17.04# (0.250w) X52 PSL-2 DRL PEB BARE ERW | 17.04 | | FORZA | PRIME | PO-11860-REVAL | 1489 | 60571.78 | 516.07 | 132 |
| COM RES NE | LINE PIPE | 6N250 S2D FB E | 6-5/8" 17.04# (0.250w) X52 PSL-2 DRL PEB 14-16 | 17.04 | MLS FBE ERW | TEX TUBE | PRIME | 5162/5165 | 1 | 43.3 | 0.37 | 547 |
| MCIP CORP | LINE PIPE | 6S40 S2D FA E | 6-5/8" 18.99# (0.280w) X52 PSL-2 DRL PEB 14-16 | 18.99 | MLS FBE + 30 MILS ARO ERW | TEX TUBE | PRIME | 11515/11652 | 29 | 1307.9 | 12.42 | 243 |
| COM RES CO | LINE PIPE | 6S40 S2D FB E | 6-5/8" 18.99# (0.280w) X52 PSL-2 DRL PEB 14-16 | 18.99 | MLS FBE ERW | WHEATLAND | PRIME | 6640/7675 | 8 | 360 | 3.42 | 424 |
| MCIP CORP | LINE PIPE | 6S40 S2D FB E | 6-5/8" 18.99# (0.280w) X52 PSL-2 DRL PEB 14-16 | 18.99 | MLS FBE ERW | TEX TUBE | PRIME | 11515/11651 | 29 | 1307.9 | 12.42 | 239 |
| IND PIPE | CASING | 7 2569 J PE E | 7" 25.69# (0.362w) J55 R-3 PE ERW | 25.69 | | TENSION | SCRAP | PO4053 | 1 | 26.6 | 0.34 | |
| DJR RIG | CASING | 7 26 J LC E | 7" 26.00# (0.362w) J55 R3 LTC ERW | 26 | | HLO CLARK | PRIME | 1067810781 | -2 | | - | |
| DJR RIG | CASING | 7 26 J LC E | 7" 26.00# (0.362w) J55 R3 LTC ERW | 26 | | PARAGON | PRIME | PO-6121 | -4 | | - | |
| NOV WELLB | CASING | 7 26 J LC E | 7" 26.00# (0.362w) J55 R3 LTC ERW | 26 | | PARAGON | PRIME | PO-6123 | -3 | | - | |
| DJR RIG | CASING | 7 26 J LC S | 7" 26.00# (0.362w) J55 R3 LTC SMLS | 26 | | ARCELOR MITTAL | RETURN | PO-6403 | -1 | | - | |
| WASHITA | CASING | 7 26 L BC E | 7" 26.00# (0.362w) L80 R3 BTC ERW | 26 | | BESTEEL | INSPECTED | EPS-18832-RTN | 5 | 221.6 | 2.88 | 600 |
| WASHITA | CASING | 7 26 L BC E | 7" 26.00# (0.362w) L80 R3 BTC ERW | 26 | | HUSTEEL | INSPECTED | EPS-18832-RTN | 2 | 88.35 | 1.15 | 600 |
| WASHITA | CASING | 7 26 L BC E | 7" 26.00# (0.362w) L80 R3 BTC ERW | 26 | | HUSTEEL | RETURN | EPS-18832-RTN | 2 | 88.25 | 1.15 | 600 |
| WASHITA | CASING | 7 26 L BC E | 7" 26.00# (0.362w) L80 R3 BTC ERW | 26 | | NEXTEEL | INSPECTED | EPS-18832-RTN | 1 | 41.35 | 0.54 | 600 |
| WASHITA | CASING | 7 26 L BC E | 7" 26.00# (0.362w) L80 R3 BTC ERW | 26 | | TPCO | INSPECTED | EPS-20355-RTN | 13 | 551.05 | 7.16 | 432 |
| WASHITA | CASING | 7 26 L BC E | 7" 26.00# (0.362w) L80 R3 BTC ERW | 26 | | TPCO | PRIME | PO-5832 | 17 | 680.65 | 8.85 | 546 |
| PRECISION | CASING | 7 26 L LC E | 7" 26.00# (0.362w) L80 R3 LTC ERW | 26 | | PARAGON | PRIME | PO-5895 | 9 | 396.7 | 5.16 | |
| PRECISION | CASING | 7 26 L LC E | 7" 26.00# (0.362w) L80 R3 LTC ERW | 26 | | PARAGON | INSPECTED | EPS-22155-RTN | 10 | 441.9 | 5.74 | |
| REPUBLIC | CASING | 7 26 LHC BKHT S | 7" 26.00# (0.362w) L80-HC R3 BK-HT SMLS | 26 | | REPUBLIC TUBE | INSPECTED | EPS-22441-RTN | 225 | 9111.8 | 118.45 | 175 |
| IOS HOU | CASING | 7 26 LHC FM S | 7" 26.00# (0.362w) L80-HC R3 FLUSHMAX SMLS | 26 | | TMK | REPAIRABLE | 3095/5883 | | | - | 539 |
| IOS HOU | CASING | 7 26 LHC FM S | 7" 26.00# (0.362w) L80-HC R3 FLUSHMAX SMLS | 26 | | REPUBLIC TUBE | PRIME | 5853/5883 | | | - | 568 |
| IOS HOU | CASING | 7 26 LHC FM S | 7" 26.00# (0.362w) L80-HC R3 FLUSHMAX SMLS | 26 | | REPUBLIC TUBE | PRIME | 6014/5883 | | | - | 539 |
| NOV WELLB | CASING | 7 26 LHC LC E | 7" 26.00# (0.362w) L80-HC R3 LTC ERW | 26 | | AJU BESTEEL | PRIME | EPS-20133-RTN | 1 | | - | 614 |
| NOV WELLB | CASING | 7 26 LHC LC E | 7" 26.00# (0.362w) L80-HC R3 LTC ERW | 26 | | AJU BESTEEL | RETURN | EPS-20133-RTN | 1 | | - | 628 |
| NOV WELLB | CASING | 7 26 LHC LC E | 7" 26.00# (0.362w) L80-HC R3 LTC ERW | 26 | | AJU BESTEEL | PRIME | PO3462 | 5 | | - | 659 |
| NOV WELLB | CASING | 7 26 LHC LC E | 7" 26.00# (0.362w) L80-HC R3 LTC ERW | 26 | | REPUBLIC TUBE | PRIME | PO-5110 | | | - | 635 |
| IOS HOU | CASING | 7 26 LHC LC S | 7" 26.00# (0.362w) L80 R3 LTC SMLS | 26 | | TMK | REPAIRABLE | PO3095 | | | - | 559 |
| IOS HOU | CASING | 7 26 LHC LC S | 7" 26.00# (0.362w) L80 R3 LTC SMLS | 26 | | REPUBLIC TUBE | PRIME | PO-5853 | | | - | 559 |
| IOS HOU | CASING | 7 26 LHC LC S | 7" 26.00# (0.362w) L80 R3 LTC SMLS | 26 | | REPUBLIC TUBE | PRIME | PO-6014 | | | - | 565 |
| REPUBLIC | CASING | 7 26 LHC LC S | 7" 26.00# (0.362w) L80 R3 LTC SMLS | 26 | | TMK | REPAIRABLE | PO3095 | | | - | 659 |
| REPUBLIC | CASING | 7 26 LHC LC S | 7" 26.00# (0.362w) L80 R3 LTC SMLS | 26 | | REPUBLIC TUBE | PRIME | PO-6853 | | | - | 565 |
| DUFFY | CASING | 7 26 N LC E | 7" 26.00# (0.362w) N80 R3 LTC ERW | 26 | | AJU BESTEEL | PRIME | PO3012 | 13 | 585 | 7.61 | 386 |
| UNITED MID | CASING | 7 26 P BC E | 7" 26.00# (0.362w) P110 R3 BTC ERW | 26 | | NEXTEEL | SCRAP | EPS-20037-RTN/5757 | 2 | 63.2 | 0.82 | 117 |
| UNITED MID | CASING | 7 26 P LC E | 7" 26.00# (0.362w) P110 R3 LTC ERW | 26 | | NEXTEEL | INSPECTED | EPS-20037-RTN | | | - | 568 |
| UNITED MID | CASING | 7 26 P LC E | 7" 26.00# (0.362w) P110 R3 LTC ERW | 26 | | NEXTEEL | INSPECTED | EPS-21189-RTN | 1 | 45.15 | 0.59 | 347 |
| UNITED MID | CASING | 7 26 P LC E | 7" 26.00# (0.362w) P110 R3 LTC ERW | 26 | | NEXTEEL | PRIME | PO-5208 | | | - | 568 |
| PRECISION | CASING | 7 26 PHC BC S | 7" 26.00# (0.362w) P110-HC R3 BTC SMLS | 26 | | VALLOUREC | USED | EPS-22188-RTN | 1 | 43.6 | 0.57 | |
| REPUBLIC | CASING | 7 26 PHC BC S | 7" 26.00# (0.362w) P110-HC R3 BTC SMLS | 26 | | BOLY | USED | EPS-19065-RTN | 1 | 61 | 0.79 | 159 |
| PRECISION | CASING | 7 26 PHC LC S | 7" 26.00# (0.362w) P110-HC R3 LTC SMLS | 26 | | VALLOUREC | INSPECTED | EPS-22196-RTN | 3 | 101.62 | 1.32 | |
| REPUBLIC | CASING | 7 26 PHC LC S | 7" 26.00# (0.362w) P110-HC R3 LTC SMLS | 26 | | VALLOUREC | REPAIRABLE | EPS-22199-RTN | 4 | 180 | 2.34 | |
| TSI BEAR | CASING | 7 26 PHC LC S | 7" 26.00# (0.362w) P110-HC R3 LTC SMLS | 26 | | VALLOUREC | INSPECTED | EPS-21962-RTN | 8 | 344 | 4.47 | 263 |
| TSI BEAR | CASING | 7 26 PHC LC S | 7" 26.00# (0.362w) P110-HC R3 LTC SMLS | 26 | | VALLOUREC | INSPECTED | EPS-22081-RTN | 1 | 42 | 0.55 | 173 |
| BEEMAC MID | CASING | 7 29 PHC BC E | 7" 29.00# (0.408w) P110-HC R3 BTC ERW | 29 | | BORUSAN | RETURN | QB UNK | 23 | 943 | 13.67 | |
| REPUBLIC | CASING | 7 29 PHC LC S | 7" 29.00# (0.408w) P110-HC R3 LTC SMLS | 29 | | REPUBLIC TUBE | PRIME | PO-5450 | 165 | 6963 | 100.96 | 569 |
| WASHITA | CASING | 7 29 PHC LC S | 7" 29.00# (0.408w) P110-HC R3 LTC SMLS | 29 | | REPUBLIC TUBE | INSPECTED | EPS-20539-RTN | 1 | 44.1 | 0.64 | 449 |
| WASHITA | CASING | 7 29 PHC LC S | 7" 29.00# (0.408w) P110-HC R3 LTC SMLS | 29 | | REPUBLIC TUBE | RETURN | EPS-20539-RTN | 1 | 43.5 | 0.63 | 449 |
| WASHITA | CASING | 7 29 PHC LC S | 7" 29.00# (0.408w) P110-HC R3 LTC SMLS | 29 | | REPUBLIC TUBE | RETURN | EPS-20579-RTN | 1 | 41.11 | 0.60 | 449 |
| WASHITA | CASING | 7 29 PHC LC S | 7" 29.00# (0.408w) P110-HC R3 LTC SMLS | 29 | | REPUBLIC TUBE | PRIME | PO-5450 | 44 | 1725.15 | 25.01 | 567 |
| PATRIOT | CASING | 7 317 PCY PE S | 7" 31.70# (0.453w) P110-CY R3 PE SMLS | 31.7 | | EVRAZ | PRIME | PO-11548 | 355 | 14567.81 | 230.90 | 203 |
| BEEMAC MID | CASING | 7 32 PCY BKHT S | 7" 32.00# (0.453w) P110-CY R3 BK-HT SMLS | 32 | | REPUBLIC TUBE | INSPECTED | EPS-21487-RTN | 9 | 369 | 5.90 | |
| BEEMAC MID | CASING | 7 32 PCY BKHT S | 7" 32.00# (0.453w) P110-CY R3 BK-HT SMLS | 32 | | REPUBLIC TUBE | PRIME | PO-7914 | 19 | 755.9 | 12.09 | 386 |
| PATRIOT | CASING | 7 32 PCY BKHT S | 7" 32.00# (0.453w) P110-CY R3 BK-HT SMLS | 32 | | EVRAZ | PRIME | 11548/12188 | 93 | 3952.5 | 63.24 | 188 |
| PRECISION | CASING | 7 32 PCY BKHT S | 7" 32.00# (0.453w) P110-CY R3 BKHT SMLS | 32 | | EVRAZ | INSPECTED | EPS-22660-RTN | 17 | 714 | 11.42 | |
| PRECISION | CASING | 7 32 PCY BKHT S | 7" 32.00# (0.453w) P110-CY R3 BKHT SMLS | 32 | | EVRAZ | INSPECTED | EPS-22664-RTN | 5 | 210 | 3.36 | |
| PRECISION | CASING | 7 32 PCY BKHT S | 7" 32.00# (0.453w) P110-CY R3 BKHT SMLS | 32 | | EVRAZ | INSPECTED | EPS-22801-RTN | 34 | 1428 | 22.85 | |
| PRECISION | CASING | 7 32 PCY BKHT S | 7" 32.00# (0.453w) P110-CY R3 BKHT SMLS | 32 | | EVRAZ | INSPECTED | EPS-22819-RTN | 5 | 210 | 3.36 | |
| SUPERIOR | CASING | 7 32 PCY BKHT S | 7" 32.00# (0.453w) P110-CY R3 BK-HT SMLS | 32 | | REPUBLIC TUBE | PRIME | PO-7914 | 1 | 38.4 | 0.61 | 386 |
| BEEMAC MID | CASING | 7 32 PCY DQX S | 7" 32.00# (0.454w) P110-CY R3 DQX SMLS | 32 | | TMK | INSPECTED | EPS-22688-RTN | 5 | 38 | 0.61 | |
| BEEMAC MID | CASING | 7 32 PCY DQX S | 7" 32.00# (0.454w) P110-CY R3 DQX SMLS | 32 | | TMK | RETURN | EPS-21134-RTN | 7 | 207.33 | 3.32 | |
| BEEMAC MID | CASING | 7 32 PCY DQX S | 7" 32.00# (0.454w) P110-CY R3 DQX SMLS | 32 | | TMK | RETURN | EPS-21173-RTN | 1 | 65.12 | 1.04 | |
| OFSI ODSSA | CASING | 7 32 PCY DQX S | 7" 32.00# (0.454w) P110-CY R3 DQX SMLS | 32 | | TMK | PRIME | PO-6909 | | 180.11 | 2.88 | 478 |
| PRECISION | CASING | 7 32 PCY DQX S | 7" 32.00# (0.454w) P110-CY R3 DQX SMLS | 32 | | TMK | INSPECTED | EPS-21721-RTN | 3 | | - | |
| PRECISION | CASING | 7 32 PCY DQX S | 7" 32.00# (0.454w) P110-CY R3 DQX SMLS | 32 | | TMK | PRIME | PO-7977 | 12 | 626.62 | 10.03 | 46 |
| UNITED MID | CASING | 7 32 PCY DQX S | 7" 32.00# (0.454w) P110-CY R3 DQX SMLS | 32 | | TMK | REPAIRABLE | PO-6909/7974 | 6 | 241.4 | 3.86 | 112 |
| KB HOU | CASING | 7 32 PCY PE S | 7" 32.00# (0.453w) P110-CY R3 PE SMLS | 32 | | TMK | PRIME | PO-7993 | 2 | 76.46 | 1.26 | 419 |
| UNITED MID | CASING | 7 32 PCY PE S | 7" 32.00# (0.453w) P110-CY R3 PE SMLS | 32 | | TMK | PRIME | PO-6909 | 1 | 8.2 | 0.13 | 236 |
| BEEMAC MID | CASING | 7 32 PHC BC E | 7" 32.00# (0.453w) P110-HC R3 BTC ERW | 32 | | BOOMERANG | INSPECTED | EPS-20036-RTN | 2 | 88.34 | 1.41 | 284 |
| BEEMAC MID | CASING | 7 32 PHC BC E | 7" 32.00# (0.453w) P110-HC R3 BTC ERW | 32 | | BOOMERANG | INSPECTED | EPS-20036-RTN | 6 | 265.34 | 4.25 | 284 |
| BEEMAC MID | CASING | 7 32 PHC BC E | 7" 32.00# (0.453w) P110-HC R3 BTC ERW | 32 | | BOOMERANG | INSPECTED | EPS-20077-RTN | 3 | 132.4 | 2.12 | 328 |
| BEEMAC MID | CASING | 7 32 PHC BC E | 7" 32.00# (0.453w) P110-HC R3 BTC ERW | 32 | | BOOMERANG | INSPECTED | EPS-20077-RTN | 10 | 400.23 | 6.40 | 328 |
| BEEMAC MID | CASING | 7 32 PHC BC E | 7" 32.00# (0.453w) P110-HC R3 BTC ERW | 32 | | BOOMERANG | PRIME | PO-4024 | 69 | 2933.64 | 46.94 | 642 |
| BEEMAC MID | CASING | 7 32 PHC BC E | 7" 32.00# (0.453w) P110-HC R3 BTC ERW | 32 | | BOOMERANG | PRIME | PO-5082 | 85 | 3718.94 | 59.50 | 615 |
| BEEMAC MID | CASING | 7 32 PHC BC E | 7" 32.00# (0.453w) P110-HC R3 BTC ERW | 32 | | BOOMERANG | PRIME | PO-5293 | 362 | 15983.03 | 255.73 | 579 |
| BEEMAC MID | CASING | 7 32 PHC BC E | 7" 32.00# (0.453w) P110-HC R3 BTC ERW | 32 | | BOOMERANG | PRIME | PO-5712 | 380 | 16206.9 | 259.31 | 508 |
| AXIS PIPE | CASING | 758 297 LHC BC E | 7-5/8" 29.70# (0.375w) L80-HC R3 BTC ERW | 29.7 | | AXIS | PRIME | PO10391 | | | - | 294 |
| PRECISION | CASING | 758 297 LHC BC E | 7-5/8" 29.70# (0.375w) L80-HC R3 BTC ERW | 29.7 | | AXIS | INSPECTED | EPS-21919-RTN | 1 | 50.5 | 0.75 | 302 |
| PRECISION | CASING | 758 297 LHC BC E | 7-5/8" 29.70# (0.375w) L80-HC R3 BTC ERW | 29.7 | | HYUNDAI | INSPECTED | EPS-21977-RTN | 11 | 471.9 | 7.01 | 263 |
| PRECISION | CASING | 758 297 LHC BC E | 7-5/8" 29.70# (0.375w) L80-HC R3 BTC ERW | 29.7 | | AXIS | REPAIRABLE | EPS-21977-RTN | 3 | 128.9 | 1.91 | 263 |
| PRECISION | CASING | 758 297 LHC BC E | 7-5/8" 29.70# (0.375w) L80-HC R3 BTC ERW | 29.7 | | AXIS | INSPECTED | EPS-21978-RTN | 4 | 179.2 | 2.66 | 181 |
| PRECISION | CASING | 758 297 LHC BC E | 7-5/8" 29.70# (0.375w) L80-HC R3 BTC ERW | 29.7 | | HYUNDAI | INSPECTED | EPS-21979-RTN | 7 | 313.6 | 4.66 | 181 |
| PRECISION | CASING | 758 297 LHC BC E | 7-5/8" 29.70# (0.375w) L80-HC R3 BTC ERW | 29.7 | | HYUNDAI | INSPECTED | EPS-21979-RTN | 11 | 492.6 | 7.32 | 216 |
| PRECISION | CASING | 758 297 LHC BC E | 7-5/8" 29.70# (0.375w) L80-HC R3 BTC ERW | 29.7 | | HYUNDAI | INSPECTED | EPS-22422-RTN | 8 | 341.4 | 5.07 | 146 |
| PRECISION | CASING | 758 297 LHC BC E | 7-5/8" 29.70# (0.375w) L80-HC R3 BTC ERW | 29.7 | | HYUNDAI | INSPECTED | EPS-22586-RTN | 2 | 89.2 | 1.32 | 173 |
| PRECISION | CASING | 758 297 LHC BC E | 7-5/8" 29.70# (0.375w) L80-HC R3 BTC ERW | 29.7 | | HYUNDAI | REPAIRABLE | EPS-22696-RTN | 10 | 430.9 | 6.40 | 173 |
| REPUBLIC | CASING | 758 297 PHC BC E | 7-5/8" 29.70# (0.375w) P110-HC R3 BTC ERW | 29.7 | | HYUNDAI | PRIME | PO-10393 | 12 | 534.103 | 7.93 | 263 |
| REPUBLIC | CASING | 758 297 PHC BC E | 7-5/8" 29.70# (0.375w) P110-HC R3 BTC ERW | 29.7 | | HYUNDAI | USED | EPS-19432-RTN | 2 | 86 | 1.28 | 159 |
| REPUBLIC | CASING | 758 297 PHC BC E | 7-5/8" 29.70# (0.375w) P110-HC R3 BTC ERW | 29.7 | | NEXTEEL | REPAIRABLE | EPT-2630 | 6 | 273.1 | 4.06 | 389 |
| REPUBLIC | CASING | 758 297 PHC BC E | 7-5/8" 29.70# (0.375w) P110-HC R3 BTC ERW | 29.7 | | NEXTEEL | PRIME | PO2333 | 10 | 446.65 | 6.63 | 392 |
| REPUBLIC | CASING | 758 297 PHC BC E | 7-5/8" 29.70# (0.375w) P110-HC R3 BTC ERW | 29.7 | | NEXTEEL | PRIME | PO2370 | 5 | 228.42 | 3.39 | 392 |
| PRECISION | CASING | 758 297 PHC GBCD E | 7-5/8" 29.70# (0.375w) P110-HC R3 GBCD ERW | 29.7 | | SEAH | REPAIRABLE | EPS-22063-RTN | 7 | 294 | 4.37 | |
| PRECISION | CASING | 758 297 PHC GBCD E | 7-5/8" 29.70# (0.375w) P110-HC R3 GBCD ERW | 29.7 | | SEAH | REPAIRABLE | EPS-22063-RTN | 2 | 84 | 1.25 | |
| BEEMAC MID | CASING | 758 297 PHC LC S | 7-5/8" 29.70# (0.375w) P110-HC R3 LTC SMLS | 29.7 | | BOLY | RETURN | EPS-21839-RTN | 1 | | - | |
| BEEMAC MID | CASING | 758 297 PHC LC S | 7-5/8" 29.70# (0.375w) P110-HC R3 LTC SMLS | 29.7 | | BOLY | RETURN | EPS-21839-001 | 1 | 29.7 | 0.44 | 325 |
| CPS BAYTWN | CASING | 758 297 PHC BC S | 7-5/8" 29.70# (0.375w) P110-HC R3 BTC SMLS | 29.7 | | TENARIS | PRIME | PO-11229 | 203 | 9164.814 | 136.10 | 224 |
| DROP SHIP | CASING | 758 297 PHC BC S | 7-5/8" 29.70# (0.375w) P110-HC R3 BTC SMLS | 29.7 | | TENARIS | PRIME | PO-10225 | | | - | 263 |
| REPUBLIC | CASING | 758 297 PHC BC S | 7-5/8" 29.70# (0.375w) P110-HC R3 BTC SMLS | 29.7 | | TENARIS | INSPECTED | EPS-22295-RTN | 7 | 311.76 | 4.63 | |
| REPUBLIC | CASING | 758 297 PHC BC S | 7-5/8" 29.70# (0.375w) P110-HC R3 BTC SMLS | 29.7 | | TENARIS | PRIME | PO3127 | | | - | 659 |
| REPUBLIC | CASING | 758 297 PHC BC S | 7-5/8" 29.70# (0.375w) P110-HC R3 BTC SMLS | 29.7 | | TENARIS | PRIME | PO-6543 | | | - | 599 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | HALL LONGWOOD | INSPECTED | EPS-19758-RTN | 5 | 209.9 | 2.52 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | HALL LONGWOOD | INSPECTED | EPS-20055-RTN | 2 | 89.2 | 1.07 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | SHIN YANG | INSPECTED | PO-2039 | 2 | 83.4 | 1.00 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | TENSION | SCRAP | PO-2039 | 1 | 41.2 | 0.49 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | TUPER | INSPECTED | PO-2348 | 4 | 164 | 1.97 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | TUPER | PRIME | PO-2349 | 7 | 295.6 | 3.55 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | TENARIS | PRIME | PO-2686 | 9 | 89.2 | 1.07 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | HLD CLARK | RETURN | PO-2686 | 3 | 654.1 | 7.85 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | TENARIS | PRIME | PO-2686 | 1 | 41.4 | 0.50 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | HLD CLARK | INSPECTED | PO-2686 | 3 | 126.6 | 1.52 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | HLD CLARK | INSPECTED | PO-2686 | 1 | 42.4 | 0.51 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | NEXTEEL | RETURN | PO-2686 | 6 | 253 | 3.04 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | HLD CLARK | PRIME | QB UNK | 3 | 126.6 | 1.52 | 159 |
| MM WELDING | CASING | 858 24 J SC E | 8-5/8" 24.00# (0.264w) J55 R3 STC ERW | 24 | | NEXTEEL | RETURN | QB UNK | 1 | 42.6 | 0.51 | 159 |
| BEEMAC MID | CASING | 858 32 J BC E | 8-5/8" 32.00# (0.352w) J55 R3 BTC ERW | 32 | | NEXTEEL | SCRAP | EPS-19511-RTN | 1 | 45.15 | 0.72 | |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | iMill | iCondition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELFARM MID | CASING | 858 32 J BC E | 8-5/8" 32.00# (0.352wt) J55 R3 BTC ERW | 32 | | NEXTEEL | SCRAP | EPT-2543 | 1 | 45.15 | 0.72 | 386 |
| ELFARM MID | CASING | 858 32 J BC E | 8-5/8" 32.00# (0.352wt) J55 R3 BTC ERW | 32 | | NEXTEEL | SCRAP | QB UNK | 3 | 136.68 | 2.19 | |
| IND PIPE | CASING | 858 32 J BC E | 8-5/8" 32.00# (0.352wt) J55 R3 BTC ERW | 32 | | BAKRIE | SCRAP | PO3225 | 5 | 204.95 | 3.28 | |
| UNITED MID | CASING | 858 32 LHC BC E | 8-5/8" 32.00# (0.352wt) L80-HC R3 BTC ERW | 32 | | NEXTEEL | PRIME | EPS-19624-RTN/12770 | 1 | 33.7 | 0.54 | 187 |
| UNITED MID | CASING | 858 32 LHC BC E | 8-5/8" 32.00# (0.352wt) L80-HC R3 BTC ERW | 32 | | NA | USED | EPS-19624-RTN-02 | 1 | 31.3 | 0.50 | 117 |
| ELFARM MID | CASING | 858 32 LHC BC E | 8-5/8" 32.00# (0.352wt) L80-HC R3 BTC ERW | 32 | | BOOMERANG | SCRAP | EPS-22288-RTN | 13 | 546 | 8.74 | |
| ELFARM MID | CASING | 858 32 LHC BC E | 8-5/8" 32.00# (0.352wt) L80-HC R3 BTC SMLS | 32 | | TENARIS | USED | EPS-19625-RTN | 1 | 41.6 | 0.67 | 117 |
| ELFARM MID | CASING | 858 32 NX8 BC E | 8-5/8" 32.00# (0.352wt) NEXT-80 R3 BTC ERW | 32 | | NEXTEEL | SCRAP | PO2764 | 1 | 45.66 | 0.73 | |
| ELFARM MID | CASING | 858 32 NX8 BC E | 8-5/8" 32.00# (0.352wt) NEXT-80 R3 BTC ERW | 32 | | NEXTEEL | SCRAP | QB UNK | 1 | 45.71 | 0.73 | 659 |
| ELFARM RET | CASING | 858 32 NX8 BC E | 8-5/8" 32.00# (0.352wt) NEXT-80 R3 BTC ERW | 32 | | NA | REPAIRABLE | QB UNK | 1 | 45.38 | 0.73 | |
| BLKHLS EVN | LINE PIPE | 8N188 52D FB E | 8-5/8" 16.96# (0.188wt) X52 PSL-2 DRL PEB 14-16 | 16.96 | MLS FBE ERW | TEX TUBE | PRIME | PO-5364 | 116 | 5200 | 44.10 | 582 |
| BLKHLS EVN | LINE PIPE | 8N188 52D FB E | 8-5/8" 16.96# (0.188wt) X52 PSL-2 DRL PEB 14-16 | 16.96 | MLS FBE ERW | TEX TUBE | PRIME | PO-5634 | | 20 | 0.17 | 582 |
| COM RES NE | LINE PIPE | 8N188 52D FB E | 8-5/8" 16.96# (0.188wt) X52 PSL-2 DRL PEB 14-16 | 16.96 | MLS FBE ERW | TEX TUBE | PRIME | 5119/5125 | 274 | 11555.1 | 97.99 | 568 |
| MCIP CORP | LINE PIPE | 8N219 52D FB E | 8-5/8" 19.68# (0.219wt) X52 PSL-2 DRL PEB 14-16 | 16.96 | MLS FBE ERW | PYTCO | PRIME | 5842/6738 | 351 | 14849.06 | 125.92 | 433 |
| SHAWCOR | LINE PIPE | 8S20 52D BR E | 8-5/8" 22.38# (0.352wt) J55 DRL PEB ERW | 22.38 | BARE | AXIS | PRIME | PO3096 | 8 | 401.442 | 4.49 | |
| SHAWCOR | LINE PIPE | 8S20 52D FB E | 8-5/8" 22.38# (0.352wt) J55 DRL PEB ERW | 22.38 | 14-16 MILS FBE | AXIS | SCRAP | PO3114 | 12 | 298.9 | 3.34 | |
| WOMBLE | LINE PIPE | 8S20 52D FB E | 8-5/8" 22.38# (0.352wt) X52 PSL-2 DRL PEB ERW | 22.38 | 14-16 MILS FBE | SEAH | REJECT | EPS-22435-RTN | 1 | 42.1 | 0.47 | 113 |
| COM RES NE | LINE PIPE | 8S40 52D BR E | 8-5/8" 28.58# (0.322wt) X52 PSL-2 DRL PEB BARE ERW | 28.58 | | TENARIS | PRIME | PO3582 | 14 | 540.99 | 7.73 | |
| ELFARM MID | CASING | 8S40 52D BR E | 8-5/8" 28.58# (0.322wt) X52 PSL-2 DRL PEB BARE ERW | 28.58 | | FORZA | PRIME | PO-6063 | 44 | 1793.04 | 25.62 | 538 |
| MCIP CORP | LINE PIPE | 8S40 52D FA E | 8-5/8" 28.58# (0.322wt) X52 PSL-2 DRL PEB 14-16 | 28.58 | MLS FBE + 30 MILS ARO ERW | TEX TUBE | PRIME | 11272/11653 | 3 | 155.1 | 2.22 | 242 |
| MCIP CORP | LINE PIPE | 8S40 52D FA E | 8-5/8" 28.58# (0.322wt) X52 PSL-2 DRL PEB 14-16 | 28.58 | MLS FBE + 30 MILS ARO ERW | FORZA | PRIME | PO-5844/6094 | 11 | 450.2 | 6.43 | 539 |
| MCIP CORP | LINE PIPE | 8S40 52D FB E | 8-5/8" 28.58# (0.322wt) X52 PSL-2 DRL PEB 14-16 | 28.58 | MLS FBE ERW | TEX TUBE | PRIME | 11272/11654 | 43 | 1939.3 | 27.71 | 242 |
| REPUBLIC | CASING | 958 3489 J PE E | 9-5/8" 34.89# (0.352wt) J55 R3 PE ERW | 34.89 | | HLD CLARK | PRIME | PO-11168 | 1 | 42 | 0.73 | 126 |
| CAST | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | CENTRIC | PRIME | QB UNK | | | - | 659 |
| CAST | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | CENTRIC | PRIME | QB UNK | | | - | 656 |
| CAST | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | CENTRIC | USED | QB UNK | | | - | 656 |
| DROP SHIP | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | SHIN YANG | RETURN | EPS-22025-RTN | 3 | 127.4 | 2.29 | 50 |
| DUFFY | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | HLD CLARK | RETURN | EPS-23277-RTN | 23 | 966 | 17.39 | 70 |
| DUFFY | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | TENSION | PRIME | PO-10544 | | | - | 279 |
| DUFFY | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | HLD CLARK | PRIME | PO-14197 | 236 | 10082.17 | 181.48 | 4 |
| IN TRANSIT | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | BOOMERANG | RETURN | EPS-21581-RTN | 1 | | - | |
| IN TRANSIT | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | SHIN YANG | PRIME | PO-11644 | -2 | | - | |
| LUNDVALL | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | TENSION | PRIME | 11152/12155 | -9 | | - | |
| LUNDVALL | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | TENSION | REPAIRABLE | EPS-22956-RTN | 1 | 41.8 | 0.75 | 174 |
| LUNDVALL | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | SHIN YANG | PRIME | PO-11644 | 15 | | - | |
| MM WELDING | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | CH STEEL | PRIME | PO3795 | -11 | -455.42 | (8.20) | 649 |
| MM WELDING | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | HLD CLARK | PRIME | PO3795 | 10 | 455.42 | 8.20 | 659 |
| MM WELDING | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | PARAGON | PRIME | PO-4019 | -3 | | - | |
| MM WELDING | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | PARAGON | PRIME | PO-4019-1 | 2 | 86 | 1.55 | 263 |
| MM WELDING | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | PARAGON | REJECT | PO-4019-2 | 5 | 217.4 | 3.91 | 263 |
| NOV WELLB | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | SHIN YANG | RETURN | EPS-21643-RTN | 1 | | - | |
| NOV WELLB | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | BOOMERANG | PRIME | PO3311 | -123 | | - | |
| NOV WELLB | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | AXIS | PRIME | PO3463 | -94 | | - | 659 |
| NOV WELLB | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | AXIS | PRIME | PO3463 | | | - | 650 |
| REPUBLIC | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | HLD CLARK | PRIME | PO-14139 | 85 | 3610 | 64.98 | 39 |
| REPUBLIC | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | TUPER | PRIME | PO-14139 | 37 | 1118.65 | 20.14 | 39 |
| SPLENDORA | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | TENSION | PRIME | PO-14186 | 324 | 13777.531 | 248.00 | 25 |
| SPLENDORA | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | TENSION | PRIME | PO-14197 | 299 | 12707.5 | 228.74 | 4 |
| TRANSIT | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | CH STEEL | PRIME | PO3795 | | | - | 659 |
| TRANSIT | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | HLD CLARK | PRIME | PO3795 | | | - | 643 |
| TRANSIT | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | CH STEEL | PRIME | QB UNK | | | - | 643 |
| TRANSIT | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | HLD CLARK | PRIME | QB UNK | | | - | 643 |
| TRK ENTRPR | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | HLD CLARK | PRIME | 11168/13810 | 25 | 1063.72 | 19.15 | 5 |
| TRK ENTRPR | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | HLD CLARK | RETURN | EPS-23271-RTN | 5 | 210 | 3.78 | 5 |
| TRK ENTRPR | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | TENSION | PRIME | PO-6075 | | | - | 208 |
| TSI BEAR | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | TENSION | INSPECTED | EPS-22027-RTN | 1 | 41.96 | 0.76 | 173 |
| TSI JPORT | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | HLD CLARK | PRIME | PO-14197 | 30 | 1284 | 23.11 | 4 |
| WASHITA | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | SHIN YANG | INSPECTED | EPS-19780-RTN | 1 | | - | 620 |
| WASHITA | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | SHIN YANG | RETURN | EPS-19780-RTN | 1 | | - | 628 |
| WASHITA | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | SHIN YANG | PRIME | EPS-19781-RTN | 1 | | - | 628 |
| WASHITA | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | SHIN YANG | INSPECTED | EPS-19800-RTN | 1 | | - | 620 |
| WASHITA | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | SHIN YANG | PRIME | EPS-19800-RTN | 1 | | - | 628 |
| WASHITA | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | PARAGON | SCRAP | EPS-20526-RTN | 1 | 24.85 | 0.45 | |
| WASHITA | CASING | 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | 36 | | SHIN YANG | PRIME | PO3099 | | | - | 659 |
| LUNDVALL | CASING | 958 36 J LC S | 9-5/8" 36.00# (0.352wt) J55 R3 LTC SMLS | 36 | | JESCO | RETURN | EPS-22964-RTN | 20 | 853.35 | 15.36 | 91 |
| MM WELDING | CASING | 958 36 J LC S | 9-5/8" 36.00# (0.352wt) J55 R3 LTC SMLS | 36 | | TENARIS | RETURN | QB UNK | | | - | 659 |
| DJR RIG | CASING | 958 36 J R2 SC E | 9-5/8" 36.00# (0.352wt) J55 R2 STC ERW | 36 | | PARAGON | PRIME | PO-6377 | 1 | | - | |
| NOV WELLB | CASING | 958 36 J R2 SC E | 9-5/8" 36.00# (0.352wt) J55 R2 STC ERW | 36 | | PARAGON | PRIME | PO-6377 | -3 | | - | |
| DUFFY | CASING | 958 36 J SC E | 9-5/8" 36.00# (0.352wt) J55 R3 STC ERW | 36 | | SHIN YANG | RETURN | EPS-21333-RTN | 2 | 76.8 | 1.38 | 50 |
| DUFFY | CASING | 958 36 J SC E | 9-5/8" 36.00# (0.352wt) J55 R3 STC ERW | 36 | | SHIN YANG | SCRAP | EPS-21333-RTN | 1 | 30 | 0.54 | |
| BISON RIG | CASING | 958 36 K LC S | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | 36 | | RUSTAVI | PRIME | PO-5328 | | | - | 299 |
| DUFFY | CASING | 958 36 K LC E | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | 36 | | RUSTAVI | PRIME | EPS-21860-RTN | 1 | 43 | 0.77 | 250 |
| NOV WELLB | CASING | 958 36 K LC S | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | 36 | | RUSTAVI | RETURN | PO-5325/5327/5328 | 9 | 353 | 6.35 | 263 |
| NOV WELLB | CASING | 958 36 K LC S | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | 36 | | RUSTAVI | PRIME | PO-5327 | 4 | | - | |
| PINNACLE | CASING | 958 36 K LC S | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | 36 | | RUSTAVI | PRIME | PO-5328 | 2 | | - | |
| TECH INDST | CASING | 958 36 K LC S | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | 36 | | RUSTAVI | PRIME | PO-5328 | -4 | | - | |
| WASHITA | CASING | 958 36 K LC S | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | 36 | | RUSTAVI | SCRAP | EPS-20417-RTN | 1 | 32.4 | 0.58 | 449 |
| WASHITA | CASING | 958 36 K LC S | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | 36 | | REPAIRABLE TUBE | INSPECTED | EPS-20417-RTN | 3 | 109.15 | 1.96 | 449 |
| WASHITA | CASING | 958 36 K LC S | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | 36 | | RUSTAVI | SCRAP | PO-5327 | 1 | 30.175 | 0.54 | 449 |
| TECH INDST | CASING | 958 3897 K PE S | 9-5/8" 38.97# (0.395wt) K55 R3 PE SMLS | 38.97 | | RUSTAVI | PRIME | PO-5325 | 206 | 8735 | 170.20 | 531 |
| ATLAS TUB | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-10508 | -29 | | - | |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | TENSION | INSPECTED | EPS-19429-RTN | 1 | 41.88 | 0.84 | 510 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | TENSION | INSPECTED | EPS-19649-RTN | 1 | | - | 510 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | TENSION | REPAIRABLE | EPS-19686-RTN | 1 | | - | 510 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | SHIN YANG | INSPECTED | EPS-20081-RTN | 2 | 85.16 | 1.70 | 508 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-20060-RTN | 1 | 19.6 | 0.39 | |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-20124-RTN | 1 | 19.8 | 0.40 | 386 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-20124-RTN | 6 | 246 | 4.92 | |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20124-RTN | 1 | 32.5 | 0.66 | |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-20221-RTN | | | - | 581 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21415-RTN | 2 | 86.69 | 1.73 | 273 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21415-RTN | 1 | 43.32 | 0.87 | |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-21681-RTN | 3 | 129.65 | 2.59 | 294 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-11216 | -4 | | - | |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-4022 | | | - | 650 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | SCRAP | PO-5099 | | | - | 628 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | SHIN YANG | SCRAP | QB UNK | -7 | -304.23 | (6.08) | 659 |
| BEEMAC MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | TENSION | RETURN | QB UNK | 7 | 304.23 | 6.08 | 659 |
| ELFARM MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | CH STEEL | INSPECTED | EPS-19280-RTN | 5 | 213.6 | 4.27 | 627 |
| ELFARM MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | SCRAP | PO2653 | 1 | 42.3 | 0.85 | |
| ELFARM MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | NEXTEEL | SCRAP | PO2804 | 3 | 132.41 | 2.65 | |
| ELFARM MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | HALL LONGMORE | SCRAP | PO2919 | 4 | 215.5 | 4.31 | 659 |
| ELFARM MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | CH STEEL | PRIME | PO2920 | | | - | 649 |
| ELFARM MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO3164 | | | - | 659 |
| ELFARM RET | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | NA | REPAIRABLE | QB UNK | 2 | 84.81 | 1.70 | |
| IOS HOU | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | HLD CLARK | RETURN | EPS-19788-RTN | 2 | 83 | 1.66 | 655 |
| MCCLATCHY | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-9464 | 2 | 94.97 | 1.90 | 368 |
| PRECISION | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-19696-RTN | 1 | 42.44 | 0.85 | |
| PRECISION | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20034-RTN | 1 | 22 | 0.44 | 406 |
| PRECISION | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-20034-RTN | -1 | -22 | (0.44) | |
| PRECISION | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21813-RTN | 1 | 29.87 | 0.60 | |
| PRECISION | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | SCRAP | RTN-21-21 | 48 | 1801.43 | 36.03 | |
| REPUBLIC | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | CH STEEL | RETURN | EPS-22440-RTN | 2 | 59.19 | 1.18 | 100 |
| REPUBLIC | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | SHIN YANG | PRIME | PO2915 | 3 | 125 | 2.50 | |
| UNITED MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | PRIME | 21586-RTN/13088 | 25 | 1073.48 | 21.47 | 119 |
| UNITED MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | EVRAZ | PRIME | EPS-19424-RTN | 4 | 170.08 | 3.40 | 119 |
| UNITED MID | CASING | 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | 40 | | BOOMERANG | USED | EPS-21522-RTN | 2 | 91.1 | 1.82 | 119 |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | iMill | iCondition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TECH INDST | CASING | 958 40 K LC S | 9-5/8" 40.00# (0.395wt) K55 R3 LTC SMLS | 40 | | RUSTAVI | PRIME | EPS-20698-RTN | 8 | 314.6 | 6.29 | 435 |
| WASHITA | CASING | 958 40 K LC S | 9-5/8" 40.00# (0.395wt) K55 R3 LTC SMLS | 40 | | RUSTAVI | RETURN | EPS-20415-RTN | 7 | 275.15 | 5.50 | 411 |
| WASHITA | CASING | 958 40 K LC S | 9-5/8" 40.00# (0.395wt) K55 R3 LTC SMLS | 40 | | RUSTAVI | PRIME | PO-6325 | 2 | 88.7 | 1.77 | 574 |
| ATLAS TUB | CASING | 958 40 KHC LC E | 9-5/8" 40.00# (0.395wt) K55-HC R3 LTC ERW | 40 | | PARAGON | RETURN | EPS-19853-RTN | 11 | 476.75 | 9.54 | 519 |
| ATLAS TUB | CASING | 958 40 KHC LC E | 9-5/8" 40.00# (0.395wt) K55-HC R3 LTC ERW | 40 | | PARAGON | PRIME | PO-4046 | 54 | 2360.39 | 47.21 | 510 |
| PARAGON | CASING | 958 40 KHC LC E | 9-5/8" 40.00# (0.395wt) K55-HC R3 LTC ERW | 40 | | PARAGON | PRIME | PO-4047~REVAL | 628 | 26378.82 | 527.58 | 203 |
| WASHITA | CASING | 958 40 KHC LC E | 9-5/8" 40.00# (0.395wt) K55-HC R3 LTC ERW | 40 | | PARAGON | INSPECTED | EPS-20608-RTN | 6 | 238.1 | 4.76 | 411 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | NEXTEEL | INSPECTED | EPS-19491-RTN | 6 | 270.91 | 5.42 | 510 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | JESCO | INSPECTED | EPS-19649-RTN | | | 1.41 | 510 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BORUSAN | SCRAP | EPS-20043-RTN | 2 | 70.3 | 1.41 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | SCRAP | EPS-20125-RTN | 2 | 13.9 | 0.28 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | SCRAP | EPS-20218-RTN | 1 | 21 | 0.42 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | SCRAP | EPS-20218-RTN | 1 | 36 | 0.72 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20351-RTN | 1 | 21 | 0.42 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20369-RTN | 1 | 32.6 | 0.65 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20416-RTN | 1 | 20.2 | 0.40 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20483-RTN | 1 | 21 | 0.42 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | INSPECTED | EPS-20487-RTN | 2 | 89.06 | 1.78 | 386 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | SCRAP | EPS-20487-RTN | 1 | 43.16 | 0.86 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20489-RTN | 1 | 21.4 | 0.43 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | INSPECTED | EPS-20489-RTN | 3 | 135.06 | 2.70 | 386 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | SCRAP | EPS-20489-RTN | 1 | 21.1 | 0.42 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | INSPECTED | EPS-20548-RTN | 3 | 135.44 | 2.71 | 386 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | INSPECTED | EPS-20553-RTN | 3 | 136.59 | 2.73 | 386 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | INSPECTED | EPS-20569-RTN | 2 | 90.49 | 1.81 | 386 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | SCRAP | EPS-20569-RTN | 3 | 92.7 | 1.85 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | INSPECTED | EPS-20611-RTN | 2 | 91.3 | 1.83 | 386 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | INSPECTED | EPS-20634-RTN | 4 | 181.59 | 3.63 | 386 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | SCRAP | EPS-20634-RTN | 1 | 30 | 0.60 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20716-RTN | 1 | 38.1 | 0.76 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20739-RTN | 1 | 33.3 | 0.67 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20742-RTN | 1 | 29.2 | 0.58 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20783-RTN | 1 | 21 | 0.42 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20856-RTN | 1 | 29.26 | 0.59 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | REPAIRABLE | EPS-20899-RTN | 1 | 44.75 | 0.90 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20940/20716-RTN | 1 | 42.82 | 0.86 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21000-RTN | | | - | 356 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21172-RTN | 1 | 29.2 | 0.58 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21181-RTN | 1 | 31.5 | 0.63 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21206-RTN | 3 | 129.31 | 2.59 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21244-RTN | 1 | 28.3 | 0.57 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | SCRAP | EPS-21307-RTN | 5 | 218 | 4.36 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | SCRAP | EPS-21307-RTN | 2 | 87.62 | 1.75 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | EPS-21308-RTN | 4 | 162.19 | 3.24 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | SCRAP | EPS-21308-RTN | 1 | 43.75 | 0.88 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21383-RTN | 1 | 29.96 | 0.60 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21432-RTN | 1 | 27.38 | 0.55 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | EPS-21646-RTN | 7 | 242.7 | 4.85 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | RETURN | EPS-21687-RTN | 15 | 615 | 12.30 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | SEAH | SCRAP | PO2975 | 3 | 124.4 | 2.49 | |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | PRIME | PO3153 | 33 | 1653.17 | 33.06 | 659 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | PRIME | PO32223 | | | - | 659 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-4021 | -10 | | - | 656 |
| BEEMAC MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | PO-7764 | 4 | 159.43 | 3.19 | 447 |
| CM SERVICE | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | VYKSA | PRIME | PO3186 | 3 | 123.2 | 2.46 | 398 |
| DEEP WELL | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | EPT-3253 | 47 | 2086.7 | 41.73 | 112 |
| DEEP WELL | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPT-3253 | 155 | 6765.46 | 135.31 | 112 |
| DEEP WELL | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | INSPECTED | EPT-3253 | 10 | 447.98 | 8.96 | 112 |
| DEEP WELL | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | JESCO | INSPECTED | EPT-3253 | 21 | 898.77 | 17.98 | 112 |
| DEEP WELL | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | NEXTEEL | INSPECTED | EPT-3253 | 7 | 309.3 | 6.19 | 112 |
| ELFARM MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | SCRAP | EPS-18229-RTN | 2 | 86.7 | 1.73 | |
| ELFARM MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | NEXTEEL | INSPECTED | EPS-19260-RTN | 1 | 42.3 | 0.85 | 628 |
| ELFARM MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BORUSAN | SCRAP | PO2077 | 4 | 160.248 | 3.20 | |
| ELFARM MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | TENARIS | SCRAP | PO2569 | 3 | 133.682 | 2.67 | |
| ELFARM MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | CENTRIC | SCRAP | PO2801 | 2 | 70.872 | 1.42 | |
| ELFARM MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | HYUNDAI | SCRAP | PO2909 | 4 | 161.93 | 3.24 | |
| ELFARM MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | NEXTEEL | SCRAP | PO3057 | 1 | 45 | 0.90 | |
| ELFARM RET | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-7060 | 44 | 1814.08 | 36.28 | 473 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | NA | REPAIRABLE | QB UNK | 11 | 520.12 | 10.40 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EOS-22473-RTN | 3 | 124.2 | 2.48 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21284-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21327-RTN | 1 | 44.4 | 0.89 | 316 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21341-RTN | 1 | 43.4 | 0.87 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21341-RTN | 1 | 5.53 | 0.11 | 302 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-21401-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-21401-RTN | 6 | 252 | 5.04 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21406-RTN | 3 | 133.5 | 2.67 | 316 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21406-RTN | 3 | 133.5 | 2.67 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-21448-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21480-RTN | 15 | 619.81 | 12.40 | 315 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | EPS-21683-RTN | 1 | 2.08 | 0.04 | 315 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | EPS-21690-RTN | 6 | 238.2 | 4.76 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | EPS-21713-RTN | 4 | 170.8 | 3.42 | 217 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21739-RTN | 6 | 254.7 | 5.09 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21747-RTN | 4 | 166.2 | 3.32 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21757-RTN | 7 | 289.2 | 5.78 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21757-RTN | 7 | 278.7 | 5.57 | 252 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21763-RTN | 3 | 128.3 | 2.57 | 250 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21763-RTN | 3 | 129.33 | 2.59 | 161 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-21805-RTN | 6 | 252 | 5.04 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | EPS-21869-RTN | 7 | 292.4 | 5.85 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21869-RTN | 2 | 85.8 | 1.72 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21870-RTN | 1 | 44.6 | 0.89 | 250 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21903-RTN | 2 | 84.8 | 1.70 | 250 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-21903-RTN | 9 | 378 | 7.56 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-21904-RTN | 1 | 43.7 | 0.87 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-21914-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-21927-RTN | 1 | 43.7 | 0.87 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21929-RTN | 4 | 174.9 | 3.50 | 222 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-21930-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-21950-RTN | 7 | 295.9 | 5.92 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-21952-RTN | 2 | 84 | 1.68 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | PRIME | EPS-21959-RTN | 1 | 44.7 | 0.89 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | AXIS | REPAIRABLE | EPS-21959-RTN | 5 | 222.9 | 4.46 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-21976-RTN | 4 | 219.09 | 4.38 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-21980-RTN | 4 | 171.7 | 3.43 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-21980-RTN | 4 | 168 | 3.36 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21991-RTN | 1 | 37.2 | 0.74 | 217 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22003-RTN | 3 | 126 | 2.52 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22123-RTN | 3 | 128 | 2.56 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22123-RTN | 3 | 128.8 | 2.58 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22133-RTN | 3 | 125.9 | 2.52 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22151-RTN | 4 | 175.9 | 3.52 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22151-RTN | 1 | 23.1 | 0.46 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22221-RTN | 2 | 82.6 | 1.65 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22227-RTN | 3 | 128.1 | 2.56 | 204 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22229-RTN | 9 | 378.7 | 7.57 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22227-RTN | 7 | 305.5 | 6.11 | 158 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22232-RTN | 6 | 266.2 | 5.32 | 125 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22239-RTN | 2 | 87.6 | 1.75 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22240-RTN | 4 | 168.6 | 3.37 | |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | iMill | iCondition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-22255-RTN | 1 | 31 | 0.62 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22257-RTN | 3 | 130.2 | 2.60 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22271-RTN | 5 | 210 | 4.20 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22353-RTN | 9 | 376.3 | 7.53 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22365-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-22377-RTN | 7 | 294 | 5.88 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22431-RTN | 29 | 1237.2 | 24.74 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-2243-RTN | 4 | 168.5 | 3.37 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-22445-RTN | 5 | 210 | 4.20 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-22466-RTN | 7 | 294 | 5.88 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | TEJAS TUBULAR | PRIME | EPS-22473-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | TEJAS TUBULAR | REPAIRABLE | EPS-22473-RTN | 3 | 126 | 2.52 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22482-RTN | 5 | 210 | 4.20 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22482-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | ARCELOR MITTAL | INSPECTED | EPS-22500-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22500-RTN | 10 | 420 | 8.40 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22504-RTN | 4 | 168 | 3.36 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22509-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22509-RTN | 2 | 84 | 1.68 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22586-RTN | 6 | 252 | 5.04 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-22659-RTN | 6 | 252 | 5.04 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-22668-RTN | 2 | 89.1 | 1.78 | 158 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22668-RTN | 2 | 84 | 1.68 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22699-RTN | 2 | 85.5 | 1.71 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22765-RTN | 5 | 222 | 4.44 | 155 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | PARAGON | INSPECTED | EPS-22809-RTN | 5 | 213.2 | 4.26 | 155 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-22913-RTN | 3 | 127.4 | 2.55 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-22913-RTN | 2 | 84 | 1.68 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22914-RTN | 1 | 37.9 | 0.76 | 155 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22916-RTN | 9 | 378 | 7.56 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22920-RTN | 11 | 462 | 9.24 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-22986-RTN | 1 | 44.7 | 0.89 | 125 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-22999-RTN | 4 | 168 | 3.36 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-23002-RTN | 4 | 168 | 3.36 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23022-RTN | 2 | 84 | 1.68 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23060-RTN | 3 | 126 | 2.52 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | PARAGON | PRIME | EPS-23062-RTN | 3 | 126 | 2.52 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23066-RTN | 2 | 84 | 1.68 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-23066-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-23080-RTN | 7 | 294 | 5.88 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-23089-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23089-RTN | 4 | 126 | 2.52 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23089-RTN | 6 | 252 | 5.04 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | RETURN | EPS-23102-RTN | 7 | 294 | 5.88 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23128-RTN | 2 | 84 | 1.68 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23130-RTN | 2 | 71.9 | 1.44 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-23130-RTN | 8 | 344.2 | 6.88 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | PARAGON | PRIME | EPS-23142-RTN | 4 | 172.5 | 3.45 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23142-RTN | 5 | 210 | 4.20 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23152-RTN | 6 | 252 | 5.04 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-23152-RTN | 3 | 126 | 2.52 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23154-RTN | 2 | 85.2 | 1.70 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23167-RTN | 5 | 210 | 4.20 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23167-RTN | 3 | 131.4 | 2.63 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23188-RTN | 8 | 349.5 | 6.99 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23195-RTN | 8 | 336 | 6.72 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | TMK | RETURN | EPS-23195-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23201-RTN | 5 | 214.9 | 4.30 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23206-RTN | 4 | 176.2 | 3.52 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-23210-RTN | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23210-RTN | 10 | 420 | 8.40 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23210-RTN | 4 | 176 | 3.52 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-23220-RTN | 4 | 174.5 | 3.49 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23220-RTN | 12 | 529.4 | 10.59 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-23225-RTN | 4 | 168 | 3.36 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | MID 7298-01 | 1 | 42 | 0.84 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | ARCELOR MITTAL | REPAIRABLE | MID 8165-01 | 7 | 294 | 5.88 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | TMK | PRIME | MID-7295-01 | 7 | 294 | 5.88 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | REPUBLIC TUBE | PRIME | MID-8064-01 | 9 | 378 | 7.56 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | ARCELOR MITTAL | SCRAP | MID-8166-01 | 1 | 20 | 0.40 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | REPUBLIC TUBE | PRIME | RTN-21 | 22 | 924 | 18.48 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | REPUBLIC TUBE | REPAIRABLE | RTN-21 | 20 | 840 | 16.80 | |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | RTN-26 | 228 | 9429.89 | 188.60 | 21 |
| PRECISION | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | AXIS | INSPECTED | RTN-XX | 6 | 249 | 4.98 | |
| REPUBLIC | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | AXIS | SCRAP | EPS-20338-RTN/10484 | 1 | 43 | 0.86 | 302 |
| REPUBLIC | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | REPUBLIC TUBE | PRIME | PO-10303 | 133 | 4965.46 | 99.31 | 263 |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | AXIS | PRIME | EPS-18320-RTN | 2 | 91.67 | 1.83 | 118 |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | AXIS | USED | EPS-18874-RTN | 1 | 51.5 | 1.03 | 118 |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | AXIS | SCRAP | EPS-18874-RTN | 1 | 51.5 | 1.03 | 118 |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | SEAH | PRIME | EPS-19711-RTN | 4 | 179.88 | 3.60 | 118 |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | NEXTEEL | PRIME | EPS-19782-RTN | 2 | 88.8 | 1.78 | 118 |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BORUSAN | REPAIRABLE | EPS-2015-RTN | -1 | - | - | |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | HYUNDAI | PRIME | EPS-2015-RTN | 3 | 135.11 | 2.70 | 118 |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-20175-RTN | -5 | - | - | |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-20416-RTN | -1 | - | - | |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-20416-RTN | -2 | - | - | |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-20995-RTN | 1 | 44.98 | 0.90 | |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-21586-RTN | 1 | 44.8 | 0.90 | 118 |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | AXIS | PRIME | QB UNK | 3 | 122.8 | 2.46 | 659 |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | AXIS | SCRAP | QB UNK | -5 | -82.8 | (1.66) | 659 |
| UNITED MID | CASING | 958 40 LHC BC E | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC ERW | 40 | | TENARIS | SCRAP | QB UNK | 2 | 41 | 0.82 | 659 |
| BEEMAC MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | JESCO | SCRAP | QB UNK | 5 | 216.53 | 4.33 | 481 |
| BEEMAC MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | JESCO | REPAIRABLE | EPS-19557-RTN | 1 | 43.8 | 0.88 | 510 |
| BEEMAC MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | JESCO | INSPECTED | EPS-19640-RTN | 7 | 303.6 | 6.07 | 481 |
| BEEMAC MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | JESCO | REPAIRABLE | EPS-19640-RTN | 2 | 87.14 | 1.74 | 481 |
| BEEMAC MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | JESCO | INSPECTED | EPS-19643-RTN | 3 | 130.02 | 2.60 | 481 |
| BEEMAC MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | JESCO | REPAIRABLE | EPS-19694-RTN | 2 | 84.49 | 1.69 | 481 |
| BEEMAC MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | JESCO | SCRAP | EPS-19694-RTN | 2 | 97.61 | 1.95 | 659 |
| BEEMAC MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | JESCO | SCRAP | QB UNK | 4 | 108.64 | 2.17 | 659 |
| BEEMAC MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | JESCO | PRIME | PO2896 | 1 | 41.47 | 0.83 | |
| ELFARM MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | BOLY | SCRAP | PO2999 | 4 | 169.43 | 3.39 | |
| ELFARM RET | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | BOLY | SCRAP | PO2096 | 3 | 119.6 | 2.39 | |
| ELFARM RET | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | NA | SCRAP | QB UNK | 3 | 161.01 | 3.22 | |
| REPUBLIC | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | BOLY | INTERPIPE | EPS-22168-RTN-1 | 8 | 344 | 6.88 | 195 |
| REPUBLIC | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | INTERPIPE | PRIME | EPS-22168-RTN-1 | 5 | 208.6 | 4.17 | 195 |
| UNITED MID | CASING | 958 40 LHC BC S | 9-5/8" 40.00# (0.395w) L80-HC R3 BTC SMLS | 40 | | BOLY | PRIME | EPS-19285-RTN | 2 | 84.46 | 1.69 | 531 |
| ATLAS TUB | CASING | 958 40 LHC LC E | 9-5/8" 40.00# (0.395w) L80-HC R3 LTC ERW | 40 | | AXIS | INSPECTED | EPS-19678-RTN | 1 | 43.1 | 0.86 | 531 |
| PRECISION | CASING | 958 40 LHC LC E | 9-5/8" 40.00# (0.395w) L80-HC R3 LTC ERW | 40 | | BOOMERANG | PRIME | PO-11112 | 40 | 1735.14 | 34.70 | 264 |
| WASHITA | CASING | 958 40 LHC LC E | 9-5/8" 40.00# (0.395w) L80-HC R3 LTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20608-RTN | 1 | 44.1 | 0.88 | 411 |
| WASHITA | CASING | 958 40 LHC LC E | 9-5/8" 40.00# (0.395w) L80-HC R3 LTC ERW | 40 | | AXIS | PRIME | PO-5496 | 81 | 3532.834 | 70.66 | 580 |
| REPUBLIC | CASING | 958 40 LHC LC S | 9-5/8" 40.00# (0.395w) L80-HC R3 LTC SMLS | 40 | | BOLY | PRIME | PO2036 | 12 | 545.6 | 10.91 | |
| REPUBLIC | CASING | 958 40 LIC BC S | 9-5/8" 40.00# (0.395w) L80-IC R3 BTC SMLS | 40 | | BOLY | PRIME | EPS-22168-RTN-1 | 1 | 34 | 0.68 | 195 |
| ELFARM MID | CASING | 958 40 LIC BC S | 9-5/8" 40.00# (0.395w) L80-IC R3 BTC SMLS | 40 | | TENARIS | SCRAP | PO2569 | 6 | 270.73 | 5.41 | |
| ELFARM MID | CASING | 958 40 LIC BC S | 9-5/8" 40.00# (0.395w) L80-IC R3 BTC SMLS | 40 | | TENARIS | PRIME | PO2980 | 17 | 742.37 | 14.85 | |
| REPUBLIC | CASING | 958 40 LIC BC S | 9-5/8" 40.00# (0.395w) L80-IC R3 BTC SMLS | 40 | | TENARIS | PRIME | PO3160 | 3 | - | - | 659 |
| REPUBLIC | CASING | 958 40 LIC BC S | 9-5/8" 40.00# (0.395w) L80-IC R3 BTC SMLS | 40 | | TENARIS | PRIME | PO-6053 | 1 | - | - | 628 |
| BEEMAC MID | CASING | 958 40 P LC E | 9-5/8" 40.00# (0.395w) P110 R3 LTC ERW | 40 | | BOOMERANG | PRIME | EPS-20564-RTN | 1 | 27.84 | 0.56 | |
| ATLAS TUB | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395w) P110-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-8367 | 364 | 15742.08 | 314.84 | 407 |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | iMill | iCondition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REPUBLIC | CASING | 5 2132 PCYHP SFW S | 5" 21.32# (0.437w) P110-CY HP R3 TORQ SFW SMLS | 21.32 | | TENARIS | PRIME | PO-10851 | 99 | 4364.96 | 46.53 | 195 |
| UNITED MID | CASING | 55 17 L LC E | 5-1/2" 17.00# (0.304w) L80 R3 LTC ERW | 17 | | TENARIS | PRIME | 39506 | 5 | 208.5 | 1.77 | 117 |
| NOV WELLB | CASING | 55 17 P LC E | 5-1/2" 17.00# (0.304w) P110 R3 LTC ERW | 17 | | TENARIS | SCRAP | EPS-2154-RTN | 1 | 41.81 | 0.36 | 173 |
| NOV WELLB | CASING | 55 17 P LC E | 5-1/2" 17.00# (0.304w) P110 R3 LTC ERW | 17 | | TENARIS | PRIME | PO-3807 | -117 | | - | |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | TENARIS | INSPECTED | EPS-19319-RTN | 4 | 175.12 | 1.49 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-19344-RTN | 13 | 563.25 | 4.79 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-19344-RTN | 1 | 43.72 | 0.37 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-19384-RTN | 13 | 562.29 | 4.78 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | REJECT | EPS-19384-RTN | | | - | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-19384-RTN | 7 | 302.62 | 2.57 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-19401-RTN | 7 | 301.52 | 2.56 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-19401-RTN | 2 | 87.52 | 0.74 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-19457-RTN | 5 | 213.55 | 1.82 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-19457-RTN | 2 | 86.83 | 0.74 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-19481-RTN | 9 | 372.71 | 3.17 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-19481-RTN | 2 | 87.97 | 0.75 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-19548-RTN | 8 | 349.49 | 2.97 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-19548-RTN | 1 | 43.88 | 0.37 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-19548-RTN | 3 | 123 | 1.05 | 507 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | RETURN | EPS-19648-RTN | 12 | 492 | 4.18 | 507 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-19651-RTN | 8 | 350.47 | 2.98 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-19651-RTN | 2 | 88.14 | 0.75 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-19676-RTN | 5 | 208.38 | 1.77 | 508 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | PRIME | EPS-20108-RTN | 69 | 2829 | 24.05 | 572 |
| BEEMAC MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | PRIME | PO-3507 | 8 | 192.26 | 1.63 | 546 |
| DEEP WELL | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | NA | SCRAP | VARIOUS | 33 | 982.8 | 8.35 | 266 |
| DEEP WELL | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | PRIME | PRIME | PO-3507 | 23 | 600.8 | 5.11 | 215 |
| ELFARM MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-19537-RTN | 13 | 568.4 | 4.83 | 628 |
| ELFARM MID | CASING | 55 17 PCY BC E | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC ERW | 17 | | CENTRIC | SCRAP | EPS-19537-RTN | 1 | 30.71 | 0.26 | 628 |
| TEJAS STVL | CASING | 55 17 PCY BC S | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC SMLS | 17 | | CENTRIC | PRIME | PO3177 | 40 | 1668.13 | 14.18 | |
| ELFARM MID | CASING | 55 17 PCY BC S | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC SMLS | 17 | | CENTRIC | SCRAP | PO2501 | 7 | 389.48 | 3.31 | |
| IOS MID | CASING | 55 17 PCY BC S | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC SMLS | 17 | | TENARIS | INSPECTED | EPS-19144-RTN | 494 | 19878.43 | 168.97 | 517 |
| IOS MID | CASING | 55 17 PCY BC S | 5-1/2" 17.00# (0.304w) P110-CY R3 BTC SMLS | 17 | | TENARIS | INSPECTED | EPS-19151-RTN | 483 | 19069.7 | 162.09 | 539 |
| REPUBLIC | CASING | 55 17 PCY LC S | 5-1/2" 17.00# (0.304w) P110-CY R3 LTC SMLS | 17 | | TUBOS REUNIDOS | PRIME | PO2609 | 45 | 1745.6867 | 14.84 | |
| BEEMAC MID | CASING | 55 17 PCY XBC S | 5-1/2" 17.00# (0.304w) P110-CY R3 XP BTC SMLS | 17 | | TENARIS | INSPECTED | EPS-19202-RTN | 3 | 130.35 | 1.11 | 532 |
| BEEMAC MID | CASING | 55 17 PCY XBC S | 5-1/2" 17.00# (0.304w) P110-CY R3 XP BTC SMLS | 17 | | TENARIS | INSPECTED | EPS-19300-RTN | 10 | 430.65 | 3.66 | 532 |
| BEEMAC MID | CASING | 55 17 PCY XBC S | 5-1/2" 17.00# (0.304w) P110-CY R3 XP BTC SMLS | 17 | | TENARIS | RETURN | QB UNK | | | - | 659 |
| ELFARM MID | CASING | 55 17 PCY XBC S | 5-1/2" 17.00# (0.304w) P110-CY R3 XP BTC SMLS | 17 | | TENARIS | RETURN | QB UNK | 2 | 96.24 | 0.82 | 659 |
| IOS MID | CASING | 55 17 PCY XBC S | 5-1/2" 17.00# (0.304w) P110-CY R3 XP BTC SMLS | 17 | | TENARIS | RETURN | QB UNK | 3 | 133.8 | 1.14 | 656 |
| NOV WELLB | CASING | 55 17 PIC LC E | 5-1/2" 17.00# (0.304w) P110-IC R3 LTC ERW | 17 | | TENARIS | SCRAP | EPS-19771-RTN | 1 | 42.1 | 0.36 | |
| NOV WELLB | CASING | 55 17 PIC LC E | 5-1/2" 17.00# (0.304w) P110-IC R3 LTC ERW | 17 | | TENARIS | PRIME | PO3427 | -673 | | - | |
| NOV WELLB | CASING | 55 17 PCY LC S | 5-1/2" 17.00# (0.304w) P110-CY R3 LTC SMLS | 17 | | TENARIS | PRIME | PO2906 | -1 | | - | |
| ATLAS TUB | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | PRIME | PO-3507 | 50 | 1983.72 | 16.86 | 585 |
| ATLAS TUB | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | PRIME | PO-3760 | 1830 | 80756.19 | 686.43 | 573 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | RETURN | EPS-19676-RTN | 4 | 164 | 1.39 | 507 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | RETURN | EPS-19701-RTN | 23 | 943 | 8.02 | 507 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | RETURN | EPS-19705-RTN | 18 | 738 | 6.27 | 507 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | RETURN | EPS-19728-RTN | 8 | 328 | 2.79 | 507 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | RETURN | EPS-19729-RTN | 7 | 287 | 2.44 | 507 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | RETURN | EPS-19744-RTN | 11 | 451 | 3.83 | 507 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-20019-RTN | 7 | 312.12 | 2.65 | 358 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | RETURN | EPS-20020-RTN | 26 | 1062.03 | 9.03 | |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | SCRAP | EPS-20020-RTN | 1 | | - | |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-20029-RTN | 8 | 342.53 | 2.91 | 358 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-20029-RTN | 8 | 331.16 | 2.81 | 358 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-20127-RTN | 10 | 446.14 | 3.79 | 358 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-20127-RTN | 2 | 89.05 | 0.76 | 358 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-20281-RTN | 4 | 177.51 | 1.51 | 281 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-20281-RTN | 8 | 349.4 | 2.97 | 281 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-2037X-RTN | 1 | 41.37 | 0.35 | 284 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-2037X-RTN | 6 | 251.98 | 2.14 | 284 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-20391-RTN | 1 | 44.65 | 0.38 | 284 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-20391-RTN | 4 | 176.48 | 1.50 | 284 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-20564-RTN | 2 | 73.79 | 0.63 | 284 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-20564-RTN | 10 | 446.49 | 3.80 | 278 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-20609-RTN | 7 | 295.74 | 2.51 | 313 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | REPAIRABLE | EPS-20609-RTN | 3 | 111.2 | 0.95 | 281 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | INSPECTED | EPS-20697-RTN | 12 | 528.06 | 4.49 | 281 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | PRIME | PO3505 | | | - | 655 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | PRIME | PO3506 | | | - | 655 |
| BEEMAC MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | RETURN | QB UNK | 159 | | - | 659 |
| DEEP WELL | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | PRIME | PRIME | PO-3760 | 171 | 6852.97 | 58.25 | 216 |
| DEEP WELL | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | PRIME | PRIME | PO-3761 | 56 | 3317.74 | 28.20 | 215 |
| ELFARM MID | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | PRIME | PRIME | PO-5506 | 1 | 675.14 | 5.74 | 294 |
| STHN TUBE | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | PRIME | PRIME | PO-3506 | | | - | 587 |
| STHN TUBE | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | PRIME | PRIME | PO-3507 | | | - | 587 |
| STHN TUBE | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | PRIME | PRIME | PO-3760 | | | - | 600 |
| TEJAS HOU | CASING | 55 17 PRY BC E | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC ERW | 17 | | CENTRIC | PRIME | PO-3761 | 23 | 470.88 | 4.00 | 550 |
| UNITED MID | CASING | 55 17 PRY BC S | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC SMLS | 17 | | CENTRIC | PRIME | EPS-20020-RTN | 1 | 44.97 | 0.38 | |
| UNITED MID | CASING | 55 17 PRY BC S | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC SMLS | 17 | | CENTRIC | REPAIRABLE | EPS-20020-RTN | 1 | 41.81 | 0.36 | 538 |
| ELFARM MID | CASING | 55 17 PRY BC S | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC SMLS | 17 | | PRIME | PRIME | PO-3760 | 169 | 7535 | 64.05 | 538 |
| ELFARM RET | CASING | 55 17 PRY BC S | 5-1/2" 17.00# (0.304w) P110-RY R3 BTC SMLS | 17 | | PRIME | PRIME | PO2501 | 68 | 3107.07 | 26.41 | |
| MCCLATCHY | CASING | 55 17 PRY GBCD E | 5-1/2" 17.00# (0.304w) P110-RY R3 GBCD ERW | 17 | | NA | REPAIRABLE | QB UNK | 21 | 965.02 | 8.20 | |
| ATLAS TUB | CASING | 55 1983 PM51 UTSF S | 5-1/2" 19.83# (0.361w) P110-M51 R3 ULTRA SF SMLS | 19.83 | | CENTRIC | PRIME | PO-11706 | 3264 | 144460.69 | 1,227.92 | 142 |
| ATLAS TUB | CASING | 55 1983 PM51 UTSF S | 5-1/2" 19.83# (0.361w) P110-M51 R3 ULTRA SF SMLS | 19.83 | | KOPPEL | PRIME | PO-10500 | 2 | 85.4 | 0.85 | 214 |
| ATLAS TUB | CASING | 55 1983 PM51 UTSF S | 5-1/2" 19.83# (0.361w) P110-M51 R3 ULTRA SF SMLS | 19.83 | | KOPPEL | INSPECTED | PO-10500 | 36 | 1632.1 | 16.18 | 214 |
| PRECISION | CASING | 55 1983 PM51 UTSF S | 5-1/2" 19.83# (0.361w) P110-M51 R3 ULTRA SF SMLS | 19.83 | | KOPPEL | INSPECTED | EPS-22617-RTN | 4 | 177.5 | 1.76 | 179 |
| SUPERIOR | CASING | 55 1983 PM51 UTSF S | 5-1/2" 19.83# (0.361w) P110-M51 R3 ULTRA SF SMLS | 19.83 | | KOPPEL | PRIME | PO-10500 | 1 | 44.3 | 0.44 | 203 |
| SUPERIOR | CASING | 55 1983 PM51 UTSF S | 5-1/2" 19.83# (0.361w) P110-M51 R3 ULTRA SF SMLS | 19.83 | | KOPPEL | REPAIRABLE | PO-10500 | 1 | 44.47 | 0.44 | 203 |
| BEEMAC MID | CASING | 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361w) P110-CY R3 BK-HT SMLS | 20 | | REPUBLIC TUBE | RETURN | EPS-21487-RTN | 16 | 656 | 6.56 | |
| BEEMAC MID | CASING | 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361w) P110-CY R3 BK-HT SMLS | 20 | | REPUBLIC TUBE | PRIME | PO-7913 | 6 | 175.28 | 1.75 | 386 |
| PRECISION | CASING | 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361w) P110-CY R3 BK-HT SMLS | 20 | | REPUBLIC TUBE | INSPECTED | EPS-22660-RTN | 11 | 450.7 | 4.51 | |
| PRECISION | CASING | 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361w) P110-CY R3 BK-HT SMLS | 20 | | REPUBLIC TUBE | INSPECTED | EPS-22664-RTN | 7 | 294 | 2.94 | |
| PRECISION | CASING | 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361w) P110-CY R3 BK-HT SMLS | 20 | | REPUBLIC TUBE | INSPECTED | EPS-22806-RTN | 9 | 378 | 3.78 | |
| PRECISION | CASING | 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361w) P110-CY R3 BK-HT SMLS | 20 | | REPUBLIC TUBE | INSPECTED | EPS-22815-RTN | 9 | 380.5 | 3.81 | |
| REPUBLIC | CASING | 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361w) P110-CY R3 BK-HT SMLS | 20 | | TMK | RETURN | EPS-22819-RTN | 14 | 588 | 5.88 | |
| BEEMAC MID | CASING | 55 20 PCY DQX S | 5-1/2" 20.00# (0.361w) P110-CY R3 DQX SMLS | 20 | | TMK | INSPECTED | EPS-21255-RTN | 5 | 222.74 | 2.23 | 204 |
| BEEMAC MID | CASING | 55 20 PCY DQX S | 5-1/2" 20.00# (0.361w) P110-CY R3 DQX SMLS | 20 | | TMK | INSPECTED | EPS-21088-RTN | 13 | 534.77 | 5.35 | |
| BEEMAC MID | CASING | 55 20 PCY DQX S | 5-1/2" 20.00# (0.361w) P110-CY R3 DQX SMLS | 20 | | TMK | REPAIRABLE | EPS-21088-RTN | 2 | 77.45 | 0.77 | |
| BEEMAC MID | CASING | 55 20 PCY DQX S | 5-1/2" 20.00# (0.361w) P110-CY R3 DQX SMLS | 20 | | TMK | INSPECTED | EPS-21134-RTN | 14 | 574 | 5.74 | |
| BEEMAC MID | CASING | 55 20 PCY DQX S | 5-1/2" 20.00# (0.361w) P110-CY R3 DQX SMLS | 20 | | TMK | INSPECTED | EPS-21173-RTN | 9 | 360 | 3.69 | |
| BEEMAC MID | CASING | 55 20 PCY DQX S | 5-1/2" 20.00# (0.361w) P110-CY R3 DQX SMLS | 20 | | TMK | INSPECTED | EPS-21721-RTN | 4 | 164 | 1.64 | |
| BEEMAC MID | CASING | 55 20 PCY DQX S | 5-1/2" 20.00# (0.361w) P110-CY R3 DQX SMLS | 20 | | TMK | INSPECTED | EPS-22817-RTN | 3 | 135.5 | 1.96 | |
| PRECISION | CASING | 55 20 PCY DQX S | 5-1/2" 20.00# (0.361w) P110-CY R3 DQX SMLS | 20 | | TMK | INSPECTED | PO-8608 | 5 | 214.2 | 2.14 | 399 |
| BEEMAC MID | CASING | 55 20 PCY GB E | 5-1/2" 20.00# (0.361w) P110-CY R3 GBCD ERW | 20 | | BOOMERANG | INSPECTED | EPS-19474-RTN | 8 | 341.35 | 3.41 | 519 |
| BEEMAC MID | CASING | 55 20 PCY GB E | 5-1/2" 20.00# (0.361w) P110-CY R3 GBCD ERW | 20 | | BOOMERANG | REPAIRABLE | EPS-19474-RTN | 1 | 39.52 | 0.40 | 519 |
| BEEMAC MID | CASING | 55 20 PCY GB E | 5-1/2" 20.00# (0.361w) P110-CY R3 GBCD ERW | 20 | | BOOMERANG | INSPECTED | EPS-19474-RTN | 15 | 44.21 | 0.44 | 428 |
| BEEMAC MID | CASING | 55 20 PCY GB E | 5-1/2" 20.00# (0.361w) P110-CY R3 GBCD ERW | 20 | | BOOMERANG | INSPECTED | EPS-19474-RTN | 8 | 352.98 | 3.53 | 428 |
| BEEMAC MID | CASING | 55 20 PCY GB E | 5-1/2" 20.00# (0.361w) P110-CY R3 GBCD ERW | 20 | | BOOMERANG | REPAIRABLE | EPS-19474-RTN | 2 | 87.97 | 0.88 | 519 |
| ELFARM MID | CASING | 55 20 PCY GB E | 5-1/2" 20.00# (0.361w) P110-CY R3 GBCD ERW | 20 | | BOOMERANG | PRIME | PO3446 | 1 | 30 | 0.30 | |
| ELFARM MID | CASING | 55 20 PCY GB E | 5-1/2" 20.00# (0.361w) P110-CY R3 GBCD ERW | 20 | | BOOMERANG | RETURN | QB UNK | -1 | | - | |
| UNITED MID | CASING | 55 20 PCY GB E | 5-1/2" 20.00# (0.361w) P110-CY R3 GBCD ERW | 20 | | CENTRIC | SCRAP | PO2842 | 1 | 40.32 | 0.40 | |
| UNITED MID | CASING | 55 20 PCY GB E | 5-1/2" 20.00# (0.361w) P110-CY R3 GBCD ERW | 20 | | CENTRIC | SCRAP | SW UNK | 3 | 118.7 | 1.19 | |
| PRECISION | CASING | 55 20 PCY LC S | 5-1/2" 20.00# (0.361w) P110-CY R3 LTC SMLS | 20 | | TMK | PRIME | PO-6741 | 8 | 323.3 | 3.23 | 425 |
| PRECISION | CASING | 55 20 PCY LC S | 5-1/2" 20.00# (0.361w) P110-CY R3 LTC SMLS | 20 | | TMK | PRIME | PO69137284 | 3 | 132.87 | 1.33 | 355 |
| BEEMAC MID | CASING | 55 20 PCY LC S - EA | 5-1/2" 20.00# (0.361w) P110-CY R3 LTC SMLS | 20 | | TMK | RETURN | EPS-21487-RTN | 1 | | 0.01 | |
| BEEMAC MID | CASING | 55 20 PCY LC S - EA | 5-1/2" 20.00# (0.361w) P110-CY R3 LTC SMLS | 20 | | TMK | PRIME | PO6741B000 | | | - | 420 |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | iMill | iCondition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | TMK | INSPECTED | EPS-19782-RTN | 1 | 41.81 | 0.84 | 448 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | TMK | REPAIRABLE | EPS-19782-RTN | 7 | 213.77 | 4.28 | 448 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-20182-RTN | 2 | 88.17 | 1.76 | 389 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-20217-RTN | 3 | 134.22 | 2.68 | 508 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-20757-RTN | 1 | 37.5 | 0.75 | |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20867-RTN | 15 | 615 | 12.30 | 386 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-20935-RTN | 3 | 126.92 | 2.54 | 358 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20940-RTN | 5 | 217.54 | 4.35 | 273 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-20940-RTN | 1 | 41.61 | 0.83 | 273 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-2102-1-RTN | 1 | 41 | 0.82 | 302 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-2102-1-RTN | 1 | 21 | 0.42 | |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-2180-RTN | 4 | 175.58 | 3.51 | 278 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-21298-RTN | 3 | 130.06 | 2.60 | 313 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | SCRAP | EPS-21402-RTN | 1 | 30.57 | 0.61 | |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-4023 | | | - | 643 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BORUSAN | PRIME | QB UNK | 17 | 802.57 | 16.05 | |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | REPUBLIC TUBE | SCRAP | QB UNK | 3 | 123 | 2.46 | |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | TMK | PRIME | QB UNK | 2 | 125.74 | 2.51 | 659 |
| BEEMAC MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | RTN-25 | 7 | 301.67 | 6.03 | |
| BOOMERANG | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-5287 | | | - | 573 |
| BOOMERANG | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-5497 | | | - | 571 |
| BOOMERANG | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-5713 | | | - | 560 |
| ELFARM MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | AXIS | SCRAP | PO2591 | 5 | 223.12 | 4.46 | |
| ELFARM MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | QB UNK | SCRAP | QB UNK | 6 | 271.09 | 5.42 | 659 |
| ELFARM RET | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | NA | REPAIRABLE | QB UNK | 1 | 44.08 | 0.88 | |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20182-RTN | 6 | 255.6 | 5.11 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20217-RTN | 1 | 44.74 | 0.89 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20516-RTN | 3 | 128.25 | 2.57 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20723-RTN | 6 | 263.58 | 5.27 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20757-RTN | 3 | 135.54 | 2.71 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20787-RTN | 4 | 176.48 | 3.53 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20838-RTN | 2 | 88.42 | 1.77 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20885-RTN | 4 | 163.4 | 3.27 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-2003-1-RTN | 5 | 219.58 | 4.39 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-20964-RTN | 1 | 44.5 | 0.89 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-2102-1-RTN | 2 | 93.06 | 1.86 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-2180-RTN | 5 | 217.61 | 4.35 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-2187-RTN | 5 | 220.78 | 4.42 | 302 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21298-RTN | 3 | 126.92 | 2.54 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21705-RTN | 5 | 216.89 | 4.34 | 294 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21754-RTN | 1 | 35.18 | 0.70 | 250 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 47 | | BOOMERANG | REPAIRABLE | EPS-21754-RTN | 1 | 38.5 | 0.77 | 252 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 47 | | BOOMERANG | INSPECTED | EPS-21763-RTN | 3 | 130.6 | 2.61 | 250 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-21763-RTN | 3 | 133.6 | 2.67 | 250 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21831-RTN | 9 | 394.81 | 7.90 | 246 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | EPS-21870-RTN | 7 | 306.2 | 6.12 | 223 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | REPAIRABLE | EPS-22065-RTN | 4 | 174.7 | 3.49 | 204 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-4023 | 2 | 270.09 | 5.40 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | PO-6682 | 1 | 121.87 | 2.44 | 81 |
| PRECISION | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | INSPECTED | RTN-26 | 218 | 8811.9 | 176.24 | |
| REPUBLIC | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | AXIS | RETURN | EPS-22076-RTN | 1 | 24 | 0.48 | 249 |
| UNITED MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BORUSAN | PRIME | EPS-19782-RTN | 41 | 1805.73 | 36.11 | 118 |
| UNITED MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | REPUBLIC TUBE | PRIME | EPS-19782-RTN | 3 | 113 | 2.26 | 118 |
| UNITED MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-19782-RTN | 30 | 1196.5 | 23.93 | 118 |
| UNITED MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | BOOMERANG | PRIME | EPS-20935-RTN | 16 | 701.92 | 14.04 | 118 |
| UNITED MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | AXIS | SCRAP | PO2591 | -4 | - | - | 118 |
| UNITED MID | CASING | 958 40 PHC BC E | 9-5/8" 40.00# (0.395wd) P110-HC R3 BTC ERW | 40 | | AXIS | PRIME | PO-2591 | 9 | 398.18 | 7.96 | 118 |
| ELFARM MID | CASING | 958 40 PIC BC S | 9-5/8" 40.00# (0.395wd) P110-IC R3 BTC SMLS | 40 | | US STEEL | SCRAP | PO3037 | 5 | 206.66 | 4.13 | |
| ELFARM MID | CASING | 958 40 PIC BC S | 9-5/8" 40.00# (0.395wd) P110-IC R3 BTC SMLS | 40 | | NA | REPAIRABLE | QB UNK | 23 | 1038.56 | 20.77 | |
| ELFARM MID | CASING | 958 40 PIC BC S | 9-5/8" 40.00# (0.395wd) P110-IC R3 BTC SMLS | 40 | | TENARIS | SCRAP | PO3037 | 1 | 56.07 | 1.12 | |
| ELFARM MID | CASING | 958 47 PHC BC E | 9-5/8" 47.00# (0.472wd) P110-HC R3 BTC ERW | 47 | | NA | REPAIRABLE | QB UNK | 4 | 177.07 | 4.16 | |
| UNITED MID | CASING | 958 47 PHC BC E | 9-5/8" 47.00# (0.472wd) P110-HC R3 BTC ERW | 47 | | BORUSAN | PRIME | EPT-1744 | 1 | 36.8 | 0.86 | 118 |
| UNITED MID | CASING | 958 535 PHC BC E | 9-5/8" 53.50# (0.545wd) P110-HC R3 BTC ERW | 53.5 | | REPUBLIC TUBE | PRIME | 39506 | 1 | 44.6 | 1.19 | 117 |
| REPUBLIC | BAKERLOK | BK 55 23 PICY LC S | 5-1/2" 23.00# (0.415wd) P110-IC R3 LTC SMLS | 23 | BAKERLOK | TENARIS | INSPECTED | PO-12049 | | 1 | | 210 |
| UNITED MID | BAKERLOK | BK 958 40 LHC BC E | 9-5/8" 40.00# (0.395wd) L80-HC R3 BTC BAKERLOK ERW | 40 | | AXIS | INSPECTED | EPS-19727-RTN | | 1 | | 118 |
| UNITED MID | BAKERLOK | BK 958 40 LHC BC E | 9-5/8" 40.00# (0.395wd) L80-HC R3 BTC BAKERLOK ERW | 40 | | AXIS | USED | EPS-19727-RTN | | 1 | | 118 |
| PRECISION | COUPLING | CPLG 1338 K BC | 13-3/8"  K55  BTC | | | NA | PRIME | PO-5964 | | 229 | - | 295 |
| UNITED HOU | COUPLING | CPLG 1338 K BC | 13-3/8"  K55  BTC | | | TMK | PRIME | PO-12092 | | 2 | - | 221 |
| TSI MCCART | COUPLING | CPLG 238 J EUE | 2-3/8"  J55  EUE 8RD | | | NA | PRIME | PO2972 | | 2 | - | |
| TSI MCCART | COUPLING | CPLG 278 L EUE | 2-7/8" L80 EUE 8RD | | | NA | PRIME | PO2972 | | 8 | - | |
| TSI JPORT | COUPLING | CPLG 45 K LC | 4-1/2"  K55  LTC | | | SEAH VINA | PRIME | EPS-21222-002 | | 2 | - | 416 |
| TSI JPORT | COUPLING | CPLG 55 L LC | 5-1/2"  L80  LTC | | | NA | SCRAP | QB UNKNOWN | | 1 | - | |
| UNITED MID | COUPLING | CPLG 55 PCY LC | 5-1/2" P110-CY LTC | | | TMK | SCRAP | PO-7252 | | 5 | - | 447 |
| PRECISION | COUPLING | CPLG 55 PCY LC | 5-1/2" P110-CY LTC | | COUPLING | TMK | PRIME | PO-7252 | | 11 | - | 425 |
| UNITED MID | COUPLING | CPLG 55 PCY TCBC-HT | 5-1/2" P110-CY TCBC-HT | | | TMK | PRIME | PO-13828 | | 639 | - | 116 |
| PATRIOT | COUPLING | CPLG 7 PCY BK-HT | 7" P110-CY BK-HT | | | NA | PRIME | PO-11701 | | 303 | - | 234 |
| DROP SHIP | COUPLING | CPLG 758 PCY BK-HT | 7-5/8"  P110-CY  BK-HT | | | NA | PRIME | PO-5253 | | | - | 600 |
| IND PIPE | COUPLING | CPLG 858 K BC | 8-5/8"  K55  BTC | | | NA | PRIME | PO3397 | | 4 | - | |
| IND PIPE | COUPLING | CPLG 858 K BC | 8-5/8"  K55  LTC | | | NA | PRIME | PO3326 | | 2 | - | |
| SPLENDORA | COUPLING | CPLG 858 L BC | 8-5/8"  L80  BTC | | | QB UNK | SCRAP | PO3369 | | 39 | - | 659 |
| REPUBLIC | COUPLING | CPLG 958 K LC | 9-5/8"  K55  LTC | | | NA | PRIME | PO-12632 | | 4 | - | 124 |
| UNITED MID | CASING | FC 958 40 LHC BC E | 9-5/8" 40.00# (0.395wd) L80-HC R3 BTC ERW | 40 | FLOAT COLLAR | AXIS | PRIME | EPS-18874-RTN | 1 | 45.7 | 0.91 | 118 |
| TRK ENTRPR | FLOAT SHOE | FS 958 36 J LC S | 9-5/8" 36.00# (0.352wd) J55 R3 LTC SMLS FLOAT SHOE | 36 | | JESCO | PRIME | 11247/13891 | 1 | | | 96 |
| TRK ENTRPR | FLOAT SHOE | FS 958 36 K LC S | 9-5/8" 36.00# (0.352wd) K55 R3 LTC SMLS FLOAT SHOE | 36 | | TENARIS | PRIME | EPS-21800/RTN/12465 | 1 | | | 203 |
| UNITED MID | CASING | FS 958 535 PHC BC E | 9-5/8" 53.50# (0.545wd) P110-HC R3 BTC ERW FLOAT | 53.5 | SHOE | NEXTEEL | PRIME | UTT-17725-RTN | 1 | | 0.03 | 117 |
| DROP SHIP | IPI POLY | IP 10DR11 F2619 50 | POLY 10" DR11 PE4710 50FT | | | NA | PRIME | PO-1958 | 10 | 500 | - | 215 |
| UNITED MID | LANDING JT | LJ 958 535 PHC BC | 9-5/8" 53.50# (0.545wd) P110-HC R3 BTC LANDING | 53.5 | JT | REPUBLIC TUBE | PRIME | 39506 | 1 | | | 117 |
| REPUBLIC | MARKER | MK 1338 68 J BC E | 13-3/8" 68.00# (0.480wd) J55 R3 BTC ERW MARKER | 68 | | HUSTEEL | PRIME | PO2015 | | 3 | | |
| REPUBLIC | MARKER | MK 1338 68 J BC E | 13-3/8" 68.00# (0.480wd) J55 R3 BTC ERW MARKER | 68 | | HUSTEEL | PRIME | PO2015 | | 3 | | |
| UNITED MID | MARKER | MK 45 116 L LC E | 4-1/2" 11.60# (0.250wd) L80 R1 LTC ERW MARKER | 11.6 | | TENARIS | SCRAP | PO2145 | | 6 | | 330 |
| MM WELDING | MARKER | MK 45 116 NX8 L C E | 4-1/2" 11.60# (0.250wd) NEXT-80 R1 LTC ERW MARKER | 11.6 | | QB UNK | SCRAP | QB UNK | | 1 | | |
| UNITED MID | MARKER | MK 45 135 PCY GBD SMLS | 4-1/2" 13.50# (0.290wd) P110-CY R1 GBCD SMLS | 13.5 | MARKER | TENARIS | PRIME | 10169/10445 | | 3 | | 251 |
| UNITED MID | MARKER | MK 45 135 PCY TBC 1S | 4-1/2" 13.50# (0.290wd) P110-CY 1S FT TCBC-HT | 13.5 | MARKER | TMK | PRIME | PO-116/19/13201 | | 1 | | 179 |
| ATLAS TUB | MARKER | MK 45 135 PCY TCBC 1 | 4-1/2" 13.50# (0.290wd) P110-CY TCBC-HT SMLS 10 FT | 13.5 | MARKER | ARCELOR MITTAL | PRIME | PO-116/18/11668/12344 | | 10 | | 243 |
| UNITED MID | MARKER | MK 45 135 PHC BC E | 4-1/2" 13.50# (0.290wd) P110-HC R1 BTC ERW MARKER | 13.5 | | CENTRIC | PRIME | EPS-20006-RTN/11126 | | 1 | | 243 |
| UNITED MID | MARKER | MK 45 135 PHC GB E 10 | 4-1/2" 13.50# (0.290wd) P110-HC R1 GBCD ERW 10FT | 13.5 | MARKER | CENTRIC | PRIME | EPS-20662-RTN/12177 | | 1 | | 215 |
| UNITED MID | MARKER | MK 45 135 PHC GB E 10 | 4-1/2" 13.50# (0.290wd) P110-HC R1 GBCD ERW 10FT | 13.5 | MARKER | CENTRIC | INSPECTED | EPS-20640-RTN | | 1 | | 329 |
| UNITED MID | MARKER | MK 45 135 PHC GB E 10 | 4-1/2" 13.50# (0.290wd) P110-HC R1 GBCD ERW 10FT | 13.5 | MARKER | CENTRIC | PRIME | PO-826/5/6250 | | 5 | | 517 |
| KB HOU | MARKER | MK 45 135 PCY MP S | 4-1/2" 13.50# (0.290wd) P110-CY R1 MP FANTHEN | 13.5 | SMLS MARKER JT | TENARIS | PRIME | 31305/627 | | 1 | | 344 |
| REPUBLIC | MARKER | MK 45 135 PXCY TXBC | 4-1/2" 13.50# (0.290wd) P110-CY R1 TXP BTC SMLS | 13.5 | MARKER | TENARIS | RETURN | EPS-22139-RTN | | 3 | | |
| WASHITA | MARKER | MK 45 135 PHC GB S | 4-1/2" 13.50# (0.290wd) P110-HC R1 GBCD SMLS | 13.5 | MARKER | TENARIS | PRIME | EPS-21409-RTN | | 1 | | |
| ATLAS TUB | MARKER | MK 45 135 PRY TCBC S | 4-1/2" 13.50# (0.290wd) P110-RY 1SFT TCBC-HT SMLS | 13.5 | MARKER | VOEST ALPINE | PRIME | EPS-11564/11802 | | 1 | | 234 |
| UNITED MID | MARKER | MK 55 17 L LC E | 5-1/2" 17.00# (0.304wd) L80 R1 LTC ERW MARKER | 17 | | TENARIS | PRIME | 39506 | | 2 | | 117 |
| UNITED MID | MARKER | MK 55 17 L LC E | 5-1/2" 17.00# (0.304wd) L80 R1 LTC ERW MARKER | 17 | | TMK | PRIME | EPS-19872-RTN | | 1 | | 117 |
| BEEMAC MID | MARKER | MK 55 17 PCY BC E 10 | 5-1/2" 17.00# (0.304wd) P110-CY BTC ERW 10FT | 17 | MARKER | NA | PRIME | PO3301 | | 3 | | 659 |
| BEEMAC MID | MARKER | MK 55 17 PCY BC E 10 | 5-1/2" 17.00# (0.304wd) P110-CY BTC ERW 10FT | 17 | MARKER | CENTRIC | PRIME | PO-3301 | | 3 | | 659 |
| ELFARM MID | MARKER | MK 55 17 PCY BC E 10 | 5-1/2" 17.00# (0.304wd) P110-CY BTC ERW 10FT | 17 | MARKER | CENTRIC | PRIME | PO3301 | | 1 | | 659 |
| ELFARM MID | MARKER | MK 55 17 PCY BC E 10 | 5-1/2" 17.00# (0.304wd) P110-CY BTC ERW 10FT | 17 | MARKER | NA | REPAIRABLE | EPS-20320-RTN | | 1 | | |
| ELFARM RET | MARKER | MK 55 17 PCY BC E 10 | 5-1/2" 17.00# (0.304wd) P110-CY BTC ERW 10FT MARKER | 17 | | NA | REPAIRABLE | QB UNK | | 1 | | |
| BEEMAC MID | MARKER | MK 55 17 PCY BC E 5 | 5-1/2" 17.00# (0.304wd) P110-CY BTC ERW 5FT MARKER | 17 | MARKER | NA | PRIME | EPS-20320-RTN | | 2 | | |
| IOS MID | MARKER | MK 55 17 PRY XBC E 1 | 5-1/2" 17.00# (0.304wd) P110-CY XP BTC ERW | 17 | 10FT MARKER | TENARIS | RETURN | EPS-20320-RTN | | 4 | | |
| NOV WELLB | MARKER | MK 55 17 PHC LC E | 5-1/2" 17.00# (0.304wd) P110-HC R1 LTC ERW | 17 | MARKER | NA | PRIME | PO2066 | | 5 | | 651 |
| BEEMAC MID | MARKER | MK 55 17 PRY BC E 10 | 5-1/2" 17.00# (0.304wd) P110-RY BTC ERW 10FT | 17 | MARKER | CENTRIC | PRIME | PO-3179 | | 1 | | 628 |
| BEEMAC MID | MARKER | MK 55 17 PRY BC E 10 | 5-1/2" 17.00# (0.304wd) P110-RY BTC ERW 10FT | 17 | MARKER | CENTRIC | INSPECTED | EPS-19651-RTN | | 1 | | 287 |
| BEEMAC MID | MARKER | MK 55 17 PRY BC E 10 | 5-1/2" 17.00# (0.304wd) P110-RY BTC ERW 10FT | 17 | MARKER | CENTRIC | REPAIRABLE | EPS-19651-RTN | | 1 | | 358 |
| BEEMAC MID | MARKER | MK 55 17 PRY BC E 10 | 5-1/2" 17.00# (0.304wd) P110-RY BTC ERW 10FT | 17 | MARKER | CENTRIC | PRIME | PO-3179 | | 1 | | 628 |
| BEEMAC MID | MARKER | MK 55 17 PRY BC E 10 | 5-1/2" 17.00# (0.304wd) P110-RY BTC ERW 10FT | 17 | MARKER | CENTRIC | PRIME | PO-3179 | | 13 | | 628 |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | iMill | iCondition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEEMAC MID | MARKER | MK 55 17 PRY BC E 10 | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | 17 | MARKER | CENTRIC | PRIME | PO35055/5357 | | 40 | | 517 |
| BEEMAC MID | MARKER | MK 55 17 PRY BC E 10 | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | 17 | MARKER | CENTRIC | PRIME | PO4034 | | 3 | | 636 |
| UNITED MID | MARKER | MK 55 17 PRY BC E 10 | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 9FT | 17 | MARKER | CENTRIC | PRIME | PO-5506/10245 | | 3 | | 325 |
| BEEMAC MID | MARKER | MK 55 17 PRY BC E 5 | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 5FT | 17 | MARKER | CENTRIC | PRIME | PO-3179 | | 1 | | 628 |
| PRECISION | MARKER | MK 55 1983 PMS1 UTSF | 5-1/2" 19.83# (0.361wt) P110-MS1 R1 ULTRA SF SMLS | 19.83 | MARKER JT | KOPPEL | REJECT | EPS-22617-RTN | | 2 | | |
| PRECISION | MARKER | MK 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT | 20 | SMLS MARKER | REPUBLIC TUBE | PRIME | EPS-22660-RTN | | 1 | | |
| PRECISION | MARKER | MK 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT | 20 | SMLS MARKER | REPUBLIC TUBE | RETURN | EPS-22663-RTN | | 1 | | |
| PRECISION | MARKER | MK 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT | 20 | SMLS MARKER | REPUBLIC TUBE | RETURN | EPS-22664-RTN | | 2 | | |
| PRECISION | MARKER | MK 55 20 PCY BKHT S | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT | 20 | SMLS MARKER | REPUBLIC TUBE | RETURN | EPS-22819-RTN | | 1 | | |
| BEEMAC MID | MARKER | MK 55 20 PCY DQX S | 5-1/2" 20.00# (0.361wt) P110-CY R1 DQX SMLS | 20 | MARKER JT | TMK | PRIME | PO-7994/8057 | | 2 | | 416 |
| BEEMAC MID | MARKER | MK 55 20 PCY DQX S | 5-1/2" 20.00# (0.361wt) P110-CY R1 DQX SMLS | 20 | MARKER JT | TMK | REJECT | EPS-22817-RTN | | 2 | | |
| BEEMAC MID | MARKER | MK 55 20 PCY DQX S10 | 5-1/2" 20.00# (0.361wt) P110-CY R1 DQX SMLS | 20 | 10FT MARKER | | PRIME | EPS-21721-RTN | | 1 | | |
| BEEMAC MID | MARKER | MK 55 20 PCY GB E | 5-1/2" 20.00# (0.361wt) P110-CY R1 GBCD ERW | 20 | MARKER | BOOMERANG | INSPECTED | EPS-19713-RTN | | 1 | | 347 |
| DUFFY | MARKER | MK 55 20 PCY GB E | 5-1/2" 20.00# (0.361wt) P110-CY R1 GBCD ERW | 20 | MARKER | BOOMERANG | PRIME | PO3562 | | 41 | | 540 |
| DUFFY | MARKER | MK 55 20 PCY GB E | 5-1/2" 20.00# (0.361wt) P110-CY R1 GBCD ERW | 20 | MARKER | CENTRIC | PRIME | 8028/10483 | | 3 | | 250 |
| BEEMAC MID | MARKER | MK 55 20 PCY LC S | 5-1/2" 20.00# (0.361wt) P110-CY R1 LC SMLS | 20 | MARKER JT | TMK | RETURN | EPS-21673-RTN | | 1 | | |
| PRECISION | MARKER | MK 55 20 PCY LC S | 5-1/2" 20.00# (0.361wt) P110-CY R1 LTC SMLS | 20 | MARKER JT | TMK | PRIME | PO-6743/7999 | | 18 | | 418 |
| PRECISION | MARKER | MK 55 20 PCY LC S | 5-1/2" 20.00# (0.361wt) P110-CY R1 LTC SMLS | 20 | MARKER JT | TMK | PRIME | PO-9825 | | 2 | | 325 |
| ATLAS TUB | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | PO-8381 | | 1 | | 263 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20505-RTN | | 2 | | 329 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20513-RTN | | 1 | | 347 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20791-RTN | | 2 | | 420 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | RETURN | EPS-20851-RTN | | 2 | | 419 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20910-RTN | | 2 | | 392 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20939-RTN | | 2 | | 420 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21002-RTN | | 3 | | 347 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | RETURN | EPS-21028-RTN | | 2 | | 278 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21035-RTN | | 1 | | 392 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21136-RTN | | 3 | | 418 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21158-RTN | | 1 | | 347 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21200-RTN | | 3 | | 347 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21240-RTN | | 1 | | 347 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21419-RTN | | 2 | | 314 |
| IOS MID | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | PRIME | IPT-3023/PO-11790 | | 2 | | 235 |
| PATRIOT | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21111-RTN | | 1 | | 416 |
| PRECISION | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21373-RTN | | 1 | | 294 |
| PRECISION | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | REPAIRABLE | EPS-22104-RTN | | 1 | | 203 |
| PRECISION | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | REPAIRABLE | EPS-22106-RTN | | 2 | | 203 |
| TX PIPE WK | MARKER | MK 55 20 PCY TCB E10 | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | PRIME | PO-11874/10789 | | 212 | | 120 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB S | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | 20 | MARKER JT | BOOMERANG | PRIME | PO-60856/7774 | | 9 | | 475 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCB S15 | 5-1/2" 20.00# (0.361wt) P110-CY 15 FT TCBC-HT | 20 | 15 FT SMLS MARKER | REPUBLIC TUBE | PRIME | PO-870/113355 | | 1 | | 166 |
| ATLAS TUB | MARKER | MK 55 20 PCY TCB S20 | 5-1/2" 20.00# (0.361wt) P110-CY R1 TCBC-HT SMLS | 20 | 20 FT MARKER | REPUBLIC TUBE | PRIME | PO-8309/10790 | | 19 | | 263 |
| UNITED MID | MARKER | MK 55 20 PCY TCB S20 | 5-1/2" 20.00# (0.361wt) P110-CY R1 TCBC-HT SMLS | 20 | 20 FT MARKER | REPUBLIC TUBE | PRIME | PO-12950/13383 | | 4 | | 161 |
| ATLAS TUB | MARKER | MK 55 20 PCY TCBC S | 5-1/2" 20.00# (0.361wt) P110-CY 10FT TCBC-HT SMLS | 20 | 10 FT MARKER | REPUBLIC TUBE | PRIME | PO-8309/10789 | | 2 | | 263 |
| ATLAS TUB | MARKER | MK 55 20 PCY TCBC S | 5-1/2" 20.00# (0.361wt) P110-CY 10FT TCBC-HT SMLS | 20 | 10 FT MARKER | REPUBLIC TUBE | PRIME | PO-870/113307 | | 35 | | 166 |
| BEEMAC MID | MARKER | MK 55 20 PCY TCBC S | 5-1/2" 20.00# (0.361wt) P110-CY 10FT TCBC-HT SMLS | 20 | 10 FT MARKER | REPUBLIC TUBE | PRIME | PO-870/113307 | | 2 | | 166 |
| PRECISION | MARKER | MK 55 20 PCY TCBC S | 5-1/2" 20.00# (0.361wt) P110-CY 10FT TCBC-HT SMLS | 20 | 10 FT MARKER | REPUBLIC TUBE | RETURN | EPS-22201-RTN | | 1 | | 160 |
| UNITED MID | MARKER | MK 55 20 PCY TCBC S | 5-1/2" 20.00# (0.361wt) P110-CY 10FT TCBC-HT SMLS | 20 | 10 FT MARKER | REPUBLIC TUBE | PRIME | PO-12950/13382 | | 32 | | 161 |
| DUFFY | MARKER | MK 55 20 PHC BK S | 5-1/2" 20.00# (0.361wt) P110-HC R1 BK SMLS | 20 | MARKER JT | BOLY | PRIME | PO-5927 | | 1 | | 524 |
| DUFFY | MARKER | MK 55 20 PHC GB E | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | 20 | MARKER JT | BOOMERANG | PRIME | 3614/14076 | | 21 | | 50 |
| LUNDVALL | MARKER | MK 55 20 PHC GB E | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | 20 | MARKER JT | BOOMERANG | PRIME | 2256/13824 | | 11 | | 117 |
| BEEMAC MID | MARKER | MK 55 20 PHC MIP S | 5-1/2" 20.00# (0.361wt) P110-HC R1 MIP PANTHER | 20 | SMLS MARKER JT | BENTELER | PRIME | PO-8090 | | 3 | | 393 |
| KB HOU | MARKER | MK 55 20 PHC MIP9 S | 5-1/2" 20.00# (0.361wt) P110-HC R1 MIP PANTHER MS | 20 | SMLS MARKER JT | BENTELER | PRIME | PO-10961 | | 4 | | 265 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | REPAIRABLE | EPS-20261-RTN | | | - | 428 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | RETURN | EPS-20261-RTN | | | - | 579 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20375-RTN | | 1 | | 428 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | RETURN | EPS-20375-RTN | | | - | 569 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20377-RTN | | 1 | | 428 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | REPAIRABLE | EPS-20377-RTN | | | - | 428 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20449-RTN | | 1 | | 428 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20495-RTN | | 1 | | 428 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | PRIME | EPS-20577-RTN | | 3 | | 427 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20628-RTN | | 1 | | 393 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21036-RTN | | 3 | | 386 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-21038-RTN | | 1 | | 347 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | PRIME | PO-4025 | | | - | 600 |
| BEEMAC MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | PRIME | PO-4025 | | | - | 475 |
| UNITED MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | INSPECTED | EPS-20444-RTN | | 53 | | 475 |
| UNITED MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | PRIME | EPS-20116364 | | 2 | | 334 |
| UNITED MID | MARKER | MK 55 20 PHC TCB E10 | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | 20 | 10FT MARKER | BOOMERANG | RETURN | EPS-20116364 | | 4 | | 537 |
| BEEMAC MID | MARKER | MK 55 20 TNCY TCB E1 | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | 20 | 10FT MARKER | TENARIS | INSPECTED | EPS-21419-RTN | | 3 | | 314 |
| BEEMAC MID | MARKER | MK 55 20 TNCY TCB E1 | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | 20 | 10FT MARKER | TENARIS | INSPECTED | EPS-21486-RTN | | 2 | | 294 |
| BEEMAC MID | MARKER | MK 55 20 TNCY TCB E1 | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | 20 | 10FT MARKER | TENARIS | INSPECTED | EPS-21528-RTN | | 2 | | 313 |
| BEEMAC MID | MARKER | MK 55 20 TNCY TCB E1 | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | 20 | 10FT MARKER | TENARIS | PRIME | PO-5952/75268829 | | | - | 386 |
| BEEMAC MID | MARKER | MK 55 20 TNCY TCB E1 | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | 20 | 10FT MARKER | TENARIS | PRIME | PO-5952/75269287 | | 1 | | 386 |
| PRECISION | MARKER | MK 55 20 TNCY TCB E1 | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | 20 | 10FT MARKER | TENARIS | INSPECTED | EPS-21373-RTN | | 1 | | 294 |
| PRECISION | MARKER | MK 55 20 TNCY TCB E1 | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | 20 | 10FT MARKER | TENARIS | INSPECTED | EPS-21398-RTN | | 1 | | 294 |
| PRECISION | MARKER | MK 55 20 TNCY TCB E1 | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | 20 | 10FT MARKER | TENARIS | REPAIRABLE | EPS-21501-RTN | | 2 | | 312 |
| PRECISION | MARKER | MK 55 20 TNCY TCB E1 | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | 20 | 10FT MARKER | TENARIS | INSPECTED | EPS-21521-RTN | | 2 | | 315 |
| BEEMAC MID | MARKER | MK 55 20 TNCY TCB S | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT SMLS | 20 | 20FT MARKER JT | TENARIS | PRIME | EPS-22796/9016 | | 4 | | 347 |
| BEEMAC MID | MARKER | MK 55 2256 PICY SFW | 5-1/2" 22.56# (0.415wt) P110-CY R1 TDRG SFW SMLS | 22.56 | MARKER | TIMKEN | PRIME | EPS-21629-RTN | | 1 | | 234 |
| TSI JPORT | MARKER | MK 55 23 L GEO S | 5-1/2" 23.00# (0.415wt) L80 R1 GEOCONN SMLS MARKER | 23 | | TMK | SCRAP | PO3436 | | 1 | | |
| TSI JPORT | MARKER | MK 55 23 L GEO S | 5-1/2" 23.00# (0.415wt) L80 R1 GEOCONN SMLS MARKER | 23 | | VALLOUREC | SCRAP | PO3436 | | 1 | | |
| REPUBLIC | MARKER | MK 55 23 PCY BK S | 5-1/2" 23.00# (0.415wt) P110-CY R1 BK SMLS | 23 | MARKER | REPUBLIC TUBE | PRIME | PO-0490 | | | - | 659 |
| REPUBLIC | MARKER | MK 55 23 PCY BK S | 5-1/2" 23.00# (0.415wt) P110-CY R1 BK SMLS | 23 | MARKER | REPUBLIC TUBE | PRIME | PO-0490 | | | - | 657 |
| REPUBLIC | MARKER | MK 55 23 PHC TCBHT S | 5-1/2" 23.00# (0.415wt) P110-HC R1 TCBC-HT | 23 | MARKER | REPUBLIC TUBE | PRIME | PO-4027 | | 25 | | 595 |
| IOS HOU | MARKER | MK 55 23 PHC TCBHT S | 5-1/2" 23.00# (0.415wt) P110-HC R1 TCBC-HT | 23 | | NA | NA | QB UNKNOWN | | 1 | | |
| STEWART | MARKER | MK 55 23 PICY BLU 10 | 5-1/2" 23.00# (0.415wt) P110-ICY BLUE SMLS 10 FT | 23 | MARKER JT | TENARIS | PRIME | PO-12150 | | 3 | | 203 |
| REPUBLIC | MARKER | MK 55 23 PICY BLU S | 5-1/2" 23.00# (0.415wt) P110-ICY R1 BLUE SMLS | 23 | MARKER | TENARIS | RETURN | EPS-22139-RTN | | 1 | | 357 |
| REPUBLIC | MARKER | MK 55 23 PICY BLU S | 5-1/2" 23.00# (0.415wt) P110-ICY R1 BLUE SMLS | 23 | MARKER | TENARIS | PRIME | EPS-22348-RTN | | 1 | | |
| WASHITA | MARKER | MK 55 23 PRY CDQ E | 5-1/2" 23.00# (0.415wt) P110-RY R1 CDC-HT/D ERW | 23 | MARKER | TUBOS REUNIDOS | SCRAP | QB UNKNOWN/NA | | 1 | | |
| NOV WELLB | MARKER | MK 7 23 J LC E | 7" 23.00# (0.317wt) J55 R1 LTC ERW MARKER | 23 | | CH STEEL | SCRAP | PO3163 | | 1 | | |
| REPUBLIC | MARKER | MK 7 26 LHC BKHT S | 7" 26.00# (0.362wt) L80-HC R1 BK-HT SMLS | 26 | MARKER JT | REPUBLIC TUBE | PRIME | EPS-22441-RTN | | 1 | | 239 |
| BEEMAC MID | MARKER | MK 7 32 PCY BKHT S | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | 32 | MARKER JT | TMK | PRIME | EPS-21487-RTN | | 1 | | 347 |
| PATRIOT | MARKER | MK 7 32 PCY BKHT S | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | 32 | MARKER JT | TMK | PRIME | 11542/12192 | | 1 | | 152 |
| PRECISION | MARKER | MK 7 32 PCY BKHT S | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | 32 | MARKER JT | EVRAZ | PRIME | EPS-22660-RTN | | 2 | | 234 |
| PRECISION | MARKER | MK 7 32 PCY BKHT S | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | 32 | MARKER JT | EVRAZ | PRIME | EPS-22817-RTN | | 2 | | 234 |
| PRECISION | MARKER | MK 7 32 PCY BKHT S | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | 32 | MARKER JT | EVRAZ | PRIME | EPS-22819-RTN | | 2 | | 234 |
| PRECISION | MARKER | MK 7 32 PCY DQX S 10 | 7" 32.00# (0.453wt) P110-CY DQX SMLS 10FT MARKER | 32 | JT | | BOOMERANG | PO-9775 | | 1 | | |
| UNITED MID | MARKER | MK 758 297 PHC LC E | 7-5/8" 29.70# (0.375wt) P110-HC R1 LTC ERW MARKER | 29.7 | | BORUSAN | PRIME | EPS-18319-RTN | | 1 | | 475 |
| BEEMAC MID | MARKER | MK 758 297 PHC BC S | 7-5/8" 29.70# (0.375wt) P110-HC R1 BTC SMLS | 29.7 | | | | | | | | |
| REPUBLIC | MARKER | MK 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R1 LTC ERW MARKER | 36 | | HLD CLARK | PRIME | 11168/1381/11428 | | 6 | | 46 |
| REPUBLIC | MARKER | MK 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R1 LTC ERW MARKER | 36 | | CH STEEL | PRIME | 2216R-RTN/14128 | | 6 | | 46 |
| REPUBLIC | MARKER | MK 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R1 LTC ERW MARKER | 36 | | TENARIS | PRIME | EPS-20178-RTN/14128 | | 4 | | 48 |
| NOV WELLB | MARKER | MK 958 36 J SC E | 9-5/8" 36.00# (0.352wt) J55 R1 STC ERW MARKER | 36 | | SHIN YANG | INSPECTED | EPS-20224-RTN | | 1 | | |
| BEEMAC MID | MARKER | MK 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | 40 | MARKER JT | AXIS | SCRAP | EPS-21645-RTN | | 1 | | |
| BEEMAC MID | MARKER | MK 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | 40 | MARKER JT | AXIS | SCRAP | EPS-21645-RTN | | 1 | | |
| PRECISION | MARKER | MK 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | 40 | MARKER JT | BOOMERANG | INSPECTED | IPT-20217-RTN/6410 | | | - | 428 |
| BEEMAC MID | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | | AXIS | SCRAP | EPS-18872-RTN | | 1 | | 118 |
| UNITED MID | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | MARKER JT | AXIS | RETURN | EPS-18872-RTN | | 1 | | 118 |
| UNITED MID | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | MARKER JT | AXIS | RETURN | EPS-21648-RTN | | 1 | | 118 |
| BEEMAC MID | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | | AXIS | RETURN | EPS-21646-RTN | | 1 | | |

| Location Code | Item Category | Item Number | Description | Lbs/ft | Description 2 | iMill | iCondition | Lot No | JTS | Quantity | Tons | Days Aged 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEEMAC MID | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | | AXIS | INSPECTED | PO-7637 | | 1 | | 447 |
| PRECISION | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | | AXIS | RETURN | EPS-21687-RTN | | 1 | | 263 |
| PRECISION | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | | BOOMERANG | INSPECTED | EPS-21826-RTN | | 2 | | |
| PRECISION | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | | AXIS | RETURN | EPS-22195-RTN | | 1 | | |
| PRECISION | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | | AXIS | REJECT | EPS-22535-RTN | | 1 | | |
| PRECISION | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | | AXIS | RETURN | EPS-22816-RTN | | 1 | | |
| PRECISION | MARKER | MK 958 40 LHC BC E10 | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | 40 | | REPUBLIC TUBE | RETURN | EPS-22818-RTN | | 2 | | |
| BEEMAC MID | MARKER | MK 958 40 PHC BC E | 9-5/8" 40.00# (0.395wt) P110-HC R1 BTC ERW MARKER | 40 | | BOOMERANG | PRIME | PO-40295621 | | 6 | | 517 |
| ATLAS TUB | PUP JT | P 238 47 L EU8 E | 2-3/8" 4.70# (0.190wt) L80 R2 EUE 8RD ERW | 4.7 | | QB UNK | SCRAP | QB UNK | | 5 | | |
| NOV WELLB | PUP JT | P 45 116 PHC LC S | 4-1/2" 11.60# (0.250wt) P110-HC R1 LTC SMLS PUP JT | 11.6 | | TENARIS | INSPECTED | PO-13192.01 | | 4 | | 81 |
| NOV WELLB | PUP JT | P 45 116 PIC BC E | 4-1/2" 11.60# (0.250wt) P110-C BTC ERW | 11.6 | 10FT PUP JT | TENARIS | RETURN | 2114/10852 | | 1 | - | 249 |
| NOV WELLB | PUP JT | P 45 116 PIC BC E | 4-1/2" 11.60# (0.250wt) P110-C BTC ERW | 11.6 | 10FT PUP JT | TENARIS | PRIME | 2684/6857 | | 1 | | 480 |
| PRECISION | PUP JT | P 45 135 PCY GBCD S | 4-1/2" 13.50# (0.290wt) P110-CY 10FT GBCD SMLS | 13.5 | PUP JT | TENARIS | REPAIRABLE | EPS-22096-RTN | | 1 | | 225 |
| UNITED MID | PUP JT | P 45 135 PCY GBCD S | 4-1/2" 13.50# (0.290wt) P110-CY 10FT GBCD SMLS | 13.5 | PUP JT | TENARIS | PRIME | 10169/10213 | | 6 | | 312 |
| PRECISION | PUP JT | P 45 135 PHC BC E | 4-1/2" 13.50# (0.290wt) P110-HC R1 BTC ERW | 13.5 | | AXIS | REPAIRABLE | EPS-20068-RTN/11127 | | 2 | | 245 |
| UNITED MID | PUP JT | P 45 135 PHC BC E | 4-1/2" 13.50# (0.290wt) P110-HC R1 BTC ERW | 13.5 | | CENTRIC | PRIME | EPS-20662-RTN/12177 | | 4 | | 215 |
| KB HOU | PUP JT | P 45 135 PICY MIP S | 4-1/2" 13.50# (0.290wt) P110-CY MIP JT | 13.5 | SMLS PUP JT | TENARIS | PRIME | 3130/9527 | | 1 | | 344 |
| DUFFY | PUP JT | P 55 20 PHC GB E | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | 20 | 8FT PUP JT | TENARIS | PRIME | 22553/13898 | | 1 | | 89 |
| DUFFY | PUP JT | P 55 20 PHC GB E | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | 20 | | BOOMERANG | PRIME | 5295/14076 | | 8 | | 50 |
| LUNDVALL | PUP JT | P 55 20 PHC GB E | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | 20 | | BOOMERANG | PRIME | 22381/13824 | | 1 | | 117 |
| LUNDVALL | PUP JT | P 55 20 PHC GB E | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | 20 | | CENTRIC | PRIME | 6961/9190 | | 1 | | 71 |
| LUNDVALL | PUP JT | P 55 20 PHC GB E | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | 20 | | CENTRIC | PRIME | 8029/10252 | | 1 | | 71 |
| LUNDVALL | PUP JT | P 55 20 PHC GB E | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | 20 | | CENTRIC | PRIME | PO-8268 | | 1 | | 71 |
| UNITED MID | PUP JT | P 55 20 PHC GB E | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | 20 | | BOOMERANG | RETURN | EPS-22556-RTN | | 5 | | |
| DUFFY | PUP JT | P 55 20 PHC GB E 8 | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | 20 | 8FT PUP JT | CENTRIC | PRIME | QB UNK | | 8 | | |
| KB HOU | PUP JT | P 55 20 PHC MIP S | 5-1/2" 20.00# (0.361wt) P110-HC 10FT MI PANTHER | 20 | SMLS PUP JT | BENTELER | PRIME | PO-9564 | | 4 | | 307 |
| PRECISION | PUP JT | P 55 20 PHC MIP S | 5-1/2" 20.00# (0.361wt) P110-HC 10FT MI PANTHER | 20 | SMLS PUP JT | KOPPEL | INSPECTED | EPS-22006-RTN | | 3 | | |
| STEWART | PUP JT | P 55 23 PICY BLU S 5 | 5-1/2" 23.00# (0.415wt) P110-ICY BLUE PIN X PIN | 23 | SMLS 5FT PUP JT | TENARIS | PRIME | PO-943/11809 | | 4 | | 233 |
| REPUBLIC | PUP JT | P 726 LHC BKHT S | 7" 26.00# (0.362wt) L80-HC 10FT BK-HT SMLS PUP JT | 26 | | REPUBLIC TUBE | PRIME | 22086-F-RTN/12002 | | 1 | | 216 |
| PATRIOT | PUP JT | P 726 LHC BKHT S | 7" 26.00# (0.362wt) L80-HC 10FT BK-HT SMLS PUP JT | 26 | | REPUBLIC TUBE | PRIME | EPS-22441-RTN | | 1 | | |
| PATRIOT | PUP JT | P 732 PCY BK S | 7" 32.00# (0.453wt) P110-CY 10FT BK-HT SMLS | 32 | MARKER | EVRAZ | PRIME | 11542/11576/11885 | | 1 | | 221 |
| PRECISION | PUP JT | P 758 297 PHC LC E | 7-5/8" 29.70# (0.375wt) P110-HC R3 LTC ERW PUP JT | 29.7 | | SEAH | INSPECTED | EPS-22063-RTN | | 1 | | |
| PRECISION | PUP JT | P 758 297 PHC LC E | 7-5/8" 29.70# (0.375wt) P110-HC R3 LTC ERW PUP JT | 29.7 | | SEAH | SCRAP | EPS-22063-RTN | | 1 | | |
| UNITED MID | PUP JT | P 858 32 J BC E | 8-5/8" 32.00# (0.352wt) J55 R1 BTC ERW | 32 | PUP JT | KHC | PRIME | PO3233 | | 2 | | |
| UNITED MID | PUP JT | P 858 32 J BC E | 8-5/8" 32.00# (0.352wt) J55 R1 BTC ERW | 32 | PUP JT | NEXTEEL | PRIME | PO3233 | | 2 | | |
| NOV WELLB | PUP JT | P 958 36 J LC E | 9-5/8" 36.00# (0.352wt) J55 R1 LTC ERW PUP JT | 36 | | TENSION | PRIME | 2956/9191 | | 2 | | 81 |
| REPUBLIC | PUP JT | P 958 40 J BC E | 9-5/8" 40.00# (0.395wt) J55 R1 BTC ERW | 40 | PUP JT | CH STEEL | RETURN | EPS-22440-RTN | | 6 | | |
| PRECISION | PUP JT | P 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | 40 | | AXIS | SCRAP | EPS-22817-RTN | | 2 | | |
| PRECISION | PUP JT | P 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | 40 | | REPUBLIC TUBE | REPAIRABLE | EPS-22818-RTN | | 2 | | |
| PRECISION | PUP JT | P 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | 40 | | ARCELOR MITTAL | SCRAP | MI-8065-01 | | 3 | | |
| PRECISION | PUP JT | P 958 40 LHC BC E | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | 40 | | BOOMERANG | RETURN | MID-8937-01 | | 1 | | |
| CM SERVICE | PUP JT | P 958 40 LHC BC E S | 9-5/8" 40.00# (0.395wt) L80-HC BTC PIN X PIN | 40 | ERW 5FT PUP JT | VYKSA | PRIME | PO-3186/10051 | | 2 | | 250 |
| BEEMAC MID | PROTECTOR SET | PSET 1338 BC | 13-3/8" BTC PROTECTOR SET | | | QB UNK | SCRAP | PO3806 | | 50 | - | |
| PRECISION | PROTECTOR SET | PSET 1338 BC | 13-3/8" BTC PROTECTOR SET | | | NA | NA | PO-7605 | | 27 | - | 295 |
| BEEMAC MID | PROTECTOR SET | PSET 55 BC HD | 5-1/2" BTC HD PROTECTOR SET | | | NA | PRIME | PO3806 | | 150 | - | |
| IND PIPE | PROTECTOR SET | PSET 858 BC HD | 8-5/8" BTC HD PROTECTOR SET | | | QB UNK | SCRAP | PO3806 | | 50 | - | |
| BEEMAC MID | PROTECTOR SET | PSET 858 BC HD | 8-5/8" BTC HD PROTECTOR SET | | | NA | PRIME | P10661 | | 50 | - | 588 |
| BEEMAC MID | PROTECTOR SET | PSET 958 BC | 9-5/8" BTC PROTECTOR SET | | | QB UNK | SCRAP | PO3806 | | 50 | - | |
| REPUBLIC | PROTECTOR SET | PSET 958 LC | 9-5/8" LTC PROTECTOR SET | | | NA | NA | PO-13807 | | 8 | - | 125 |
| PRECISION | CROSSOVER | X 45 PHC USF 55 BC | 4-1/2" 13.50# P110-HC R1 USF X 5-1/2" 19.83# BTC | 13.5 | SMLS CROSSOVER JT | REPUBLIC TUBE | INSPECTED | EPS-22617-RTN | | 1 | | |
| PRECISION | CROSSOVER | X 55 20 PCY BK LC S | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT BOX X | 20 | LTC PIN SMLS CROSSOVER JT | REPUBLIC TUBE | PRIME | PO-7913 | | 1 | | 386 |
| BEEMAC MID | CROSSOVER | X 55 20 PCY DQ LC S | 5-1/2" 20.00# (0.361wt) P110-CY DQX BOX X LTC | 20 | PIN SMLS CROSSOVER | TMK | PRIME | PO-67407990 | | 8 | | 420 |
| KB HOU | CROSSOVER | X 55 20 PHC DWC MI S | 5-1/2" 20.00# (0.361wt) P110-HC DWC PIN X MI PIN | 20 | SMLS CROSSOVER | BENTELER | PRIME | EPS-21844-001 | | 1 | | 274 |
| KB HOU | CROSSOVER | X 55 20 PHC DWC MI S | 5-1/2" 20.00# (0.361wt) P110-HC DWC PIN X MI PIN | 20 | SMLS CROSSOVER | BENTELER | PRIME | PO-9564 | | 1 | | 274 |
| UNITED MID | CROSSOVER | X 55 20 PHC GB TCBC | 5-1/2" 20.00# (0.361wt) P110-HC GBCD BOX X TCBC-HT | 20 | PIN ERW CROSSOVER | BOOMERANG | RETURN | EPS-22558-RTN | | 1 | | |
| PRECISION | CROSSOVER | X 55 20 PHC TC DWC E | 5-1/2" 20.00# P110-HC TCBC-HT PIN X DWC PIN ERW | 20 | CROSSOVER | HYUNDAI | SCRAP | EPS-22674-RTN | | 1 | | |
| REPUBLIC | CROSSOVER | X 55 23 P S 18 SFW S | 5-1/2" 23.00# (0.415wt) P110-ICY HP TORQ SFW BOX X | 23 | 5" 18.00# (0.362wt) TORQ SFW | TMK | INSPECTED | EPS-21625-RTN | | 1 | | |
| REPUBLIC | CROSSOVER | X 55 23 PICY BC 513 | 5-1/2" 23.00# (0.415wt) P110-ICY BTC X T513 PIN | 23 | SMLS CROSSOVER | TENARIS | RETURN | QB UNK | | 1 | | |
| REPUBLIC | CROSSOVER | X 55 23 PICY BLU LC | 5-1/2" 23.00# (0.415wt) P110-ICY BLUE x LTC SMLS | 23 | CROSSOVER | TENARIS | RETURN | EPS-16814-RTN | | 1 | | 599 |
| REPUBLIC | CROSSOVER | X 55 23 PICY BLU LC | 5-1/2" 23.00# (0.415wt) P110-ICY BLUE x LTC SMLS | 23 | CROSSOVER | TENARIS | PRIME | EPS-20742-RTN | | 1 | | 357 |
| REPUBLIC | CROSSOVER | X 55 23 PICY BLU LC | 5-1/2" 23.00# (0.415wt) P110-ICY BLUE x LTC SMLS | 23 | CROSSOVER | TENARIS | INSPECTED | PO-12048 | | 1 | | 210 |
| REPUBLIC | CROSSOVER | X 55 23 PICY BLU LC | 5-1/2" 23.00# (0.415wt) P110-ICY BLUE x LTC SMLS | 23 | CROSSOVER | TENARIS | PRIME | PO3525 | | 1 | - | 659 |
| REPUBLIC | CROSSOVER | X 55 23 PICY BLU LC | 5-1/2" 23.00# (0.415wt) P110-ICY BLUE x LTC SMLS | 23 | CROSSOVER | TENARIS | PRIME | PO-4015 | | 1 | | 635 |
| SUPERIOR | CROSSOVER | X 55 23 PICY SFW BPN | 5-1/2" 23.00# (0.415wt) P110-ICY TORQ SFW BOX X | 23 | BPN PIN SMLS CROSSOVER JT | TENARIS | RETURN | PO3319/8803 | | 2 | | 390 |
| REPUBLIC | CROSSOVER | X 55 23 T BLU LC S | 5-1/2" 23.00# (0.415wt) T95 TSH BLUE BOX X LTC | 23 | SMLS CROSSOVER | TENARIS | RETURN | QB UNK | | 1 | | |
| REPUBLIC | CROSSOVER | X 55 23 T T625 LC S | 5-1/2" 23.00# (0.415wt) T95 TSH 625 BOX X LTC PIN | 23 | SMLS CROSSOVER | TENARIS | RETURN | PO3349 | | 11 | | 659 |
| REPUBLIC | CROSSOVER | X 55 P 563 45 P TXBC | 5-1/2" 23.00# (0.415wt) P110 TSH 563 x 4-1/2" | 23 | 13.50# (0.290wt) P110 TXP BTC | TENARIS | PRIME | PO-2583 | | 2 | | 659 |
| REPUBLIC | CROSSOVER | X 55 P 625 45 P TXBC | 5-1/2" 23.00# (0.415wt) P110 TSH 625 x 4-1/2" | 23 | 13.50# (0.290wt) P110 TXP BTC | TENARIS | PRIME | QB UNKNOWN | | 2 | | 659 |
| REPUBLIC | CROSSOVER | X 55 P BLU 45 P TXBC | 5-1/2" 23.00# (0.415wt) P110 BLUE x 4-1/2" | 23 | 13.50# (0.290wt) P110 TXP BTC | TENARIS | PRIME | PO-2583 | | 1 | | 659 |
| WASHITA | CROSSOVER | X 726 LHC BC FM S | 7" 26.00# (0.362wt) L80-HC BTC BOX X FLUSH | 26 | CROSSOVER | VALLOUREC | PRIME | EPS-20555-RTN | | 1 | | |
| TSI BEAR | CROSSOVER | X 726 PHC LC BC E | 7" 26.00# (0.362wt) P110-HC R1 LTC BOX X BTC PIN | 26 | ERW CROSSOVER | VALLOUREC | PRIME | 21962/10956 | | 2 | | 263 |
| PRECISION | CROSSOVER | X 726 PHC LC BC E | 7" 26.00# (0.362wt) P110-HC R1 LTC BOX X BTC PIN | 26 | ERW CROSSOVER | SEAH | RETURN | EPS-22392-RTN | | 1 | | |
| KB HOU | CROSSOVER | X 726 PHC LC BC E | 7" 26.00# (0.362wt) P110-HC R1 LTC BOX X BTC PIN | 26 | ERW CROSSOVER | VALLOUREC | USED | 22188-RTN/11916 | | 1 | | |
| KB HOU | CROSSOVER | X 732 P DQX 5 20 BK | 7" 32.00# (0.453wt) P110-CY DQX BOX x 5-1/2" 20# | 32 | (0.361wt) BK-HT PIN CROSSOVER | TMK | PRIME | PO-12375 | | 2 | | 179 |
| REPUBLIC | CROSSOVER | X 732 PCY BK 55 20 | 7" 32.00# (0.453wt) P110-CY BK-HT BOX X 5-1/2" | 32 | 20.00# (0.361# P110-CY BK-HT | TMK | RETURN | EPS-21487-RTN | | 1 | | |
| PATRIOT | CROSSOVER | X 732 PCY BK 55 20 | 7" 32.00# (0.453wt) P110-CY BK-HT BOX X 5-1/2" | 32 | 20.00# (0.361# P110-CY BK-HT | TMK | RETURN | EPS-22814-RTN | | 1 | | 5 |
| PATRIOT | CROSSOVER | X 732 PCY BK 55 20 | 7" 32.00# (0.453wt) P110-CY BK-HT BOX X 5-1/2" | 32 | 20.00# (0.361# P110-CY BK-HT | EVRAZ | RETURN | PO-11939 | | 2 | | 217 |
| PRECISION | CROSSOVER | X 732 PCY BK 55 20 | 7" 32.00# (0.453wt) P110-CY BK-HT BOX X 5-1/2" | 32 | 20.00# (0.361# P110-CY BK-HT | EVRAZ | RETURN | EPS-22064-RTN | | 1 | | |
| PRECISION | CROSSOVER | X 732 PCY BK 55 20 | 7" 32.00# (0.453wt) P110-CY BK-HT BOX X 5-1/2" | 32 | 20.00# (0.361# P110-CY BK-HT | REPUBLIC TUBE | RETURN | EPS-22801-RTN | | 1 | | |
| BEEMAC MID | CROSSOVER | X 732 PCY DQ 55 20 | 7" 32.00# (0.453wt) P110-CY DQX BOX X 5-1/2" | 32 | 20.00# (0.361wt) P110-CY DQX PIN | TMK | PRIME | PO-21673-RTN | | 1 | | 459 |
| BEEMAC MID | CROSSOVER | X 732 PCY DQ 55 20 | 7" 32.00# (0.453wt) P110-CY DQX BOX X 5-1/2" | 32 | 20.00# (0.361wt) P110-CY DQX PIN | TMK | PRIME | PO-6974 | | 1 | - | 459 |
| CM SERVICE | CROSSOVER | X 958 40 LHC BC LC E | 9-5/8" 40.00# (0.395wt) L80-HC BTC BOX X LTC PIN | 40 | ERW CROSSOVER | NA | PRIME | PO3414 | | 2 | | 571 |
| PRECISION | CROSSOVER | X 958 40 LHC BC LC E | 9-5/8" 40.00# (0.395wt) L80-HC BTC BOX X LTC PIN | 40 | ERW CROSSOVER | BOOMERANG | RETURN | EPS-21944-RTN | | 1 | | |
| PRECISION | CROSSOVER | X 958 40 LHC BC LC E | 9-5/8" 40.00# (0.395wt) L80-HC BTC BOX X LTC PIN | 40 | ERW CROSSOVER | BOOMERANG | SCRAP | EPS-22152-RTN | | 1 | | |
| | | | | | | | | | | | 14,252.30 | |

**SCHEDULE 2.1(b)**
**Intellectual Property**

None.

**SCHEDULE 2.1(e)**
**Permits**

None.

**SCHEDULE 2.1(i)**
**Accounts**

See attached (updated as of October 20, 2020).



Schedule 2.1i -
Accounts.pdf

| OUTSTANDING A/R | PAY ON CLOSE | PAY ON COLLECTION | |
|---|---|---|---|
| BAYSWATER EXPLORATION AND PRODUCTION LLC | 247,549.16 | | |
| BKV OPERATING LLC | 50,603.27 | | |
| COMMERCIAL STEEL PRODUCTS LLC | 568,858.03 | | |
| CUB CREEK ENERGY LLC | 154,943.98 | | |
| DEEP WELL TUBULAR SERVICES | 28,904.18 | | |
| DJR ENERGY | 190,015.75 | | |
| EOG RESOURCES INC (SAN ANTONIO) | 8,904.60 | | |
| GLENN E SESSIONS AND SONS INC | 4,509.10 | | |
| GREAT WESTERN OPERATING COMPANY LLC | 90,745.47 | | |
| INDEPENDENT TUBULAR CORP | 1,016.46 | | |
| NOBLE ENERGY MIDSTREAM | 75,529.89 | | |
| PATRIOT THREADING | 264,922.76 | | |
| PRECISION PIPE RENTALS LLC | 340.20 | | |
| R LACY SERVICES LTD | 1,104.15 | | |
| SANDRIDGE ENERGY | 120,477.37 | | |
| TENARIS GLOBAL SERVICES USA CORP | 24,722.66 | | |
| TRADING HERITAGE INT | 12,621.23 | | |
| | 1,845,768.26 | | |
| | | | |
| **MARCO INTERNATIONAL** | 2,636,810.55 | | |
| | | | |
| **SUB-TOTAL** | 4,482,578.81 | | |
| | | | |
| **EXCLUSIONS (insolvency)** | | | |
| EXTRACTION OIL AND GAS INC | - | | |
| OASIS | - | | |
| | - | | |
| | | | |
| **CREDITS** | | | |
| BISON OIL AND GAS II | - | | |
| ETC INTRASTATE PROCUREMENT CO | - | | |
| GUINEA CO | - | | |
| XTO ENERGY INC | - | | |
| | - | | |
| | | | |
| | 4,482,578.81 | | |
| **LONG TERM A/R** | | | |
| DJR ENERGY | - | 85% | 331,845.41 |
| ENDURING RESOURCES | - | 85% | 3,151,787.76 |
| | - | | 3,483,633.17 |
| | | | |
| TOTAL A/R: | 4,482,578.81 | | 3,483,633.17 |
| | | | |
| TOTAL A/R PAYMENTS: | 4,482,578.81 | | 7,966,211.98 |

**SCHEDULE 2.2**
**Material Contracts; Leases; Cure Amounts**

**Material Contracts and Leases:**

1. Lease Agreement, dated December 17, 2013, by and between Katy Hollow Memorial Ltd. and Seller, as amended by that certain Lease Extension Agreement and First Amendment to Lease, effective as of April 15, 2017, that certain Lease Extension Agreement and Second Amendment to Lease, that certain Lease Extension Agreement and Third Amendment to Lease, effective as of May 1, 2018 and that certain and that certain Lease Extension Agreement and Fourth Amendment to Lease.
2. Larimer Square Standard Office Lease, dated July 6, 2016, by and among Larimer Square Associates, Ltd., Hermanson Family Limited Partnership I, LLLP and Seller, as amended by that certain First Amendment dated January 30, 2017, that certain Second Amendment to Lease dated October 26, 2017 and that certain Third Amendment to Lease dated November 5, 2018.
3. One Wall Plaza Building Lease Agreement, dated July 12, 2018, by and between BOA Midland Acquisition, L.P. and Seller.
4. Agreement for Professional Services, dated February 26, 2020, by and between BDO USA, LLP and Seller, and related State of Work dated February 26, 2020.
5. Commercial Premium Finance Agreement, dated May 1, 2020, by and between First Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A., and Seller.
6. Lease Agreement, dated June 29, 2018, by and between Everbank Commercial Finance, Inc. and Seller.
7. Property Tax Consulting Services Engagement Letter, dated November 12, 2018, by and between Delta Property Texas Advisors LLC and Seller.
8. Consulting and Bonus Agreement, dated September 1, 2016, by and between Tesanovich Holdings, LLC and Seller

**Cure Amounts**:

1. BOA Midland Acquisition, L.P. - $[1,667.24]
2. BDO USA, LLP - $[4,910.13]
3. Delta Property Texas Advisors LLC – approximately $[10,000]
4. Cure Amounts owed to Warehouse locations:
   a. Beemac Midland - $[87,317.52]
   b. Black Hills Evansville, WY – [$1,000.00]
   c. Commercial Resins (CO) - $[8,528.08]
   d. CPS Baytown - $[2,038.16]
   e. Deep Well Tubular Services - $[1,000.00]
   f. Duffy Crain and Hauling - $[8,955.25]
   g. EL Farmer Midland - $[1,350.00]
   h. Fort Worth Pipe Services Pennsylvania - $[600.00]
   i. Fort Worth Pipe Services Texas - $[900.00]
   j. Independent Pipe Services - $[4,500.00]
   k. IOS Inspection Oilfield Service - $[2,240.00]

l.   IOS Midland - $[2,700.00]
m.  Lundvall Enterprises - $[4,180.41]
n.   McClatchy Bros Yard - $[6,750.00]
o.   MM Welding and Construction Inc. - $[3,000]
p.   NOV Wellbore Technologies - $[1,987.10]
q.   OFSI Odessa - $[1,000.00]
r.   Republic Tube - $[5,919.75]
s.   Savage Services ND - $[600]
t.   Stallion Oilfield - $[2,250.00]
u.   TSI Bear Bayou - $[2,996.61]
v.   Washita Valley - $[1,500.00]

**Offices**:

| Name | Address | City | ZIP Code | State | DEPOSIT |
|---|---|---|---|---|---|
| HOUSTON OFFICE | 9525 KATY FWY STE 306 | HOUSTON | 77002 | TX | - |
| DENVER OFFICE | 1228 15TH ST STE 200 | DENVER | 80202 | CO | $2,990.00 |
| MIDLAND OFFICE | 306 W WALL ST STE 215 | MIDLAND | 79701 | TX | $1,347.50 |

**Warehouses**:

| Name | Address | City | ZIP Code | State |
|---|---|---|---|---|
| A&A COATERS | 3679 FM 250 | LONE STAR | 75668 | TX |
| ALL TRANS | 9640 CLINTON DR 5 | HOUSTON | 77029 | TX |
| AM THREADERS | 16185 MCR 20 | FORT MORGAN | 80701 | CO |
| ARCTIC PIPE INSPECTION | 9500 SHELDON RD | HOUSTON | 77049 | TX |
| ATLAS TUBULAR ODESSA | 12017 W COUNTY RD 125 | ODESSA | 79765 | TX |
| AXIS PIPE AND TUBE | 1451 LOUIS E MIKULIN RD | BRYAN | 77807 | TX |
| BEEMAC MIDLAND | 2700 FM RD 307 | MIDLAND | 79706 | TX |
| BHM YARD | 11615 CROSBY LYNCHBURG RD | CROSBY | 77532 | TX |
| BISON RIG SITE | | | | |
| BLESS OILFIELD SERVICES | 6301 E MT HOUSTON RD | HOUSTON | 77050 | TX |
| BLACK HILLS EVANSVILLE WY | 9214 HWY 20 | EVANSVILLE | 82636 | WY |

| Name | Address | City | ZIP Code | State |
|---|---|---|---|---|
| BLACK HILLS GILLETTE WY | 101 ENTERPRISE AVE | GILLETTE | 82716 | WY |
| BOOMERANG TUBE | 1100 FM 3361 | LIBERTY | 77575 | TX |
| BORUSAN YARD | 4949 BORUSAN RD | BAYTOWN | 77523 | TX |
| CAST TRANSPORTATION | 9850 HAVANA ST | HENDERSON | 80640 | CO |
| CENTRIC PIPE YARD | 9670 US 259 | ORE CITY | 75683 | TX |
| CM SERVICE | 7411 MESA DR | HOUSTON | 77028 | TX |
| COMMERCIAL RESINS (CO) | 8100 E 96th Ave | HENDERSON | 80640 | CO |
| COMMERCIAL RESINS (NE) | 2321 INDUSTRIAL AVE NO 1 | SIDNEY | 69162 | NE |
| CONESTOGA SUPPLY | 11011 SHELDON RD | HOUSTON | 77044 | TX |
| COX LOGISTICS TERMINAL | 2294 FM 250 | LONE STAR | 75668 | TX |
| CPS BAYTOWN | 6225 FM 1942 | BAYTOWN | 77521 | TX |
| CPS CHANNELVIEW | 301 S SHELDON RD | CHANNELVIEW | 77530 | TX |
| CUB CREEK RIG SITE | | | | |
| DEEP WELL TUBULAR SERVICES | 6604 W HWY 80 | MIDLAND | 79706 | TX |
| DJR RIG SITE | | SAN JUAN COUNTY | | NM |
| DROP SHIP | | | | |
| DUFFY CRAIN AND HAULING | 501 E COLLINS | EATON | 80615 | CO |
| DURA BOND DUQUESNE | 5 N LINDEN ST | DUQUESNE | 15110 | PA |
| DURA BOND STEELTON | 2716 S FRONT ST | STEELTON | 17113 | PA |
| EL FARMER HOUSTON | 15706 BEAUMONT HWY | HOUSTON | 77049 | TX |
| EL FARMER MIDLAND | 1002 S COUNTY RD W | ODESSA | 79763 | TX |
| EL FARMER MIDLAND RETURNS | 1002 S COUNTY RD W | ODESSA | 79763 | TX |
| FOUR POINT RECLAMATION | 2605 E HWY 66 | EL RENO | 73036 | OK |
| FRONTIER TUBULAR SOLUTIONS | 4725 N BOULEVARD | EDMOND | 73025 | OK |
| FORT WORTH PIPE SERVICES PENNSYLVANIA | 60 DOMINIC PLACE | SAYRE | 18840 | PA |
| FORT WORTH PIPE SERVICES TEXAS | 3805 BETHEL DR | BIG SPRING | 79720 | TX |
| GE WELLHEADS | 321 BASHER DR | BERTHOUD | 80513 | CO |

| Name | Address | City | ZIP Code | State |
|---|---|---|---|---|
| GLASSBORE COMPOSITE LINING SYSTEMS | 7812 W HWY 80 | MIDLAND | 79706 | TX |
| HOWARD SUPPLY | 821 E MAIN ST | FARMINGTON | 87401 | NM |
| HUNTING MARRERO | 6615 RIVER RD | MARRERO | 70072 | LA |
| IN TRANSIT | | | | |
| INDEPENDENT PIPE SERVICES | 9025 PINELAND RD | HOUSTON | 77044 | TX |
| INDUSTRIAL SCREEN AND MAINTENANCE | 2285 LOGOS CT | GRAND JUNCTION | 81505 | CO |
| IOS CASPER | 3501 N POPLAR | CASPER | 82601 | WY |
| IOS INSPECTION OILFIELD SERVICE | 7814 MILLER RD 3 | HOUSTON | 77049 | TX |
| IOS KIMBALL | 4386 US 30 | KIMBALL | 69145 | NE |
| IOS MIDLAND | 2600 E I-20 | MIDLAND | 79706 | TX |
| JB OILFIELD SUPPLY | 1060 LOCKWOOD DR | HOUSTON | 77020 | TX |
| JINDAL BAYTOWN | 1411 FM 565 S | BAYTOWN | 77520 | TX |
| JPF ULTRA SONIC | 9103 PINELAND RD | HOUSTON | 77044 | TX |
| KB HOUSTON | 8500 MILLER RD 2 | HOUSTON | 77049 | TX |
| KB LA | 208 REBECCAS POND RD | SCHRIEVER | 70395 | LA |
| KJ CONSTRUCTION LLC | 719 E ADAMS ST | CHEROKEE | 73728 | OK |
| LARAMIE RIG SITE | | MESA COUNTY | | CO |
| LARAMIE YARD | | MESA COUNTY | | CO |
| LB FOSTER COMPANY | 15786 HWY 75 N | WILLIS | 77378 | TX |
| LINCOLN MANUFACTURING | 5301 POLK ST | HOUSTON | 77023 | TX |
| LINER SHOES | 16415 WAVERLY DR | HOUSTON | 77032 | TX |
| LONE STAR HYDRO AND MAINTENANCE | 7404 MILLER RD #2 | HOUSTON | 77049 | TX |
| LONE STAR TUBULAR SERVICES | 2230 FM 729 | LONE STAR | 75668 | TX |
| LUNDVALL ENTERPRISES | 15487 CR46 | LASALLE | 80645 | CO |
| MCCLATCHY BROS YARD | 3901 W INDUSTRIAL | MIDLAND | 79703 | TX |
| MCIP CORPORATION | 4501 KNAPP RD | PEARLAND | 77581 | TX |
| MM WELDING AND CONSTRUCTION INC | 21630 HWY 6 AND 24 | RIFLE | 81650 | CO |

| Name | Address | City | ZIP Code | State |
|---|---|---|---|---|
| NEW MEXICO TRANSLOADING | 5101 WILLIAMS ST SE | ALBUQUERQUE | 87105 | NM |
| NOV EDMOND | 3600 S KELLY | EDMOND | 73013 | OK |
| NOV WELLBORE TECHNOLOGIES | 30 RD 3351 | AZTEC | 87410 | NM |
| OFSI HOUSTON | 7735 MILLER RD 3 | HOUSTON | 77049 | TX |
| OFSI ODESSA | 333 BRAZOS AVE | ODESSA | 79764 | TX |
| ORE CITY | 15825 STATE HWY 155 N | ORE CITY | 75683 | TX |
| OSAGE TRANSPORTATION | 13833 GARRETT RD | HOUSTON | 77044 | TX |
| PARAGON | 3378 W HWY 117 | SAPULPA | 74066 | OK |
| PATRIOT THREADING | 8300 W HWY 80 | MIDLAND | 79706 | TX |
| PERMIAN ENTERPRISES | 2121 W MURPHY ST | ODESSA | 79763 | TX |
| PETROSMITH | 7435 US HWY 277 S | ABILENE | 79606 | TX |
| PINNACLE MACHINE WORKS | 10521 SHELDON RD | HOUSTON | 77044 | TX |
| PRECISION PIPE RENTALS | 2114 FM 1208 | STANTON | 79782 | TX |
| PIPE RECLAMATION INC | 13530 W IH-20 | ODESSA | 79763 | TX |
| RENTERS MATERIAL HANDLING | 12825 GREEN RIVER DR | HOUSTON | 77044 | TX |
| REPUBLIC TUBE | 11200 MESA DR | HOUSTON | 77078 | TX |
| ROTARY DRILLING TOOLS INC USA LP | 9022 VINCIK EHLERT RD | BEASLEY | 77417 | TX |
| SANDRIDGE RIG SITE | | JACKSON COUNTY | | CO |
| SAVAGE SERVICES ND | 14891 NW 42ND ST | WILLISTON | 58801 | ND |
| SHAWCOR | 4501 KNAPP RD | PEARLAND | 77581 | TX |
| SPLENDORA PIPE SERVICES | 26670 MIDLINE RD | CLEVELAND | 77328 | TX |
| STALLION OILFIELD | 14070 49TH ST NW | WILLISTON | 58801 | ND |
| STEWART TUBULAR | 5951 N HOUSTON ROSSLYN RD | HOUSTON | 77091 | TX |
| SOUTHERN TUBE | 13500 INDUSTRIAL RD | HOUSTON | 77015 | TX |
| STREAM FLO | 3102 HIGHWAY 59 E | BEEVILLE | 78102 | TX |
| SUPERIOR THREADED PRODUCTS | 9405 E SAM HOUSTON PKWY N | HOUSTON | 77044 | TX |
| TECHNICAL INDUSTRIES | 15438 MILLER ONE RD LOT A | HOUSTON | 77049 | TX |

| Name | Address | City | ZIP Code | State |
|---|---|---|---|---|
| TEDA TPCO AMERICA | 5431 HWY 35 | GREGORY | 78359 | TX |
| TEJAS TUBULAR HOUSTON | 8710 MILLER RD 2 | HOUSTON | 77049 | TX |
| TEJAS TUBULAR STEPHENVILLE | 600 CAPORAL DR | STEPHENVILLE | 76401 | TX |
| TENARIS HICKMAN | 5000 N CO RD 967 | BLYTHEVILLE | 72315 | AR |
| TMK BAYTOWN | 2600 GRAND PKWY | BAYTOWN | 77523 | TX |
| TMK WILDER KY COATING FACILITY | 84 STEEL PLANT RD | WILDER | 41071 | KY |
| TOP THREADING | 11613 CROSBY LYNCHBURG RD | CROSBY | 77532 | TX |
| TRANSIT | | | | |
| TRI POWER ENERGY SERVICES | 4341 SW 33RD ST | OKLAHOMA CITY | 73119 | OK |
| TRK ENTERPRISE | 350 O ST E | GREELEY | 80631 | CO |
| TS UPSET AND THREAD | 18702 E HARDY RD | HOUSTON | 77073 | TX |
| TSC BRYAN | 1700 INDEPENDENCE AVE | BRYAN | 77803 | TX |
| TSC HOUSTON | 10881 ALMEDA RD | HOUSTON | 77045 | TX |
| TSI BEAR BAYOU | 15938 BEAR BAYOU DR. | CHANNELVIEW | 77530 | TX |
| TSI JPORT | 2030 JACINTOPORT BLVD | HOUSTON | 77015 | TX |
| TSI MCCARTY | 1010 MCCARTY ST | HOUSTON | 77029 | TX |
| TTL DAMAGE | 21630 HWY 6 AND 24 | RIFLE | 81650 | CO |
| TUBO AMELIA | 2112 LA 662 | AMELIA | 70340 | LA |
| TUBO NORTH | 10222 SHELDON RD | HOUSTON | 77049 | TX |
| TUBO ODESSA | 11919 W COUNTY RD 128 | ODESSA | 79765 | TX |
| TUBOSCOPE OKLAHOMA CITY | 1800 SE 44TH ST | OKLAHOMA CITY | 73129 | OK |
| TUBO SOUTH | 9015 SHELDON RD | HOUSTON | 77049 | TX |
| TEXAS PIPE WORKS | 9444 INDUSTRIAL DR | NAVASOTA | 77868 | TX |
| UNITED CASING HOUSTON | 10901 SHELDON RD | HOUSTON | 77044 | TX |
| UNITED CASING MIDLAND | 3610 TX 158 | MIDLAND | 79706 | TX |

| Name | Address | City | ZIP Code | State |
|---|---|---|---|---|
| WASHITA VALLEY | 1705 SE 59TH ST | OKLAHOMA CITY | 73129 | OK |
| WOMBLE HOUSTON | 12821 INDUSTRIAL RD | HOUSTON | 77015 | TX |

**SCHEDULE 2.3(i)**
**Excluded Assets**

None.

# Schedule 3.1

|  |  |  | UNDISPUTED ONLY | |
| --- | --- | --- | --- | --- |
| CLASS | Tons | | Price | % of book |
| Undisputed | 14,252 | 65% | $ 300.00 | $ 4,275,600 |
| Boomerang | 4,044 | 19% | | $ - |
| Centric | 3,482 | 16% | | $ - |
| | 21,778 | | | $ 4,275,600 |
| Cure Costs: | | | Up to | $ 100,000 |
| A/R at closing or earlier: | | | | $ 4,482,579 |
| **TOTAL AT CLOSE:** | | | | $ 8,858,179 |
| Long Term A/R at term: | | | | $ 3,483,633 |
| **TOTAL BID:** | | | | **$ 12,341,812** |
| POTENTIAL EARN OUT | | | | $ 1,500,000 |
| **TOTAL BID WITH EARN OUT:** | | | | **$ 13,841,812** |

## SCHEDULE 4.2
## Authority; No Violation

None.

**SCHEDULE 4.6**
**Brokers**

None.

**SCHEDULE 4.8**
**Transactions Outside of the Ordinary Course**

None.

**SCHEDULE 4.14(a)**
**Employee Benefit Plans**

1. Insperity 401K Plan
2. Insperity UnitedHealthcare Choice Plus 1000
3. Consulting and Bonus Agreement, dated September 1, 2016, by and between Tesanovich Holdings, LLC and Seller

## SCHEDULE 4.14(c)
## Employee Benefit Plans Compliance

None.

**SCHEDULE 4.14(d)**
**Employee Benefit Plans Proceedings**

None.

**SCHEDULE 4.16**
**Environmental Matters**

None.

**SCHEDULE 4.17**
**Litigation**

1. Civil Action 4:20-cv-01856; *Eagle Pipe, LLC v. Kathryn Y. Thompson*; In the United States District Court for the Southern District of Texas, Houston Division.  On May 28, 2020, Eagle Pipe filed suit against a former Eagle Pipe salesperson named Kathryn Thompson ("Thompson") for misappropriation of trade secrets under Texas and federal law and certain other causes of action related to Thompson's misuse of Eagle Pipe's confidential information and trade secrets.  On July 31, 2020, Thompson filed counterclaims against Eagle Pipe for wrongful termination, breach of her employment agreement, and defamation.  The parties have reached a verbal agreement in principle to settle this lawsuit for a mutual "walk-away" and release pending the remediation of Eagle Pipe's confidential and proprietary information from Thompson's electronic devices and accounts.

2. Small Claims Action 2020-12996; *Bricktown Center LLC &/or EXPRESSWAYS RENTAL PROPERTIES v. Eagle Pipe, LLC and Luke Wycoff*; In the Small Claims Court of Oklahoma County, Oklahoma.  On September 23, 2020, Eagle Pipe notified its landlord for Eagle Pipe's Oklahoma City, Oklahoma office that Eagle Pipe had vacated the premises and was terminating the lease for, among other things, the landlord's repeated unauthorized entry into the premises, after which, the premises was left unlocked.  In response, the landlord filed suit against Eagle Pipe and one of its Oklahoma City employees, Luke Wycoff, on October 5, 2020.  The landlord seeks back rent, late fees, and court costs of $1,692.41 for September 2020, and rent of $1,431.28 per month for the remainder of the lease's term (October 2020 – March 31, 2021).

3. Cause No. 2020-62174; *Boomerang Tube, LLC v. Eagle Pipe, LLC, Beemac, Inc., and Jared Light*; In the 189th Judicial District Court of Harris County, Texas.  Boomerang Tube, LLC ("Boomerang"), an OCTG mill, alleges Eagle Pipe breached a "Cancellation Agreement" pursuant to which Eagle Pipe and Boomerang cancelled certain purchase orders Eagle Pipe previously placed with Boomerang by failing to instruct Beemac, Inc., the operator of a third-party storage yard, to transfer certain pipe back to Boomerang from Eagle Pipe's stock.  Boomerang seeks approximately $5.3 million in damages.

**SCHEDULE 5.2**
**Purchaser's Authority; No Violation**

None.

*EXHIBIT A*

**Form of Escrow Agreement**

[To be attached]

*EXHIBIT B*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EAGLE PIPE, LLC | ) Case No. 20-34879 (MI) |
| | ) |
| Debtor.[1] | ) |
| | ) |
| | ) |

*PROPOSED*

**ORDER (I) AUTHORIZING THE SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, LIABILITIES, RIGHTS, INTERESTS AND ENCUMBRANCES AND OTHER INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated October 12, 2020 (the "Motion"),[2] of Eagle Pipe, LLC (the "Debtor") for entry of (I) an order (the "Bid Procedures Order") (a) approving the bidding procedures (the "Bid Procedures") and certain bid protections; (b) scheduling bid deadline, auction date and sale hearing (the "Sale Hearing") and approving form and manner of the notice; (c) approving cure procedures and the form and manner of notice; and (II) an order approving sale of substantially all of the Debtor's assets free and clear of liens, claims and interests (the "Sale"); and the Debtor having signed that certain Asset Purchase and Sale Agreement (as may be amended from time to time in accordance with the terms thereof and this Order, the "APA") contemplating the sale of certain of the Debtor's assets (specifically as defined in the APA, the "Acquired Assets") to the purchaser named in the APA (the "Purchaser") free and clear of any Claims, as defined herein (the "Sale Transaction"); and the Court having entered the Bid Procedures Order on October ___, 2020 [Docket No. ]; and the Court having entered an order (the

---

[1] The last four digits of each Debtor's federal tax identification number is (1119).

AFDOCS/23044737.1

"Stalking Horse Order") approving the Debtor's entry into a Stalking Horse Agreement with the Purchaser serving as the Stalking Horse Bidder and approving the Bid Protections (as defined in the Stalking Horse Order) on October _, 2020; and the Auction having been held on November _, 2020; and the Sale Hearing having been held on November _, 2020; and the Court having reviewed and considered the relief sought in the Motion, the APA, all objections to the Motion, and the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances of these chapter 11 cases and in accordance with the Bid Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

## THE COURT HEREBY FINDS THAT:[3]

### Jurisdiction and Venue

A.     This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

**Statutory Predicates**

B.     The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363, and 365.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, 9007, 9008.

**Final Order**

C.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

**Notice of the APA, Sale Transaction, Sale Hearing and Bid Procedures Order**

D.     On October 5, 2020 (the "Petition Date"), the Debtor commenced this chapter 11 cases (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has continued to operate and manage its businesses as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

E.     As evidenced by the affidavits of service and publication previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bid Procedures Order, the Stalking Horse Order, the Auction, the Sale Hearing, the APA and the Sale Transaction has been provided in accordance with Bankruptcy Code sections 102(1) and 363, Bankruptcy Rules 2002 and 9014, and Local Rules 2002-1 and 6004-1.  The Debtor has complied with all obligations to provide notice of the Motion, the Bid Procedures Order, the Stalking Horse Order, the Auction, the Sale Hearing, the APA and the Sale Transaction as required by the Bid Procedures Order.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bid Procedures Order, the Stalking Horse Order, the Auction, the Sale Hearing, the APA or the Sale Transaction is or shall be required.

3

F.     A reasonable opportunity to object or be heard regarding the relief requested in the Motion was afforded to all parties in interest.

**Compliance with the Bid Procedures Order**

G.     As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtor has complied in all material respects with the Bid Procedures Order.  The Debtor and its professionals have adequately and appropriately marketed the Acquired Assets in compliance with the Bid Procedures and the Bid Procedures Order, and accordance with the Debtor's fiduciary duties.  Based upon the record of these proceedings, creditors, other parties in interest and prospective Purchasers were afforded a reasonable and fair opportunity to bid for the Acquired Assets.

H.     The Bid Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Acquired Assets.  The Debtor conducted the sale process without collusion and in accordance with the Bid Procedures.

I.     The Bid Procedures Order and the Stalking Horse Order are incorporated herein by reference.

J.     The Purchaser is the Successful Bidder, and the APA is the Successful Bid, for the Acquired Assets in accordance with the Bid Procedures Order.  The Purchaser has complied in all respects with the Bid Procedures Order and all other applicable orders of this Court in negotiating and entering into the APA, and the Sale Transaction and the APA likewise comply with the Bid Procedures Order and all other applicable orders of this Court.

**Business Judgment**

4

K.      The APA, including the form and total consideration to be realized by the Debtor under the APA, (i) constitutes the highest and best offer received by the Debtor for the Acquired Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtor, its estate, their creditors and all other parties in interest.

L.      The Debtor's determination that the consideration provided by the Purchaser under the APA constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtor's business judgment.

M.      Consistent with its fiduciary duties, the Debtor has demonstrated good, sufficient and sound business reasons and justifications for entering into the Sale Transaction and the performance of its obligations under the APA, including, but not limited to, the fact that (i) the consideration provided by the Purchaser under the APA will provide a greater recovery for the Debtor's estates than would be provided by any other available alternative, including a separate liquidation of the Acquired Assets; and (ii) unless the Sale Transaction is concluded expeditiously as provided for in the Motion and pursuant to the APA, recoveries of creditors will be diminished.

**Corporate Authority**

N.      Subject to entry of this Order, the Debtor (i) has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) has all of the necessary corporate power and authority to consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtor of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment

5

of the Assumed Contracts, and (iv) subject to entry of this Order, needs no consents or approvals, other than those expressly set forth in the APA or this Order, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

## **Good Faith**

O.      The sales process engaged in by the Debtor and the Purchaser, including, without limitation, the Auction, which was conducted in accordance with the Bid Procedures and the Bid Procedures Order, and the negotiation of the APA, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.  Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Sale Transaction to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n).

P.      The Debtor and the Purchaser have complied, in good faith, in all respects with the Bid Procedures Order and the Bid Procedures.  The Debtor and its management, board of directors, board of managers (or comparable governing authority), employees, agents, and representatives, and the Purchaser and its employees, agents, advisors and representatives, each actively participated in the bidding process and in the Auction, and each acted in good faith.

Q.      The Purchaser is a good faith buyer within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision in respect of the Sale Transaction, each term of the APA (and any ancillary documents executed in connection therewith) and each term of this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  Neither the Debtor nor the Purchaser has engaged in any conduct that would prevent the application of Bankruptcy Code section 363(m).  The Debtor was

6

free to deal with any other party interested in buying or selling some or all of the Acquired Assets on behalf of the Debtor's estates. The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Purchaser would not consummate the Sale Transaction without such protections.

R.      The form and total consideration to be realized by the Debtor under the APA constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Acquired Assets.

S.      Neither the Purchaser nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of any of the Debtor, as that term is defined under Bankruptcy Code section 101(31).  No common identity of directors, managers, controlling shareholders, or members exists between the Debtor and the Purchaser.

## No Fraudulent Transfer

T.      The consideration provided by the Purchaser for the Acquired Assets pursuant to the APA (i) is fair and reasonable, (ii) is the highest and best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtor's creditors and estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession and the District of Columbia.

U.      The APA was not entered into, and neither of the Debtor or the Purchaser has entered into the APA or proposes to consummate the Sale Transaction, for the purpose of (i) escaping liability for any of the Debtor's debts or (ii) hindering, delaying or defrauding the Debtor's present or future creditors, for the purpose of statutory and common law fraudulent

7

conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

### Free and Clear

V.      The transfer of the Acquired Assets to the Purchaser will be legal, valid, and effective transfers of the Acquired Assets, and will vest the Purchaser with all right, title, and interest of the Seller to the Acquired Assets free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights and encumbrances, including, without limitation, the following:  all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, rights of Licensees or

8

sublicensees (if any) under Bankruptcy Code section 365(n) or any similar statute, rights of tenants and subtenants (if any) under Bankruptcy Code section 365(h) or any similar statute, claims or rights of third-party warehousemen and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Case (but, for the avoidance of doubt, in each case arising from the ownership of the Acquired Assets or the operation of the Debtor prior to the Closing Date), and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories (all of the foregoing, including, without limitation, liens and liabilities, collectively being referred to in this Order as "Claims" and, as used in this Order, the term "Claims" includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof).

W.      The Seller may transfer the Acquired Assets free and clear of all Claims including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those (a) holders of Claims and (b) non-Debtor parties to the Assumed Contracts, who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to section Bankruptcy Code 363(f)(2).  Those (i) holders of Claims and (ii) non-Debtor parties to the Assumed Contracts who did object, fall within one or more of the other subsections of Bankruptcy Code section 363(f).

AFDOCS/23044737.1

X.     The Debtor has to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

Y.     The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (i) if the transfer of the Acquired Assets were not free and clear of all Claims or (ii) if the Purchaser would, or in the future could, be liable for any such Claims.  The Purchaser will not consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that none of the Purchaser, their respective affiliates, their respective present or contemplated members or shareholders, or the Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims.

Z.     Not transferring the Acquired Assets free and clear of all Claims would adversely impact the Debtor's efforts to maximize the value of their estates, and the transfer of the Acquired Assets other than pursuant to a transfer that is free and clear of all Claims and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtor's estate.

AA.    Neither the Purchaser nor any of its affiliates are a mere continuation of the Debtor or its estate, there is no continuity or common identity between the Purchaser, any of its affiliates and the Debtor, and there is no continuity of enterprise between the Purchaser, any of its affiliates and the Debtor.   Neither the Purchaser nor any of its affiliates are holding themselves out to the public as a continuation of any of the Debtor.  Neither the Purchaser nor

10

any of its affiliates are a successor to any of the Debtor or their estates, and none of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts amounts to a consolidation, merger, or *de facto* merger of the Purchaser or any of its affiliates with or into any of the Debtor.

BB.    Without limiting the generality of the foregoing, none of the Purchaser, its affiliates, its and their respective present or contemplated members or shareholders, or the Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtor may incur in connection with consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, or that the Debtor has otherwise incurred prior to the consummation of the transactions contemplated by the APA.

## **Validity of Transfer**

CC.    The consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the APA.

DD.    The Acquired Assets constitute property of the Debtor's estate and good title thereto is vested in the Debtor's estates within the meaning of Bankruptcy Code section 541(a).

11

The Debtor is the sole and lawful owners of the Acquired Assets, and no other person has any ownership right, title, or interest therein.

**Assumed Contracts**

EE.     The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order and the APA is integral to the transactions contemplated by the APA and is in the best interests of the Debtor, its estates and creditors, and all other parties in interest, and represents a reasonable exercise of the Debtor's sound and prudent business judgment.

FF.     Pursuant to the terms of the APA and this Order, on or after the Closing Date, as applicable pursuant to the terms of this Order, the Purchaser shall have, except as otherwise provided in the APA or this Order, or as otherwise expressly agreed to between the Purchaser and such counterparty:  (i)  cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(A), (ii) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(B), and (iii) provided adequate assurance of its future performance under the Assumed Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).

GG.     Upon Closing, the Purchaser will have acquired all of the Seller's rights pursuant to any contract that relates to the use or licensing of any of the Intellectual Property or other Acquired Assets and that has been, or will be, rejected by the Seller.

**Compelling Circumstances for an Immediate Sale**

HH.     To maximize the value of the Acquired Assets and preserve the viability of the business to which the Acquired Assets relate, it is essential that the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts occur within the time constraints set forth in the APA.  Time is of the essence in consummating the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

II.     The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts prior to, and outside of, a chapter 11 plan because, among other things, consummation of the Sale Transaction pursuant to a chapter 11 plan is not feasible and the Debtor's estate will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis.  The transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts neither impermissibly restructure the rights of the Debtor's creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtor, and therefore, do not constitute a *sub rosa* plan.

### IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions

1.     The Motion is granted as provided herein, and entry into and performance under, and in respect of, the APA attached hereto as **Exhibit 1** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts  is authorized and approved.

13

2.      Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice.   All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein.

3.      This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

**<u>Approval of the APA</u>**

4.      The APA, all ancillary documents, the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and all the terms and conditions thereof, are approved.   The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

5.      The Debtor and its respective officers, employees and agents are authorized and directed to take any and all actions necessary, appropriate or requested by the Purchaser to perform, consummate, implement and close the Sale Transaction, including, without limitation, (a) the sale to the Purchaser of all Acquired Assets, in accordance with the terms and conditions set forth in the APA and this Order; and (b) executing, acknowledging and delivering such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying and confirming to the Purchaser, or reducing to possession, the Acquired Assets.   The Debtor is further authorized to pay, without further order of this Court, whether before, at or after the Closing Date, any

14

expenses or costs that are required to be paid in order to consummate the Transactions or perform its obligations under the APA and the Stalking Horse Order, including, without limitation, and subject to the terms of the Stalking Horse Order, the Expense Reimbursement.  Any amounts that become payable by the Debtor to the Purchaser pursuant to the Stalking Horse Order and/or the APA (and related agreements executed in connection therewith), shall (i) constitute allowed superpriority administrative expenses of the Debtor's estate under Bankruptcy Code sections 503(b)(1) and 507(a)(2) with priority over all other administrative claims against the Debtor; (ii) be treated with such priority if any Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code; and (iii) not be discharged, modified or otherwise affected by any reorganization plan for the Debtor, except by written agreement with the Purchaser (such agreement to be provided in the Purchaser's sole discretion).

6.     All persons and entities are prohibited and enjoined from taking any action to prevent, adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtor to transfer the Acquired Assets to the Purchaser in accordance with the APA and this Order.

7.     The sale of the Acquired Assets to the Purchaser under the APA constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Acquired Assets are located, and the sale of the Acquired Assets to the Purchaser may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

15

**<u>Transfer of the Acquired Assets Free and Clear</u>**

8.      Pursuant to Bankruptcy Code sections 105(a) and 363(f), the Acquired Assets shall be sold free and clear of all Claims, with all such Claims to attach to the proceeds of the Sale Transaction to be received by the Debtor with the same validity, force, priority and effect which they now have as against the Acquired Assets, subject to any claims and defenses the Debtor may possess with respect thereto; <u>provided</u>, <u>however</u>, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale Transaction.

9.      At Closing, all of the Debtor's right, title and interest in and to, and possession of, the Acquired Assets shall be immediately vested in the Purchaser pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f) free and clear of any and all Claims.  Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Purchaser with good and marketable title to, the Acquired Assets.  All person or entities, presently or on or after the Closing Date, in possession of some or all of the Acquired Assets are directed to surrender possession of the Acquired Assets to the Purchaser or its designees on the Closing Date or at such time thereafter as the Purchaser may request.

10.     This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby

16

authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the APA. The Acquired Assets are sold free and clear of any reclamation rights.

11.     Except as otherwise expressly provided in the APA or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Claims against the Debtor or the Acquired Assets arising under or out of, in connection with, or in any way relating to, the Debtor, the Debtor's predecessors or affiliates, the Acquired Assets, the ownership, sale or operation of the Acquired Assets prior to Closing or the transfer of the Acquired Assets to the Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset, or recover on account of any Claims against the Purchaser, its successors or assigns, their property or the Acquired Assets. Following the Closing, no holder of any Claim shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to any such Claim, or based on any action the Debtor may take in the Chapter 11 Cases.

12.     The Debtor is authorized to execute such documents as may be necessary to release any Claims of any kind against the Acquired Assets as such Claims may have been recorded or may otherwise exist. If any person or entity that has filed financing statements, *lis pendens* or other documents or agreements evidencing Claims against or in the Acquired Assets shall not have delivered to the Debtor prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of

17

satisfaction, releases of all Claims that the person or entity has with respect to the Acquired Assets, (a) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets; (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Claims against the Purchaser and the applicable Acquired Assets; and (c) the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Claims with respect to the Acquired Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of Claims shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

13.     To the maximum extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser with respect to the Acquired Assets as of the Closing Date.

14.     If, on or after the Closing Date, any Licensee of any of the Acquired Assets (including pursuant to any contract that may have been previously rejected by the Debtor) is

18

required, by agreement, contract or applicable law, to make royalty or similar payments to the Sellers on account of any Acquired Asset, such Licensee shall instead make any such payments to the Purchaser directly.

15.     No governmental unit (as defined in Bankruptcy Code section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Acquired Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate Bankruptcy Code section 525.

<u>**No Successor or Transferee Liability**</u>

16.     Upon the Closing Date, except as provided in the APA, the entrance of this Order and the APA shall mean that the Purchaser, as a result of any action taken in connection with the APA, the consummation of the Sale Transaction, or the transfer or operation of the Acquired Assets, shall not be deemed to: (a) be a legal successor or successor employer to the Debtor, or otherwise be deemed a successor to the Debtor, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtor or the enterprise(s) of the Debtor, including, in the case of each of (a)-(c), without limitation, (x) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("<u>COBRA</u>"), the WARN Act (29 U.S.C. §§ 2101 et seq.) ("<u>WARN</u>"), Comprehensive Environmental Response

19

Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. (the "NLRA") or (y) in respect of (i) any environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, (ii) any liabilities, debts or obligations of or required to be paid by the Debtor for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or (iii) any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.

17.     Without limiting the generality of the foregoing, and except as otherwise provided in the APA and this Order, neither the Purchaser nor any of its affiliates shall have any responsibility for (a) any liability or other obligation of the Debtor or related to the Acquired Assets or (b) any Claims against the Debtor or any of its predecessors or affiliates.  By virtue of the Purchaser's purchase of the Acquired Assets, neither the Purchaser nor any of its affiliates shall have any liability whatsoever with respect to the Debtor's (or its predecessors' or affiliates') respective businesses or operations or any of the Debtor's (or its predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental (including, but not limited to CERCLA), successor or transferee liability, *de facto* merger or substantial continuity, labor and employment (including, but not limited to,

20

WARN) or products liability law, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing.  The Purchaser would not have acquired the Acquired Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

18.    None of the Purchaser or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by the Debtor or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the APA and the entry into and consummation of the sale of the Acquired Assets, except as expressly provided in APA and this Order.

19.    Nothing in this Order or the APA shall require the Purchaser or any of its affiliates to (a) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtor is a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

20.    No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtor that are approved by this Order, including, without limitation, the APA and the Sale Transaction.

21

**Good Faith; Arm's Length Sale**

21.     The APA has been negotiated and executed, and the Sale Transaction contemplated by the APA are and have been undertaken, by Debtor, the Purchaser and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in Bankruptcy Code section 363(m).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the APA, and shall not permit the unwinding of the Sale Transaction.  The Purchaser is a good faith purchaser within the meaning of Bankruptcy Code section 363(m) and, as such, is entitled to the full protections of Bankruptcy Code section 363(m).

22.     Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Sale Transaction to be avoided or costs, or damages or costs, to be imposed, under Bankruptcy Code section 363(n).  The consideration provided by the Purchaser for the Acquired Assets under the APA is fair and reasonable, and the Sale Transaction may not be avoided under Bankruptcy Code section 363(n).

**Assumption and Assignment of the Assumed Contracts**

23.     Except as otherwise expressly provided in the APA or this Order, upon the Closing Date, pursuant to Bankruptcy Code sections 105(a), 363, and 365, the Debtor is authorized to (a) assume each of the Assumed Contracts and assign the Assumed Contracts to the Purchaser free and clear of all Claims and (b) execute and deliver to the Purchaser such documents or other instruments as may be reasonably requested by Purchaser to assign and transfer the Assumed Contracts to the Purchaser.

22

24.     The Cure Amounts (as defined below) are the sole amounts necessary to be paid upon assumption of the Assumed Contracts under Bankruptcy Code sections 365(b)(1)(A) and (B) and 365(f)(2)(A).  All Cure Amounts, if any, shall be paid in accordance with the APA. Upon the payment of the Cure Amounts, if any, the Assumed Contracts shall remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.  The Cure Amounts shall not be subject to further dispute or audit, including, without limitation, any based on performance prior to the Closing Date, irrespective of whether such Assumed Contract contains an audit clause.  After the payment of the Cure Amounts, neither the Debtor nor the Purchaser shall have any further liabilities to the counterparties to the Assumed Contracts other than the Purchaser's obligations under the Assumed Contracts that accrue and become due and payable on or after the Closing Date.

25.     On or prior to the Closing Date, the Purchaser shall file, or shall cause the Debtor to file, a schedule  of the Assumed Contracts (the "Closing Date Assumed Contracts Schedule") and the proposed amounts, if any, to be paid upon the assumption of each of the Assumed Contracts (the "Cure Amount").  To the extent the proposed Cure Amount listed on the Closing Date Assumed Contracts Schedule is different than the amount listed in the *Notice of Potential Assumption and Assignment of Contracts and Related Cure Amounts* [Docket No. ___], and the counterparty to such Assumed Contract disagrees with such proposed Cure Amount, such counterparty must file an objection with the Court by no later than fourteen (14) days after the Closing Date.  Further, the Purchaser reserves the right after the Closing Date to determine that any contract or unexpired lease not listed on the Closing Date Assumed Contracts Schedule shall be an Assumed Contract, subject to satisfaction of the cure and adequate assurance of future

23

performance requirements for assumption and assignment; provided that (a) the Purchaser shall file a schedule (the "Additional Assumed Contracts Schedule") of any such additional Assumed Contracts (the "Additional Assumed Contracts") and the proposed Cure Amounts, if any, related thereto, by no later than fourteen (14) days after the Closing Date and (b) in the event a counterparty to an Assumed Contract that is an Additional Assumed Contract disagrees with the Proposed Cure Amount, such counterparty must file an objection with the Court by no later than fourteen (14) days after the filing of such Additional Assumed Contracts Schedule.

26.     In the event of a dispute as of, or after, the Closing Date regarding assumption and assignment or cure of any contract or unexpired lease proposed to be an Assumed Contract, such contract or unexpired lease, any applicable cure payments shall be made following the entry of an order resolving any such dispute (or upon the consensual resolution of such dispute as may be agreed by the Purchaser and such counterparty).  In the event that after the Closing Date any such dispute is not resolved to the Purchaser's satisfaction, the Purchaser may determine that such contract or unexpired lease subject to dispute is not an Assumed Contract and upon such determination, the Purchaser shall have no liability whatsoever to the counterparty to such contract or unexpired lease that may arise prior to or after the Closing Date.

27.     Any provisions in any Assumed Contract that prohibit or condition the Debtor's assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the Debtor's assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.

28.     Each Assumed Contract constitutes an executory contract or unexpired lease under Bankruptcy Code section 365 and all requirements and conditions under Bankruptcy Code

sections 363 and 365 for the assumption by the Debtor and assignment to the Purchaser of the Assumed Contracts have been, or will be, satisfied. Upon the Purchaser's assumption of the Assumed Contracts in accordance with the terms hereof, in accordance with Bankruptcy Code sections 363 and 365, (a) the Purchaser shall be fully and irrevocably vested with all rights, title and interest of the Debtor under the Assumed Contracts, (b) the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Contracts, and (c) the Debtor shall be relieved, pursuant to Bankruptcy Code section 365(k), from any further liability under the Assumed Contracts.

29.     The Purchaser has demonstrated adequate assurance of future performance under the relevant Assumed Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

30.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtor or the Purchaser as a result of the assumption, assignment and sale of the Assumed Contracts. The validity of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts shall not be affected by any dispute between any of the Debtor or its affiliates and another party to a Assumed Contract regarding the payment of any amount. Upon assignment to the Purchaser, the Assumed Contracts shall be valid and binding, in full force and effect and enforceable by the Purchaser in accordance with their respective terms.

31.     Pursuant to Bankruptcy Code sections 105(a), 363, and 365, all counterparties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtor or the Purchaser any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of

25

and including the Closing Date under the APA or arising by reason of the consummation of transactions contemplated by the APA, including, without limitation, the Sale Transaction, the assumption and assignment of the Assumed Contracts, and any party that may have had the right to consent to the assignment of an Assumed Contract is deemed to have consented to such assignment for purposes of Bankruptcy Code sections 365(c)(1)(B) and 365(e)(2)(A)(ii) and otherwise if such party failed to object to the assumption and assignment of such Assumed Contract.

32.   All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Debtor or the Purchaser for any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Acquired Assets.

**Related Relief**

33.   Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the APA.

34.   Nothing in this Order or the APA releases, nullifies, or enjoins the enforcement of any liability (including, but not limited to, for reclamation and mitigation and any associated long-term protection requirements) by a governmental unit under police and regulatory statutes and regulations that any entity would be subject to as the owner or operator of property that is sold or transferred pursuant to this Order, provided, however, that the Purchaser shall not be liable for penalties for days of violation on or prior to the consummation of the Sale Transaction. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a)

26

license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.

35.     No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sale of the Acquired Assets.

36.     The Debtor hereby waives any and all actions related to, and hereby release, the Purchaser and its property (including, without limitation, the Acquired Assets) from any and all Claims or causes of action of any kind, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non-contingent, liquidated or unliquidated, material or nonmaterial, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, related to or arising out of the Chapter 11 Cases, the formulation, preparation, negotiation, execution, delivery, implementation or consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts or any other contract, instrument, release, agreement, settlement or document created modified, amended, terminated or entered into in connection with the APA, except to the extent specifically assumed or established under the APA or this Order.

37.     Except as expressly provided in the APA, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtor or its estate from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Excluded Asset.

AFDOCS/23044737.1

38.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

39.     To the extent this Order is inconsistent with any prior order or pleading filed in these Chapter 11 Case related to the Motion, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the APA, the terms of this Order shall govern.

40.     This Order and the APA shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtor, all interest holders of the Debtor, all non-debtor parties to the Assumed Contracts, the official committee of unsecured creditors appointed by the U.S. Trustee on _____, all successors and assigns of the Debtor and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in this Chapter 11 Case or upon a conversion of the Debtor's cases to those under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the APA and Sale Transaction shall not be subject to rejection or avoidance under any circumstances.  If any order under Bankruptcy Code section 1112 is entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that this Order and the rights granted to the Purchaser hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.  For the avoidance of doubt, the Debtor's inability to satisfy in full all administrative expense claims of the Debtor's estate shall not be a basis for termination, rejection or avoidance (as applicable) of the APA or the Sale Transaction.

41.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any

AFDOCS/23044737.1

waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction, including any and all disputes with any counterparty to any contract or lease of the Debtor (including, without limitation, disputes with respect to assumption and assignment of any Assumed Contracts or any cure disputes) and any party that has, or asserts, possession, control or other rights in respect of any of the Debtor's assets; provided, however, that, in the event the Court abstains from exercising or declines to exercise such jurisdiction with respect to the APA, the Bid Procedures Order, the Stalking Horse Order or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter. This Court retains jurisdiction to compel delivery of the Acquired Assets, to protect the Debtor and its assets, including the Acquired Assets, against any Claims and successor and transferee liability and to enter orders, as appropriate, pursuant to Bankruptcy Code sections 105(a) or 363 (or other applicable provisions) necessary to transfer the Acquired Assets to the Purchaser.

42.     At any time prior to the Closing Date, the Purchaser may terminate the APA pursuant to the terms thereof without any penalty or liability to the Debtor, its estate or its creditors and other parties in interest.

43.     The APA and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

44.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited

AFDOCS/23044737.1

to Bankruptcy Rule 6004(h), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtor is not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtor may, in its discretion and without further delay, take any action and perform any act authorized under this Order.

45.      The Purchaser shall not be required to seek or obtain relief from the automatic stay under Bankruptcy Code section 362, to give any notice permitted by the APA or to enforce any of its remedies under the APA or any other sale-related document.   The automatic stay imposed by Bankruptcy Code section 362 is modified solely to the extent necessary to implement the preceding sentence; provided however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

46.      The provisions of this Order are non-severable and mutually dependent.

47.      The requirements set forth in Bankruptcy Rule 6004 and Local Bankruptcy Rule 6004-1 have been satisfied or otherwise deemed waived.

48.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Date:  November [_____], 2020

_____
THE HONORABLE ,ARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

*EXHIBIT B*

**Exhibit 1**

**APA**