**Exhibit C - Redline to Docket 55**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| EAGLE PIPE, LLC,[1] | § § | Case No. 20-34879 (MI) |
| Debtor. | § § | |

**ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE**
**DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS**
**[Relates to Docket No. ——55]**

Upon the motion (the "Motion"),[2] filed by Eagle Pipe, LLC, the above-captioned debtor

and debtor in possession (the "Debtor"), for entry of an order pursuant to 11 U.S.C. §§ 363 and 365

and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure approving (a) the

proposed sale of substantially all of the Debtor's assets under the terms of a proposed purchase and

sale agreement (the "APA"), a true and correct copy of which is attached hereto as **Exhibit 1**, free

and clear of all liens, claims, and interests (other than the Assumed Liabilities set forth in the

APA), and (b) the assumption and assignment of executory contracts and unexpired leases of the

Debtor as may be requested by the Successful Bidder and the proposed cure amounts with respect

thereto (the "Cure Amount"), all as more fully set forth in the Motion; and the Court being satisfied

that the relief requested in the Motion is necessary and in the best interests of the Debtor and its

estate; and it appearing that sufficient notice of the Motion has been given, and that no other or

further notice is required; and this Court having reviewed the Motion and having considered the

evidence and arguments presented at hearing on November 30, 2020 (the "Sale Hearing"); and this

Court having determined that the legal and factual bases set forth in the Motion and at the Sale

---

[1] The last four digits of Debtor's federal tax identification number are (1119).

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion or the APA, as applicable.

Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, the Court hereby finds as follows:[3]

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

C.      The relief requested in the Motion is in the best interests of the Debtor and its estate, creditors, and other parties in interest.

D.      Proper, timely, adequate, and sufficient notice of (a) the Motion; (b) the auction held on November 20, 22, and 23, 2020 (the "Auction") pursuant to the Bid Procedures Order (as defined below); (c) the sale of the Acquired Assets (as defined below) to ~~Buyer~~Purchaser (as defined below) pursuant to (i) the bidding procedures authorized by the Court in the Bid Procedures Order (the "Bidding Procedures") and (ii) the APA and the transactions contemplated in connection therewith, including the Compromise and Settlement (as defined below) (the "Sale"); (d) the assumption and assignment to the ~~Buyer~~Purchaser of certain executory contracts and unexpired leases as described and identified more fully in the APA (the "Assumed Contracts"); (e) the Cure Amounts; (f) the Sale Hearing; and (g) all deadlines related thereto, has been provided by the Debtor in its (i) *Notice of Bid Deadline, Auction, and Sale Hearing* [Docket No. —149] (the "Sale Notice"), (ii) the Cure Notice (as defined below), and (iii) the Notice of Successful Bidder (as defined below), as relevant, in accordance with ~~sections~~§§ 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, 9008, and 9014, and in compliance with the *Amended Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of*

---

[3] The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

4827-6945-5054.1
4845-8979-5795.2

*Notice Thereof, and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof* [Docket No. —151] (the "Bid Procedures Order"), to each party entitled thereto. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

E.    The Debtor further filed with the Court and served upon the non-Debtor counterparties to the Assumed Contracts a *Notice of Executory Contracts and Unexpired Leases Subject to Possible Assumption and Assignment and Proposed Cure Amounts*, identifying, among other things, the Cure Amounts [Docket No. —150] (the "Cure Notice"), in accordance with the Bid Procedures Order. The service of the Cure Notice was sufficient under the circumstances and in full compliance with the Bid Procedures Order, and no further notice need be provided in respect of the Debtor's assumption and assignment to the ~~Buyer~~Purchaser of the Assumed Contracts, the Cure Amounts, or the Sale. All non-Debtor counterparties to the Assumed Contracts have had an adequate opportunity to object to the assumption and assignment of the Assumed Contracts and the Cure Amounts.

F.    The notice described in the foregoing paragraphs is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Sale (and the transactions contemplated in connection therewith), the assumption and assignment to the ~~Buyer~~Purchaser of the Assumed Contracts, the Cure Amounts, the Sale Hearing, and all deadlines related thereto, is or shall be required.

G.    The assets being sold to ~~Buyer~~Purchaser (the "Acquired Assets" as defined in the APA), as more fully described in the APA, including all schedules attached thereto and all other documents contemplated thereby~~,~~ (collectively, the "APA") between the Debtor and ~~[•]~~EP Acquisition Company, LLC (the "~~Buyer~~Purchaser"), constitute property of the Debtor's

bankruptcy estate and title thereto is vested in the Debtor's estate, within the meaning of ~~section~~§ 541 of the Bankruptcy Code.

   H.   The Sale is duly authorized pursuant to ~~sections~~§§ 363(b)(1) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 6004(f).  As demonstrated by (i) the testimony and other evidence adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtor has marketed the Acquired Assets and conducted all aspects of the sale process at arms' length, in good faith, and in compliance with the Bidding Procedures and Bid Procedures Order.  The marketing process undertaken by the Debtor and its professionals, agents, and other representatives with respect to the Acquired Assets has been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders.  The Bidding Procedures were duly noticed, were substantively and procedurally fair to all parties, and the Auction was conducted in a diligent, non-collusive, fair, and good faith manner.  The APA constitutes the highest and best offer for the Acquired Assets.

   I.   The Bid Deadline passed on November 16, 2020 at 4:00 p.m. Central Time in accordance with the Bidding Procedures and Bid Procedures Order.  The Debtor conducted the Auction commencing at ~~10~~8:00 a.m. Central Time on November 20, 2020 in accordance with the Bidding Procedures and Bid Procedures Order.  At the conclusion of the Auction, the Debtor determined in a valid and sound exercise of its business judgment that the transactions contemplated by the APA were the highest or otherwise best bid and, therefore, ~~Buyer~~Purchaser's bid was designated as the successful bid (the "Successful Bid").  On November ~~[24]~~, 2020, the Debtor filed its *Notice of Successful Bidders* [Docket No. ~~—~~165] (the "Notice of Successful Bidder"), identifying the ~~Buyer~~Purchaser as the Successful Bidder for the Acquired Assets in

4827-6945-5054.1
4845-8979-5795.2

accordance with the Bid Procedures Order.[4]  As established by the record of the Sale Hearing, the Debtor and the ~~Buyer~~Purchaser have complied with the Bid Procedures Order in all material respects.  The Bidding Procedures and the Auction afforded a full, fair, and reasonable opportunity for any entity or person to make a higher or otherwise better offer to purchase the Acquired Assets.

J.      The Debtor: (i) has full corporate power and authority to execute the APA, and the Sale by the Debtor to the ~~Buyer~~Purchaser has been duly and validly authorized by all necessary corporate action, (ii) has all of the corporate power and authority necessary to consummate the Sale and all transactions contemplated by the APA, (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtor of the Sale and all transactions contemplated thereby, and (iv) requires no consents or approvals that have not been obtained, other than the Court's entry of this Order and those expressly provided for in the APA to consummate such transactions.

K.      As described in the APA, Centric Pipe, LLC, a pre-petition creditor of the Debtor and an affiliate of the Purchaser, has asserted claims against the Debtor. The Debtor and the Administrative Agent, in turn, have asserted claims against Centric relating to "certain Inventory listed in Exhibit A to the letter from Centric to the Seller, dated July 1, 2020, or to which ownership is otherwise disputed by Centric" (defined in the APA as the "Centric Inventory"). As defined in the APA, the "Centric Claims" being settled and compromised under the APA consist of the following: "(1) the non-priority unsecured Claim owing to Centric Pipe as scheduled by Eagle Pipe in the Chapter 11 Case in the amount of $1,388,043.29; (2) any security interests in, Liens

---

[4] Marco International Corporation was designated as Back-Up Bidder in the Notice of Successful Bidder.  In the event that Purchaser fails to consummate the Sale described herein and provided that the Outside Back-up Date (as defined in the Bid Procedures Order) has not occurred, the Debtor shall notify the Back-up Bidder no later than one business day of the proposed closing date with the Successful Bidder of the Purchaser's failure to close and shall set an emergency status conference and to the extent required by the Debtor or Back-up Bidder, seek separate approval, after notice and a hearing, of a modified sale order approving the Back-Up Bidder's APA based on the Back-up Bidder's last Bid at the Auction, subject to the terms and conditions set forth in the Back-up Bidder's APA.  All parties' rights

4827-6945-5054.1
4845-8979-5795.2

against, or Claims or causes of action held or asserted by any party in interest in the Chapter 11 Case (including without limitation the Secured Lenders) relating to the Centric Inventory; and (3) Centric Pipe's asserted unsecured Claim against the Eagle Pipe bankruptcy estate in the amount of $3,553,647.98 (plus accruing interest) relating to the Centric Inventory."  Also, as set forth in Section 10.4 of the APA, a condition for the consummation of the sale contemplated under the APA, includes the release of claims against Hired Employees (as defined in the APA), which includes Avoidance Actions (as defined in the APA), Excluded Causes of Action (as defined in the Final Cash Collateral Order (defined below)), and any other causes of action which could be pursued directly by or derivatively through the Debtor, its bankruptcy estate or any successors in interest (the "Hired Employee Claims" and, collectively with the Centric Claims, the "Released Claims").

L.      The APA provides for a settlement of the Centric Claims and the Hired Employee Claims and for mutual releases of the Centric Claims by all parties in interest in this case (the "Releases") in exchange for payment by the Purchaser at Closing of the Centric Claims Settlement Amount and the Seller Claims Settlement Amount, which amount is $1,031,297.25 in the aggregate (inclusive of the Releases, the "Compromise and Settlement").  The Releases include, but are not limited to, Avoidance Actions (as defined in Section 2.1(h) of the APA) and Excluded Causes of Action (as defined in Paragraph 13(a)(i) of the Final Cash Collateral Order (defined below)).  In exchange for the Committee's stipulation and agreement that the Challenge Period (as defined under the Final Cash Collateral Order) is hereby terminated as of the date of entry of this Order, and the Committee's agreement to release any remaining rights to file or otherwise pursue a Challenge Proceeding (as defined under the Final Cash Collateral Order), the Administrative

with respect to the Back-up Bidder's APA are expressly reserved.

6

4827-6945-5054.1
4845-8979-5795.2

Agent (for the Secured Parties) hereby agrees and stipulates that $40,000.00 (the "D&O Claims Settlement Amount") of the total $100,000.00 Seller Claim Settlement Amount shall be allocated to the Excluded Causes of Action against any Hired Employees.[5]  As set forth in Paragraph 11 below, the Secured Parties' Liens shall not attach to the D&O Claims Settlement Amount, and the Net Cash (defined below) shall exclude the D&O Claims Settlement Amount.

M.     The Compromise and Settlement under this Order and the APA, including the allocation of settlement funds, are critical to and mutually dependent upon the Sale, are supported by fair and reasonable consideration, are in the best interests of the Debtor's estate, and, accordingly, is hereby approved pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

N.     The Releases, in particular, as an integral and non-severable component of the Compromise and Settlement and to the fullest extent set forth in the APA and this Order, are critical to the Compromise and Settlement under the APA, are supported by fair and reasonable consideration, are in the best interests of the Debtor's estate, and, accordingly, are hereby approved pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019. The Releases shall be effective upon Closing.

O.     Approval of the Compromise and Settlement is (i) fair and equitable, (ii) in the best interests of the Estates, and (iii) falls within the reasonable range of litigation possibilities.  The balance between the likelihood of the Debtor's success on the merits after lengthy and costly litigation when compared to the concrete and tangible benefit of the Compromise and Settlement weighs in favor of approval of the Compromise and Settlement.  Moreover, it is certain that litigation of the Centric Claims and Hired Employee Claims would be costly, complex and

---

[5] For the avoidance of doubt, no employee, officer or director of Marco International Corporation is or will be a Hired Employee by the Purchaser.

4827-6945-5054.1
4845-8979-5795.2

protracted.  The Debtor relied on experienced counsel from its professionals and advisors when exercising their business judgment to enter into the Compromise and Settlement.

P.  ~~K.~~ Approval of the APA and consummation of the Sale are in the best interests of the Debtor, its creditors, the Debtor's estate, and other parties in interest.

Q.  ~~L.~~ The Debtor has demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for this Court to approve the APA and consummation of the Sale pursuant to ~~section~~§ 363(b) of the Bankruptcy Code prior to and outside of a plan of reorganization because of the Debtor's current financial position.

R.  ~~M.~~ The APA was negotiated, proposed, and entered into by the Debtor and the ~~Buyer~~Purchaser without collusion, in good faith, and on an arms'-length basis.  Neither the Debtor, nor the ~~Buyer~~Purchaser, nor any affiliate of the ~~Buyer~~Purchaser, has engaged in any conduct that would cause or permit the APA to be avoided under ~~section~~§ 363(n) of the Bankruptcy Code.

S.  ~~N.~~ The ~~Buyer~~Purchaser is a good-faith purchaser under ~~section~~§ 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

T.  ~~O.~~ The ~~Buyer~~Purchaser is not an "insider" of the Debtor, as that term is defined in ~~section~~§ 101(31) of the Bankruptcy Code.

U.  ~~P.~~ The consideration provided by the ~~Buyer~~Purchaser for the Acquired Assets pursuant to the APA is (a) reasonably equivalent value under the Bankruptcy Code and any Uniform Fraudulent Transfer Act, (b) fair consideration under any Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, fair salable value, and fair value under any such laws as applicable or any other applicable laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

8

V.     ~~Q.~~ As of the Closing, pursuant and subject to the terms of the APA and upon receipt by Administrative Agent of the Net Proceeds (defined below), the transfer of the Acquired Assets and the Sale will effect a legal, valid, enforceable, and effective transfer of the Acquired Assets and will vest the ~~Buyer~~Purchaser with all of the Debtor's right, title, and interest in the Acquired Assets, free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever.

W.     ~~R.~~ The ~~Buyer~~Purchaser is hereby substituted for all purposes as a party to all Assumed Contracts in the place of the Debtor.  ~~Buyer~~Purchaser shall have any and all rights and benefits of the Debtor under all such Assumed Contracts without interruption or termination of any kind, and all terms applicable to the Debtor shall apply to the ~~Buyer~~Purchaser as if such Assumed Contracts were amended to replace the Debtor with the ~~Buyer~~Purchaser.

X.     ~~S.~~ The ~~Buyer~~Purchaser would not have entered into the APA and would not have consummated the Sale, thus adversely affecting the Debtor, its estate, and creditors, if both (i) the Sale and (ii) the assumption and assignment of the Assumed Contracts to the ~~Buyer~~Purchaser were not free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever.

Y.     ~~T.~~ The Debtor may sell the Acquired Assets free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in ~~section~~§ 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. All parties in interest, including, without limitation, any holders of Liens, claims, encumbrances, and other interests and any other non-Debtor counterparties to the Assumed Contracts, that did not object, or who withdrew its objection, to the Sale, the Motion, the assumption and assignment of the applicable Assumed Contract, or the associated Cure Amount have consented to the relief

9

granted herein pursuant to ~~section~~§ 363(f)(2) of the Bankruptcy Code; provided, however, that the requirements of section 363(f) are satisfied because the Administrative Agent consents to the release of its Liens against the Acquired Assets and to the Sale of the Acquired Assets based on the provisions of this Order: (a) providing for the payment of all the proceeds of the Sale, less the Break-Up Fee allowed in accordance with the Bid Procedures Order (the "Net Proceeds"), to the Administrative Agent at the Closing of the Sale; and (b) requiring the Debtor to pay the Administrative Agent all the cash that Debtor has in its depository accounts as of the Closing, less the Reserved Funds (as defined below) ("Net Cash").  Those (x) holders of Liens and (y) non-Debtor parties to Assumed Contracts who in each case did object fall within one or more of the other subsections of ~~section~~§ 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, if any, attach to the portion of the net Sale proceeds ultimately attributable to the property against or in which they assert an interest that are not otherwise paid to Administrative Agent at Closing, in the order of their priority, with the same validity, force, and effect that they now have as against such property, subject to any claims and defenses the Debtor may possess with respect thereto.

Z.    ~~U.~~ Neither the ~~Buyer~~Purchaser nor any of their affiliates are successors to the Debtor or its estate by reason of any theory of law or equity, and neither the ~~Buyer~~Purchaser nor any of their affiliates shall assume or in any way be responsible for any liability or obligation of the Debtor and/or its estate, except as otherwise expressly provided in the APA.

AA.    ~~V.~~ The Debtor has demonstrated that the assumption and assignment of the Assumed Contracts to the ~~Buyer~~Purchaser in connection with the consummation of the Sale is an exercise of the Debtor's sound business judgment and is in the best interests of the Debtor, its estate and creditors, and other parties in interest.  The Assumed Contracts being assigned to the

4827-6945-5054.1
4845-8979-5795.2

~~Buyer~~Purchaser are an integral part of the APA and the Sale and, accordingly, the assumption and assignment of the Assumed Contracts is reasonable and enhances the value of the Debtor's estate. Any non-Debtor counterparty to an Assumed Contract that has not actually filed with the Court an objection to such assumption and assignment in accordance with the terms of the Bid Procedures Order and Cure Notice is deemed to have consented to such assumption and assignment.

BB.    ~~W.~~ The Debtor and the ~~Buyer~~Purchaser, as applicable under the APA, have, including by way of entering into the APA, and agreeing to the provisions relating to the Assumed Contracts therein, (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of ~~section~~§ 365(b)(l)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of ~~section~~§ 365(b)(1)(B) of the Bankruptcy Code, and the ~~Buyer~~Purchaser has, based upon the record of these proceedings, provided adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of ~~sections~~§§ 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  No default exists in the Debtor's performance under the Assumed Contracts as of the Closing Date other than the failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in ~~section~~§ 365(b)(1)(A) of the Bankruptcy Code.  The ~~Buyer~~Purchaser's promise under the APA to perform the obligations under the Assumed Contracts after the Closing shall constitute sufficient adequate assurance of future performance under the Assumed Contracts being assigned to the ~~Buyer~~Purchaser within the meanings of ~~sections~~§§ 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.  The Cure Amounts are hereby found to be the sole amounts necessary to cure any and all defaults under the Assumed Contracts under ~~section~~§ 365(b) of the Bankruptcy Code.

4827-6945-5054.1
4845-8979-5795.2

CC.   ~~X.~~ Time is of the essence in consummating the Sale.  The consummation of the Sale as soon as practicable is necessary both to preserve and maximize the value of the Debtor's assets for the benefit of the Debtor, its estate, creditors, interest holders, and all other parties in interest in the chapter 11 case, and to provide the means for the Debtor to maximize creditor and interest holder recoveries.  Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

DD.    The Purchase Price set forth in the APA is not sufficient to satisfy in full the Obligations to the Secured Parties as set forth in the *Final Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief* (the "Final Cash Collateral Order") [Docket No. 98].

EE.    Under Paragraph 18(e) of the Final Cash Collateral Order, upon the consummation of the Sale contemplated herein, a Termination Event shall have occurred.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Sale contemplated in the Motion and the APA is approved as set forth in this Sale Order.  Any objections that have not been previously resolved or withdrawn are overruled on the merits.

**Approval of the APA**

2.    The APA~~,~~ and all other ancillary documents, including all of the terms and conditions thereof, ~~is~~are hereby approved.

3.    Pursuant to ~~section~~§ 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to execute and deliver, perform under, consummate, implement, comply with, and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, and consummate the Sale pursuant to

4827-6945-5054.1
4845-8979-5795.2

and in accordance with the terms and conditions of the APA.  The Debtor is further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any expenses or costs that are required to be paid in order to consummate the transactions contemplated by the APA or perform their obligations under the APA, provide that such payments are in accordance with the Final Cash Collateral Order, or otherwise approved by the written consent of the Administrative Agent.  Following the consummation of the Sale, and notwithstanding their position as Hired Employees (as defined under the APA) of the Purchaser, Jared Light and Brian Garrett shall continue to serve as President and Controller, respectively, for the Debtor (without compensation from the estate after Closing) for the interim period until the Case is converted to Chapter 7 or otherwise ordered by the Court.

4.      The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the APA, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be reasonably requested by the ~~Buyer~~Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the ~~Buyer~~Purchaser or reducing to possession, the Acquired Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA.

5.      This Order and the APA shall be binding in all respects upon the Debtor and its estate, successors, and assigns, all creditors of and equity holders in the Debtor, and any and all other parties in interest, including, without limitation, any and all holders of Liens, claims, encumbrances, and other interests (including holders of any rights or claims based on any putative successor or transferee liability) of any kind or nature whatsoever in the Acquired Assets, all non-Debtor parties to the Assumed Contracts, and any trustee or successor trustee appointed in this

13

4827-6945-5054.1
4845-8979-5795.2

chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code. The APA and the Sale are not subject to rejection or avoidance (whether through any avoidance or recovery, claim, action, or proceeding arising under chapter 5 of the Bankruptcy Code or under any similar state or federal Law or any other cause of action) by the Debtor, any chapter 7 or chapter 11 trustee of the Debtor's bankruptcy estate or any other person or entity. The APA, this Order, and the Debtor's obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any ~~joint~~ chapter 11 plan proposed or confirmed in this bankruptcy case, any order confirming any ~~joint~~ chapter 11 plan, or any subsequent order of this Court without the prior written consent of the ~~Buyer~~<u>Purchaser</u>. Nothing contained in any ~~joint~~ chapter 11 plan confirmed in this chapter 11 case or the confirmation order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the APA or this Order. This Sale Order and the APA shall inure to the benefit of the Debtor, its estate, its creditors, the ~~Buyer~~<u>Purchaser</u>, and ~~its~~<u>their</u> respective successors and assigns.

6.      The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

<u>**Transfer of the <span style="color:blue">Acquired</span> Assets**</u>

7.      Except as expressly permitted or otherwise specifically provided for in the APA or this Order, pursuant to ~~sections~~<u>§§</u> 105(a), 363(b), 363(f), 365(b), 365(f) of the Bankruptcy Code or any other applicable section of the Bankruptcy Code, upon the Closing <u>and receipt by Administrative Agent of the Net Proceeds</u>, the <u>Acquired</u> Assets shall be transferred to the

~~Buyer~~Purchaser, and such transfer shall constitute a legal, valid, binding, and effective transfer of the Acquired Assets free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever pursuant to ~~section~~§ 363(f) of the Bankruptcy Code.  Upon the Closing, the ~~Buyer~~Purchaser shall take title to and possession of the Acquired Assets subject only to the Assumed Liabilities and Permitted Exceptions.

8.      Except as expressly permitted or otherwise specifically provided by the APA or this Order and subject to the satisfaction of the conditions and/or requirements contained in Paragraphs 10 and 11 of this Order, all persons and entities (as defined in ~~section~~§ 101(15) of the Bankruptcy Code), including, but not limited to, all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, creditors holding Liens or claims of any kind or nature whatsoever against or in the Debtor or any of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtor, the Acquired Assets, the operation of the Debtor's businesses prior to the Closing, or the transfer of the Acquired Assets to the ~~Buyer~~Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting any Liens or claims of any kind or nature whatsoever, against the ~~Buyer~~Purchaser and its successors, designees, assigns, or property, or the Acquired Assets conveyed in accordance with the APA.  On the Closing Date, each of the Debtor's creditors is authorized to execute such documents and take all other actions as may be reasonably deemed by the ~~Buyer~~Purchaser to be necessary or desirable to release Liens or claims on the Acquired Assets, if any, as provided for herein, as such Liens or claims may have been recorded or may otherwise exist.   All persons and entities that are in possession of some or all

of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the ~~Buyer~~Purchaser or its assignee as of the Closing Date.

9.     ~~If~~Except as provided below concerning the Liens on the Acquired Assets held by Administrative Agent, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens in the Acquired Assets conveyed pursuant to the APA and this Order has not delivered to the Debtor, prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens which the person or entity has with respect to the Acquired Assets or otherwise, then (a) the Debtor is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets, and (b) the ~~Buyer~~Purchaser is hereby authorized to file, register, or otherwise record, at its own cost and expense, a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Acquired Assets of any kind or nature whatsoever (collectively, "Release Documents"); provided that, neither the Debtor nor the Purchaser is authorized to file any Release Documents with respect to the Liens held by Administrative Agent in the Purchased Assets without first obtaining the express written consent of Administrative Agent and providing drafts of such Release Documents to Administrative Agent for its review and approval, which consent and approval shall be in Administrative Agent's sole discretion, provided that such consent and approval is not unreasonably withheld in violation of other provisions of this Order.

10.     In accordance with the terms of ~~the *Final Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief*~~ [Docket No. ___] (the "Final Cash Collateral Order"), ~~at~~ the ~~proceeds~~Closing of the Sale ~~are to~~, the Net

16

Proceeds shall be ~~used to~~directly and indefeasibly ~~pay the Pre-Petition Secured~~paid in full in cash to the Administrative Agent in partial satisfaction of the Obligations (as such term is defined in the Final Cash Collateral Order)~~ in cash, in full~~. Specifically, at ~~the~~ Closing, in consideration of the ~~Sale, with any excess proceeds to be held~~transfer of the Acquired Assets to the Purchaser by the Debtor ~~pending further orders~~and the release of the ~~Court.~~ Administrative Agent's Liens against the Acquired Assets, the Purchaser shall irrevocably directly transfer and/or pay to the Administrative Agent the Net Proceeds by wire transfer pursuant to instructions to be provided by the Administrative Agent, with the Administrative Agent to apply such proceeds to the Obligations in accordance with the terms of the Loan Documents (as defined in the Final Cash Collateral Order). The Net Proceeds shall be paid to the Administrative Agent without any setoff or deduction of any kind.

11.     At Closing, and in accordance with the Final Cash Collateral Order, the Debtor shall reserve from its depository accounts the following amounts: (a) all amounts included in the calculation of the Carve-Out (as defined in Paragraph 10 of the Final Cash Collateral Order); (b) any unpaid expenses, including but not limited to any post-petition obligations of the Debtor relating to the purchase of post-petition inventory, incurred by the Debtor in accordance with the Budget (as defined in the Final Cash Collateral Order) prior to the Closing and the occurrence of the associated Termination Event under the Final Cash Collateral Order; (c) the amount of $395,846.68, as provided in Paragraph 32 of the Final Cash Collateral Order, for outstanding ad valorem taxes for 2020 (the "Tax Funds"); and (d) the D&O Claims Settlement Amount (collectively, the "Reserved Funds"), with the Reserved Funds to be distributed in accordance with any prior or subsequent order of the Court.  All of the Debtor's Net Cash shall be transferred by the Debtor to the Administrative Agent at Closing, or as soon as practicable but in no event more than

4827-6945-5054.1
4845-8979-5795.2

three (3) business days following Closing, for application to the Obligations in accordance with the Loan Documents (as defined in the Final Cash Collateral Order).  Prior to paying the Net Cash to the Administrative Agent under this Paragraph 11, the Debtor shall pay any Invoiced Fees of Secured Party Professionals (as defined in Paragraph 13(c) of the Final Cash Collateral Order) for which the Review Period (as defined in Paragraph 13(c) of the Final Cash Collateral Order) passed prior to entry of this Order.  Such Invoiced Fees shall be paid from the Net Cash, not the Reserved Funds.  Upon payment of any such Invoiced Fees to the applicable Secured Party Professionals and the Net Cash to the Administrative Agent under this Paragraph 11, the Debtor shall have no further obligations under Paragraph 13(c) of the Final Cash Collateral Order, and such Paragraph 13(c) of the Final Cash Collateral Order shall have no further force or effect. Nothing contained herein is or shall be deemed to be a release of any Liens or other interests of Administrative Agent with respect to the Reserved Funds or any other property of the Debtor's bankruptcy estate, except with respect to the Acquired Assets and the D&O Claims Settlement Amount upon the Administrative Agent's receipt of the Net Proceeds.  Debtor shall provide an accounting of the Reserved Funds to Administrative Agent within 60 days following the Closing.  For the avoidance of doubt, at Closing, the Debtor shall pay, or cause the Purchaser to pay, the Break-up Fee from the gross sale proceeds due from the Purchaser at Closing in accordance with the Bid Procedures Order by wire transfer pursuant to the instructions to be provided by the Stalking Horse Bidder in advance of Closing.[6]  Neither the Net Proceeds nor the Reserved Funds shall include the Break-Up Fee.

12.    By the Committee's agreement, as set forth in Paragraph L of this Order, to terminate the Challenge Period effective immediately upon entry of this Order, the Debtor's

---

[6] No later than December 4, 2020, the Stalking Horse Bidder shall provide a written statement to the Debtor showing its actual out-of-pocket expenses.   The Debtor shall transmit such statement to the Purchaser and Administrative

4827-6945-5054.1
4845-8979-5795.2

stipulations, admissions, agreements and releases contained in the Final Cash Collateral Order, including, without limitation, in Paragraph 4 of the Final Cash Collateral Order, shall be immediately binding upon the Debtor, its estate and all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in this Case and any other person or entity acting or seeking to act on behalf of the Debtor's estate, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor, in all circumstances and for all purposes.

**Assumption and Assignment of Assumed Contracts**

13.    11. The Debtor is hereby authorized to and shall, in accordance with ~~sections~~§§ 105(a) and 365 of the Bankruptcy Code, (a) assume the Assumed Contracts, (b) assign the Assumed Contracts to the ~~Buyer~~Purchaser, effective upon and subject to the occurrence of the Closing, free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever, which Assumed Contracts by operation of this Order shall be deemed assumed and assigned effective as of the Closing, and (c) execute and deliver to the ~~Buyer~~Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the ~~Buyer~~Purchaser.  The ~~Buyer~~Purchaser's assumption on the terms set forth in the APA of the Assumed Contracts is hereby approved, and all requirements and conditions under ~~sections~~§§ 363 and 365 of the Bankruptcy Code for the assumption and assignment of the Assumed Contracts by the Debtor to the ~~Buyer~~Purchaser have been satisfied.

14.    12. Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract on the consent of the non-Debtor counterparty thereto or allow the non-Debtor party to such Assumed Contract to terminate, recapture, impose any penalty,

---

Agent to calculate and include the Break-Up Fee in the amounts to be paid at Closing.

condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, shall constitute unenforceable anti-assignment provisions that are void and of no force and effect.

15. 13. Upon assignment to the ~~Buyer~~Purchaser, (i) the Assumed Contracts shall remain in full force and effect for the benefit of the ~~Buyer~~Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in ~~sections~~§§ 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, limits, or conditions such assignment or transfer and (ii) in accordance with ~~sections~~§§ 363 and 365 of the Bankruptcy Code, the ~~Buyer~~Purchaser shall be fully and irrevocably vested in all right, title, and interest of the Debtor in each Assumed Contract free and clear of Liens, claims, encumbrances, and other interests of any kind or nature whatsoever.

16. 14. The ~~Buyer~~Purchaser is hereby substituted for all purposes solely related to the Acquired Assets as a party to all Assumed Contracts in the place of the Debtor, and the ~~Buyer~~Purchaser shall have any and all rights and benefits of the Debtor related to the Acquired Assets under all such Assumed Contracts without interruption or termination of any kind, and all terms applicable to the Debtor solely related to the Acquired Assets shall apply to the ~~Buyer~~Purchaser as if such Assumed Contracts were amended to replace the Debtor with the ~~Buyer~~Purchaser.

17. 15. All defaults or other obligations of the Debtor under the Assumed Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in ~~section~~§ 365(b)(2) of the Bankruptcy Code) as to which no objections were interposed and remain pending as of the date of this Order are deemed satisfied by the payment of the proposed amount necessary, if any, to cure all monetary defaults, if any, under

4827-6945-5054.1
4845-8979-5795.2

such Assumed Contract in those amounts set forth in ~~Exhibit 2~~Schedule 2.2 to the APA attached hereto (the "Cure Amounts") and in the Cure Notice, which was served in compliance with the Bid Procedures Order, and which were satisfied, or shall be satisfied as soon as practicable, as provided in the APA.  For all Assumed Contracts for which a Cure Notice was served, the Debtor or the ~~Buyer~~Purchaser, as applicable under the APA, are authorized and directed to pay all Cure Amounts required to be paid by such parties in accordance with the APA upon the later of (a) the Closing or (b) for any Assumed Contract for which an objection has been filed to the assumption and assignment of such agreement or the Cure Amounts relating thereto and such objection remains pending as of the date of this Order, the resolution of such objection by settlement or order of this Court.

18.   ~~16.~~ Each non-Debtor party to an Assumed Contract is hereby forever barred, estopped, and permanently enjoined from asserting against the Debtor, the ~~Buyer~~Purchaser, or any of their affiliates, or the property of any of them, any default, breach, claims of pecuniary losses existing as of the Closing or by reason of Closing, action, liability, or other cause of action existing as of the date of the Sale Hearing whether asserted or not, or, against the ~~Buyer~~Purchaser or any of their affiliates, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtor.  Each non-Debtor party to an Assumed Contract is hereby forever barred, estopped, and permanently enjoined from asserting any objection to the assumption and assignment of such non-Debtor party's Assumed Contract, including, without limitation, that its consent is necessary for such assumption and assignment.

**Additional Provisions**

19.   ~~17.~~This Order (a) shall be effective as a determination that, upon the Closing, all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever existing as to

21

the Acquired Assets prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, foreign, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Acquired Assets.

20.   18. At any time prior to the Closing, ~~Buyer~~Purchaser may assign the APA or its rights thereunder to one or more of its affiliates, which shall be entitled to assume and accede to the APA and to purchase and acquire any or some of the Acquired Assets in lieu of ~~Buyer~~Purchaser, and such affiliate(s) shall be deemed to be ~~Buyer~~Purchaser for all purposes under this Order.

21.   19. Neither the ~~Buyer~~Purchaser nor any of its affiliates are or shall be deemed, as a result of the consummation of the Sale contemplated herein, to: (a) be legal successors to the Debtor or its estate by reason of any theory of law or equity, (b) an affiliate of the Debtor, (c) have, *de facto* or otherwise, merged with or into the Debtor, or (d) be an alter ego or a mere continuation or substantial continuation or successor of the Debtor in any respect.  Except as expressly permitted or otherwise specifically provided for in the APA or this Order, neither the ~~Buyer~~Purchaser nor any of its affiliates shall (i) assume or in any way be responsible for any liability or obligation of any of the Debtor and/or its estate or (ii) have any liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Acquired Assets or otherwise.  Without limiting the generality of the foregoing, and except as

22

otherwise specifically provided herein and in the APA, the ~~Buyer~~Purchaser and its affiliates shall not be liable for any claims against the Debtor or its predecessors or affiliates, and the ~~Buyer~~Purchaser and its affiliates shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of warranty, product liability, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtor's businesses prior to the Closing.

22. ~~20.~~ Following the Closing, no holder of a Lien in the Acquired Assets shall interfere with the ~~Buyer~~Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Lien, or any actions that the Debtor may take in this chapter 11 case or any successor case.

23. ~~21.~~ This Court retains jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Acquired Assets or performance of other obligations owed to the ~~Buyer~~Purchaser; (b) resolve any disputes arising under or related to the APA, except as otherwise provided therein; (c) interpret, implement, and enforce the provisions of this Order; and (d) protect the ~~Buyer~~Purchaser and its affiliates against (i) any Liens in the Debtor or the Acquired Assets of any kind or nature whatsoever and (ii) any creditors or other parties in interest regarding the turnover of the Acquired Assets that may be in their possession.

24.   ~~22.~~ The so-called "bulk sale" laws or any similar law of any applicable state or other jurisdiction are waived or inapplicable to the Sale.

25.   ~~23.~~ Except as otherwise expressly provided in the APA, the ~~Buyer~~Purchaser shall have no Liability to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans), or any other payment with respect to employees or former employees of the Debtor.  Except as otherwise expressly provided in the APA, the ~~Buyer~~Purchaser shall have no Liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, benefit and/or incentive plan to which the Debtor are parties and relating to the Acquired Assets (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and ~~Buyer~~Purchaser shall in no way be deemed a party to or assignee of any such agreement, and no employee of ~~Buyer~~Purchaser shall be deemed in any way covered by or a party to any such agreement, and except as otherwise expressly provided in the APA, all parties to any such agreement are hereby enjoined from asserting against ~~Buyer~~Purchaser any and all Claims arising from or relating to such agreement.

26.   The Debtor shall use the Tax Funds to fund a tax account as provided in Paragraph 32 of the Final Cash Collateral Order for outstanding ad valorem taxes for 2020, including statutory interest, at the time of Closing.  Notwithstanding any provision set forth herein, the Texas Taxing Authorities (as defined in the Final Cash Collateral Order) shall retain their Liens against the Tax Funds in the amount of the proceeds derived from the Sale of their respective collateral located within the jurisdictions of the Texas Taxing Authorities to the same extent and with the same priority as such Liens were held immediately prior to the Sale. The tax Liens for the 2021 taxes are specifically retained by Texas Taxing Authorities until the 2021 taxes are paid in full and

24

the Purchaser assumes the personal liability for such 2021 taxes.  For the avoidance of doubt, and pursuant to Paragraph 11 of this Order, all Liens and other interests of the Administrative Agent shall remain perfected as to the Tax Funds to the same extent and with the same priority as existed immediately prior to the Sale.

27.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale transaction contemplated by the APA.

28.     No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of the chapter 11 case or the consummation of the sale of the Acquired Assets.

29.     24. The failure to specifically include any particular provision of the APA or other related documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA and other related documents be authorized and approved in their entirety.

25.     To the extent of any conflict between the APA and this Order, the terms and provisions of this Order shall govern.

26.     The provisions of this Order are non-severable and mutually dependent.

30.     This Order and the APA shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtor, all interest holders of the Debtor, all non-debtor parties to the Assumed Contracts, the official committee of unsecured creditors appointed by the U.S. Trustee, all successors and assigns of the Debtor and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in this chapter 11 case or upon a

25

conversion of the Debtor's case to those under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the APA and Sale transaction shall not be subject to rejection or avoidance under any circumstances.  If any order under Bankruptcy Code § 1112 is entered, such order shall provide (in accordance with Bankruptcy Code §§ 105 and 349) that this Order and the rights granted to the Purchaser hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.  For the avoidance of doubt, the Debtor's inability to satisfy in full all administrative expense claims of the Debtor's estate shall not be a basis for termination, rejection or avoidance (as applicable) of the APA or the Sale transaction.

31.    Effective immediately upon Closing the Sale under the APA, all creditors and parties in interest in this chapter 11 case (or any successor case) which have held or asserted, which hold or assert, or which in the future may hold or assert any Released Claim, directly or indirectly, shall be forever barred and enjoined from asserting or commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against any person on account of or in connection with or with respect to, any Released Claim and any claims or causes of action alleging or relying on any legal or equitable theory that is premised or based, in whole or in part, on any Released Claim.  Any party against whom any suit, action, or other proceeding of any kind is brought in connection with or with respect to, any Released Claim may enforce this Order as a defense to any such suit, action, or other proceeding and may seek to enforce this injunction in a court of competent jurisdiction.

32.    27. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and their provisions shall be self-executing.  In the absence of any entity obtaining a stay pending appeal, the Debtor and the ~~Buyer~~Purchaser are free to close the Sale under the APA in accordance with their terms at any time.

26

33.     Purchaser shall: (1) preserve any and all such books and records for a period of 180 days after Closing as set forth in this proviso, (2) take any and all reasonable steps necessary to maintain any and all such books and records in the same form, content, and structure as received from Seller, (3) backup or archive any and all such books and records that exist in electronic format, (4) avoid any corruption, deletion, and/or alteration of any and all such books and records, and (5) cooperate with the Seller, any examiner or trustee appointed in the Bankruptcy Case, and/or the Official Unsecured Creditors Committee appointed in the Bankruptcy Case in the cataloging or indexing, preservation, access, and use of any and all such books and records.

**Signed _____, 2020.**

_____

**Marvin Isgur**
**United States Bankruptcy Judge**

4827-6945-5054.1
4845-8979-5795.2

Gray Reed Draft 10/8/2020—Subject to FRE 408

**<u>Exhibit 1</u>**

**APA**

**<u>Exhibit 2</u>**

**Schedule of Assumed Contracts**

Document comparison by Workshare 10.0 on Sunday, November 29, 2020
5:02:20 PM

| Input: | |
|---|---|
| Document 1 ID | netdocuments://4827-6945-5054/1 |
| Description | Eagle Pipe BK - Proposed Sale Order (Ex B) to Bid Procedures Motion |
| Document 2 ID | netdocuments://4845-8979-5795/2 |
| Description | Eagle Pipe - Centric Sale Order (11-29, proposed FINAL) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 251 |
| Deletions | 167 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 420 |