

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
11/30/2020

|  |  |  |
| --- | --- | --- |
| In re: | § § § | Chapter 11 |
| EAGLE PIPE, LLC,[1] | § § | Case No. 20-34879 (MI) |
| Debtor. | § § |  |

## ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS
### [Relates to Docket No. 55]

Upon the motion (the "Motion"),[2] filed by Eagle Pipe, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), for entry of an order pursuant to 11 U.S.C. §§ 363 and 365 and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure approving (a) the proposed sale of substantially all of the Debtor's assets under the terms of a proposed purchase and sale agreement (the "APA"), a true and correct copy of which is attached hereto as **Exhibit 1**, free and clear of all liens, claims, and interests (other than the Assumed Liabilities set forth in the APA), and (b) the assumption and assignment of executory contracts and unexpired leases of the Debtor as may be requested by the Successful Bidder and the proposed cure amounts with respect thereto (the "Cure Amount"), all as more fully set forth in the Motion; and the Court being satisfied that the relief requested in the Motion is necessary and in the best interests of the Debtor and its estate; and it appearing that sufficient notice of the Motion has been given, and that no other or further notice is required; and this Court having reviewed the Motion and having considered the evidence and arguments presented at hearing on November 30, 2020 (the "Sale

---

[1] The last four digits of Debtor's federal tax identification number are (1119).

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion or the APA, as applicable.

Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, the Court hereby finds as follows:[3]

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

C.      The relief requested in the Motion is in the best interests of the Debtor and its estate, creditors, and other parties in interest.

D.      Proper, timely, adequate, and sufficient notice of (a) the Motion; (b) the auction held on November 20, 22, and 23, 2020 (the "Auction") pursuant to the Bid Procedures Order (as defined below); (c) the sale of the Acquired Assets (as defined below) to Purchaser (as defined below) pursuant to (i) the bidding procedures authorized by the Court in the Bid Procedures Order (the "Bidding Procedures") and (ii) the APA and the transactions contemplated in connection therewith, including the Compromise and Settlement (as defined below) (the "Sale"); (d) the assumption and assignment to the Purchaser of certain executory contracts and unexpired leases as described and identified more fully in the APA (the "Assumed Contracts"); (e) the Cure Amounts; (f) the Sale Hearing; and (g) all deadlines related thereto, has been provided by the Debtor in its (i) *Notice of Bid Deadline, Auction, and Sale Hearing* [Docket No. 149] (the "Sale Notice"), (ii) the Cure Notice (as defined below), and (iii) the Notice of Successful Bidder (as defined below), as relevant, in accordance with §§ 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, 9008, and 9014, and in compliance with the *Amended Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid*

---

[3] The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

*Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof,*
*and (C) Approving Cure Procedures and the Form and Manner of Notice Thereof* [Docket No.
151] (the "Bid Procedures Order"), to each party entitled thereto.  A reasonable opportunity to
object or be heard regarding the requested relief has been afforded to all interested persons and
entities.

E.      The Debtor further filed with the Court and served upon the non-Debtor
counterparties to the Assumed Contracts a *Notice of Executory Contracts and Unexpired Leases*
*Subject to Possible Assumption and Assignment and Proposed Cure Amounts*, identifying, among
other things, the Cure Amounts [Docket No. 150] (the "Cure Notice"), in accordance with the Bid
Procedures Order.  The service of the Cure Notice was sufficient under the circumstances and in
full compliance with the Bid Procedures Order, and no further notice need be provided in respect
of the Debtor's assumption and assignment to the Purchaser of the Assumed Contracts, the Cure
Amounts, or the Sale.  All non-Debtor counterparties to the Assumed Contracts have had an
adequate opportunity to object to the assumption and assignment of the Assumed Contracts and
the Cure Amounts.

F.      The notice described in the foregoing paragraphs is good, sufficient, and
appropriate under the circumstances, and no other or further notice of the Motion, the Sale (and
the transactions contemplated in connection therewith), the assumption and assignment to the
Purchaser of the Assumed Contracts, the Cure Amounts, the Sale Hearing, and all deadlines related
thereto, is or shall be required.

G.      The assets being sold to Purchaser (the "Acquired Assets" as defined in the APA),
as more fully described in the APA, including all schedules attached thereto and all other
documents contemplated thereby (collectively, the "APA") between the Debtor and EP Acquisition

3

Company, LLC (the "Purchaser"), constitute property of the Debtor's bankruptcy estate and title thereto is vested in the Debtor's estate, within the meaning of § 541 of the Bankruptcy Code.

H.     The Sale is duly authorized pursuant to §§ 363(b)(1) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 6004(f).  As demonstrated by (i) the testimony and other evidence adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtor has marketed the Acquired Assets and conducted all aspects of the sale process at arms' length, in good faith, and in compliance with the Bidding Procedures and Bid Procedures Order.  The marketing process undertaken by the Debtor and its professionals, agents, and other representatives with respect to the Acquired Assets has been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders.  The Bidding Procedures were duly noticed, were substantively and procedurally fair to all parties, and the Auction was conducted in a diligent, non-collusive, fair, and good faith manner.  The APA constitutes the highest and best offer for the Acquired Assets.

I.     The Bid Deadline passed on November 16, 2020 at 4:00 p.m. Central Time in accordance with the Bidding Procedures and Bid Procedures Order.  The Debtor conducted the Auction commencing at 8:00 a.m. Central Time on November 20, 2020 in accordance with the Bidding Procedures and Bid Procedures Order.  At the conclusion of the Auction, the Debtor determined in a valid and sound exercise of its business judgment that the transactions contemplated by the APA were the highest or otherwise best bid and, therefore, Purchaser's bid was designated as the successful bid (the "Successful Bid").  On November 24, 2020, the Debtor filed its *Notice of Successful Bidders* [Docket No. 165] (the "Notice of Successful Bidder"), identifying the Purchaser as the Successful Bidder for the Acquired Assets in accordance with the

Bid Procedures Order.[4]  As established by the record of the Sale Hearing, the Debtor and the Purchaser have complied with the Bid Procedures Order in all material respects.  The Bidding Procedures and the Auction afforded a full, fair, and reasonable opportunity for any entity or person to make a higher or otherwise better offer to purchase the Acquired Assets.

J.      The Debtor: (i) has full corporate power and authority to execute the APA, and the Sale by the Debtor to the Purchaser has been duly and validly authorized by all necessary corporate action, (ii) has all of the corporate power and authority necessary to consummate the Sale and all transactions contemplated by the APA, (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtor of the Sale and all transactions contemplated thereby, and (iv) requires no consents or approvals that have not been obtained, other than the Court's entry of this Order and those expressly provided for in the APA to consummate such transactions.

K.      As described in the APA, Centric Pipe, LLC, a pre-petition creditor of the Debtor and an affiliate of the Purchaser, has asserted claims against the Debtor. The Debtor and the Administrative Agent, in turn, have asserted claims against Centric relating to "certain Inventory listed in Exhibit A to the letter from Centric to the Seller, dated July 1, 2020, or to which ownership is otherwise disputed by Centric" (defined in the APA as the "Centric Inventory"). As defined in the APA, the "Centric Claims" being settled and compromised under the APA consist of the following: "(1) the non-priority unsecured Claim owing to Centric Pipe as scheduled by Eagle

---

[4] Marco International Corporation was designated as Back-Up Bidder in the Notice of Successful Bidder.  In the event that Purchaser fails to consummate the Sale described herein and provided that the Outside Back-up Date (as defined in the Bid Procedures Order) has not occurred, the Debtor shall notify the Back-up Bidder no later than one business day of the proposed closing date with the Successful Bidder of the Purchaser's failure to close and shall set an emergency status conference and to the extent required by the Debtor or Back-up Bidder, seek separate approval, after notice and a hearing, of a modified sale order approving the Back-Up Bidder's APA based on the Back-Up Bidder's last Bid at the Auction, subject to the terms and conditions set forth in the Back-up Bidder's APA.  All parties' rights with respect to the Back-up Bidder's APA are expressly reserved.

Pipe in the Chapter 11 Case in the amount of $1,388,043.29; (2) any security interests in, Liens against, or Claims or causes of action held or asserted by any party in interest in the Chapter 11 Case (including without limitation the Secured Lenders) relating to the Centric Inventory; and (3) Centric Pipe's asserted unsecured Claim against the Eagle Pipe bankruptcy estate in the amount of $3,553,647.98 (plus accruing interest) relating to the Centric Inventory."  Also, as set forth in Section 10.4 of the APA, a condition for the consummation of the sale contemplated under the APA, includes the release of claims against Hired Employees (as defined in the APA), which includes Avoidance Actions (as defined in the APA), Excluded Causes of Action (as defined in the Final Cash Collateral Order (defined below)), and any other causes of action which could be pursued directly by or derivatively through the Debtor, its bankruptcy estate or any successors in interest (the "Hired Employee Claims" and, collectively with the Centric Claims, the "Released Claims").

L.      The APA provides for a settlement of the Centric Claims and the Hired Employee Claims and for mutual releases of the Centric Claims by all parties in interest in this case (the "Releases") in exchange for payment by the Purchaser at Closing of the Centric Claims Settlement Amount and the Seller Claims Settlement Amount, which amount is $1,031,297.25 in the aggregate (inclusive of the Releases, the "Compromise and Settlement").  The Releases include, but are not limited to, Avoidance Actions (as defined in Section 2.1(h) of the APA) and Excluded Causes of Action (as defined in Paragraph 13(a)(i) of the Final Cash Collateral Order (defined below)).  In exchange for the Committee's stipulation and agreement that the Challenge Period (as defined under the Final Cash Collateral Order) is hereby terminated as of the date of entry of this Order, and the Committee's agreement to release any remaining rights to file or otherwise pursue a Challenge Proceeding (as defined under the Final Cash Collateral Order), the Administrative

6

Agent (for the Secured Parties) hereby agrees and stipulates that $40,000.00 (the "D&O Claims Settlement Amount") of the total $100,000.00 Seller Claim Settlement Amount shall be allocated to the Excluded Causes of Action against any Hired Employees.[5] As set forth in Paragraph 11 below, the Secured Parties' Liens shall not attach to the D&O Claims Settlement Amount, and the Net Cash (defined below) shall exclude the D&O Claims Settlement Amount.

M.     The Compromise and Settlement under this Order and the APA, including the allocation of settlement funds, are critical to and mutually dependent upon the Sale, are supported by fair and reasonable consideration, are in the best interests of the Debtor's estate, and, accordingly, is hereby approved pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

N.     The Releases, in particular, as an integral and non-severable component of the Compromise and Settlement and to the fullest extent set forth in the APA and this Order, are critical to the Compromise and Settlement under the APA, are supported by fair and reasonable consideration, are in the best interests of the Debtor's estate, and, accordingly, are hereby approved pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019. The Releases shall be effective upon Closing.

O.     Approval of the Compromise and Settlement is (i) fair and equitable, (ii) in the best interests of the Estates, and (iii) falls within the reasonable range of litigation possibilities. The balance between the likelihood of the Debtor's success on the merits after lengthy and costly litigation when compared to the concrete and tangible benefit of the Compromise and Settlement weighs in favor of approval of the Compromise and Settlement. Moreover, it is certain that litigation of the Centric Claims and Hired Employee Claims would be costly, complex and

---

[5] For the avoidance of doubt, no employee, officer or director of Marco International Corporation is or will be a Hired Employee by the Purchaser.

protracted.  The Debtor relied on experienced counsel from its professionals and advisors when exercising their business judgment to enter into the Compromise and Settlement.

P.      Approval of the APA and consummation of the Sale are in the best interests of the Debtor, its creditors, the Debtor's estate, and other parties in interest.

Q.      The Debtor has demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for this Court to approve the APA and consummation of the Sale pursuant to § 363(b) of the Bankruptcy Code prior to and outside of a plan of reorganization because of the Debtor's current financial position.

R.      The APA was negotiated, proposed, and entered into by the Debtor and the Purchaser without collusion, in good faith, and on an arms'-length basis.  Neither the Debtor, nor the Purchaser, nor any affiliate of the Purchaser, has engaged in any conduct that would cause or permit the APA to be avoided under § 363(n) of the Bankruptcy Code.

S.      The Purchaser is a good-faith purchaser under § 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

T.      The Purchaser is not an "insider" of the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code.

U.      The consideration provided by the Purchaser for the Acquired Assets pursuant to the APA is (a) reasonably equivalent value under the Bankruptcy Code and any Uniform Fraudulent Transfer Act, (b) fair consideration under any Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, fair salable value, and fair value under any such laws as applicable or any other applicable laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

8

V.   As of the Closing, pursuant and subject to the terms of the APA and upon receipt by Administrative Agent of the Net Proceeds (defined below), the transfer of the Acquired Assets and the Sale will effect a legal, valid, enforceable, and effective transfer of the Acquired Assets and will vest the Purchaser with all of the Debtor's right, title, and interest in the Acquired Assets, free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever.

W.   The Purchaser is hereby substituted for all purposes as a party to all Assumed Contracts in the place of the Debtor.  Purchaser shall have any and all rights and benefits of the Debtor under all such Assumed Contracts without interruption or termination of any kind, and all terms applicable to the Debtor shall apply to the Purchaser as if such Assumed Contracts were amended to replace the Debtor with the Purchaser.

X.   The Purchaser would not have entered into the APA and would not have consummated the Sale, thus adversely affecting the Debtor, its estate, and creditors, if both (i) the Sale and (ii) the assumption and assignment of the Assumed Contracts to the Purchaser were not free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever.

Y.   The Debtor may sell the Acquired Assets free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in § 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  All parties in interest, including, without limitation, any holders of Liens, claims, encumbrances, and other interests and any other non-Debtor counterparties to the Assumed Contracts, that did not object, or who withdrew its objection, to the Sale, the Motion, the assumption and assignment of the applicable Assumed Contract, or the associated Cure Amount have consented to the relief

9

granted herein pursuant to § 363(f)(2) of the Bankruptcy Code; provided, however, that the requirements of section 363(f) are satisfied because the Administrative Agent consents to the release of its Liens against the Acquired Assets and to the Sale of the Acquired Assets based on the provisions of this Order: (a) providing for the payment of all the proceeds of the Sale, less the Break-Up Fee allowed in accordance with the Bid Procedures Order (the "Net Proceeds"), to the Administrative Agent at the Closing of the Sale; and (b) requiring the Debtor to pay the Administrative Agent all the cash that Debtor has in its depository accounts as of the Closing, less the Reserved Funds (as defined below) ("Net Cash").  Those (x) holders of Liens and (y) non-Debtor parties to Assumed Contracts who in each case did object fall within one or more of the other subsections of § 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, if any, attach to the portion of the net Sale proceeds ultimately attributable to the property against or in which they assert an interest that are not otherwise paid to Administrative Agent at Closing, in the order of their priority, with the same validity, force, and effect that they now have as against such property, subject to any claims and defenses the Debtor may possess with respect thereto.

Z.      Neither the Purchaser nor any of their affiliates are successors to the Debtor or its estate by reason of any theory of law or equity, and neither the Purchaser nor any of their affiliates shall assume or in any way be responsible for any liability or obligation of the Debtor and/or its estate, except as otherwise expressly provided in the APA.

AA.     The Debtor has demonstrated that the assumption and assignment of the Assumed Contracts to the Purchaser in connection with the consummation of the Sale is an exercise of the Debtor's sound business judgment and is in the best interests of the Debtor, its estate and creditors, and other parties in interest.  The Assumed Contracts being assigned to the Purchaser are an

integral part of the APA and the Sale and, accordingly, the assumption and assignment of the Assumed Contracts is reasonable and enhances the value of the Debtor's estate. Any non-Debtor counterparty to an Assumed Contract that has not actually filed with the Court an objection to such assumption and assignment in accordance with the terms of the Bid Procedures Order and Cure Notice is deemed to have consented to such assumption and assignment.

BB. The Debtor and the Purchaser, as applicable under the APA, have, including by way of entering into the APA, and agreeing to the provisions relating to the Assumed Contracts therein, (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of § 365(b)(l)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of § 365(b)(1)(B) of the Bankruptcy Code, and the Purchaser has, based upon the record of these proceedings, provided adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of §§ 365(b)(1) and 365(f)(2) of the Bankruptcy Code. No default exists in the Debtor's performance under the Assumed Contracts as of the Closing Date other than the failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in § 365(b)(1)(A) of the Bankruptcy Code. The Purchaser's promise under the APA to perform the obligations under the Assumed Contracts after the Closing shall constitute sufficient adequate assurance of future performance under the Assumed Contracts being assigned to the Purchaser within the meanings of §§ 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code. The Cure Amounts are hereby found to be the sole amounts necessary to cure any and all defaults under the Assumed Contracts under § 365(b) of the Bankruptcy Code.

CC.     Time is of the essence in consummating the Sale. The consummation of the Sale as soon as practicable is necessary both to preserve and maximize the value of the Debtor's assets for the benefit of the Debtor, its estate, creditors, interest holders, and all other parties in interest in the chapter 11 case, and to provide the means for the Debtor to maximize creditor and interest holder recoveries. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

DD.     The Purchase Price set forth in the APA is not sufficient to satisfy in full the Obligations to the Secured Parties as set forth in the *Final Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief* (the "Final Cash Collateral Order") [Docket No. 98].

EE.     Under Paragraph 18(e) of the Final Cash Collateral Order, upon the consummation of the Sale contemplated herein, a Termination Event shall have occurred.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Sale contemplated in the Motion and the APA is approved as set forth in this Sale Order. Any objections that have not been previously resolved or withdrawn are overruled on the merits.

**Approval of the APA**

2.     The APA and all other ancillary documents, including all of the terms and conditions thereof, are hereby approved.

3.     Pursuant to § 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to execute and deliver, perform under, consummate, implement, comply with, and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, and consummate the Sale pursuant to and in

accordance with the terms and conditions of the APA. The Debtor is further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any expenses or costs that are required to be paid in order to consummate the transactions contemplated by the APA or perform their obligations under the APA, provide that such payments are in accordance with the Final Cash Collateral Order, or otherwise approved by the written consent of the Administrative Agent. Following the consummation of the Sale, and notwithstanding their position as Hired Employees (as defined under the APA) of the Purchaser, Jared Light and Brian Garrett shall continue to serve as President and Controller, respectively, for the Debtor (without compensation from the estate after Closing) for the interim period until the Case is converted to Chapter 7 or otherwise ordered by the Court.

4.      The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the APA, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Acquired Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA.

5.      This Order and the APA shall be binding in all respects upon the Debtor and its estate, successors, and assigns, all creditors of and equity holders in the Debtor, and any and all other parties in interest, including, without limitation, any and all holders of Liens, claims, encumbrances, and other interests (including holders of any rights or claims based on any putative successor or transferee liability) of any kind or nature whatsoever in the Acquired Assets, all non-Debtor parties to the Assumed Contracts, and any trustee or successor trustee appointed in this

chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code. The APA and the Sale are not subject to rejection or avoidance (whether through any avoidance or recovery, claim, action, or proceeding arising under chapter 5 of the Bankruptcy Code or under any similar state or federal Law or any other cause of action) by the Debtor, any chapter 7 or chapter 11 trustee of the Debtor's bankruptcy estate or any other person or entity. The APA, this Order, and the Debtor's obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in this bankruptcy case, any order confirming any chapter 11 plan, or any subsequent order of this Court without the prior written consent of the Purchaser. Nothing contained in any chapter 11 plan confirmed in this chapter 11 case or the confirmation order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the APA or this Order. This Sale Order and the APA shall inure to the benefit of the Debtor, its estate, its creditors, the Purchaser, and their respective successors and assigns.

6. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

**Transfer of the Acquired Assets**

7. Except as expressly permitted or otherwise specifically provided for in the APA or this Order, pursuant to §§ 105(a), 363(b), 363(f), 365(b), 365(f) of the Bankruptcy Code or any other applicable section of the Bankruptcy Code, upon the Closing and receipt by Administrative Agent of the Net Proceeds, the Acquired Assets shall be transferred to the Purchaser, and such transfer shall constitute a legal, valid, binding, and effective transfer of the Acquired Assets free

14

and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever pursuant to § 363(f) of the Bankruptcy Code. Upon the Closing, the Purchaser shall take title to and possession of the Acquired Assets subject only to the Assumed Liabilities and Permitted Exceptions.

8.     Except as expressly permitted or otherwise specifically provided by the APA or this Order and subject to the satisfaction of the conditions and/or requirements contained in Paragraphs 10 and 11 of this Order, all persons and entities (as defined in § 101(15) of the Bankruptcy Code), including, but not limited to, all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, creditors holding Liens or claims of any kind or nature whatsoever against or in the Debtor or any of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtor, the Acquired Assets, the operation of the Debtor's businesses prior to the Closing, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting any Liens or claims of any kind or nature whatsoever, against the Purchaser and its successors, designees, assigns, or property, or the Acquired Assets conveyed in accordance with the APA. On the Closing Date, each of the Debtor's creditors is authorized to execute such documents and take all other actions as may be reasonably deemed by the Purchaser to be necessary or desirable to release Liens or claims on the Acquired Assets, if any, as provided for herein, as such Liens or claims may have been recorded or may otherwise exist. All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Purchaser or its assignee as of the Closing Date.

4845-8979-5795.2

9.      Except as provided below concerning the Liens on the Acquired Assets held by Administrative Agent, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens in the Acquired Assets conveyed pursuant to the APA and this Order has not delivered to the Debtor, prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens which the person or entity has with respect to the Acquired Assets or otherwise, then (a) the Debtor is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets, and (b) the Purchaser is hereby authorized to file, register, or otherwise record, at its own cost and expense, a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Acquired Assets of any kind or nature whatsoever (collectively, "Release Documents"); provided that, neither the Debtor nor the Purchaser is authorized to file any Release Documents with respect to the Liens held by Administrative Agent in the Purchased Assets without first obtaining the express written consent of Administrative Agent and providing drafts of such Release Documents to Administrative Agent for its review and approval, which consent and approval shall be in Administrative Agent's sole discretion, provided that such consent and approval is not unreasonably withheld in violation of other provisions of this Order.

10.     In accordance with the terms of Final Cash Collateral Order, at the Closing of the Sale, the Net Proceeds shall be directly and indefeasibly paid in full in cash to the Administrative Agent in partial satisfaction of the Obligations (as such term is defined in the Final Cash Collateral Order). Specifically, at Closing, in consideration of the transfer of the Acquired Assets to the Purchaser by the Debtor and the release of the Administrative Agent's Liens against the Acquired

16

Assets, the Purchaser shall irrevocably directly transfer and/or pay to the Administrative Agent the Net Proceeds by wire transfer pursuant to instructions to be provided by the Administrative Agent, with the Administrative Agent to apply such proceeds to the Obligations in accordance with the terms of the Loan Documents (as defined in the Final Cash Collateral Order). The Net Proceeds shall be paid to the Administrative Agent without any setoff or deduction of any kind.

11.     At Closing, and in accordance with the Final Cash Collateral Order, the Debtor shall reserve from its depository accounts the following amounts: (a) all amounts included in the calculation of the Carve-Out (as defined in Paragraph 10 of the Final Cash Collateral Order); (b) any unpaid expenses, including but not limited to any post-petition obligations of the Debtor relating to the purchase of post-petition inventory, incurred by the Debtor in accordance with the Budget (as defined in the Final Cash Collateral Order) prior to the Closing and the occurrence of the associated Termination Event under the Final Cash Collateral Order; (c) the amount of $395,846.68, as provided in Paragraph 32 of the Final Cash Collateral Order, for outstanding ad valorem taxes for 2020 (the "Tax Funds"); and (d) the D&O Claims Settlement Amount (collectively, the "Reserved Funds"), with the Reserved Funds to be distributed in accordance with any prior or subsequent order of the Court.  All of the Debtor's Net Cash shall be transferred by the Debtor to the Administrative Agent at Closing, or as soon as practicable but in no event more than three (3) business days following Closing, for application to the Obligations in accordance with the Loan Documents (as defined in the Final Cash Collateral Order).  Prior to paying the Net Cash to the Administrative Agent under this Paragraph 11, the Debtor shall pay any Invoiced Fees of Secured Party Professionals (as defined in Paragraph 13(c) of the Final Cash Collateral Order) for which the Review Period (as defined in Paragraph 13(c) of the Final Cash Collateral Order) passed prior to entry of this Order.  Such Invoiced Fees shall be paid from the Net Cash, not the

17

Reserved Funds. Upon payment of any such Invoiced Fees to the applicable Secured Party Professionals and the Net Cash to the Administrative Agent under this Paragraph 11, the Debtor shall have no further obligations under Paragraph 13(c) of the Final Cash Collateral Order, and such Paragraph 13(c) of the Final Cash Collateral Order shall have no further force or effect. Nothing contained herein is or shall be deemed to be a release of any Liens or other interests of Administrative Agent with respect to the Reserved Funds or any other property of the Debtor's bankruptcy estate, except with respect to the Acquired Assets and the D&O Claims Settlement Amount upon the Administrative Agent's receipt of the Net Proceeds. Debtor shall provide an accounting of the Reserved Funds to Administrative Agent within 60 days following the Closing. For the avoidance of doubt, at Closing, the Debtor shall pay, or cause the Purchaser to pay, the Break-up Fee from the gross sale proceeds due from the Purchaser at Closing in accordance with the Bid Procedures Order by wire transfer pursuant to the instructions to be provided by the Stalking Horse Bidder in advance of Closing.[6] Neither the Net Proceeds nor the Reserved Funds shall include the Break-Up Fee.

12. By the Committee's agreement, as set forth in Paragraph L of this Order, to terminate the Challenge Period effective immediately upon entry of this Order, the Debtor's stipulations, admissions, agreements and releases contained in the Final Cash Collateral Order, including, without limitation, in Paragraph 4 of the Final Cash Collateral Order, shall be immediately binding upon the Debtor, its estate and all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in this Case and any other person or entity acting or seeking to act on behalf of the Debtor's estate, including any

---

[6] No later than December 4, 2020, the Stalking Horse Bidder shall provide a written statement to the Debtor showing its actual out-of-pocket expenses. The Debtor shall transmit such statement to the Purchaser and Administrative Agent to calculate and include the Break-Up Fee in the amounts to be paid at Closing.

18

chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor, in all circumstances and for all purposes.

## Assumption and Assignment of Assumed Contracts

13.     The Debtor is hereby authorized to and shall, in accordance with §§ 105(a) and 365 of the Bankruptcy Code, (a) assume the Assumed Contracts, (b) assign the Assumed Contracts to the Purchaser, effective upon and subject to the occurrence of the Closing, free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever, which Assumed Contracts by operation of this Order shall be deemed assumed and assigned effective as of the Closing, and (c) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Purchaser.  The Purchaser's assumption on the terms set forth in the APA of the Assumed Contracts is hereby approved, and all requirements and conditions under §§ 363 and 365 of the Bankruptcy Code for the assumption and assignment of the Assumed Contracts by the Debtor to the Purchaser have been satisfied.

14.     Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract on the consent of the non-Debtor counterparty thereto or allow the non-Debtor party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, shall constitute unenforceable anti-assignment provisions that are void and of no force and effect.

15.     Upon assignment to the Purchaser, (i) the Assumed Contracts shall remain in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in §§ 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, limits, or

19

conditions such assignment or transfer and (ii) in accordance with §§ 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest of the Debtor in each Assumed Contract free and clear of Liens, claims, encumbrances, and other interests of any kind or nature whatsoever.

16.     The Purchaser is hereby substituted for all purposes solely related to the Acquired Assets as a party to all Assumed Contracts in the place of the Debtor, and the Purchaser shall have any and all rights and benefits of the Debtor related to the Acquired Assets under all such Assumed Contracts without interruption or termination of any kind, and all terms applicable to the Debtor solely related to the Acquired Assets shall apply to the Purchaser as if such Assumed Contracts were amended to replace the Debtor with the Purchaser.

17.     All defaults or other obligations of the Debtor under the Assumed Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in § 365(b)(2) of the Bankruptcy Code) as to which no objections were interposed and remain pending as of the date of this Order are deemed satisfied by the payment of the proposed amount necessary, if any, to cure all monetary defaults, if any, under such Assumed Contract in those amounts set forth in Schedule 2.2 to the APA attached hereto (the "Cure Amounts") and in the Cure Notice, which was served in compliance with the Bid Procedures Order, and which were satisfied, or shall be satisfied as soon as practicable, as provided in the APA.  For all Assumed Contracts for which a Cure Notice was served, the Debtor or the Purchaser, as applicable under the APA, are authorized and directed to pay all Cure Amounts required to be paid by such parties in accordance with the APA upon the later of (a) the Closing or (b) for any Assumed Contract for which an objection has been filed to the assumption and assignment of such agreement

or the Cure Amounts relating thereto and such objection remains pending as of the date of this Order, the resolution of such objection by settlement or order of this Court.

18.     Each non-Debtor party to an Assumed Contract is hereby forever barred, estopped, and permanently enjoined from asserting against the Debtor, the Purchaser, or any of their affiliates, or the property of any of them, any default, breach, claims of pecuniary losses existing as of the Closing or by reason of Closing, action, liability, or other cause of action existing as of the date of the Sale Hearing whether asserted or not, or, against the Purchaser or any of their affiliates, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtor.  Each non-Debtor party to an Assumed Contract is hereby forever barred, estopped, and permanently enjoined from asserting any objection to the assumption and assignment of such non-Debtor party's Assumed Contract, including, without limitation, that its consent is necessary for such assumption and assignment.

## **Additional Provisions**

19.     This Order (a) shall be effective as a determination that, upon the Closing, all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, foreign, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any

documents or instruments, or who may be required to report or insure any title or state of title in or to, the Acquired Assets.

20.     At any time prior to the Closing, Purchaser may assign the APA or its rights thereunder to one or more of its affiliates, which shall be entitled to assume and accede to the APA and to purchase and acquire any or some of the Acquired Assets in lieu of Purchaser, and such affiliate(s) shall be deemed to be Purchaser for all purposes under this Order.

21.     Neither the Purchaser nor any of its affiliates are or shall be deemed, as a result of the consummation of the Sale contemplated herein, to: (a) be legal successors to the Debtor or its estate by reason of any theory of law or equity, (b) an affiliate of the Debtor, (c) have, *de facto* or otherwise, merged with or into the Debtor, or (d) be an alter ego or a mere continuation or substantial continuation or successor of the Debtor in any respect.  Except as expressly permitted or otherwise specifically provided for in the APA or this Order, neither the Purchaser nor any of its affiliates shall (i) assume or in any way be responsible for any liability or obligation of any of the Debtor and/or its estate or (ii) have any liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Acquired Assets or otherwise.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the APA, the Purchaser and its affiliates shall not be liable for any claims against the Debtor or its predecessors or affiliates, and the Purchaser and its affiliates shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of warranty, product liability, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under,

4845-8979-5795.2

out of, in connection with, or in any way relating to the operation of the Debtor's businesses prior to the Closing.

22.     Following the Closing, no holder of a Lien in the Acquired Assets shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Lien, or any actions that the Debtor may take in this chapter 11 case or any successor case.

23.     This Court retains jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Acquired Assets or performance of other obligations owed to the Purchaser; (b) resolve any disputes arising under or related to the APA, except as otherwise provided therein; (c) interpret, implement, and enforce the provisions of this Order; and (d) protect the Purchaser and its affiliates against (i) any Liens in the Debtor or the Acquired Assets of any kind or nature whatsoever and (ii) any creditors or other parties in interest regarding the turnover of the Acquired Assets that may be in their possession.

24.     The so-called "bulk sale" laws or any similar law of any applicable state or other jurisdiction are waived or inapplicable to the Sale.

25.     Except as otherwise expressly provided in the APA, the Purchaser shall have no Liability to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans), or any other payment with respect to employees or former employees of the Debtor.  Except as otherwise expressly provided in the APA, the Purchaser shall have no Liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, benefit and/or incentive plan to which the Debtor are parties and relating to the Acquired Assets

(including, without limitation, arising from or related to the rejection or other termination of any such agreement), and Purchaser shall in no way be deemed a party to or assignee of any such agreement, and no employee of Purchaser shall be deemed in any way covered by or a party to any such agreement, and except as otherwise expressly provided in the APA, all parties to any such agreement are hereby enjoined from asserting against Purchaser any and all Claims arising from or relating to such agreement.

26.     The Debtor shall use the Tax Funds to fund a tax account as provided in Paragraph 32 of the Final Cash Collateral Order for outstanding ad valorem taxes for 2020, including statutory interest, at the time of Closing.  Notwithstanding any provision set forth herein, the Texas Taxing Authorities (as defined in the Final Cash Collateral Order) shall retain their Liens against the Tax Funds in the amount of the proceeds derived from the Sale of their respective collateral located within the jurisdictions of the Texas Taxing Authorities to the same extent and with the same priority as such Liens were held immediately prior to the Sale. The tax Liens for the 2021 taxes are specifically retained by Texas Taxing Authorities until the 2021 taxes are paid in full and the Purchaser assumes the personal liability for such 2021 taxes.  For the avoidance of doubt, and pursuant to Paragraph 11 of this Order, all Liens and other interests of the Administrative Agent shall remain perfected as to the Tax Funds to the same extent and with the same priority as existed immediately prior to the Sale.

27.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale transaction contemplated by the APA.

28.     No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Acquired Assets sold, transferred or

conveyed to the Purchaser on account of the filing or pendency of the chapter 11 case or the consummation of the sale of the Acquired Assets.

29.    The failure to specifically include any particular provision of the APA or other related documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA and other related documents be authorized and approved in their entirety.

30.    This Order and the APA shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtor, all interest holders of the Debtor, all non-debtor parties to the Assumed Contracts, the official committee of unsecured creditors appointed by the U.S. Trustee, all successors and assigns of the Debtor and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in this chapter 11 case or upon a conversion of the Debtor's case to those under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the APA and Sale transaction shall not be subject to rejection or avoidance under any circumstances.  If any order under Bankruptcy Code § 1112 is entered, such order shall provide (in accordance with Bankruptcy Code §§ 105 and 349) that this Order and the rights granted to the Purchaser hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.  For the avoidance of doubt, the Debtor's inability to satisfy in full all administrative expense claims of the Debtor's estate shall not be a basis for termination, rejection or avoidance (as applicable) of the APA or the Sale transaction.

31.    Effective immediately upon Closing the Sale under the APA, all creditors and parties in interest in this chapter 11 case (or any successor case) which have held or asserted, which hold or assert, or which in the future may hold or assert any Released Claim, directly or indirectly, shall be forever barred and enjoined from asserting or commencing, conducting or continuing in

any manner, directly or indirectly, any suit, action, or other proceeding of any kind against any person on account of or in connection with or with respect to, any Released Claim and any claims or causes of action alleging or relying on any legal or equitable theory that is premised or based, in whole or in part, on any Released Claim. Any party against whom any suit, action, or other proceeding of any kind is brought in connection with or with respect to, any Released Claim may enforce this Order as a defense to any such suit, action, or other proceeding and may seek to enforce this injunction in a court of competent jurisdiction.

32.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and their provisions shall be self-executing. In the absence of any entity obtaining a stay pending appeal, the Debtor and the Purchaser are free to close the Sale under the APA in accordance with their terms at any time.

33.     Purchaser shall: (1) preserve any and all such books and records for a period of 180 days after Closing as set forth in this proviso, (2) take any and all reasonable steps necessary to maintain any and all such books and records in the same form, content, and structure as received from Seller, (3) backup or archive any and all such books and records that exist in electronic format, (4) avoid any corruption, deletion, and/or alteration of any and all such books and records, and (5) cooperate with the Seller, any examiner or trustee appointed in the Bankruptcy Case, and/or the Official Unsecured Creditors Committee appointed in the Bankruptcy Case in the cataloging or indexing, preservation, access, and use of any and all such books and records.

Signed: November 30, 2020

Marvin Isgur
United States Bankruptcy Judge

4845-8979-5795.2

**<u>Exhibit 1</u>**

**APA**

<br><br><br><br>

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**EP ACQUISITION COMPANY, LLC**

**AND**

**EAGLE PIPE, LLC**

<br><br><br>

**Dated as of November 27, 2020**

| | | |
|---|---|---|
| ARTICLE I | CERTAIN DEFINITIONS | 1 |
| 1.1 | Specific Definitions | 1 |
| 1.2 | Other Terms | 9 |
| 1.3 | Other Definitional Provisions | 9 |
| | | |
| ARTICLE II | PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES | 10 |
| 2.1 | Acquired Assets | 10 |
| 2.2 | Assignment of Leases, Licenses, Contracts, and Purchase Orders | 12 |
| 2.3 | Excluded Assets | 13 |
| 2.4 | Assumed Obligations | 14 |
| 2.5 | No Other Liabilities Assumed | 14 |
| 2.6 | Right to Change Designations | 15 |
| | | |
| ARTICLE III | PURCHASE PRICE AND PAYMENT | 15 |
| 3.1 | Purchase Price | 15 |
| 3.2 | Payment of Purchase Price; Deposit; Escrow | 16 |
| 3.3 | Adjustments to Purchase Price | 16 |
| 3.4 | Prorations | 18 |
| 3.5 | Procedure for Purchase Price Calculation and Payment | 18 |
| 3.6 | Further Assurances | 18 |
| | | |
| ARTICLE IV | REPRESENTATIONS AND WARRANTIES OF SELLER | 19 |
| 4.1 | Due Incorporation; Good Standing | 19 |
| 4.2 | Authority; No Violation | 19 |
| 4.3 | Consents | 20 |
| 4.4 | Title to and Condition of Properties | 20 |
| 4.5 | Contracts | 20 |
| 4.6 | Brokers | 21 |
| 4.7 | Operational Matters | 21 |
| 4.8 | Inventory | 21 |
| 4.9 | Accounts | 22 |
| 4.10 | Employees | 22 |
| 4.11 | Intellectual Property | 22 |
| 4.12 | Compliance with Laws | 22 |
| 4.13 | Taxes | 23 |
| 4.14 | Employee Benefit Plans | 23 |
| 4.15 | Customers and Suppliers | 24 |
| 4.16 | Environmental Matters | 24 |
| 4.17 | Litigation | 25 |
| | | |
| ARTICLE V | REPRESENTATIONS AND WARRANTIES OF PURCHASER | 25 |
| 5.1 | Purchaser's Organization; Good Standing | 25 |
| 5.2 | Purchaser's Authority; No Violation | 25 |
| 5.3 | Consents, Approvals or Authorizations | 26 |

| | | |
|---|---|---:|
| 5.4 | Brokers | 26 |
| 5.5 | Litigation | 26 |
| **ARTICLE VI** | **COVENANTS OF SELLER AND/OR PURCHASER** | **26** |
| 6.1 | Consents and Approvals | 26 |
| 6.2 | Confidentiality; Non-Solicitation and Use of Trade Names | 26 |
| 6.3 | Referral of Business Opportunities | 28 |
| 6.4 | Seller's Employees | 28 |
| 6.5 | Purchaser's Access To Seller's Records | 28 |
| 6.6 | Seller's Maintenance of Leases and Contracts | 29 |
| 6.7 | COBRA and WARN Act Obligations | 29 |
| 6.8 | Payment of Cure Amounts | 29 |
| 6.9 | Termination of Hired Employees | 29 |
| 6.10 | Receipt of Purchaser's Assets | 29 |
| 6.11 | Reporting Obligations | 30 |
| 6.12 | Public Statements | 30 |
| 6.13 | Bankruptcy Court Approval | 30 |
| **ARTICLE VII** | **COVENANTS OF PURCHASER** | **31** |
| 7.1 | Assumed Obligations | 31 |
| 7.2 | Employees | 31 |
| 7.3 | Reasonable Access to Records and Certain Personnel | 31 |
| 7.4 | Receipt of Seller's Assets | 32 |
| **ARTICLE VIII** | **CONDITIONS PRECEDENT TO OBLIGATIONS OF PURCHASER** | **32** |
| 8.1 | Representations and Warranties True as of the Effective Date and Closing Date | 32 |
| 8.2 | No Material Adverse Effect | 32 |
| 8.3 | Ordinary Course Operations | 32 |
| 8.4 | Delivery of Acquired Assets | 33 |
| 8.5 | Subject to Competitive Bidding Process | 33 |
| 8.6 | Lease/Contract Assumption and Assignment | 33 |
| 8.7 | Consents; Permits | 33 |
| 8.8 | Company Documents | 33 |
| 8.9 | Release of Liens | 33 |
| 8.10 | Sale Order | 34 |
| 8.11 | Closing | 34 |
| **ARTICLE IX** | **CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER** | **34** |
| 9.1 | Representations and Warranties True as of the Effective Date and Closing Date | 34 |
| 9.2 | Bankruptcy Condition | 34 |
| 9.3 | Consents; Permits | 34 |
| 9.4 | Company Documents | 34 |
| 9.5 | Closing Deadline | 34 |

ARTICLE X        CLOSING ........................................................................................................ 35

   10.1    Closing ................................................................................................................... 35
   10.2    Deliveries by Seller .............................................................................................. 35
   10.3    Deliveries by Purchaser ........................................................................................ 35
   10.4    Release of Claims Against Hired Employees ........................................................ 35

ARTICLE XI       TERMINATION ............................................................................................. 35

   11.1    Termination of Agreement ..................................................................................... 35
   11.2    Procedure and Effect of Termination and Right to Proceed ............................. 36
   11.3    Breach by Seller .................................................................................................... 37
   11.4    Breach by Purchaser .............................................................................................. 37
   11.5    Alternative Purchaser ............................................................................................ 37
   11.6    Exclusive Remedies .............................................................................................. 37

ARTICLE XII      MISCELLANEOUS ....................................................................................... 38

   12.1    Expenses ................................................................................................................ 38
   12.2    Amendment ............................................................................................................ 38
   12.3    Notices ................................................................................................................... 38
   12.4    Effect of Investigations ......................................................................................... 39
   12.5    Interim Management .............................................................................................. 39
   12.6    Waivers .................................................................................................................. 39
   12.7    Counterparts ........................................................................................................... 40
   12.8    Headings ................................................................................................................ 40
   12.9    Applicable Law and Jurisdiction .......................................................................... 40
   12.10   Binding Nature; Assignment ................................................................................. 40
   12.11   No Third Party Beneficiaries ................................................................................ 40
   12.12   Non-Recourse ........................................................................................................ 40
   12.13   Tax Matters ............................................................................................................ 41
   12.14   Construction ........................................................................................................... 41
   12.15   Entire Understanding ............................................................................................. 41
   12.16   Broker Commission ............................................................................................... 42

LIST OF SCHEDULES AND EXHIBITS

SCHEDULE 2.1(a) - Inventory
SCHEDULE 2.1(b) – Intellectual Property
SCHEDULE 2.1(c) - Permits
SCHEDULE 2.1(i) - Accounts
SCHEDULE 2.2 – Material Contracts, Leases, Cure Amounts
SCHEDULE 2.3(i) – Excluded Assets
SCHEDULE 3.1 – Purchase Price Summary
SCHEDULE 4.2 – Authority; No Violation
SCHEDULE 4.6 – Brokers
SCHEDULE 4.8 - Transactions Outside of the Ordinary Course
SCHEDULE 4.14(a) –Employee Benefit Plans
SCHEDULE 4.14(c) –Employee Benefit Plan Compliance
SCHEDULE 4.14(d) –Employee Benefit Plan Proceedings
SCHEDULE 4.16 – Environmental Matters
SCHEDULE 4.17 – Litigation
EXHIBIT A – Escrow Agreement
EXHIBIT B – Form of Proposed Sale Order

4841-0539-3619.6

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT is dated as of November 24, 2020 (the "Effective Date"), by and among EP Acquisition Company, LLC, a limited liability company organized and existing under the laws of the State of Texas ("Purchaser"), Eagle Pipe, LLC, a Texas limited liability company and the debtor and debtor-in-possession under Chapter 11 Case No. 20-34879, in the United States Bankruptcy Court for the Southern District of Texas ("Eagle Pipe" or the "Seller"). In consideration of the mutual covenants, agreements and warranties herein contained, the parties hereto agree as follows:

## ARTICLE I
## CERTAIN DEFINITIONS

1.1    Specific Definitions. Unless otherwise defined herein, terms used herein shall have the meanings set forth below:

"Accounts" shall have the meaning ascribed thereto in Section 2.1(i) hereof.

"Acquired Assets" shall have the meaning ascribed thereto in Section 2.1 hereof.

"Acquired Locations" means the warehouse and property locations of Seller identified on **Schedule 2.2** hereto, including the Warehouses and the Offices, subject to Section 2.2(a) hereof.

"Affiliate Obligations" means Seller's debt and other obligations and liabilities to affiliates and stockholders of Seller, and includes all interest, fees, costs and similar amounts payable by Seller in respect thereof.

"Agreement" means this Asset Purchase Agreement, including all Exhibits and Schedules hereto, as it may be amended from time to time in accordance with its terms.

"Ancillary Documents" shall have the meaning ascribed thereto in Section 12.9 hereof.

"Assignment and Assumption" shall mean an Assignment and Assumption of Leases, Contracts and other Assumed Obligations, as provided for in Section 10.2 hereof, executed and delivered by Purchaser and Seller in accordance with Sections 10.2 and 10.3 hereof.

"Assumed Contracts" shall mean those Contracts assigned by Seller and assumed by Purchaser by operation of Section 2.2(b) hereof.

"Assumed Leases" shall have the meaning ascribed thereto in Section 2.2(a) hereof.

"Assumed Obligations" shall have the meaning ascribed thereto in Section 2.4 hereof.

"Bankruptcy Code" means Title 11, United States Code, sections 101-1330, as same shall be amended from time to time.

-1-

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, having jurisdiction over Eagle Pipe and its assets in the Chapter 11 Case.

"*Bankruptcy Rules*" shall mean the Federal Rules of Bankruptcy Procedure as shall be promulgated by the Supreme Court of the United States, as same shall be applicable in the Chapter 11 Cases.

"*Bid Procedures Order*" shall mean that certain *Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, and (C) Approving Cure Procedures and* the *Form and Manner of Notice Thereof,* entered by the Bankruptcy Court as Docket No. 97 in the Chapter 11 Case, as well as any subsequent modification or amendment thereto.

"*Bill of Sale*" shall have the meaning ascribed thereto in Section 10.2 hereof.

"*Boomerang Claims*" means any Avoidance Actions and alternative other legal theories and defenses with respect to the Boomerang Inventory either determining the Boomerang Inventory is property of the Seller or may be recovered by Seller or its bankruptcy estate for the benefit of its creditors.

"*Boomerang Inventory*" means that certain Inventory listed in Schedule 1 to that certain *Cancellation of Sale Agreement*, dated July 8, 2020, by and between the Seller and Boomerang Tube, LLC.

"*Business*" means the business of Seller involving the sale, distribution, and performance of supply-chain logistics services for oil country tubular goods (OCTG), line pipe, and HDPE (poly pipe), as well as a wide variety of associated products and services to the upstream, midstream, and municipal & industrial industries, together with the office operations operated by Seller.

"*Business Day*" shall mean any day other than a Saturday, a Sunday, or a day on which banks in New York, NY are authorized or obligated by law or executive order to close.

"*Centric Claims*" means each and all of the following: (1) the non-priority unsecured Claim owing to Centric Pipe as scheduled by Eagle Pipe in the Chapter 11 Case in the amount of $1,388,043.29; (2) any security interests in, Liens against, or Claims or causes of action held or asserted by any party in interest in the Chapter 11 Case (including without limitation the Secured Lenders) relating to the Centric Inventory; and (3) Centric Pipe's asserted unsecured Claim against the Eagle Pipe bankruptcy estate in the amount of $3,553,647.98 (plus accruing interest) relating to the Centric Inventory.

"*Centric Claims Settlement Amount*" means cash in the amount of $931,297.25 as consideration for the compromise and settlement of the Centric Claims.

"*Centric Inventory*" means that certain Inventory listed in Exhibit A to the letter from Centric to the Seller, dated July 1, 2020, or to which ownership is otherwise disputed by Centric.

"*Chapter 11 Case*" means the pending case commenced by Eagle Pipe on October 5, 2020 under Chapter 11 of the Bankruptcy Code, pending in the Bankruptcy Court under docket no. 20-34879.

"*Claim*" means any claim, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, rights to payment and remedies whether at law or in equity, of any nature whatsoever, asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured or otherwise, and shall include affirmative and defensive legal rights, as well as any other such legal assertions as fall within the definition of Claim as set forth in Section 101(5) of the Bankruptcy Code having the broadest possible meaning permitted thereunder,

"*Closing*" means the consummation of the transactions contemplated herein in accordance with Article X hereof.

"*Closing Date*" means the date on which the Closing shall occur, as more extensively discussed in Section 10.1 hereof.

"*COBRA*" means the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.

"*Code*" means the United States Internal Revenue Code of 1986, as amended.

"*Competitive Business*" means any business which competes, directly or indirectly, with the Business.

"*Confidential Information*" shall have the meaning ascribed thereto in Section 6.2(a) hereof.

"*Contaminant*" means any substances regulated under any Environmental Law as a pollutant, Hazardous Substances, hazardous or toxic wastes, hazardous materials, or toxic substances under any Environmental Law.

"*Contracts*" means all contracts, leases, deeds, mortgages, licenses, Purchase Orders, instruments, notes, commitments, undertakings, indentures, joint ventures and all other agreements, commitments and legally binding arrangements, whether written or oral.

"*Contract Rejection Option*" shall have the meaning ascribed thereto in Section 2.2(b)(ii) hereof.

"*Cure Amount*" shall mean the amounts, if any, necessary to cure all defaults, if any, and to pay all actual pecuniary losses, if any, that have resulted from defaults under the Assumed Contracts and the Assumed Leases.

"*De Minimis Losses*" means any Losses resulting from a single set of facts and circumstances that does not exceed $1,000 in the aggregate.

"*Deposit*" shall have the meaning ascribed thereto in Section 3.2(a) hereof.

"*DJR Contract*" means that certain inventory offer dated August 3, 2020 and related invoice with stated purchase and return terms between Seller and DJR Energy, LLC dated September 23, 2020 for the supply of certain Inventory.

"*Disclosure Schedule*" means, collectively, the various disclosure schedules hereto.

"*Eagle Pipe*" shall have the meaning ascribed thereto in the Preamble of this Agreement.

"*Effective Date*" means the date of this Agreement as stated in the first paragraph hereof.

"*Employees*" shall have the meaning ascribed thereto in Section 7.2 hereof.

"*Employee Benefit Plan*" shall have the meaning ascribed thereto in Section 4.14 hereof.

"*Enduring Contract*" means those certain invoices with stated purchase and return terms between Seller and Enduring Resources, LLC dated July 24, 2020 and July 31, 2020 for the supply of certain Inventory.

"*Environmental Costs and Liabilities*" means all Losses from any Claim, by any Person, whether based on contract, tort, or arising under or pursuant to any Environmental Law or a Release of a Contaminant into the environment, including any Remedial Action, any Lien in favor of any authority pursuant to any Environmental Law or any Order or agreement with any authority.

"*Environmental Law*" means any Regulation which is related to or otherwise imposes liability or standards of conduct: (a) relating to pollution (or the cleanup thereof) or the protection of natural resources, endangered or threatened species, human health or safety, or the environment (including ambient air, soil, surface water or groundwater, or subsurface strata); or (b) concerning the presence of, exposure to, or the management, manufacture, use, containment, storage, recycling, reclamation, reuse, treatment, generation, discharge, transportation, processing, production, disposal or remediation of any Hazardous Substances. The term "Environmental Law" includes, without limitation, the following (including their implementing regulations and any state analogs): the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601 et seq.; the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended by the Hazardous and Solid Waste Amendments of 1984, 42 U.S.C. §§ 6901 et seq.; the Federal Water Pollution Control Act of 1972, as amended by the Clean Water Act of 1977, 33 U.S.C. §§ 1251 et seq.; the Toxic Substances Control Act of 1976, as amended, 15 U.S.C. §§ 2601 et seq.; the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. §§ 11001 et seq.; the Clean Air Act of 1966, as amended by the Clean Air Act Amendments of 1990, 42 U.S.C. §§ 7401 et seq.; and the Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. §§ 651 et seq.

"*ERISA*" shall have the meaning ascribed thereto in Section 4.14(c) hereof.

-4-

"*Escrow Agent*" shall have the meaning ascribed thereto in Section 3.2(a) hereof.

"*Escrow Agreement*" shall have the meaning ascribed thereto in Section 3.2(a) hereof.

"*Executory Contracts*" shall have the meaning ascribed thereto in Section 2.2(b) hereof.

"*Excluded Assets*" shall have the meaning ascribed thereto in Section 2.3 hereof.

"*Excluded Contracts*" shall mean any Contracts or obligations of Seller other than the Assumed Contracts.

"*Final Order*" means an order of the Bankruptcy Court, in a form reasonably acceptable to Purchaser: (a) as to which the parties hereto have waived all rights of appeal and have agreed, in writing, to the finality thereof; or (b) as to which the time to appeal shall have expired and as to which no appeal shall then be pending, or (c) if an appeal shall have been filed or sought, either (i) no stay of the order shall be in effect or (ii) if such a stay shall have been granted by the Bankruptcy Court, then (A) the stay shall have been dissolved or (B) a final order of the district court having jurisdiction to hear such appeal shall have affirmed the order and the time allowed to appeal or to seek review or rehearing thereof shall have expired and the taking or granting of any further hearing, appeal or petition for certiorari shall not be permissible, and if a timely appeal of such district court order or timely motion to seek review or rehearing of such order shall have been made, any court of appeals having jurisdiction to hear such appeal or motion shall have affirmed the lower court's order upholding the order of the Bankruptcy Court and the time allowed to appeal or to seek review or rehearing thereof shall have expired and the taking or granting of any further hearing, appeal or petition for certiorari shall not be permissible.

"*Fixtures and Equipment*" shall have the meaning ascribed thereto in Section 2.1(d) hereof.

"*Guarantee*" means any guarantee or other contingent liability (other than any endorsement for collection or deposit in the ordinary course of business), direct or indirect, with respect to any Indebtedness or obligations of another Person, through a Contract or otherwise.

"*Hazardous Substances*" includes oil and petroleum products, asbestos, polychlorinated biphenyls and urea formaldehyde, and any other material classified as hazardous substances under Environmental Laws.

"*Hired Employees*" shall have the meaning ascribed thereto in Section 6.15 hereof.

"*Indebtedness*" with respect to any Person means any obligation of such Person for borrowed money, and in any event shall include (i) any obligation incurred for all or any part of the purchase price of property or other assets or for the cost of property or other assets constructed or of improvements thereto, (ii) accounts payable included in current liabilities and incurred in respect of property purchased in the Ordinary Course of Business, (iii) the face amount of all letters of credit issued for the account of such Person, (iv) obligations (whether or not such Person has assumed or become liable for the payment of such obligation) secured by Liens, (v) capitalized lease obligations, (vi) all Guarantees of such Person, (vii) all accrued interest, fees and charges in respect of any Indebtedness, and (viii) all prepayment premiums and penalties, and any other fees,

expenses, indemnities and other amounts payable as a result of the prepayment and/or discharge of any Indebtedness.

"*Intellectual Property*" shall have the meaning ascribed thereto in Section 2.1(b)

"*In Transit Inventory*" shall have the meaning ascribed thereto in Section 2.1(a) hereof.

"*Inventory*" shall have the meaning ascribed thereto in Section 2.1(a) hereto.

"*Inventory Audit*" shall have the meaning ascribed thereto in Section 3.3(a) hereto.

"*Inventory Valuation*" shall have the meaning ascribed thereto in Section 3.1(a) hereof.

"*Lease Deposits*" means any security deposits held or required under any Assumed Leases.

"*Leases*" means all leases, subleases, licenses, concessions and other Contracts, including all amendments, extensions, renewals, guaranties and other agreements with respect thereto.

"*Lien*" means any security interest, lien, charge, mortgage, deed, assignment, pledge, hypothecation, encumbrance, easement, restriction or interest of another Person of any kind or nature.

"*Losses*" mean all liabilities of every kind, losses, costs, claims, judgments, awards, damages (including punitive, consequential and treble damages), penalties or expenses (including, without limitation, reasonable attorneys' fees and expenses and costs of investigation and litigation), and also including any expenditures or expenses incurred to cover, remedy or rectify any such Losses.

"*Material Adverse Effect*" means any materially adverse change in the ability of Sellers to perform their obligations under this Agreement or its ability to consummate the transactions contemplated hereby; in each case, only if such event or circumstances would reasonably be expected to have material long-term effects on the Acquired Assets, taken as a whole provided, however, that each of the following events and circumstances (and any event or circumstance directly or indirectly relating to, arising out of, resulting from, or attributable to any of the following events or circumstances) shall not constitute, and shall not be taken into account in determining whether there has been or could be, a "*Material Adverse Effect*": (1) any effect resulting from the filing, announcement, or pendency of the Chapter 11 Case, including (a) Seller's inability to pay certain prepetition obligations as a result of the commencement of such Chapter 11 Case, or (b) any Order of the Bankruptcy Court (including any act or omission of Seller taken or not taken to avoid violation of such Order); (2) any change in general in the United States or foreign economies, securities markets, financial markets, currency markets, or capital markets (including changes in interest rates or the availability of financing); (3) any event or circumstance that affects one or more of the industries in which the Business operates; (4) the Parties' entry into this Agreement, the announcement of this Agreement or the transactions contemplated hereby (including (A) the disclosure of the identity of Purchaser, (B) any communication by Purchaser regarding the plan or intentions of Purchaser with respect to the conduct of Business, the Acquired Assets or relating to the transactions contemplated hereby, and (C) the threatened or actual impact on relationships of the Purchaser or Seller with customers, vendors, suppliers, distributors,

landlords, or employees (including the threatened or actual termination, suspension, modification, or reduction of such relationships)), or any action required or permitted by this Agreement; (5) any acts of war (whether or not declared), insurrection, sabotage, terrorism, or public enemy, or any national or international political or social conditions; (6) any natural disaster (including earthquake, hurricane, tornado, storm, flood, fire, volcanic eruption, or similar occurrence), changes in climate or weather conditions, or global health conditions (including any epidemic, pandemic or disease outbreak) or any actions or results of such; (7) any acts taken, or failures to take action, or such other events or circumstances to which Purchaser has consented or that are permitted, prohibited, or required by this Agreement; (8) Seller's failure to meet internal or published projections, forecasts, or revenue or earning predictions for any period; (9) any event or circumstance of which Purchaser had knowledge as of the Effective Date; (10) any event or circumstance that, as of a given time of determination, no longer exists or has been cured; (11) any strike, lockout, labor dispute, riot, civil commotion, or embargo; (12) any changes in, or developments that are directly or indirectly attributable to, any applicable laws, any orders, or any acts of any governmental authority; (13) any change in GAAP, or in any interpretation thereof; (14) any failure of technical facilities, or any failure or delay of transportation facilities; (15) any damage, destruction, impairment, or other loss of or with respect to any asset to the extent covered by insurance; or (16) any event or circumstance beyond Sellers' control.

"*Necessary Permits*" shall have the meaning ascribed thereto in Section 4.12(a) hereof.

"*Offices*" means Seller's company Offices identified on **Schedule 2.2** hereto.

"*Order*" means any decree, order, injunction, rule, judgment, or consent of or by any court or governmental authority.

"*Ordinary Course of Business*" means from and after the Effective Date, and unless provided otherwise herein, Seller shall have continued to operate the Business in the same manner as conducted on the Effective Date, and (i) without any liquidation, close out, going-out-of-business or other deep discount sales at any of the Acquired Locations, (ii) in a manner consistent with preserving the goodwill of the Business as a going concern for the benefit of Purchaser, and (iii) otherwise in the ordinary course with respect to markdown and promotional activities in the Business consistent with past practices in effect prior to filing of the Chapter 11 Case.

"*PBGC*" shall have the meaning ascribed thereto in Section 4.14(d) hereof.

"*Permits*" shall have the meaning ascribed thereto in Section 2.1(e) hereof.

"*Permitted Designee*" shall have the meaning ascribed thereto in Section 12.10 hereof.

"*Person*" means any corporation, partnership, joint venture, limited liability company, organization, entity, authority or natural person.

"*Petition Date*" means October 5, 2020.

"*Premises*" shall have the meaning ascribed thereto in Section 4.16 hereof.

"*Proprietary Information*" shall have the meaning ascribed thereto in Section 2.1(c) hereof.

"*Public Statement*" means a communication in either oral or written form, such as a statement or an announcement, made to the public at large either through a press release or other similar communication, and does not include (i) communications between parties that are intended to be private and not for public consumption, (ii) statements made in open court, (iii) statements made in pleadings filed with a court, (iv) statements made during a deposition or court ordered examination, and (v) statements made in responses to written discovery requests such as interrogatories or admissions.

"*Purchase Orders*" means those agreements by Seller to purchase merchandise that, if owned by Seller on the Closing Date would constitute Inventory, in each case to the extent that such agreements are included in Assumed Contracts under this Agreement.

"*Purchase Price*" shall have the meaning ascribed thereto in Section 3.1 hereof.

"*Purchaser*" shall have the meaning ascribed thereto in the Preamble of this Agreement.

"*Record Date* means November 18, 2020.

"*Regulation*" means any law, statute, regulation, ruling, rule or Order of, administered or enforced by or on behalf of any governmental authority.

"*Rejected Leases*" shall have the meaning ascribed thereto in Section 2.3(d) hereof.

"*Release*" means any release, spill, emission, leaking, pumping, disposal, discharge, dispersal or migration into the indoor or outdoor environment or into or out of any property or assets (including the Acquired Assets) owned or leased by Seller at the Closing Date, including the movement of Contaminants through or in the air, soil, surface water, groundwater or property.

"*Remedial Action*" means all actions required under any applicable Environmental Law to (1) clean up, remove, treat or in any other way address Contaminants in the environment; (2) prevent the Release or threat of Release or minimize the further Release of Contaminants so they do not migrate or endanger or threaten to endanger public health or welfare or the indoor or outdoor environment; or (3) perform pre-remedial studies and investigations and post-remedial monitoring and care.

"*Sale Order*" means that certain order(s) in substantially the form to be attached hereto as **Exhibit B**, to be entered by the Bankruptcy Court in the Chapter 11 Case, as described in Section 8.10 of this Agreement, *inter alia*, approving the transactions contemplated by this Agreement.

"*Sale Order Deadline*" shall have the meaning ascribed thereto in Section 8.10 hereof.

"*Secured Lender*" means any lender asserting a security interest in any of the Acquired Assets, including U.S. Bank, National Association and PNC Bank, National Association.

"*Seller*" shall have the meaning ascribed thereto in the Preamble of this Agreement.

"*Seller Claims Settlement Amount*" means cash in the amount of $100,000.00 as consideration for the compromise and settlement of the Seller Claims.

"*Seller's Knowledge*" or words of similar meaning shall mean the knowledge of Jared Light, Brandon Dewan, Adam Tesanovich, and Brian Garrett after reasonable inquiry of the relevant employee or consultant reasonably expected by the foregoing Persons to be knowledgeable regarding the subject matter of such inquiry.

"*Stalking Horse Notice*" means the notice filed in the Chapter 11 Case pursuant to the Bid Procedures Order designating Purchaser as the stalking horse bidder and seeking protections to the extent permitted under the Bid Procedures Order.

"*Successful Bidder*" shall have the meaning ascribed thereto in Section 11.1(f) hereof.

"*Taxes*" means all taxes, charges, fees, duties, levies or other assessments, including, without limitation, income, gross receipts, net proceeds, ad valorem, turnover, real and personal property (tangible and intangible), sales, use, franchise, excise, value added, capital, license, payroll, unemployment, environmental, customs duties, capital stock, disability, stamp, leasing, lease, user, transfer, fuel, excess profits, occupational and interest equalization, windfall profits, severance and employees' income withholding and Social Security taxes imposed by the United States or any other country or by any state, municipality, subdivision or instrumentality of the United States or of any other country or by any other tax authority, and unemployment insurance contributions, including all applicable penalties and interest, and such term shall include any interest, penalties or additions to tax attributable to such Taxes.

"*Tax Return*" means any report, return or other information required to be supplied to a taxing authority in connection with Taxes.

A "*third party*" means any Person other than Seller, Purchaser, or any of their respective affiliates.

"*Unassumed Liabilities*" shall have the meaning ascribed thereto in Section 2.5 hereof.

"*Warehouses*" means Seller's warehouses identified on **Schedule 2.2** hereto.

"*WARN Act*" shall have the meaning ascribed thereto in Section 2.5 hereof.

"*XTO Claims*" shall mean all Claims held by Seller adverse to XTO Energy Inc.

1.2     Other Terms.  Other terms may be defined elsewhere in the text of this Agreement and, unless otherwise indicated, shall have such meaning through this Agreement.

1.3     Other Definitional Provisions.

(a)     The words "hereof," "herein," and "hereunder" and words of similar import, when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.

(b)     The terms defined in the singular shall have a comparable meaning when used in the plural, and vice versa.

(c)     References herein to a specific Section, Subsection, Exhibit or Schedule shall refer, respectively, to Sections, Subsections, Exhibit or Schedules of this Agreement, unless the express context otherwise requires.

(d)     Wherever the word "include," or "includes," or "including" is used in this Agreement, it shall be deemed to be followed by the words "without limitation."

## ARTICLE II
## PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES

2.1     Acquired Assets.  Subject to the terms and conditions set forth in this Agreement, at the Closing, Seller shall sell, assign, transfer and deliver to Purchaser or cause to be sold, assigned, transferred and delivered to Purchaser's designee, and Purchaser shall purchase, acquire and take assignment and delivery of, the following assets owned by Seller or to which Seller has an interest in on the Closing Date (wherever located) which relate to, and are necessary or useful to the continuing operation of the Business, and all of Seller's right, title and interest therein and thereto on the Closing Date, free and clear of all Liens, Claims and encumbrances of whatever kind or nature, but not including those assets specifically excluded in Section 2.3 hereof (all of the assets to be sold, assigned, transferred and delivered to Purchaser hereunder shall be deemed included in the term "Acquired Assets" as used herein):

(a)     All inventories, finished goods, raw materials, work in progress, parts, and accessories of the Business (the "Inventory") wherever located, regardless of whether located at any Offices or Warehouses, and including merchandise which either has been delivered to a customer location or Warehouse prior to the Closing, or is in transit to a Warehouse or customer location prior to the Closing ("In Transit Inventory").  As of the Record Date, all of the Inventory, including at the Offices or Warehouses, and any In Transit Inventory, but excluding the Boomerang Inventory and Centric Inventory, is identified in **Schedule 2.1(a)** hereto, and unless an Inventory Audit is conducted prior thereto, Seller shall supplement such schedule immediately prior to the Closing Date to reflect the Inventory existing as of the Closing Date;

(b)     All right, title and interest in and to any and all intellectual property or other general intangibles owned and utilized by Seller, including, without limitation, all proprietary and licensed software and all contract rights relating thereto, Seller's e-commerce tools (if any), all trademarks and trade names, including "Eagle Pipe" and all goodwill associated therewith, all copyrights, all telephone numbers of Seller, including all local telephone numbers and any "800" or other toll free telephone numbers, all domain rights and internet website(s), including "eaglepipe.net," and names and marks, and the goodwill associated therewith, including without limitation the registered trademarks and applications therefor set forth in **Schedule 2.1(b)** hereto (collectively, the "Intellectual Property");

(c)     All proprietary information ("Proprietary Information") in the possession, custody and/or control of Seller, including, but not limited to, any and all customer, supplier, and/or mailing and email lists, databases, know-how, trade secrets, research, specifications, designs, drawings, plans, processes, quality control protocols, specifications, technical information, diagrams, and schedules as well as all other proprietary information in the possession, custody

-10-

and/or control of Seller affiliates associated with the Business. All Proprietary Information shall be delivered to Purchaser in its present form;

(d)     All (1) furniture, fixtures, furnishings, signage, computer equipment, leasehold improvements, machinery, equipment, tools, owned vehicles, goods, and other tangible personal property owned by Seller which is used or useful in the day-to-day operation or maintenance of the Business at (i) the Warehouses (if any), and (ii) Seller's Offices, including in each case, but not limited to, any owned computer hardware and software and any furniture, fixtures and/or equipment which are used or useful in the day-to-day operation or maintenance of the Business (collectively, the "Fixtures and Equipment"), and (2) material and supplies (including packaging, shipping, and storage tools and materials) located at any such locations;

(e)     All licenses, permits, approvals, certificates of occupancy, authorizations, operating permits, registrations, plans and the like applicable in any way to the Business at the Acquired Locations and Offices to the extent the same are transferable by Seller to Purchaser set forth in **Schedule 2.1(e)** hereto ("Permits");

(f)     Any and all rights of return, offsets, counterclaims (other than claims described in Section 2.3(h) below), deductions and unpaid allowances with respect to those vendors (1) from which the Inventory was acquired and (2) under Purchase Orders which are included in Assumed Contracts;

(g)     All of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Acquired Assets; and

(h)     Except as described in Section 2.3(h) or Section 2.3(i) below, all rights to or interests in any Claims of any nature available to or being pursued by Seller, whether arising by way of counterclaim or otherwise whether known or unknown, contingent or non-contingent, which shall expressly include (i) the XTO Claims, and (ii) the Claims arising exclusively under Section 544-550 of the Bankruptcy Code ("Avoidance Actions") out of or relating to any Assumed Contracts, Inventory, Hired Employees, Accounts, or continuing business relationship of the Seller's Business or related to the Acquired Assets, and in each case such assignment shall include the right and authority to settle, resolve, and/or waive any such Claims in the Purchaser's sole discretion (the "Seller Claims");

(i)     All accounts and accounts receivable, net of any and all returns, credits for damaged and/or defective items, and disputed amounts, in each case in existence on the Closing Date (collectively, "Accounts"). **Schedule 2.1(i)** hereto sets forth the obligor and the gross amount collectible under each of the Accounts (the "Accounts Amount") existing as of the Record Date, and Seller shall supplement such schedule immediately prior to the Closing Date to reflect the Accounts existing as of the Closing Date;

(j)     All prepaid assets, prepaid expenses, credits, refunds, rights of set-off or recoupment, all customer deposits relating to customer orders, the Assumed Contracts, and the Lease Deposits (collectively, the "Transferred Credits") that exist as of the Record Date or are created for the benefit of Seller after the Record Date;

(k)     To the extent relating to the Business, all books, records, manuals, information, computer files and similar materials, except for those records identified in Section 2.3(c) hereof; *provided, however*, that (i) Purchaser shall: (1) preserve any and all such books and records for a period of 180 days after Closing as set forth in this proviso, (2) take any and all reasonable steps necessary to maintain any and all such books and records in the same form, content, and structure as received from Seller, (3) backup or archive any and all such books and records that exist in electronic format, (4) avoid any corruption, deletion, and/or alteration of any and all such books and records, and (5) cooperate with the Seller, any examiner or trustee appointed in the Bankruptcy Case, and/or the Official Unsecured Creditors Committee appointed in the Bankruptcy Case in the cataloging or indexing, preservation, access, and use of any and all such books and records; (ii) this proviso controls over any potentially conflicting language or portion of this Agreement; and (iii) the substance of this proviso shall be incorporated into the Sale Order;

(l)     All rights and claims arising from the Enduring Contract and the DJR Contract to collect any outstanding Accounts due thereunder, or, in the alternative to receive, collect, reclaim, and hold any returned or unpaid Inventory that is subject to the Enduring Contract or DJR Contract; and

(m)     Such assets of the Seller not otherwise provided for in this Agreement designated by Purchaser as Acquired Assets prior to or within thirty (30) days after Closing (which may then include the Boomerang Inventory if it is determined to be available free and clear of liens and encumbrances) in each case at the value of such additional assets of the Seller that is reasonably determined among the parties using the same or similar valuation methodologies as employed under this Agreement or as otherwise agreed among the parties and paid by Purchaser to Seller as an additional Purchase Price with respect to any such additional designated assets.

2.2     Assignment of Leases, Licenses, Contracts, and Purchase Orders. **Schedule 2.2** sets forth a list of all material Contracts and all Leases to which Seller is a party, together with the Seller's good faith estimate (on a vendor-by-vendor basis) as of the Effective Date of the estimated Cure Amounts with respect to each counterparty to any of the Contracts and Leases. Subject to the terms and conditions set forth in this Agreement, including, but not limited to this Section 2.2, Seller will assign and transfer to Purchaser, effective as of the Closing Date, all of Seller's (a) right, title and interest in and to, and Purchaser will take assignment of, the following rights and interests that are used in connection with, or relate primarily to the Business, and (b) Seller's obligations to pay to each counterparty of each Assumed Lease and the Cure Amount for such Lease or Contract subject to the limits prescribed herein with such assignment and transfer to thereafter be free and clear of any and all Liens, Claims and encumbrances of whatever kind or nature (and the right, title and interest of Seller under all of the following shall be deemed included in the term "Acquired Assets" as used herein):

(a)     All Leases for the real property locations which constitute the Acquired Locations, including the Warehouses and the Offices (the "Assumed Leases"), excluding those leases which are not acquired by Purchaser as provided for in this Agreement or which are a Rejected Lease; and

-12-

(b)     Any and all Contracts and other contractual rights of Seller that are executory in nature, concerning and/or necessary to the continued day-to-day operations or maintenance of the Acquired Locations, the Warehouses, the Offices or the Business (the "Executory Contracts") that are designated to be acquired by Purchaser (the "Assumed Executory Contracts"), together with those other Contracts that Purchaser designates to be assumed and assigned to it on **Schedule 2.2**, in each case (the "Assumed Contracts"), which shall expressly exclude those Contracts, unexpired leases and other contractual rights (1) identified as Excluded Assets in Section 2.3 hereof and  (2) any Lease which is a vehicle lease; as each of same shall be designated by Purchaser in the manner and at such times as are provided for herein; provided, however:

(i)     prior to the Effective Date, Seller has not rejected any Executory Contracts, and shall not have rejected any Executory Contracts pending the exercise or non-exercise by Purchaser of the Contract Rejection Option in accordance with the terms hereof; and

(ii)     Purchaser shall have the right by providing written notice to Seller and the counter-party to an Executory Contract through and including the date that is three (3) days prior to the final hearing to approve the Sale Order to determine whether or not to acquire any Executory Contract by way of assumption and assignment from Seller pursuant to this Agreement and consistent with the terms set forth in the Cure Notice provided to such counter-party (the "Contract Rejection Option").

2.3     Excluded Assets.  Notwithstanding anything to the contrary in this Agreement, the following assets of Seller, as well as any other assets not defined as Acquired Assets, shall be retained by Seller and are not being sold or assigned to Purchaser hereunder (all of the following are referred to collectively as the "Excluded Assets"):

(a)     Any capital stock held by Seller or any other affiliates of Seller;

(b)     Subject to Section 2.1(i), Section 6.10, and Section 7.4, cash and cash equivalents;

(c)     Any and all company records related to this transaction;

(d)     Any Contracts and/or Purchase Orders that do not constitute Assumed Contracts pursuant to Section 2.2(b) hereof, including, without limitation, (i) leases for one or more Acquired Locations but which are not assigned by Seller and assumed by Purchaser ("Rejected Leases"), (ii) Contracts relating to the Rejected Lease locations, (iii) Leases for vehicles, and (iv) any other Contracts or Purchase Orders not purchased and assumed by Purchaser under any provision of this Agreement, including, without limitation, under Sections 2.2(b), 8.6, and 8.7;

(e)     Any refunds or claims for refunds of income or company taxes;

(f)     Any life insurance policies and proceeds thereof owned by Seller;

(g)     Any governmental rebates or refunds due or which may become due to Seller pursuant to any federal or state sales, customs or excise tax laws;

-13-

(h)      All Claims (i) that constitute Avoidance Actions with respect to any Excluded Contracts or business relationships not assumed by the Purchaser, and (ii) arising solely under or related to any of the Excluded Assets;

(i)      Such other items mutually agreed upon by Seller and Purchaser and specified on **Schedule 2.3(i)** hereto;

(j)      The Boomerang Inventory; and

(k)      The rights which accrue or will accrue to Seller under this Agreement and the Ancillary Documents.

2.4      <u>Assumed Obligations</u>.  At the Closing, except as provided in Section 2.3 and/or in Section 2.5 hereof, Purchaser shall assume, and agree to pay, perform, fulfill and discharge the following additional obligations of Seller:

(a)      Those obligations which are required to be performed after the Closing Date under the Assumed Contracts and Assumed Leases from and after the date of the Closing; <u>provided</u>, <u>however</u>, Seller shall pay the Cure Amounts due to any and all third parties to any Assumed Executory Contracts and Assumed Leases, which Cure Amount, together with all deficiencies in Lease Deposits under the Assumed Leases, shall be itemized by Seller prior to Closing on **Schedule 2.2** hereto, subject to the limitations contained in Section 3.3(b) hereof.

(b)      Those obligations relating to accrued but unused vacation and sick leave (but not any other compensation or benefits except as specified in Section 7.2 hereof) of Hired Employees of Seller hired by Purchaser at Closing; <u>provided</u>, <u>however</u>, following the Closing, subject to Section 7.2 hereof, Purchaser may establish such policies and procedures in respect of Hired Employees as Purchaser shall deem appropriate, in its discretion.

(c)      The obligations arising from the return of the DJR Inventory and the Enduring Inventory, if such inventory is returned at the option of such counterparty pursuant to the DJR Contract and the Enduring Contract, respectively.

The obligations and liabilities set forth in this Section 2.4(a) - (c) are collectively defined herein as the "<u>Assumed Obligations</u>."

2.5      <u>No Other Liabilities Assumed</u>.  Other than the Assumed Obligations, Purchaser is not assuming nor agreeing to manage, discharge, or otherwise be liable for, and shall be deemed not to have assumed any liabilities or obligations of Seller.  Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement and under any Contracts, unexpired leases, and other contractual rights of Seller, Purchaser will not assume any obligation of Seller, other than the Assumed Obligations.  In furtherance and not in limitation of the foregoing, neither Purchaser nor any of its affiliates shall assume, and shall not be deemed to have assumed, other than as specifically set forth in Article II hereof, any debt, Claim, obligation or other liability of Seller or any of its affiliates whatsoever, including, but not limited to, (i) any Environmental Costs and Liabilities for any act, omission, condition or event caused by or attributable to Seller to the extent occurring or existing prior to the Closing Date, including without limitation all Environmental Costs and Liabilities relating in any manner to Seller's direct or indirect handling,

-14-

transportation or disposal of any Contaminants, (ii) any of Seller's liabilities in respect of Taxes accruing prior to or otherwise attributable to periods prior the Closing, which shall not be subject to any proration under Section 3.4 hereof, (iii) any investment banking, financial advisory, brokers or finders fees arising by reason of Seller's dealings with brokers or other third parties, or other liability of Seller for costs and expenses (including legal fees and expenses) incurred in connection with this Agreement, (iv) any Indebtedness, including any insurance payables and trade payables and expenses arising prior to the Closing Date, (v) any obligations, liabilities, or Losses for Seller's Employees, officers, directors, managers, advisors, or consultants including severance, termination pay, pension, profit sharing or any other Employee Benefit Plans, compensation or retiree medical and other benefits and obligations, except to the extent otherwise provided in Sections 2.4(b) and 7.2 hereof, or any obligation, Claim or amount under the Workers Adjustment and Retraining Notification Act or similar state statutes or regulations ("WARN Act"), (vi) any obligation or liability arising as a result of or whose existence is a breach of Seller's representations, warranties, agreements or covenants contained in this Agreement or otherwise, (vii) any Excluded Assets, (viii) any Affiliate Obligations, (ix) any liability subject to compromise, except to the extent same constitutes an Assumed Obligation, (x) any product liability or similar Claim for injury to any person or property arising out of or based on a breach of the Seller's representations, warranties, or agreements, express or implied, failure to warn, label, or advise customers of such risks, (xi) any recall, design defect or related Claims with respect to any products manufactured or sold or any service performed by the Seller, (xii) rebates, allowances, deductions and/or price discrepancies relating in any manner to products sold in pursuit of the Business prior to the Closing Date and (xiii) any obligations or liabilities with regard to any unpaid Inventory (whether such payments came due prior to, on or following the Petition Date) for which the Purchaser is unable to reach a consensual resolution with the counterparty of such Inventory, including any liabilities relating to any Inventory for which Seller has not fully paid all amounts due with respect such Inventory that is presently held by Seller (collectively, "Unassumed Liabilities"). Disclosure of any obligation or liability on any schedule to this Agreement shall not create an Assumed Obligation or other liability of Purchaser, except where such disclosed obligation has been expressly assumed by Purchaser as an Assumed Obligation in accordance with the provisions of Article II hereof.

2.6 <u>Right to Change Designations</u>. Notwithstanding anything in this Agreement to the contrary, Purchaser reserves the right to designate in one or more written notices to Seller (i) at any time within sixty (60) days following the Closing Date, any Acquired Asset as an Excluded Asset and (ii) at any time prior to the commencement of any auction carried out pursuant to the Bid Procedures, any Excluded Contract as an Assumed Contract (it being understood and agreed that such written notices shall be deemed to have automatically updated and revised the applicable schedules hereto for all purposes of this Agreement); provided, however, that from and after the Effective Date, any designation by Purchaser of any Acquired Assets as Excluded Assets or Excluded Contracts shall not reduce the Purchase Price payable for the Acquired Assets.

## ARTICLE III
## PURCHASE PRICE AND PAYMENT

3.1 <u>Purchase Price</u>. Subject to the terms and conditions of this Agreement, the aggregate consideration to be paid by Purchaser (the "<u>Purchase Price</u>") in respect of, *inter alia*, the Acquired Assets, the Assumed Leases and Assumed Contracts in cash paid pursuant to Section

3.2, and shall be comprised of the items set forth in the subsections below and the amounts allocable to each such item as of the Effective Date is summarized on Schedule 3.1 hereto, subject to adjustment as provided in this Agreement:

(a)     The payment of a blended five hundred thirty-five dollars and six cents per ton rate as adjusted ($535.06/ton) (the "Inventory Valuation"), as such tonnage is reflected on **Schedule 2.1(a)** as of the Record Date, which expressly excludes the Boomerang Inventory, the Centric Inventory, DJR Inventory, and the Enduring Inventory; plus

(b)     The Accounts Amount at eighty-five percent (85%) of value as reflected on Schedule 2.1(i) as of the Closing Date; plus

(c)     The Cure Amounts to be paid by Purchaser pursuant to Section 6.8; plus

(d)     With respect to each of the Enduring Contract and the DJR Contract, (i) the assumption of the obligations resulting from the reversion of the DJR Inventory and/or the Enduring Inventory and (ii) ten percent (10%) of the Accounts related to the Enduring Contract and the DJR Contract as reflected on **Schedule 2.1(i)** as of the Closing Date; plus

(e)     Purchaser's assumption of the Assumed Obligations; plus

(f)     The Centric Claims Settlement Amount in exchange for mutual releases of the Centric Claims by all parties in interest in the Bankruptcy Case; plus

(g)     The Seller Claims Settlement Amount in exchange for XTO Claims and others listed being included in the list of assets.

3.2     Payment of Purchase Price; Deposit; Escrow.

(a)     Prior to the Effective Date, an affiliate of Purchaser delivered by wire transfer of immediately available funds, the sum of One Million Three Hundred and Twenty Seven Thousand Three Hundred and Three U.S. dollars ($1,327,303.00) (the "Deposit") to a third party financial institution escrow agent (the "Escrow Agent"), which is being held in escrow in a segregated, account pursuant to the terms and provisions hereof and in accordance with the terms and conditions of an escrow agreement by and among Seller, Purchaser, and the Escrow Agent, as amended, in the form to be attached as Exhibit A hereto (the "Escrow Agreement").  Subject to the terms and conditions of Article XI, the Deposit and all interest accruing thereon shall either be delivered to Seller and applied towards the Purchase Price upon the Closing, or, in the event that this Agreement is terminated prior to a Closing, paid to Purchaser or Seller in accordance with Article XI hereof.  The Escrow Agent shall retain possession of the Deposit until delivery thereof is permitted or required under the terms of the Escrow Agreement and this Agreement

(b)     Upon the Closing, Escrow Agent shall return the Deposit to Purchaser.

(c)     At Closing, Purchaser shall pay to Seller by wire transfer of immediately available funds the cash portion of the Purchase Price.

-16-

3.3    Adjustments to Purchase Price.  The Purchase Price is subject to adjustment as follows:

(a)    Physical Count; Inventory Audit Procedures.  The Inventory Valuation set forth on **Schedule 2.1(a)** directly reflects the total Inventory purported to be held free and clear of all Liens and encumbrances by Seller as of the Record Date.  The Inventory and Inventory Valuation will be reviewed and adjusted immediately prior to the Closing to account for any Inventory that have been sold, transferred, or that cannot be sold free and clear of Liens on the Closing Date.  During the period between the Effective Date and the Closing Date, either Seller or Purchaser may, upon 72 hour notice to such other party and U.S. Bank National Association, as administrative agent, initiate an audit of the Inventory (an "Inventory Audit") to determine the precise amount of tonnage of the Inventory identified on Schedule 2.1(a) and to update that schedule, as needed, prior to the Closing Date.  The procedures and results of the Inventory Audit are set forth in this Section 3.3.

(i)    Notice and Observation Rights.  Representatives or affiliates of Seller, Purchaser and U.S. Bank National Association, as administrative agent, may be present to observe the taking of any Inventory Audit and shall receive notice at least 72 hours before any Inventory Audit commences, such notice shall describe the time and place of such Inventory Audit.

(ii)    Audit of Tonnage Only.  The Inventory Audit shall review only the tonnage of the Inventory, no other facts, figures or attributes of the Inventory shall be reviewed or adjusted as part of the Inventory Audit.

(iii)    Physical Audit Only.  Only Inventory that is actually physically reviewed will be eligible for adjustment under this Section3.3(a), and neither sampling nor extrapolation, nor any other statistical method of calculation will be used.

(iv)    Cost of Inventory Audit.  All parties shall be solely responsible for and shall pay all of the costs and expenses borne by them for the Inventory Audit.

(v)    Post-Audit Valuation of Inventory.  Upon the conclusion of the Inventory Audit, if the tonnage of the Inventory as determined by the Inventory Audit differs from the tonnage of the Inventory, as adjusted for recorded sales or transfers that have otherwise been credited against the Inventory, Inventory Valuation and the Purchase Price, then the parties agree to adjust the Inventory and the corresponding Inventory Valuation by an amount equal to the change in value of the tonnage of the Inventory multiplied by $535.06 per ton.

(b)    At any time prior to the Closing Date, Purchaser may designate a list of Assumed Executory Contracts pursuant to the terms of the Sale Order and the Cure Amounts associated with each such Assumed Executory Contract.  The Cure Amounts and any amounts paid to restore any deficiencies in Lease Deposits under Assumed Leases up to a maximum amount equal to the Cure Cap shall be paid by Purchaser to the counter-party to the Assumed Executory Contracts prior to the Closing from its own funds.  The balance of any Cure Amounts to be paid to counter-parties to any Assumed Executory Contracts shall be paid from the portion of the Purchase Price deliverable by Purchaser at the Closing, and any Claims arising under the Assumed

Executory Contracts prior to the Closing Date shall be paid to the counter-party to such Assumed Executory Contract and thereafter be deemed to be fully satisfied.

(c)     At any time following the Closing, to the extent Purchaser is required to as a condition of the full and prompt assignment of any rights under an Assumed Contract and actually pays any additional amounts constituting Cure Amounts or to restore any deficiencies in Lease Deposits under Assumed Leases in excess of the Cure Cap, Purchaser shall pay such additional amounts expended by it as Cure Amounts or Lease Deposits.

(d)     An amount equal to the aggregate value of any Losses that are non-De Minimis Losses incurred by Purchaser or its affiliates arising from (1) any inaccuracy in or breach of any of the representations or warranties of the Seller contained in this Agreement or in any documents delivered by Seller herewith; or (2) any breach or non-fulfillment of any covenant of Seller; *provided* *however* the aggregate value of such Losses incurred by Purchaser shall not exceed 10% of the Purchase Price.

3.4     Prorations.  Except as otherwise provided in this Agreement with respect to items allocable exclusively to Seller or Purchaser, to the extent that any of the items listed below in this Section 3.4 are paid by Seller prior to the Closing or are payable by Purchaser or Seller after the Closing Date, such items shall be apportioned as of the Closing Date such that (a) Seller shall be liable for that portion of such of the allocable costs relating or attributable to periods prior to the Closing Date; and (b) Purchaser shall be liable for that portion of the allocable costs relating or attributable to periods on or after the Closing Date.  Prior to the Closing, the parties shall schedule and pro-rate the expenses and costs outlined in this Section 3.4, and such prorations of expenses shall be adjustments to the cash portion of the Purchase Price paid at the Closing.  Should any amounts to be prorated not have been finally determined on the Closing Date, a mutually satisfactory estimate of such amounts made on the basis of Seller's records shall be used as a basis for settlement at Closing, and the amount finally determined will be prorated as of the Closing Date and appropriate settlement made as soon as practicable after such final determination.  If as a result of any such settlement in accordance with the preceding sentence Purchaser is owed an amount from Seller, Seller agrees to promptly pay such amount to Purchaser.  The items to be prorated in accordance with this Section 3.4 shall include, without limitation:  (x) lease payments under Assumed Leases for the month in which the Closing occurs; (y) insurance premiums of any policies acquired by Purchaser at Closing; and (z) any and all other expenses customarily subject to proration in connection with the sale and purchase of assets and not otherwise provided for herein.  Seller and Purchaser agree to furnish each other with such documents and other records as each party reasonably requests in order to confirm all adjustment and proration calculations made pursuant to this Section 3.4.  The proration and adjustment process provided in this Section 3.4 shall also include an adjustment of cash received by Purchaser or Seller (as the case may be) to which the other is entitled pursuant to the provisions of Sections 2.1(i) and 2.3(b) above.

3.5     Procedure for Purchase Price Calculation and Payment. Purchaser shall prepare a written schedule as soon as practicable after the Closing setting forth the calculation of the Purchase Price as provided for in this Article III.  Seller and Purchaser hereby agree to use their diligent, good faith efforts to effectuate and finalize the calculation of the adjustments contemplated by this Article III within thirty (30) days following the Closing Date, to the extent information is available as of such date, and in no event later than 120 days after the Closing Date.

-18-

In the event that the calculation of all such adjustments have not been finalized and effectuated within fifteen (15) days after the expiration of the relevant calculation period, either party may submit the matter to the Bankruptcy Court for resolution.

3.6     Further Assurances.   From time to time after the Closing and without further consideration, (a) Seller, upon the request of Purchaser and at Seller's expense, shall execute and deliver such documents and instruments of conveyance and transfer as Purchaser may reasonably request in order to consummate more effectively the purchase and sale of the Acquired Assets as contemplated hereby and to vest in Purchaser title to the Acquired Assets transferred hereunder, provided that (i) Seller shall not be required to execute or deliver any document or instrument pursuant to this Section 3.6 which includes any provision(s) which impose obligations upon Seller which are greater than those imposed upon Seller under the other provisions of this Agreement, the Ancillary Documents, the Sale Order, or the documents executed pursuant hereto, and (ii) in no event shall Seller be required to incur any material cost or expense in the performance of its obligations under this Section 3.6 (it being understood that Purchaser shall in any event be entitled to require Seller to take such action as Seller would otherwise be required to take pursuant to this Section 3.6 but for the cost thereof by providing to Seller the amount Seller reasonably anticipate incurring in excess of immaterial costs and expenses of taking such action), and (b) Purchaser, upon the request of Seller and at Purchaser's expense, shall execute and deliver such documents and instruments of assumption as Seller may reasonably request in order to confirm Purchaser's liability for the obligations under the Assumed Obligations or otherwise more fully consummate the transactions contemplated by this Agreement; provided that (i) Purchaser shall not be required to execute or deliver any document or instrument pursuant to this Section 3.6 which includes any provision(s) which impose obligations upon Purchaser which are greater than those imposed upon Purchaser under the other provisions of this Agreement or the documents executed pursuant hereto, and (ii) in no event shall Purchaser be required to incur any material cost or expense in the performance of its obligations under this Section 3.6 (it being understood that notwithstanding the foregoing, Seller shall in any event be entitled to require Purchaser to take such action as Purchaser would otherwise be required to take pursuant to this Section 3.6 but for the cost thereof by providing to Purchaser the amounts Purchaser reasonably anticipates incurring in excess of immaterial costs and expenses in taking the action).

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser as of the Effective Date and the Closing Date, as follows:

4.1     Due Incorporation; Good Standing.  Eagle Pipe is a limited liability company duly formed under the laws of the State of Texas, and is in good standing thereunder as of the Effective Date and as of the Closing Date. Subject to the Bankruptcy Code, Eagle Pipe has full power and authority to own, use and lease its properties and to conduct its Business as such properties are owned, used or leased and as such Business is currently conducted.  Eagle Pipe is qualified to do business as a foreign corporation and is in good standing in each jurisdiction in which such qualification is required except where the failure to so qualify would have a Material Adverse Effect.

4.2     Authority; No Violation.  Subject to the Sale Order and the Bankruptcy Code, Seller has all requisite company power and authority to enter into this Agreement and to carry out the transactions contemplated hereby, and the execution, delivery and performance of this Agreement by Seller shall be duly and validly authorized and approved by all necessary company action. Subject to the approval and entry of the Sale Order by the Bankruptcy Court, this Agreement shall constitute the legal and binding obligation of Seller, enforceable against Seller in accordance with its terms.  Subject to the approval and entry of the Sale Order by the Bankruptcy Court, the entering into of this Agreement, and the consummation by Seller of the transactions contemplated hereby, will not (a) violate the provisions of any applicable federal, state or local laws, (b) violate any provision of Seller's Certificate of Formation or its governing documents and agreements, or (c) except as set forth in **Schedule 4.2** attached hereto, violate any provision of, or result in a default or acceleration of any obligation under, or result in any change in the rights or obligations of Seller under, any Lien, Contract, agreement, license, lease, instrument, indenture, order, arbitration award, judgment, or decree to which Seller is a party or by which it is bound, or to which any property of Seller is subject that will not otherwise be stayed or discharged upon entry of the Sale Order by the Bankruptcy Court or otherwise pursuant to the Chapter 11 Case.

4.3     Consents.  To Seller's Knowledge, formed after reasonable inquiry, except for consents, approvals or authorizations of, or filings with the Bankruptcy Court, no notice to, filing with, authorization of, exemption by, or consent of any governmental authority is required in order for Seller to consummate the transactions contemplated hereby.

4.4     Title to and Condition of Properties.  At and as of the Closing Date, Seller will have good and marketable title to, or a valid leasehold or license interest in, and will have, subject to the entry of the Sale Order for which no stay has been obtained, the right to sell, convey, transfer, assign and deliver to Purchaser, free and clear of all Liens, Claims, interests and encumbrances of whatever kind or nature, the Acquired Assets, including, but not limited to, the Assumed Leases and the Assumed Contracts.  At and as of the Closing Date, the Bill of Sale and the Assignment and Assumption will be effective to vest in Purchaser good and valid record and marketable title to the Acquired Assets, including, but not limited to, the Assumed Leases, the Assumed Contracts and all of Seller's Inventory.  As of the Closing Date, Seller will have good and marketable title to, and will have the right to sell, convey, transfer, assign and deliver to Purchaser its interest in the Proprietary Information. Following the Closing, Seller shall advise any warehouseman, bailee, or agent with possession of any Acquired Assets of the transaction contemplated hereby and of the Sale Order effectuating it, and, upon request of Purchaser, cause such persons to transfer possession of such Acquired Assets to Purchaser.  The Acquired Assets represent all the assets of Seller and its affiliates used or useful in the Business, and no affiliate of Seller presently possesses or controls holds any such assets.

4.5     Contracts. To Seller's Knowledge, formed after reasonable inquiry, incorporated into **Schedule 2.2** hereof is a true and complete list of all Contracts and Leases that are material to the Business (*i.e.*, Contracts under which Seller would be required to pay or be paid $10,000 or more annually to or from another party) as of the Effective Date to which a Seller is party and which relates primarily to the Business, or to which any of the Acquired Assets or Assumed Obligations are subject.  Except as may have occurred solely as a result of the commencement of the Chapter 11 Cases, each of the Assumed Contracts is in full force and effect and there are no material defaults thereunder on the part of any other party thereto which are not subject to an

-20-

automatic stay, and the Seller is not in default in any material respect in the performance, observance or fulfillment of any of its obligations, covenants or conditions contained in any Assumed Contract to which it is a party or by which it or its property is bound which are not subject to an automatic stay. Each Assumed Contract was entered into at arm's length and in the Ordinary Course of Business and, subject to the Sale Order and the assignment of each Assumed Contract by the applicable Seller in accordance with applicable Law, is a valid and binding obligation of the Seller and the other parties thereto and is in full force and effect in accordance with its terms.

4.6     <u>Brokers</u>.  Except as previously filed in the Chapter 11 Case with respect to GlassRatner Advisory & Capital Group LLC d/b/a B.Riley Advisory Services (or an affiliate thereof) or as otherwise set forth on Schedule 4.6, Seller has incurred no liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby.

4.7     <u>Operational Matters</u>.

(a)     Seller has maintained its pricing files relating to the Business in the Ordinary Course of Business, and prices charged to its customers for goods are the same in all material respects as set forth in such pricing files for the periods indicated therein. All pricing files and records requested by Purchaser relative to the Inventory have been and will continue to be made available to Purchaser. All such pricing files and records requested by Purchaser and agreed to be supplied by Seller are and shall continue to be true and accurate in all material respects as to the actual cost to Seller for purchasing the goods referred to therein and as to the selling price to the public for such goods as of the dates and for the periods indicated therein.

(b)     Seller shall ticket or mark all items of Inventory received at the Acquired Locations and any Warehouse or distribution center after the Effective Date but prior to the Closing Date in a manner consistent with similar inventory located thereat and in accordance with Seller's historic practices and policies relative to pricing and marking of Inventory.

(c)     Seller shall not have intentionally taken, and shall not intentionally take through and including the Closing Date, any actions to increase the cost of operating the Business, including, without limitation, increasing salaries or other amounts payable to Employees.

(d)     Seller shall not have intentionally taken, and shall not intentionally take through and including the Closing Date, any actions to decrease the value of the Acquired Assets prior to the Closing Date.

(e)     Seller shall be current on all obligations incurred by it following the Petition Date;

(f)     Seller has and shall continue through and including the Closing Date to operate the Business in the Ordinary Course of Business.

(g)     To Seller's Knowledge the amounts reflected on **Schedule 2.2** reflect the aggregate amount of Cure Amounts and any deficiencies in Lease Deposits under the Assumed Leases that Seller would be obligated to pay for its pre-assumption arrears under the Contracts.

4.8     Inventory.  As of the Effective Date and the Closing: (i) Seller's books and records fairly and accurately reflect and represent the Inventory in the possession of Seller, and the sales of Inventory, (ii) Seller has not taken any actions outside of the Ordinary Course of Business (including, without limitation, pursuant to any sale, promotion, discount or any other offer outside the Ordinary Course of Business) to reduce in any way the aggregate value of the Inventory, (iii) the Inventory is in warrantable and saleable condition, (iv) there have not been any atypically large purchases, sales, or transfers of Inventory Outside the Ordinary Course of Business, except those identified on **Schedule 4.8** hereto, and (v) there has not otherwise been any depletion of or damage to the Inventory due to any event or occurrence not within the Ordinary Course of Business of Seller.  To Seller's Knowledge, all Inventory and all merchandise that is the subject of Seller's Purchase Orders is in compliance in all material respects with all applicable U.S. federal, state, or local product safety laws, rules and standards, and customs regulations where applicable, and has or will be manufactured and produced in conformity with all applicable U.S. federal, state, or local child labor and other similar laws, rules and standards.

4.9     Accounts.  The Accounts reflected on **Schedule 2.1(i)** hereto as of the Record Date are reflected on such **Schedule 2.1(i)** and all Accounts arising after the Record Date as such amounts are updated immediately prior to the Closing (a) have arisen from bona fide transactions entered into by Seller involving the sale of goods or the rendering of services in the Ordinary Course of Business, (b) constitute only valid, undisputed Accounts of Seller, (c) are not subject to claims of set-off or other defenses or counterclaims asserted by any obligor, and (d) have not been accelerated, discounted, deferred, or adjusted by Seller outside the Ordinary Course of Business.

4.10     Employees.  The information regarding the employees currently employed at the Acquired Locations and the Offices, including compensation, bonus, benefit, length of service and other terms of employment for such employees, provided by Seller to Purchaser prior to the Effective Date, is true and complete as of the Effective Date.  Seller is not a party to any collective bargaining agreement covering any of the Employees of the Business and no labor union represents any such Employees.

4.11     Intellectual Property.  The trade names, servicemarks, assumed names, trademarks and trademark applications set forth in Section 2.1(b) are the only trade names, servicemarks, assumed names, trademarks and trademark applications that are currently used in the Business by Seller.  To Seller's Knowledge, the use of the Intellectual Property by Seller in the manner currently used by Seller does not require the consent of any other Person.  The Intellectual Property is either owned by Seller or is licensed to Seller and Seller has a legal right to use it in the manner used by Seller, and, upon approval and entry of the Sale Order by the Bankruptcy Court, the Intellectual Property owned by Seller may be transferred by Seller to Purchaser, free and clear of any Liens.  Seller has not granted any third party any license or right to use the Intellectual Property and, to the Seller's Knowledge, no other Person has an interest in or a right or license to use, or the right to license any other Person to use any of the Intellectual Property owned by Seller. There are no Claims of any other Person pertaining thereto which have been received by Seller and no proceedings have been instituted, are pending or, to the Seller's Knowledge, threatened, which challenge Seller's rights in respect thereof.  To Seller's Knowledge, none of the Intellectual Property owned by Seller is being infringed by another Person or is subject to any outstanding order, decree, ruling, charge, injunction, judgment or stipulation.  No Claim is pending or, to the

Seller's Knowledge, threatened charging Seller with infringement of any adversely held proprietary or intellectual property right.

4.12    Compliance with Laws.

(a)    Seller has all licenses, permits, franchises, orders, approvals, accreditations, written waivers and other authorizations as are reasonably necessary in order to enable it to own and conduct the Business as currently conducted and to occupy and use its real and personal properties ("Necessary Permits").  To Seller's Knowledge, no registration, filing, application, notice, transfer, consent, approval, order, qualification, waiver or other action of any kind is required by virtue of the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby to effect the transfer to Purchaser of such Necessary Permits.  Seller is in compliance with the terms and conditions of all Necessary Permits.

(b)    Seller has conducted and is conducting the Business in material compliance with applicable federal, state, local and foreign laws, statutes, ordinances, regulations, rules or orders or other requirements of any governmental, regulatory or administrative agency or authority or court or other tribunal relating to it to which Seller may be subject.  Seller is not now charged with, and, to the Seller's Knowledge, is not now under investigation with respect to, any possible material violation of any applicable law, statute, ordinance, regulation, rule, order or requirement relating to any of the foregoing, and Seller is current in the filing of all material reports required to be filed with any governmental, regulatory or administrative agency or authority.

4.13    Taxes.  Seller has filed all Tax Returns that it was required to file.  All such Tax Returns were, when filed, correct and complete in all material respects.  All Taxes due and payable by Seller currently have been paid (whether or not shown on any Tax Return).  Seller currently is not the beneficiary of any extension of time within which to file any such Tax Return.  No Claim has been made by an authority in a jurisdiction where Seller does not file Tax Returns that it is or may be subject to the imposition of any Tax by that jurisdiction.  Seller has withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, consultant, independent contractor, creditor, shareholder, or other third party.  Seller is not aware of any dispute or Claim concerning any liability for Taxes. Seller has not waived any statute of limitations in respect of Taxes or agreed to any extension of time with respect to a tax assessment or deficiency.

4.14    Employee Benefit Plans.

(a)    Except for the arrangements set forth on **Schedule 4.14(a)** attached hereto, Seller does not now maintain or contribute to, nor has in the current or preceding six (6) calendar years maintained or contributed to, any pension, profit-sharing, deferred compensation, bonus, stock option, share appreciation right, employee stock ownership, severance, group or individual health, dental, medical, life insurance, survivor benefit, or similar plan, policy or arrangement, whether formal or informal, for the benefit of any director, officer, consultant or employee, whether active or terminated, of Seller.  Each of the arrangements set forth on **Schedule 4.14(a)** attached hereto is hereinafter referred to as an "Employee Benefit Plan".

4841-0539-3619.6

(b)     Seller has heretofore delivered to Purchaser true, correct and complete copies of each Employee Benefit Plan of Seller and, and with respect to each such Employee Benefit Plan (i) any associated trust, custodial, insurance or service agreements, (ii) any annual report, actuarial report, or disclosure materials (including specifically any summary plan descriptions) submitted to any governmental agency or distributed to participants or beneficiaries thereunder in the current or any of the three (3) preceding calendar years and (iii) the most recently received IRS determination letters and any governmental advisory opinions or rulings.

(c)     Except as set forth on **Schedule 4.14(c)**, each Employee Benefit Plan is and has heretofore been maintained and operated in compliance in all material respects with the terms of such Employee Benefit Plan and with the requirements prescribed (whether as a matter of substantive law or as necessary to secure favorable tax treatment) by any and all laws statutes, governmental or court orders, or governmental rules or regulations in effect from time to time, including, but not limited to, the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Code and applicable to such Employee Benefit Plan.  Each Employee Benefit Plan which is intended to qualify under Section 401(a) of the Code has been determined to be so qualified by the IRS and nothing has occurred since the date of the last such determination which has resulted or is likely to result in the revocation of such determination.

(d)     Except as set forth on **Schedule 4.14(d)** hereto: (i) there is no pending or threatened legal action, proceeding or investigation, other than routine claims for benefits, concerning any Employee Benefit Plan or, to the Seller's Knowledge, any fiduciary or service provider thereof and, to the Seller's Knowledge, there is no basis for any such legal action or proceeding; (ii) no liability (contingent or otherwise) to the Pension Benefit Guaranty Corporation ("PBGC") or otherwise under Title IV of ERISA has been or could reasonably be expected to be incurred by Seller (other than insurance premiums satisfied in due course); and (iii) no reportable event, or event or condition which presents a material risk of termination by the PBGC, has occurred with respect to any Employee Benefit Plan, or any retirement plan of an affiliate (as defined in Section 4.14(a)) of Seller, which is subject to Title IV of ERISA.

(e)     No Employee Benefit Plan is a multiemployer plan.  For purposes of this Section 4.14, "multiemployer plan" is defined in Section 4001(a)(3) of ERISA, and "affiliate" means any entity which under Section 414 of the Code is treated as a single employer with Seller.

(f)     Seller has paid and will continue to pay subject to any applicable Orders of the Bankruptcy Court, through the Closing Date, (i) all self-insured or self-funded employee benefit programs for Employees of the Business, including health and medical benefits and insurance and all proper claims made in accordance with such programs, (ii) all casualty, liability, workers' compensation and other insurance premiums, and (iii) all applicable employment Taxes.

4.15    Customers and Suppliers. The Seller has not received any notice, and has no reason to believe, that any material customer, vendor or suppliers has or intends to cease, reduce, materially alter its relationship with Seller.

4.16    Environmental Matters.  Except as described in **Schedule 4.16**, (a) Seller has not generated, used, stored, treated or disposed of any Hazardous Substances (as defined below), other than cleaning and/or office supplies used in the Ordinary Course of Business, except in material

-24-

compliance with all applicable Environmental Laws; (b) Seller has not transported nor has it arranged or contracted with any party for the transportation, storage, treatment or disposal of any Hazardous Substances, except in material compliance with all applicable Environmental Laws; (c) Seller, the operation of the Business, and any real property that Seller owns, leases or otherwise occupies and uses in connection with the operation of the Business (the "Premises") are in material compliance with all applicable Environmental Laws; and orders or directives of any governmental authorities having jurisdiction under such Environmental Laws, including, without limitation, any Environmental Laws or orders or directives with respect to any cleanup or remediation of any release or threat of release of Hazardous Substances; and (d) Seller has not received any citation, directive, letter or other written communication or any written notice of any proceedings or Claims, from any Person, entity or governmental authority arising under Environmental Laws with respect to the Premises, or the conduct of its operation of the Business, nor is it aware of any basis therefor. Seller has obtained and is maintaining in full force and effect all permits, licenses and approvals required by any Environmental Laws applicable to the Premises and Seller's business operations conducted thereon, and is in material compliance with all such permits, licenses and approvals, except for such permits, licenses and approvals, the absence of which would not, or such noncompliance with which would not, either individually or in the aggregate, have a Material Adverse Effect. Except as described in **Schedule 4.16**, to Seller's Knowledge, Seller has not caused or allowed a release, or a threat of release, of any Hazardous Substances on the Premises.

4.17    Litigation.  Except as disclosed on **Schedule 4.17** attached hereto, (a) there is no Claim pending or, to the Seller's Knowledge, threatened by, against, affecting or regarding the Acquired Assets or Seller at law or in equity before any federal, state, local or foreign court or any other governmental or administrative agency or tribunal or any arbitrator or arbitration panel which would reasonably be expected to have a Material Adverse Effect thereon, and (b) there are no judgments, orders, rulings, charges, decrees, injunctions, notices of violation or other mandates against or affecting the Acquired Assets which would have a Material Adverse Effect thereon.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller as of the Effective Date as follows:

5.1    Purchaser's Organization; Good Standing.  Purchaser is a Texas limited liability company, duly incorporated, validly existing and in good standing under the laws of the State of Texas, with full power and authority to own, use or lease its properties and to conduct its business as such properties are owned, used or leased and as such business is currently conducted.

5.2    Purchaser's Authority; No Violation. Purchaser has all requisite corporate power and authority to enter into this Agreement and to carry out the transactions contemplated hereby, and the execution, delivery and performance of this Agreement by Purchaser shall be duly and validly authorized and approved by all necessary limited liability company action. This Agreement shall constitute the legal and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, except that the enforceability hereof may be subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and that the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court

-25-

before which any proceeding may be brought. Subject to the approval and entry of the Sale Order by the Bankruptcy Court, the entering into of this Agreement, and the consummation by Purchaser of the transactions contemplated hereby, will not (a) violate the provisions of any applicable federal, state or local laws, (b) violate any provision of Purchaser's certificate of organization or operating agreement, or (c) except as set forth in **Schedule 5.2** attached hereto, violate any provision of, or result in a default or acceleration of any obligation under, or result in any change in the rights or obligations of Purchaser under, any Lien, Contract, instrument, indenture, order, arbitration award, judgment, or decree to which Purchaser is a party or by which it is bound, or to which any property of Purchaser is subject that will not otherwise be stayed or discharged upon entry of the Sale Order by the Bankruptcy Court or otherwise pursuant to the Chapter 11 Case.

5.3    Consents, Approvals or Authorizations.  To the best of Purchaser's knowledge, formed after reasonable inquiry, except for consents, approvals or authorizations of, or filings with the Bankruptcy Court, no notice to, filing with, authorization of, exemption by, or consent of any governmental authority is required in order for Purchaser to consummate the transactions contemplated hereby.

5.4    Brokers.  Purchaser has incurred no liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby.

5.5    Litigation.  There are no actions pending or, to the knowledge of Purchaser, threatened that question the validity of this Agreement or that could reasonably be expected to have a Material Adverse Effect on Purchaser or on the consummation of the transactions contemplated by this Agreement.

## ARTICLE VI
## COVENANTS OF SELLER AND/OR PURCHASER

6.1    Consents and Approvals.  Subject to the provisions of Section 3.6 above, Seller and Purchaser shall each use their commercially reasonable best efforts (a) to obtain all consents and approvals, as reasonably requested by Purchaser and Seller, to more effectively consummate the purchase and sale of the Acquired Assets and the assumption and assignment of the Assumed Contracts, Assumed Leases, and Assumed Obligations, as applicable, together with any other necessary consents and approvals to consummate the transactions contemplated hereby, (b) to make, as reasonably requested by Purchaser and Seller, all filings, applications, statements and reports to all authorities which are required to be made prior to the Closing Date by or on behalf of Purchaser and/or Seller or any of their respective affiliates pursuant to any applicable Regulation in connection with this Agreement and the transactions contemplated hereby, and (c) to obtain, as reasonably requested by Purchaser and Seller, all required consents and approvals (if any) to assign and transfer the Permits to Purchaser at Closing and, to the extent that one or more of the Permits are not transferable, to obtain replacements therefor; provided that Seller shall not be required to make any filing in connection with the transfer of a Permit or take any other action required by this sentence unless Purchaser advances any and all fees and other charges imposed by any applicable authority or other Person in connection with such filing, transfer or other requested action. Subject to the provisions of Section 3.6 and this Section 6.1, in the event that certain Permits are not transferable or replacements therefor are not obtainable on or before the Closing, but such

Permits are transferable or replacements therefor are obtainable after the Closing, Purchaser and Seller shall continue to use such reasonable efforts in cooperation with the other after the Closing as may be required to obtain all required consents and approvals to transfer, or obtain replacements for, such Permits after Closing and shall do all things reasonably necessary to give Purchaser the benefits which would be obtained under such Permits.

6.2    Confidentiality; Non-Solicitation and Use of Trade Names.

(a)    Seller acknowledges that it has a special knowledge of the Business and the proprietary and confidential information included in the Acquired Assets, and that Purchaser is making a considerable investment in the Acquired Assets from which investment Seller has benefited.  In consideration of this Agreement and such investment and benefit, and as an inducement to Purchaser to enter into this Agreement and consummate the transactions contemplated herein, Seller agrees that, for a period of three (3) years after the Closing Date, it will not, directly or indirectly in one or a series of transactions, disclose in violation of this Agreement to any person (other than any of Seller's officers, directors, employees, advisors or affiliates), or use or otherwise exploit for their own benefit or for the benefit of anyone other than Purchaser, Confidential Information (as defined below) and Seller shall use its reasonable efforts to direct all persons or entities to whom any Confidential Information has been disclosed without violation hereunder to observe the terms and conditions set forth herein as though each such person or entity was bound hereby. "Confidential Information" means the Proprietary Information, together with any trade secret, confidential study, data, calculations, software storage media or other compilation of information, patent, patent application, copyright, trademark, trade name, service mark, service name, know-how, trade secrets, customer lists, details of client or consultant Contracts, pricing policies, sales techniques, confidential information relating to suppliers, marketing plans or strategies, products and formulae, product development techniques or plans, business acquisition plans or any portion or phrase of any scientific or technical information, ideas, discoveries, designs, computer programs (including source or object codes), processes, procedures, research or technical data, improvements or other proprietary or intellectual property of Seller specifically relating to the Business, whether or not in written or tangible form, and whether or not registered, and including all files, records, manuals, books, catalogues, memoranda, notes, summaries, plans, reports, records, documents and other evidence thereof.  The term "Confidential Information" does not include, and there shall be no obligation hereunder with respect to, information that is or becomes generally available to the public other than as a result of a disclosure by Seller in breach of this Section 6.2.  Seller shall have no obligation hereunder to keep confidential any Confidential Information if and to the extent disclosure of any therefor is specifically required by law; provided, however, that in the event disclosure is required by applicable law, Seller shall provide Purchaser with prompt notice of such requirement, prior to making any disclosure, so that Purchaser may seek an appropriate protective order, and shall cooperate with Purchaser, at Purchaser's expense, in connection therewith.  Notwithstanding anything to the contrary in this Agreement, Seller shall not be deemed to be in default under this Section 6.2 or any other provision of this Agreement by reason of any information which Seller may reasonably deem appropriate to disclose in the continuing administration of the Chapter 11 Case.

(b)    For a period of two (2) years following the Closing Date, Seller agrees that it will not, without the express prior written approval of Purchaser (i) directly or indirectly recruit,

-27-

solicit or otherwise induce or influence any Hired Employee, sales agent, joint venturer, lessor, supplier, agent, representative or any other person that has or had during the one (1) year period immediately preceding the Closing Date a business relationship with Seller relating to the Business, to discontinue, reduce or adversely modify such employment, agency or business relationship with Purchaser as it relates solely to the Business, or (ii) only to the extent competitive with the Business as conducted on the Closing Date, employ or seek to employ or cause any Competitive Business to employ or seek to employ any person or agent who is employed or retained by Purchaser. Notwithstanding the foregoing, nothing herein shall prevent an officer of Seller from providing a letter of recommendation to an employee with respect to a future employment opportunity.

(c) For a period of three (3) years following the Closing Date, Seller agrees that it will not without the express prior written approval of Purchaser, directly or indirectly, recruit, solicit or otherwise induce or influence any customer, supplier, or business affiliate of Purchaser to discontinue, reduce or modify such business relationship with Purchaser to the extent such business relationship pertains to the Business.

(d) Seller agrees that the violation or threatened violation of any of the provisions of this Section 6.2 by it shall cause immediate and irreparable harm to Purchaser and that the damage to Purchaser will be difficult or impossible to calculate with precision. Therefore, in the event that Seller violates this Section 6.2, an injunction restraining Seller from such violation may be entered (upon proper proof) against Seller, in addition to any other relief available to Purchaser.

(e) If, at the time of enforcement of any provision of this Section 6.2, a court shall hold that the duration, scope or other restrictions stated herein are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope or other restrictions reasonable under such circumstances shall be substituted for the stated duration, scope or other restrictions and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and other restrictions permitted by law.

(f) Immediately following Closing, Seller shall change its name to a name that does not include the words "Eagle Pipe" or any derivation of any such name, shall discontinue use of any and all such names in connection with any future operations and activities, and shall modify the names of the debtor in the Chapter 11 Case.

6.3 <u>Referral of Business Opportunities</u>. From and after the Closing Date, Seller shall use reasonable efforts to refer to Purchaser all incoming business inquiries, customer orders and other matters related to the Business, the Acquired Assets and the Assumed Obligations including, without limitation, all customer orders received by Seller via telephone, website, computer or other automated systems. To the extent customer orders are delivered to third party electronic data interchange providers, such providers will be instructed to transmit such orders to Purchaser or Purchaser's providers. Electronic delivery, if used, shall be by such method as shall be mutually agreed.

6.4 <u>Seller's Employees</u>. Seller will provide reasonable assistance to facilitate Purchaser's hire of such of Seller's Employees as shall be designated by Purchaser at or prior to

the Closing, consistent with Section 7.2 hereof. Notwithstanding the foregoing, Seller shall not (a) increase the annualized level of compensation of Seller's Employees, (b) grant any extraordinary bonuses, benefits or other forms of directors' or consultants' compensation, or (c) increase, terminate, amend or otherwise modify such compensation.

6.5     Purchaser's Access To Seller's Records.

(a)     From and after Seller's execution and delivery of this Agreement, Seller, its affiliates, successors to Seller (including, without limitation, any liquidating trustee or chapter 7 trustee subsequently appointed to administer Seller's bankruptcy estate or any assets that comprised such bankruptcy estate), or Seller's prepetition lenders and designated agents and representatives thereof, shall continue to provide Purchaser (or its designated representatives) access, upon reasonable advance notice to Seller, to Seller's employees, books and records, company offices and other facilities for the purpose of conducting such additional due diligence as Purchaser deems appropriate or necessary, in its discretion, in order to facilitate Purchaser's efforts to consummate the transaction provided for herein and to operate the Business. Seller hereby covenants and agrees to reasonably cooperate with Purchaser in this regard.

(b)     Without limiting the generality of the foregoing Section 6.5(a), from the date of this Agreement through the Closing Date, Seller shall provide Purchaser, not less than every five (5) Business Days, with (i) a complete Inventory report in the form that Seller utilizes for its own internal reporting, (ii) update reports regarding the status of the Boomerang Claims and the Centric Claims, and (iii) any other developing or developed matters identified in the context of Purchaser's due diligence review.

6.6     Seller's Maintenance of Leases and Contracts.  Through the Closing Date, subject to the terms of the any applicable Order of the Bankruptcy Court and Section 6.8 hereof, Seller shall take such actions as are commercially reasonable and within its control in order to prevent all Leases and Contracts deemed a part of the Business from being terminated prior to Purchaser's taking action under the Contract Rejection Option, so as to ensure that Purchaser may acquire such assets (or otherwise use same under Section 2.2(b) hereof) at Closing free and clear of any and all pre-Closing Claims.

6.7     COBRA and WARN Act Obligations.  Through and after the Closing Date, Seller shall comply with its COBRA and WARN ACT obligations, if any.

6.8     Payment of Cure Amounts.  Purchaser shall timely, in the manner provided in the Sale Order in amount not to exceed Two Hundred Forty Thousand Dollars ($240,000.00) (the "Cure Cap"), (a) pay the Cure Amounts due under the Assumed Executory Contracts directly to the counter party of each Assumed Lease and each Assumed Contract the Cure Amount related to such Assumed Lease or Assumed Contract, including, without limitation, any amounts assessed by any landlord under any Assumed Lease following Closing with respect to Seller's occupancy and rental of the Acquired Locations prior to Closing, (b) any amounts required to restore any deficiencies in Lease Deposits under Assumed Leases, and (c) any amounts necessary to reimburse Seller for all amounts paid under this Section 6.8. Seller shall be liable for the prompt payment of any Cure Amounts to be paid hereunder that are not payable by Purchaser or that are in excess of the Cure Cap.

6.9     _Termination of Hired Employees_.  Contemporaneously with the Closing, Seller shall terminate all Employees whom Purchaser has designated as Hired Employees.  Except for the obligations with respect to the Hired Employees expressly assumed by Purchaser under Section 2.4(b), Seller shall be solely liable for all termination payments and obligations to such Hired Employees, including, without limitation, any severance and other costs and expenses incurred or to be incurred in connection with such termination, and any accrued or contingent salary, bonus, benefits, phantom stock payments or other amounts.

6.10     _Receipt of Purchaser's Assets_.  Seller agrees that in the event it receives any cash or cash equivalents that properly constitute the property of Purchaser in accordance with the terms of this Agreement, such cash or cash equivalents shall be held by Seller in trust for Purchaser, and further shall be accounted for and paid over to Purchaser promptly after its receipt.

6.11     _Reporting Obligations_.  Following the Closing, Seller shall provide to Purchaser any information regarding sales at the Acquired Locations and other matters relevant to Purchaser's fulfillment of its obligations under the Assumed Leases.

6.12     _Public Statements_. Prior to the Closing, the parties shall consult with each other prior to issuing any Public Statement with respect to this Agreement or the transactions contemplated hereby and shall not issue any such Public Statement without the prior written consent of the other party, which approval shall not be unreasonably withheld, conditioned or delayed; provided, that, nothing herein shall prohibit a party from making public disclosures or Public Statements required by applicable law, in connection with any hearing or filing with the Bankruptcy Court or pursuant to any listing or similar agreement with or rules of any securities exchange or similar regulatory body, provided that in such event the party intending to make such release with the securities exchange or similar regulatory body shall use its commercially reasonable efforts to provide the other party with a copy of such public disclosure contemporaneously with the making of such public disclosure.

6.13     _Bankruptcy Court Approval_.

(a)     Promptly upon the designation of the Purchaser as the "Successful Bidder," as defined in and contemplated under the Bid Procedures Order, the Seller shall file with the Bankruptcy Court the proposed Sale Order. The Seller and Purchaser shall consult with one another and provide any draft revisions of the proposed Sale Order with sufficient advance notice regarding pleadings which any of them intend to file, or positions any of them intend to take, with the Bankruptcy Court in connection with or which might reasonably affect, the Bankruptcy Court's entry of the Sale Order.

(b)     Seller and Purchaser agree that, in the event that Purchaser is not the Successful Bidder at the auction undertaken pursuant to the Bid Procedures Order, but (i) is determined to have submitted the second highest or second best bid at the auction and is named the "Back-up Bidder," and (ii) Seller gives appropriate notice to Purchaser on or before the Outside Date indicating that the Successful Bidder has failed to consummate a purchase of the Acquired Assets, then Purchaser shall promptly consummate the transaction proposed in this Agreement upon the terms and conditions as set forth herein, including the Purchase Price, as Purchaser may

have increased by Purchaser such Purchase Price at the Auction, as reflected in the Back-up Bidder bid.

(c)     Purchaser agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order and a finding of adequate assurance of future performance by Purchaser, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code.

(d)     If the Sale Order or any other orders of the Bankruptcy Court relating to this Agreement or the transactions contemplated hereby shall be appealed by any Person (or if any petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to the Sale Order or other such Order), Seller will take such steps to reasonably diligently defend such appeal, petition or motion; and Seller shall use its reasonable best efforts to obtain an expedited resolution of any such appeal, petition or motion.

## ARTICLE VII
## COVENANTS OF PURCHASERAssumed Obligations.  Subsequent to the Closing, Purchaser agrees to assume and perform the Assumed Obligations.

7.2     Employees.  Information regarding the employees with respect to the Business ("Employees") has been provided by Seller to Purchaser.  Upon the Closing, Purchaser shall offer all Employees continued at-will employment by Purchaser. Employees who accept such continued at-will offers of employment made by Purchaser pursuant to this Section 7.2 shall be referred to hereinafter as the "Hired Employees."  In addition to its obligations under Section 6.9 hereof, Seller shall assist Purchaser in effecting the change of employment of the Hired Employees as of the Closing in an orderly fashion.  Nothing herein expressed or implied shall confer upon any Employee of Seller, any Hired Employee, any other employee or any legal representative thereof any additional rights or remedies, including any additional right to employment or continued employment for any specified period, of any nature or kind whatsoever, under or by reason of this Agreement.  Seller shall be solely responsible for compliance with its WARN Act or COBRA obligations, as and to the extent applicable.  Purchaser may elect to assume the Seller's Employee Benefit Plan, but is under no obligation do so or to provide to the Hired Employees those benefits previously offered to the Employees.

7.3     Reasonable Access to Records and Certain Personnel.  Following consummation of the Closing, so long as such access does not unreasonably interfere with Purchaser's business operations, Purchaser shall permit Seller's employees, agents, counsel and other professionals employed in the Chapter 11 Case, or otherwise retained by Seller, reasonable access to the financial and other books and records relating to the Acquired Assets or the Business (whether in documentary or data form) for the purposes of facilitating the continuing administration of the Chapter 11 Case, preparing Tax Returns or responding to Tax related inquiries, and other such administrative activities, which access shall include the right of such professionals to copy, at Seller's expense, such documents and records as it may request in furtherance of the purposes described above, subject in all respects to the provisions of Section 6.2 hereof.  Purchaser may, in

its discretion, move any or all of the books and records relating to the Acquired Assets and/or the Business to a location of its designation; provided, however, if Purchaser moves any such documents or records from their present location, Seller has the right to require Purchaser to copy and deliver to Seller or its professionals such documents and records as they may request, but only to the extent Seller or any such professional (i) furnishes Purchaser with reasonably detailed written descriptions of the materials to be so copied and (ii) Seller advances to Purchaser the costs and expenses thereof. The parties acknowledge that Seller shall have the right to retain any documents and records provided to it by Purchaser, subject in all respects to the provisions of Section 6.2 hereof. Following the Closing, Purchaser shall provide Seller and such of Seller's professionals as Seller shall have from time-to-time designated, with reasonable access to former management of the Business during regular business hours to assist Seller as set forth in this Section 7.3, provided again that such access does not unreasonably interfere with Purchaser's business operations. Purchaser shall not dispose of any such documents and records except as shall be consistent with applicable law; provided, further, Purchaser shall provide Seller with reasonable advance written notice prior to the disposal of any such documents or records, together with the opportunity for Seller to preserve such documents or records at Seller's cost.

      7.4    <u>Receipt of Seller's Assets</u>. Purchaser agrees that in the event it receives any cash or cash equivalents that properly constitute the property of Seller in accordance with the terms of this Agreement, such cash or cash equivalents shall be held by Purchaser in trust for Seller, and further shall be accounted for and paid over to Seller promptly after its receipt.

      Except for the covenant set forth in Section 7.2 above (to the extent that it is fully performed by Purchaser concurrently with or prior to the Closing), all of Purchaser's covenants set forth in this Article VII shall survive the Closing.

**ARTICLE VIII**
**CONDITIONS PRECEDENT TO OBLIGATIONS OF PURCHASER**

      The obligations of Purchaser under this Agreement are, at the option of Purchaser, subject to satisfaction of the following conditions precedent on or before the Closing Date (unless an earlier date shall be specified below).

      8.1    <u>Representations and Warranties True as of the Record Date or Effective Date and Closing Date</u>. Each of the representations and warranties of Seller contained herein shall be true and correct in all material respects on and as of the Record Date or Effective Date, (as specifically provided for in such representation and warranty and except for such changes as are contemplated by the terms of this Agreement and except for representations and warranties which specifically relate to an earlier date) on and as of the Closing Date with the same force and effect as though made on and as of the Closing Date. Seller shall also have complied in all material respects with all of its covenants and obligations hereunder which are to be completed or complied with at or prior to Closing.

      8.2    <u>No Material Adverse Effect</u>. Between the Effective Date and Closing Date no Material Adverse Effect has affected the Business or the Seller.

-32-

8.3     Ordinary Course Operations.  From and after the Petition Date, Seller shall have continued to operate the Business in the Ordinary Course of Business to the extent feasible after filing bankruptcy and in accordance with the terms of this Agreement.  During such interim period, Purchaser shall be entitled to receive from Seller regular updates regarding Seller's cash collateral positions and the availability of funds and resources to maintain its operations in the Ordinary Course of Business.  Seller shall provide Purchaser with copies of Monthly Operating Reports furnished to the United States Trustee, and additional current and historical financial information furnished to its lenders and business partners concurrently with the delivery of such information to those parties.

8.4     Delivery of Acquired Assets.  At Closing, Seller shall be poised to deliver possession of all Acquired Assets to Purchaser, in good operating order and condition and in all events in compliance with the provisions of the Assumed Leases, reasonable wear and tear excepted.

8.5     Subject to Competitive Bidding Process.  This Agreement is subject to approval by the Bankruptcy Court following completion of a competitive bidding process undertaken in accordance with Court-approved bidding and sale procedures.

8.6     Lease/Contract Assumption and Assignment.  The Sale Order shall approve and authorize the assumption and assignment of the Assumed Leases and Assumed Executory Contracts over which the Bankruptcy Court has jurisdiction.  The Sale Order shall also provide that, and if and to the extent necessary the Assumed Leases and Assumed Executory Contracts shall be deemed modified to provide that: (i) all of the Assumed Leases and Assumed Executory Contracts are in full force and effect, (ii) the assumption and assignment shall be free and clear of any Claims of defaults, (iii) Seller shall be responsible for curing any and all non-monetary defaults which may exist at the time of assignment, (iv) the Assumed Leases shall be transferred free and clear of all Liens, Claims and encumbrances, (v) Purchaser shall have full authority to conduct the Business under the "Eagle Pipe," and/or other tradenames utilized by Seller, or under Purchaser's own tradenames, (vi) all references in the Assumed Leases to such tradenames or "Tenant" or "Lessee" shall thereafter mean and refer to Purchaser, (vii) Seller and Purchaser shall jointly direct all customers, vendors, suppliers, and business relationships to communicate and correspond directly with Purchaser and to make all payments due on any Accounts directly to Purchaser following the Closing, and (viii) the assumption and assignment contemplated hereunder are otherwise permitted.

8.7     Consents; Permits.  To the extent not otherwise deemed consented to, approved, licensed, permitted, ordered or authorized by entry of the Sale Order or otherwise as a result of the Chapter 11 Case, Seller shall have received (and there shall be in full force and effect) the material consents, approvals, licenses, permits, orders and other authorizations of and shall have made (and there shall be in full force and effect) to the extent required by law the filings, registrations, qualifications and declarations with any Person pursuant to any applicable law, statute, ordinance regulation or rule or pursuant to any agreement, order or decree to which Seller is a party or to which it is subject, in connection with the transactions contemplated by this Agreement and the sale of the Acquired Assets, including without limitation, assignment of the Assumed Leases.

8.8     Company Documents.  Seller shall have delivered to Purchaser copies of the resolutions of the Eagle Pipe's members and managers evidencing the approval of this Agreement, the Chapter 11 Case and the transactions contemplated hereby.

8.9     Release of Liens.  Purchaser shall have received such documents or instruments as may be required, in Purchaser's reasonable discretion, to demonstrate that, effective as of the Closing Date, the Acquired Assets are released from any and all Liens.

8.10     Sale Order.  Except as otherwise provided in Section 10.1 hereof, the Sale Order shall be entered in form and substance satisfactory to Purchaser and shall have become a Final Order on or before December 4, 2020 (the "Sale Order Deadline").

8.11     Closing.  The Closing shall have occurred on or prior to the Outside Date, time being of the essence.

# ARTICLE IX
## CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER

The obligations of Seller under this Agreement are, at the option of Seller, subject to the satisfaction of the following conditions precedent on or before the Closing Date:

9.1     Representations and Warranties True as of the Effective Date and Closing Date. The representations and warranties of Purchaser contained herein shall be true and correct in all material respects on and as of the Effective Date, and shall also be true in all material respects (except for such changes as are contemplated by the terms of this Agreement, and except for representations and warranties which specifically relate to an earlier date) on and as of the Closing Date with the same force and effect as though made by Purchaser on and as of the Closing Date. Purchaser shall also have complied with all of its covenants and obligations hereunder which are to be completed or complied with at or prior to Closing.

9.2     Bankruptcy Condition.  The Sale Order (i) shall have been entered by the Bankruptcy Court on or before the Sale Order Deadline, and (ii) shall not have been appealed or be subject to any pending appeal as of the Closing Date, and no stay with respect thereto (including any stay under Bankruptcy Rule 6004(h)) shall be in effect as of the Closing Date.

9.3     Consents; Permits.  To the extent not otherwise deemed consented to, approved, licensed, permitted, ordered or authorized by entry of the Sale Order or otherwise as a result of the Chapter 11 Case, Seller shall have received (and there shall be in full force and effect) the material consents, approvals, licenses, permits, orders and other authorizations of and shall have made (and there shall be in full force and effect) to the extent required by law the filings, registrations, qualifications and declarations with any Person pursuant to any applicable law, statute, ordinance regulation or rule or pursuant to any agreement, order or decree to which Seller is a party or to which it is subject, in connection with the transactions contemplated by this Agreement and the sale of the Acquired Assets, provided that Seller shall have timely filed for and diligently pursued the same.

9.4     Company Documents.   Purchaser shall have delivered to Seller copies of the resolutions of Purchaser's managers or members (as appropriate) evidencing the approval of this Agreement and the transactions contemplated hereby.

9.5     Closing Deadline.  The Closing shall have occurred on or prior to the Outside Date, time being of the essence.

# ARTICLE X
# CLOSING

10.1    Closing. Unless otherwise mutually agreed by Purchaser and Seller, the Closing shall take place no later than December 11, 2020 (the "Outside Date") on a date mutually agreed upon by the parties.

10.2    Deliveries by Seller.  At the Closing, Seller will deliver, in addition to the other documents contemplated by this Agreement, the following to Purchaser:  (a) a Bill of Sale ("Bill of Sale") in form and content mutually satisfactory to Purchaser and Seller; (b) an Assignment and Assumption ("Assignment and Assumption") in form and content mutually satisfactory to Purchaser and Seller; (c) domain name assignments of domain names acquired in form and content mutually satisfactory to Purchaser and Seller; (d) with respect to each vehicle comprising part of the Acquired Assets, an original Certificate of Title (or, if unavailable, a mutually satisfactory substitution therefor), with the assignment portion completed and signed by Seller or a separate bill of sale applicable to such vehicle; (e) the Escrow Agreement, attached hereto as Exhibit A; and (f) such other and additional documents of transfer that may be reasonably requested by Purchaser (and/or any Permitted Designee thereof).

10.3    Deliveries by Purchaser.  At the Closing, Purchaser will deliver the following:  (a) the Purchase Price payable pursuant to and in accordance with Section 3.1 and Section 3.2; and (b) duly executed originals of the Assignment and Assumption; and (c) such other additional documents as are required to consummate the transactions contemplated herein.

10.4    Release of Claims Against Hired Employees. Upon Closing, any Claims that have been or could be asserted by any party in interest in the Chapter 11 Case (or their successors, agents, or assigns) against Hired Employees shall be released.

# ARTICLE XI
# TERMINATION

11.1    Termination of Agreement.  This Agreement and the transactions contemplated hereby may (at the option of the party having the right to do so or by operation of this Agreement) be terminated at any time on or prior to the Closing Date:

(a)     Mutual Consent.  By mutual written consent of Purchaser and Seller;

(b)     Court Order.  By Purchaser or Seller if a court of competent jurisdiction or a governmental, quasi-governmental, regulatory or administrative department, agency, commission or authority shall have issued an order, decree or ruling or taken any other action (which order, decree, ruling or action the parties hereto shall use their best efforts to lift or

-35-

dissolve), in each case restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement or attempting to do the same, or by the Court having not entered as a Final Order the Sale Order prior to the Sale Order Deadline;

(c)     Failure to Close.  By Purchaser or Seller if the transactions contemplated hereby shall not have been consummated on or before the Outside Date, provided, however, that such right to terminate this Agreement shall not be available to any party whose failure to fulfill any of its covenants or obligations under this Agreement has been the sole or substantial cause of, and resulted in, the failure of the transactions contemplated hereby to be consummated on or before such date;

(d)     Termination by Purchaser.  By Purchaser, if (i) a material breach of any representation, warranty, covenant or agreement on the part of Seller set forth in this Agreement shall have occurred, and such breach is incapable of being cured or, if capable of being cured, Seller, within seven (7) days of receipt of written notification thereof and prior to the Outside Date (and, if applicable, prior to the Sale Order Deadline), has failed to cure such breach; (ii) a Material Adverse Effect shall have occurred; (iii) the failure to occur of any of the conditions set forth Article VIII, and such condition is either incapable of being cured, or if capable of being cured, Seller has not so cured such failure within seven (7) days of receipt of written notification thereof and prior to the Outside Date (and, if applicable, prior to the Sale Order Deadline); (iv) Seller is in breach of any of its obligations and or the requirements of operating as a debtor-in-possession under the Bankruptcy Rules, including, but not limited to, all obligations due to its lenders, creditors, the Bankruptcy Court, and other interested parties, or (v) a trustee or examiner has been appointed to oversee Seller's operations or its assets.

(e)     Termination by Seller.  By Seller upon (i) a material breach of any representation, warranty, covenant or agreement on the part of Purchaser set forth in this Agreement shall have occurred, and such breach is incapable of being cured or, if capable of being cured, Purchaser, within seven (7) days of receipt of written notification thereof and prior to the Outside Date, has failed to cure such breach; or (ii) the failure to occur of any of the conditions set forth Article IX and such condition is either incapable of being cured, or if capable of being cured, Purchaser has not so cured such failure within seven (7) days of receipt of written notification thereof and prior to the Outside Date.

(f)     Successful Bidder.  By Purchaser or Seller in the event Purchaser, having timely complied with all requirements of the Bankruptcy Court as well as the Bid Procedures Order, and not otherwise being in default hereunder, is not the successful bidder at auction (the "Successful Bidder"); provided, however, that in the event that a bona fide third-party purchaser for cash is designated as the Successful Bidder, Purchaser may be designated as the "Back-up Bidder" pursuant to the Bid Procedures Order, in which event this Agreement shall terminate pursuant to this Section 11.1(f) upon the earlier of (i) the closing of a sale of any of the Acquired Assets to a Successful Bidder who is not the Purchaser, or (ii) following the Outside Date.  For the avoidance of doubt, the Purchaser shall not be designated as the "Back-up Bidder" if a bidder proposing a credit or in-kind bid is designated as the Successful Bidder.

4841-0539-3619.6

11.2    Procedure and Effect of Termination and Right to Proceed.

(a)    If this Agreement is terminated pursuant to Section 11.1, written notice thereof shall forthwith be given to the other parties to this Agreement and all further obligations of the parties under this Agreement shall terminate; provided, however, that: the parties shall, in all events, remain bound by and continue to be subject to the provisions set forth in this Article XI.  In addition, anything in this Agreement to the contrary notwithstanding, if any of conditions to obligations specified in Article VIII hereof have not been satisfied, Purchaser, in addition to any other rights which it may have, shall have the right to waive its rights to have such conditions satisfied and elect to proceed with the transactions contemplated hereby and, if any of the conditions to the obligations of Seller specified in Article IX hereof have not been satisfied, Seller, in addition to any other rights which may be available to it, shall have the right to waive its right to have such conditions satisfied and elect to proceed with the transactions contemplated hereby.

(b)    In the event of the termination of this Agreement pursuant to Section 11.1(a), (b), (c) (unless termination is due to Purchaser's breach or failure), (d), or (f), the Deposit, together with any accrued interest, shall be returned to Purchaser and this Agreement shall forthwith become void and have no effect and there shall be no liability on the part of any party hereto or their subsidiaries, affiliates, directors, officers, shareholders, or agents except to the extent any provisions of this Agreement specifically survive its termination.

11.3    Breach by Seller.  If termination of this Agreement is due solely to a breach by Seller pursuant to Section 11.1(b), (c) (unless termination is due to Purchaser's breach or failure), (d), or (f) hereof, the Deposit, together with any accrued interest, shall be returned, and this Agreement shall forthwith become void and have no effect and there shall be no liability on the part of any party hereto or their subsidiaries, affiliates, directors, officers, shareholders, or agents except to the extent any provisions of this Agreement specifically survive its termination.

11.4    Breach by Purchaser.  If termination of this Agreement is due solely to a breach by Purchaser pursuant to Section 11.1(c) (where it has been determined that such termination is solely due to Purchaser's breach or failure to close) or 11.1(e) hereof, Seller, as its sole remedy, shall be entitled to retain the Deposit, with interest, promptly paid to Seller as liquidated damages.  The parties hereby agree that the amount of the Deposit and all interest thereon is a fair and reasonable estimate of the total detriment that Seller would suffer in the event of Purchaser's default and failure to complete the transaction hereunder.

11.5    Alternative Purchaser.  If this Agreement is terminated pursuant to Section 11.1(f) hereof, the Deposit will be promptly returned to Purchaser together with accrued interest thereon.

11.6    Survival; Exclusive Remedies.  The representations and warranties of the parties set forth in this Agreement shall terminate at Closing. Except as specifically set forth in this Agreement, effective as of Closing, Purchaser and Seller waive any rights and Claims, whether in law or in equity, relating to (i) any breach of representation, warranty, pre-Closing covenant or agreement contained herein occurring on or prior to the Closing or (ii) the Acquired Assets or Assumed Obligations.  Purchaser and the Seller acknowledge and agree that if this Agreement is terminated for any reason, the provisions of Article III and Sections 11.3, 11.4, and 11.5 shall be

the sole and exclusive remedies of the parties for any breach of the representations, warranties, covenants or agreements contained herein.

## ARTICLE XII
## MISCELLANEOUS

12.1    <u>Expenses</u>.  Except as otherwise provided herein, each party hereto shall bear its own expenses with respect to the transactions contemplated hereby.

12.2    <u>Amendment</u>.  This Agreement may be amended, modified or supplemented but only in a writing signed by all of the parties hereto. For clarity, Bankruptcy Court approval shall not be required for any amendment to this Agreement.

12.3    <u>Notices</u>.  Any notice, request, instruction or other document to be given hereunder by a party hereto shall be in writing and shall be deemed to have been given, (i) when received if given in person or sent by email, (ii) on the date of transmission if sent by email or manner of electronic transmission upon the confirmation or acknowledgement of delivery of same (provided that a copy of such transmission is simultaneously deposited in the manner provided in <u>clause (iv)</u> below), (iii) one Business Day after being delivered to a nationally known commercial courier service providing next day delivery service (such as Fed Ex), or (iv) three Business Days after being deposited in the U.S. mail, certified or registered mail, postage prepaid:

        (A)     If to Seller, addressed as follows:

                Eagle Pipe, LLC
                925 Katy Freeway, Suite 306
                Houston TX 77002
                Attn:   Jared Light, President
                Email: jlight@eaglepipe.net

                With copies to:

                Gray Reed
                1300 Post Oak Blvd., Suite 2000
                Houston, Texas 77056
                Attn: Aaron M. Kaufman, Esq.
                Email: AKaufman@GrayReed.com

        (B)     If to Purchaser, addressed as follows:

                EP Acquisition Company, LLC
                14850 Montfort Drive, Suite 100
                Dallas, TX 75254
                Attn:   Arish Gupta
                Email: arish.gupta@centricpipe.com

-38-

With copies to:

EP Acquisition Company, LLC
14850 Montfort Drive, Suite 100
Dallas, TX 75254
Attn:   Michael Fielding, esq.
Email: mfielding@sbisteel.com

Eric Soderlund
Ross & Smith, PC
700 N. Pearl Street Suite 1610
Dallas, TX 75201
Office Direct: 214-377-8850
Fax: 214-377-9409
Email: eric.soderlund@judithwross.com

or to such other individual or address as a party hereto may designate for itself by notice given as herein provided.

12.4    Effect of Investigations.  Any due diligence review, audit or other investigation or inquiry undertaken or performed by or on behalf of Purchaser shall not limit, qualify, modify or amend the representations, warranties and covenants of, and indemnities by, Seller made or undertaken pursuant to this Agreement, irrespective of the knowledge and information received (or which should have been received) therefrom by Purchaser.

12.5    Interim Management.  Notwithstanding anything at law or equity to the contrary, each party understands and agrees that Seller is solely responsible for operating its Business prior to the Closing and in no event will Purchaser or any of its affiliates or subsidiaries, or any of their respective equityholders, directors, officers, managers, employees, agents or representatives have any authority to conduct Seller's Business with respect to any matter, obligation or decision prior to the Closing.  Furthermore, each party agrees that neither Purchaser nor any of its affiliates or subsidiaries, nor any of their respective equityholders, directors, officers, managers, employees agents or representatives, shall be liable to the Seller or any of its affiliates or subsidiaries or any of the respective equityholders, directors, officers, managers, creditors, bankruptcy estate, employees, agents or representatives for any Losses arising out of, relating to, or in connection with any assistance, advice and suggestions that Purchaser or any of its affiliates or subsidiaries, or any of their respective equityholders, directors, officers, managers, employees, agents of representatives may offer to Seller at any time prior to the Closing.

12.6    Waivers.  The failure of a party hereto at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same.  No waiver by a party of any condition or of any breach of any term, covenant, representation or warranty contained in this Agreement shall be effective unless in writing, and no waiver in any one or more instances shall be deemed to be a further or continuing waiver of any such condition or breach in other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty.

-39-

12.7     Counterparts.  This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12.8     Headings.  The headings preceding the text of Articles and Sections of this Agreement and the Schedules thereto are for convenience only and shall not be deemed part of this Agreement.

12.9     Applicable Law and Jurisdiction.  **SUBJECT TO ANY PROVISION IN THIS AGREEMENT AND ANY ANCILLARY DOCUMENT, TO THE CONTRARY, THIS AGREEMENT (AND ALL DOCUMENTS, INSTRUMENTS, AND AGREEMENTS EXECUTED AND DELIVERED PURSUANT TO THE TERMS AND PROVISIONS HEREOF (COLLECTIVELY, "<u>ANCILLARY DOCUMENTS</u>")) SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED WHOLLY WITHIN SUCH JURISDICTION.  PURCHASER AND SELLER FURTHER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT; AND/OR (ii) THE ACQUIRED ASSETS AND/OR ASSUMED OBLIGATIONS AND PURCHASER EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH JURISDICTION.**

12.10     Binding Nature; Assignment.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interest or obligations hereunder shall be assigned by any of the parties hereto without prior written consent of the other parties; except, that (i) Purchaser may assign any of its rights hereunder to any affiliates or wholly owned subsidiaries (a "<u>Permitted Designee</u>"), and upon such designation as a Permitted Designee hereunder, such Permitted Designee shall become obligated to perform any and all obligations arising hereunder in respect of that portion of the Acquired Assets and Assumed Obligations allocable thereto; <u>provided</u>, <u>however</u>, that Purchaser shall remain obligated to perform the obligations of "Purchaser" hereunder, in the event any Permitted Designee thereof fails to perform any obligation arising under this Agreement required of it as a "Purchaser" hereunder, and (ii) Purchaser may grant a security interest in its rights and interests hereunder to its third-party lender(s).  Nothing contained herein, express or implied, is intended to confer on any Person other than the parties hereto or their successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

12.11     No Third Party Beneficiaries.  This Agreement is solely for the benefit of the parties hereto and their respective affiliates and no provision of this Agreement shall be deemed to confer upon third parties any Losses sustained by such party.

12.12     Non-Recourse.  No past, present or future director, manager, officer, employee, incorporator, member, unitholder, partner or equityholder of any Party hereto shall have any liability for any obligations or liabilities of the Parties under this Agreement or any other Ancillary Documents, for any Claim based on, in respect of, or by reason of the transactions contemplated

-40-

hereby and thereby, and each Party on behalf of itself, its successors, and assigns hereby covenants not to sue any past, present or future director, manager, officer, employee, incorporator, member, unitholder, partner or equityholder of any other Party for any such Claim.

12.13   Tax Matters.

(a)   Purchaser shall make available to Seller, and Seller shall make available to Purchaser, (i) such records as any such party may require for the preparation of any Tax Returns required to be filed by Seller or Purchaser, as the case may be, and (ii) such records as Seller or Purchaser may require for the defense of any audit, examination, administrative appeal, or litigation of any Tax Return in which Seller or Purchaser was included.

(b)   Purchaser shall be responsible for the timely payment of all sales, use, transfer (including, without limitation, documentary transfer, stamp and like taxes) and similar taxes payable in connection with the consummation of the transactions contemplated by this Agreement.

(c)   Notwithstanding anything herein to the contrary, as soon as practicable following the Closing but in any event within thirty (30) days after Closing, Purchaser shall, for United States income tax purposes, determine (subject to the approval of Seller which will not be unreasonably withheld) an allocation of the Purchase Price (and other capitalized costs) among the Acquired Assets, subject to the provisions of Section 1060 of the Code, and both Purchaser and Seller shall report such allocation consistently on their respective income tax returns.

12.14   Construction.  The language used in this Agreement will be deemed to be the language chosen by the parties to this Agreement to express their mutual intent, and no rule of strict construction shall be applied against any party.  Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise.  Nothing in the Disclosure Schedule will be deemed adequate to disclose an exception to a representation or warranty made herein unless the substance and applicability of such exception is reasonably apparent from the disclosure contained in the Disclosure Schedule.  Without limiting the generality of the foregoing, the mere listing (or inclusion of a copy) of a document or other item shall not be deemed adequate to disclose an exception to a representation or warranty made herein (unless the representation or warranty has to do with the existence of the document or other items itself).  The parties hereto intend that each representation, warranty, and covenant contained herein shall have independent significance.  If any party hereto has breached any representation, warranty, or covenant contained herein in any respect, the fact that there exists another representation, warranty, or covenant relating to the same subject matter (regardless of the relative levels of specificity) which such party has not breached shall not detract from or mitigate the fact that the party is in breach of the first representation, warranty, or covenant.

12.15   Entire Understanding.  This Agreement, together with the Ancillary Documents set forth the entire agreement and understanding of the parties hereto in respect to the transactions contemplated hereby, and this Agreement and the Ancillary Documents hereto supersede all prior agreements, arrangements and understandings relating to the subject matter hereof. There have

been no representations or statements, oral or written, that have been relied on by any party hereto, except those expressly set forth in this Agreement or in any Ancillary Document hereto.

12.16 <u>Broker Commission</u>.    Purchaser and Seller agree that if any Claims for commissions, fees, or other compensation, including, without limitation, brokerage fees, finders fees, or commissions are ever asserted against Purchaser or Seller in connection with the transaction, all such Claims shall be handled and paid by the party whose actions form the basis of such claim and such party shall indemnify, defend (with counsel reasonably satisfactory to the party(ies) entitled to indemnification), protect and save and hold the other harmless from and against any and all such Claims asserted by any person, firm or corporation in connection with the transaction contemplated hereby.

[SIGNATURE PAGES FOLLOW.]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered on the date first above written.

**PURCHASER**:

EP Acquisition Company, LLC

By: _____

     Name:  Arish Gupta

     Its:     President

**SELLER**:

EAGLE PIPE, LLC

By: _____

     Name:  Jared Light

     Title:  Chief Operating Officer

Case 20-34879   Document 1781   Filed in TXSB on 11/30/20   Page 76 of 112

**SCHEDULE 2.1(a)**
**Inventory**

See attached (updated as of November 18, 2020).

| Location Code | Item Category | Description | iMill | iCondition | Lot No | JTS | Quantity | UoM | Tons |
|---|---|---|---|---|---|---|---|---|---|
| AA COATERS | LINE PIPE | 8-5/8" 19.68# (0.219wt) X52 PSL-2 DRL PEB 14-16 | TTP | PRIME | 14248/14249 | | 5.50 | FT | 0.05 |
| ARCTIC | CASING | 14" 115.53# (0.820wt) Q125-HP R3 PE SMLS | US STEEL | PRIME | 6664/7035 | | | FT | - |
| ARCTIC | CASING | 14" 115.53# (0.820wt) Q125-HP R3 PE SMLS | US STEEL | PRIME | EPS-2078G-001 | | | FT | - |
| ATLAS TUB | CASING | 11-3/4" 42.00# (0.333wt) K55 R3 STC SMLS | RUSTAVI | PRIME | PO-5507 | | | FT | - |
| ATLAS TUB | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | PRIME | PO-10029 | | | FT | - |
| ATLAS TUB | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | PRIME | PO-3632 | | 28.41 | FT | 0.77 |
| ATLAS TUB | CASING | 5-1/2" 19.83# (0.361wt) P110-MS1 R3 ULTRA SF SMLS | KOPPEL | PRIME | PO-10500 | (2) | | FT | - |
| ATLAS TUB | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | PRIME | PO-10508 | (58) | | FT | - |
| ATLAS TUB | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | PRIME | PO-9464 | 58 | | FT | - |
| AXIS PIPE | LINE PIPE | 16" 42.09# (0.250wt) X52 PSL-2 DRL PEB BARE ERW | AXIS | PRIME | EPS-21356-001 | | | FT | - |
| AXIS PIPE | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | AXIS | PRIME | PO-10391 | | | FT | - |
| BEEMAC MID | CASING | 10-3/4" 40.50# (0.350wt) J55 R3 BTC ERW | CORINTH | INSPECTED | EPS-21108-RTN | 3 | 128.15 | FT | 2.60 |
| BEEMAC MID | CASING | 10-3/4" 40.50# (0.350wt) J55 R3 BTC ERW | CORINTH | INSPECTED | EPS-21774-RTN | 3 | 124.42 | FT | 2.52 |
| BEEMAC MID | CASING | 11-3/4" 42.00# (0.333wt) J55 R3 BTC ERW | NEXTEEL | INSPECTED | EPS-21523-RTN | 8 | 300.91 | FT | 6.32 |
| BEEMAC MID | CASING | 11-3/4" 42.00# (0.333wt) J55 R3 BTC ERW | NEXTEEL | INSPECTED | QB UNK | 2 | 82.00 | FT | 1.72 |
| BEEMAC MID | CASING | 11-3/4" 42.00# (0.333wt) J55 R3 BTC ERW | NEXTEEL | SCRAP | RTN-XTO-11.18 | 10 | 210.00 | FT | 4.41 |
| BEEMAC MID | CASING | 11-3/4" 42.00# (0.333wt) J55 R3 BTC ERW | NEXTEEL | SCRAP | QB UNK | 2 | | FT | - |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SEAH | RETURN | EPS-18742-RTN | 7 | 287.00 | FT | 7.82 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-19364-RTN | 3 | 127.69 | FT | 3.48 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-19385-RTN | 1 | 42.51 | FT | 1.16 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-19443-RTN | 4 | 169.50 | FT | 4.62 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-19547-RTN | 1 | 42.43 | FT | 1.16 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-19616-RTN | 1 | 42.50 | FT | 1.16 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-19616-RTN | 3 | 127.61 | FT | 3.48 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-19657-RTN | 1 | 42.50 | FT | 1.16 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-19680-RTN | 1 | 42.51 | FT | 1.16 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-19680-RTN | | | FT | - |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | RETURN | EPS-20188-RTN | | | FT | - |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SEAH | RETURN | EPS-20209-RTN | | | FT | - |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | RETURN | EPS-20237-RTN | | | FT | - |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | RETURN | EPS-20297-RTN | | | FT | - |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20302-RTN | 1 | 27.70 | FT | 0.75 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20316-RTN | 1 | 42.55 | FT | 1.16 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-20316-RTN | 2 | 87.33 | FT | 2.38 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | RETURN | EPS-20316-RTN | | | FT | - |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | RETURN | EPS-20320-RTN | | | FT | - |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-20460-RTN | 6 | 252.53 | FT | 6.88 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20460-RTN | 1 | 31.50 | FT | 0.86 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-20464-RTN | 3 | 125.59 | FT | 3.42 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20464-RTN | 1 | 34.10 | FT | 0.93 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-20471-RTN | 2 | 91.09 | FT | 2.48 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20471-RTN | 1 | 31.20 | FT | 0.85 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-20475-RTN | 1 | 42.12 | FT | 1.15 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20506-RTN | 2 | 62.20 | FT | 1.69 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20529-RTN | 1 | 29.60 | FT | 0.81 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SEAH | INSPECTED | EPS-20668-RTN | | 0.56 | FT | 0.02 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SEAH | SCRAP | EPS-20668-RTN | 2 | 58.40 | FT | 1.59 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20818-RTN | 1 | 22.11 | FT | 0.60 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20819-RTN | 1 | 36.00 | FT | 0.98 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-20860-RTN | 2 | 85.02 | FT | 2.32 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20860-RTN | 6 | 188.17 | FT | 5.13 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | HLD CLARK | INSPECTED | EPS-20927-RTN | 9 | 384.24 | FT | 10.47 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | EPS-20927-RTN | 1 | 24.30 | FT | 0.66 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | EPS-20927-RTN | 1 | 35.50 | FT | 0.97 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20994-RTN | 1 | 22.18 | FT | 0.60 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | EPS-21005-RTN | 1 | 27.71 | FT | 0.76 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | CH STEEL | SCRAP | EPS-21090-RTN | 2 | 30.16 | FT | 0.82 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-21121-RTN | 3 | 123.42 | FT | 3.36 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | EPS-21121-RTN | 1 | 15.24 | FT | 0.42 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | EPS-21123-RTN | 1 | 30.70 | FT | 0.84 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | EPS-21232-RTN | 1 | 33.82 | FT | 0.92 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-21435-RTN | 1 | 31.50 | FT | 0.86 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | EPS-21450-RTN | 1 | 34.40 | FT | 0.94 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | CH STEEL | SCRAP | EPS-21461-RTN | 3 | 17.47 | FT | 0.48 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | EPS-21490-RTN | 1 | 31.93 | FT | 0.87 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-21667-RTN | 4 | 166.54 | FT | 4.54 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-21667-RTN | 1 | 35.74 | FT | 0.97 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-21689-RTN | 7 | 282.68 | FT | 7.70 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-21689-RTN | 3 | 122.90 | FT | 3.35 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-21696-RTN | 1 | 25.85 | FT | 0.70 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | CH STEEL | PRIME | QB UNK | | | FT | - |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | TMK | PRIME | QB UNK | 1 | 37.77 | FT | 1.03 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | CH STEEL | RETURN | RTN-1 | 15 | 664.37 | FT | 18.10 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | RETURN | RTN-3 | 6 | 241.19 | FT | 6.57 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | RTN-4 | 3 | 108.26 | FT | 2.95 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SEAH | SCRAP | RTN-5 | 5 | 168.60 | FT | 4.59 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | RETURN | RTN-6 | 21 | 789.04 | FT | 21.50 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | RTN-7 | 8 | 132.86 | FT | 3.62 |
| BEEMAC MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | NA | RETURN | RTN-8 | 2 | 82.00 | FT | 2.23 |
| BEEMAC MID | PROTECTOR SET | 13-3/8" BTC PROTECTOR SET | QB UNK | SCRAP | PO3806 | | 50.00 | SET | - |
| BEEMAC MID | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | BOOMERANG | SCRAP | EPS-20028-RTN | | | FT | - |
| BEEMAC MID | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | BOOMERANG | PRIME | PO3566 | | | FT | - |
| BEEMAC MID | MARKER | 4-1/2" 13.50# (0.290wt) P110-HC GBCD ERW 10FT | CENTRIC | REPAIRABLE | EPS-20368-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 4-1/2" 13.50# (0.290wt) P110-HC GBCD ERW 10FT | CENTRIC | INSPECTED | EPS-20467-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 4-1/2" 13.50# (0.290wt) P110-HC GBCD ERW | CENTRIC | PRIME | PO-5028/5620 | | 5.00 | EA | - |
| BEEMAC MID | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 GBCD ERW | AXIS | REPAIRABLE | EPS-20098-RTN | (6) | | FT | - |
| BEEMAC MID | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 GBCD ERW | AXIS | RETURN | EPS-20098-RTN | 5 | 205.00 | FT | 1.38 |
| BEEMAC MID | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 GBCD ERW | CENTRIC | REPAIRABLE | EPS-20662-RTN | 1 | 44.63 | FT | 0.30 |
| BEEMAC MID | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 GBCD ERW | CENTRIC | INSPECTED | EPS-20662-RTN | 9 | 375.50 | FT | 2.53 |
| BEEMAC MID | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 GBCD ERW | CENTRIC | PRIME | EPS-5028 | | 11.74 | FT | 0.08 |

4835-8575-8675.3

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| BEEMAC MID | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 GBCD ERW | AXIS | PRIME | PO-5022 | 5 | FT | - |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-CY BTC ERW 10FT | CENTRIC | RETURN | EPS-20020-RTN | | 1.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-CY BTC ERW 10FT | CENTRIC | PRIME | PO3301 | | 1.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-CY BTC ERW SFT MARKER | CENTRIC | RETURN | EPS-20020-RTN | | 1.00 | EA |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | INSPECTED | EPS-19319-RTN | 4 | 175.12 | FT | 1.49 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | INSPECTED | EPS-19344-RTN | 13 | 563.25 | FT | 4.79 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-19344-RTN | 1 | 43.72 | FT | 0.37 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | INSPECTED | EPS-19384-RTN | 13 | 562.29 | FT | 4.78 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | REJECT | EPS-19384-RTN | | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-19384-RTN | 7 | 302.62 | FT | 2.57 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | INSPECTED | EPS-19401-RTN | 7 | 301.52 | FT | 2.56 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-19401-RTN | 2 | 87.62 | FT | 0.74 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | INSPECTED | EPS-19457-RTN | 5 | 213.55 | FT | 1.82 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-19457-RTN | 2 | 86.83 | FT | 0.74 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | INSPECTED | EPS-19481-RTN | 9 | 372.71 | FT | 3.17 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-19481-RTN | 2 | 87.97 | FT | 0.75 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | INSPECTED | EPS-19548-RTN | 8 | 349.49 | FT | 2.97 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-19548-RTN | 1 | 43.88 | FT | 0.37 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | RETURN | EPS-19548-RTN | 3 | 123.00 | FT | 1.05 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | RETURN | EPS-19648-RTN | 12 | 492.00 | FT | 4.18 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | INSPECTED | EPS-19651-RTN | 8 | 350.47 | FT | 2.98 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-19651-RTN | 2 | 88.14 | FT | 0.75 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | INSPECTED | EPS-19676-RTN | 5 | 208.38 | FT | 1.77 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | PRIME | EPS-20108-RTN | 69 | 2,829.00 | FT | 24.05 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | PRIME | PO-3507 | 8 | 192.26 | FT | 1.63 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | NA | SCRAP | VARIOUS | 33 | 982.80 | FT | 8.35 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 XP BTC SMLS | TENARIS | INSPECTED | EPS-19202-RTN | 3 | 130.35 | FT | 1.11 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 XP BTC SMLS | TENARIS | INSPECTED | EPS-19300-RTN | 10 | 430.65 | FT | 3.66 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 XP BTC SMLS | TENARIS | RETURN | QB UNK | | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 XP BTC SMLS | TENARIS | SCRAP | QB UNK | | | FT | - |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | CENTRIC | INSPECTED | EPS-19651-RTN | | 1.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | CENTRIC | INSPECTED | EPS-20127-RTN | | 1.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | CENTRIC | REPAIRABLE | EPS-20391-RTN | | 2.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | CENTRIC | INSPECTED | EPS-20609-RTN | | 5.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | CENTRIC | REPAIRABLE | EPS-20697-RTN | | 2.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | CENTRIC | PRIME | PO-3179 | | 13.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | CENTRIC | PRIME | PO3505/5357 | | 40.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | CENTRIC | PRIME | PO4034 | | 3.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW SFT | CENTRIC | PRIME | PO-3179 | | 1.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY R1 BTC ERW MARKER | CENTRIC | PRIME | PO-3179 | | 1.00 | EA |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | RETURN | EPS-19676-RTN | 4 | 164.00 | FT | 1.39 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | RETURN | EPS-19700-RTN | 23 | 943.00 | FT | 8.02 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | RETURN | EPS-19705-RTN | 18 | 738.00 | FT | 6.27 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | RETURN | EPS-19728-RTN | 8 | 328.00 | FT | 2.79 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | RETURN | EPS-19729-RTN | 7 | 287.00 | FT | 2.44 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | RETURN | EPS-19744-RTN | 11 | 451.00 | FT | 3.83 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20019-RTN | 7 | 312.12 | FT | 2.65 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | RETURN | EPS-20020-RTN | 26 | 1,062.03 | FT | 9.03 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | SCRAP | EPS-20020-RTN | 1 | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20029-RTN | 8 | 342.53 | FT | 2.91 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-20029-RTN | 8 | 331.16 | FT | 2.81 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20127-RTN | 10 | 446.14 | FT | 3.79 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-20127-RTN | 2 | 89.05 | FT | 0.76 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20281-RTN | 4 | 177.51 | FT | 1.51 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-20281-RTN | 8 | 349.40 | FT | 2.97 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20370-RTN | 1 | 41.37 | FT | 0.35 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-20370-RTN | 6 | 251.98 | FT | 2.14 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20391-RTN | 1 | 44.65 | FT | 0.38 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-20391-RTN | 4 | 176.48 | FT | 1.50 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20452-RTN | 2 | 73.79 | FT | 0.63 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20564-RTN | 10 | 446.49 | FT | 3.80 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20609-RTN | 7 | 295.74 | FT | 2.51 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20612-RTN | 3 | 111.20 | FT | 0.95 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | INSPECTED | EPS-20697-RTN | 12 | 528.06 | FT | 4.49 |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | PRIME | PO3505 | | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | RETURN | QB UNK | | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC SMLS | CENTRIC | PRIME | PO-3760 | 169 | 7,535.00 | FT | 64.05 |
| BEEMAC MID | CROSSOVER | 5-1/2" 20.00# (0.361wt) P110-CY DQX BOX X LTC | TMK | PRIME | PO-6740/7990 | | 8.00 | EA | - |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | PRIME | PO-6085/6774 | | 9.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY 10FT TCBC-HT SMLS | REPUBLIC TUBE | PRIME | PO-8701/13307 | | 25.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY 15-FT TCBC-HT | REPUBLIC TUBE | PRIME | PO-8701/13355 | | 1.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY DQX SMLS | TMK | PRIME | PO-7994/8057 | | 2.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY R1 DQX SMLS | | | EPS-21721-RTN | | 1.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY R1 DQX SMLS | BOOMERANG | INSPECTED | EPS-19713-RTN | | 1.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY GBCD ERW | CENTRIC | PRIME | PO3562 | | 41.00 | EA |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY R1 LTC SMLS | TMK | RETURN | EPS-21673-RTN | | 1.00 | EA |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 BK-HT SMLS | REPUBLIC TUBE | INSPECTED | EPS-21487-RTN | 16 | 656.00 | FT | 6.56 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 BK-HT SMLS | REPUBLIC TUBE | PRIME | PO-7913 | 6 | 175.28 | FT | 1.75 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 DQX SMLS | TMK | INSPECTED | EPS-21088-RTN | 13 | 534.77 | FT | 5.35 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 DQX SMLS | TMK | REPAIRABLE | EPS-21088-RTN | 2 | 77.45 | FT | 0.77 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 DQX SMLS | TMK | RETURN | EPS-21134-RTN | 14 | 574.00 | FT | 5.74 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 DQX SMLS | TMK | RETURN | EPS-21173-RTN | 11 | 451.00 | FT | 4.51 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | TMK | INSPECTED | EPS-21673-RTN | 9 | 369.00 | FT | 3.69 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | BOOMERANG | INSPECTED | EPS-21721-RTN | 4 | 164.00 | FT | 1.64 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | BOOMERANG | INSPECTED | EPS-19474-RTN | 8 | 341.35 | FT | 3.41 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | BOOMERANG | REPAIRABLE | EPS-19474-RTN | 1 | 39.52 | FT | 0.40 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | BOOMERANG | INSPECTED | EPS-20153-RTN | 1 | 44.21 | FT | 0.44 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | BOOMERANG | INSPECTED | EPS-20153-RTN | 8 | 352.98 | FT | 3.53 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | BOOMERANG | REPAIRABLE | ES-19474-RTN | 2 | 87.57 | FT | 0.88 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | BOOMERANG | PRIME | PO3446 | 1 | 30.00 | FT | 0.30 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | BOOMERANG | RETURN | QB UNK | (1) | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 LTC SMLS | TMK | RETURN | EPS-21487-RTN | | 1.00 | EA | |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 LTC SMLS | TMK | PRIME | PO6741/8000 | | | EA | |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 LTC SMLS | TMK | PRIME | PO-6743/8000 | | 3.00 | EA | |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20939-RTN | 2 | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-21004-RTN | 1 | | FT | - |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20505-RTN | | 2.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20513-RTN | | 2.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | RETURN | EPS-20791-RTN | | 2.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | RETURN | EPS-20851-RTN | | 2.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20910-RTN | | 2.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20939-RTN | | 2.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21002-RTN | | 3.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | RETURN | EPS-21028-RTN | | 2.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21035-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21136-RTN | | 3.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21158-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21200-RTN | | 3.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21240-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21419-RTN | | 2.00 | EA | |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | PRIME | EPT-3023/PO-11790 | | 2.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC R1 MI PANTHER | BENTELER | PRIME | PO-8090 | | 3.00 | EA | |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | BOOMERANG | PRIME | PO-3614 | 1,062 | 47,307.66 | FT | 473.08 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 MI PANTHER | BENTELER | INSPECTED | EPS-21331-RTN | 4 | 163.79 | FT | 1.64 |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | RETURN | EPS-20259-RTN | | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | RETURN | EPS-20261-RTN | | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | RETURN | EPS-20375-RTN | | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20628-RTN | | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-20628-RTN | | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-5101 | | | FT | - |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | PRIME | PO-6680/5101 | 1 | | FT | - |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | REPAIRABLE | EPS-20261-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | RETURN | EPS-20261-RTN | | | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20375-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20375-RTN | | | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20377-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | REPAIRABLE | EPS-20377-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20448-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20535-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | PRIME | EPS-20573-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20628-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20884-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | RETURN | EPS-21036-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | PRIME | PO-4025 | | | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | PRIME | PO-5101/6364 | | 53.00 | EA | |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.361wt) TN110-CY R3 TCBC-HT ERW | TENARIS | INSPECTED | EPS-21192-RTN | 4 | 160.90 | FT | 1.61 |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | INSPECTED | EPS-21419-RTN | | 2.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | INSPECTED | EPS-21486-RTN | | 3.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | INSPECTED | EPS-21604-RTN | | 2.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | PRIME | PO-5952/7526/8829 | | | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | PRIME | PO-5952/7526/9287 | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | INSPECTED | EPS-21200-RTN | | 1.00 | EA | |
| BEEMAC MID | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | PRIME | PO-5952/7526/9016 | | 8.00 | EA | |
| BEEMAC MID | CASING | 5-1/2" 23.00# (0.415wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | PRIME | PO-4027 | 52 | 2,360.03 | FT | 27.14 |
| BEEMAC MID | CASING | 5-1/2" 23.00# (0.415wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | PRIME | PO-5294 | 16 | 691.33 | FT | 7.95 |
| BEEMAC MID | CASING | 5-1/2" 23.00# (0.415wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | PRIME | PO-5720 | 45 | 2,019.05 | FT | 23.22 |
| BEEMAC MID | MARKER | 5-1/2" 23.00# (0.415wt) P110-HC TCBC-HT ERW | BOOMERANG | PRIME | PO-4027 | | 25.00 | EA | |
| BEEMAC MID | PROTECTOR SET | 5-1/2" BTC HD PROTECTOR SET | NA | PRIME | PO3806 | | 150.00 | SET | |
| BEEMAC MID | COUPLING | 5-1/2" P110-CY LTC | TMK | PRIME | PO-7252 | | 5.00 | EA | |
| BEEMAC MID | CASING | 5-1/2" 20.00# (0.408wt) P110-HC R3 BTC ERW | BORUSAN | RETURN | QB UNK | 23 | 943.00 | FT | 13.67 |
| BEEMAC MID | CROSSOVER | 7" 32.00# (0.453wt) P110-CY BK-HT BOX X 5-1/2" | TMK | RETURN | EPS-21487-RTN | | 1.00 | EA | |
| BEEMAC MID | CROSSOVER | 7" 32.00# (0.453wt) P110-CY DQX BOX X 5-1/2" | TMK | RETURN | EPS-21673-RTN | | 1.00 | EA | |
| BEEMAC MID | CROSSOVER | 7" 32.00# (0.453wt) P110-CY DQX BOX X 5-1/2" | TMK | PRIME | PO-6974 | | | EA | |
| BEEMAC MID | MARKER | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | REPUBLIC TUBE | RETURN | EPS-21487-RTN | | 2.00 | EA | |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | TMK | RETURN | EPS-21487-RTN | | 1.00 | EA | |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-CY R3 BK-HT SMLS | REPUBLIC TUBE | RETURN | EPS-21487-RTN | 9 | 369.00 | FT | 5.90 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-CY R3 BK-HT SMLS | REPUBLIC TUBE | RETURN | PO-7914 | 19 | 755.90 | FT | 12.09 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-CY R3 DQX SMLS | TMK | INSPECTED | EPS-21088-RTN | 5 | 38.00 | FT | 0.61 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-CY R3 DQX SMLS | TMK | RETURN | EPS-21134-RTN | 7 | 207.33 | FT | 3.32 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-CY R3 DQX SMLS | TMK | RETURN | EPS-21173-RTN | 1 | 65.12 | FT | 1.04 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20036-RTN | 2 | 88.34 | FT | 1.41 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20036-RTN | 6 | 265.34 | FT | 4.25 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20077-RTN | 3 | 132.40 | FT | 2.12 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20077-RTN | 10 | 400.23 | FT | 6.40 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-4024 | 69 | 2,933.64 | FT | 46.94 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-5082 | 85 | 3,718.94 | FT | 59.50 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-5293 | 362 | 15,983.03 | FT | 255.73 |
| BEEMAC MID | CASING | 7" 32.00# (0.453wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-5712 | 380 | 16,206.90 | FT | 259.31 |
| BEEMAC MID | MARKER | 7" 32.00# (0.453wt) P110-HC R3 BTC ERW 10FT MARKER | BOOMERANG | PRIME | PO-5082/5474 | | 3.00 | EA | |
| BEEMAC MID | PROTECTOR SET | 8-5/8" 32.00# BTC PROTECTOR SET | NEXTEEL | SCRAP | EPS-19511-RTN | 1 | 45.15 | FT | 0.72 |
| BEEMAC MID | PROTECTOR SET | 8-5/8" BTC HD PROTECTOR SET | QB UNK | SCRAP | PO3806 | | 50.00 | SET | |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | TENSION | INSPECTED | EPS-19429-RTN | 1 | 41.88 | FT | 0.84 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | TENSION | REPAIRABLE | EPS-19649-RTN | | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | TENSION | REPAIRABLE | EPS-19686-RTN | | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-20007-RTN | 2 | 85.16 | FT | 1.70 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | SCRAP | EPS-20060-RTN | 1 | 19.60 | FT | 0.39 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | SCRAP | EPS-20124-RTN | 1 | 19.80 | FT | 0.40 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | RETURN | EPS-20125-RTN | 6 | 246.00 | FT | 4.92 |

4835-8575-8675.3

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | RETURN | EPS-20218-RTN | 1 | 32.90 | FT | 0.66 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | RETURN | EPS-20221-RTN | | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-21415-RTN | 2 | 86.69 | FT | 1.73 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | SCRAP | EPS-21415-RTN | 1 | 43.32 | FT | 0.87 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-21661-RTN | 3 | 129.65 | FT | 2.59 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | PRIME | PO-11216 | (4) | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | PRIME | PO-12948 | 100 | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | PRIME | PO-4022 | | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | PRIME | PO-5099 | | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | SHIN YANG | RETURN | QB UNK | (7) | (304.23) | FT | (6.08) |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | TENSION | RETURN | QB UNK | 7 | 304.23 | FT | 6.08 |
| BEEMAC MID | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | AXIS | RETURN | EPS-21308-RTN | | 1.00 | EA | - |
| BEEMAC MID | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | AXIS | RETURN | EPS-21646-RTN | | 1.00 | EA | - |
| BEEMAC MID | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | AXIS | INSPECTED | PO-7637 | | 1.00 | EA | - |
| BEEMAC MID | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | AXIS | RETURN | EPS-21308-RTN | | 2.00 | EA | - |
| BEEMAC MID | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | AXIS | RETURN | EPS-21646-RTN | | 1.00 | EA | - |
| BEEMAC MID | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | BOOMERANG | INSPECTED | EPT-20217-RTN/6410 | | 1.00 | EA | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | NEXTEEL | INSPECTED | EPS-19491-RTN | 6 | 270.91 | FT | 5.42 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | JESCO | INSPECTED | EPS-19649-RTN | | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BORUSAN | SCRAP | EPS-20043-RTN | 2 | 70.30 | FT | 1.41 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | SCRAP | EPS-20125-RTN | 2 | 13.90 | FT | 0.28 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20218-RTN | 1 | 21.00 | FT | 0.42 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | SCRAP | EPS-20218-RTN | 1 | 36.00 | FT | 0.72 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20351-RTN | 1 | 21.00 | FT | 0.42 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20369-RTN | 1 | 32.60 | FT | 0.65 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20416-RTN | 1 | 20.20 | FT | 0.40 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20483-RTN | 1 | 21.00 | FT | 0.42 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-20487-RTN | 2 | 89.06 | FT | 1.78 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | SCRAP | EPS-20487-RTN | 1 | 43.16 | FT | 0.86 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20489-RTN | 1 | 21.40 | FT | 0.43 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-20489-RTN | 3 | 135.06 | FT | 2.70 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | SCRAP | EPS-20489-RTN | 1 | 21.10 | FT | 0.42 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-20548-RTN | 3 | 135.44 | FT | 2.71 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-20553-RTN | 3 | 136.59 | FT | 2.73 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-20569-RTN | 2 | 90.49 | FT | 1.81 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-20569-RTN | 3 | 92.70 | FT | 1.85 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-20611-RTN | 2 | 91.30 | FT | 1.83 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-20634-RTN | 4 | 181.59 | FT | 3.63 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20634-RTN | 1 | 30.00 | FT | 0.60 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20716-RTN | 1 | 38.10 | FT | 0.76 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20739-RTN | 1 | 33.30 | FT | 0.67 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20742-RTN | 1 | 29.20 | FT | 0.58 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20783-RTN | 1 | 21.00 | FT | 0.42 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20856-RTN | 1 | 29.26 | FT | 0.59 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | REPAIRABLE | EPS-20899-RTN | 1 | 44.75 | FT | 0.90 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20940/20716-RTN | 1 | 42.82 | FT | 0.86 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21000-RTN | | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-21172-RTN | 1 | 29.20 | FT | 0.58 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-21181-RTN | 1 | 31.50 | FT | 0.63 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-21206-RTN | 3 | 129.31 | FT | 2.59 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-21244-RTN | 1 | 28.30 | FT | 0.57 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | INSPECTED | EPS-21307-RTN | 5 | 218.00 | FT | 4.36 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | SCRAP | EPS-21307-RTN | 2 | 87.62 | FT | 1.75 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | INSPECTED | EPS-21308-RTN | 4 | 162.19 | FT | 3.24 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | SCRAP | EPS-21308-RTN | 1 | 43.75 | FT | 0.88 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-21383-RTN | 1 | 29.96 | FT | 0.60 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-21432-RTN | 1 | 27.38 | FT | 0.55 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | INSPECTED | EPS-21646-RTN | 7 | 242.70 | FT | 4.85 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | RETURN | EPS-21687-RTN | 15 | 615.00 | FT | 12.30 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | SEAH | SCRAP | PO2975 | 3 | 124.40 | FT | 2.49 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | SCRAP | PO3153 | 33 | 1,653.17 | FT | 33.06 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | PRIME | PO32223 | | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | PO-4021 | (10) | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | INSPECTED | PO-7764 | 4 | 159.43 | FT | 3.19 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | JESCO | REPAIRABLE | EPS-19536-RTN | 5 | 216.53 | FT | 4.33 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | JESCO | INSPECTED | EPS-19577-RTN | 1 | 43.80 | FT | 0.88 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | JESCO | INSPECTED | EPS-19640-RTN | 7 | 303.60 | FT | 6.07 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | JESCO | REPAIRABLE | EPS-19640-RTN | 2 | 87.14 | FT | 1.74 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | JESCO | INSPECTED | EPS-19649-RTN | 3 | 130.02 | FT | 2.60 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | JESCO | REPAIRABLE | EPS-19694-RTN | 2 | 84.49 | FT | 1.69 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | JESCO | PRIME | QB UNK | | 97.61 | FT | 1.95 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | JESCO | SCRAP | QB UNK | 4 | 108.64 | FT | 2.17 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110 R3 LTC ERW | BOOMERANG | PRIME | EPS-20954-RTN | 1 | 27.84 | FT | 0.56 |
| BEEMAC MID | MARKER | 9-5/8" 40.00# (0.395wt) P110-HC R1 BTC ERW MARKER | BOOMERANG | PRIME | PO-4029/5621 | | 6.00 | EA | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | TMK | INSPECTED | EPS-19782-RTN | 1 | 41.81 | FT | 0.84 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | TMK | REPAIRABLE | EPS-19782-RTN | 7 | 213.77 | FT | 4.28 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20182-RTN | 2 | 88.17 | FT | 1.76 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20217-RTN | 3 | 134.22 | FT | 2.68 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20717-RTN | 1 | 37.50 | FT | 0.75 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20857-RTN | 15 | 615.00 | FT | 12.30 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20935-RTN | 3 | 126.92 | FT | 2.54 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20940-RTN | 5 | 217.54 | FT | 4.35 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20940-RTN | 1 | 41.61 | FT | 0.83 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-21021-RTN | 1 | 41.00 | FT | 0.82 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-21021-RTN | 1 | 21.00 | FT | 0.42 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-21180-RTN | 4 | 175.58 | FT | 3.51 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-21298-RTN | 3 | 130.06 | FT | 2.60 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-21402-RTN | 1 | 30.57 | FT | 0.61 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-4023 | | | FT | - |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BORUSAN | PRIME | QB UNK | 17 | 802.57 | FT | 16.05 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | REPUBLIC TUBE | SCRAP | QB UNK | 3 | 123.00 | FT | 2.46 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | TMK | PRIME | QB UNK | 2 | 125.74 | FT | 2.51 |
| BEEMAC MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | TMK | REPAIRABLE | RTN-25 | 7 | 301.67 | FT | 6.03 |
| BEEMAC MID | PROTECTOR SET | 9-5/8" BTC PROTECTOR SET | NA | PRIME | PI0661 | | 50.00 | SET | |
| BEEMAC MID | PROTECTOR SET | 9-5/8" BTC PROTECTOR SET | QB UNK | SCRAP | PO3806 | | 50.00 | SET | |
| BISON RIG | | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | RUSTAVI | PRIME | PO-5328 | | | FT | - |
| BLKHLS EVN | LINE PIPE | 8-5/8" 16.96# (0.188wt) X52 PSL-2 DRL PEB 14-16 | TEX TUBE | PRIME | PO-5364 | 116 | 5,200.00 | FT | 44.10 |
| BLKHLS EVN | CASING | 8-5/8" 16.96# (0.188wt) X52 PSL-2 DRL PEB 14-16 | TEX TUBE | PRIME | PO-5634 | | 20.00 | FT | 0.17 |
| BOOMERANG | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | PRIME | PO-4025 | | | FT | - |
| BOOMERANG | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | PRIME | PO-5101 | | | FT | - |
| BOOMERANG | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-5287 | | | FT | - |
| BOOMERANG | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-5497 | | | FT | - |
| BOOMERANG | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-5713 | | | FT | - |
| CAST | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | CENTRIC | PRIME | PO2940 | | | FT | - |
| CAST | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | CENTRIC | RETURN | PO2940 | | | FT | - |
| CAST | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | CENTRIC | RETURN | QB UNK | | | FT | - |
| CAST | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | CENTRIC | PRIME | QB UNK | | | FT | - |
| CAST | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | CENTRIC | USED | QB UNK | | | FT | - |
| CM SERVICE | CROSSOVER | 9-5/8" 40.00# (0.395wt) L80-HC BTC BOX X LTC PIN | NA | PRIME | PO3414 | | 2.00 | EA | |
| CM SERVICE | PUP JT | 9-5/8" 40.00# (0.395wt) L80-HC BTC PIN X PIN | VYKSA | PRIME | PO-3186/10051 | | 2.00 | EA | |
| CM SERVICE | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | VYKSA | PRIME | PO3186 | 3 | 123.20 | FT | 2.46 |
| COM RES CO | LINE PIPE | 3-1/2" 10.24# (0.300wt) X52 PSL-2 DRL PEB 14-16 | WHEATLAND | PRIME | 10419/11672 | 65 | 2,927.60 | FT | 15.02 |
| COM RES CO | LINE PIPE | 3-1/2" 10.20# (0.300wt) X52 PSL-2 DRL PEB 14-16 | WHEATLAND | PRIME | PO-10419/11672 | 364 | 16,380.00 | FT | 84.03 |
| COM RES CO | LINE PIPE | 3-1/2" 10.24# (0.300wt) X52 PSL-2 DRL PEB 14-16 | WHEATLAND | PRIME | PO3351 | 37 | 1,665.20 | FT | 8.54 |
| COM RES CO | LINE PIPE | 3-1/2" 10.26# (0.300wt) X52 PSL-2 DRL PEB BARE ERW | WHEATLAND | PRIME | PO-12117 | 299 | 13,455.00 | FT | 69.02 |
| COM RES CO | LINE PIPE | 4-1/2" 8.67# (0.188wt) X52 PSL-2 DRL PEB 14-16 | WHEATLAND | PRIME | 6546/12123 | 82 | 3,702.20 | FT | 16.05 |
| COM RES CO | LINE PIPE | 6-5/8" 12.94# (0.188wt) X52 PSL-2 DRL PEB 14-16 | WHEATLAND | PRIME | 10543/10589 | 28 | 1,199.00 | FT | 7.76 |
| COM RES CO | LINE PIPE | 6-5/8" 12.94# (0.188wt) X52 PSL-2 DRL PEB 14-16 | WHEATLAND | PRIME | 6124/6293 | 37 | 1,665.00 | FT | 10.77 |
| COM RES CO | LINE PIPE | 6-5/8" 12.94# (0.188wt) X52 PSL-2 DRL PEB 14-16 | WHEATLAND | PRIME | 6329/6330 | 56 | 2,522.60 | FT | 16.32 |
| COM RES CO | LINE PIPE | 6-5/8" 18.99# (0.280wt) X52 PSL-2 DRL PEB 14-16 | WHEATLAND | PRIME | 6640/7675 | 8 | 360.00 | FT | 3.42 |
| COM RES NE | LINE PIPE | 12-3/4" 33.41# (0.250wt) X52 PSL-2 DRL PEB 14-16 | TEX TUBE | PRIME | 10542/10591 | 7 | 295.30 | FT | 4.93 |
| COM RES NE | LINE PIPE | 12-3/4" 33.41# (0.250wt) X52 PSL-2 TRL PEB 14-16 | TEX TUBE | PRIME | 3569/3678 | 49 | 2,931.62 | FT | 48.97 |
| COM RES NE | LINE PIPE | 12-3/4" 33.41# (0.250wt) X60 PSL-2 TRL PEB | TENARIS | PRIME | 2506/5237 | 21 | 1,249.50 | FT | 20.87 |
| COM RES NE | LINE PIPE | 12-3/4" 33.41# (0.250wt) X60 PSL-2 TRL PEB | TENARIS | PRIME | 5206/13919 | 36 | 2,015.60 | FT | 33.67 |
| COM RES NE | LINE PIPE | 12-3/4" 33.41# (0.250wt) X60 PSL-2 TRL PEB BARE | TENARIS | PRIME | PO-5206 | 97 | 5,163.59 | FT | 86.26 |
| COM RES NE | LINE PIPE | 12-3/4" 49.61# (0.375wt) X52 PSL-2 TRL PEB BARE | TENARIS | PRIME | PO-6543 | 32 | 1,744.47 | FT | 43.27 |
| COM RES NE | LINE PIPE | 6-5/8" 12.94# (0.188wt) X52 PSL-2 DRL PEB 14-16 | WHEATLAND | PRIME | PO-5118 | 20 | 903.00 | FT | 5.84 |
| COM RES NE | LINE PIPE | 6-5/8" 12.94# (0.188wt) X52 PSL-2 DRL PEB BARE ERW | WHEATLAND | PRIME | PO-5118 | 40 | 1,800.00 | FT | 11.65 |
| COM RES NE | LINE PIPE | 6-5/8" 17.04# (0.250wt) X52 PSL-2 DRL PEB 14-16 | TENARIS | PRIME | 5162/5165 | 1 | 43.30 | FT | 0.37 |
| COM RES NE | LINE PIPE | 8-5/8" 16.96# (0.188wt) X52 PSL-2 DRL PEB 14-16 | TEX TUBE | PRIME | 5119/5125 | 274 | 11,555.10 | FT | 97.99 |
| COM RES NE | LINE PIPE | 8-5/8" 28.58# (0.312wt) X52 PSL-2 DRL PEB 14-16 | WHEATLAND | PRIME | PO3582 | 14 | 540.99 | FT | 7.73 |
| CPS BAYTWN | CASING | 4-1/2" 13.50# (0.290wt) P110-IC R3 TXP BTC SMLS | TENARIS | PRIME | PO-10225 | | 190.79 | FT | 1.29 |
| CPS BAYTWN | CASING | 7-5/8" 29.70# (0.375wt) P110-IC R3 BTC SMLS | TENARIS | PRIME | PO-10225 | 203 | 9,164.81 | FT | 136.10 |
| DEEP WELL | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | PRIME | PO-3507 | 23 | 600.80 | FT | 5.11 |
| DEEP WELL | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | PRIME | PO-3560 | 171 | 6,852.97 | FT | 58.25 |
| DEEP WELL | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | PRIME | PO-3761 | 56 | 3,317.74 | FT | 28.20 |
| DEEP WELL | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPT-3253 | 155 | 6,765.46 | FT | 135.31 |
| DJIR RIG | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | CENTRIC | PRIME | PO-11128 | (6) | | FT | - |
| DJIR RIG | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | TMK | PRIME | PO-6221 | 7 | | FT | - |
| DJIR RIG | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | TENARIS | PRIME | PO2684 | (1) | | FT | - |
| DJIR RIG | CASING | 4-1/2" 11.60# (0.250wt) P110-IC R3 BTC ERW | TENARIS | RETURN | PO-5396 | (2) | | FT | - |
| DJIR RIG | CASING | 4-1/2" 11.60# (0.250wt) P110-IC R3 BTC ERW | TENARIS | PRIME | PO-6211 | 2 | | FT | - |
| DJIR RIG | CASING | 7" 26.00# (0.362wt) J55 R3 LTC ERW | HLD CLARK | PRIME | 10678/10781 | (2) | | FT | - |
| DJIR RIG | CASING | 7" 26.00# (0.362wt) J55 R3 LTC ERW | PARAGON | PRIME | PO-6121 | (4) | | FT | - |
| DJIR RIG | CASING | 7" 26.00# (0.362wt) J55 R3 LTC SMLS | ARCELOR MITTAL | RETURN | PO-6403 | (1) | | FT | - |
| DJIR RIG | CASING | 9-5/8" 36.00# (0.352wt) J55 R2 STC ERW | PARAGON | PRIME | PO-6377 | 1 | | FT | - |
| DROP SHIP | LINE PIPE | 10-3/4" 28.06# (0.250wt) X52 PSL-2 DRL PEB BARE | AXIS | PRIME | PO-7196 | | | FT | - |
| DROP SHIP | TUBING | 2-7/8" 6.50# (0.217wt) J55 R2 EUE BRD ERW | SEAH | PRIME | PO-5069 | | | FT | - |
| DROP SHIP | TUBING | 2-7/8" 6.50# (0.217wt) J55 R2 EUE BRD ERW | KUMKANG | PRIME | PO-5077 | | | FT | - |
| DROP SHIP | COUPLING | 7-5/8" P110-CY BK-HT | NA | NA | PO-5253 | | | EA | |
| DROP SHIP | TUBING | 7-5/8" 29.70# (0.375wt) P110-IC R3 BTC SMLS | TENARIS | PRIME | PO-10225 | | | EA | |
| DROP SHIP | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | SHIN YANG | RETURN | EPS-22925-RTN | 3 | 127.40 | FT | 2.29 |
| DROP SHIP | IPS POLY | POLY 10" DR11 PE4710 50FT | NA | PRIME | PO-11658 | 10 | 500.00 | FT | - |
| DUFFY | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | NA | SCRAP | YLW BAND | 38 | 1,218.81 | FT | 2.86 |
| DUFFY | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD SMLS | TENARIS | INSPECTED | 19804-RTN/BLUE-YLW | 32 | 1,017.98 | FT | 2.39 |
| DUFFY | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY R1 GBCD ERW | CENTRIC | PRIME | 8028/10483 | | 3.00 | EA | |
| DUFFY | PUP JT | 5-1/2" 20.00# (0.361wt) P110-HC GBCD ERW | CENTRIC | PRIME | QB UNK | | 8.00 | EA | |
| DUFFY | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC R1 BK SMLS | BOLY | PRIME | PO-5927 | | 1.00 | EA | |
| DUFFY | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | BOOMERANG | PRIME | 3614/14246 | | 99.00 | EA | |
| DUFFY | PUP JT | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | BOOMERANG | PRIME | 5295/14076 | | 6.00 | EA | |
| DUFFY | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R1 BK SMLS | BOLY | PRIME | PO-5463 | 3 | 20.00 | FT | 0.20 |
| DUFFY | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R1 BK SMLS | REPUBLIC TUBE | PRIME | PO-5929 | 48 | 1,930.86 | FT | 19.31 |
| DUFFY | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | BOOMERANG | RETURN | EPS-23319-RTN | 2 | 84.00 | FT | 0.84 |
| DUFFY | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | CENTRIC | PRIME | PO-7665 | | | FT | - |
| DUFFY | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | CENTRIC | PRIME | PO-8028 | | | FT | - |
| DUFFY | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | CENTRIC | PRIME | PO-8029 | | | FT | - |
| DUFFY | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | CENTRIC | PRIME | PO-8032 | | 5.90 | FT | 0.06 |
| DUFFY | CASING | 7" 26.00# (0.362wt) N80 R3 LTC ERW | AUJ BESTEEL | PRIME | PO3012 | 13 | 585.00 | FT | 7.61 |
| DUFFY | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | HLD CLARK | RETURN | EPS-23277-RTN | 23 | 966.00 | FT | 17.39 |
| DUFFY | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | TENSION | PRIME | PO-10544 | | | FT | - |
| DUFFY | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | SHIN YANG | RETURN | EPS-21333-RTN | 2 | 76.80 | FT | 1.38 |
| DUFFY | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | SHIN YANG | SCRAP | EPS-21333-RTN | 1 | 30.00 | FT | 0.54 |
| DUFFY | CASING | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | RUSTAVI | PRIME | EPS-21860-RTN | 1 | 43.00 | FT | 0.77 |
| ELFARM MID | CASING | 11-3/4" 42.00# (0.333wt) J55 R3 STC ERW | HLD CLARK | SCRAP | PO245B | 2 | 83.38 | FT | 1.75 |
| ELFARM MID | CASING | 11-3/4" 42.00# (0.333wt) J55 R3 STC ERW | BORUSAN | SCRAP | PO3213 | 3 | 136.37 | FT | 2.86 |
| ELFARM MID | CASING | 11-3/4" 42.00# (0.333wt) J55 R3 STC ERW | NEXTEEL | SCRAP | QB UNK | 4 | 181.96 | FT | 3.82 |
| ELFARM MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | HLD CLARK | SCRAP | EPS-18602-RTN | 2 | 85.60 | FT | 2.33 |
| ELFARM MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | CH STEEL | SCRAP | EPS-19194-RTN | | | FT | - |
| ELFARM MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | HALL LONGMORE | SCRAP | EPS-19194-RTN | 3 | 127.68 | FT | 3.48 |
| ELFARM MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-19219-RTN | 2 | 83.40 | FT | 2.27 |

4835-8575-8675.3

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ELFARM MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-19219-RTN | 1 | 48.95 | FT | 1.33 |
| ELFARM MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | HLD CLARK | SCRAP | PO2577 | 1 | 42.70 | FT | 1.16 |
| ELFARM MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | PO2992 | 4 | 181.99 | FT | 4.96 |
| ELFARM MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | CH STEEL | SCRAP | PO3224 | 1 | 42.45 | FT | 1.16 |
| ELFARM MID | CASING | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-18558-RTN | 4 | 170.77 | FT | 5.81 |
| ELFARM MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-CY BTC ERW 10FT | CENTRIC | SCRAP | QB UNK | | 5.00 | EA | |
| ELFARM MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY BTC ERW 10FT | TENARIS | SCRAP | QB UNK | | 6.00 | EA | |
| ELFARM MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | INSPECTED | EPS-19537-RTN | 13 | 568.40 | FT | 4.83 |
| ELFARM MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | SCRAP | EPS-19537-RTN | 1 | 30.71 | FT | 0.26 |
| ELFARM MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC SMLS | CENTRIC | SCRAP | PO2501 | 7 | 389.48 | FT | 3.31 |
| ELFARM MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 XP BTC SMLS | TENARIS | RETURN | QB UNK | 2 | 96.24 | FT | 0.82 |
| ELFARM MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | PRIME | PO-5506 | 1 | 675.14 | FT | 5.74 |
| ELFARM MID | CASING | 5-1/2" 17.00# (0.304wt) P110-R9 R3 BTC SMLS | CENTRIC | PRIME | PO2501 | 68 | 3,107.07 | FT | 26.41 |
| ELFARM MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | CENTRIC | SCRAP | PO2842 | 1 | 40.32 | FT | 0.40 |
| ELFARM MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 GBCD ERW | CENTRIC | SCRAP | QB UNK | 3 | 118.70 | FT | 1.19 |
| ELFARM MID | CASING | 8-5/8" 32.00# (0.352wt) J55 R3 BTC ERW | NEXTEEL | SCRAP | EPT-2543 | 1 | 45.15 | FT | 0.72 |
| ELFARM MID | CASING | 8-5/8" 32.00# (0.352wt) J55 R3 BTC ERW | NEXTEEL | SCRAP | QB UNK | 3 | 136.68 | FT | 2.19 |
| ELFARM MID | CASING | 8-5/8" 32.00# (0.352wt) NEXT-80 R3 BTC ERW | NEXTEEL | SCRAP | PO2764 | 1 | 45.66 | FT | 0.73 |
| ELFARM MID | CASING | 8-5/8" 32.00# (0.352wt) NEXT-80 R3 BTC ERW | NEXTEEL | SCRAP | QB UNK | 1 | 45.71 | FT | 0.73 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | CH STEEL | INSPECTED | EPS-19260-RTN | 5 | 213.60 | FT | 4.27 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | PO2563 | 1 | 42.30 | FT | 0.85 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | NEXTEEL | SCRAP | PO2804 | 3 | 132.41 | FT | 2.65 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | HALL LONGMORE | SCRAP | PO2919 | 4 | 215.50 | FT | 4.31 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | CH STEEL | SCRAP | PO2920 | | | FT | - |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | CH STEEL | PRIME | PO3164 | | | FT | - |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | SCRAP | EPS-18229-RTN | 2 | 86.70 | FT | 1.73 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BORUSAN | SCRAP | PO2077 | 4 | 160.25 | FT | 3.20 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | TENARIS | SCRAP | PO2569 | 3 | 133.68 | FT | 2.67 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | CENTRIC | SCRAP | PO2801 | 2 | 70.87 | FT | 1.42 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | HYUNDAI | SCRAP | PO2909 | 4 | 161.93 | FT | 3.24 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | NEXTEEL | SCRAP | PO3057 | 1 | 41.74 | FT | 0.83 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | BOOMERANG | PRIME | PO-7060 | 44 | 1,814.08 | FT | 36.28 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | JESCO | SCRAP | PO2696 | 1 | 41.47 | FT | 0.83 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | BOLY | SCRAP | PO2999 | 4 | 169.43 | FT | 3.39 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | BOLY | SCRAP | QB UNK | 3 | 119.60 | FT | 2.39 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 LTC SMLS | BOLY | SCRAP | PO2036 | 12 | 545.60 | FT | 10.91 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-IC R3 BTC SMLS | TENARIS | SCRAP | PO2569 | 6 | 270.73 | FT | 5.41 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) L80-IC R3 BTC SMLS | TENARIS | SCRAP | PO2980 | 17 | 742.37 | FT | 14.85 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | AXIS | SCRAP | PO2591 | 5 | 223.12 | FT | 4.46 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | QB UNK | SCRAP | QB UNK | 6 | 271.09 | FT | 5.42 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | US STEEL | SCRAP | PO3037 | 5 | 206.66 | FT | 4.13 |
| ELFARM MID | CASING | 9-5/8" 40.00# (0.395wt) P110-IC R3 BTC SMLS | TENARIS | SCRAP | PO3037 | 1 | 56.07 | FT | 1.12 |
| ELFARM RET | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | NA | REPAIRABLE | QB UNK | 24 | 1,115.57 | FT | 30.40 |
| ELFARM RET | CASING | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | NA | SCRAP | QB UNK | 2 | 76.45 | FT | 2.60 |
| ELFARM RET | MARKER | 5-1/2" 17.00# (0.304wt) P110-CY BTC ERW 10FT | NA | REPAIRABLE | QB UNK | | 4.00 | EA | |
| ELFARM RET | CASING | 5-1/2" 17.00# (0.304wt) P110-R9 R3 BTC SMLS | NA | REPAIRABLE | QB UNK | 21 | 965.02 | FT | 8.20 |
| ELFARM RET | CASING | 8-5/8" 32.00# (0.352wt) NEXT-80 R3 BTC ERW | NA | REPAIRABLE | QB UNK | 1 | 45.38 | FT | 0.73 |
| ELFARM RET | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | NA | REPAIRABLE | QB UNK | 2 | 84.81 | FT | 1.70 |
| ELFARM RET | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | NA | REPAIRABLE | QB UNK | 11 | 520.12 | FT | 10.40 |
| ELFARM RET | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | NA | REPAIRABLE | QB UNK | 3 | 161.01 | FT | 3.22 |
| ELFARM RET | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | NA | REPAIRABLE | QB UNK | 1 | 44.08 | FT | 0.88 |
| ELFARM RET | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC SMLS | NA | REPAIRABLE | QB UNK | 23 | 1,038.56 | FT | 20.77 |
| ELFARM RET | CASING | 9-5/8" 47.00# (0.472wt) P110-HC R3 BTC ERW | NA | REPAIRABLE | QB UNK | 4 | 177.07 | FT | 4.16 |
| FW PIPE TX | CASING | 13-3/8" 48.00# (0.330wt) J55 R3 STC ERW | SHIN YANG | PRIME | PO-10964 | 41 | 1,703.17 | FT | 40.88 |
| FW PIPE TX | CASING | 13-3/8" 48.00# (0.330wt) J55 R3 STC ERW | HLD CLARK | INSPECTED | PO2555 | 5 | 216.00 | FT | 5.18 |
| HUNTING LA | CASING | 5-1/2" 23.00# (0.415wt) P110-CY R3 TLW SMLS | TPCO | INSPECTED | EPS-20012-RTN | | | FT | - |
| HUNTING LA | CASING | 5-1/2" 23.00# (0.415wt) P110-CY R3 TLW SMLS | TPCO | SCRAP | EPS-20012-RTN | | | FT | - |
| IN TRANSIT | CASING | 4-1/2" 11.60# (0.250wt) P110-IC R3 BTC ERW | TENARIS | PRIME | PO-5396 | 1 | | FT | - |
| IN TRANSIT | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | BOOMERANG | RETURN | EPS-21581-RTN | 1 | | FT | - |
| IN TRANSIT | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | SHIN YANG | SCRAP | PO-11644 | (2) | | FT | - |
| IND PIPE | CASING | 7" 25.69# (0.362wt) J55 R-3 PE ERW | NA | SCRAP | PO4053 | 1 | 26.60 | FT | 0.34 |
| IND PIPE | COUPLING | 8-5/8" K55 BTC | NA | PRIME | PO3397 | | 4.00 | EA | |
| IND PIPE | COUPLING | 8-5/8" K55 LTC | NA | PRIME | PO3326 | | 2.00 | EA | |
| IND PIPE | CASING | 8-5/8" 32.00# (0.352wt) J55 R3 BTC ERW | BAKRIE | SCRAP | PO3225 | 5 | 204.95 | FT | 3.28 |
| IND PIPE | PROTECTOR SET | 8-5/8" BTC HD PROTECTOR SET | NA | PRIME | PO3398 | | 4.00 | SET | |
| IOS HOU | CASING | 5" 17.95# (0.362wt) P110-CY HP R3 TORQ SFW | TMK | INSPECTED | EPS-2135-RTN/10771 | 15 | 666.60 | FT | 5.98 |
| IOS HOU | CASING | 5-1/2" 23.00# (0.415wt) P110-CY R3 BK SMLS | REPUBLIC TUBE | RETURN | EPS-19854-RTN | 3 | 124.50 | FT | 1.43 |
| IOS HOU | CASING | 5-1/2" 23.00# (0.415wt) P110-EC R3 TCBC-HT SMLS | NA | NA | QB UNKNOWN | 1 | 33.00 | FT | 0.38 |
| IOS HOU | MARKER | 5-1/2" 17.00# (0.415wt) P110-HC R1 TCBC-HT | NA | NA | QB UNKNOWN | | 1.00 | EA | |
| IOS HOU | CASING | 5-1/2" 23.00# (0.415wt) P110-CY TCBC-HT SMLS | KOPPEL | RETURN | EPS-20064-RTN | 5 | 207.50 | FT | 2.39 |
| IOS HOU | CASING | 5-1/2" 23.00# (0.415wt) P110-R9 R3 CDC-HTQ SMLS | US STEEL | RETURN | EPS-19819-RTN | 3 | 124.50 | FT | 1.43 |
| IOS HOU | CASING | 7" 26.00# (0.362wt) L80 R3 LTC SMLS | TMK | REPAIRABLE | PO3095 | | | FT | - |
| IOS HOU | CASING | 7" 26.00# (0.362wt) L80 R3 LTC SMLS | REPUBLIC TUBE | PRIME | PO-5853 | | | FT | - |
| IOS HOU | CASING | 7" 26.00# (0.362wt) L80 R3 LTC SMLS | REPUBLIC TUBE | PRIME | PO-6014 | | | FT | - |
| IOS HOU | CASING | 7" 26.00# (0.362wt) L80-HC R3 FLUSHMAX SMLS | TMK | REPAIRABLE | 3095/5883 | | | FT | - |
| IOS HOU | CASING | 7" 26.00# (0.362wt) L80-HC R3 FLUSHMAX SMLS | REPUBLIC TUBE | PRIME | 5853/5883 | | | FT | - |
| IOS HOU | CASING | 7" 26.00# (0.362wt) L80-HC R3 FLUSHMAX SMLS | REPUBLIC TUBE | PRIME | 6014/5883 | | | FT | - |
| IOS HOU | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | HLD CLARK | RETURN | EPS-19788-RTN | 2 | 83.00 | FT | 1.66 |
| IOS MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC SMLS | TENARIS | INSPECTED | EPS-19151-RTN. | 1 | 73.38 | FT | 0.62 |
| IOS MID | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 XP BTC SMLS | TENARIS | RETURN | QB UNK | | 4.58 | FT | 0.04 |
| IOS MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R1 TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21081-RTN | 28 | 1,240.58 | FT | 12.41 |
| IOS MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21111-RTN | | 3.00 | EA | |
| IOS MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R1 TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20028-RTN | 1 | 35.39 | FT | 0.35 |
| IOS MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R1 TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20028-RTN | | | FT | - |
| KB HOU | PUP JT | 4-1/2" 13.50# (0.290wt) P110-ICY 10FT MI PANTHER | TENARIS | SCRAP | PO-3130/9727-SCRAP | | 1.00 | EA | |
| KB HOU | MARKER | 4-1/2" 13.50# (0.290wt) P110-ICY R1 MI PANTHER | TENARIS | SCRAP | 3130/9527 | | 1.00 | EA | |
| KB HOU | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 MI PANTHER | TENARIS | SCRAP | 3130/10315 | (1) | 12.90 | FT | 0.09 |
| KB HOU | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | REPAIRABLE | PO3130 | (1) | 40.10 | FT | 0.27 |
| KB HOU | CROSSOVER | 5-1/2" 20.00# (0.361wt) P110-HC DWC PIN X MI PIN | BENTELER | PRIME | EPS-21844-001 | | 1.00 | EA | |
| KB HOU | CROSSOVER | 5-1/2" 20.00# (0.361wt) P110-HC DWC PIN X MI PIN | BENTELER | PRIME | PO-9564 | | 1.00 | EA | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| K8 HOU | PUP JT | 5-1/2" 20.00# (0.361wt) P110-HC 10FT MJ PANTHER | BENTELER | PRIME | PO-9564 | | 4.00 | EA | |
| K8 HOU | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC R1 MJ PANTHER MS | BENTELER | PRIME | PO-10961 | | 3.00 | EA | |
| K8 HOU | CASING | 5-1/2" 23.00# (0.415wt) P110-HC R3 TCBC-HT ERW | TUBOS REUNIDOS | REPAIRABLE BOX | PO-3511 | 1 | 40.10 | FT | 0.46 |
| K8 HOU | CROSSOVER | 7" 32.00# (0.453wt) P110-CY DQX BOX x 5-1/2" 20# | TMK | PRIME | PO-12375 | | 2.00 | EA | |
| K8 HOU | CASING | 7" 32.00# (0.453wt) P110-CY R3 PE SMLS | TMK | PRIME | PO-7993 | 2 | 78.46 | FT | 1.26 |
| KJ CONSTR | TUBING | 2-7/8" 6.50# (0.217wt) J55 R2 EUE BRD ERW | HUSTEEL | PRIME | PO-10772 | 2 | 32.12 | FT | 0.10 |
| KJ CONSTR | TUBING | 2-7/8" 6.50# (0.217wt) J55 R2 EUE BRD ERW | SEAH VINA | PRIME | PO-11764 | 29 | 975.61 | FT | 3.17 |
| KJ CONSTR | TUBING | 3-1/2" 9.30# (0.254wt) J55 R2 EUE BRD ERW | SEAH VINA | PRIME | PO-10025 | 1 | 33.21 | FT | 0.15 |
| KJ CONSTR | TUBING | 3-1/2" 9.30# (0.254wt) J55 R2 EUE BRD SMLS | NIKO TUBE | PRIME | PO-10773 | 2 | 79.72 | FT | 0.37 |
| KJ CONSTR | TUBING | 3-1/2" 9.30# (0.254wt) J55 R2 EUE BRD SMLS | PERVOURALSK | PRIME | PO-11695 | 12 | 390.25 | FT | 1.81 |
| LARAMIE | CASING | 4-1/2" 11.60# (0.250wt) P110-IC R3 BTC ERW | TENARIS | PRIME | PO2684 | | | FT | - |
| LARAMIE | CASING | 4-1/2" 11.60# (0.250wt) P110-IC R3 BTC ERW | TENARIS | PRIME | PO2684 | | | FT | - |
| LUNDVALL | LINE PIPE | 10-3/4" 28.00# (0.250wt) X65 PSL-2 PE PEB ERW | DURA BOND | PRIME | 9494/10054 | | | FT | - |
| LUNDVALL | LINE PIPE | 10-3/4" 40.52# (0.365wt) X52 PSL-2 DRL PEB 14-16 | AXIS | PRIME | 11618/11655 | 14 | 628.30 | FT | 12.73 |
| LUNDVALL | TUBING | 2-3/8" 4.70# (0.190wt) J55 R2 EUE BRD ERW | HUSTEEL | REPAIRABLE | EPS-22603-RTN | 1 | 32.60 | FT | 0.08 |
| LUNDVALL | TUBING | 2-3/8" 4.70# (0.190wt) J55 R2 EUE BRD ERW | HUSTEEL | RETURN | EPS-22603-RTN | 30 | 998.92 | FT | 2.35 |
| LUNDVALL | TUBING | 2-3/8" 4.70# (0.190wt) J55 R2 EUE BRD ERW | HUSTEEL | REPAIRABLE | EPS-23018-RTN | 1 | 32.60 | FT | 0.08 |
| LUNDVALL | TUBING | 2-3/8" 4.70# (0.190wt) J55 R2 EUE BRD ERW | NEXTEEL | RETURN | EPS-22929-RTN | (1) | | FT | - |
| LUNDVALL | TUBING | 2-3/8" 4.70# (0.190wt) J55 R2 EUE BRD ERW | HUSTEEL | RETURN | EPS-23041-RTN | 13 | | FT | - |
| LUNDVALL | TUBING | 2-3/8" 4.70# (0.190wt) J55 R2 EUE BRD ERW | HUSTEEL | RETURN | EPS-23043-RTN | 10 | 315.20 | FT | 0.74 |
| LUNDVALL | TUBING | 2-3/8" 4.70# (0.190wt) J55 R2 EUE BRD ERW | HUSTEEL | PRIME | PO-10402 | | | FT | - |
| LUNDVALL | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | NA | USED | EPS-23327-001. | 41 | 1,338.20 | FT | 3.14 |
| LUNDVALL | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | HUSTEEL | PRIME | PO-10376 | (43) | | FT | - |
| LUNDVALL | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | HUSTEEL | RETURN | PO-10516 | 14 | 456.00 | FT | 1.07 |
| LUNDVALL | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | BOOMERANG | PRIME | 22556/13824 | | 11.00 | EA | |
| LUNDVALL | PUP JT | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | BOOMERANG | PRIME | 22381/13824 | | 1.00 | EA | |
| LUNDVALL | PUP JT | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | CENTRIC | PRIME | 6961/9190 | | 1.00 | EA | |
| LUNDVALL | PUP JT | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | CENTRIC | PRIME | 8029/10252 | | 1.00 | EA | |
| LUNDVALL | PUP JT | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | CENTRIC | PRIME | PO-8268 | | 1.00 | EA | |
| LUNDVALL | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | CENTRIC | PRIME | 8825/13975 | 4 | 5.00 | FT | 0.05 |
| LUNDVALL | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | BOOMERANG | PRIME | PO-3614 | 44 | 1,656.07 | FT | 16.56 |
| LUNDVALL | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | TENSION | PRIME | 11152/12155 | (9) | | FT | - |
| LUNDVALL | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | TENSION | REPAIRABLE | EPS-22956-RTN | 1 | 41.80 | FT | 0.75 |
| LUNDVALL | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | SHIN YANG | PRIME | PO-11644 | 15 | | FT | - |
| LUNDVALL | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC SMLS | TENARIS | PRIME | EPS-22964-RTN | 20 | 853.35 | FT | 15.36 |
| MCCLATCHY | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 GBCD ERW | JESCO | RETURN | PO-11706 | 3,041 | 134,630.14 | FT | 1,144.36 |
| MCCLATCHY | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | PRIME | PO-9464 | 1 | 94.97 | FT | 1.90 |
| MCIP CORP | LINE PIPE | 12-3/4" 33.41# (0.250wt) X52 PSL-2 PEB 14-16 | FORZA | PRIME | 3688/11254 | 823 | 33,500.60 | FT | 559.63 |
| MCIP CORP | LINE PIPE | 12-3/4" 33.41# (0.250wt) X52 PSL-2 DRL PEB 14-16 | AXIS | PRIME | PO3374/PO-10306 | 167 | 8,350.00 | FT | 139.49 |
| MCIP CORP | LINE PIPE | 12-3/4" 37.46# (0.281wt) X52 PSL-2 DRL PEB ERW | TEX TUBE | PRIME | PO-11643 | | 1.00 | FT | 0.02 |
| MCIP CORP | LINE PIPE | 12-3/4" 49.61# (0.375wt) X52 PSL-2 DRL PEB 14-16 | FORZA | PRIME | 10344/10358 | 1 | 44.50 | FT | 1.10 |
| MCIP CORP | LINE PIPE | 12-3/4" 49.61# (0.375wt) X52 PSL-2 DRL PEB BARE | AXIS | PRIME | PO-8856 | 4 | 241.38 | FT | 5.99 |
| MCIP CORP | LINE PIPE | 16" 42.09# (0.250wt) X52 PSL-2 DRL PEB 14-16 MILS | AXIS | PRIME | 3275/10308 | 472 | 23,597.70 | FT | 496.61 |
| MCIP CORP | LINE PIPE | 16" 62.64# (0.375wt) X52 PSL-2 DRL PEB BARE ERW | TEX TUBE | PRIME | PO-5121 | | | FT | - |
| MCIP CORP | LINE PIPE | 16" 62.64# (0.375wt) X52 PSL-2 DRL PEB BARE ERW | AXIS | PRIME | PO-5228 | | | FT | - |
| MCIP CORP | LINE PIPE | 16" 62.64# (0.375wt) X65 PSL-2 DRL PEB BARE ERW | TENARIS | PRIME | PO-5212 | | | FT | - |
| MCIP CORP | LINE PIPE | 16" 62.64# (0.375wt) X65 PSL-2 DRL PEB BARE ERW | TENARIS | PRIME | PO-5226 | | | FT | - |
| MCIP CORP | LINE PIPE | 3-1/2" 10.26# (0.300wt) X52 PSL-2 DRL PEB 14-16 | TEX TUBE | PRIME | PO-12118/12130 | 144 | 1,984.40 | FT | 10.18 |
| MCIP CORP | LINE PIPE | 3-1/2" 10.26# (0.300wt) X52 PSL-2 DRL PEB BARE ERW | TEX TUBE | PRIME | PO-12118 | 175 | 7,817.30 | FT | 40.10 |
| MCIP CORP | LINE PIPE | 3-1/2" 14.34# (0.438wt) X52 PSL-2 DRL PEB BARE | ARCELOR MITTAL | PRIME | PO-3743 | | 0.24 | FT | 0.00 |
| MCIP CORP | LINE PIPE | 4-1/2" 10.80# (0.237wt) X52 PSL-2 DRL PEB 14-16 | TEX TUBE | PRIME | 11510/11650 | 59 | 2,685.60 | FT | 14.50 |
| MCIP CORP | LINE PIPE | 4-1/2" 10.80# (0.237wt) X52 PSL-2 DRL PEB 14-16 | TEX TUBE | PRIME | 12052/12060 | 13 | 568.10 | FT | 3.07 |
| MCIP CORP | LINE PIPE | 4-1/2" 10.80# (0.237wt) X52 PSL-2 DRL PEB BARE ERW | TTP | SCRAP | PO-8768-REJ | 1 | 42.00 | FT | 0.23 |
| MCIP CORP | LINE PIPE | 6-5/8" 17.04# (0.250wt) X52 PSL-2 DRL PEB 14-16 | FORZA | PRIME | PO-11860-REVAL | 1,489 | 60,571.78 | FT | 516.07 |
| MCIP CORP | LINE PIPE | 6-5/8" 18.99# (0.280wt) X52 PSL-2 DRL PEB 14-16 | TEX TUBE | PRIME | 11515/11652 | 29 | 1,307.90 | FT | 12.42 |
| MCIP CORP | LINE PIPE | 6-5/8" 18.99# (0.280wt) X52 PSL-2 DRL PEB 14-16 | TEX TUBE | PRIME | 11515/11651 | 29 | 1,307.90 | FT | 12.42 |
| MCIP CORP | LINE PIPE | 6-5/8" 19.68# (0.219wt) X52 PSL-2 DRL PEB 14-16 | PYTCO | PRIME | 5842/6738 | | 80.26 | FT | 0.79 |
| MCIP CORP | LINE PIPE | 8-5/8" 28.58# (0.322wt) X52 PSL-2 DRL PEB 14-16 | FORZA | PRIME | 11272/11653 | 3 | 155.10 | FT | 2.22 |
| MCIP CORP | LINE PIPE | 8-5/8" 28.58# (0.322wt) X52 PSL-2 DRL PEB 14-16 | FORZA | PRIME | PO-5844/5094 | 11 | 450.20 | FT | 6.43 |
| MCIP CORP | LINE PIPE | 8-5/8" 28.58# (0.322wt) X52 PSL-2 DRL PEB 14-16 | TEX TUBE | PRIME | 11272/11654 | 26 | 1,172.60 | FT | 16.76 |
| MCIP CORP | LINE PIPE | 8-5/8" 28.58# (0.322wt) X52 PSL-2 DRL PEB BARE ERW | FORZA | PRIME | PO-6083 | 44 | 1,793.04 | FT | 25.62 |
| MM WELDING | TUBING | 1-1/2" 2.76# (0.145wt) J55 R2 EUE 10RD ERW | SEAH | RETURN | PO3203 | 15 | 477.00 | FT | 0.66 |
| MM WELDING | TUBING | 1-1/2" 2.76# (0.145wt) J55 R2 EUE 10RD ERW | HYUNDAI | PRIME | PO3775 | | (2,615.30) | FT | (3.61) |
| MM WELDING | TUBING | 1-1/2" 2.76# (0.145wt) J55 R2 EUE 10RD ERW | TMK | PRIME | PO3775 | 16 | 2,615.30 | FT | 3.61 |
| MM WELDING | TUBING | 1-1/2" 2.76# (0.145wt) J55 R2 EUE 10RD ERW | TMK | RETURN | PO3775 | 5 | 157.30 | FT | 0.22 |
| MM WELDING | TUBING | 1-1/2" 2.76# (0.145wt) J55 R2 EUE 10RD ERW | TMK | SCRAP | PO-3775. | 16 | 511.80 | FT | 0.71 |
| MM WELDING | TUBING | 1-1/2" 2.76# (0.145wt) J55 R2 EUE 10RD ERW | TEJAS TUBULAR | SCRAP | PO-5363*1 | 3 | 98.20 | FT | 0.14 |
| MM WELDING | TUBING | 1-1/2" 2.76# (0.145wt) J55 R2 EUE 10RD ERW | TEJAS TUBULAR | RETURN | PO-5363*3 | 10 | 304.50 | FT | 0.42 |
| MM WELDING | TUBING | 1-1/2" 2.76# (0.145wt) J55 R2 EUE 10RD ERW | TEJAS TUBULAR | SCRAP | PO-5363*4 | 151 | 4,940.70 | FT | 6.82 |
| MM WELDING | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | BOOMERANG | PRIME | PO-5003 | (5) | | FT | - |
| MM WELDING | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | SEAH | PRIME | Q8 UNK | (75) | | FT | - |
| MM WELDING | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | BOOMERANG | SCRAP | Q8 UNK | (31) | (627.80) | FT | (1.48) |
| MM WELDING | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | BOOMERANG | SCRAP | Q8 UNK | 3 | 228.26 | FT | 0.54 |
| MM WELDING | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | HLD CLARK | SCRAP | Q8 UNK | 1 | 32.40 | FT | 0.08 |
| MM WELDING | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | HUSTEEL | SCRAP | Q8 UNK | 9 | 294.60 | FT | 0.69 |
| MM WELDING | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | HYUNDAI | SCRAP | Q8 UNK | 2 | 72.54 | FT | 0.17 |
| MM WELDING | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | TENARIS | INSPECTED | RTN-002 | 1 | 34.93 | FT | 0.08 |
| MM WELDING | CASING | 4-1/2" 11.60# (0.250wt) L80 R3 LTC SMLS | BOLY | SCRAP | Q8 UNK | 1 | 25.61 | FT | 0.15 |
| MM WELDING | MARKER | 4-1/2" 11.60# (0.250wt) NEXT-80 R1 LTC ERW MARKER | Q8 UNK | SCRAP | Q8 UNK | | 1.00 | EA | |
| MM WELDING | CASING | 4-1/2" 11.60# (0.250wt) NEXT-80 R3 LTC ERW | NEXTEEL | SCRAP | Q8 UNK | 1 | 45.00 | FT | 0.26 |
| MM WELDING | CASING | 4-1/2" 11.60# (0.250wt) P110 R3 LTC ERW | TENARIS | SCRAP | RTN-001 | 1 | 17.00 | FT | 0.10 |
| MM WELDING | CASING | 4-1/2" 11.60# (0.250wt) P110-IC R3 LTC ERW | TENARIS | SCRAP | PO-5076. | 5 | 212.50 | FT | 1.23 |
| MM WELDING | CASING | 4-1/2" 11.60# (0.250wt) P110-IC R3 BTC ERW | TENARIS | SCRAP | Q8 UNK | (19) | | FT | - |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | TENARIS | RETURN | EPS-19758-RTN | 5 | 209.90 | FT | 2.52 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | HALL LONGMORE | SCRAP | EPS-2005S--RTN | 2 | 89.20 | FT | 1.07 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | SHIN YANG | INSPECTED | PO-2039 | 2 | 83.40 | FT | 1.00 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | TENSION | SCRAP | PO-2039 | 1 | 41.20 | FT | 0.49 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | TUPER | INSPECTED | PO-2349 | 4 | 164.00 | FT | 1.97 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | TUPER | SCRAP | PO-2349 | 7 | 295.60 | FT | 3.55 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | TENARIS | PRIME | PO-2686 | 2 | 89.20 | FT | 1.07 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | TENARIS | RETURN | PO-2686 | 15 | 654.10 | FT | 7.85 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | TENARIS | SCRAP | PO-2686 | 1 | 42.40 | FT | 0.51 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | HLD CLARK | RETURN | PO-3268 | 3 | 126.60 | FT | 1.52 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | NEXTEEL | INSPECTED | PO-3488 | 1 | 42.40 | FT | 0.51 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | NEXTEEL | PRIME | PO-3488 | 7 | 296.20 | FT | 3.55 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | NEXTEEL | SCRAP | PO-3488 | 4 | 167.80 | FT | 2.01 |
| MM WELDING | CASING | 8-5/8" 24.00# (0.264wt) J55 R3 STC ERW | HLD CLARK | PRIME | Q8 UNK | 3 | 42.60 | FT | 0.51 |
| MM WELDING | CASING | 8-5/8" 28.00# (0.304wt) J55 R3 LTC ERW | HLD CLARK | PRIME | Q8 UNK | (3) | (42.60) | FT | (0.51) |
| MM WELDING | CASING | 8-5/8" 28.00# (0.304wt) J55 R3 LTC ERW | EVRAZ | PRIME | PO-2481 | 21 | 985.49 | FT | 13.80 |
| MM WELDING | CASING | 8-5/8" 28.00# (0.304wt) J55 R3 LTC ERW | EVRAZ | RETURN | PO-2481 | 10 | 449.30 | FT | 6.29 |
| MM WELDING | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | CH STEEL | PRIME | PO3795 | (11) | (455.42) | FT | (8.20) |
| MM WELDING | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | HLD CLARK | PRIME | PO3795 | 10 | 455.42 | FT | 8.20 |
| MM WELDING | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | PARAGON | PRIME | PO-4019 | (3) | | FT | - |
| MM WELDING | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | PARAGON | REJECT | PO-4019~1 | 2 | 86.00 | FT | 1.55 |
| MM WELDING | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | PARAGON | N/SCRAP | PO-4019~1 | 5 | 217.40 | FT | 3.91 |
| MM WELDING | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC SMLS | RUSTAVI | RETURN | PO-5325/5327/5328 | 9 | 353.00 | FT | 6.35 |
| NOV EDMOND | TUBING | 3-1/2" 9.30# (0.254wt) J55 R2 EUE BRD TK-70 SMLS | INTERPIPE | PRIME | 5492/5495 | (159) | | FT | - |
| NOV EDMOND | CASING | 10-3/4" 11.34# (0.250wt) J55 R3 PE ERW | SEAH VINA | PRIME | PO-8237 | (3) | | FT | - |
| NOV WELLB | CASING | 10-3/4" 40.50# (0.350wt) J55 R3 BTC ERW | CORINTH | PRIME | PO-11122 | (1) | | FT | - |
| NOV WELLB | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | TMK | INSPECTED | EPS-19381-RTN | | | FT | - |
| NOV WELLB | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | NA | INSPECTED | EPS-19771-RTN | | | FT | - |
| NOV WELLB | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | PRIME | EPS-20195-RTN | 1 | 22.84 | FT | 0.62 |
| NOV WELLB | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | TMK | RETURN | PO3343 | | | FT | - |
| NOV WELLB | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | PRIME | PO3632 | | | FT | - |
| NOV WELLB | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 STC ERW | PARAGON | RETURN | EPS-20537-RTN | 2 | 88.00 | FT | 2.40 |
| NOV WELLB | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | BOOMERANG | SCRAP | PO-5003 | 16 | 506.60 | FT | 1.19 |
| NOV WELLB | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | TUPER | SCRAP | PO-8825 | 2 | 65.80 | FT | 0.15 |
| NOV WELLB | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | TENARIS | PRIME | EPS-20097-RTN | | | FT | - |
| NOV WELLB | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | TENARIS | PRIME | PO3312 | | | FT | - |
| NOV WELLB | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | BOOMERANG | PRIME | PO3566 | | | FT | - |
| NOV WELLB | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | CENTRIC | PRIME | PO-3782 | (40) | | FT | - |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) J55 R3 LTC ERW | HLD CLARK | PRIME | PO-5004 | 21 | 924.00 | FT | 5.36 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) L80 R3 LTC ERW | EVRAZ | INSPECTED | PO-2079 | 1 | 45.15 | FT | 0.26 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) L80 R3 LTC SMLS | BOLY | INSPECTED | EPT-2780.TTL | 1 | 16.95 | FT | 0.10 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) NEXT-80 R3 LTC ERW | NEXTEEL | INSPECTED | PO-8249 | 2 | 81.35 | FT | 0.47 |
| NOV WELLB | PUP JT | 4-1/2" 11.60# (0.250wt) P110-HC R1 LTC SMLS PUP JT | TENARIS | INSPECTED | PO-13192.01 | | 4.00 | EA | - |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | TMK | USED | 22517-22737-TIE BACK | 5 | 220.00 | FT | 1.28 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | TMK | USED | EPS-21561-TIE BACK | 12 | 510.92 | FT | 2.96 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | TMK | SCRAP | EPS-22467-TIE BACK | 1 | 43.52 | FT | 0.25 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | TMK | USED | EPS-22467-TIE BACK | 128 | 5,507.28 | FT | 31.94 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | TMK | PRIME | EPS-22472-RTN | 123 | 5,287.45 | FT | 30.67 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | TMK | SCRAP | EPS-22472~RTN | 1 | 44.80 | FT | 0.26 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | TMK | SCRAP | EPS-22517~RTN | 2 | 89.64 | FT | 0.52 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | TMK | USED | EPS-22517-TIE BACK | 52 | 2,330.33 | FT | 13.52 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 LTC ERW | TMK | SCRAP | EPS-22518~RTN | 2 | 89.42 | FT | 0.52 |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 LTC SMLS | BOLY | SCRAP | Q8 UNK | (5) | | FT | - |
| NOV WELLB | PUP JT | 4-1/2" 11.60# (0.250wt) P110-IC BTC ERW | TENARIS | PRIME | 2114/10852 | | | EA | |
| NOV WELLB | PUP JT | 4-1/2" 11.60# (0.250wt) P110-IC BTC ERW | TENARIS | PRIME | 2684/6857 | | | EA | |
| NOV WELLB | CASING | 4-1/2" 11.60# (0.304wt) P110-IC R3 BTC ERW | TENARIS | SCRAP | PO-5396 | 1 | 42.33 | FT | 0.25 |
| NOV WELLB | CASING | 5-1/2" 17.00# (0.304wt) P110 R3 LTC ERW | TENARIS | SCRAP | EPS-21154-RTN | 1 | 41.81 | FT | 0.36 |
| NOV WELLB | CASING | 5-1/2" 17.00# (0.304wt) P110 R3 LTC ERW | TENARIS | PRIME | PO-3807 | (117) | | FT | - |
| NOV WELLB | MARKER | 5-1/2" 17.00# (0.304wt) P110-HC R1 LTC ERW MARKER | CENTRIC | RETURN | PO-2666 | | 1.00 | EA | - |
| NOV WELLB | CASING | 5-1/2" 17.00# (0.304wt) P110-IC R3 LTC ERW | TENARIS | PRIME | EPS-19771-RTN | 1 | 42.10 | FT | 0.36 |
| NOV WELLB | CASING | 5-1/2" 17.00# (0.304wt) P110-IC R3 LTC ERW | TENARIS | PRIME | PO3427 | (673) | | FT | - |
| NOV WELLB | CASING | 5-1/2" 17.00# (0.304wt) P110-ICY R3 LTC SMLS | TENARIS | PRIME | PO2906 | (1) | | FT | - |
| NOV WELLB | MARKER | 7" 23.00# (0.317wt) J55 R1 LTC ERW MARKER | CH STEEL | PRIME | PO-3163 | | 1.00 | EA | - |
| NOV WELLB | CASING | 7" 26.00# (0.362wt) J55 R3 LTC ERW | PARAGON | PRIME | PO-6123 | (3) | | FT | - |
| NOV WELLB | CASING | 7" 26.00# (0.362wt) L80 R3 LTC ERW | AJU BESTEEL | INSPECTED | EPS-20133-RTN | | | FT | - |
| NOV WELLB | CASING | 7" 26.00# (0.362wt) L80 R3 LTC ERW | AJU BESTEEL | RETURN | EPS-20133-RTN | | | FT | - |
| NOV WELLB | CASING | 7" 26.00# (0.362wt) L80-HC R3 LTC ERW | AJU BESTEEL | PRIME | PO3462 | 5 | | FT | - |
| NOV WELLB | CASING | 7" 26.00# (0.362wt) L80-HC R3 LTC ERW | REPUBLIC TUBE | PRIME | PO-5110 | | | FT | - |
| NOV WELLB | PUP JT | 9-5/8" 36.00# (0.352wt) J55 R1 LTC ERW PUP JT | TENSION | PRIME | 2956/9191 | | 2.00 | EA | - |
| NOV WELLB | MARKER | 9-5/8" 36.00# (0.352wt) J55 R1 LTC ERW MARKER | SHIN YANG | INSPECTED | EPS-20224-RTN | | 1.00 | EA | - |
| NOV WELLB | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | PARAGON | PRIME | PO-6377 | (3) | | FT | - |
| NOV WELLB | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 STC ERW | SHIN YANG | PRIME | EPS-21643-RTN | 1 | | FT | - |
| NOV WELLB | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 STC ERW | BOOMERANG | PRIME | PO3311 | (123) | | FT | - |
| NOV WELLB | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 STC ERW | AXIS | PRIME | PO-3463 | (94) | | FT | - |
| NOV WELLB | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC SMLS | RUSTAVI | PRIME | PO2562 | 4 | | FT | - |
| OFSI HOU | CASING | 5" 17.95# (0.362wt) P110-HC R3 ULTRA SF SMLS | ILJIN | PRIME | PO2766 | | | FT | - |
| OFSI HOU | CASING | 5" 17.95# (0.362wt) P110-HC R3 ULTRA SF SMLS | TMK | REPAIRABLE | PO2774 | 6 | 250.00 | FT | 2.24 |
| PARAGON | CASING | 9-5/8" 40.00# (0.395wt) K55-HC R3 LTC ERW | PARAGON | PRIME | PO-4047~REVAL | 243 | 10,338.62 | FT | 206.77 |
| PATRIOT | CROSSOVER | 5-1/2" 17.00# (0.304wt) P110-CY BXHT BOX X GBCD | CENTRIC | PRIME | 11706/14228 | | 2.00 | EA | - |
| PATRIOT | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21111-RTN | 16 | 782.28 | FT | 7.82 |
| PATRIOT | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21111-RTN | | 1.00 | EA | - |
| PATRIOT | CASING | 7" 31.70# (0.453wt) P110-CY R3 PE SMLS | EVRAZ | PRIME | PO-11548 | 355 | 14,567.81 | FT | 230.90 |
| PATRIOT | PUP JT | 7" 32.00# (0.453wt) P110-CY CYT BK-HT SMLS | EVRAZ | PRIME | 11542/11576/11885 | | 1.00 | EA | - |
| PATRIOT | CROSSOVER | 7" 32.00# (0.453wt) P110-CY BK BOX X 5-1/2" | TMK | RETURN | EPS-22819-RTN | | 2.00 | EA | - |
| PATRIOT | CROSSOVER | 7" 32.00# (0.453wt) P110-CY BK-HT BOX X 5-1/2" | TMK | PRIME | PO-11639 | | 2.00 | EA | - |
| PATRIOT | PUP JT | 7" 32.00# (0.453wt) P110-CY F1 BK-HT SMLS | EVRAZ | PRIME | 11542/12192 | | 1.00 | EA | - |
| PATRIOT | CASING | 7" 32.00# (0.453wt) P110-CY R3 BK-HT SMLS | EVRAZ | PRIME | 11548/12188 | 93 | 3,952.50 | FT | 63.24 |
| PETROSMITH | TUBING | 2-3/8" 4.70# (0.190wt) J55 R2 EUE BRD ERW | ROBOR | PRIME | PO2593 | 13 | 343.04 | FT | 0.81 |
| PETROSMITH | TUBING | 2-3/8" 4.70# (0.190wt) J55 R2 EUE BRD ERW | HYUNDAI | PRIME | PO4006 | 55 | 1,784.04 | FT | 4.19 |
| PETROSMITH | TUBING | 2-3/8" 4.70# (0.190wt) J55 R2 EUE BRD ERW | HUSTEEL | PRIME | PO-6381 | 194 | 6,329.92 | FT | 14.88 |
| PETROSMITH | TUBING | 2-7/8" 6.50# (0.190wt) L80 R2 EUE BRD SMLS | PERVOURALSK | PRIME | PO-7622 | 127 | 4,132.19 | FT | 13.43 |
| PETROSMITH | CASING | 4-1/2" 11.60# (0.250wt) J55 R3 LTC SMLS | TENARIS | PRIME | PO-5185 | 28 | 1,237.24 | FT | 7.18 |
| PINNACLE | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC SMLS | RUSTAVI | PRIME | PO-5328 | 2 | | FT | - |
| PRECISION | CASING | 10-3/4" 40.50# (0.350wt) J55 R3 BTC ERW | CORINTH | INSPECTED | EPS-21108-RTN | 6 | 261.80 | FT | 5.30 |
| PRECISION | CASING | 10-3/4" 40.50# (0.350wt) J55 R3 BTC ERW | CORINTH | INSPECTED | EPS-21774-RTN | 3 | 118.40 | FT | 2.40 |

| Company | Product | Description | Manufacturer | Condition | Reference | Qty | Value | Unit | Amount |
|---|---|---|---|---|---|---|---|---|---|
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-21918-RTN | 1 | 20.00 | FT | 0.46 |
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SHIN YANG | REJECT | EPS-22009-RTN | 1 | 27.00 | FT | 0.61 |
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-22128-RTN | 1 | 28.90 | FT | 0.66 |
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-22270-RTN | 1 | 40.83 | FT | 0.93 |
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-22270-RTN | 1 | 27.30 | FT | 0.62 |
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SALZGITTER MANNESMAN | RETURN | EPS-22423-RTN | 1 | 31.00 | FT | 0.71 |
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-22423-RTN | 4 | 168.80 | FT | 3.84 |
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-22681-RTN | 5 | 211.70 | FT | 4.82 |
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SHIN YANG | REJECT | EPS-22681-RTN | 1 | 31.00 | FT | 0.71 |
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-22681-RTN | 2 | 81.40 | FT | 1.85 |
| PRECISION | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-22681-RTN | 3 | 126.00 | FT | 2.87 |
| PRECISION | CASING | 11-3/4" 42.00# (0.333wt) K55 R3 STC SMLS | RUSTAVI | INSPECTED | RTN-101 | 23 | 887.00 | FT | 18.63 |
| PRECISION | CASING | 11-3/4" 42.00# (0.333wt) K55 R3 STC SMLS | RUSTAVI | REPAIRABLE | RTN-102 | 31 | 1,189.00 | FT | 24.97 |
| PRECISION | CASING | 11-3/4" 42.00# (0.333wt) K55 R3 STC SMLS | RUSTAVI | RETURN | RTN-103 | 9 | 378.00 | FT | 7.94 |
| PRECISION | CASING | 11-3/4" 42.00# (0.333wt) K55 R3 STC SMLS | RUSTAVI | SCRAP | RTN-104 | 11 | 373.00 | FT | 7.83 |
| PRECISION | COUPLING | 13-3/8" K55 BTC | NA | PRIME | PO-5964 | | 229.00 | EA | |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | INSPECTED | 1011423 | 8 | 336.00 | FT | 9.16 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | TENARIS | INSPECTED | 1011423 | 3 | 126.00 | FT | 3.43 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | HLD CLARK | INSPECTED | EPS-21378-RTN | | | FT | - |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | INSPECTED | EPS-21378-RTN | | 3.40 | FT | 0.09 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | EPS-21442-RTN | 1 | 167.64 | FT | 4.57 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | EPS-21442-RTN | 1 | 29.20 | FT | 0.80 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | CH STEEL | SCRAP | RTN-010 | 1 | 15.00 | FT | 0.41 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | RTN-015 | 27 | 1,134.00 | FT | 30.90 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | RTN-02-15 | 42 | 1,280.31 | FT | 34.89 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | CH STEEL | RETURN | RTN-11 | 6 | 264.00 | FT | 7.19 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SEAH | INSPECTED | RTN-13 | | 7.43 | FT | 0.20 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SEAH | SCRAP | RTN-14 | 1 | 42.00 | FT | 1.14 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | RTN-15-01 | 32 | 1,337.69 | FT | 36.45 |
| PRECISION | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | ARCELOR MITTAL | SCRAP | RTN-9 | 2 | 57.00 | FT | 1.55 |
| PRECISION | PROTECTOR SET | 13-3/8" BTC PROTECTOR SET | NA | NA | PO-7605 | | 27.00 | SET | |
| PRECISION | CROSSOVER | 4-1/2" 13.50# P110-HC R1 USF X 5-1/2" 19.83# BTC | NA | INSPECTED | EPS-22617-RTN | | 1.00 | EA | |
| PRECISION | PUP JT | 4-1/2" 13.50# (0.290wt) P110-CY 10FT GBCD SMLS | TENARIS | REPAIRABLE | EPS-22096-RTN | | 1.00 | EA | |
| PRECISION | CASING | 4-1/2" 13.50# (0.290wt) P110-CY R3 GBCD SMLS | TENARIS | INSPECTED | EPS-22063-RTN | 1 | 47.10 | FT | 0.32 |
| PRECISION | CASING | 4-1/2" 13.50# (0.290wt) P110-CY R3 GBCD SMLS | TENARIS | INSPECTED | EPS-22096-RTN | 2 | 80.24 | FT | 0.54 |
| PRECISION | CASING | 4-1/2" 13.50# (0.290wt) P110-CY R3 GBCD SMLS | TENARIS | INSPECTED | EPS-22212-RTN | 7 | 263.60 | FT | 1.78 |
| PRECISION | CASING | 4-1/2" 13.50# (0.290wt) P110-CY R3 TCBC-HT SMLS | VOEST ALPINE | INSPECTED | EPS-22780-RTN | 3 | 122.00 | FT | 0.82 |
| PRECISION | PUP JT | 4-1/2" 13.50# (0.290wt) P110-HC R1 BTC ERW SMLS | AXIS | REPAIRABLE | EPS-20098-RTN/11127 | | 2.00 | EA | |
| PRECISION | MARKER | 4-1/2" 13.50# (0.290wt) P110-HC R1 BTC ERW MARKER | AXIS | PRIME | EPS-20098-RTN/11126 | | 1.00 | EA | |
| PRECISION | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 BTC ERW | TEJAS TUBULAR | INSPECTED | EPS-22617-RTN | 1 | 43.20 | FT | 0.29 |
| PRECISION | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 GBCD ERW | AXIS | REPAIRABLE | EPS-20698-RTN | | 56.77 | FT | 0.38 |
| PRECISION | CASING | 4-1/2" 13.50# (0.290wt) P110-RY R3 BTC ERW | OMK | INSPECTED | EPS-20694-RTN | | 4.54 | FT | 0.03 |
| PRECISION | CASING | 5-1/2" 19.83# (0.361wt) P110-MS1 R1 ULTRA SF SMLS | KOPPEL | REJECT | EPS-22617-RTN | | 2.00 | EA | |
| PRECISION | CASING | 5-1/2" 19.83# (0.361wt) P110-MS1 R1 ULTRA SF SMLS | KOPPEL | INSPECTED | EPS-22617-RTN | 4 | 177.50 | FT | 1.76 |
| PRECISION | CROSSOVER | 5-1/2" 20.00# P110-HC TCBC-HT PIN X DWC PIN ERW | HYUNDAI | SCRAP | EPS-22208-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY 10FT TCBC-HT SMLS | BOOMERANG | RETURN | EPS-22201-RTN | | 1.00 | EA | |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT | REPUBLIC TUBE | REJECT | EPS-22660-RTN | | 1.00 | EA | |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT | REPUBLIC TUBE | RETURN | EPS-22660-RTN | | 1.00 | EA | |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT | REPUBLIC TUBE | RETURN | EPS-22664-RTN | | 2.00 | EA | |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT | REPUBLIC TUBE | RETURN | EPS-22819-RTN | | 1.00 | EA | |
| PRECISION | CROSSOVER | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT BOX X | REPUBLIC TUBE | PRIME | PO-7913 | | 1.00 | EA | |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY R1 BK-HT SMLS | TMK | REJECT | EPS-22817-RTN | | 2.00 | EA | |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY R1 LTC SMLS | TMK | PRIME | PO-6743/7999 | | 18.00 | EA | |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY R1 LTC SMLS | TMK | PRIME | PO-9825 | | 2.00 | EA | |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 BK-HT SMLS | REPUBLIC TUBE | INSPECTED | EPS-22660-RTN | 11 | 450.70 | FT | 4.51 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 BK-HT SMLS | REPUBLIC TUBE | INSPECTED | EPS-22664-RTN | 7 | 294.00 | FT | 2.94 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 BK-HT SMLS | REPUBLIC TUBE | INSPECTED | EPS-22801-RTN | 9 | 378.00 | FT | 3.78 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 BK-HT SMLS | REPUBLIC TUBE | INSPECTED | EPS-22815-RTN | 9 | 380.50 | FT | 3.81 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 BK-HT SMLS | TMK | RETURN | EPS-22819-RTN | 14 | 588.00 | FT | 5.88 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 DQX SMLS | TMK | INSPECTED | EPS-22817-RTN | 3 | 135.50 | FT | 1.36 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 DQX SMLS | TMK | PRIME | PO-8608 | 5 | 214.03 | FT | 2.14 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 LTC SMLS | TMK | PRIME | PO-6741 | 8 | 323.30 | FT | 3.23 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 LTC SMLS | TMK | PRIME | PO6913/7284 | 3 | 132.87 | FT | 1.33 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 MI PANTHER MS | KOPPEL | INSPECTED | EPS-21353-RTN | 41 | 1,789.00 | FT | 17.89 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 MI PANTHER MS | BENTELER | INSPECTED | EPS-22006-RTN | 13 | 546.00 | FT | 5.46 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21256-RTN | 13 | 563.69 | FT | 5.64 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-21256-RTN | 1 | 31.38 | FT | 0.31 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-21398-RTN | 1 | 29.50 | FT | 0.30 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-21493-RTN | 1 | 32.50 | FT | 0.33 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-21615-RTN | 1 | 34.00 | FT | 0.34 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-21789-RTN | 1 | 29.00 | FT | 0.29 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-21803-RTN | 2 | 63.20 | FT | 0.63 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-21204-RTN | 1 | 29.60 | FT | 0.30 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-22106-RTN | 1 | 39.70 | FT | 0.40 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-22201-RTN | 1 | 31.06 | FT | 0.31 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-22202-RTN | 1 | 34.60 | FT | 0.35 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | HYUNDAI | RETURN | EPS-22208-RTN | 1 | | FT | - |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-22333-RTN | 1 | 46.80 | FT | 0.47 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-22537-RTN | 1 | 31.80 | FT | 0.32 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-22645-RTN | 10 | 446.50 | FT | 4.47 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-22645-RTN | 2 | 77.60 | FT | 0.78 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-22726-RTN | 3 | 53.20 | FT | 0.53 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-22746-RTN | 4 | 88.80 | FT | 0.89 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | EPS-22764-RTN | 1 | 32.50 | FT | 0.33 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | PRIME | PO-11217 | 2 | 1,880.74 | FT | 18.81 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | PRIME | PO-7658 | (15) | 1,106.97 | FT | 11.07 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | PRIME | RTN-17 | 139 | 2,309.59 | FT | 23.10 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | RETURN | RTN-18 | 561 | 23,577.50 | FT | 235.78 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | SCRAP | RTN-20 | 3 | 429.66 | FT | 4.30 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT SMLS | BOOMERANG | INSPECTED | EPS-21521-RTN | 9 | 390.40 | FT | 3.90 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT SMLS | BOOMERANG | REPAIRABLE | EPS-21521-RTN | 1 | 44.40 | FT | 0.44 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT SMLS | BOOMERANG | SCRAP | EPS-21521-RTN | 1 | 17.00 | FT | 0.17 |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21373-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | REPAIRABLE | EPS-22104-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | RETURN | EPS-22106-RTN | | 2.00 | EA | |
| PRECISION | PUP JT | 5-1/2" 20.00# (0.361wt) P110-HC 10FT MI PANTHER | KOPPEL | INSPECTED | EPS-22006-RTN | | 2.00 | EA | |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 MI PANTHER MS | HYUNDAI | INSPECTED | EPS-22167-RTN | 18 | 704.12 | FT | 7.04 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 MI PANTHER MS | BENTELER | INSPECTED | EPS-20752-RTN | 8 | 355.10 | FT | 3.55 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 MI PANTHER MS | HYUNDAI | INSPECTED | EPS-21331-RTN | 12 | 531.40 | FT | 5.31 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 MI PANTHER MS | KOPPEL | INSPECTED | EPS-22006-RTN | 4 | 168.00 | FT | 1.68 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | HYUNDAI | RETURN | EPS-22208-RTN | 1 | 44.47 | FT | 0.44 |
| PRECISION | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | JESCO | RETURN | EPS-23092-RTN | 21 | 879.53 | FT | 8.80 |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | INSPECTED | EPS-21373-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-21398-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | INSPECTED | EPS-21398-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | REPAIRABLE | EPS-21521-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 5-1/2" 20.00# (0.361wt) TN110-CY TCBC-HT ERW | TENARIS | INSPECTED | EPS-21605-RTN | | 2.00 | EA | |
| PRECISION | CASING | 5-1/2" 23.00# (0.415wt) P110-CY R3 TCBC-HT SMLS | TUBOS REUNIDOS | INSPECTED | EPS-23141-RTN | 3 | 132.70 | FT | 1.53 |
| PRECISION | CASING | 5-1/2" 23.00# (0.415wt) P110-CY R3 TCBC-HT SMLS | TUBOS REUNIDOS | REPAIRABLE | EPS-23141-RTN | 1 | 44.30 | FT | 0.51 |
| PRECISION | CASING | 5-1/2" 23.00# (0.415wt) P110-CY R3 TCBC-HT SMLS | TUBOS REUNIDOS | INSPECTED | RTN-26 | 1 | 85.15 | FT | 0.98 |
| PRECISION | CASING | 5-1/2" 23.00# (0.415wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20657-RTN | 13 | 528.95 | FT | 6.08 |
| PRECISION | COUPLING | 5-1/2" P110-CY LTC | TMK | PRIME | PO-5102 | | 110.00 | FT | 1.27 |
| PRECISION | COUPLING | 5-1/2" P110-CY LTC | TMK | PRIME | PO-7252 | | 11.00 | EA | |
| PRECISION | CASING | 7" 26.00# (0.362wt) L80 R3 LTC ERW | PARAGON | INSPECTED | EPS-22155-RTN | 9 | 396.70 | FT | 5.16 |
| PRECISION | CASING | 7" 26.00# (0.362wt) L80 R3 LTC ERW | PARAGON | REPAIRABLE | EPS-22155-RTN | 10 | 441.90 | FT | 5.74 |
| PRECISION | CASING | 7" 26.00# (0.362wt) P110-HC R3 BTC SMLS | VALLOUREC | USED | EPS-22188-RTN | 1 | 43.60 | FT | 0.57 |
| PRECISION | CROSSOVER | 7" 26.00# (0.362wt) P110-HC R3 LTC BOX X BTC PIN | VALLOUREC | USED | 22188-RTN/11916 | | 2.00 | EA | |
| PRECISION | CASING | 7" 26.00# (0.362wt) P110-HC R3 LTC SMLS | VALLOUREC | RETURN | EPS-22196-RTN | 1 | 14.72 | FT | 0.19 |
| PRECISION | CROSSOVER | 7" 32.00# (0.453wt) P110-CY BK-HT BOX X 5-1/2" | EVRAZ | RETURN | EPS-22664-RTN | | 1.00 | EA | |
| PRECISION | CROSSOVER | 7" 32.00# (0.453wt) P110-CY BK-HT BOX X 5-1/2" | REPUBLIC TUBE | RETURN | EPS-22801-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 7" 32.00# (0.453wt) P110-CY DQX SMLS 10FT MARKER | TMK | INSPECTED | EPS-22817-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | EVRAZ | REPAIRABLE | EPS-22660-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | EVRAZ | RETURN | EPS-22664-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | EVRAZ | RETURN | EPS-22801-RTN | | 2.00 | EA | |
| PRECISION | MARKER | 7" 32.00# (0.453wt) P110-CY R1 BK-HT SMLS | EVRAZ | RETURN | EPS-22819-RTN | | 2.00 | EA | |
| PRECISION | CASING | 7" 32.00# (0.453wt) P110-CY R3 BK-HT SMLS | EVRAZ | RETURN | EPS-2264-RTN. | 7 | 294.00 | FT | 4.70 |
| PRECISION | CASING | 7" 32.00# (0.453wt) P110-CY R3 BK-HT SMLS | EVRAZ | REPAIRABLE | EPS-22660-RTNN. | 37 | 1,564.00 | FT | 25.02 |
| PRECISION | CASING | 7" 32.00# (0.453wt) P110-CY R3 BK-HT SMLS | EVRAZ | SCRAP | EPS-22664-RTN.02 | 2 | 84.00 | FT | 1.34 |
| PRECISION | CASING | 7" 32.00# (0.453wt) P110-CY R3 BK-HT SMLS | EVRAZ | RETURN | EPS-22801-RTN | 23 | 924.00 | FT | 14.78 |
| PRECISION | CASING | 7" 32.00# (0.453wt) P110-CY R3 BK-HT SMLS | KOPPEL | INSPECTED | EPS-22819-RTN | 5 | 210.00 | FT | 3.36 |
| PRECISION | CASING | 7" 32.00# (0.453wt) P110-CY R3 DQX SMLS | TMK | INSPECTED | EPS-21721-RTN | 3 | | FT | |
| PRECISION | CASING | 7" 32.00# (0.453wt) P110-CY R3 DQX SMLS | TMK | PRIME | PO-6909 | | 180.11 | FT | 2.88 |
| PRECISION | CASING | 7" 32.00# (0.453wt) P110-CY R3 DQX SMLS | TMK | PRIME | PO-7977 | 12 | 626.62 | FT | 10.03 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | AXIS | INSPECTED | EPS-21919-RTN | 1 | 50.50 | FT | 0.75 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-21977-RTN | 11 | 471.90 | FT | 7.01 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | HYUNDAI | REPAIRABLE | EPS-21977-RTN | 3 | 128.90 | FT | 1.91 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | AXIS | INSPECTED | EPS-21978-RTN | 4 | 179.20 | FT | 2.66 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-21978-RTN | 7 | 313.60 | FT | 4.66 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | AXIS | INSPECTED | EPS-21979-RTN | 11 | 492.60 | FT | 7.32 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-22422-RTN | 8 | 341.40 | FT | 5.07 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | HYUNDAI | INSPECTED | EPS-22696-RTN | 2 | 89.20 | FT | 1.32 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | HYUNDAI | REPAIRABLE | EPS-22696-RTN | 10 | 430.90 | FT | 6.40 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) L80-HC R3 BTC ERW | AXIS | PRIME | PO-10393 | 12 | 534.10 | FT | 7.93 |
| PRECISION | CASING | 7-5/8" 29.70# (0.734wt) P110-HC R3 GBCD ERW | SEAH | INSPECTED | EPS-22063-RTN | 7 | 294.00 | FT | 4.37 |
| PRECISION | CASING | 7-5/8" 29.70# (0.734wt) P110-HC R3 GBCD ERW | SEAH | REPAIRABLE | EPS-22063-RTN | 2 | 84.00 | FT | 1.25 |
| PRECISION | CROSSOVER | 7-5/8" 29.70# (0.375wt) P110-HC R3 LTC BOX X GBCD | SEAH | REPAIRABLE | EPS-22063-RTN | | 1.00 | EA | |
| PRECISION | PUP JT | 7-5/8" 29.70# (0.375wt) P110-HC R3 LTC ERW PUP JT | SEAH | INSPECTED | EPS-22063-RTN | | 1.00 | EA | |
| PRECISION | PUP JT | 7-5/8" 29.70# (0.375wt) P110-HC R3 LTC ERW PUP JT | SEAH | SCRAP | EPS-22063-RTN | | 2.00 | EA | |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) P110-HC R3 LTC SMLS | BOLY | PRIME | EPS-21839-001 | 1 | 29.70 | FT | 0.44 |
| PRECISION | CASING | 7-5/8" 29.70# (0.375wt) P110-HC R3 LTC SMLS | BOLY | RETURN | EPS-21839-RTN | 10 | 285.29 | FT | 4.24 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | SCRAP | EPS-19096-RTN | 1 | 42.44 | FT | 0.85 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20034-RTN | 1 | 22.00 | FT | 0.44 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20034-RTN | (1) | (22.00) | FT | (0.44) |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | SCRAP | EPS-21813-RTN | 1 | 29.87 | FT | 0.60 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | SCRAP | EPS-22411-RTN | 1 | 44.20 | FT | 0.88 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | SCRAP | RTN-21~21 | 48 | 1,801.43 | FT | 36.03 |
| PRECISION | CROSSOVER | 9-5/8" 40.00# (0.395wt) L80-HC BTC BOX X LTC PIN | BOOMERANG | RETURN | EPS-21944-RTN | | 1.00 | EA | |
| PRECISION | CROSSOVER | 9-5/8" 40.00# (0.395wt) L80-HC BTC BOX X LTC PIN | BOOMERANG | SCRAP | EPS-22152-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | AXIS | RETURN | EPS-21687-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | BOOMERANG | INSPECTED | EPS-21826-RTN | | 2.00 | EA | |
| PRECISION | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | AXIS | RETURN | EPS-22185-RTN | | 2.00 | EA | |
| PRECISION | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | AXIS | REJECT | EPS-22535-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | BOOMERANG | RETURN | EPS-22816-RTN | | 1.00 | EA | |
| PRECISION | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC BTC ERW 10FT MARKER | REPUBLIC TUBE | RETURN | EPS-22818-RTN | | 2.00 | EA | |
| PRECISION | PUP JT | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | AXIS | SCRAP | EPS-22817-RTN | | 2.00 | EA | |
| PRECISION | PUP JT | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | REPUBLIC TUBE | REPAIRABLE | EPS-22818-RTN | | 2.00 | EA | |
| PRECISION | PUP JT | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | ARCELOR MITTAL | SCRAP | MI-8065-01 | | 3.00 | EA | |
| PRECISION | PUP JT | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | BOOMERANG | RETURN | MID-8937-01 | | 1.00 | EA | |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-21401-RTN | 5 | 211.03 | FT | 4.22 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21406-RTN | 3 | 114.43 | FT | 2.29 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-21480-RTN | 15 | 619.81 | FT | 12.40 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-21733-RTN | 6 | 254.70 | FT | 5.09 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21754-RTN | 7 | 278.70 | FT | 5.57 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21763-RTN | 3 | 128.30 | FT | 2.57 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21783-RTN | 3 | 129.33 | FT | 2.59 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21870-RTN | 1 | 44.60 | FT | 0.89 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21883-RTN | 2 | 84.80 | FT | 1.70 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21929-RTN | 4 | 174.90 | FT | 3.50 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-21950-RTN | 7 | 295.90 | FT | 5.92 |

| Company | Type | Description | Manufacturer | Condition | Tag/PO | Qty | Amount | Unit | Value |
|---|---|---|---|---|---|---|---|---|---|
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-21958-RTN | 4 | 219.09 | FT | 4.38 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-22003-RTN | 1 | 37.20 | FT | 0.74 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-22151-RTN | | 23.10 | FT | 0.46 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-22162-RTN | 3 | 128.10 | FT | 2.56 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-22209-RTN | 9 | 379.60 | FT | 7.59 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-22227-RTN | 7 | 305.50 | FT | 6.11 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-22232-RTN | 6 | 266.20 | FT | 5.32 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-22255-RTN | 1 | 31.00 | FT | 0.62 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-22271-RTN | 5 | 210.00 | FT | 4.20 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-22353-RTN | 9 | 376.30 | FT | 7.53 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-22431-RTN | 29 | 1,237.20 | FT | 24.74 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-2243-RTN | 4 | 133.24 | FT | 2.66 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-2482-RTN | 5 | 210.00 | FT | 4.20 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-2482-RTN | 1 | 42.00 | FT | 0.84 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-2509-RTN | 1 | 42.00 | FT | 0.84 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-2586-RTN | 6 | 252.00 | FT | 5.04 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-2668-RTN | 2 | 89.10 | FT | 1.78 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-2765-RTN | 5 | 222.00 | FT | 4.44 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | PARAGON | INSPECTED | EPS-2809-RTN | | 3.20 | FT | 0.06 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-22914-RTN | 1 | 37.90 | FT | 0.76 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-22916-RTN | 9 | 378.00 | FT | 7.56 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-22920-RTN | 11 | 462.00 | FT | 9.24 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-22986-RTN | 1 | 44.70 | FT | 0.89 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | PARAGON | PRIME | EPS-23062-RTN | 3 | 126.00 | FT | 2.52 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-23089-RTN | 1 | | FT | - |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-23092-RTN | 6 | 252.00 | FT | 5.04 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-23142-RTN | 5 | 210.00 | FT | 4.20 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-23145-RTN | 6 | 252.00 | FT | 5.04 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-23167-RTN | 5 | 210.00 | FT | 4.20 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-23188-RTN | 8 | 349.50 | FT | 6.99 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-23201-RTN | 5 | 214.90 | FT | 4.30 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-23210-RTN | 1 | 42.00 | FT | 0.84 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-23210-RTN | 10 | 420.00 | FT | 8.40 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-23220-RTN | 4 | 174.50 | FT | 3.49 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-23220-RTN | 12 | 529.40 | FT | 10.59 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | ARCELOR MITTAL | SCRAP | MID-8166-01 | 1 | 20.00 | FT | 0.40 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | INSPECTED | RTN-26 | 228 | 9,429.89 | FT | 188.60 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | PRIME | PO-11112 | 40 | 1,735.14 | FT | 34.70 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20182-RTN | 6 | 255.60 | FT | 5.11 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20217-RTN | 1 | 44.74 | FT | 0.89 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20516-RTN | 3 | 128.25 | FT | 2.57 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20723-RTN | 6 | 263.58 | FT | 5.27 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20757-RTN | 3 | 135.54 | FT | 2.71 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20787-RTN | 4 | 176.48 | FT | 3.53 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20838-RTN | 2 | 88.42 | FT | 1.77 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20885-RTN | 4 | 163.40 | FT | 3.27 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20931-RTN | 5 | 219.58 | FT | 4.39 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-20954-RTN | 1 | 44.50 | FT | 0.89 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21021-RTN | 2 | 93.06 | FT | 1.86 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21180-RTN | 5 | 217.61 | FT | 4.35 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21287-RTN | 5 | 220.78 | FT | 4.42 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21298-RTN | 3 | 126.92 | FT | 2.54 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21705-RTN | 5 | 216.89 | FT | 4.34 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21754-RTN | 1 | 35.18 | FT | 0.70 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-21754-RTN | 1 | 38.50 | FT | 0.77 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21763-RTN | 3 | 130.60 | FT | 2.61 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-21763-RTN | 3 | 133.60 | FT | 2.67 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21831-RTN | 9 | 394.81 | FT | 7.90 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | EPS-21870-RTN | 7 | 306.20 | FT | 6.12 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-22065-RTN | 4 | 174.70 | FT | 3.49 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-4023 | 2 | 270.09 | FT | 5.40 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-6682 | 1 | 121.87 | FT | 2.44 |
| PRECISION | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | INSPECTED | RTN-26 | 218 | 8,811.90 | FT | 176.24 |
| PRI | CASING | 11-3/4" 42.00# (0.333wt) K55 R3 STC SMLS | RUSTAVI | PRIME | PO-10192 | 474 | 18,082.63 | FT | 379.74 |
| PRI | CASING | 11-3/4" 42.00# (0.333wt) K55 R3 STC SMLS | RUSTAVI | PRIME | PO-5507 | 125 | 4,740.58 | FT | 99.55 |
| PRI | CASING | 13-3/8" 48.00# (0.330wt) J55 R3 LTC ERW | QB UNK | SCRAP | QB UNK | 1 | 40.00 | FT | 0.96 |
| PRI | PUP JT | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | QB UNK | SCRAP | QB UNK | | 5.00 | EA | |
| PRI | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | HUSTEEL | PRIME | PO-11602 | 4 | 14.09 | FT | 0.05 |
| PRI | MARKER | 4-1/2" 13.50# (0.290wt) P110-CY R3 TCBC-HT SMLS | ARCELOR MITTAL | PRIME | PO-11619/11698 | 736 | 31,797.42 | FT | 214.63 |
| PRI | MARKER | 4-1/2" 13.50# (0.290wt) P110-CY TCBC-HT SMLS 10 FT | ARCELOR MITTAL | PRIME | PO-11619/11698/12344 | | 10.00 | EA | |
| PRI | MARKER | 4-1/2" 13.50# (0.290wt) P110-R1 WY 10FT TCBC-HT SMLS | VOEST ALPINE | PRIME | PO-11564/11802 | | 1.00 | EA | |
| PRI | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | PRIME | PO-3760 | 882 | 38,605.60 | FT | 328.15 |
| PRI | CASING | 5-1/2" 19.83# (0.361wt) P110-MS1 R3 ULTRA SF SMLS | TMK | PRIME | EPS-22040-001 | 2 | 85.40 | FT | 0.85 |
| PRI | CASING | 5-1/2" 19.83# (0.361wt) P110-MS1 R3 ULTRA SF SMLS | KOPPEL | PRIME | PO-10500 | 38 | 1,632.10 | FT | 16.18 |
| PRI | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY 10FT TCBC-HT SMLS | REPUBLIC TUBE | PRIME | PO-8309/10789 | | 2.00 | EA | |
| PRI | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY 10FT TCBC-HT SMLS | REPUBLIC TUBE | PRIME | PO-8701/13307 | | 35.00 | EA | |
| PRI | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY R1 TCBC-HT SMLS | REPUBLIC TUBE | PRIME | PO-8309/10790 | | 19.00 | EA | |
| PRI | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | INSPECTED | PO-8381 | | 1.00 | EA | |
| PRI | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 MI PANTHER MS | HYUNDAI | PRIME | 10939/10953-01 | 2 | 84.00 | FT | 0.84 |
| PRI | CASING | 9-5/8" 40.00# (0.395wt) K55-HC R3 LTC ERW | PARAGON | RETURN | EPS-19853-RTN | 11 | 476.75 | FT | 9.54 |
| PRI | CASING | 9-5/8" 40.00# (0.395wt) K55-HC R3 LTC ERW | PARAGON | PRIME | PO-4046 | 54 | 2,360.39 | FT | 47.21 |
| PRI | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | AXIS | INSPECTED | EPS-19853-RTN | 1 | 43.10 | FT | 0.86 |
| PRI | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | PO-8367 | 364 | 15,742.05 | FT | 314.84 |
| RENTERS MH | CASING | 11-3/4" 42.00# (0.333wt) K55 R3 STC SMLS | RUSTAVI | PRIME | PO-10192 | 80 | 2,696.75 | FT | 56.63 |
| REPUBLIC | MARKER | 10-3/4" 45.50# (0.400wt) R1 BTC ERW | CORINTH | USED | EPS-21729-RTN | | 1.00 | EA | |
| REPUBLIC | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | VYKSA | RETURN | EPS-20282-RTN | 2 | 79.73 | FT | 1.81 |
| REPUBLIC | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | VYKSA | REJECT | EPS-20660-RTN | 6 | 172.00 | FT | 3.91 |
| REPUBLIC | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | VYKSA | REJECT | EPS-20859-RTN | 2 | 86.00 | FT | 1.96 |
| REPUBLIC | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | VYKSA | USED | EPS-21224-RTN | 2 | 86.00 | FT | 1.96 |
| REPUBLIC | CASING | 10-3/4" 45.50# (0.400wt) J55 R3 BTC ERW | VYKSA | USED | EPS-21437-RTN | 2 | 79.72 | FT | 1.81 |

Case 20-34979 Document 1781 Filed in TXSB on 11/30/20 Page 89 of 123

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| REPUBLIC | CASING | 10-3/4" 45.50W (0.400wt) J55 R3 BTC ERW | VYKSA | USED | EPS-21584-RTN | 2 | 86.00 | FT | 1.96 |
| REPUBLIC | CASING | 10-3/4" 45.50W (0.400wt) J55 R3 BTC ERW | VYKSA | USED | EPS-21729-RTN | 2 | 86.00 | FT | 1.96 |
| REPUBLIC | CASING | 10-3/4" 45.50W (0.400wt) J55 R3 BTC ERW | SHIN YANG | RETURN | EPS-22244-RTN | 6 | 252.00 | FT | 5.73 |
| REPUBLIC | CASING | 10-3/4" 45.50W (0.400wt) J55 R3 BTC ERW | BORUSAN | REPAIRABLE | PO2341 | 5 | 230.50 | FT | 5.24 |
| REPUBLIC | CASING | 10-3/4" 45.50W (0.400wt) J55 R3 BTC ERW | VYKSA | REPAIRABLE | PO3600 | | | FT | - |
| REPUBLIC | CASING | 10-3/4" 45.50W (0.400wt) J55 R3 BTC ERW | VYKSA | PRIME | PO-3792 | | | FT | - |
| REPUBLIC | CASING | 10-3/4" 45.50W (0.400wt) J55 R3 BTC ERW | TUPER | REPAIRABLE | QB UNK | 2 | 60.00 | FT | 1.37 |
| REPUBLIC | CASING | 13-3/8" 54.50W (0.380wt) J55 R3 PE ERW | SHIN YANG | PRIME | PO-5914/8563 | 1 | 33.30 | FT | 0.91 |
| REPUBLIC | CASING | 13-3/8" 66.17W (0.480wt) J55 R3 PE ERW | SHIN YANG | SCRAP | PO-2042 | 20 | 857.00 | FT | 28.35 |
| REPUBLIC | MARKER | 13-3/8" 68.00W (0.480wt) J55 R1 BTC ERW MARKER | HUSTEEL | PRIME | PO2015 | | 3.00 | EA | |
| REPUBLIC | MARKER | 13-3/8" 68.00W (0.480wt) J55 R3 BTC ERW MARKER | HUSTEEL | REPAIRABLE | PO2015 | | 3.00 | EA | |
| REPUBLIC | CASING | 13-3/8" 68.00W (0.480wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | PO-2042 | 8 | 347.00 | FT | 11.80 |
| REPUBLIC | MARKER | 4-1/2" 11.60W (0.250wt) L80 R1 LTC ERW MARKER | TENARIS | SCRAP | PO-2561 | | 6.00 | EA | |
| REPUBLIC | CASING | 4-1/2" 11.60W (0.250wt) P110-HC R3 BTC ERW | NEXTEEL | PRIME | EPS-22200-RTN | 4 | 172.00 | FT | 1.16 |
| REPUBLIC | CASING | 4-1/2" 13.50W (0.290wt) P110-HC R3 BTC ERW | NEXTEEL | REPAIRABLE | EPS-22200-RTN | 2 | 90.00 | FT | 0.61 |
| REPUBLIC | CASING | 4-1/2" 13.50W (0.290wt) P110-HC R3 BTC ERW | NEXTEEL | REPAIRABLE | EPS-22200-RTNN | 3 | 129.00 | FT | 0.87 |
| REPUBLIC | CASING | 4-1/2" 13.50W (0.290wt) P110-HC R3 GBCD ERW | NEXTEEL | REPAIRABLE | EPS-22200-RTN | 14 | 604.00 | FT | 4.08 |
| REPUBLIC | CASING | 4-1/2" 13.50W (0.290wt) P110-HC R3 GBCD SMLS | US STEEL | REPAIRABLE | EPS-22200-RTN | 5 | 225.00 | FT | 1.52 |
| REPUBLIC | MARKER | 4-1/2" 13.50W (0.290wt) P110-ICY R1 TXP BTC SMLS | TENARIS | RETURN | EPS-22139-RTN | | 5.00 | EA | |
| REPUBLIC | CASING | 4-1/2" 13.50W (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | RETURN | EPS-22139-RTN | 9 | 378.00 | FT | 2.55 |
| REPUBLIC | CASING | 4-1/2" 13.50W (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | INSPECTED | EPS-22564-RTN-1 | 3 | 129.00 | FT | 0.87 |
| REPUBLIC | CASING | 4-1/2" 13.50W (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | REPAIRABLE | EPS-22564-RTN-2 | 5 | 228.70 | FT | 1.54 |
| REPUBLIC | CASING | 5" 17.95W (0.362wt) P110-CY HP R3 TORQ SFW | TMK | INSPECTED | EPS-21335-RTN | (1) | (43.03) | FT | (0.39) |
| REPUBLIC | CASING | 5" 17.95W (0.362wt) P110-CY HP R3 TORQ SFW | TMK | REPAIRABLE | EPS-21335-RTN | 2 | 83.03 | FT | 0.75 |
| REPUBLIC | CASING | 5" 17.95W (0.362wt) P110-CY HP R3 TORQ SFW | TMK | REPAIRABLE | EPS-21629-RTN | 1 | 43.00 | FT | 0.39 |
| REPUBLIC | CROSSOVER | 5" 18.00W (0.362wt) P110 625 BOX x 4-1/2" | NA | REPAIRABLE | EPS-22564-RTN | | 4.00 | EA | |
| REPUBLIC | CASING | 5" 18.00W (0.362wt) P110-ICY R3 TSH 625 SMLS | TENARIS | INSPECTED | EPS-22564-RTN-1 | 17 | 731.00 | FT | 6.58 |
| REPUBLIC | CASING | 5" 18.00W (0.362wt) P110-ICY R3 TSH 625 SMLS | TENARIS | REPAIRABLE | EPS-22564-RTN-2 | 2 | 90.00 | FT | 0.81 |
| REPUBLIC | CASING | 5" 21.32W (0.437wt) P110-CY HP R3 TORQ SFW SMLS | TENARIS | REPAIRABLE | EPS-22613-RTN | 5 | 202.54 | FT | 2.16 |
| REPUBLIC | CASING | 5" 21.32W (0.437wt) P110-CY HP R3 TORQ SFW SMLS | TENARIS | PRIME | PO-10851 | 99 | 4,364.96 | FT | 46.53 |
| REPUBLIC | CASING | 5-1/2" 17.00W (0.304wt) P110-CY R3 LTC SMLS | TUBOS REUNIDOS | PRIME | PO2609 | 45 | 1,745.69 | FT | 14.84 |
| REPUBLIC | CASING | 5-1/2" 20.00W (0.361wt) P110-CY R3 BK-HT SMLS | TENARIS | INSPECTED | EPS-21295-RTN | 5 | 222.74 | FT | 2.23 |
| REPUBLIC | CASING | 5-1/2" 20.00W (0.361wt) P110-CY R3 BK-HT SMLS | BOLY | RETURN | EPS-21878-RTN | 1 | 40.00 | FT | 0.40 |
| REPUBLIC | CASING | 5-1/2" 20.00W (0.361wt) P110-ICY R3 BK-HT SMLS | TENARIS | RETURN | EPS-21878-RTN | 9 | 387.00 | FT | 3.87 |
| REPUBLIC | CASING | 5-1/2" 20.00W (0.361wt) P110-ICY R3 TXP BTC SMLS | TENARIS | PRIME | PO3152 | 1 | 375.95 | FT | 3.76 |
| REPUBLIC | CASING | 5-1/2" 22.56W (0.415wt) P110 R3 PE SMLS | TENARIS | SCRAP | UNK-RTNS | 3 | 130.00 | FT | 1.47 |
| REPUBLIC | CASING | 5-1/2" 22.56W (0.415wt) P110-CY HP R3 TORQ SMLS | TMK | INSPECTED | EPS-21335-RTN | 8 | 342.38 | FT | 3.86 |
| REPUBLIC | CASING | 5-1/2" 22.56W (0.415wt) P110-CY HP R3 TORQ SMLS | TMK | SCRAP | EPS-21335-RTN | 1 | 32.60 | FT | 0.37 |
| REPUBLIC | CASING | 5-1/2" 22.56W (0.415wt) P110-CY HP R3 TORQ SMLS | TMK | INSPECTED | EPS-21629-RTN | 2 | 85.80 | FT | 0.97 |
| REPUBLIC | CASING | 5-1/2" 22.56W (0.415wt) P110-CY HP R3 TORQ SMLS | TMK | REPAIRABLE | EPS-22613-RTN-1 | 6 | 236.40 | FT | 2.67 |
| REPUBLIC | CASING | 5-1/2" 22.56W (0.415wt) P110-ICY R1 TORQ SFW SMLS | TMK | RETURN | EPS-22613-RTN-2 | 4 | 118.96 | FT | 1.34 |
| REPUBLIC | MARKER | 5-1/2" 22.56W (0.415wt) P110-ICY R1 TORQ SFW SMLS | TIMKEN | INSPECTED | EPS-21629-RTN | | 1.00 | EA | |
| REPUBLIC | MARKER | 5-1/2" 22.56W (0.415wt) P110-ICY R1 TORQ SFW SMLS | TMK | RETURN | EPS-21629-RTN | | 2.00 | EA | |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) BLUE x 5" | TENARIS | RETURN | EPS-22564-RTN | | 6.00 | EA | |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) P110 BLUE x 4-1/2" | TENARIS | PRIME | PO3608 | | 1.00 | EA | |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) P110 TSH 563 x 4-1/2" | TENARIS | INSPECTED | EPS-19528-RTN | | 5.00 | EA | |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) P110 TSH 563 x 4-1/2" | TENARIS | RETURN | EPS-22564-RTN*1 | | 3.00 | EA | |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) P110 TSH 563 x 4-1/2" | TENARIS | PRIME | PO3349*1 | | 6.00 | EA | |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) P110 TSH 625 x 4-1/2" | TENARIS | PRIME | QB UNKNOWN | | 2.00 | EA | |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-CY HP R3 BPN SMLS | TMK | PRIME | PO-8584 | 245 | 10,960.38 | FT | 126.04 |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-CY HP R3 BPN SMLS | TMK | PRIME | PO-8587 | 245 | 10,916.48 | FT | 125.54 |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-CY HP TORQ SFW BOX x | TMK | RETURN | EPS-22613-RTN | | 1.00 | EA | |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-CY R1 BK SMLS | TENARIS | PRIME | PO490 | | | EA | |
| REPUBLIC | MARKER | 5-1/2" 23.00W (0.415wt) P110-CY R1 BK SMLS | REPUBLIC TUBE | PRIME | PO-9490 | | | EA | |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-CY R3 BK SMLS | INTERPIPE | INSPECTED | EPS-20089-RTN | 1 | 40.08 | FT | 0.46 |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-CY R3 BK SMLS | REPUBLIC TUBE | PRIME | PO-9490 | 1 | 45.00 | FT | 0.52 |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) P110-ICY BLUE x LTC SMLS | TENARIS | PRIME | PO3525 | | | EA | |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) P110-ICY BLUE x LTC SMLS | TENARIS | PRIME | PO-4015 | | | EA | |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) P110-ICY BTC x TS13 PIN | TENARIS | RETURN | QB UNK | | 1.00 | EA | |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R1 BLUE SMLS | TENARIS | PRIME | EPS-22348-RTN | | 1.00 | EA | |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | REPAIRABLE | EPS-21162-RTN | 2 | 90.23 | FT | 1.04 |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | REPAIRABLE | EPS-22073-RTN | 1 | 47.80 | FT | 0.55 |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | REPAIRABLE | EPS-22139-RTN | 1 | 33.50 | FT | 0.39 |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | SCRAP | EPS-22348-RTN | 1 | 31.94 | FT | 0.37 |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | PRIME | PO3101 | | | FT | - |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | PRIME | PO3318 | | | FT | - |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | PRIME | PO3319 | | | FT | - |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | PRIME | PO-3319 | | | FT | - |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | PRIME | PO3747 | | | FT | - |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | PRIME | PO-5034 | | | FT | - |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | PRIME | PO-5049 | | | FT | - |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | REPAIRABLE | QB UNK | | | FT | - |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) T95 TSH 625 BOX x LTC PIN | TENARIS | RETURN | QB UNK | | 1.00 | EA | |
| REPUBLIC | CROSSOVER | 5-1/2" 23.00W (0.415wt) T95 TSH BLUE BOX X LTC | TENARIS | RETURN | QB UNK | | 1.00 | EA | |
| REPUBLIC | CASING | 5-1/2" 23.00W (0.415wt) P110-CY HP TORQ SFW BOX X | TMK | INSPECTED | EPS-21629-RTN | | 1.00 | EA | |
| REPUBLIC | CASING | 7" 26.00W (0.362wt) L80 R3 LTC SMLS | TMK | REPAIRABLE | PO3095 | | | FT | - |
| REPUBLIC | PUP JT | 7" 26.00W (0.362wt) L80 R3 LTC SMLS | REPUBLIC TUBE | PRIME | PO-5853 | | | FT | - |
| REPUBLIC | PUP JT | 7" 26.00W (0.362wt) L80-HC 10FT BK-HT SMLS PUP JT | REPUBLIC TUBE | PRIME | 22086-F-RTN/12002 | | 1.00 | EA | |
| REPUBLIC | PUP JT | 7" 26.00W (0.362wt) L80-HC 10FT BK-HT SMLS PUP JT | REPUBLIC TUBE | INSPECTED | EPS-22441-RTN | | 2.00 | EA | |
| REPUBLIC | MARKER | 7" 26.00W (0.362wt) L80-HC R3 BK-HT SMLS | REPUBLIC TUBE | INSPECTED | EPS-22441-RTN*1 | 205 | 8,164.00 | FT | 106.13 |
| REPUBLIC | CASING | 7" 26.00W (0.362wt) L80-HC R3 BK-HT SMLS | REPUBLIC TUBE | REPAIRABLE | EPS-22441-RTN*2 | 21 | 882.00 | FT | 11.47 |
| REPUBLIC | CASING | 7" 26.00W (0.362wt) P110-CY EC R3 BK-HT SMLS | VMG | PRIME | PO-14174-TRADE | 529 | 22,900.88 | FT | 297.71 |
| REPUBLIC | CASING | 7" 26.00W (0.362wt) P110-HC R3 LTC SMLS | BOLY | USED | EPS-19065-RTN | 2 | 104.00 | FT | 1.35 |
| REPUBLIC | CASING | 7" 26.00W (0.362wt) P110-HC R3 LTC SMLS | VALLOUREC | REPAIRABLE | EPS-22199-RTN | 4 | 180.00 | FT | 2.34 |
| REPUBLIC | CASING | 7" 29.00W (0.408wt) P110-HC R3 LTC SMLS | REPUBLIC TUBE | PRIME | PO-5450 | 165 | 6,963.00 | FT | 100.96 |
| REPUBLIC | CASING | 7-5/8" 29.70W (0.375wt) LP110-HC R3 BTC ERW | HYUNDAI | USED | EPS-19432-RTN | 2 | 86.00 | FT | 1.28 |
| REPUBLIC | CASING | 7-5/8" 29.70W (0.375wt) LP110-HC R3 BTC ERW | NEXTEEL | REPAIRABLE | EPT-2630 | 6 | 273.10 | FT | 4.06 |
| REPUBLIC | CASING | 7-5/8" 29.70W (0.375wt) LP110-HC R3 BTC ERW | REPUBLIC TUBE | REPAIRABLE | EPT-2630 | 2 | 79.30 | FT | 1.18 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| REPUBLIC | CASING | 7-5/8" 29.70# (0.375wt) P110-HC R3 BTC ERW | NEXTEEL | PRIME | PO2333 | 10 | 446.65 | FT | 6.63 |
| REPUBLIC | CASING | 7-5/8" 29.70# (0.375wt) P110-HC R3 BTC ERW | NEXTEEL | PRIME | PO2370 | 5 | 228.42 | FT | 3.39 |
| REPUBLIC | MARKER | 7-5/8" 29.70# (0.375wt) P110-IC R1 BTC SMLS | HYUNDAI | INSPECTED | EPS-21469-RTN | | 1.00 | EA | - |
| REPUBLIC | MARKER | 7-5/8" 29.70# (0.375wt) P110-IC R1 BTC SMLS | TENARIS | RETURN | EPS-22295-RTN | | 3.00 | EA | - |
| REPUBLIC | MARKER | 7-5/8" 29.70# (0.375wt) P110-IC R1 BTC SMLS | TENARIS | INSPECTED | PO-10695-INS*4 | | 6.00 | EA | - |
| REPUBLIC | CASING | 7-5/8" 29.70# (0.375wt) P110-IC R1 BTC SMLS | TENARIS | RETURN | EPS-22295-RTN | 7 | 311.76 | FT | 4.63 |
| REPUBLIC | CASING | 7-5/8" 29.70# (0.375wt) P110-IC R1 BTC SMLS | TENARIS | INSPECTED | PO-10965-INS*1 | 52 | 2,236.00 | FT | 33.20 |
| REPUBLIC | CASING | 7-5/8" 29.70# (0.375wt) P110-IC R1 BTC SMLS | TENARIS | REPAIRABLE | PO-10965-INS*2 | 13 | 566.99 | FT | 8.42 |
| REPUBLIC | CASING | 7-5/8" 29.70# (0.375wt) P110-IC R1 BTC SMLS | TENARIS | SCRAP | PO-10965-INS*3 | 2 | 73.00 | FT | 1.08 |
| REPUBLIC | CASING | 7-5/8" 29.70# (0.375wt) P110-IC R1 BTC SMLS | TENARIS | PRIME | PO3127 | | | FT | - |
| REPUBLIC | CASING | 7-5/8" 29.70# (0.375wt) P110-IC R3 BTC SMLS | TENARIS | PRIME | PO-5543 | | | FT | - |
| REPUBLIC | COUPLING | 9-5/8" KSS LTC | NA | PRIME | PO-13812 | | 1.00 | EA | - |
| REPUBLIC | CASING | 9-5/8" 34.89# (0.352wt) J55 R3 PE ERW | HLD CLARK | PRIME | PO-11168 | 1 | 42.00 | FT | 0.73 |
| REPUBLIC | MARKER | 9-5/8" 36.00# (0.352wt) J55 R1 LTC ERW MARKER | HLD CLARK | PRIME | 11168/13810/14128 | | 8.00 | EA | - |
| REPUBLIC | MARKER | 9-5/8" 36.00# (0.352wt) J55 R1 LTC ERW MARKER | CH STEEL | PRIME | 22198-RTN/14128 | | 6.00 | EA | - |
| REPUBLIC | MARKER | 9-5/8" 36.00# (0.352wt) J55 R1 LTC ERW MARKER | TENSION | PRIME | 22198-RTN/14128 | | 4.00 | EA | - |
| REPUBLIC | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | TUPER | PRIME | PO-14139 | (13) | | FT | - |
| REPUBLIC | PUP JT | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | CH STEEL | PRIME | EPS-22440-RTN | | 6.00 | EA | - |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | HLD CLARK | RETURN | EPS-22550-RTN | 11 | 473.00 | FT | 9.46 |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | SHIN YANG | RETURN | PO-10484-INS | 12 | 522.00 | FT | 10.44 |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-21841-RTN-1 | 1 | 33.60 | FT | 0.67 |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 LTC ERW | SHIN YANG | INSPECTED | EPS-21841-RTN-2 | 5 | 210.00 | FT | 4.20 |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 LTC ERW | HLD CLARK | INSPECTED | EPS-21841-RTN-3 | 5 | 210.00 | FT | 4.20 |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | SCRAP | EPS-20338-RTN/10484 | 1 | 43.00 | FT | 0.86 |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | VYKSA | RETURN | EPS-22546-RTN | 1 | 40.00 | FT | 0.80 |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | BOLY | PRIME | EPS-22168-RTN-1 | 8 | 344.00 | FT | 6.88 |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC SMLS | INTERPIPE | PRIME | EPS-22168-RTN-1 | 5 | 208.60 | FT | 4.17 |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 LTC SMLS | BOLY | PRIME | EPS-22168-RTN-1 | 1 | 34.00 | FT | 0.68 |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) L80-IC R3 BTC SMLS | TENARIS | PRIME | PO3160 | | | FT | - |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) L80-IC R3 BTC SMLS | TENARIS | PRIME | PO-5053 | | | FT | - |
| REPUBLIC | MARKER | 9-5/8" 40.00# (0.395wt) P110-HC R1 BTC ERW MARKER | VYKSA | RETURN | EPS-22357-RTN-1 | | 1.00 | EA | - |
| REPUBLIC | MARKER | 9-5/8" 40.00# (0.395wt) P110-HC R1 BTC ERW MARKER | AXIS | RETURN | EPS-22357-RTN-2 | | 1.00 | EA | - |
| REPUBLIC | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | AXIS | INSPECTED | EPS-22357-RTN | 8 | 310.00 | FT | 6.20 |
| SAVAGE | LINE PIPE | 2-3/8" 5.03# (0.218wt) X52 PSL-1 DRL PE8 14-16 | WHEATLAND | SCRAP | PO3386 | 2 | 80.00 | FT | 0.20 |
| SAVAGE | LINE PIPE | 3-1/2" 10.26# (0.300wt) X52 PSL-2 DRL PE8 14-16 | WHEATLAND | RETURN | PO2881/3350 | 29 | 1,150.01 | FT | 5.90 |
| SAVAGE | LINE PIPE | 3-1/2" 10.26# (0.300wt) X52 PSL-2 DRL PE8 14-16 | WHEATLAND | REPAIRABLE | PO2881/3350-1 | 32 | 1,475.12 | FT | 7.59 |
| SAVAGE | LINE PIPE | 3-1/2" 10.26# (0.300wt) X52 PSL-2 DRL PE8 14-16 | WHEATLAND | SCRAP | PO2881/3350-1 | 2 | 92.20 | FT | 0.47 |
| SAVAGE | LINE PIPE | 4-1/2" 10.80# (0.237wt) X52 PSL-2 DRL PE8 14-16 | TEX TUBE | PRIME | PO2809 | 12 | 538.00 | FT | 2.91 |
| SAVAGE | LINE PIPE | 4-1/2" 10.80# (0.237wt) X52 PSL-2 DRL PE8 14-16 | TEX TUBE | PRIME | PO2809 | | | FT | - |
| SAVAGE | LINE PIPE | 4-1/2" 10.80# (0.237wt) X52 PSL-2 DRL PE8 14-16 | TEX TUBE | PRIME | PO3476 | | | FT | - |
| SHAWCOR | CASING | 8-5/8" 22.38# (0.250wt) X52-2 DRL PE8 ERW | AXIS | SCRAP | PO3096 | 8 | 401.44 | FT | 4.49 |
| SHAWCOR | LINE PIPE | 8-5/8" 22.38# (0.250wt) X52-2 DRL PE8 ERW | AXIS | SCRAP | PO3314 | 12 | 298.90 | FT | 3.34 |
| SPLENDORA | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | ROBOR | PRIME | PO3188 | | | FT | - |
| SPLENDORA | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | HUSTEEL | PRIME | PO3568 | | | FT | - |
| SPLENDORA | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | BOOMERANG | PRIME | PO3566 | | | FT | - |
| SPLENDORA | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | BOOMERANG | PRIME | PO-4036 | | | FT | - |
| SPLENDORA | COUPLING | 8-5/8"  L80 BTC | QB UNK | SCRAP | PO3369 | | 39.00 | EA | - |
| SPLENDORA | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | TENSION | PRIME | PO-14186 | | | FT | - |
| STALLION | LINE PIPE | 2-3/8" 5.03# (0.218wt) X52 PSL-1 DRL PE8 14-16 | HUSTEEL | PRIME | 12114/12127 | 1 | 396.00 | FT | 1.00 |
| STALLION | LINE PIPE | 3-1/2" 10.26# (0.300wt) X52 PSL-2 DRL PE8 14-16 | WHEATLAND | PRIME | PO3643 | | | FT | - |
| STEWART | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | REPAIRABLE | EPS-19671-RTN | (2) | | FT | - |
| STEWART | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | RETURN | EPS-19671-RTN | 12 | 536.00 | FT | 3.62 |
| STEWART | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | RETURN | EPS-20353-RTN | 27 | 1,235.94 | FT | 8.34 |
| STEWART | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | RETURN | EPS-20713-RTN | 9 | 387.00 | FT | 2.61 |
| STEWART | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | RETURN | EPS-20953-RTN | 2 | 88.78 | FT | 0.60 |
| STEWART | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | RETURN | EPS-21162-RTN | 5 | 227.50 | FT | 1.54 |
| STEWART | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | RETURN | EPS-21344-RTN | 6 | 270.00 | FT | 1.82 |
| STEWART | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | RETURN | EPS-21518-RTN | 11 | 499.19 | FT | 3.37 |
| STEWART | CASING | 4-1/2" 13.50# (0.290wt) P110-ICY R3 TXP BTC SMLS | TENARIS | RETURN | EPS-21654-RTN | 5 | 235.42 | FT | 1.59 |
| STEWART | CASING | 5" 18.00# (0.362wt) P110-ICY R3 TSH 625 SMLS | TENARIS | PRIME | PO-11040 | 2 | 81.50 | FT | 0.73 |
| STEWART | PUP JT | 5-1/2" 23.00# (0.415wt) P110-ICY BLUE PIN R PIN | TENARIS | PRIME | PO-9431/11609 | | 4.00 | EA | - |
| STEWART | CASING | 5-1/2" 23.00# (0.415wt) P110-ICY R3 TSH BLUE SMLS | TENARIS | RETURN | EPS-19814-RTN | | | FT | - |
| STHN TUBE | CASING | 4-1/2" 11.60# (0.250wt) P110-HC R3 BTC ERW | CENTRIC | PRIME | PO-6406 | 19 | 828.40 | FT | 4.80 |
| STHN TUBE | CASING | 5-1/2" 17.00# (0.300wt) P110-HC R3 BTC ERW | CENTRIC | PRIME | PO-3506 | | | FT | - |
| STHN TUBE | CASING | 5-1/2" 17.00# (0.304wt) P110-HY R3 BTC ERW | CENTRIC | PRIME | PO-3507 | | | FT | - |
| STHN TUBE | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | PRIME | PO-3760 | | | FT | - |
| SUPERIOR | MARKER | 5-1/2" 19.83# (0.361wt) P110-MS1 R1 ULTRA SF SMLS | KOPPEL | REPAIRABLE | PO-10500. | | 2.00 | EA | - |
| SUPERIOR | CASING | 5-1/2" 19.83# (0.361wt) P110-MS1 R1 ULTRA SF SMLS | KOPPEL | PRIME | PO-10500 | 3 | 133.43 | FT | 1.32 |
| SUPERIOR | CASING | 5-1/2" 22.56# (0.415wt) P110-CY HP R3 TORQ5FW | TMK | INSPECTED | EPS-21335-RTN | 1 | 23.02 | FT | 0.26 |
| SUPERIOR | CASING | 5-1/2" 23.00# (0.415wt) P110 EY R3 TCPC SMLS | TUBOS REUNIDOS | INSPECTED | EPS-22890-RTN | | | FT | - |
| SUPERIOR | CASING | 5-1/2" 23.00# (0.415wt) P110-ICY R3 TCPC SMLS | TUBOS REUNIDOS | PRIME | EPS-22890-RTN | 1 | 42.00 | FT | 0.48 |
| SUPERIOR | CROSSOVER | 5-1/2" 23.00# (0.415wt) P110-ICY TORQ5FW BOX X | TUBOS REUNIDOS | PRIME | PO-3314/B803 | | 2.00 | EA | - |
| SUPERIOR | CASING | 7" 32.00# (0.453wt) P110-CY R3 BK-HT SMLS | TUBOS REUNIDOS | PRIME | PO-7914. | 1 | 38.40 | FT | 0.61 |
| TECH INDST | CASING | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | RUSTAVI | PRIME | PO-5328 | (4) | | FT | - |
| TEJAS HOU | CASING | 1-1/2" 2.76# (0.145wt) J55 R2 U 10RD ERW | TEJAS TUBULAR | PRIME | PO-5363 | 345 | 11,165.16 | FT | 15.41 |
| TEJAS HOU | CASING | 5-1/2" 17.00# (0.304wt) P110-RY R3 BTC ERW | CENTRIC | PRIME | PO-3761 | 23 | 470.88 | FT | 4.00 |
| TEJAS STVL | CASING | 5-1/2" 17.00# (0.304wt) P110-CY R3 BTC ERW | CENTRIC | PRIME | PO3177 | 40 | 1,668.13 | FT | 14.18 |
| TRANSIT | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | CH STEEL | PRIME | PO3795 | | | FT | - |
| TRANSIT | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | HLD CLARK | PRIME | PO3795 | | | FT | - |
| TRANSIT | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | CH STEEL | PRIME | QB UNK | | | FT | - |
| TRK ENTRPR | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | TENSION | PRIME | PO-9075 | | | FT | - |
| TRK ENTRPR | FLOAT SHOE | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW FLOAT SHOE | HLD CLARK | PRIME | 14139/14254 | | 1.00 | EA | - |
| TRK ENTRPR | FLOAT SHOE | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS FLOAT SHOE | RUSTAVI | PRIME | EPS-11860-RTN/12465 | | 1.00 | EA | - |
| TSI BEAR | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | BORUSAN | SCRAP | PO2076 | 11 | 319.60 | FT | 0.75 |
| TSI BEAR | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | CENTRIC | PRIME | PO-3782 | | 99.41 | FT | 0.32 |
| TSI BEAR | CASING | 4-1/2" 13.05# (0.250wt) LP GRD R3 PE SMLS | ARCELOR MITTAL | PRIME | PO-11619 | 7 | 304.37 | FT | 1.99 |
| TSI BEAR | CROSSOVER | 7" 26.00# (0.362wt) P110-HC R1 LTC BOX X BTC PIN | VALLOUREC | PRIME | 21962/10956 | | 2.00 | EA | - |
| TSI BEAR | CASING | 7" 26.00# (0.362wt) P110-HC R3 LTC SMLS | VALLOUREC | PRIME | EPS-21962-RTN | 8 | 344.00 | FT | 4.47 |
| TSI BEAR | CASING | 7" 26.00# (0.362wt) P110-HC R3 LTC SMLS | VALLOUREC | INSPECTED | EPS-22081-RTN | 1 | 42.00 | FT | 0.55 |

| Customer | Type | Description | Mill | Condition | Part No | Qty | Value | Unit | Price |
|---|---|---|---|---|---|---|---|---|---|
| TSI BEAR | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | TENSION | INSPECTED | EPS-22081-RTN | 1 | 41.96 | FT | 0.76 |
| TSI JPORT | CASING | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | HYUNDAI | PRIME | PO-10418 | 3 | 41.10 | FT | 1.40 |
| TSI JPORT | COUPLING | 4-1/2" K55 LTC | | PRIME | EPS-21222-002 | | 1.00 | EA | |
| TSI JPORT | CASING | 4-1/2" 11.36# (0.250wt) J55 R3 PE ERW | SEAH VINA | PRIME | EPS-21222-002 | 1 | 38.60 | FT | 0.22 |
| TSI JPORT | COUPLING | 5-1/2" L80 LTC | NA | SCRAP | QB UNKNOWN | | 1.00 | EA | |
| TSI JPORT | MARKER | 5-1/2" 23.00# (0.415wt) L80 R1 GEOCONN SMLS MARKER | TMK | SCRAP | PO3436 | | 1.00 | EA | |
| TSI JPORT | MARKER | 5-1/2" 23.00# (0.415wt) L80 R1 GEOCONN SMLS MARKER | VALLOUREC | SCRAP | PO3436 | | 1.00 | EA | |
| TSI JPORT | CASING | 5-1/2" 23.00# (0.415wt) L80 R3 GEOCONN SMLS | VOEST ALPINE | PRIME | PO3436 | 24 | 942.50 | FT | 10.84 |
| TSI JPORT | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | CH STEEL | PRIME | PO-14197 | 30 | 1,284.00 | FT | 23.11 |
| TX PIPE WK | MARKER | 2-3/8" J55 EUE BRD | NA | PRIME | PO2972 | | 2.00 | EA | |
| TSI MCCART | COUPLING | 2-3/8" J55 EUE BRD | NA | PRIME | PO2972 | | 2.00 | EA | |
| TSI MCCART | TUBING | 2-3/8" 4.44# (0.190wt) J55 UPGRADEABLE R2 PE ERW | HUSTEEL | SCRAP | PO2963 | 2 | 65.00 | FT | 0.14 |
| TSI MCCART | TUBING | 2-3/8" 4.70# (0.190wt) L80 R2 EUE BRD ERW | HUSTEEL | PRIME | PO-9293 | 9 | 285.34 | FT | 0.67 |
| TSI MCCART | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | HUSTEEL | SCRAP | QB UNK | 8 | 264.00 | FT | 0.82 |
| TSI MCCART | COUPLING | 2-7/8" L80 EUE BRD | NA | PRIME | PO2972 | | 8.00 | EA | |
| TSI MCCART | TUBING | 3-1/2" 9.30# (0.254wt) J55 R2 EUE BRD SMLS | INTERPIPE | PRIME | PO-5492 | 62 | 1,996.00 | FT | 9.28 |
| TUBO ODESS | TUBING | 2-7/8" 6.50# (0.217wt) L80 R2 EUE BRD ERW | NEXTEEL | SCRAP | QB UNK | 2 | 60.00 | FT | 0.20 |
| TUBO SOUTH | CASING | 5-1/2" 23.00# (0.415wt) P110-RY R3 CDC-HTQ SMLS | US STEEL | PRIME | PO3373 | 2 | 93.60 | FT | 1.08 |
| UNITED HOU | CASING | 5-1/2" 20.00# (0.361wt) P110-CY TCBC-HT ERW | BOOMERANG | PRIME | PO-11874/10789 | | 212.00 | EA | |
| UNITED HOU | COUPLING | 13-3/8" K55 BTC | TMK | PRIME | PO-12092 | | 2.00 | EA | |
| UNITED HOU | CASING | 13-3/8" 52.79# (0.380wt) J55 R3 PE ERW | SEAH | PRIME | PO-11998 | 2 | 80.62 | FT | 2.13 |
| UNITED HOU | CASING | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | CH STEEL | REPAIRABLE | EPS-22215-RTN | 1 | 42.11 | FT | 1.43 |
| UNITED HOU | CASING | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | HYUNDAI | PRIME | PO-10939 | 1 | 20.00 | FT | 0.20 |
| UNITED MID | CASING | 10-3/4" 45.50# (0.400wt) K55-HC R3 BTC ERW | NEXTEEL | USED | EPS-17841-RTN. | 1 | 37.30 | FT | 0.85 |
| UNITED MID | CASING | 13-3/8" 48.00# (0.330wt) J55 STC ERW | SHIN YANG | RETURN | EPS-22530-RTN | 1 | 42.00 | FT | 1.01 |
| UNITED MID | CASING | 13-3/8" 48.00# (0.330wt) J55 R3 STC ERW | SHIN YANG | SCRAP | QB UNK | 1 | 38.00 | FT | 0.91 |
| UNITED MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SEAH | PRIME | EPS-19712-RTN | 8 | 340.24 | FT | 9.27 |
| UNITED MID | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | SEAH | SCRAP | QB UNK | (4) | | FT | |
| UNITED MID | CASING | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | SHIN YANG | REPAIRABLE | EPS-18169-RTN | 2 | 84.40 | FT | 2.87 |
| UNITED MID | CASING | 13-3/8" 68.00# (0.480wt) J55 R3 BTC ERW | SEAH | SCRAP | QB UNK | 2 | 83.30 | FT | 2.83 |
| UNITED MID | CASING | 4-1/2" 13.50# (0.290wt) P110 R3 BTC ERW | TENARIS | INSPECTED | EPS-21207-RTN | (1) | | FT | - |
| UNITED MID | PUP JT | 4-1/2" 13.50# (0.290wt) P110-CY 10FT GBCD SMLS | TENARIS | PRIME | 10169/10213 | | 6.00 | EA | |
| UNITED MID | MARKER | 4-1/2" 13.50# (0.290wt) P110-CY 15 FT TCBC-HT | TENARIS | PRIME | PO-11619/13201 | | 1.00 | EA | |
| UNITED MID | MARKER | 4-1/2" 13.50# (0.290wt) P110-CY R1 GBCD SMLS | TENARIS | PRIME | 10169/10445. | | 2.00 | EA | |
| UNITED MID | PUP JT | 4-1/2" 13.50# (0.290wt) P110-HC R1 BTC ERW | CENTRIC | PRIME | EPS-20662-RTN/12177 | | 4.00 | EA | |
| UNITED MID | MARKER | 4-1/2" 13.50# (0.290wt) P110-HC R1 BTC ERW MARKER | CENTRIC | PRIME | EPS-20662-RTN/12177 | | 1.00 | EA | |
| UNITED MID | CASING | 4-1/2" 13.50# (0.290wt) P110-IC R3 BTC ERW | OMK | SCRAP | EPS-21207-RTN | 4 | 170.60 | FT | 1.15 |
| UNITED MID | CASING | 4-1/2" 13.50# (0.290wt) P110-HY R3 BTC ERW | OMK | SCRAP | EPS-20694-RTN | 1 | 48.00 | FT | 0.32 |
| UNITED MID | MARKER | 5-1/2" 17.00# (0.304wt) L80 R1 LTC ERW MARKER | TENARIS | PRIME | 39506 | | 2.00 | EA | |
| UNITED MID | MARKER | 5-1/2" 17.00# (0.304wt) L80 R1 LTC ERW MARKER | TMK | REPAIRABLE | EPS-17672-RTN. | | 2.00 | EA | |
| UNITED MID | CASING | 5-1/2" 17.00# (0.304wt) L80-A R3 LTC ERW | TENARIS | PRIME | 39506 | 5 | 208.50 | FT | 1.77 |
| UNITED MID | MARKER | 5-1/2" 17.00# (0.304wt) P110-RY BTC ERW 10FT | CENTRIC | PRIME | PO-5506/10245 | | 3.00 | EA | |
| UNITED MID | CASING | 5-1/2" 17.00# (0.304wt) P110-HY R3 BTC ERW | CENTRIC | REPAIRABLE | EPS-20020-RTN. | 1 | 41.81 | FT | 0.36 |
| UNITED MID | CASING | 5-1/2" 17.00# (0.304wt) P110-HY R3 BTC ERW | CENTRIC | PRIME | EPS-20020-RTN... | 1 | 44.97 | FT | 0.38 |
| UNITED MID | MARKER | 5-1/2" 17.00# (0.415wt) P110-HC R1 GBCD ERW MARKER | CENTRIC | PRIME | 11706/14227 | | 2.00 | EA | |
| UNITED MID | MARKER | 5-1/2" 19.83# (0.361wt) P110-HC R1 GBCD PIN X | BOOMERANG | REPAIRABLE | PO-3614 | | 118.00 | EA | |
| UNITED MID | CROSSOVER | 5-1/2" 20.00 (0.361wt) P110-HC GBCD BOX X TCBC-HT | BOOMERANG | RETURN | EPS-22553-RTN | | 1.00 | EA | |
| UNITED MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY 10FT TCBC-HT SMLS | BOOMERANG | PRIME | PO-12950/13382 | | 32.00 | EA | |
| UNITED MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-CY R1 TCBC-HT SMLS | BOOMERANG | PRIME | PO-12950/13383 | | 4.00 | EA | |
| UNITED MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 PE SMLS | TMK | PRIME | PO6912/6913 | 6 | 243.40 | FT | 2.43 |
| UNITED MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | PRIME | 20554-21196-RTN | 11 | 474.40 | FT | 4.74 |
| UNITED MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | PRIME | EPS-19474-RTN. | 1 | 44.00 | FT | 0.44 |
| UNITED MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | PRIME | EPS-21434-RTN | 1 | 43.92 | FT | 0.44 |
| UNITED MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | HYUNDAI | PRIME | EPS-22208-RTN. | 13 | 585.53 | FT | 5.86 |
| UNITED MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | PRIME | M-14395 | 22 | 951.92 | FT | 9.52 |
| UNITED MID | CASING | 5-1/2" 20.00# (0.361wt) P110-CY R3 TCBC-HT ERW | BOOMERANG | PRIME | M-14396 | 5 | 217.00 | FT | 2.17 |
| UNITED MID | PUP JT | 5-1/2" 20.00# (0.361wt) P110-HC R1 GBCD ERW | BOOMERANG | PRIME | 3614/14246 | | 12.00 | EA | |
| UNITED MID | PUP JT | 5-1/2" 20.00# (0.361wt) P110-HC R1 TCBC-HT SMLS | BOOMERANG | RETURN | EPS-22556-RTN | | 5.00 | EA | |
| UNITED MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC R3 GBCD ERW | BOOMERANG | PRIME | PO-3614 | 7 | 155.35 | FT | 1.55 |
| UNITED MID | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | PRIME | EPS-20270-RTN | 13 | 574.70 | FT | 5.75 |
| UNITED MID | MARKER | 5-1/2" 20.00# (0.361wt) P110-HC TCBC-HT ERW | BOOMERANG | INSPECTED | EPS-20444-RTN | | 2.00 | EA | |
| UNITED MID | MARKER | 5-1/2" 23.00# (0.415wt) P110-HC TCBC-HT ERW | BOOMERANG | PRIME | PO-5101/6364 | | 3.00 | EA | |
| UNITED MID | MARKER | 5-1/2" 23.00# (0.415wt) P110-HC TCBC-HT ERW | BOOMERANG | PRIME | PO-5295/6360 | | 1.00 | EA | |
| UNITED MID | CASING | 5-1/2" 23.00# (0.415wt) P110-HC R3 TCBC-HT ERW | BOOMERANG | PRIME | EPS-20657-RTN | 3 | 131.10 | FT | 1.51 |
| UNITED MID | COUPLING | 5-1/2" P110-CY TCBC-HT | NA | PRIME | PO-13828 | | 639.00 | EA | |
| UNITED HOU | CASING | 7" 26.00# (0.362wt) P110 R3 BTC ERW | NEXTEEL | SCRAP | EPS-20037-RTN/5757 | 2 | 63.20 | FT | 0.82 |
| UNITED HOU | CASING | 7" 26.00# (0.362wt) P110 R3 LTC ERW | NEXTEEL | INSPECTED | EPS-20037-RTN | | | FT | |
| UNITED HOU | CASING | 7" 26.00# (0.362wt) P110 R3 LTC ERW | NEXTEEL | SCRAP | EPS-21189-RTN. | 1 | 45.15 | FT | 0.59 |
| UNITED HOU | CASING | 7" 26.00# (0.362wt) P110 R3 LTC ERW | NA | PRIME | PO-5208 | | | FT | - |
| UNITED MID | CROSSOVER | 7" 26.00# (0.362wt) P110-HC R1 LTC BOX X BTC PIN | NEXTEEL | PRIME | EPS-21392-RTN | | 4.00 | EA | |
| UNITED HOU | CASING | 7" 32.00# (0.453wt) P110-CY R3 DQX SMLS | TMK | REPAIRABLE | PO-6909/7974. | 6 | 241.40 | FT | 3.86 |
| UNITED HOU | CASING | 7" 32.00# (0.453wt) P110-CY R3 PE SMLS | TMK | PRIME | PO-6909 | 1 | 8.20 | FT | 0.13 |
| UNITED HOU | MARKER | 7-5/8" 29.70# (0.375wt) P110-HC R1 LTC ERW MARKER | BORUSAN | PRIME | EPS-18319-RTN | | 1.00 | EA | |
| UNITED MID | PUP JT | 8-5/8" 32.00# (0.352wt) J55 R1 BTC ERW | KHC | PRIME | PO3233 | | 2.00 | EA | |
| UNITED MID | PUP JT | 8-5/8" 32.00# (0.352wt) J55 R1 BTC ERW | NEXTEEL | PRIME | PO3233 | | 2.00 | EA | |
| UNITED MID | CASING | 8-5/8" 32.00# (0.352wt) L80-HC R3 BTC ERW | NEXTEEL | PRIME | EPS-19624-RTN/12770 | 1 | 33.70 | FT | 0.54 |
| UNITED MID | CASING | 8-5/8" 32.00# (0.352wt) L80-HC R3 BTC ERW | NA | USED | EPS-19624-RTN-02 | 1 | 31.30 | FT | 0.50 |
| UNITED MID | CASING | 8-5/8" 32.00# (0.352wt) L80-HC R3 BTC ERW | BOOMERANG | RETURN | EPS-22288-RTN | 13 | 546.00 | FT | 8.74 |
| UNITED MID | CASING | 8-5/8" 32.00# (0.352wt) L80-HC R3 BTC ERW | TENARIS | USED | EPS-19625-RTN | 1 | 41.60 | FT | 0.67 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | PRIME | 21586-RTN/13088 | 25 | 1,073.48 | FT | 21.47 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | EVRAZ | PRIME | EPS-19424-RTN. | 4 | 170.08 | FT | 3.40 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | RETURN | EPS-21705-RTN | 3 | | FT | - |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) J55 R3 BTC ERW | BOOMERANG | SCRAP | EPS-21122-RTN. | 2 | 91.10 | FT | 1.82 |
| UNITED MID | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | AXIS | SCRAP | EPS-18872-RTN | | 1.00 | EA | |
| UNITED MID | MARKER | 9-5/8" 40.00# (0.395wt) L80-HC R1 BTC ERW | AXIS | PRIME | EPS-19771-RTN | | 1.00 | EA | |
| UNITED MID | BAKERLOK | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC BAKERLOK ERW | AXIS | PRIME | EPS-19727-RTN | | 1.00 | EA | |
| UNITED MID | BAKERLOK | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC BAKERLOK ERW | AXIS | USED | EPS-19727-RTN | | 1.00 | EA | |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | PRIME | EPS-18874-RTN. | 1 | 51.50 | FT | 1.03 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | USED | EPS-18874-RTN.2 | 1 | 44.60 | FT | 0.89 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20215-RTN | (1) | | FT | - |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20274-RTN. | (5) | | FT | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20275-RTN | (1) | FT | - |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | REPAIRABLE | EPS-20416-RTN | (2) | FT | |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-20995-RTN | 1 | 44.98 FT | 0.90 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | BOOMERANG | SCRAP | EPS-21586-RTN | 1 | 44.80 FT | 0.90 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | PRIME | QB UNK | | 122.80 FT | 2.46 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | PRIME | QB UNK | (5) | (82.80) FT | (1.66) |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | TENARIS | SCRAP | QB UNK.. | 1 | 15.30 FT | 0.31 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 BTC ERW | AXIS | PRIME | EPS-1887A-RTN | 1 | 45.70 FT | 0.91 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BORUSAN | PRIME | EPS-19782-RTN | 41 | 1,805.73 FT | 36.11 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | REPUBLIC TUBE | PRIME | EPS-19782-RTN | 3 | 113.00 FT | 2.26 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | TMK | PRIME | EPS-19782-RTN | 30 | 1,196.50 FT | 23.93 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | BOOMERANG | PRIME | EPS-20935-RTN | 16 | 701.92 FT | 14.04 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | AXIS | SCRAP | PO2591 | (4) | FT | - |
| UNITED MID | CASING | 9-5/8" 40.00# (0.395wt) P110-HC R3 BTC ERW | AXIS | PRIME | PO-2591 | 9 | 398.18 FT | 7.96 |
| UNITED MID | CASING | 9-5/8" 40.00# (0.472wt) P110-HC R3 BTC ERW | BORUSAN | PRIME | EPT-1744 | 1 | 43.00 FT | 0.86 |
| UNITED MID | CASING | 9-5/8" 53.50# (0.545wt) P110-HC R3 BTC ERW | REPUBLIC TUBE | PRIME | 39506 | 1 | 44.60 FT | 1.19 |
| UNITED MID | CASING | 9-5/8" 53.50# (0.545wt) P110-HC R3 BTC ERW FLOAT | NEXTEEL | PRIME | EPS-17725-RTN | | 1.00 EA | |
| UNITED MID | LANDING JT | 9-5/8" 53.50# (0.545wt) P110-HC R3 BTC ERW LANDING | NEXTEEL | PRIME | 39506 | | 1.00 EA | |
| WASHITA | CASING | 13-3/8" 48.00# (0.330wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-22360-RTN | 3 | 120.55 FT | 2.89 |
| WASHITA | CASING | 13-3/8" 48.00# (0.330wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20360-RTN | 2 | 76.60 FT | 1.84 |
| WASHITA | CASING | 13-3/8" 48.00# (0.330wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-20365-RTN | 4 | 169.00 FT | 4.06 |
| WASHITA | CASING | 13-3/8" 48.00# (0.330wt) J55 R3 BTC ERW | SHIN YANG | SCRAP | EPS-20365-RTN | 1 | 38.00 FT | 0.91 |
| WASHITA | CASING | 13-3/8" 48.00# (0.330wt) J55 R3 BTC ERW | SHIN YANG | INSPECTED | EPS-20525-RTN | 1 | 41.85 FT | 1.00 |
| WASHITA | CASING | 13-3/8" 48.00# (0.330wt) J55 R3 BTC ERW | SHIN YANG | PRIME | PO-5483 | 2 | 85.67 FT | 2.06 |
| WASHITA | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | RETURN | PO3632 | 2 | 87.65 FT | 2.39 |
| WASHITA | CASING | 13-3/8" 54.50# (0.380wt) J55 R3 BTC ERW | PARAGON | SCRAP | PO3632 | 1 | 35.01 FT | 0.95 |
| WASHITA | TUBING | 3-1/2" 9.30# (0.254wt) J55 R2 EUE BRD SMLS | INTERPIPE | SCRAP | PO-5492 | 1 | 32.32 FT | 0.15 |
| WASHITA | TUBING | 3-1/2" 9.30# (0.254wt) J55 R2 EUE BRD TK-70 SMLS | INTERPIPE | PRIME | 5492/5495 | 51 | 1,672.00 FT | 7.77 |
| WASHITA | CASING | 4-1/2" 11.36# (0.250wt) J55 R3 PE ERW | SEAH VINA | SCRAP | PO-8237 | 3 | 119.13 FT | 0.68 |
| WASHITA | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 BK SMLS | BOLY | RETURN | EPS-20567-RTN | 31 | 1,268.65 FT | 8.56 |
| WASHITA | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 BK SMLS | BOLY | INSPECTED | PO-5462 | 5 | 205.00 FT | 1.38 |
| WASHITA | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 BK SMLS | BOLY | SCRAP | PO-5462 | 178 | 7,183.94 FT | 48.49 |
| WASHITA | MARKER | 4-1/2" 13.50# (0.290wt) P110-RY R1 BTC ERW MARKER | CENTRIC | RETURN | EPS-20619-.RTN | | 1.00 EA | |
| WASHITA | CASING | 4-1/2" 13.50# (0.290wt) P110-RY R3 BTC ERW | CENTRIC | PRIME | EPS-20619-RTN | 3 | 130.70 FT | 0.88 |
| WASHITA | CASING | 4-1/2" 13.50# (0.290wt) P110-RY R3 BTC ERW | CENTRIC | SCRAP | EPS-20619-RTN | 1 | 45.00 FT | 0.30 |
| WASHITA | CASING | 4-1/2" 13.50# (0.290wt) P110-HC R3 BTC ERW | CENTRIC | SCRAP | PO-5771 | 13 | 606.55 FT | 4.09 |
| WASHITA | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 ULTRA SF SMLS | TUBOS REUNIDOS | SCRAP | PO-2086 | 1 | 44.00 FT | 0.44 |
| WASHITA | CASING | 5-1/2" 20.00# (0.361wt) P110-HC R3 ULTRA SF SMLS | US STEEL | SCRAP | QB UNKNOWN | (1) | FT | - |
| WASHITA | CASING | 5-1/2" 23.00# (0.415wt) P110-HC R3 CDC-HTQ ERW | US STEEL | SCRAP | QB UNK | 6 | 194.45 FT | 2.24 |
| WASHITA | MARKER | 5-1/2" 23.00# (0.415wt) P110-RY R1 CDC-HTQ ERW | TUBOS REUNIDOS | SCRAP | QB UNKNOWN | | 1.00 EA | |
| WASHITA | CASING | 7" 26.00# (0.362wt) L80 R3 BTC ERW | BESTEEL | INSPECTED | EPS-18832-RTN | 5 | 221.60 FT | 2.88 |
| WASHITA | CASING | 7" 26.00# (0.362wt) L80 R3 BTC ERW | HUSTEEL | INSPECTED | EPS-18832-RTN | 2 | 88.35 FT | 1.15 |
| WASHITA | CASING | 7" 26.00# (0.362wt) L80 R3 BTC ERW | HUSTEEL | RETURN | EPS-18832-RTN | 2 | 88.25 FT | 1.15 |
| WASHITA | CASING | 7" 26.00# (0.362wt) L80 R3 BTC ERW | NEXTEEL | INSPECTED | EPS-18832-RTN | 1 | 41.35 FT | 0.54 |
| WASHITA | CASING | 7" 26.00# (0.362wt) L80 R3 BTC ERW | TPCO | INSPECTED | EPS-20555-RTN | 13 | 551.05 FT | 7.16 |
| WASHITA | CASING | 7" 26.00# (0.362wt) L80 R3 BTC ERW | TPCO | PRIME | PO-5832 | 16 | 639.65 FT | 8.32 |
| WASHITA | CASING | 7" 26.00# (0.362wt) L80 R3 BTC ERW | TPCO | SCRAP | PO-5832 | 1 | 41.00 FT | 0.53 |
| WASHITA | CASING | 7" 29.00# (0.408wt) P110-HC R3 LTC SMLS | REPUBLIC TUBE | PRIME | EPS-20539-RTN | 1 | 44.10 FT | 0.64 |
| WASHITA | CASING | 7" 29.00# (0.408wt) P110-HC R3 LTC SMLS | REPUBLIC TUBE | RETURN | EPS-20539-RTN | 1 | 43.50 FT | 0.63 |
| WASHITA | CASING | 7" 29.00# (0.408wt) P110-HC R3 LTC SMLS | REPUBLIC TUBE | PRIME | EPS-20679-RTN | 1 | 41.11 FT | 0.60 |
| WASHITA | CASING | 7" 29.00# (0.408wt) P110-HC R3 LTC SMLS | REPUBLIC TUBE | PRIME | PO-5450 | 46 | 1,809.15 FT | 26.23 |
| WASHITA | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | SHIN YANG | INSPECTED | EPS-19780-RTN | | FT | - |
| WASHITA | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | SHIN YANG | RETURN | EPS-19780-RTN | | FT | - |
| WASHITA | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | SHIN YANG | INSPECTED | EPS-19783-RTN | | FT | - |
| WASHITA | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | SHIN YANG | INSPECTED | EPS-19800-RTN | | FT | - |
| WASHITA | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | SHIN YANG | RETURN | EPS-19800-RTN | | FT | - |
| WASHITA | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | PARAGON | SCRAP | EPS-20526-RTN | 1 | 24.85 FT | 0.45 |
| WASHITA | CASING | 9-5/8" 36.00# (0.352wt) J55 R3 LTC ERW | RUSTAVI | SCRAP | EPS-20417-RTN | 1 | 32.40 FT | 0.58 |
| WASHITA | CASING | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | RUSTAVI | INSPECTED | EPS-20519-RTN | 1 | 30.55 FT | 0.55 |
| WASHITA | CASING | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | RUSTAVI | INSPECTED | EPS-20519-RTN | 2 | 78.60 FT | 1.41 |
| WASHITA | CASING | 9-5/8" 36.00# (0.352wt) K55 R3 LTC SMLS | RUSTAVI | SCRAP | PO-5327 | 1 | 30.18 FT | 0.54 |
| WASHITA | CASING | 9-5/8" 40.00# (0.395wt) K55 R3 LTC SMLS | RUSTAVI | RETURN | EPS-20415-RTN | 7 | 275.15 FT | 5.50 |
| WASHITA | CASING | 9-5/8" 40.00# (0.395wt) K55 R3 LTC SMLS | RUSTAVI | SCRAP | PO-5325 | 2 | 88.70 FT | 1.77 |
| WASHITA | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 LTC ERW | PARAGON | INSPECTED | EPS-20608-RTN | 6 | 238.10 FT | 4.76 |
| WASHITA | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 LTC ERW | AXIS | INSPECTED | EPS-20608-RTN | 1 | 44.10 FT | 0.88 |
| WASHITA | CASING | 9-5/8" 40.00# (0.395wt) L80-HC R3 LTC ERW | AXIS | PRIME | PO-5496 | 81 | 3,532.83 FT | 70.66 |
| WOMBLE | LINE PIPE | 10-3/4" 34.27# (0.307wt) X52 PSL-2 DRL PEB 14-16 | BORUSAN | PRIME | 9252/9253 | 43 | 1,976.70 FT | 33.87 |
| WOMBLE | LINE PIPE | 20" 64.84# (0.308wt) X65 PSL-2 TRL PEB ERW | PROCARSA | REJECT | PO-11634-1 | 1 | 53.80 FT | 1.74 |
| WOMBLE | LINE PIPE | 20" 64.84# (0.308wt) X65 PSL-2 TRL PEB ERW 14-16 | PROCARSA | REJECT | 9407//12660 | 7 | 368.90 FT | 11.96 |
| WOMBLE | LINE PIPE | 8-5/8" 22.38# (0.250wt) X52 PSL-2 DRL PEB ERW | SEAH | REJECT | EPS-22435-RTN | 1 | 42.10 FT | 0.47 |
| | | | | | | | | 11,675.09 |

**SCHEDULE 2.1(b)**
**Intellectual Property**

None.

Case 20-34879   Document 178-1   Filed in TXSB on 11/30/20   Page 94 of 112

**SCHEDULE 2.1(e)**
**Permits**

None.

**SCHEDULE 2.1(i)**

**Accounts**

See attached (updated as of November 18, 2020).

## Current A/R

| Cust No. | Name | Aging Date (Due Date) | Description | Document Type | Document No. | Balance Due | Perectage | Net Amount |
|---|---|---|---|---|---|---|---|---|
| C0198 | BAYSWATER EXPLORATION AND PRODUCTION LLC | 11/18/2020 | Order EPS-23488 | Invoice | 13612 | $ 16,209.35 | 85.00% | $ 13,777.95 |
| C0198 | BAYSWATER EXPLORATION AND PRODUCTION LLC | 11/18/2020 | Order EPS-23338 | Invoice | 13613 | $ 4,218.90 | 85.00% | $ 3,586.07 |
| C0198 | BAYSWATER EXPLORATION AND PRODUCTION LLC | 11/20/2020 | Order EPS-23339 | Invoice | 13621 | $ 3,241.35 | 85.00% | $ 2,755.15 |
| C0198 | BAYSWATER EXPLORATION AND PRODUCTION LLC | 11/28/2020 | Order EPS-23340 | Invoice | 13628 | $ 82,485.95 | 85.00% | $ 70,113.06 |
| C0198 | BAYSWATER EXPLORATION AND PRODUCTION LLC | 11/29/2020 | Order EPS-23340 | Invoice | 13639 | $ 82,592.78 | 85.00% | $ 70,203.86 |
| C0198 | BAYSWATER EXPLORATION AND PRODUCTION LLC | 12/9/2020 | Order EPS-23340 | Invoice | 13648 | $ 46,776.01 | 85.00% | $ 39,759.61 |
| C0198 | BAYSWATER EXPLORATION AND PRODUCTION LLC | 12/9/2020 | Order EPS-23340 | Invoice | 13649 | $ 82,743.53 | 85.00% | $ 70,332.00 |
| C0198 | BAYSWATER EXPLORATION AND PRODUCTION LLC | 12/13/2020 | Order EPS-23341 | Invoice | 13656 | $ 6,817.13 | 85.00% | $ 5,794.56 |
| C0198 | BAYSWATER EXPLORATION AND PRODUCTION LLC | 12/16/2020 | Order EPS-23342 | Invoice | 13665 | $ 6,379.80 | 85.00% | $ 5,422.83 |
| C0018 | CHARTER PIPE LLC | 12/10/2020 | Invoice 10471 | Invoice | 13653 | $ 311,502.35 | 85.00% | $ 264,777.00 |
| C0018 | CHARTER PIPE LLC | 12/11/2020 | Order EPS-23504 | Invoice | 13655 | $ 64,506.00 | 85.00% | $ 54,830.10 |
| C0105 | COMMERCIAL STEEL PRODUCTS LLC | 11/8/2020 | Order EPS-23462 | Invoice | 13604 | $ 66,843.60 | 85.00% | $ 56,817.06 |
| C0105 | COMMERCIAL STEEL PRODUCTS LLC | 11/18/2020 | Order EPS-23494 | Invoice | 13616 | $ 66,082.00 | 85.00% | $ 56,169.70 |
| C0105 | COMMERCIAL STEEL PRODUCTS LLC | 11/29/2020 | Order EPS-23498 | Invoice | 13636 | $ 228,441.32 | 85.00% | $ 194,175.12 |
| C0150 | DJR ENERGY | 4/30/2020 | Order EPS-22915 | Invoice | 13025 | $ 25,941.30 | 85.00% | $ 22,050.11 |
| C0150 | DJR ENERGY | 11/28/2020 | Order EPS-23501 | Invoice | 13627 | $ 4,491.59 | 85.00% | $ 3,817.85 |
| C0090 | ENDURING RESOURCES | 11/14/2020 | Order EPS-23489 | Invoice | 13606 | $ 38,693.28 | 85.00% | $ 32,889.29 |
| C0156 | EOG RESOURCES INC (MIDLAND) | 12/16/2020 | Order EPS-23507 | Invoice | 13672 | $ 11,117.15 | 85.00% | $ 9,449.58 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/19/2020 | Order EPS-23396 | Invoice | 13617 | $ 35,586.46 | 85.00% | $ 30,248.49 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/19/2020 | Order EPS-23397 | Invoice | 13618 | $ 35,586.46 | 85.00% | $ 30,248.49 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/19/2020 | Order EPS-23398 | Invoice | 13619 | $ 35,586.46 | 85.00% | $ 30,248.49 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/22/2020 | Order EPS-23399 | Invoice | 13623 | $ 35,854.62 | 85.00% | $ 30,476.43 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/22/2020 | Order EPS-23400 | Invoice | 13624 | $ 35,854.62 | 85.00% | $ 30,476.43 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/22/2020 | Order EPS-23401 | Invoice | 13625 | $ 35,854.45 | 85.00% | $ 30,476.28 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/29/2020 | Order EPS-23402 | Invoice | 13630 | $ 35,312.95 | 85.00% | $ 30,016.01 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/29/2020 | Order EPS-23403 | Invoice | 13631 | $ 35,312.96 | 85.00% | $ 30,016.02 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/29/2020 | Order EPS-23404 | Invoice | 13632 | $ 34,338.23 | 85.00% | $ 29,187.50 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/29/2020 | Order EPS-23408 | Invoice | 13633 | $ 35,962.38 | 85.00% | $ 30,568.02 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/29/2020 | Order EPS-23409 | Invoice | 13634 | $ 35,962.21 | 85.00% | $ 30,567.88 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/29/2020 | Order EPS-23410 | Invoice | 13635 | $ 35,962.21 | 85.00% | $ 30,567.88 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/29/2020 | Order EPS-23411 | Invoice | 13637 | $ 35,255.98 | 85.00% | $ 29,967.58 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 11/29/2020 | Order EPS-23412 | Invoice | 13638 | $ 35,255.81 | 85.00% | $ 29,967.44 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/6/2020 | Order EPS-23413 | Invoice | 13643 | $ 35,071.20 | 85.00% | $ 29,810.52 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/6/2020 | Order EPS-23414 | Invoice | 13644 | $ 36,487.49 | 85.00% | $ 31,014.37 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/6/2020 | Order EPS-23415 | Invoice | 13645 | $ 35,388.65 | 85.00% | $ 30,080.35 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/6/2020 | Order EPS-23464 | Invoice | 13646 | $ 35,388.65 | 85.00% | $ 30,080.35 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/6/2020 | Order EPS-23465 | Invoice | 13647 | $ 35,388.48 | 85.00% | $ 30,080.21 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/13/2020 | Order EPS-23477 | Invoice | 13657 | $ 35,123.32 | 85.00% | $ 29,854.82 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/13/2020 | Order EPS-23478 | Invoice | 13658 | $ 35,123.49 | 85.00% | $ 29,854.97 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/13/2020 | Order EPS-23471 | Invoice | 13659 | $ 35,351.55 | 85.00% | $ 30,048.82 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/13/2020 | Order EPS-23472 | Invoice | 13660 | $ 35,351.55 | 85.00% | $ 30,048.82 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/13/2020 | Order EPS-23473 | Invoice | 13661 | $ 35,403.68 | 85.00% | $ 30,093.13 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/13/2020 | Order EPS-23474 | Invoice | 13662 | $ 35,403.84 | 85.00% | $ 30,093.26 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/13/2020 | Order EPS-23469 | Invoice | 13663 | $ 35,176.46 | 85.00% | $ 29,899.99 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/13/2020 | Order EPS-23470 | Invoice | 13664 | $ 35,176.45 | 85.00% | $ 29,899.98 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/16/2020 | Order EPS-23466 | Invoice | 13666 | $ 31,020.60 | 85.00% | $ 26,367.51 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/16/2020 | Order EPS-23467 | Invoice | 13667 | $ 35,193.33 | 85.00% | $ 29,914.33 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/16/2020 | Order EPS-23468 | Invoice | 13668 | $ 35,193.33 | 85.00% | $ 29,914.33 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/16/2020 | Order EPS-23475 | Invoice | 13669 | $ 35,377.78 | 85.00% | $ 30,071.11 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/16/2020 | Order EPS-23476 | Invoice | 13670 | $ 35,377.95 | 85.00% | $ 30,071.26 |
| C0230 | GREAT WESTERN OPERATING COMPANY LLC | 12/16/2020 | Order EPS-23479 | Invoice | 13671 | $ 39,071.83 | 85.00% | $ 33,211.06 |
| C0228 | HIGHPEAK ENERGY HOLDINGS INC | 12/5/2020 | Order EPS-23503 | Invoice | 13642 | $ 940.69 | 85.00% | $ 799.59 |
| C0228 | HIGHPEAK ENERGY HOLDINGS INC | 12/17/2020 | Order EPS-23443 | Invoice | 13676 | $ 194,173.90 | 85.00% | $ 165,047.82 |
| C0041 | LARAMIE ENERGY LLC | 11/29/2020 | Order EPS-23499 | Invoice | 13629 | $ 415.60 | 85.00% | $ 353.26 |
| C0249 | MARCO INTERNATIONAL | 11/1/2020 | Order EPS-23312 | Invoice | 13514 | $ 250,000.00 | 85.00% | $ 212,500.00 |
| C0259 | MIDSTREAM VALVE PARTNERS | 11/10/2020 | MIDSTREAM VALVE PARTNERS | Payment | RCTJNL01456 | $ (4,056.72) | 85.00% | $ (3,448.21) |
| C0259 | MIDSTREAM VALVE PARTNERS | 11/17/2020 | Order EPS-23514 | Invoice | 13674 | $ 4,877.61 | 85.00% | $ 4,145.97 |
| C0183 | NOBLE ENERGY MIDSTREAM | 1/17/2021 | Order EPS-23373 | Invoice | 13673 | $ 439,795.61 | 85.00% | $ 373,826.27 |
| C0052 | PATRIOT THREADING | 10/26/2020 | Invoice 10459 | Invoice | 13560 | $ 311,673.83 | 85.00% | $ 264,922.76 |
| C0052 | PATRIOT THREADING | 11/28/2020 | Order EPS-23492 | Invoice | 13626 | $ 51,013.58 | 85.00% | $ 43,361.54 |
|  | Patriot Processing Offset |  |  |  |  | $ (52,000.00) | 85.00% | $ (44,200.00) |
| C0129 | PETROSMITH | 12/17/2020 | Order EPS-23512 | Invoice | 13675 | $ 245.10 | 85.00% | $ 208.34 |
| C0132 | R LACY SERVICES LTD | 11/18/2020 | Invoice 10469 | Invoice | 13614 | $ 1,299.00 | 85.00% | $ 1,104.15 |
| C0132 | R LACY SERVICES LTD | 12/17/2020 | Order EPS-23509 | Invoice | 13673 | $ 649.50 | 85.00% | $ 552.08 |
| C0069 | SANDRIDGE ENERGY | 11/13/2020 | Order EPS-23419 | Invoice | 13594 | $ 2,718.31 | 85.00% | $ 2,310.56 |
| C0077 | TENARIS GLOBAL SERVICES USA CORP | 11/18/2020 | Order EPS-23493 | Invoice | 13615 | $ 29,085.48 | 85.00% | $ 24,722.66 |
|  |  |  |  |  |  | $3,548,670.31 |  | $3,016,369.76 |

Case 20-34979 Document 1781 Filed in TXSB on 11/30/20 Page 96 of 123

## Long Term Residual A/R

| Cust No. | Name | Aging Date (Due Date) | Description | Document Type | Document No. | Balance Due | Perectage | Net Amount |
|----------|------|----------------------|-------------|---------------|--------------|-------------|-----------|------------|
| C0150 | DJR ENERGY | 9/23/2021 | Order EPS-23420 | Invoice | 13586 | $ 390,406.36 | 10.00% | $ 39,040.64 |
| C0090 | ENDURING RESOURCES | 7/24/2021 | Order EPS-23295 | Invoice | 13499 | $2,094,674.99 | 10.00% | $ 209,467.50 |
| C0090 | ENDURING RESOURCES | 7/31/2021 | Order EPS-23302 | Invoice | 13513 | $1,574,617.33 | 10.00% | $ 157,461.73 |
| | | | | | | $4,059,698.68 | | $ 405,969.87 |

**SCHEDULE 2.2**
**Material Contracts; Leases; Cure Amounts**

**Material Contracts and Leases:**

Material Contracts and Leases will be negotiated on behalf of the new entity and no previous contracts
will be assumed.

**Cure Amounts:**

1. BOA Midland Acquisition, L.P. - $[3,489.66]
2. BDO USA, LLP - $[4,910.13]
3. Delta Property Texas Advisors LLC –$[23,579.08]
4. GB Connections - $71,935.11
5. Cure Amounts owed to Warehouse Locations:
   a. Beemac Midland - $[87,317.52]
   b. Black Hills Evansville, WY – [$1,250.00]
   c. Commercial Resins (CO) - $[10,195.76]
   d. CPS Baytown - $[2,353.58]
   e. Deep Well Tubular Services - $[500.00]
   f. Duffy Crain and Hauling - $[816.00]
   g. EL Farmer Midland - $[1,800.00]
   h. Fort Worth Pipe Services Pennsylvania - $[600.00]
   i. Fort Worth Pipe Services Texas - $[1,200.00]
   j. Independent Pipe Services - $[4,500.00]
   k. IOS Inspection Oilfield Service - $[3,136.00]
   l. IOS Midland - $[2,700.00]
   m. Lundvall Enterprises - $[4,780.41]
   n. McClatchy Bros Yard - $[6,750.00]
   o. MM Welding and Construction Inc. - $[2,500.00]
   p. NOV Wellbore Technologies - $[1,987.10]
   q. OFSI Odessa - $[1,500.00]
   r. Pinnacle Machine Processing - $2,986.00
   s. Republic Tube - $[5,919.75]
   t. Savage Services ND - $[900.00]
   u. Stallion Oilfield - $[1,950.00]
   v. United Casing Houston [$500.00]
   w. United Casing Midland [$1,000.00]
   x. Washita Valley - $[1,500.00]

**Offices:**

| Name | Address | City | ZIP Code | State | DEPOSIT |
|---|---|---|---|---|---|
| HOUSTON OFFICE | 9525 KATY FWY STE 306 | HOUSTON | 77002 | TX | - |

| DENVER OFFICE | 1228 15TH ST STE 200 | DENVER | 80202 | CO | $2,990.00 |
| MIDLAND OFFICE | 306 W WALL ST STE 215 | MIDLAND | 79701 | TX | $1,347.50 |

**Warehouses**:

| Name | Address | City | ZIP Code | State |
|------|---------|------|----------|-------|
| A&A COATERS | 3679 FM 250 | LONE STAR | 75668 | TX |
| ALL TRANS | 9640 CLINTON DR 5 | HOUSTON | 77029 | TX |
| AM THREADERS | 16185 MCR 20 | FORT MORGAN | 80701 | CO |
| ARCTIC PIPE INSPECTION | 9500 SHELDON RD | HOUSTON | 77049 | TX |
| ATLAS TUBULAR ODESSA | 12017 W COUNTY RD 125 | ODESSA | 79765 | TX |
| AXIS PIPE AND TUBE | 1451 LOUIS E MIKULIN RD | BRYAN | 77807 | TX |
| BEEMAC MIDLAND | 2700 FM RD 307 | MIDLAND | 79706 | TX |
| BHM YARD | 11615 CROSBY LYNCHBURG RD | CROSBY | 77532 | TX |
| BISON RIG SITE | | | | |
| BLESS OILFIELD SERVICES | 6301 E MT HOUSTON RD | HOUSTON | 77050 | TX |
| BLACK HILLS EVANSVILLE WY | 9214 HWY 20 | EVANSVILLE | 82636 | WY |
| BLACK HILLS GILLETTE WY | 101 ENTERPRISE AVE | GILLETTE | 82716 | WY |
| BOOMERANG TUBE | 1100 FM 3361 | LIBERTY | 77575 | TX |
| BORUSAN YARD | 4949 BORUSAN RD | BAYTOWN | 77523 | TX |
| CAST TRANSPORTATION | 9850 HAVANA ST | HENDERSON | 80640 | CO |
| CENTRIC PIPE YARD | 9670 US 259 | ORE CITY | 75683 | TX |
| CM SERVICE | 7411 MESA DR | HOUSTON | 77028 | TX |
| COMMERCIAL RESINS (CO) | 8100 E 96th Ave | HENDERSON | 80640 | CO |
| COMMERCIAL RESINS (NE) | 2321 INDUSTRIAL AVE NO 1 | SIDNEY | 69162 | NE |
| CONESTOGA SUPPLY | 11011 SHELDON RD | HOUSTON | 77044 | TX |
| COX LOGISTICS TERMINAL | 2294 FM 250 | LONE STAR | 75668 | TX |
| CPS BAYTOWN | 6225 FM 1942 | BAYTOWN | 77521 | TX |
| CPS CHANNELVIEW | 301 S SHELDON RD | CHANNELVIEW | 77530 | TX |
| CUB CREEK RIG SITE | | | | |

| Name | Address | City | ZIP Code | State |
|------|---------|------|----------|-------|
| DEEP WELL TUBULAR SERVICES | 6604 W HWY 80 | MIDLAND | 79706 | TX |
| DJR RIG SITE | | SAN JUAN COUNTY | | NM |
| DROP SHIP | | | | |
| DUFFY CRAIN AND HAULING | 501 E COLLINS | EATON | 80615 | CO |
| DURA BOND DUQUESNE | 5 N LINDEN ST | DUQUESNE | 15110 | PA |
| DURA BOND STEELTON | 2716 S FRONT ST | STEELTON | 17113 | PA |
| EL FARMER HOUSTON | 15706 BEAUMONT HWY | HOUSTON | 77049 | TX |
| EL FARMER MIDLAND | 1002 S COUNTY RD W | ODESSA | 79763 | TX |
| EL FARMER MIDLAND RETURNS | 1002 S COUNTY RD W | ODESSA | 79763 | TX |
| FOUR POINT RECLAMATION | 2605 E HWY 66 | EL RENO | 73036 | OK |
| FRONTIER TUBULAR SOLUTIONS | 4725 N BOULEVARD | EDMOND | 73025 | OK |
| FORT WORTH PIPE SERVICES PENNSYLVANIA | 60 DOMINIC PLACE | SAYRE | 18840 | PA |
| FORT WORTH PIPE SERVICES TEXAS | 3805 BETHEL DR | BIG SPRING | 79720 | TX |
| GE WELLHEADS | 321 BASHER DR | BERTHOUD | 80513 | CO |
| GLASSBORE COMPOSITE LINING SYSTEMS | 7812 W HWY 80 | MIDLAND | 79706 | TX |
| HOWARD SUPPLY | 821 E MAIN ST | FARMINGTON | 87401 | NM |
| HUNTING MARRERO | 6615 RIVER RD | MARRERO | 70072 | LA |
| IN TRANSIT | | | | |
| INDEPENDENT PIPE SERVICES | 9025 PINELAND RD | HOUSTON | 77044 | TX |
| INDUSTRIAL SCREEN AND MAINTENANCE | 2285 LOGOS CT | GRAND JUNCTION | 81505 | CO |
| IOS CASPER | 3501 N POPLAR | CASPER | 82601 | WY |
| IOS INSPECTION OILFIELD SERVICE | 7814 MILLER RD 3 | HOUSTON | 77049 | TX |
| IOS KIMBALL | 4386 US 30 | KIMBALL | 69145 | NE |
| IOS MIDLAND | 2600 E I-20 | MIDLAND | 79706 | TX |
| JB OILFIELD SUPPLY | 1060 LOCKWOOD DR | HOUSTON | 77020 | TX |
| JINDAL BAYTOWN | 1411 FM 565 S | BAYTOWN | 77520 | TX |
| JPF ULTRA SONIC | 9103 PINELAND RD | HOUSTON | 77044 | TX |

| Name | Address | City | ZIP Code | State |
|---|---|---|---|---|
| KB HOUSTON | 8500 MILLER RD 2 | HOUSTON | 77049 | TX |
| KB LA | 208 REBECCAS POND RD | SCHRIEVER | 70395 | LA |
| KJ CONSTRUCTION LLC | 719 E ADAMS ST | CHEROKEE | 73728 | OK |
| LARAMIE RIG SITE | | MESA COUNTY | | CO |
| LARAMIE YARD | | MESA COUNTY | | CO |
| LB FOSTER COMPANY | 15786 HWY 75 N | WILLIS | 77378 | TX |
| LINCOLN MANUFACTURING | 5301 POLK ST | HOUSTON | 77023 | TX |
| LINER SHOES | 16415 WAVERLY DR | HOUSTON | 77032 | TX |
| LONE STAR HYDRO AND MAINTENANCE | 7404 MILLER RD #2 | HOUSTON | 77049 | TX |
| LONE STAR TUBULAR SERVICES | 2230 FM 729 | LONE STAR | 75668 | TX |
| LUNDVALL ENTERPRISES | 15487 CR46 | LASALLE | 80645 | CO |
| MCCLATCHY BROS YARD | 3901 W INDUSTRIAL | MIDLAND | 79703 | TX |
| MCIP CORPORATION | 4501 KNAPP RD | PEARLAND | 77581 | TX |
| MM WELDING AND CONSTRUCTION INC | 21630 HWY 6 AND 24 | RIFLE | 81650 | CO |
| NEW MEXICO TRANSLOADING | 5101 WILLIAMS ST SE | ALBUQUERQUE | 87105 | NM |
| NOV EDMOND | 3600 S KELLY | EDMOND | 73013 | OK |
| NOV WELLBORE TECHNOLOGIES | 30 RD 3351 | AZTEC | 87410 | NM |
| OFSI HOUSTON | 7735 MILLER RD 3 | HOUSTON | 77049 | TX |
| OFSI ODESSA | 333 BRAZOS AVE | ODESSA | 79764 | TX |
| ORE CITY | 15825 STATE HWY 155 N | ORE CITY | 75683 | TX |
| OSAGE TRANSPORTATION | 13833 GARRETT RD | HOUSTON | 77044 | TX |
| PARAGON | 3378 W HWY 117 | SAPULPA | 74066 | OK |
| PATRIOT THREADING | 8300 W HWY 80 | MIDLAND | 79706 | TX |
| PERMIAN ENTERPRISES | 2121 W MURPHY ST | ODESSA | 79763 | TX |
| PETROSMITH | 7435 US HWY 277 S | ABILENE | 79606 | TX |
| PINNACLE MACHINE WORKS | 10521 SHELDON RD | HOUSTON | 77044 | TX |
| PRECISION PIPE RENTALS | 2114 FM 1208 | STANTON | 79782 | TX |

| Name | Address | City | ZIP Code | State |
|------|---------|------|----------|-------|
| PIPE RECLAMATION INC | 13530 W IH-20 | ODESSA | 79763 | TX |
| RENTERS MATERIAL HANDLING | 12825 GREEN RIVER DR | HOUSTON | 77044 | TX |
| REPUBLIC TUBE | 11200 MESA DR | HOUSTON | 77078 | TX |
| ROTARY DRILLING TOOLS INC USA LP | 9022 VINCIK EHLERT RD | BEASLEY | 77417 | TX |
| SANDRIDGE RIG SITE | | JACKSON COUNTY | | CO |
| SAVAGE SERVICES ND | 14891 NW 42ND ST | WILLISTON | 58801 | ND |
| SHAWCOR | 4501 KNAPP RD | PEARLAND | 77581 | TX |
| SPLENDORA PIPE SERVICES | 26670 MIDLINE RD | CLEVELAND | 77328 | TX |
| STALLION OILFIELD | 14070 49TH ST NW | WILLISTON | 58801 | ND |
| STEWART TUBULAR | 5951 N HOUSTON ROSSLYN RD | HOUSTON | 77091 | TX |
| SOUTHERN TUBE | 13500 INDUSTRIAL RD | HOUSTON | 77015 | TX |
| STREAM FLO | 3102 HIGHWAY 59 E | BEEVILLE | 78102 | TX |
| SUPERIOR THREADED PRODUCTS | 9405 E SAM HOUSTON PKWY N | HOUSTON | 77044 | TX |
| TECHNICAL INDUSTRIES | 15438 MILLER ONE RD LOT A | HOUSTON | 77049 | TX |
| TEDA TPCO AMERICA | 5431 HWY 35 | GREGORY | 78359 | TX |
| TEJAS TUBULAR HOUSTON | 8710 MILLER RD 2 | HOUSTON | 77049 | TX |
| TEJAS TUBULAR STEPHENVILLE | 600 CAPORAL DR | STEPHENVILLE | 76401 | TX |
| TENARIS HICKMAN | 5000 N CO RD 967 | BLYTHEVILLE | 72315 | AR |
| TMK BAYTOWN | 2600 GRAND PKWY | BAYTOWN | 77523 | TX |
| TMK WILDER KY COATING FACILITY | 84 STEEL PLANT RD | WILDER | 41071 | KY |
| TOP THREADING | 11613 CROSBY LYNCHBURG RD | CROSBY | 77532 | TX |
| TRANSIT | | | | |
| TRI POWER ENERGY SERVICES | 4341 SW 33RD ST | OKLAHOMA CITY | 73119 | OK |
| TRK ENTERPRISE | 350 O ST E | GREELEY | 80631 | CO |
| TS UPSET AND THREAD | 18702 E HARDY RD | HOUSTON | 77073 | TX |
| TSC BRYAN | 1700 INDEPENDENCE AVE | BRYAN | 77803 | TX |

| Name | Address | City | ZIP Code | State |
|---|---|---|---|---|
| TSC HOUSTON | 10881 ALMEDA RD | HOUSTON | 77045 | TX |
| TSI BEAR BAYOU | 15938 BEAR BAYOU DR. | CHANNELVIEW | 77530 | TX |
| TSI JPORT | 2030 JACINTOPORT BLVD | HOUSTON | 77015 | TX |
| TSI MCCARTY | 1010 MCCARTY ST | HOUSTON | 77029 | TX |
| TTL DAMAGE | 21630 HWY 6 AND 24 | RIFLE | 81650 | CO |
| TUBO AMELIA | 2112 LA 662 | AMELIA | 70340 | LA |
| TUBO NORTH | 10222 SHELDON RD | HOUSTON | 77049 | TX |
| TUBO ODESSA | 11919 W COUNTY RD 128 | ODESSA | 79765 | TX |
| TUBOSCOPE OKLAHOMA CITY | 1800 SE 44TH ST | OKLAHOMA CITY | 73129 | OK |
| TUBO SOUTH | 9015 SHELDON RD | HOUSTON | 77049 | TX |
| TEXAS PIPE WORKS | 9444 INDUSTRIAL DR | NAVASOTA | 77868 | TX |
| UNITED CASING HOUSTON | 10901 SHELDON RD | HOUSTON | 77044 | TX |
| UNITED CASING MIDLAND | 3610 TX 158 | MIDLAND | 79706 | TX |
| WASHITA VALLEY | 1705 SE 59TH ST | OKLAHOMA CITY | 73129 | OK |
| WOMBLE HOUSTON | 12821 INDUSTRIAL RD | HOUSTON | 77015 | TX |

**SCHEDULE 2.3(i)**
**Excluded Assets**

None.

**SCHEDULE 3.1**
**Purchase Price**

# Schedule 3.1

| Inventory | Tons | Price/Ton | Price |
|---|---|---|---|
| **TOTAL INVENTORY:** (Schedule 2.1(a)) | **11,675.09** | **$535.06** | **$6,246,898.83** |
| Centric Claims: | | | $931,297.25 |
| Cure Costs: | | | Up to $240,000.00 |
| Seller's Claims: | | | $100,000.00 |
| Long-term Residual A/R: | | | $405,969.87 |
| Current A/R: | | | $3,016,369.76 |
| **TOTAL PRICE:** | | | **$10,940,535.58** |

**SCHEDULE 4.2**
**Authority; No Violation**

None.

**SCHEDULE 4.6**
**Brokers**

None.

**SCHEDULE 4.8**
**Transactions Outside of the Ordinary Course**

None.

**SCHEDULE 4.14(a)**
**Employee Benefit Plans**

1. Insperity 401K Plan
2. Insperity UnitedHealthcare Choice Plus 1000
3. Consulting and Bonus Agreement, dated September 1, 2016, by and between Tesanovich Holdings, LLC and Seller

**SCHEDULE 4.14(c)**
**Employee Benefit Plans Compliance**

None.

**SCHEDULE 4.14(d)**
**Employee Benefit Plans Proceedings**

None.

**SCHEDULE 4.16**
**Environmental Matters**

None.

**SCHEDULE 4.17**
**Litigation**

1.  Civil Action 4:20-cv-01856; *Eagle Pipe, LLC v. Kathryn Y. Thompson*; In the United States District Court for the Southern District of Texas, Houston Division. On May 28, 2020, Eagle Pipe filed suit against a former Eagle Pipe salesperson named Kathryn Thompson ("Thompson") for misappropriation of trade secrets under Texas and federal law and certain other causes of action related to Thompson's misuse of Eagle Pipe's confidential information and trade secrets. On July 31, 2020, Thompson filed counterclaims against Eagle Pipe for wrongful termination, breach of her employment agreement, and defamation. The parties have reached a verbal agreement in principle to settle this lawsuit for a mutual "walk-away" and release pending the remediation of Eagle Pipe's confidential and proprietary information from Thompson's electronic devices and accounts.

2.  Small Claims Action 2020-12996; *Bricktown Center LLC &/or EXPRESSWAYS RENTAL PROPERTIES v. Eagle Pipe, LLC and Luke Wycoff*; In the Small Claims Court of Oklahoma County, Oklahoma. On September 23, 2020, Eagle Pipe notified its landlord for Eagle Pipe's Oklahoma City, Oklahoma office that Eagle Pipe had vacated the premises and was terminating the lease for, among other things, the landlord's repeated unauthorized entry into the premises, after which, the premises was left unlocked. In response, the landlord filed suit against Eagle Pipe and one of its Oklahoma City employees, Luke Wycoff, on October 5, 2020. The landlord seeks back rent, late fees, and court costs of $1,692.41 for September 2020, and rent of $1,431.28 per month for the remainder of the lease's term (October 2020 – March 31, 2021).

3.  Cause No. 2020-62174; *Boomerang Tube, LLC v. Eagle Pipe, LLC, Beemac, Inc., and Jared Light*; In the 189th Judicial District Court of Harris County, Texas. Boomerang Tube, LLC ("Boomerang"), an OCTG mill, alleges Eagle Pipe breached a "Cancellation Agreement" pursuant to which Eagle Pipe and Boomerang cancelled certain purchase orders Eagle Pipe previously placed with Boomerang by failing to instruct Beemac, Inc., the operator of a third-party storage yard, to transfer certain pipe back to Boomerang from Eagle Pipe's stock. Boomerang seeks approximately $5.3 million in damages.

**SCHEDULE 5.2**

**Purchaser's Authority; No Violation**

None.